CHARLES S. BARQUIST (SBN 133785)
CBarquist@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: 213.892.5200
Facsimile: 213.892.5454

BRIAN G. BODINE
Bbodine@merchantgould.com
MERCHANT & GOULD, P.C.
701 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Telephone: 206.342.6200
Facsimile: 206.342.6201

PETER A. GERGELY
Pgergely@merchantgould.com
MERCHANT & GOULD, P.C.
1050 17th Street, Suite 1950
Denver, Colorado 80265-0100

Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION FOR
SCIENTIFIC RESEARCH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH, | Case No. CV 07-08108 GHK (CTX) |
| Plaintiff, | **NOTICE OF APPEAL** |
| v. | |
| COCHLEAR CORPORATION and COCHLEAR LTD., | |
| Defendants. | |
| COCHLEAR AMERICAS and COCHLEAR LTD., | |
| Counterclaimants, | |
| v. | |
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH, | |
| Counterdefendant | |

NOTICE OF APPEAL

1

CV 07-08108 GHK (CTX)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that Plaintiff ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH ("AMF") hereby appeals from the Judgment entered by the Court on June 19, 2009 (Document 123), and from the Memorandum and Order issued by Court and entered in the Court's docket on May 29, 2009 (Document 113), granting the Motion to Dismiss for Lack of Standing filed by Defendants COCHLEAR CORPORATION (n/k/a Cochlear Americas) and COCHLEAR LTD. ("Cochlear"). This appeal is taken to the Court of Appeals for the Federal Circuit. Copies of the Court's Judgment and the Order that are being appealed are attached hereto.

All applicable fees associated with the Notice of Appeal are being submitted herewith.

Respectfully submitted,
MERCHANT & GOULD P.C.

By _____
Brian G. Bodine, WSBA #22414
Merchant & Gould
701 Fifth Avenue, Suite 4100
Seattle, WA 98104
Telephone:    (206) 342-6200
Facsimile:    (206) 342-6201
E-mail: bbodine@merchantgould.com

Attorney for Plaintiff, ALFRED E. MANN
FOUNDATION FOR SCIENTIFIC
RESEARCH

NOTICE OF APPEAL                                     2                    CV 07-08108 GHK (CTX)

E-Filed: **6/19/09**

JS - 6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFRED E. MANN FOUNDATION,** ) | **CASE NO. CV 07-8108-GHK (CTx)** |
| **Plaintiff,** ) | **JUDGMENT** |
| **v.** ) | |
| **COCHLEAR CORP., et al.,** ) | |
| **Defendants.** ) | |

Pursuant to our May 29, 2009 Order dismissing Plaintiff Alfred E. Mann Foundation's Complaint, **IT IS HEREBY ADJUDGED** that this action is **DISMISSED** for Plaintiff's lack of standing.

**IT IS SO ORDERED.**

DATED: June 19, 2009

_____
GEORGE H. KING
United States District Judge

E-Filed: **5/29/09**

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFRED E. MANN FOUNDATION,** | **CASE NO. CV 07-8108-GHK (CTx)** |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| **COCHLEAR CORP., et al.,** | |
| Defendants. | |

This matter is before the Court on Defendants Cochlear Corporation, n/k/a Cochlear Americas, and Cochlear Ltd.'s (collectively "Defendants") Motion to Dismiss for Lack of Standing and Defendants' Motion for Rule 11 Sanctions. We have considered the papers filed in support of and opposition to these Motions, as well as counsel's oral arguments on April 20, 2009. As the Parties are familiar with the facts, they will be repeated only as necessary. Accordingly, we rule as follows.

//

1  **I.      Motion to Dismiss for Lack of Standing**

2        The dispositive question presented by this Motion is whether the 2004 License

3  Agreement ("Agreement") between Plaintiff Alfred E. Mann Foundation ("Plaintiff") and

4  Advanced Bionics Corporation ("ABC") is an exclusive license, as the Agreement's title

5  suggests, or an assignment.  If Plaintiff licensed the relevant patents to ABC, Plaintiff

6  retains standing to bring the instant action for alleged infringement.  *See Abbott Lab. v.*

7  *Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995); *Speedplay, Inc. v. Bebop*, 211 F.3d

8  1245, 1250 (Fed. Cir. 2000).  However, if Plaintiff assigned the patents to ABC, Plaintiff

9  lacks standing to bring this action.  *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359,

10  1372 (Fed. Cir. 2008); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1338

11  (Fed. Cir. 2006).

12        Although Plaintiff and ABC titled the Agreement a "license," "[a] party that has

13  been granted all substantial rights under the patent is considered the owner regardless of

14  how the parties characterize the transaction that conveyed those rights." *Speedplay*, 211

15  F.3d at 1250.  Thus, we must determine whether all substantial rights were transferred to

16  ABC, in which case the Agreement is an assignment, or whether Plaintiff retained

17  substantial rights, in which case the Agreement is an exclusive license.  *See id.*  "In

18  making such a determination, it is helpful to consider rights retained by the grantor in

19  addition to rights transferred to the grantee." *Intellectual Prop. Dev., Inc. v. TCI*

20  *Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001).

21        Party intent determines what rights were granted to ABC and what rights were

22  retained by Plaintiff.[1]  When a contract is ambiguous,[2] extrinsic evidence is admissible to

23  _____

24      [1]The reasoning of the Federal Circuit cases is not uniform as to why party intent controls
    the interpretation of contracts granting patent rights.  Most cases simply state that party intent
25  controls and cite Federal Circuit precedent, usually *Vaupel Textilmaschinen KG v. Meccanica*
    *Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991).  *See, e.g., Aspex*, 434 F.3d at 1339;
26  *Intellectual Prop.*, 248 F.3d at 1342; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378
27  (Fed. Cir. 2000).  The better reasoned cases acknowledge that state law controls interpretation of
    such contracts, and the relevant state law usually leads to party intent. *See, e.g., Euclid Chem.*
28  *Co. v. Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1343 (Fed. Cir. 2009); *Mars*, 527 F.3d at

1 | interpret the ambiguous terms. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App.

2 | 4th 1107, 1126 (2008). Here, the only relevant extrinsic evidence submitted by the

3 | parties is the 1999 License Agreements between Plaintiff and ABC which were

4 | superseded by the Agreement at issue.

5 |       Although we consider all granted and retained rights, Federal Circuit precedent

6 | indicates that three rights are emphasized: the exclusive rights to make, use, and sell

7 | products covered by the patents ("exclusive rights"), sublicensing rights, and the right to

8 | sue alleged infringers. *See Aspex*, 434 F.3d 1336; *Abbott*, 47 F.3d 1128; *Vaupel*

9 | *Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991).

10 | **A.   Exclusive Rights**

11 |       Plaintiff transferred to ABC the exclusive rights to make, use, and sell products

12 | covered by the patents. (Fraser Decl. Ex. 1091 at 128.) This grant of exclusive rights

13 | does not terminate before the expiration of the patents. (*Id.*) This is clearly consistent

14 | with an assignment. *See Speedplay*, 211 F.3d at 1250; *Vaupel*, 944 F.2d at 874.

15 | Plaintiff's grant of exclusive rights to ABC is unlike the grant of exclusive rights in

16 | *Aspex*, 434 F.3d at 1336, where the court concluded that the contract was a license.

17 | There, unlike the instant Agreement, the contract provided that the exclusive rights were

18 | to revert to the grantor before the expiration of the patent term. *Id.* at 1342. Plaintiff's

19 | grant of exclusive rights is also unlike the grant of rights in *Abbott*, 47 F.3d 1128, where

20 | the court concluded that the contract was a license. There, unlike the instant Agreement,

21 | the contract provided that the grantor retained the right to make, use, and sell products

22 |

23 | _____

24 | 1370.
      In this case, either line of reasoning will lead to party intent, as party intent controls

25 | under California law. *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the

26 | same is ascertainable and lawful."); *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1018

27 | (2009).

28 |     [2]*See Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) ("An ambiguity arises when language is reasonably susceptible of more than one application to material facts.").

1  //

2  covered by the relevant patents, and the grantee's license was subject to prior licenses. *Id.*

3  at 1132.

4      Thus, Plaintiff granted ABC broad exclusive rights, which favors the conclusion

5  that the Agreement is an assignment.

6      **B.     Sublicensing Rights**

7      The extent of sublicensing rights granted by Plaintiff to ABC is hotly contested by

8  Plaintiff and Defendants.  Section 2.1 of the Agreement grants ABC a "worldwide license

9  throughout the Term, with a right to sublicense (subject to the provisions in Section

10  2.6(a) through (e))[3] . . . ."  (Fraser Decl. Ex. 1091 at 128.)  Section 2.6(a) through (d)

11  require any sublicensing agreements to contain the following:

12      a.     [confidentiality requirements];
        b.     [reporting, inspection, and audit rights];
13      c.     [termination provision];
        d.     [royalties provision].
14

15  (*Id.* at 128–29.).  On its face, the Agreement granted ABC virtually unfettered right to

16  sublicense to anyone it chooses, provided that it includes in the sublicense the

17  requirements of Subsections (a)–(d).

18      Plaintiff asserts that notwithstanding the plain language of the Agreement, all of

19  Section 2.6 must be imported into Section 2.1, including the language preceding the

20  Subsections.  This language states, in relevant part, that "[Plaintiff] hereby grants to

21  [ABC] the exclusive worldwide right and license to grant sublicenses to Affiliates of

22  [ABC]."

23      We believe the interpretation consistent with the intent of Plaintiff and ABC is that

24  only the requirements of Subsections (a)–(d) of Section 2.6 are imported into Section 2.1.

25  First and foremost, the plain language of Section 2.1 refers to only Section 2.6(a)–(d).

26

27  _____

28      [3]The Agreement contains no Section 2.6(e).  Henceforth, we will refer to Section
    2.6(a)–(d).

1 Moreover, other portions of the Agreement, Sections 11.2.2 and 11.3.2, state that if any

2 patent infringement action is settled for a sublicense, the sublicense "will be subject to

3 Section 2.6." (Fraser Decl. Ex. 1091 at 138.)  The fact that Sections 11.2.2 and 11.3.2

4 refer to "Section 2.6," whereas Section 2.1 refers to "Section 2.6(a) through (d),"

5 indicates that Plaintiff and ABC understood the difference between importing the entirety

6 of Section 2.6 and importing only the Subsections.  This supports the conclusion that

7 Section 2.1 does not contain a mere drafting error.

8          Moreover, even if we were to import all of Section 2.6 into Section 2.1, we believe

9 Section 2.6 is a redundant grant of the right to sublicense to Affiliates, and not a

10 restriction of sublicenses to only Affiliates.  The plain language of the provision says that

11 Plaintiff grants ABC "the exclusive worldwide right and license to grant sublicenses to

12 Affiliates of [ABC]."  It does not say that ABC has the exclusive worldwide right and

13 license to grant sublicenses **ONLY** to its Affiliates.  Once again, Plaintiff's proffered

14 interpretation conflicts squarely with the plain language of the Agreement.  While the

15 face of the Agreement renders grant of sublicense rights in Section 2.6 redundant of such

16 grant in Section 2.1, other considerations, discussed below, outweigh our concerns about

17 redundancy.

18          Section 11.2.2 allows ABC "to enter into any settlement or judgment that involves

19 any outcome other [sic] whether or not involving the payment of money without the prior

20 written approval of [Plaintiff,]" but "[a]ny license, sublicense, or cross-license of any

21 [relevant patent] that results from a settlement or judgment will be subject to Section

22 2.6." (Fraser Decl. Ex. 1091 at 137–38.)[4]  Plaintiff's suggested interpretation that 2.6

23 restricts sublicenses to Affiliates leads to the absurd result that ABC is given the right to

24 settle lawsuits for a license only in the highly unlikely situation that ABC is suing its own

25 Affiliates.  This is a tortured reading of the Agreement, as compared with the more

26 logical interpretation that Plaintiff granted ABC virtually unfettered sublicensing rights

27 _____

28          [4]Section 11.3.2 contains a similar provision when Plaintiff controls the litigation.

1 | provided that it includes the restrictions of Subsections 2.6(a)–(d), and the language of

2 | Section 2.6 that precedes Subsections (a)–(d) merely reaffirms ABC's right to sublicense

3 | to Affiliates.

4 |     At the hearing, Plaintiff argued that limiting settlement sublicenses to Affiliates of

5 | ABC is really not meant to be taken literally. Instead, this language is really a device to

6 | create an obstacle during settlements that would then force Plaintiff and ABC to come to

7 | an ad hoc mutually agreeable sublicensing scheme. When that is done, Plaintiff and ABC

8 | would simply agree to waive the literal provisions of Section 2.6. While we congratulate

9 | counsel on his creativity, the plain language of the Agreement simply is not susceptible to

10 | such a far-fetched interpretation. Had this been the intention of Plaintiff and ABC, they

11 | would have written the contract to state that a sublicense may be granted to settle a

12 | lawsuit only upon the approval of both Plaintiff and ABC. There was no need to use

13 | Section 2.6 as such an opaque and circuitous proxy.

14 |     Moreover, the Agreement, in Sections 3.6 and 12.9, mentions both "Affiliates" and

15 | "sublicensees." If Plaintiff were correct that only Affiliates can obtain sublicenses, the

16 | Agreement would not need to mention sublicensees separately from Affiliates. Plaintiff

17 | argued at the hearing that the Agreement mentions sublicensees separately in anticipation

18 | of the situation described above where Plaintiff and ABC agree to waive the sublicensing

19 | restriction and settle a lawsuit for a license. Again, we believe this to be a tortured

20 | reading of the contract that runs far afield from the intentions of Plaintiff and ABC at the

21 | time the Agreement was signed.

22 |     Finally, the 1999 License Agreements support our conclusion that the Agreement

23 | grants ABC the right to sublicense to virtually anyone it chooses. The 1999 License

24 | Agreements state that:

25 |     [Plaintiff] hereby grants to [ABC] the sole and exclusive worldwide right and license to grant sublicenses to Affiliates of [ABC]. [ABC] may not grant

26 | sublicenses to persons or entities who or which do not qualify as an Affiliate of [ABC] unless [ABC] first obtains the express written consent of [Plaintiff], which

27 | consent will not be unreasonably withheld.

28 | (Fraser Decl. Ex. 1086 at 91; Ex. 1087 at 107.) The Federal Circuit has stated that where

1    the grantee of patent rights may grant a sublicense subject to written consent from the

2    grantor, the grantor merely retains a "veto right on sublicensing" which is only "a minor

3    derogation from the grant of rights." *Vaupel*, 944 F.2d at 875. This is even more so

4    when the agreement between the parties specifies that the grantor's consent shall not be

5    unreasonably withheld. *Speedplay*, 211 F.3d at 1251. Because the 1999 License

6    Agreements granted ABC the right to sublicense to Affiliates without Plaintiff's consent

7    and the right to sublicense to non-Affiliates with Plaintiff's consent, which could not be

8    unreasonably withheld, ABC received virtually unfettered sublicensing rights. Moreover,

9    if Plaintiff and ABC meant to have more restrictions on sublicenses in the Agreement

10   than stated in the 1999 License Agreements, they most certainly would have made it clear

11   that *only* Affiliates can be sublicensees. The failure to do so, in conjunction with the

12   background provided by the 1999 License Agreements, supports our conclusion that

13   ABC's right to sublicense is not restricted to Affiliates.

14        Thus, Plaintiff granted ABC broad sublicensing rights, which favors the conclusion

15   that the Agreement is an assignment.

16        **C.    Right to Sue**

17        Plaintiff argues that the Agreement does not transfer to ABC the right to sue, but

18   only the right to control litigation, and that right must be affirmatively elected by ABC.

19   (Opp'n, 4.) The Agreement does not support a difference between the right to control

20   litigation and the right to sue. Section 11.2.1 provides ABC "the first right to control the

21   proceedings relating to [i]nfringement." (Fraser Decl. Ex. 1091 at 137.) Section 11.3.1

22   provides Plaintiff the right to control the proceedings "[i]f [ABC] elects not to defend

23   against an [i]nfringement."[5] (*Id.* at 138.) When read together, these two sections equate

24   ABC's right to control the litigation with its right to sue.

25        We also disagree with Plaintiff that ABC must affirmatively elect to sue. Section

26   ――――――――――――――

27   [5]When the Agreement speaks of "defending against an infringement," it is referring to
     Plaintiff or ABC bringing an action as a plaintiff against an alleged infringer to stop the

28   infringement.

7

1  11.3.1 allows Plaintiff to sue only "[i]f [ABC] elects not to defend against an

2  [i]nfringement." (*Id.*)  Contrary to Plaintiff's argument, the right lies with ABC and

3  reverts to Plaintiff only if ABC elects not to sue an alleged infringer.  We conclude the

4  Agreement transferred to ABC the right to sue.  Plaintiff retains a secondary right to sue

5  if ABC elects not to sue an alleged infringer.

6         Defendants make much of Plaintiff's inability to sue until ABC elects not to sue.

7  Defendants argue that this requirement renders Plaintiff's right to sue illusory, as ABC

8  could simply ignore Plaintiff's requests for an election.  Defendants contrast the instant

9  Agreement with the contracts in cases where if the grantee failed to sue within a specified

10  time period after learning of an infringement, the right to sue reverted to the grantor.  *See,*

11  *e.g., Speedplay*, 211 F.3d at 1251 (noting that the contract provided the grantor a right to

12  sue alleged infringers if the grantee did not bring suit within three months); *Abbott*, 47

13  F.3d at 1129 (noting that the contract provided the grantor a right to sue alleged

14  infringers if the grantee did not bring suit within six months of the grantor's request).  We

15  reject Defendants' argument.  The Agreement implies a reasonable period for ABC to

16  elect, beyond which ABC's failure to act is its election not to sue.

17         However, even if the secondary right to sue is not illusory, a grantor's secondary

18  right to sue is of minimal significance if the grantee can grant sublicenses.  *See Aspex*,

19  434 F.3d at 1342 ("[W]e agree with the district court that the agreement minimizes the

20  significance of any right to sue that [the grantor] may have had since it retained 'no

21  supervisory or veto power over [the grantee]'s grant of sublicenses.'"); *Speedplay*, 211

22  F.3d at 1251.  As discussed above, we believe ABC has a largely unfettered right to

23  sublicense.  Thus, Plaintiff's secondary right to sue is of minimal importance.

24         Finally, Section 11.2.1 provides Plaintiff "the right, but not the obligation" to

25  participate in an infringement action brought by ABC.  Though not determinative, the

26  fact that Plaintiff is not required to participate in ABC's lawsuits, even though licensees

27  typically must join the licensor in order to sue, is some indication that Plaintiff intended

28  to assign its rights to ABC.

1    Thus, Plaintiff granted ABC the first right to bring suit, in its own name and
2    without joining Plaintiff, which favors the conclusion that the Agreement is an
3    assignment.

4    **D.    Other Rights**

5    Plaintiff retains the right to receive a portion of any proceeds from an infringement
6    action, whether brought by Plaintiff or ABC. (Fraser Decl. Ex. 1091 at 138.)  The
7    Federal Circuit has held that the right to receive a portion of litigation proceeds merely
8    supplies some of the consideration for the contract; it does not dictate whether the
9    Agreement is an assignment or a license. *Intellectual Prop.*, 248 F.3d at 1344 n.11
10   ("[The grantor]'s right to receive infringement damages is merely a means of
11   compensation under the agreement.  We consider [the grantor]'s right to receive
12   infringement damages a neutral factor.") (internal quotation marks and citations omitted);
13   *Vaupel*, 944 F.2d at 875 ("Finally, the right to receive infringement damages was merely
14   a means of compensation under the agreement; this was not inconsistent with an
15   assignment."). *But see Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191 (Fed.
16   Cir. 2007) ("To be sure, the fact that a patent owner has retained a right to a portion of the
17   proceeds of the commercial exploitation of the patent, as [the grantor] has done in this
18   case, does not necessarily defeat what would otherwise be a transfer of all substantial
19   rights in the patent.  Nonetheless, the fact that [the grantor] retains a substantial share of
20   the proceeds is consistent with [the grantor] retaining ownership rights in the patent . . .
21   .") (internal citations omitted).  Thus, we conclude that at best this right only slightly
22   favors a finding that the Agreement is a license.

23   Plaintiff asserts that the Agreement requires Plaintiff to pay maintenance fees on
24   the patents.  The grantor's obligation to pay maintenance fees is consistent with a license.
25   *See Propat*, 473 F.3d at 1191; *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d
26   1016, 1018 (Fed. Cir. 2001).  Here, the Agreement is not clear whether Plaintiff is
27   obligated to pay maintenance fees. Section 10.1(a) requires Plaintiff "at [Plaintiff]'s sole
28   cost [to] prosecute and maintain domestic and foreign patent applications" with respect to

1 | the relevant technology.  Thus, by its plain language, Section 10.1(a) applies only to

2 | patent applications, not to the already-issued patents relevant here.  At the hearing on this

3 | Motion, Plaintiff asserted that this is another drafting error and Section 10.1(a) was

4 | intended to apply to patents, not applications.  Plaintiff's argument is difficult to accept,

5 | as the entire paragraph of Section 10.1(a) is directed at patent applications.

6 |       Alternatively, Plaintiff argues that it is required to pay maintenance fees on the

7 | patents because of Section 10.2.  Again, Plaintiff's argument is strained.  Section 10.2 is

8 | comprised of two Subsections, (a) and (b).  Subsection (a) requires ABC to reimburse

9 | Plaintiff for the prosecution and maintenance of foreign patents necessary to protect

10 | ABC's rights in the relevant technology.  Foreign patents do not affect our analysis of the

11 | United States patents.  *See Vaupel*, 944 F.2d at 875 ("Nor did the right to obtain patents

12 | in other countries affect [the grantee]'s rights arising from the '650 patent, which are

13 | limited to the United States."); *Speedplay*, 211 F.3d at 1252 ("The right to dictate the

14 | markings on products sold abroad may or may not be significant as a practical matter, but

15 | the right is certainly not one that interferes with the rights in a U.S. patent, which are

16 | limited in reach to the United States.").  Moreover, even were we to consider the foreign

17 | patents in our analysis, Subsection (a) supports the conclusion that the Agreement is an

18 | assignment because ABC is ultimately bearing the cost for those foreign patents.  *See*

19 | *CytoLogix Corp. v. Ventana Med. Sys.*, No. 04-11783, 2007 U.S. Dist. LEXIS 77065 (D.

20 | Mass. Oct. 17, 2007) (holding that where the grantor has an obligation to maintain the

21 | patents under the grantee's direction and expense, the grantor acts merely as an agent for

22 | the grantee, and the arrangement is consistent with an assignment).  Subsection (b)

23 | addresses the prosecution of patent applications, and is therefore not relevant to Plaintiff's

24 | alleged obligation to pay maintenance fees on the relevant patents.  Therefore, Section

25 | 10.2 does not support Plaintiff's claim that it is required to pay maintenance fees on the

26 | patents.

27 | //

28 |       Nevertheless, for the purposes of this analysis, we will give Plaintiff the benefit of

1  any uncertainties regarding Plaintiff's retained obligation to pay maintenance fees.

2      **E.      Conclusion**

3          Plaintiff granted ABC the exclusive right to make, use, and sell products covered

4  by the patents without temporal limitation, reservation, or reversion.  Plaintiff also

5  granted virtually unfettered sublicensing rights to ABC.  While Plaintiff retained a

6  secondary right to sue for infringement, this right is a minimal intrusion into the broad

7  rights granted to ABC especially in light of the unlimited sublicensing rights.  Similarly,

8  Plaintiff's retention of some of the proceeds from an infringement action and its arguable

9  obligation to pay the patent maintenance fees do not substantially reduce the nature,

10 extent, and comprehensiveness of the rights granted.  Accordingly, we conclude that

11 Plaintiff granted ABC all substantial rights under the patents such that ABC is considered

12 the owner of those patents.

13         Plaintiff acknowledged at the hearing on this Motion that ABC has not assigned

14 back to Plaintiff the right to sue.  In light of our conclusion that Plaintiff assigned its

15 patent rights to ABC, we now hold that Plaintiff lacks standing to bring this action.

16 Accordingly, Defendants' Motion to Dismiss is **GRANTED**.  This case is **DISMISSED**

17 for lack of standing.

18 **II.     Motion for Rule 11 Sanctions**

19         Defendants request sanctions against Plaintiff under Federal Rule of Civil

20 Procedure 11.  Defendants assert that "even a cursory investigation" would have revealed

21 that Plaintiff had no standing to sue.  (Motion, 6.)  We disagree.  Given our discussion in

22 this Order, Plaintiff's position is at least arguable.  We decline to impose sanctions under

23 Rule 11.

24         Defendants also base their request for Rule 11 sanctions on their allegation that

25 Plaintiff did not produce the Agreement until nearly a year after the litigation

26 //

27

28 commenced.  (Motion, 3.)  We view this as a claim of discovery abuse, and it should have

1 | been raised before the Magistrate Judge.

2 |     Accordingly, Defendants' Motion for Rule 11 Sanctions is **DENIED**.

3 |

4 |     **IT IS SO ORDERED**.

5 |

6 | DATED: May 29, 2009

7 |

8 |

                           GEORGE H. KING

9 |
                      United States District Judge