# United States Court of Appeals for the Federal Circuit

2009-1447

ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,

Plaintiff-Appellant,

v.

COCHLEAR CORPORATION and COCHLEAR LTD.,

Defendants-Appellees.

## Judgment

```
RECEIVED
CLERK, U.S. DISTRICT COURT

JUN 2 4 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY
```

ON APPEAL from the   United States District Court for the Central District of California

in CASE NO(S).   07-CV-8108 GHK

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

### REVERSED AND REMANDED

ENTERED BY ORDER OF THE COURT

DATED MAY 14 2010

Jan Horbaly, Clerk

```
CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By_____ Date: 6/21/10
```

**ISSUED AS A MANDATE:** JUN 2 1 2010

# United States Court of Appeals for the Federal Circuit

2009-1447

ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,

Plaintiff-Appellant,

v.

COCHLEAR CORPORATION and COCHLEAR LTD.,

Defendants-Appellees.

Brian G. Bodine, Lane Powell PC, of Seattle, Washington, argued for plaintiff-appellant. With him on the brief were Peter Gergely, Merchant & Gould P.C. of Denver, Colorado; and Malcolm J. Romano, Alfred E. Mann Foundation for Scientific Research, of Santa Clarita, California.

Bruce G. Chapman, Connolly Bove Lodge & Hutz LLP, of Los Angeles, California, argued for defendants-appellees. With him on the brief were Manuel C. Nelson and Keith D. Fraser.

Appealed from: United States District Court for the Central District of California

Judge George H. King

# United States Court of Appeals for the Federal Circuit

2009-1447

ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,

Plaintiff-Appellant,

v.

COCHLEAR CORPORATION and COCHLEAR LTD.,

Defendants-Appellees.

Appeals from the United States District Court for the Central District of California in case no. 07-CV-8108, Judge George H. King.

DECIDED: May 14, 2010

Before MICHEL, Chief Judge, NEWMAN, and DYK, Circuit Judges.

MICHEL, Chief Judge.

The Alfred E. Mann Foundation for Scientific Research ("AMF") is a research organization interested in developing new medical technologies, including cochlear implants. Cochlear Corporation and Cochlear Ltd. (collectively, "Cochlear") are companies that build cochlear implants for use in human patients. AMF sued Cochlear for patent infringement, and the district court dismissed the case for lack of standing to sue. At issue is a 2004 agreement between AMF and Advanced Bionics ("AB"), another company that builds cochlear implants, granting AB an exclusive license to the patents that AMF later accused Cochlear of infringing. Cochlear contends, and the district court held, that this agreement was a virtual assignment of the patents-in-suit to AB, giving

AB the sole right to sue for infringement of those patents. We find that AMF is the owner of the patents-in-suit because it retained substantial rights in the patents, including the right to sue for infringement if AB declines to do so. Accordingly, we reverse the district court's holding that AMF lacked standing to sue, and we remand for proceedings consistent with this opinion.

## I. BACKGROUND

In the mid-1980s, Alfred E. Mann, an inventor of medical devices, founded AMF to develop new medical technologies. AMF conducts research aimed at developing implantable medical devices that can improve health, safety, and quality of life. Among these technologies are cochlear implants, devices that are placed in the inner ear to allow profoundly deaf or severely hard-of-hearing patients to regain their ability to hear. Cochlear implants are sometimes referred to as "bionic ears." The patents-in-suit, U.S. Patent No. 5,609,616 ("the '616 patent") and U.S. Patent No. 5,938,691 ("the '691 patent"), disclose and claim cochlear implants and related technologies used to improve hearing. These patents were issued to researchers at AMF, and those researchers assigned the patents to AMF.

As a source of funding for its research work, AMF licenses its patents to for-profit companies that build medical devices. Here, the '616 patent and the '691 patent were licensed to AB under a license agreement entered into in 2004. The license agreement granted AB the following rights:

- The exclusive, worldwide right to make, have made, use, lease, offer to lease, sell, offer to sell, and otherwise commercially exploit the '616 and '691 patents for the full term of those patents.

- The first right to sue to enforce the patents when either AMF or AB learns of any alleged, actual, suspected, potential, or threatened infringement, misappropriation, or unauthorized use. This right to choose whether to sue includes the right to control any litigation commenced by AB, including the right to choose counsel and the right to make unilateral decisions about litigation and settlement strategy and tactics.

- The right to settle any AB-controlled litigation on any terms (with or without payment of money) without any prior authorization by AMF. Exercise of this right does require first consulting with AMF.

- The right to grant sublicenses,[1] as long as the sublicenses include specified confidentiality requirements; particular reporting, inspection, and audit rights; provisions terminating the sublicense if the license is terminated; and the payment of specified pass-through royalties to AMF.

In addition, AMF retained several rights and obligations under the license agreement:

- The secondary right to sue to enforce the patents when either AMF or AB finds out about any alleged, actual, suspected, potential, or threatened infringement, misappropriation, or unauthorized use and when AB declines to exercise its right to sue, described above. This secondary right to sue includes the right to control any litigation commenced by AMF, including the right to choose counsel and the right to make unilateral decisions about litigation and settlement strategy and tactics.

---

[1] The parties dispute the breadth of the grant to AB of the right to sublicense. Cochlear maintains that AB is allowed to grant sublicenses to anyone, while AMF insists that AB is permitted only to sublicense AB's affiliates.

- The apparent obligation to pay maintenance fees on the patents-in-suit.
- The right to some significant portion of the recovery in infringement suits, whether initiated by AB or by AMF.
- The apparent right to grant licenses to settle litigation initiated by AMF.
- The right to prevent AB from assigning its rights to anyone else except under certain specified conditions. AMF's consent to AB's assignment of its rights cannot be unreasonably withheld.
- The right to terminate the license agreement and any sublicenses if AB misses payments to AMF.

In litigation commenced by either party, the other party to the agreement maintained the right (but not the obligation) to participate in the litigation by hiring its own counsel and by requiring the litigation-commencing party to keep it informed about the status of the litigation, but the non-commencing party was not permitted to interfere with the commencing party's control of the litigation in any way.

After this license agreement was entered into, AMF notified AB of Cochlear's allegedly infringing activity and sought to determine AB's decision regarding whether to sue Cochlear for infringement of the '616 patent. Having received assurance that AB did not plan to sue over this alleged infringement, AMF filed suit in December 2007. Eventually, the pleadings were amended to allege infringement of both the '616 patent and the '691 patent.

During discovery in the district court, Cochlear learned of the 2004 license agreement between AMF and AB. On March 3, 2009, Cochlear filed a motion to dismiss AMF's infringement claims for lack of standing to sue. On May 29, 2009, the

district court granted the motion, finding that, because AMF had transferred to AB "all substantial rights under the patents," AB should be "considered the owner of those patents." On June 19, 2009, the district court entered judgment dismissing the case, and AMF appealed to this court on June 23, 2009.

## II. DISCUSSION

We review de novo the district court's decisions regarding standing to sue. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee. Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA, 944 F.2d 870, 873-74 (Fed. Cir. 1991). To determine whether an exclusive license is tantamount to an assignment, we "must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted." Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001). Here, the license agreement is to be interpreted under California law, under which the district court's interpretation of a contract presents a question of law that we review de novo. DVD Copy Control Ass'n v. Kaleidescape, Inc., 176 Cal. App. 4th 697, 713, 97 Cal. Rptr. 3d 856, 869 (Cal. Ct. App. 6th Dist. 2009). To the extent that determining the intention of the parties to the license agreement requires evaluation of parol evidence, the district court's evaluation presents a question of fact that we review deferentially. Id.

As noted above, a patent owner may grant an exclusive license to his patents under such terms that the license is tantamount to an assignment of the patents to the exclusive licensee. This happens when the exclusive license transfers "all substantial

rights" in the patents. <u>Vaupel Textilmaschinen</u>, 944 F.2d at 873-74. When this happens, the exclusive licensee has sole standing to sue those suspected of infringing the patents' claims. <u>Id.</u> In addition, we have held that, where an exclusive license transfers less than "all substantial rights" in the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an indispensable party who must be joined. <u>Prima Tek II, L.L.C. v. A-Roo Co.</u>, 222 F.3d 1372, 1377 (Fed. Cir. 2000). Typically, we are confronted with cases in which an exclusive licensee sues an accused infringer, and we must decide whether the licensee has been granted rights sufficient to confer standing. This case presents a converse scenario in which the patent owner seeks to bring suit, requiring us to determine whether the patent owner transferred away sufficient rights to divest it of any right to sue.

We were faced with a similar set of facts in <u>Aspex Eyewear, Inc. v. Miracle Optics, Inc.</u>, 434 F.3d 1336 (Fed. Cir. 2006). There, the patent owner, Contour Optik, Inc., had granted an exclusive license to Chic Optic, Inc., which was not a party to the infringement litigation. <u>Id.</u> at 1338. In turn, Chic Optic assigned its rights to Aspex Eyewear. <u>Id.</u> Shortly before the grant of rights from Chic Optic to Aspex Eyewear, Contour Optik and Aspex Eyewear jointly sued Miracle Optics for infringement. <u>Id.</u> We held that, because the grant from Contour Optik to Chic Optic was a grant of less than all substantial rights, Contour remained the owner of the patents-in-suit and retained standing to sue for infringement. <u>Id.</u> at 1343.

Under <u>Aspex Eyewear</u>, a patent may not have multiple separate owners for purposes of determining standing to sue.[2] Either the licensor did not transfer "all substantial rights" to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer "all substantial rights" to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own. In either case, the question is whether the license agreement transferred sufficient rights to the exclusive licensee to make the licensee the owner of the patents in question. If so, the licensee may sue but the licensor may not. If not, the licensor may sue, but the licensee alone may not. When there is an exclusive license agreement, as opposed to a nonexclusive license agreement, but the exclusive license does not transfer enough rights to make the licensee the patent owner, either the licensee or the licensor may sue, but both of them generally must be joined as parties to the litigation. <u>Aspex Eyewear</u>, 434 F.3d at 1344 (citing <u>Independent Wireless Tel. Co. v. Radio Corp.</u>, 269 U.S. 459, 466 (1926)).

With these rules in mind, we can proceed to determine who was permitted to sue suspected infringers under AMF's license agreement with AB. The first step is to determine whether the license is exclusive or nonexclusive, because AB, as the licensee, would have no right to sue, even by joining AMF, under a nonexclusive license agreement. <u>Propat Int'l Corp. v. RPost, Inc.</u>, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007).

---

[2] Of course, the patent may be owned by a group, as when a patent with multiple named inventors first issues. But, at least for purposes of determining standing to sue for infringement, there may not be multiple groups or unaffiliated individuals who claim ownership of the patent; one of these groups or individuals must be determined to be the owner, and that owner is the only party with standing to sue on its own.

A finding that the license was exclusive is necessary, but not in itself sufficient, to find that the licensee has standing to sue. Both parties to this appeal agree that the license agreement between AMF and AB was exclusive, and they could hardly argue otherwise. The agreement provides that "AMF hereby grants to AB an exclusive . . . worldwide license . . . to make, use, lease, offer to lease, sell, offer to sell and otherwise commercially exploit products and perform services" under the patents-in-suit. The district court properly interpreted this language as a grant of an exclusive license.

Having found that AMF granted AB an exclusive license, we next need to determine the scope of that license grant in order to decide which party to the agreement was the owner of the patents-in-suit. If AMF remained the owner, then it had standing to sue for infringement. If AMF transferred sufficient rights to AB to render AB the owner, then AMF was not permitted to sue for infringement, and the district court properly dismissed the case for lack of standing.

A patent "is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part." <u>Vaupel Textilmaschinen</u>, 944 F.2d at 875. Thus, although all the various rights available under the patent are initially held by the named inventor or inventors, they may, as a result of licensing agreements and assignments, become separated and be held by multiple individuals. When a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name. When a plaintiff lacking a sufficiently large portion of rights brings suit, that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders

of rights under the patent must be joined as parties to the suit, as appropriate given the plaintiff's status as either an exclusive or a nonexclusive licensee.

Our prior decisions have never purported to establish a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent. But we have listed at least some of the rights that should be examined. Of course, transfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment. Propat, 473 F.3d at 1193-94. We have also examined the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent. See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1345 (Fed. Cir. 2001); Mentor H/S, 240 F.3d at 1018; Prima-Tek II, 222 F.3d at 1378-79; Vaupel Textilmaschinen, 944 F.2d at 875. Frequently, though, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration. See AsymmetRx, Inc. v. Biocare Med., LLC, 582 F.3d 1314, 1320-21 (Fed. Cir. 2009); Sicom Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 979-80 (Fed. Cir. 2005); Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1132 (Fed. Cir. 1995). Where the licensor retains a right to sue accused

infringers, that right often precludes a finding that all substantial rights were transferred to the licensee. It does not, however, preclude such a finding if the licensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers. Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1251 (Fed. Cir. 2000). Under the prior decisions of this court, the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent.

Here, as noted above, the license agreement provides as follows regarding infringement litigation. Both AMF and AB are required to notify the other party upon learning of a possible infringement of the patents. After this notification, AB has the absolute right to decide whether or not to initiate litigation against the accused infringer. If AB chooses to exercise this right by filing suit, it maintains complete control over the litigation. AB is required to keep AMF informed of the progress of the litigation, and AMF is permitted to participate in the litigation using counsel of its choice, but AB has the final say on all decisions relating to the litigation. This decision-making power extends to the resolution of the litigation: AB must consult with AMF before settling a lawsuit, but after this consultation, AB is permitted "to enter into any settlement or judgment that involves any outcome . . . whether or not involving the payment of money without the prior written approval of AMF." The proceeds of the litigation, whether obtained through settlement or judgment, are to be shared between AMF and AB according to a formula that gives each party a substantial portion of the proceeds. If, however, AB chooses not to file suit against an accused infringer, AMF has the right

2009-1447                                10

(but not the obligation) to initiate litigation. If AMF chooses to exercise this right, it controls the litigation in much the same way that AB controls litigation it initiates. Thus, while AB is permitted to join in the litigation, AMF has the final say regarding all decisions, including decisions about whether and how to settle the litigation. As with AB-initiated litigation, the proceeds of AMF-initiated litigation are to be shared between the parties, with each party taking a substantial portion.

The parties disagree as to whether this scheme of litigation rights leaves AMF with a right to sue substantial enough to find that AMF remains the owner of the patents-in-suit. AMF argues that its rights under the license agreement are substantial, allowing suit in at least some circumstances, including the circumstances of this case. Cochlear correctly notes that AMF's rights to sue are secondary to those of AB and argues that this means AMF's rights are insubstantial.

A complicating factor is the right of AB to grant sublicenses under the license agreement. Cochlear argues that AB's right to sublicense is essentially unfettered, leaving open the possibility that, even though AMF could bring suit against an accused infringer, AB could terminate that suit by granting an inexpensive or even cost-free sublicense to the infringer. Cochlear further argues that this unfettered ability of AB to frustrate AMF-initiated litigation by sublicensing accused infringers renders AMF's right to sue illusory. AMF argues to the contrary that AB's sublicense rights are limited to granting sublicenses to AB's own affiliates and therefore do not include the right to settle AMF-initiated litigation by granting sublicenses to other accused infringers.

Even if AB is permitted to sublicense defendants sued by AMF, the license agreement specifies sublicense terms that would prevent such sublicenses from

rendering illusory AMF's right to sue those defendants. By contrast, in Speedplay, we held that a licensee's right to grant royalty-free sublicenses to defendants sued by the licensor rendered illusory the licensor's right to sue. 211 F.3d at 1251. We expressly distinguished an earlier case in which the licensor's right to sue was not illusory because any sublicenses the licensee might grant included the requirement to pay royalties. Id. (citing Abbott Labs., 47 F.3d at 1132). Here, AB's right to sublicense is similarly fettered: any sublicense AB grants must include specified pass-through royalties. Under Speedplay and Abbott Laboratories, AB's right to sublicense does not render illusory AMF's right to sue accused infringers.

But if AMF's right to sue suspected infringers is not illusory, is it still substantial enough to find that AMF remains the owner of the patents-in-suit? We think it is. While AMF's right to choose to sue an infringer does not vest until AB chooses not to sue that infringer, it is otherwise unfettered. Once its right to sue an infringer activates, AMF can decide whether or not to bring suit, when to bring suit, where to bring suit, what claims to assert, what damages to seek, whether to seek injunctive relief, whether to settle the litigation, and the terms on which the litigation will be settled. AMF is required to inform AB of the status of the litigation while it is ongoing, but AMF has complete discretion to decide what trial strategy and tactics to employ.

Such a broad right to decide whether to bring suit and to control litigation is thoroughly inconsistent with an assignment of the patents-in-suit to AB. In AsymmetRx, we held retained litigation rights were sufficient to preserve the licensor's ownership of the patents-in-suit even when those rights failed to give the licensor complete control over the litigation it initiated; instead, the licensor and licensee would have joint control

of the litigation. 582 F.3d at 1321. Here, AMF retained significantly greater litigation rights, because it maintained absolute control over any suit it brought in its own name. In Sicom Systems, we held that a licensor maintained ownership of the patents-in-suit when that licensor retained the right to sue only noncommercial accused infringers, having transferred to the licensee the sole and unconditional right to sue commercial infringers. 427 F.3d at 978-79. Here, AMF retained greater litigation rights than the licensor in Sicom Systems, because AMF had the right, following AB's refusal to bring suit, to sue any accused infringer, not just those falling into a particular class.

AMF's retained right to sue suspected infringers here is most similar to the licensor's litigation rights at issue in Abbott Laboratories, where we found the retained rights sufficient to preclude the exclusive license agreement from being deemed a virtual assignment of the patents-in-suit. There, the exclusive licensee had the "right of first refusal in suing alleged infringers," but if the licensee "decline[d] to so do, [the licensor] ha[d] the right to prosecute its own infringement action." Abbott Labs., 47 F.3d at 1132. This prevented the licensee from "enjoy[ing] the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue." Id. Similarly, here, if AB declined to bring an infringement action against an infringer, AMF was permitted to file suit.

We agree with AMF that it makes no difference that the license agreement fails to specify a time within which AB must make its decision as to whether to sue. Under California law, "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." Cal. Civ. Code § 1657. Thus, AB has only a reasonable amount of time before it must decide whether or not to sue an infringer,

depriving AB of the right to indulge infringements indefinitely. Because AB cannot indulge infringements for an unlimited time, under Abbott Laboratories, AB holds substantially less than the complete right to sue. Thus, AMF's retained right to sue is significant, and so we hold that the license agreement was not a virtual assignment of the patents-in-suit to AB.

As discussed above, the district court should have held that, although the agreement between AMF and AB was an exclusive license agreement, it was not a virtual assignment of the patents-in-suit. Accordingly, AMF retained standing to sue accused infringers, and the district court therefore erred by dismissing AMF's claims against Cochlear for lack of standing. We therefore reverse the district court's dismissal of AMF's claims and remand to the district court. On remand, the district court should consider whether, under Aspex Eyewear, 434 F.3d at 1344, and Independent Wireless, 269 U.S. at 466, AB is an indispensable party to this litigation. If the district court finds that AB is indispensable, then the district court should consider whether, under Rule 19 of the Federal Rules of Civil Procedure, AB or its successor must be joined as a party, or whether dismissal of this case is warranted. We express no opinion as to the proper disposal of this issue. If all standing issues are resolved favorably to AMF, the district court should address the merits of AMF's claims.

## CONCLUSION

For the reasons stated above, we reverse the district court's decision and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

## COSTS

No costs.

> CERTIFIED COPY
> I HEREBY CERTIFY THIS DOCUMENT
> IS A TRUE AND CORRECT COPY
> OF THE ORIGINAL ON FILE.
>
> UNITED STATES COURT OF APPEALS
> FOR THE FEDERAL CIRCUIT
> By: Tomey   Date: 6/21/10