1 | Bruce G. Chapman (State Bar No. 164258)
bchapman@cblh.com
2 | Manuel Nelson (State Bar No. 229590)
mnelson@cblh.com
3 | Keith D. Fraser (State Bar No. 216279)
kfraser@cblh.com
4 | **CONNOLLY BOVE LODGE & HUTZ LLP**
333 South Grand Avenue, Suite 2300
5 | Los Angeles, California 90071
Telephone (213) 787-2500
6 | Fax (213) 687-0498

7 | Attorneys for Defendants and Counterclaimants
COCHLEAR CORPORATION (n/k/a
8 | COCHLEAR AMERICAS) and COCHLEAR
LTD.

9 |

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | WESTERN DIVISION

13 | ALFRED E. MANN FOUNDATION ) Case No. CV 07-08108 GHK (CTX)
FOR SCIENTIFIC RESEARCH, )
14 | )
Plaintiff, ) **OBJECTIONS TO REPORT AND**
15 | ) **RECOMMENDATION ON CLAIM**
) **CONSTRUCTION**
16 | v. )
) Date:      January 23, 2012
17 | COCHLEAR CORPORATION, ) Time:      9:30 a.m.
COCHLEAR LTD., and ADVANCE ) Place:     Courtroom of the
18 | BIONICS, LLC, )              Honorable George H. King
)              Courtroom 650 – Roybal
19 | Defendants. )
_____ )
20 | )
AND RELATED COUNTERCLAIM )
21 | _____ )

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

**TABLE OF CONTENTS**

2
Page

3
I.      THE STANDARD OF REVIEW ................................................................... 1

4
II.     COMMON ERRORS IN THE SPECIAL MASTER'S REPORT
        AND RECOMMENDATION ....................................................................... 1
5

6
        A.      The Omission of "Responsive to …" From The Interpretation
                Of The Function Of Numerous Means Plus Function
7               Claim Elements Is Error ................................................................... 1

8
        B.      The Special Master's Conclusion that 35 U.S.C. § 112, ¶ 6 Does
                Not Apply to Noun Means Plus Function Claim Elements is Error .... 3

9
III.    DETAILED OBJECTIONS TO THE RECOMMENDED
        CONSTRUCTIONS ....................................................................................... 5
10

11
        A.      Objections To The Recommended Construction of the
                "Responsive to …" Claim Elements ................................................. 5

12
        B.      Objections To The Recommended Construction of the
                Noun Means Plus Function Claim Elements ...................................... 8
13

14
        C.      Objections To The Recommended Construction of
                Other Claim Elements ...................................................................... 11

15
IV.     CONCLUSION................................................................................................ 15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Altiris, Inc. v. Symantec Corp.,*
  318 F.3d 1363 (Fed.Cir. 2003) ............................................................. 2, 4

*Catch Curve, Inc. v. Venali, Inc.,*
  2007 WL 3308101 (C.D.Cal. May 11, 2007)................................... 10

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC,*
  350 F.3d 1327 (Fed.Cir. 2003) .................................................................. 2

*Greenberg v. Ethicon Endo-Surgery, Inc.,*
  91 F.3d 1580 (Fed.Cir. 1996) .................................................................. 4

*In re Donaldson,*
  16 F.3d 1189 (Fed.Cir. 1994) .................................................................. 2

*Macrovision Corp. v. Dwight Cavendish Developments Ltd.,*
  105 F.Supp.2d 1070 (N.D.Cal. 2000)..................................................... 1

*Markman v. Westview Instruments, Inc.,*
  52 F.3d 967 (Fed.Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).................... 1

*Mas-Hamilton Group v. LaGard, Inc.,*
  156 F.3d 1206, 1213 (Fed.Cir. 1998) .................................................. 11

*Motorola, Inc. v. VTech Communications, Inc.,*
  2009 WL 2026317 (E.D.Tex. 2009)................................................. 9, 10

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
  833 F.2d 931 (Fed.Cir. 1987) ............................................................. 2, 6

*Rodime PLC v Seagate Tech., Inc.,*
  174 F.3d 1294 (Fed. Cir. 1999) .............................................................. 4

*Sage Prods., Inc. v. Devon Indus., Inc.,*
  126 F.3d 1420 (Fed. Cir. 1997) .............................................................. 4

*T–Netix, Inc. v. Global Tel\*Link Corp.,*
  2003 WL 25782759 (E.D.Tex. Aug.15, 2003)................................... 10

*TriMed, Inc. v. Stryker Corp.,*
  514 F.3d 1256 (Fed.Cir. 2008) ........................................................... 2, 3

*Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, L.P.,*
  326 F.Supp.2d 1060 (C.D.Cal. 2003)................................................... 10

**Statutes**

35 U.S.C. § 112, ¶ 2 ....................................................................................... 5, 6

35 U.S.C. § 112, ¶ 6 ................................................................................... passim

**Rules**

Fed.R.Civ.P. 53(f)(4) ........................................................................................ 1

ii

1   Pursuant to Fed. R. Civ. P. 53(f), Defendants/Counterclaimants Cochlear Corp.
2   (n/k/a Cochlear Americas) and Cochlear Ltd. (collectively "Cochlear") hereby object
3   to portions of the Special Master's Report and Recommendation on Claim
4   Construction ("R&R").

5   **I.       THE STANDARD OF REVIEW**

6       Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*,
7   52 F.3d 967, 979 (Fed.Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  As a result,
8   a district court's review of a special master's report and recommendation on claim
9   construction is *de novo*.  Fed.R.Civ.P. 53(f)(4); *Macrovision Corp. v. Dwight*
10  *Cavendish Developments Ltd.*, 105 F.Supp.2d 1070, 1072 (N.D.Cal. 2000).

11  **II.      COMMON ERRORS IN THE SPECIAL MASTER'S REPORT AND**
12  **RECOMMENDATION**

13      Although the Special Master's Report and Recommendation is comprehensive
14  and thorough, Cochlear believe that the Special Master erred with regard to several
15  of the recommended constructions of the patent claims at issue in this case.  Many of
16  these errors fall in two common groups.  The first group involves recommended
17  claim constructions that ignore "responsive to …" language when construing the
18  function of "means plus function" claim elements.  The second group involves
19  recommended constructions that treat all "means plus function" claim elements – to
20  which 35 U.S.C. § 112, ¶ 6 presumptively applies – as excluded from the scope of
21  that section when they are preceded by a noun.  These common errors are discussed
22  below.

23      **A.       The Omission of "Responsive to …" From The Interpretation Of**
24      **The Function Of Numerous Means Plus Function Claim Elements Is**
25      **Error**

26      Claim elements "may be expressed as a means or step for performing a
27  specified function without the recital of structure, material, or acts in support thereof,
28  and such claim shall be construed to cover the corresponding structure, material, or

1

acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Use of "means" language in a claim element creates a presumption that § 112, ¶ 6 applies. *See TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed.Cir. 2008). When § 112, ¶ 6 applies, it is necessary to determine the function and then identify the structure in the patent's specification (written description) that corresponds to that function. *See e.g. Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed.Cir. 2003). It is in determining the function that the Special Master erred by deleting requirements in the plain language of the claim.

Specifically, several of the means-plus-function claim elements include "responsive to …" language as part of the element. For example, claims 7 and 14 of U.S. Patent No. 5,938,691 ("the '691 patent") recite "means in the WP *responsive to at least a portion of the status indicating signals* for controlling the power level of transmissions to the ICS." (Emphasis added.) The Special Master interpreted the function of these elements to be "controlling the power level of transmissions to the ICS." (R&R at 142.) In doing so, he read the words "responsive to at least a portion of the status indicating signals" out of the claim. It is inappropriate to ignore or read-out such words in a claim. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 938 (Fed.Cir. 1987). *See also In re Donaldson*, 16 F.3d 1189, 1195-97 (Fed.Cir. 1994) ("means, responsive to pressure increases in said chamber caused by said cleaning means, for moving particulate matter in a downward direction to a bottommost point in said [lowermost] portion for subsequent transfer to a location exterior to said assembly" not limited to merely means "for moving …" but includes means "for moving" that is "responsive to pressure increases in said chamber caused by said cleaning means"); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344-45 (Fed.Cir. 2003) (claimed "valve means responsive to said actuation signals to derive said control inputs" subject to § 112, ¶ 6; two functions of being "responsive to said actuation signals and "deriv[ing] said control inputs" held performed by particular valve structure disclosed in patent figure). The "responsive

2

1   to …" portion of the claim elements should be incorporated into the Court's claim

2   construction.

3        **B.     The Special Master's Conclusion that 35 U.S.C. § 112, ¶ 6 Does Not**

4             **Apply to Noun Means Plus Function Claim Elements is Error**

5        The Special Master generally interpreted claim elements written in "means-

6   plus-function" format, but preceded by a noun (a thing), as not covered by 35 U.S.C.

7   § 112, ¶ 6.  This was error.

8        Use of "means for" in a claim element creates a presumption that 35 U.S.C. §

9   112, ¶ 6 applies. *TriMed*, 514 F.3d at 1259.  In reliance on a single noun, as well as

10  passages from various dictionaries and the patent's specification (written description)

11  describing the noun, the Special Master repeatedly determines that the use of the

12  noun before the word "means" identifies sufficient structure to rebut the presumption

13  that § 112, ¶ 6 applies.  To the contrary, "[s]ufficient structure [to remove an element

14  from 35 U.S.C. § 112, ¶ 6] [only] exists when the claim language specifies the exact

15  structure that performs the functions in question *without need to resort to other*

16  *portions of the specification or extrinsic evidence for an adequate understanding of*

17  *the structure*." *TriMed*, 514 F.3d at 1259-60 (emphasis added).

18       For example, claims 1 and 12 of U.S. Patent No. 5,609,616 ("the '616 patent")

19  and claims 6, 9 and 14 of the '691 patent recite a "processor means for processing

20  …." The Special Master relies on various dictionaries for the proposition that a

21  "processor" is commonly understood.[1]   The vast scope of definitions provided –

22  ranging from a computer system and to any "device, unit, piece of equipment, system

23  or mechanism" – do *not* connote a generally understood structure.  Indeed, the

24

25       [1] These dictionaries define processor as meaning, among other things: a
    generally programmable computer system ("[a] system or mechanism that accepts a
26  program as input, prepares it for execution, and executes the process so defined with
    data to produce results");  a "central processing unit" ("CPU"); a device that contains
27  a CPU; and "[a] component, circuit, device, unit, piece of equipment, system, or
    mechanism which is utilized in the completion of a given process."  (R&R at 70-71.)

28

3

1  dictionaries convey such a broad range of possible structures – any device, any unit,

2  any piece of equipment – as to be meaningless.

3  　　　　The fact that the Special Master also examined the specification of the '616

4  and '691 patents (to find structure associated with the "processor" for performing the

5  recited functions) does not help.  The task of examining the specification (written

6  description) to find the corresponding structure for performing the recited function is

7  to be undertaken *after* the claim has been deemed to be subject to 35 U.S.C. § 112, ¶

8  6, not to justify removing it from the requirements of § 112, ¶ 6.  *See e.g. Altiris*, 318

9  F.3d at 1375 (court ascertains corresponding structure in the written description

10  necessary to perform recited function after determining claim is subject to § 112, ¶

11  6).

12  　　　　Moreover, the cases cited by the Special Master do not support his analysis.

13  *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1428 (Fed.Cir. 1997),

14  determined that "closure" means *was* subject to 35 U.S.C. § 112, ¶ 6, thus suggesting

15  that a noun preceding means-plus-function language does not necessarily make the

16  element structural.  In *Rodime PLC v Seagate Tech., Inc.*, 174 F.3d 1294, 1303-1304

17  (Fed.Cir. 1999), the claim elements provided detailed recitation of structure (support

18  arms, positioning arm, pivot shaft, stepper motor, etc.) for performing the recited

19  function, thus taking the elements at issue out of the scope of § 112, ¶ 6.  On the

20  other hand, the claim elements in AMF's patents contain no such detailed recitation

21  of structure.  In *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583-84

22  (Fed.Cir. 1996), the claim element was not written in "means plus function" format,

23  so it was not presumed to be governed by § 112, ¶ 6.  The Special Master's reliance

24  on *Greenberg* is misplaced, because AMF's patents use the "means plus function"

25  format and are thus presumptively governed by § 112, ¶ 6.  Since no adequate

26  structure is identified in the claim to rebut the presumption, the noun plus function

27  claim elements in the '616 and '691 patents are, contrary to the Special Master's

28  conclusion, governed by § 112, ¶ 6.

4

1
2 **III.  DETAILED OBJECTIONS TO THE RECOMMENDED**
3 **CONSTRUCTIONS**

4      With the common errors in mind, Cochlear specifically objects to the Special

5 Master's recommendations as set out below with respect to the individual claim

6 elements construed.[2]

7      **A.      Objections To The Recommended Construction of the "Responsive**
8 **to …" Claim Elements**

9      Each of the following means-plus-function claim elements contain "responsive

10 to …" language that the Special Master ignored when construing the function of

11 those elements.  Cochlear specifically objects to the construction of the elements as

12 follows:[3]

13      1. *'691 patent claims 7 and 14*:  "means in the WP responsive to at least

14           a portion of the status indicating signals for controlling the power

15           level of transmissions to the ICS" (R&R at 138-139)

16      The "means … for controlling the power level ..." in claims 7 and 14 of the

17 '691 patent is "responsive to at least a portion of the status indicating signals."  The

18 Special Master ignored this part of the claim element when construing the function.

19 The recommended construction of the function can be corrected by inserting the

20 language "in response to at least a portion of the status indicating signals" into the

21 Special Master's recommended construction of the function.  Alternatively, the

22
23

24      [2] Cochlear has asserted that numerous claim elements, even when construed as
25 completely as possible, are indefinite under 35 U.S.C. § 112, ¶ 2.  Cochlear is not
withdrawing those assertions regardless of whether or not Cochlear objects to a
26 specific recommendation of the Special Master.

27      [3] The pages of the Special Master's Report and Recommendation that set out
his analysis and recommended constructions for each claim element is identified
28 immediately after the claim element.

OBJECTIONS TO SPECIAL MASTER'S REPORT
& RECOMMENDATION ON CLAIM CONSTRUCTION
4559724_3

1  Special Master's recommended construction of the function – which none of the

2  parties requested – can be stricken in favor of the plain meaning of the words.

3      Moreover, because the Special Master ignored the "responsive to …" part of

4  the function, he misidentified the corresponding structure in the specification.  The

5  "power level indicating signals … received by the [WP] … [are] processed in the

6  microprocessor 30 and gate array 32 to generate signals controlling the power level

7  of the transmissions from the transmitter 34 to the ICS 12."  ('691 patent 5:2-5:9.)

8  As such, the "responsive to …" part of the function at least requires a

9  microprocessor, in addition to the switching regulator of the gate array identified by

10  the Special Master.  *Cf Pennwalt*, 833 F.2d at 938 (finding some combination of

11  components in the accused device that might be a "position indicating means" is

12  meaningless if such combination is not "responsive to the specified signal.").

13  Cochlear continues to believe that the construction it proposed at Tab 1 to the Joint

14  Appendix of the Joint Claim Construction Brief (Exhibit A hereto) at page 19 is the

15  correct one.  Alternatively, the Special Master's construction could be corrected by

16  including a microprocessor in the identified corresponding structure.[4]

17      2.  *'691 patent claim 9*:  "means responsive to data from the WP for

18      selectively monitoring at least one of the electrodes or voltages in the

19      ICS and for generating ICS-status-indicating signals" (R&R at 100-

20      103)

21      *'691 patent claim 14*:  "means responsive to data from the WP for

22      selectively monitoring at least one of the electrodes or voltages in the

23

24

25      [4] Under Federal Circuit case law, the proper corresponding structure would
26  include a microprocessor *and* an algorithm for performing the function.  The '691
   patent does not, however, disclose any such algorithm, and reference to a
27  microprocessor without an algorithm is the most complete construction possible.  As
   mentioned in footnote 2, above, Cochlear maintains its position that, even when
28  construed as completely as possible, the claim is invalid under 35 U.S.C. § 112, ¶ 2.

OBJECTIONS TO SPECIAL MASTER'S REPORT
& RECOMMENDATION ON CLAIM CONSTRUCTION
4559724_3

1  ICS and for generating ICS-status-indicating signals therefrom"

2  (R&R at 100-103)

3      The "means … for selectively monitoring" in '691 patent claims 6 and 9 are

4  both "responsive to data from the WP."  But the Special Master's recommended

5  construction of the monitoring and generating functions omits the requirement in the

6  claim that the monitoring and generating be in response to data from the WP.  The

7  recommended construction can be corrected by inserting the language "in response to

8  data from the WP" into the Special Master's recommended construction of the

9  function.  Alternatively, the Special Master's recommended construction of the

10 function – which none of the parties requested – can be stricken in favor of the plain

11 meaning of the words.

12      3.  *'616 patent claim 1*:  "monitor means in the processor means and

13          responsive to the data-containing signals for (1) selectively

14          monitoring at least one pair of the tissue-stimulating electrodes as

15          one of the stimulation signals is applied thereto to measure a voltage

16          associated with said pair of electrodes, and (2) generating stimulator

17          status-indicating signals" (R&R 100-103)

18          *'616 patent claim 12*:  "monitor means in the processor and

19          responsive to the data-containing signals received by the receiver

20          means for (1) monitoring a selected pair of the multiplicity of

21          electrodes as one of the stimulation signals is applied thereto to

22          measure a voltage associated therewith, and (2) generating stimulator

23          status-indicating signals, said stimulator status-indicating signals

24          including the voltage measured at the selected pair of electrodes by

25          the monitor means as one of the stimulation signals is applied

26          thereto"  (R&R at 100-103)

27      The "monitor means in the processor …" of claims 1 and 12 of the '616 patent

28 is "responsive to the data-containing signals."  However, the Special Master's

7

OBJECTIONS TO SPECIAL MASTER'S REPORT
& RECOMMENDATION ON CLAIM CONSTRUCTION
4559724_3

1  recommended construction of the function associated with these elements omits any

2  requirement that the function be in any way responsive to data-containing signals.

3  The recommended construction can be corrected by inserting the language "in

4  response to the data-containing signals" into the Special Master's recommended

5  construction of the function.  Alternatively, the Special Master's recommended

6  construction of the function – which none of the parties requested – can be stricken in

7  favor of the plain meaning of the words.

8            4.  *'691 patent claim 8*:  "means in the ICS and responsive to the power

9                 signals for generating a plurality of voltages for powering different

10                 components in the ICS" (R&R at 138-139)

11      The "means in the ICS" in claim 8 of the '691 patent is "responsive to the

12  power signals."  This requirement is missing from the Special Master's

13  recommended construction of the function of this element.  The recommended

14  construction can be corrected by inserting the language "in response to the data-

15  containing signals" into the Special Master's recommended construction of the

16  function.  Alternatively, the Special Master's recommended construction of the

17  function – which none of the parties requested – can be stricken in favor of the plain

18  meaning of the words.

19  **B.     Objections To The Recommended Construction of the Noun Means**

20        **Plus Function Claim Elements**

21      Each of the following means-plus-function claim elements contain a noun

22  before the means-plus-function language, and the Special Master therefore did not

23  apply 35 U.S.C. § 112, ¶ 6.  Cochlear specifically objects to the construction of these

24  terms as follows:[5]

---

25  [5] Cochlear has not objected to the Special Master's recommended

26  constructions of "external transmitter means for transmitting" and "display means for displaying" in claim 12 of the '616 patent because those constructions appear to

27  make no difference in the case.  Cochlear's failure to object to the recommended constructions of these claim elements should not be taken as agreement with the

28  approach used by the Special Master to construe the elements.

OBJECTIONS TO SPECIAL MASTER'S REPORT
& RECOMMENDATION ON CLAIM CONSTRUCTION
4559724_3

1.   *'616 patent claim 12*: "the ICS comprising (a) receiver means for receiving data-containing signals" (R&R at 56-59)

The Special Master recommends that "receiver means for receiving …" not be governed by 35 U.S.C. § 112, ¶ 6, despite the presumption that applies to claim elements using the word "means."  In addition to the issues generally discussed above for noun means plus-function-language, the Special Master's construction of "receiver means for receiving" is particularly at odds with the Special Master's construction of the almost identical element "receiving means for receiving," which the Special Master believes should be construed as subject to § 112, ¶ 6.  The only difference is the use of the noun form "receiver" instead of "receiving."

In support of his conclusion, the Special Master cites a dictionary definition defining receiver as "[t]he complete equipment required for receiving modulated radio waves and converting them into the original intelligence such as into sounds or pictures, or converting to desired useful information as in a radar receiver." (R&R at 58.)  In fact, this dictionary definition demonstrates that "receiver" is functional and that the term does not identify specific structure such that the claim element can be removed from the scope of 35 U.S.C. § 112, ¶ 6.  *See also Motorola, Inc. v. VTech Communications, Inc.*, 2009 WL 2026317, *15-16 (E.D.Tex. 2009) ("receiver means" drafted in the means-plus-function format and the generalized claim language lacks sufficiently specific structural language).  The Special Master's proposed construction of this claim element should be replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of the Joint Claim Construction Brief (Exhibit A hereto) at page 3.

2.   *'691 patent claim 14*: "processor means for processing such transmissions to generate stimulation signals" (R&R at 65-75)
*'616 patent claim 1*:  "processor means for processing the data-containing signals to generate stimulation signals" (R&R at 65-75)

9

1
2
3

*'616 patent claim 12*: "processor means for processing the received data-containing signals to generate stimulation signals" (R&R at 65-75)

4
5
6

*'691 patent claim 6*: "processor means for processing such transmissions to generate stimulation pulses and for controlling the pulse width of the stimulation pulses" (R&R at 65-75)

7
8
9
10
11
12
13
14

The Special Master recommends that "processor means …", as recited in '616 patent claims 1 and 12 and '691 patent claims 6 and 14 be construed as structure, not governed by 35 U.S.C. § 112, ¶ 6.  In making that recommendation, the Special Master relies on various dictionaries for the proposition that a "processor" is commonly understood to mean a vast array of undefined structures – including "any device, unit, piece of equipment, system, or mechanism" that can perform the function. These structures do *not* connote a reasonably well understood structure sufficient to remove the claim elements from the scope of § 112, ¶ 6.

15
16
17
18
19
20
21
22
23
24
25
26
27

"Processor means for processing …" is simply not a sufficiently specific structure.  *See Motorola*, 2009 WL 2026317 at *15-16 ("processor means" drafted in the means plus function format and the generalized claim language lacks sufficiently specific structural language); *Catch Curve, Inc. v. Venali, Inc.*, 2007 WL 3308101, *10-11 (C.D.Cal. May 11, 2007) (although "computer" may have well-known structure, "computer means" subject to § 112, ¶ 6, because "computer" does not have a sufficiently definite structure to rebut the presumption); *Verizon California, Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F.Supp.2d 1060, 1101–02 (C.D.Cal. 2003) (although "computer" connotes some structure, the structure was insufficient to remove "computer means" from § 112, ¶ 6); *T–Netix, Inc. v. Global Tel*Link Corp.*, 2003 WL 25782759, *9 (E.D.Tex. Aug.15, 2003) ("computer" does not have sufficient structure to remove "computer means" from 35 U.S.C. § 112, ¶ 6). "Processor means" is broader and even less definite than a "computer means," which

28

10

1   itself does not connote sufficient structure.  "Processor means" simply does not have

2   sufficient structure to remove it from § 112, ¶ 6.

3        The Special Master's proposed construction of these claim elements should be

4   replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of

5   the Joint Claim Construction Brief (Exhibit A hereto) at pages 4-9.

6        **C.**     **Objections To The Recommended Construction of Other Claim**

7               **Elements**

8        In addition to the two groups of common errors, whose corresponding

9   objections are discussed above, Cochlear has objections to certain additional

10  recommended constructions.  These objections follow:

11       1.   *'691 patent claim 9*:  "a processor for processing such transmissions

12           to generate stimulation signals" (R&R at 75-78)

13       The Special Master rejected Cochlear's argument that the term "processor"

14  does not identify structure and thus "processor for processing" should be governed

15  by 35 U.S.C. § 112, ¶ 6.  It is true that this claim element does not use the word

16  "means" and is thus presumed not subject to 35 U.S.C. § 112, ¶ 6.  Such a

17  presumption is, however, rebuttable.  *See Mas-Hamilton Group v. LaGard, Inc.*, 156

18  F.3d 1206, 1213 (Fed.Cir. 1998).  Here, the claimed "processor" is not described in

19  terms of its structure, but rather by the function it is to perform, namely, "processing

20  … transmissions to generate stimulation signals."  Further, the definitions cited by

21  the Special Master indicate that the word "processor" does not connote any particular

22  structure or group of structures; rather it is broad enough to cover any "component,

23  circuit, device, unit, piece of equipment, system, or mechanism which is utilized in

24  the completion of a given process."  (R&R at 77.)  *Cf. Mas-Hamilton*, 156 F.3d at

25  1213-14 (although element lacked the word "means," "lever moving element"

26  described functionally, and subject to § 112, ¶ 6.)  The Special Master's proposed

27  construction of these claim elements should be replaced by that proposed by

28

11

1  Cochlear and set out in Tab 1 to the Joint Appendix of the Joint Claim Construction

2  Brief (Exhibit A hereto) at pages 5-6.

3              2.  *'691 patent claim 9*:  "the ICS including" … "means for selectively

4                  controlling the frequency at which stimulating signals are applied to

5                  selected ones of the electrodes" (R&R at 122-133)

6          Contrary to the plain language of this claim element, the '691 patent discloses

7  nothing in the implanted cochlear stimulator ("ICS") to *selectively* control the

8  frequency at which stimulation signals are applied, as discussed in the Joint Claim

9  Construction Brief at 38.  Instead, it is the wearable processor that does the selection

10 and the ICS merely responds, which is why the '691 patent only links the selectively

11 controlling function to the function in the ICS of responding to signal frames of

12 varying length.  *See* '691 patent at 9:12-23.  As a result, it is not possible to match the

13 function of this element to any structure in the ICS.   The Special Master's

14 identification of corresponding structure, which essentially relies on recasting the

15 function of the claim element, is therefore in error.  When the function is correctly

16 identified, the claim cannot be construed at all.[6]

17              3.  *'691 patent claims 9 and 14, '616 patent claims 1 and 12*:

18                  "stimulation signals" (R&R at 59-65)

19                  *'691 patent claim 6*:  "stimulation pulses" (R&R at 59-65)

20                  *'616 patent claim 1*: "tissue-stimulating electrodes for receiving the

21                  stimulation signals" (R&R at 78-82)

22                  *'616 patent claim 12*: "tissue-stimulating electrodes" (R&R at 78-82)

23         The Special Master recommends that stimulation signals and stimulation

24 pulses be construed as "electrical signals" without the qualification that they are

25 applied to the intra-cochlear electrodes for stimulating the cochlea.  In the '616 and

26 _____

27     [6] To the extent the claim is to be construed by recasting the function, which it
   should not be, Cochlear is not objecting to the Special Master's recommended
28 construction.

OBJECTIONS TO SPECIAL MASTER'S REPORT
& RECOMMENDATION ON CLAIM CONSTRUCTION
4559724_3

'691 patents, the stimulation signals and pulses are applied to the cochlea through the intra-cochlear electrodes. *See e.g.* '691 patent at 3:22-24 Summary of the Invention ("apply stimulation signals to … electrodes implanted within the cochlea of the patient"). Indeed, the signals result in stimulation because they are applied to intra-cochlear electrodes.

Similarly, the Special Master's recommended claim construction does not require that the tissue-stimulating electrodes be intra-cochlear electrodes. Yet in the '616 patent, the tissue stimulating electrodes are always implanted within the cochlea. *See e.g.* '616 patent at 3:22-24 Summary of the Invention. As such, the tissue stimulating electrodes should be construed as intra-cochlear electrodes that stimulate the cochlea, not just any electrode that stimulates any tissue.

The Special Master's proposed construction of these claim elements should be replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of the Joint Claim Construction Brief (Exhibit A hereto) at pages 3-4 and 10-11.

    4. *'691 patent claims 9 and 14*: "electrically isolated capacitor-coupled cochlea stimulating electrodes for receiving the stimulation signals" (R&R at 82-94)

    *'691 patent claim 6*: "electrically isolated capacitor-coupled cochlea stimulating electrodes for receiving the stimulation pulses" (R&R at 82-94)

    *'616 patent claim 10*: "applying the stimulation signals to at least one pair of the multiplicity of tissue stimulating electrodes" (R&R at 94-96)

The Special Master's recommended construction does not require that "capacitor-coupled cochlea stimulating electrodes" have a direct connection between a capacitor and the electrode. Yet such a direct connection was a critical distinction between the patent and the prior art. *See* '691 patent at 2:45-46 (criticizing prior art

13

1  as "lack[ing] output coupling capacitors in series with each electrode.")  That

2  distinction should be preserved in the claim construction.

3      Likewise the Special Master's recommended claim construction rejects

4  Cochlear's proposal that the step of applying stimulation signals requires that those

5  signals be capacitively coupled through switches.  As discussed above, a direct

6  connection between the intra-cochlear electrode and the capacitor was a critical

7  distinction between the patent and the prior art.  *See* '616 patent at 2:43-44.  That

8  distinction is erased in the Special Master's recommended construction.

9      The Special Master's proposed construction of these claim elements should be

10  replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of

11  the Joint Claim Construction Brief (Exhibit A hereto) at pages 10-11.

12      5.  *'616 patent claim 10*:  "transmitting the stimulator status-indicating

13          signals to an external receiver coupled to the external transmitter"

14          (R&R at 118-121)

15      The Special Master has declined to give any construction to this claim

16  element.  Nevertheless, the '616 patent discloses a system that requires a telemetry

17  coil (to transmit the implanted stimulator status indicating signals back to the

18  wearable processor) that is separate from the main receiving coil that receives signals

19  from the wearable processor.  *See* '616 patent, Fig. 1.  Moreover, the '616 patent

20  criticizes prior art systems that use one antenna in the implant to both receive signals

21  from and transmit signals to the external processor.  *See* '616 patent 2:48-61.  The

22  significant distinction between the claimed invention and the prior art can only be

23  preserved if the element is interpreted to mean "transmitting the stimulator status-

24  indicating signals using a telemetry coil that is separate from the main receiving

25  coil."  The Special Master's proposed construction of these claim elements should be

26  replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of

27  the Joint Claim Construction Brief (Exhibit A hereto) at page 17.

28

14

6. *'616 patent claim 1*: "a physician's tester"

*'616 patent claim 12*: "a portable physician's tester"

The physician tester that is the subject of the '616 patent is a testing system derived from a wearable processor ("WP"). *See* '616 patent at 32:51-52 ("the tester as shown in FIG. 6 comprises a modification of the previously described WP …"). The testing system is separate from a system for programming the WP, which is also briefly discussed in the '616 patent. *See* '616 patent at 27:24-27. The Special Master's recommended construction does not preserve the distinction between the physician's tester and the programming system.  The Special Master's proposed construction of these claim elements should be replaced by that proposed by Cochlear and set out in Tab 1 to the Joint Appendix of the Joint Claim Construction Brief (Exhibit A hereto) at page 19.

## IV.   CONCLUSION

Although thorough, the Special Master erred in several of his recommended constructions, especially as they relate to omission of "responsive to" language and failure to apply 35 U.S.C. § 112, ¶ 6 to noun means-plus function-claim elements. Cochlear requests that the Special Master's Report and Recommendation on Claim Construction be overruled as set out above.

DATED:  December 19, 2011

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP

By:_____*/s/ Bruce G. Chapman*_____
          Bruce G. Chapman

Attorneys for Defendants and Counterclaimants Cochlear Corporation (n/k/a Cochlear Americas) and Cochlear Ltd.

15