Daniel Grunfeld (State Bar No. 128494)
dan.grunfeld@kayescholer.com
Jonathan Rotter (State Bar No. 234137)
jrotter@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Scott Lindvall (pro hac vice)
slindvall@kayescholer.com
Robert Laurenzi (pro hac vice)
rlaurenzi@kayescholer.com
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

Attorneys for Plaintiff/Counterdefendant
ALFRED E. MANN FOUNDATION
FOR SCIENTIFIC RESEARCH

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>    Plaintiff,<br><br> v.<br><br>COCHLEAR CORPORATION et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 07-08108 GHK (SHx)<br><br>**ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH'S OBJECTION TO AND MOTION TO MODIFY AND ADOPT THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON CLAIM CONSTRUCTION**<br><br>Hearing:     January 23, 2012<br>Time:         9:30 a.m.<br>Location:   Courtroom 650<br><br>Honorable George H. King |

Plaintiff/Counterdefendant Alfred E. Mann Foundation for Scientific Research ("AMF") submits the following objection to, and motion to adopt, as modified, the Special Master's Report and Recommendation on Claim Construction filed November 8, 2011(Dkt. No. 200) ("R&R").

## I.     INTRODUCTION

The R&R sets forth the Special Master's recommended claim construction for certain terms of the asserted claims of U.S. Patent Nos. 5,609,616 ("'616 Patent") and 5,938,691 ("'691 Patent"). The R&R is clearly the result of substantial thought and effort in search of claim constructions that are both legally correct and comprehensible to a jury. AMF acknowledges that many of the issues are complicated, and only conditionally objects to the R&R on one specific issue: in claim Group 14, the phrase "the results of the measurements" found in claim 10 of the '616 Patent.  AMF requests that the Court find that the term should be given its ordinary and customary meaning (if necessary, as discussed further below), and otherwise adopt the R&R.

## II.     LEGAL STANDARD

Under Rule 53 of the Federal Rules of Civil Procedure, "the court must decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). Claim construction is a matter exclusively within the province of the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The purpose of claim construction is to resolve disputes as to the meaning of the claim language so as to clearly define the bounds of the invention claimed in the patent. *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). The words of a claim are generally given their ordinary and customary meaning, unless a patentee has clearly set forth a different definition in the specification or file history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art

in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc), *cert. denied,* 546 U.S. 1170 (2006). "While not an absolute rule, all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). *See also NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1300 (Fed. Cir. 2005) (holding that separate terms in claim should be interpreted to provide different meaning than if only a single term was used), citing *Innova/Pure Water*, 381 F.3d at 1119.

All of the asserted claims of both the '691 and '616 Patents are means-plus-function claims except claim 10 of the '616 Patent.

The Special Master has provided a comprehensive description of the inventions disclosed in the '691 and '616 Patents in the R&R and there is therefore no need to repeat it here. (R&R at 17-23.)

### III.   AMF'S OBJECTION AND PROPOSED MODIFICATION

#### A.   Claim Group 14 – "The Results of the Measurements"

AMF conditionally objects to the recommended construction of the Group 14 claim terms from claim 10 of the '616 patent. (R&R at 163-69.) The disputed claim phrase is "the results of the measurements made within the implanted stimulator." In rejecting both parties' proposed constructions, the Special Master recommended that this phrase "refers to the voltage measurement across the pair of tissue-stimulating electrodes." (R&R at 165.) In the first instance, however, AMF believes that no construction is necessary in that this claim phrase is simply not a limitation.[1]

---

[1] The Special Master did not decide this issue in the R&R, as it was not an issue about how the claim term should be construed. Instead, this is an issue about whether or not the phrase is even a claim limitation. If it is not a claim limitation, there is no need to construe the term.

1  Claim 10 of the '616 patent covers "[a] method of testing an implantable tissue stimulating system . . . ." The disputed phrase appears at the end of the claim as part of a clause beginning with "whereby": "displaying the processed status-indicating signals, ***whereby*** the status of the implanted stimulator, including the results of the measurements made within the implanted stimulator, may be made known" (emphasis added).

As AMF argued previously, because this clause begins with "whereby," it is not a claim limitation. Jt. Memo re Summary Judgment (Dkt. No. 109) at 33:12-14, citing *Texas Instruments, Inc. v. United States ITC*, 988 F.2d 1165, 1171-72 (Fed. Cir. 1993); *see also Minton v. National Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) ("whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited"). All the "whereby" clause does here is to state the intended result of the "displaying" limitation. Although "whereby" clauses can be limiting when they state a condition that is material to patentability, *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1330 (Fed. Cir. 2005), that is not so here, where the specification treats impedance and voltage as interchangeable ways of obtaining equivalent information about electricity moving through a pair of electrodes.[2]

If the Court nonetheless finds that this phrase is a limitation, AMF requests that the Court modify the Special Master's R&R to reflect that the term be given its ordinary and customary meaning and no specific construction is required. The Special Master, however, recommends that the Court conclude that the disputed

---

[2] This phrase was added during prosecution. However, any distinction between displaying voltage or displaying impedance was not relevant to the patentability of the claim. The only aspect which arguably was relevant to the patentability (at least from the patent examiner's perspective) was measuring the voltage for "external display," not whether it was voltage or impedance. (R&R at 164-65.)

1 phrase "the results of the measurements made within the implanted stimulator"
2 means "refers to the voltage measurement across the pair of tissue-stimulating
3 electrodes." (R&R at 165.) The real dispute here is whether the claim language
4 "results of the measurements" must be limited to displaying *only* the voltage
5 measurements or that another voltage-related result could alternatively be
6 displayed, such as impedance.[3]

7 The Special Master's recommended construction could be interpreted
8 (improperly) to read out or ignore the claim terms "the results of" in the phrase
9 "including *the results of* the measurements." There is no dispute that the
10 measurements are of voltage. By recommending that the term "refers to the voltage
11 measurement across the pair of tissue-stimulating electrodes," the R&R could be
12 construed to disregard any difference between claim terms "the measurements" and
13 "*the results of* the measurements."

14 As discussed below, this interpretation of the Special Master's
15 recommendation would be contrary to well-established Federal Circuit law. The
16 legally supported interpretation of the Special Master's R&R would give meaning
17 to his "refers to" language in the R&R at page 165. Thus the claim terms "the
18 results of," would include displayed voltage-related values such as impedance. This
19 would be the proper interpretation of the Special Master's recommendation, as it
20 would give meaning to all the claim terms.

21 If, however, the Special Master's recommendation is construed to ignore the
22 claim terms "the results of," such a construction would violate a fundamental claim
23 construction principle. "While not an absolute rule, all claim terms are presumed to
24 have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,*

---

[3] Voltage and impedance are interchangeable ways of showing a characteristic of electrical transmission through a medium such as a wire.

*Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (rejecting claim construction that read "operatively" out of the phrase "operatively connected"), *see also NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1300 (Fed. Cir. 2005) (holding that separate terms in claim should be interpreted to provide different meaning than if only a single term was used, citing *Innova/Pure Water*).

By possibly conflating the claim terms "the measurements" with the "the results of the measurements," the R&R would deny meaning to the claim term "results of." "Measurements" and "results of measurements," however, are not synonymous.

By way of analogy, consider the common liquid-in-glass thermometer (example shown at right). As the temperature goes up, the liquid expands and moves up the tube. As the temperature goes down, the liquid contracts and moves down the tube. The "measurement" made is of the extent of the expansion or contraction (a measurement of length) of the liquid. But by correlating that expansion or contraction to temperature, and by marking the glass accordingly, the thermometer *displays* temperature. Thus, the *results* of the measurement can be *displayed* as temperature. Further, temperature can be displayed a number of ways, such as Fahrenheit or Celsius, which are interchangeable by a simple mathematical relationship.



Likewise, there are a number of ways in which the results of the measurement of voltage can be displayed. For example, voltage and impedance are interchangeable ways to display similar information about electricity moving through a medium such as a wire. Cochlear's system measures voltage, and then displays the results of those measurements as an impedance by simply dividing that voltage measurement by the current, pursuant to the well known Ohm's Law (Impedance = Voltage / Current). Cochlear has admitted that "[i]mpedance is 'a

1 ratio of voltage across and current through a two-terminal electrode," that what
2 Cochlear measures "is not impedance, it is voltage," and that Cochlear calculates
3 the displayed impedance from the measured voltage using Ohm's Law. (Summary
4 Judgment JA-1397-1406 (Nygard Dep. at 108:22-109:24, 115:18-119:24, 121:1-15,
5 125:2-126:12) (Rotter Decl. Ex. 1.)

6   The patent specification also supports the proposition that the phrase "the
7 results of" should include the display of either voltage or impedance. "[The
8 specification] is the single best guide to the meaning of a disputed term." (R&R at
9 11, citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc)).
10 Indeed, the patent specification expressly teaches that the displayed processed
11 status indicating signals can be impedance. *See, e.g.*, '616 patent, column 31:52-58:

> 12 " . . . the resulting voltage drop across the resistors [are] measured and
> 13 transmitted back to the WP as an index of stimulus current. Thus, in the
> 14 monopolar mode, both the stimulus voltage and current can be
> 15 measured, and thereby, the impedance of the electrode and the tissue-
> 16 electrode interface can be measured . . ."

17 Similarly, Figure 6 of the '616 patent, excerpted below, shows the physician's
18 tester, which is the part of the system that displays the processed status indicating
19 signals. The upper right knob has positions to set the display to show the impedance
20 ("Z"), voltage ("V"), or current ("1Khz") of various channels, interchangeably as
21 desired by the user.



60501131.DOCX   AMF'S OBJECTION TO CLAIM CONSTRUCTION RECOMMENDATIONS

The abbreviations used on the tester are explained in Table 7 from column 33 of the '616 patent ("Control Knob 308"—also shown below).

| Control Knob 308 | |
| --- | --- |
| Position 1 = | Impedance of Monopolar A configured channel |
| Position 2 = | Impedance of Monopolar B configured channel |
| Position 3 = | Impedance of Bipolar configured channel |
| Position 4 = | Voltage of Monopolar A configured channel |
| Position 5 = | Voltage of Monopolar B configured channel |
| Position 6 = | Voltage of Bipolar configured channel |
| Position 7 = | Voltage of Pass FET |
| Position 8 = | 1 KHz output current Monopolar A configured channel |
| Position 9 = | 1 KHz output current Monopolar B configured channel |
| Position 10 = | 1 KHz output current Bipolar configured channel |

In addition to being expressly described by the specification, displaying impedance rather than voltage is fully consistent with the language of the claim, which recites "*processing* the status-indicating signals to produce *processed* status-indicating signals which *convey information* regarding the status of the implanted stimulator, *including* the measurements made within the implanted stimulator." The claim calls for "displaying [those] processed status-indicating signals." A processed voltage measurement—such as impedance—is a "processed status indicating signal," whose display "makes known" the results of the voltage measurement. Thus, a construction that could limit the processed status-indicating signals to displaying only "the voltage measurement across the pair of tissue-stimulating electrodes" is unduly limiting, and is contrary to even the express language of the claim. Because there are many ways to process the status-indicating signals, and no particular way is required by the claim, the ordinary and customary meaning should be given to this term and no specific construction is required.

The Special Master's recommendations concerning '616 patent claims 1 and 12 provide further support for AMF's position. For claims 1 and 12, the disputed phrase was "information derived from the status-indicating signals," which AMF believes to convey the same concept as the claim 10 phrase "displaying the processed status-indicating signals, whereby the status of the implanted stimulator,

including the results of the measurements made within the implanted stimulator, may be made known." Notably, the Special Master agreed with AMF as to those '616 patent claim 1 and 12 terms, and recommended that no specific construction was necessary. (R&R at 165-67.) AMF believes that the same logic applies to the disputed claim 10 phrase, and requests that the R&R be modified (to the extent necessary as discussed above) to reflect that no specific construction is necessary of "the results of the measurements made within the implanted stimulator" in claim 10 of the '616 patent and that these terms be given their ordinary and customary meaning.

## IV.  CONCLUSION

AMF therefore respectfully requests that the Court sustain its objections (to the extent necessary) to the Special Master's Report and Recommendations on Claim Construction and enter the Recommendations as modified by AMF's objections.

Respectfully submitted,

DATED: December 19, 2011         KAYE SCHOLER LLP

By: /s/ Daniel Grunfeld
Daniel Grunfeld
Scott G. Lindvall
Robert Laurenzi
Jonathan Rotter
Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION
FOR SCIENTIFIC RESEARCH