1  Daniel Grunfeld (State Bar No. 128494)
   dan.grunfeld@kayescholer.com
2  Jonathan Rotter (State Bar No. 234137)
   jrotter@kayescholer.com
3  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
4  Los Angeles, California  90067
   Telephone: (310) 788-1000
5  Facsimile: (310) 788-1200

6  Scott Lindvall (*pro hac vice*)
   slindvall@kayescholer.com
7  Robert Laurenzi (*pro hac vice*)
   rlaurenzi@kayescholer.com
8  KAYE SCHOLER LLP
   425 Park Avenue
9  New York, New York 10022

10 Attorneys for Plaintiff/Counterdefendant
   ALFRED E. MANN FOUNDATION
11 FOR SCIENTIFIC RESEARCH

12                    **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 ALFRED E. MANN FOUNDATION       ) Case No. CV 07-08108 GHK (SHx)
   FOR SCIENTIFIC RESEARCH,        )
16                                 ) **ALFRED E. MANN FOUNDATION**
          Plaintiff,               ) **FOR SCIENTIFIC RESEARCH'S**
17                                 ) **OPPOSITION TO COCHLEAR**
      v.                           ) **CORPORATION'S AND**
                                   ) **COCHLEAR LTD.'S OBJECTIONS**
18 COCHLEAR CORPORATION et         ) **TO REPORT AND**
   al.,                            ) **RECOMMENDATION ON CLAIM**
19                                 ) **CONSTRUCTION**
          Defendants.             )
20                                 ) Hearing:      January 23, 2012
                                   ) Time:         9:30 a.m.
21                                 ) Location:     Courtroom 650
                                   )
22                                 )
                                   ) Honorable George H. King
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26 ─────────────────────────────   )
   AND RELATED COUNTERCLAIMS.      )
27 ─────────────────────────────   )

28

KAYE SCHOLER LLP

## **TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   THE SPECIAL MASTER PROPERLY CONSTRUED THE FUNCTION OF MEANS-PLUS-FUNCTION CLAIMS THAT USE "RESPONSIVE TO. . . ." LANGUAGE ..........................................................................................2

III.  THE SPECIAL MASTER PROPERLY ANALYZED THE NOUN PRECEDING THE "MEANS" RECITATION................................................4

IV.   COCHLEAR'S SCATTERSHOT CHALLENGES TO THE "OTHER CLAIM ELEMENTS" DO NOT MERIT REVIEW .......................................7

     1.  *'691 patent claim 9*: "a processor for processing such transmissions to generate stimulation signals" ...................................7

     2.  *'691  patent claim 9*: "the ICS including" . . . "means for selectively controlling the frequency at which stimulating signals are applied to selected ones of the electrodes" ......................................8

     3.  *'691 patent claims 9 and 14, '616 patent claims 1 and 12*: "stimulation signals"  *'691 patent claim 6*: "stimulation pulses"  *'616 patent claim 1*: "tissue-stimulating electrodes for receiving the stimulation signals"  *'616 patent claim 12*: "tissue-stimulating electrodes"...........................................................................................8

     4.  *'691 patent claims 9 and 14*: "electrically isolated capacitor-coupled cochlea stimulating electrodes for receiving the stimulation signals"  *'691 patent claim 6*: "electrically isolated capacitor-coupled cochlea stimulating electrodes for receiving the stimulation pulses"  *'616 patent claim 10:* "applying the stimulation signals to at least one pair of the multiplicity of tissue stimulating electrodes"............................................................................9

     5.  *'616 patent claim 10*: "transmitting the stimulator status-indicating signals to an external receiver coupled to the external transmitter"........................................................................................10

     6.  *'616 patent claim 1*: "a physician's tester"  *'616 patent claim 12*: "a portable physician's tester" .........................................................10

V.    CONCLUSION ................................................................................................11

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAYE SCHOLER LLP

## TABLE OF AUTHORITIES

**Cases**

*Data General Corp., v. IBM Corp.,*
    93 F. Supp. 2d 89 (D. Mass. 2000.)....................................................................6

*Finnigan Corp. v. Int'l Trade Comm'n,*
    180 F.3d 1354 (Fed. Cir. 1999) ....................................................................1

*Globespanvirata, Inc. v. Tex. Instrument, Inc.,*
    2005 U.S. Dist. LEXIS 5744 (D.N.J. Apr. 6, 2005.)....................................6

*Inventio AG v. Thyssenkrupp Elevator Ams. Corp.,*
    649 F.3d 1350 (Fed. Cir. 2011) ....................................................................5

*Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. N. L. R. B.,*
    547 F.2d 575 (D.C. Cir. 1976) .................................................................2, 7

*Roche Diagnostics Corp. v. Apex Biotechnology Corp.,*
    455 F. Supp. 2d 840 (S.D. Ind. 2005) ..........................................................4

**Statutes**

35 U.S.C. § 112................................................................................4, 5, 6, 7

Plaintiff/Counterdefendant Alfred E. Mann Foundation for Scientific Research ("AMF") submits the following opposition to Cochlear Corporation's and Cochlear Ltd.'s (collectively "Cochlear") Objections to Report and Recommendation on Claim Construction filed December 19, 2011(Dkt. No. 203) ("Cochlear Obj.").

## I.      INTRODUCTION

Apparently dissatisfied with the unfavorable recommendations set forth in the Special Master's Report and Recommendation ("R&R"), Cochlear has objected to **twenty-eight** of the recommended claim constructions. Curiously, Cochlear lodges this unreasonably large number of objections against a 170-page report that it nevertheless acknowledges is "comprehensive and thorough." (Cochlear Obj. at 1:13-14.) Moreover, the highly qualified Special Master (Mr. Peterson is an attorney specializing in patent law, a former patent examiner with the U.S. Patent and Trademark Office, has a degree in electrical engineering, and has served as a court-appointed special master and technical adviser in more than 50 cases covering a wide range of cutting-edge technologies) conducted a full day hearing allowing both parties ample time to argue and present their positions on claim construction. Declaration of Daniel Grunfeld ("Grunfeld Decl.") Exhs. 1, 2, and 3.

The substance of Cochlear's objections evidences Cochlear's predicament. Many of Cochlear's challenges to the Special Master's constructions are highly abbreviated rehashing of arguments that the Special Master has already carefully considered and rejected in the R&R. Other objections appear to be nothing more than an attempt to preserve Cochlear's ability to challenge as many of the recommended constructions as possible on appeal with placeholders. Although the Court's review of the Special Master's decision is *de novo*, objections to the R&R should be grounded upon reasoned argument and the clear identification and explanation of any purported error in the Special Master's findings. *Cf. Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999) ("The argument

KAYE SCHOLER LLP

1

at the trial and appellate level should be consistent, thereby ensuring a clear presentation of the issue to be resolved, an adequate opportunity for response and evidentiary development by the opposing party, and a record reviewable by the appellate court that is properly crystallized around and responsive to the asserted argument."). The objections should not be a mere litany of old arguments thrown up for renewed consideration. *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. N. L. R. B.*, 547 F.2d 575, 592 (D.C. Cir. 1976) ("We believe that in excepting to a master's findings, a party cannot rely upon such a scattershot approach. We cannot be expected to undertake a complete review of the voluminous record evidence and then proceed, in effect, to act, at least in the first instance, as that party's advocate to determine whether the unadorned exception has any merit. We therefore decline to overturn the Master's finding on this issue."). Cochlear's objections fail to present the Court with sufficient basis or reasoning to reconsider the Special Master's recommendations. The Court should therefore reject Cochlear's arguments and endorse the recommended constructions to which Cochlear objects.

## II.    THE SPECIAL MASTER PROPERLY CONSTRUED THE FUNCTION OF MEANS-PLUS-FUNCTION CLAIMS THAT USE "RESPONSIVE TO. . . ." LANGUAGE

Cochlear asserts that the Special Master improperly construed the corresponding function of seven means-plus-function claim terms that variously utilize the phrase "responsive to" in the claim language.[1] (Cochlear Obj. at 1:23-3:2 and 5:7-8:18.) The essence of Cochlear's argument is that the entirety of the

---

[1] '691 patent claims 7 and 14 (Cochlear Obj. at 5:13-6:16), '691 patent claims 9 and 14 (*id.* at 6:17-7:11), '616 patent claims 1 and 12 (*id.* at 7:12-8:7) and '691 patent claim 8 (*id.* at 8:8-18).

KAYE SCHOLER LLP

language recited after the "means for" term, including the "responsive to" language, must be understood to be part of the function corresponding to the means-plus-function term. Cochlear, however, cites no law to support this very general proposition. Instead, it presents two case-specific instances where "responsive to" language following the recitation of "means" was found to be part of the corresponding function. (Cochlear Obj. at 2:18-28.) Those case-specific findings, however, have no bearing on the Special Master's recommended constructions.  In the case at hand, the Special Master reviewed the particular language in the context of the specific claim language for the seven means-plus-function terms challenged by Cochlear and found that there was no need to include the "responsive to" language as part of the corresponding function for those terms. (R&R at 100-03, 138-39 and 142-143.)

Cochlear states that the Special Master's treatment of the "responsive to" language amounted to "deleting requirements in the plain language of the claim." (Cochlear Obj. at 2:7-8.) This is incorrect. The Special Master explicitly considered the "responsive to" language in a number of the seven challenged claims. After reasoned consideration, the Special Master concluded that the "responsive to" language was applicable to the corresponding structure of the means-plus-function claim and not the corresponding function.

For example, with respect to the '691 patent claim 9 and '616 patent claims 1 and 12, the Special Master said that "some of these phrases recite a particular location and a *'responsive' requirement for the 'means,'* as indicated in the table below: . . . [t]hus, the structure 'corresponding' to the recited functions must also meet those requirements where called for by the claims." (R&R at 104, emphasis added.) As to '691 patent claims 7 and 14, the Special Master stated that "it is clear from the foregoing that the regulator and gate array are 'in the WP' and *'responsive to* at least a portion of the status indicating signals.'" (R&R at 145, emphasis

KAYE SCHOLER LLP

added.)[2] Thus, the Special Master did not ignore the claim language but addressed it directly.[3]

The Special Master's recommendations as to the corresponding functions of the seven means-plus-function claims at issue are sound. Cochlear's objections to the recommended constructions should be rejected.

## III. THE SPECIAL MASTER PROPERLY ANALYZED THE NOUN PRECEDING THE "MEANS" RECITATION

Cochlear objects to five claim construction recommendations because, according to Cochlear, the Special Master "generally interpreted claim elements written in 'means-plus-function' format, but preceded by a noun (a thing), as not covered by 35 U.S.C. § 112, ¶6."[4] Here, again, Cochlear mischaracterizes the Special Master's actions and rationale. Nowhere does the Special Master advocate a rule that the presence of a noun preceding claim language written in means-plus-function format disqualifies the applicability of 35 U.S.C. § 112, ¶6. Instead, the Special Master carefully analyzed such claim language and after presenting detailed and reasoned analysis, applied 35 U.S.C. § 112, ¶6, where appropriate. (R&R at 56-59 and 65-75.)

---

[2] Notably, Cochlear does not address the Special Master's analysis as to these five claim terms in its Opposition.

[3] Neither of the two cases cited by Cochlear stand for the proposition that "[i]t is inappropriate to ignore or read-out such words in a claim."(Cochlear Obj. at 2:16-28.) *See Roche Diagnostics Corp. v. Apex Biotechnology Corp.*, 455 F. Supp. 2d 840, 864 (S.D. Ind. 2005) (distinguishing the two cases cited by Cochlear and holding that the "responsive to" language is part of the means, not the function).

[4] *See* Cochlear Obj. at 3:5-4:28 and specific objections to '616 patent claim 12, Cochlear Obj. at 9:1-23 ("receiver means for receiving . . . .") and '691 patent claims 6 and 14 and '616 patent claims 1 and 12, Cochlear Obj. at 9:24-11:5 ("processor means for processing . . . .")

KAYE SCHOLER LLP

1    For example, the Special Master analyzed the claim term "processor" and
2  found that it connotes structure sufficient to place the claim term outside the
3  confines of a means-plus-function construction. (R&R at 69-75.) Cochlear attacks
4  the Special Master's reasoning here alleging that he resorted to the specification to
5  define the "processor" structure. (Cochlear Obj. at 4:3-8.) This is not correct. The
6  Special Master merely used the specification to confirm his conclusion that the term
7  "processor" recites the necessary structure (R&R at 71 and 72.) In fact, it is clear
8  that the Special Master first analyzed the claim term "processor means" itself and
9  its surrounding claim language, *e.g.*, the claim terms "such transmissions" and "the
10 data-containing signals" (R&R at 70.) Then, after concluding that the term itself
11 recited sufficient structure, the Special Master turned to the specification and
12 extrinsic evidence to confirm his conclusion. In any event, contrary to Cochlear's
13 representations, it was permissible for the Special Master to consider the
14 specification and any relevant extrinsic evidence, such as dictionaries, in making
15 his determination. *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.,* 649 F.3d
16 1350, 1356-57 (Fed. Cir. 2011) (holding that the written description and extrinsic
17 evidence can be referenced "to inform the analysis of whether the claim recites
18 sufficiently definite structure to overcome the presumption that § 112, ¶ 6 governs
19 the construction of the claim").

20   Cochlear's citation to the cases that found "processor means" and similar
21 terms lacking sufficient structure (Cochlear Obj. at 10:15-26) in no way negates the
22 Special Master's conclusion that the claim language at issue in this case need not be
23 confined to 35 U.S.C. § 112, ¶6. Indeed, other courts when considering the meaning
24 of "processor means" within the context of the particular claim language at issue in
25 their specific cases, have also found that "processor means" recites sufficient
26
27
28

KAYE SCHOLER LLP

structure and need not be limited to a means-plus-function construction. *Data General Corp., v. IBM Corp.*, 93 F. Supp. 2d 89, 97 (D. Mass. 2000.)[5]

Cochlear attacks the Special Master's recommendation that "receiver means" is not a means-plus-function term along the same lines as its challenge to the Special Master's conclusion on "processor means." (Cochlear Obj. at 9:1-23.) Again, however, Cochlear fails to address the Special Master's careful analysis of the term "receiver means" within the context of the claim at issue. (R&R at 57-58.) Also, Cochlear again looks to other cases and their case-specific claim language to support its argument that "receiver means" must connote means-plus-function language. (Cochlear Obj. at 9:17-20.) Yet, as with term "processor means," other courts have found that "receiver means" is not confined to a means-plus-function interpretation. *Globespanvirata, Inc. v. Tex. Instrument, Inc.,* 2005 U.S. Dist. LEXIS 5744 (D.N.J. Apr. 6, 2005.)[6]

For these reasons, the Court should accept the Special Master's recommendation that "processor means" and "receiver means" be construed not to be governed by 35 U.S.C. § 112, ¶6.

---

[5] "This Court is persuaded by the testimony of Data General's expert, Professor Finkel, that, to one of ordinary skill in the art, 'processor' refers to a central processing unit which provides memory commands and provides and receives data items. [*Citation omitted*]. Because Claim 10 refers to a structure, i.e., a 'processor' which a person of ordinary skill in the art would consider to be a structure that performs the same functions as the 'means', § 112(6) does not apply to the construction of that term. Thus, this Court concludes that the term 'processor means' in the '603 Patent refers to the central processing unit of a general purpose computer system." *Data General, 93 F. Supp. 2d* at 97.

[6] "'[R]eceiver means' is not governed by §112, ¶ 6 as it connotes sufficient structure;" *Globespanvirata, 2005 U.S. Dist. LEXIS 5744* at *53.

## IV.   COCHLEAR'S SCATTERSHOT CHALLENGES TO THE "OTHER CLAIM ELEMENTS" DO NOT MERIT REVIEW

Cochlear challenges 15 "other" claim interpretations recommended by the Special Master. (Cochlear Obj. at 11:6-15:12.) As a group, the recommended constructions, and Cochlear's respective objections, do not share any common theme nor do they relate to a common structure or functionality. Instead, they simply represent an assortment of recommended constructions that failed to conform to what Cochlear had advocated. Being unable to point out any fundamental error with the Special Master's reasoning, Cochlear instead chooses to: (1) identify the recommended construction it finds objectionable; (2) restate— mostly by reference to earlier filings—its original arguments; and (3) once again request its own construction. These various claim elements implicate complex technical issues, disparate electrical components and detailed functionality that the Special Master expended considerable effort in analyzing and providing recommended meanings. Mere conclusory argument does not satisfy Cochlear's obligation to present a sufficient basis as to why these "other" claim limitations should be interpreted differently than the recommendations contained in the Special Master's R&R. The Court need not undertake this task on Cochlear's behalf. *Oil, Chem. & Atomic Workers Int'l Union*, 547 F.2d at 592.

1.   *'691 patent claim 9*: "a processor for processing such transmissions to generate stimulation signals"

Cochlear objects to the Special Master's finding that the term "processor" identifies structure and thus "processor for processing" is not governed by 35 U.S.C. § 112, ¶6. Cochlear's challenge is rooted in the same arguments it made with respect to the term "processor means" at page 10 of its Opposition Brief.  In response, AMF refers the Court to its discussion of the "processor means" term, *supra* at pp. 4-6.

KAYE SCHOLER LLP

2.   *'691 patent claim 9*: "the ICS including" . . . "means for selectively controlling the frequency at which stimulating signals are applied to selected ones of the electrodes"

Cochlear argues that there is no disclosure in the specification of the '691 patent for the means-plus-function structure corresponding to the function of providing selective control of the frequency at which stimulation signals are applied. (Cochlear Obj. at 12:6-12.) This argument was considered and rejected in a highly detailed analysis presented on pages 125 through 132 of the Special Master's R&R. Cochlear makes no attempt whatsoever to seriously address the lengthy rationale presented by the Special Master on this point or to challenge the specific list of elements on page 132 of the R&R that were found to correspond to the function. Instead, Cochlear presents the Court with a two sentence argument referencing a passage in the patent. Cochlear then makes fleeting mention of the Special Master's "identification of corresponding structure" without actually identifying or discussing that structure. In short, Cochlear present no clear basis as to why the Special Master's seven-page analysis is wrong.

The Special Master's reasoning and recommendation as to this issue on pages 125 through 132 of the R&R is sound and should not be disturbed.

3.   *'691 patent claims 9 and 14, '616 patent claims 1 and 12*: "stimulation signals"
*'691 patent claim 6*: "stimulation pulses"
*'616 patent claim 1*: "tissue-stimulating electrodes for receiving the stimulation signals"
*'616 patent claim 12*: "tissue-stimulating electrodes"

The R&R shows that the Special Master carefully addressed the issue of whether the claim terms "stimulation signals" and "stimulation pulses" require the implantation of electrodes within the cochlea. He also carefully considered whether the claim term "tissue-stimulating electrodes" similarly mandated electrode implantation within the cochlea. (R&R at 63, 81 and 82.) In both instances, the Special Master analyzed the claim language as well as the surrounding claim

8

KAYE SCHOLER LLP

1    language and concluded that there is nothing in those terms requiring particular

2    placement of the electrode as Cochlear argued.

3         Cochlear does not address the Special Master's detailed analysis in its

4    objection. (Cochlear Br. at 12:23-13:11.) Instead, Cochlear merely summarizes the

5    very same arguments rejected by the Special Master. The core of the arguments rely

6    on citation from the Summary of the Invention of the '616 patent. Yet, the Special

7    Master fully considered what the Summary of the Invention and other portions of

8    the specification say about the placement of electrodes. (R&R at 62-63.) The

9    Special Master properly concluded that the claim terms are not limited to the

10   disclosure as Cochlear argues. The Court should accept the Special Master's

11   recommended construction.

12        4.    *'691 patent claims 9 and 14*: "electrically isolated capacitor-
              coupled cochlea stimulating electrodes for receiving the
13            stimulation signals"
              *'691 patent claim 6*: "electrically isolated capacitor-coupled
14            cochlea stimulating electrodes for receiving the stimulation
              pulses"
15            *'616 patent claim 10:* "applying the stimulation signals to at least
              one pair of the multiplicity of tissue stimulating electrodes"
16

17        Here again we have the situation where Cochlear would undo with a few

18   general statements what the Special Master built through detailed analysis.

19   Cochlear has consistently argued that the above claims terms require a "direct

20   connection between a capacitor and the electrode." (Cochlear Obj. at 13:24-27.) It

21   argued this point in the parties' joint claim construction brief and it argued this

22   point again at the Markman hearing. The Special Master considered the argument

23   and, in ten pages of reasoned and detailed analysis, rejected it. (R&R at 82-96.) In

24   response, Cochlear recasts the very same argument it has made throughout this

25   litigation saying only that "a direct connection was a critical distinction between the

26   patent and the prior art" and then providing a nine-word quote from the

27   specification. (Cochlear Obj. at 13:26-14:1.) Cochlear's objections provide no

28   detailed argument or specific challenge to the Special Master's careful analysis and

KAYE SCHOLER LLP

9

1  ultimate conclusion that the claim terms do not necessitate a direct connection
2  between a capacitor and the electrode. Consequently, the Court should adopt the
3  Special Master's recommendation.

4       5.    *'616 patent claim 10*: "transmitting the stimulator status-indicating signals to an external receiver coupled to the external transmitter"
5
6

7       The Special Master rejected Cochlear's attempt to impose on claim 10 a
8  requirement that the transmitter coil be separate structure from the receiver coil. In
9  doing so, the Special Master said that "nothing in the claim language [of claim 10]
10  requires what Cochlear urges." (R&R at 119.) The Special Master also noted that
11  claim 10 is a method claim whereas the other claims have separate receiver and
12  transmitted coils were "system" claims. (*Id.*) Further, the Special Master stated that
13  the specification's discussion of the '844 prior art does not rise to the "clear and
14  unmistakable disavowal" required for disclaimer of claim scope that would
15  necessitate Cochlear's construction. (R&R at 120.) Cochlear does not address any
16  of these important points. Rather than addressing the Special Master's analysis,
17  Cochlear merely provides a three-sentence synopsis of its original arguments—
18  arguments which were expressly considered and rejected by the Special Master.
19  (Cochlear Obj. at 14:16-25.)

20       The Special Master's conclusion should be adopted for the very reasons
21  stated by the Special Master, i.e., neither the claim language nor the specification
22  require Cochlear's proposed construction.

23       6.    *'616 patent claim 1*: "a physician's tester"
                         *'616 patent claim 12*: "a portable physician's tester"
24

25       The Special Master rejected Cochlear's argument that the claimed
26  "physician's tester" and "portable physician's tester" cannot also be programming
27  devices. The Special Master found that:
28

KAYE SCHOLER LLP

> [T]he claim does not require distinct devices and the master declines to import such a distinction. Cochlear points to nothing in the nature of the invention or the specification that requires there be two distinct devices. (R&R at 149.)

Cochlear objects to this conclusion by referencing the specification of the '616 patent and stating that "[t]he Special Master's recommended construction does not preserve the distinction between the physician's tester and the programming system." (Cochlear Obj. at 15:7-9.) Despite Cochlear's implication to the contrary, the Special Master was fully aware of what the specification says on this issue and indeed quotes the very same passage from the specification that Cochlear cites in its objection. (R&R at 147-48 *citing* '616 patent 27:24-27.) However, the Special Master properly concluded that nothing in the specification required that the distinction between the two types of devices be carried into the claims as Cochlear advocates. Cochlear presents no argument as to why the Special Master's conclusion is wrong.

The Special Master's finding that these claim terms do not require separate tester and programming devices is correct and should be adopted by the Court.

## V.    CONCLUSION

AMF respectfully requests that the Court reject Cochlear's objections to the Special Master's report and adopt the R&R with the single modification (if required) requested by AMF.

DATED:  January 9, 2012

Respectfully submitted,

KAYE SCHOLER LLP


By: /s/ Daniel Grunfeld
Daniel Grunfeld
Scott G. Lindvall
Robert Laurenzi
Jonathan Rotter
Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION
FOR SCIENTIFIC RESEARCH

AMF'S OBJECTION TO CLAIM CONSTRUCTION RECOMMENDATIONS