1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2 |   Including Professional Corporations
BRUCE G. CHAPMAN (Cal. Bar No. 164258)
3 | bchapman@sheppardmullin.com
MANUEL C. NELSON (Cal. Bar No. 229590)
4 | mnelson@sheppardmullin.com
DENNIS J. SMITH (Cal. Bar No. 233842)
5 | djsmith@sheppardmullin.com
333 South Hope Street, 43rd Floor
6 | Los Angeles, California 90071-1422
Telephone:  213.620.1780
7 | Facsimile:   213.620.1398

8 | Attorneys for Defendants and
Counterclaimants COCHLEAR LIMITED
9 | and COCHLEAR AMERICAS

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12 |

13 | ALFRED E. MANN FOUNDATION
FOR SCIENTIFIC RESEARCH, *et al.*,

14 |                          Plaintiffs,

15 |            v.

16 | COCHLEAR CORPORATION, *et al.*,

17 |                          Defendants.

18 | _____

19 | AND RELATED COUNTERCLAIMS.

20 |

Case No. CV 07-08108 FMO (SHx)

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES RE MOTIONS FOR SUMMARY JUDGMENT**

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page(s)**

I.     THE PRIOR CLAIM CONSTRUCTION DOES NOT RENDER THE
       CLAIMS DEFINITE ................................................................................ 1

II.    THE CORRESPONDING STRUCTURE IN THE PATENTS IS
       PROGRAMMABLE ................................................................................ 3

III.   THERE ARE NO ALGORITHMS DISCLOSED FOR THE
       MICROPROCESSOR IN THE PATENTS-IN-SUIT ............................ 7

IV.    A PERSON SKILLED IN THE ART COULD NOT HAVE
       UNDERSTOOD THE PATENTS TO PROVIDE THE REQUIRED
       DISCLOSURE ...................................................................................... 10

V.     CONCLUSION .................................................................................... 11

TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*
    521 F.3d 1328 (Fed. Cir. 2008)..................................................................5, 10, 11

*Blackboard, Inc. v. Desire2Learn Inc.*
    574 F.3d 1371 (Fed.Cir. 2009) ....................................................................9, 10

*ePlus, Inc. v. Lawson Software, Inc.*
    700 F.3d 509 (Fed. Cir. 2013) ..........................................................................3

*Ergo Licensing, LLC v. Carefusion 303, Inc.*
    673 F.3d 1361 (Fed. Cir. 2012)...................................................................5, 7, 8

*Harris Corp. v. Ericsson, Inc.*
    417 F.3d 1241 (Fed. Cir. 2005) .......................................................................5

*Metrologic Instruments, Inc. v. Symbol Techs., Inc.*
    460 F.Supp.2d 571 (D.N.J. 2006) ...................................................................5

*Microsoft Corp. v. Multi-Tech Sys., Inc.*
    2002 WL 1949755 (D. Minn. August 16, 2002)..............................................6

*Net MoneyIn, Inc. v. Verisign, Inc.*
    545 F.3d 1359 (Fed. Cir. 2008)......................................................................9, 11

*Noah Sys., Inc. v. Intuit Inc.*
    675 F.3d 1302 (Fed. Cir. 2012)....................................................................3, 8, 10

*Source Search Techs., LLC v. LendingTree, LLC*
    588 F.3d 1063 (Fed. Cir. 2009) .......................................................................3

*Tehrani v. Hamilton Medical, Inc.*
    331 F.3d 1355 (Fed. Cir. 2003) .......................................................................6

*WMS Gaming Inc. v. Int'l Game Tech.*
    184 F.3d 1339 (Fed. Cir. 1999)..................................................................4, 5, 6, 9

**Statutes**                                                                                  **Page(s)**

35 U.S.C. § 112 ¶ 1 ........................................................................................10

35 U.S.C. § 112 ¶ 2 ....................................................................................1, 2, 3

35 U.S.C. § 112 ¶ 6 ................................................................................1, 2, 3, 10

1    Pursuant to the Court's order dated August 29, 2013, defendants Cochlear
2    Corporation (n/k/a Cochlear Americas) and Cochlear Limited (collectively
3    "Cochlear") provide the following supplemental memorandum of points and
4    authorities.

5

6    **I.    <u>The Prior Claim Construction Does Not Render the Claims Definite</u>**

7        The first issue posed by the Court in the August 29th Order was:  whether the
8    fact that the parties agreed to constructions of the corresponding structures of the
9    means-plus-function elements in dispute renders the respective claims definite.  The
10   answer is no.

11       For a means-plus-function clause under 35 U.S.C. § 112 ¶ 6, the claim
12   "cover[s] the corresponding structure … described in the specification and
13   equivalents thereof."  *Id.*  The parties identified and agreed to the structure disclosed
14   in the '616 and '691 patents corresponding to the functions in the clauses at issue.
15   The parties did not agree about (and indeed both parties specifically reserved the
16   issue of) whether or not that corresponding structure was sufficient to satisfy the
17   definiteness requirements of 35 U.S.C. § 112 ¶ 2 and ¶ 6.  Specifically, in agreeing
18   to the corresponding structure, Cochlear stated:

19       Notwithstanding the above construction, Cochlear … explicitly
20       reserve[s] [its] defenses under 35 U.S.C. § 112, ¶2 …. Specifically,
21       although … Cochlear … agree[s] that the above-recited structure is, to
22       the extent specified, the structure described in the patent specifications
23       for performing the functions recited in the means plus function
24       limitations, Cochlear reserves its defenses under 35 U.S.C. §112, ¶2
25       that such structure (such as … a microprocessor) is not sufficient … to
26       meet the requirement of 35 U.S.C. §112, ¶2 and ¶6.

27

28

1  *See* Stipulation Regarding Certain Claim Construction (D.I. 52), para. 4.  Also, in

2  agreeing to the corresponding structure, the Alfred E. Mann Foundation for

3  Scientific Research ("AMF") stated:

4      Likewise, Alfred E. Mann Foundation for Scientific Research ("AMF")

5      specifically reserves its position that the claims of the '616 and '691

6      patents fully satisfy the requirements of 35 U.S.C. §112, ¶2 and ¶6.

7  *Id*. at para. 5.  In other words, the parties narrowed their dispute by agreeing to the

8  identity of the corresponding structure, but explicitly disagreed and carved out the

9  issue of whether that structure met the requirements for definiteness under 35 U.S.C.

10 §112, ¶ 2 and ¶ 6 .  The parties' agreement, if enforced, precludes AMF from

11 identifying additional corresponding structure (such as an algorithm) as part of the

12 indefiniteness analysis, but it does not prevent the Court from deciding whether the

13 claims are indefinite as construed by the Special Master.

14      Moreover, the parties' agreement regarding corresponding structure only

15 relates to two of the means-plus-function clauses at issue (those in claims 1 and 12

16 of the '616 patent), because the Special Master recommended a different

17 corresponding structure for the "means for generating data indicative of the audio

18 signal" in claims 6-9 and 14 of the '691 patent. *See* JA164-167 (Special Master's

19 Report and Recommendation on Claim Construction).   In making that

20 recommendation, the Special Master made no finding regarding validity and

21 sufficiency of that structure under 35 U.S.C. §112, ¶ 2 and ¶ 6.  Indeed, the Special

22 Master was appointed solely "to provide the Court with his report and

23 recommendation re: the construction of the disputed claim terms," so he did not

24 have the authority to consider the invalidity of the claims for indefiniteness.  *See*

25 Order re: Joint Status Report Regarding Appointment of Special Master (D.I. 179).

26 Thus, like the parties' agreement on corresponding structure, the Special Master's

27 Report and Recommendation cannot have resolved any indefiniteness issues, which

28

1  were neither addressed in the report nor within the scope of the Special Master's

2  appointment.

3        The claim construction, whether agreed-to or recommended by the Special

4  Master, identifies the structure from the patents-in-suit that corresponds to the

5  means-plus-function clauses at issue.  There is a separate question – explicitly

6  carved out by the parties and not previously addressed – regarding the sufficiency of

7  the corresponding structure, and thus whether the claims as construed satisfy 35

8  U.S.C. §112, ¶ 2 and ¶ 6.  Both parties have chosen to raise this question by

9  summary judgment motion (*see* D.I. 109 and D.I. 246), which is a common way for

10 a Court to address the issue.  *See e.g. Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302,

11 1304-1305 (Fed. Cir. 2012) (summary judgment of indefiniteness after claim

12 construction); *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063,

13 1068 (Fed. Cir. 2009) (motion for summary judgment of indefiniteness brought after

14 claim construction); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed.

15 Cir. 2013) (indefiniteness issue not waived when summary judgment motion filed

16 before trial).  As a result, the indefiniteness question has not been resolved and is

17 properly before the Court at this time.

18

19 **II.     The Corresponding Structure in the Patents is Programmable**

20       The second issue posed by the Court in the August 29th Order was:  what the

21 specifications of the two patents-in-suit respectively disclose as to whether the

22 means-plus-function elements in dispute are programmable and require algorithms.

23 The answer is that the patents-in-suit disclose a "microprocessor," which is

24 inherently programmable and requires an algorithm.

25       Each of the means-plus-function clauses at issue, for both patents, has been

26 determined to correspond to a microprocessor.  JA160-161; 164-167 (Special

27 Master's Report).  Both patents have identical descriptions of this microprocessor as

28 "microprocessor 30" ('616 patent 4:56-57, 4:64, 5:1; 33:8-9; '691 patent 4:51-52,

4:59, 4:63, 32:56-57), "the general processing of microprocessor 30" ('616 patent 4:62-63; '691 patent 4:57-58), "[the or its] microprocessor" ('616 patent 4:65-66, 8:52, 26:20, 26:27, 27:20-21, 31:23, 31:58-59, 32:62; '691 patent 4:60-61, 8:42, 25:62, 26:2, 26:62-63, 31:3, 31:40-41, 32:43), "processed in the microprocessor 30" ('616 patent 5:10; 8:31-32; '691 patent 5:5; 8:22-23), "utilized [in or within] the microprocessor 30" ('616 patent 5:44-45, 8:45; '691 patent 5:39-40, 8:35, ) and "microprocessor control" or "control of the microprocessor 30" ('616 patent 32:36, 33:3; '691 patent 32:17, 32:51 ).  The microprocessor is also depicted as a box 30 (with the label µP, a common abbreviation for microprocessor) in Figures 1 and 7 of both patents.

Although the patents-in-suit do not explicitly state that "microprocessor 30" is programmable, that is the very nature of a microprocessor.  *See* Wikipedia ("A microprocessor incorporates the functions of a computer's central processing unit (CPU) on a single integrated circuit (IC), or at most a few integrated circuits. It is a multipurpose**, programmable** device that accepts digital data as input, processes it according to instructions stored in its memory, and provides results as output.").[1] Moreover, the programmable nature of microprocessors is inherently recognized in Federal Circuit case law.  *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999) ("The structure of a microprocessor programmed to carry out an algorithm is limited by the disclosed algorithm.").

Indeed, both AMF's and Cochlear's experts agree that the microprocessor disclosed in the '616 and '691 patents is programmable.  *See* JA492, Declaration of Darrin Young in Support of Plaintiff's Motion for Summary Judgment ("Young Decl."), ¶ 26 ("programmed at the factory").  See also JA374-375, Second

---

[1] http://en.wikipedia.org/wiki/Microprocessor (emphasis added, internal footnotes omitted); *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 n. 3 (Fed. Cir. 1999) ("The instructions of the software program cause … the microprocessor … to perform the desired function ….").

1  Declaration of Robert L. Stevenson, Ph.D. ("Second Stevenson Decl."), ¶ 6
2  ("regardless of whether microprocessor 30 in the patents is characterized as a DSP,
3  an ASIC or just a microprocessor, it is unquestionable that the microprocessor
4  cannot perform a specialized function without being programmed with an
5  appropriate algorithm for the task").

6      Although AMF concedes (as it must) that the microprocessor disclosed in the
7  patents-in-suit is programmable, it tries to create a dichotomy between general
8  purpose microprocessors used in computers and "specialized microprocessors" used
9  in products that are programmed at the factory.  *See e.g.* JA493, Young Decl. ¶ 29
10  ("[W]ashing machines, automobiles, and even modems … would include
11  microprocessors.  The microprocessors in those machines would not be general
12  purpose microprocessors …").  AMF further suggests in its summary judgment
13  briefing that the Federal Circuit case law requiring an algorithm for microprocessors
14  does not apply in situations involving specialized microprocessors used in such
15  products.

16      The case law does not recognize a distinction between general purpose
17  microprocessors and specialized microprocessors programmed at the factory.  In
18  fact, the case law makes it quite clear that no such distinction exists.  *See e.g. WMS*
19  *Gaming*, 184 F.3d at 1343 and 1347-49 (applying algorithm requirement to
20  microprocessor in a slot machine); *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241,
21  1245 and 1253-54 (Fed. Cir. 2005) (applying algorithm requirement to
22  microprocessor in cellular communication equipment); *Metrologic Instruments, Inc.*
23  *v. Symbol Techs., Inc.*, 460 F. Supp. 2d 571, 578 and 624 (D.N.J. 2006) (applying
24  algorithm requirement to microprocessor in laser bar code reader); *Aristocrat Techs.*
25  *Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1330 and 1332-33 (Fed. Cir.
26  2008) (applying algorithm requirement to microprocessor in slot machine); *Ergo*
27  *Licensing, LLC v. Carefusion 303, Inc.*, 673 F.3d 1361, 1362 and 1364 (Fed. Cir.
28  2012) (applying algorithm requirement to microprocessor in medical infusion

device).  Plainly, devices like slot machines and bar code readers are programmed at the factory (not by the user), and the requirement for algorithmic structure has been applied to those products.

Indeed, the requirement for an algorithm has been applied to patents very much like that presented by the cochlear implant system of the '616 and '691 patents.  *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355 (Fed. Cir. 2003) involved a patent for a respirator for ventilation of a patient who needs assistance breathing.  *Id.* at 1356.  In the *Tehrani* patent, sensors detect the levels of oxygen and carbon dioxide in the patient, and send data signals to an analog-to-digital converter and then to a digital processor which includes a microcomputer that uses an algorithm to determine the values for tidal volume and breath frequency based on the carbon dioxide and oxygen data signals.  *Id.* at 1357.  The Federal Circuit found that this processing function was performed by a microprocessor and, pursuant to *WMS Gaming*, remanded the case to the district court to determine the precise algorithm that is part of the structure.  *Id.* at 1362.  So, from *Tehrani* we know that the Federal Circuit applies the algorithm requirement to specialized microprocessors in medical devices like those at issue in this case.

Likewise, in *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 2002 WL 1949755 (D. Minn. August 16, 2002) the district court applied the algorithm requirement to a digital signal processor (DSP) under virtually the same situation described by AMF's expert Prof. Young.  In *Microsoft*, the court considered DSP implemented voice processing in connection with signal processing hardware (*id. at *17.*), just as AMF's expert says would occur when implementing the patents-in-suit (JA492-493, Young Decl. ¶¶ 27-28).  Under virtually the same facts as asserted by AMF, the *Microsoft* court applied the algorithm requirement of *WMS Gaming* to the DSP, limiting the claim to the specific algorithm disclosed in the patent.  *Id.*  From the case law it is clear that microprocessors in medical products and specialized

1  microprocessors, such as DSPs, require structure consisting of an algorithm as well
2  as a microprocessor.
3         The '616 and '691 patents-in-suit identify a "microprocessor"; the claim
4  construction identifies that "microprocessor" as the corresponding structure for the
5  means-plus-function clauses at issue; and Federal Circuit case law uniformly
6  requires that microprocessor-implemented means-plus-function clauses be restricted
7  by the algorithm required to program the microprocessor to perform the recited
8  function.  Microprocessors – all microprocessors – are programmable and trigger the
9  algorithm requirement.
10
11  **III.    There Are No Algorithms Disclosed for the Microprocessor in the**
12          **Patents-in-Suit**
13         The third issue posed by the Court in the August 29th Order was:  what
14  algorithms (partial or otherwise) are disclosed in the respective specifications of the
15  two patents-in-suit as to the corresponding microprocessor structures in dispute.
16  The answer is that <u>no</u> algorithms of any kind are disclosed for the microprocessor in
17  the patents-in-suit.
18         An algorithm may be expressed in any understandable terms including as a
19  mathematical formula, in prose, or as a flow chart.  *Ergo Licensing*, 673 F.3d at
20  1365.  "Even described in prose, **an algorithm is still a step-by-step procedure** for
21  accomplishing a given result."  *Id.* (emphasis added; internal quotations omitted).
22  Cochlear's expert Prof. Stevenson has reviewed the patents-in-suit and found no
23  algorithms of any kind disclosed for the microprocessor.  See JA28-31, Declaration
24  of Robert L. Stevenson, Ph.D. (First Stevenson Decl."), ¶¶ 5-11.
25         Although AMF's expert Prof. Young asserts that there are algorithms
26  disclosed in the patents-in-suit, examination of his declaration shows that this is not
27  the case.  With regard to claims 6-9 and 14 of the '691 patent and the function of
28  "generating data indicative of the audio signal," Prof. Young does not identify any

1  "step-by-step procedure" disclosed in the patent for that function.  Instead, Prof.

2  Young looks to the implant to see how it processes signals sent to it by

3  microprocessor 30.  JA495, Young Decl. ¶ 34.  From the implant, Prof. Young

4  concludes that the microprocessor must perform a certain function ("the DSP of the

5  wearable processor must perform the inverse function").  *Id.*  And from that function

6  Prof. Young concludes that "one of ordinary skill in the art would understand the

7  steps (or algorithm) performed by the microprocessor…."  JA495, Young Decl. ¶

8  35; *see also* JA375, Second Stevenson Decl. ¶¶ 7-8.  In other words – according to

9  Prof. Young – although there is no algorithm (*i.e.* "step-by-step procedure")

10  disclosed in the patents-in-suit, a person skilled in the art would know what

11  algorithm to use.  As such, Prof. Young's testimony admits that there is no

12  algorithm **actually disclosed** in the patents for generating data indicative of the

13  audio signal.

14      For claims 1 and 12 of the '616 patent and the function "processing the

15  received status-indicating signals to derive information therefrom regarding the

16  operation of the ICS [implant] and its plurality of tissue stimulating electrodes,"

17  Prof. Young just points to what the physician's tester does, not to any algorithm (*i.e.*

18  "step-by-step procedure") disclosed in the '616 patent.  JA497, Young Decl. ¶ 44

19  (lines 9-19); *see also* JA376, Second Stevenson Decl. ¶ 12.  Without any citation to

20  the '616 patent disclosure, Prof. Young then argues that a person skilled in the art

21  knows that the microprocessor would make an impedance calculation in one of two

22  ways.  *See* JA497, Young Decl., ¶ 44 (lines 19-25).  As such, Prof. Young's

23  testimony again admits that there is no algorithm **actually disclosed** in the patents

24  for processing the received status-indicating signals to derive information therefrom

25  regarding the operation of the ICS [implant] and its plurality of tissue stimulating

26  electrodes.

27      The analysis should end at this point.  As explained in *Noah Sys.*, 675 F.3d at

28  1313:

1    [Federal Circuit] case law regarding special purpose computer-
2    implemented means-plus-function claims is divided into two distinct
3    groups:  First, cases in which the specification discloses no algorithm;
4    and second, cases in which the specification does disclose an algorithm
5    but a defendant contends that the disclosure is inadequate.  *Compare*
6    *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383-85 (Fed.
7    Cir. 2009) (no algorithm) *with WMS Gaming*, 184 F.3d at 1349
8    (algorithm).  This distinction is important because we have clarified
9    that, **while "[i]t is certainly true that the sufficiency of the**
10   **disclosure of algorithmic structure must be judged in light of what**
11   **one of ordinary skill in the art would understand the disclosure to**
12   **impart,"** *in a situation where the specification discloses no*
13   *algorithm, "[t]hat principle … has no application …."*
14   (Emphasis added).
15        AMF stipulated that the structure corresponding to the means-plus-function
16   clauses at issue corresponded to a microprocessor with no accompanying algorithm.
17   Prof. Stevenson has reviewed the specifications of the patents-in-suit and found no
18   algorithm disclosed for the microprocessor to use in performing the functions of the
19   means-plus-function clauses at issue.  Prof. Young states that a person skilled in the
20   art could determine an algorithm from the disclosure of the patents-in-suit, but does
21   not identify an algorithm (*i.e.* "step-by-step instructions") actually disclosed in the
22   patents.  Because no algorithm is disclosed, the understanding of one of ordinary
23   skill in the art is irrelevant under Federal Circuit case law.  A claim having a means-
24   plus-function clause for which the only disclosed structure is a microprocessor is
25   invalid if the specification fails to disclose an algorithm for performing the claimed
26   function.  *Net MoneyIn, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008).
27
28

**IV.** <u>**A Person Skilled in the Art Could Not Have Understood the Patents to**</u>
<u>**Provide the Required Disclosure**</u>

The final issue posed by the Court in the August 29th Order was:  whether a person of ordinary skill in the art would have understood the disclosure in the patents-in-suit to provide the necessary structure under 35 U.S.C. § 112, ¶ 6 as to each means-plus-function element in dispute.  The answer is no; a person of ordinary skill in the art could not have understood the patents-in-suit to provide the necessary algorithmic structure, because no algorithms are actually disclosed.

"A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function."  *Blackboard*, 574 F.3d at 1385.  There are two separate and distinct patent law issues at play, and it is critical not to conflate them.  *Aristocrat*, 521 F.3d at 1336.  The first issue is that, under 35 U.S.C. § 112, ¶ 1, the patent specification must enable a person of ordinary skill in the art to practice the invention.  *Id.* The second issue is the requirement to disclose the structure that performs the claimed function under 35 U.S.C. § 112, ¶ 6.  *Id.* "Whether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here.  Instead, the pertinent question in this case is whether [the] patent **discloses** structure that is used to perform the claimed function."  *Id*. (emphasis added).  *See also Noah Sys.*, 675 F.3d at 1317 ("We explained that the **disclosure** must identify the method for performing the function, whether or not a skilled artisan might otherwise be able to glean such a method from other sources or from his own understanding." (emphasis in original)); *Blackboard*, 574 F.3d at 1385 ("[T]he patentee sought to overcome a finding of indefiniteness by relying on expert testimony that a software programmer with ordinary skill in the pertinent art would be aware of programs that could be used to perform the recited function.  The court explained, however, that the expert's testimony was not directed at the correct

1  inquiry.  The court stated: The correct inquiry is to look at the **disclosure** of the

2  patent ….." (emphasis in original)).

3      In view of the Federal Circuit's guidance that what is at issue is the actual

4  disclosure of the patents-in-suit, and not algorithms that can be gleaned from it by a

5  person skilled in the art, Prof. Young's testimony – that a person of ordinary skill in

6  the art would understand the steps performed by the microprocessor (JA495, Young

7  Decl. ¶ 35) or would know to implement one of two algorithms based on Ohm's law

8  (JA497, Young Decl., ¶ 44 lines 19-25) – is completely beside the point.  "[T]he

9  pertinent question in this case is whether [AMF's patents] disclose[] structure that is

10  used to perform the claimed function."  *Aristocrat*, 521 F.3d at 1336.  Because the

11  patents do not disclose an algorithm, the use of means-plus-function clauses

12  implemented with a microprocessor renders the claims invalid.   *Net MoneyIn*, 545

13  F.3d at 1367.

14

15  **V.    Conclusion**

16      Not only did AMF stipulate that the only structure corresponding the means-

17  plus-function claims at issue was a microprocessor (without any corresponding

18  algorithm), but all of the evidence confirms that the patents-in-suit do not actually

19  disclose any algorithm for programming the microprocessor. Under Federal Circuit

20  law, a microprocessor-implemented means-plus-function clause must be

21  accompanied by a disclosed algorithm or it is invalid.  Here, without the required

22  algorithms, claims 6-9 and 14 of the '691 patent and claims 1 and 12 of the '616

23  patent are invalid as indefinite.

24  Dated:  September 5, 2013          SHEPPARD, MULLIN, RICHTER
                                       & HAMPTON LLP
25

26                                     By:___/s/_____
                                          Bruce G. Chapman
27                                     Attorneys for Defendant/Counterclaimants
                                       COCHLEAR LTD. and COCHLEAR AMERICAS
28