DANIEL JOHNSON, JR. (SBN 57409)
DANIEL GRUNFELD (SBN 128494)
MICHAEL J. LYONS (SBN 202284)
JASON E. GETTLEMAN (SBN 269733)
MORGAN, LEWIS & BOCKIUS LLP
3000 El Camino Real, Suite 7000
Palo Alto, CA 94306-2122
Tel:   650.843.4000
Fax:  650.843.4001
Email: djjohnson@morganlewis.com
Email: dgrunfeld@morganlewis.com
Email: mlyons@morganlewis.com
Email: jgettleman@morganlewis.com

Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION FOR
SCIENTIFIC RESEARCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>Plaintiff,<br><br>vs.<br><br>COCHLEAR CORPORATION, et al.,<br><br>Defendants. | Case No. 2:07-cv-08108-FMO-SH<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL ARGUMENT .................................................................................................... 1
    A. Cochlear Is Barred As A Matter Of Law From Raising The Indefiniteness Argument ............................................................................. 1
    B. The Specifications Of The AMF Patents Disclose That The Means-Plus-Function Elements In Dispute Do Not Require Programming And Do Not Require Algorithms ................................... 4
        1. Claims 1, 6, 9, and 14 of the '691 Patent ................................. 4
        2. Claims 1 and 12 of the '616 Patent ........................................... 7
    C. To The Extent An Algorithm Is Required, The AMF Patents Adequately Disclose Structure To Meet The Definiteness Requirement ................................................................................................ 8
        1. Claims 1, 6, 9, And 14 Of The '691 Patent .............................. 9
        2. Claims 1 And 2 Of The '616 Patent .......................................... 11
    D. A Person Of Ordinary Skill In The Art Would Have Understood The AMF Patents To Provide The Necessary Structure Under 35 U.S.C. § 112, ¶ 6 As To Each Means-Plus-Function Element In Dispute ................................................................................................... 13
III. CONCLUSION ............................................................................................................ 15

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24333109.8

i   CASE NO. 2:07-cv-08108-FMO-SH

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
   659 F.3d 1121 (Fed. Cir. 2011) .................................................................................. 2

*e-LYNXX Corp. v. Innerworkings, Inc.*,
   1:10-CV-2535, 2012 WL 4484921 (M.D. Pa. Sept. 27, 2012) ................................. 8

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
   673 F.3d 1361 (Fed. Cir. 2012) ......................................................................... 11, 13

*Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1341 (Fed. Cir. 2008) .......... 8

*Function Media, LLC v. Google Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ................................................................................ 14

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ............................................................................ 1, 8

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ................................................................................ 8

*Interactive Gift Express, Inc. v. Compuserve Incorporated*,
   256 F.3d 1323 (Fed. Cir. 2001) ................................................................................ 3

*Key Pharmaceuticals v. Hercon Laboratories Corp.*,
   161 F.3d 709 (Fed. Cir. 1998) .............................................................................. 3, 6

*Levine v. Samsung Telecommunications Am., LLC*,
   2012 WL 383647, at *19 (E.D. Tex. Feb. 3, 2012) ........................................ 4, 5, 6

*Medversant Technologies, L.L.C. v. Morrisey Associates, Inc.*,
   2011 WL 9527718 ............................................................................................ 12, 14

*N. Telecom Ltd. v. Samsung Electronics Co., Ltd.*,
   215 F.3d 1281 (Fed. Cir. 2000) ................................................................................ 3

*New Hampshire v. Maine*,
   532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ...................................... 3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*SPX Corp. v. Bartec USA, LLC,*
 557 F. Supp. 2d 810 (E.D. Mich. 2008) .................................................. 10, 11, 12, 14

*Telcordia Techs., Inc. v. Cisco Sys., Inc.,*
 612 F.3d 1365 (Fed. Cir. 2010) ............................................................................... 9

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
 659 F.3d 1376 (Fed. Cir. 2011) ................................................................. 11, 13, 14

**STATUTES**

35 U.S.C. § 112, ¶ 6 ............................................................................................. 13

**OTHER AUTHORITIES**

Rule 53(f)(2) .......................................................................................................... 2

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

DB2/ 24333109.8

iii     CASE NO. 2:07-cv-08108-FMO-SH

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Alfred E. Mann Foundation for Scientific Research ("AMF") files this Supplemental Memorandum of Points and Authorities in support of its motion for summary judgment that the asserted means-plus-function claims of U.S. Patent Nos. 5,609,616 ("'616 patent") and 5,938,691 ("'691 patent") are not indefinite. For at least the following reasons, the Court should grant AMF's motion and deny Cochlear's motion.

Cochlear's motion for summary judgment of indefiniteness fails for several reasons. *First*, Cochlear failed to raise the issue of indefiniteness with the Special Master and accepted the Special Master's definition of the critical terms. As the Court pointed out to Cochlear's counsel at the Hearing: "you didn't raise the issue of algorithms with the special master, and I don't know why you didn't. It seems so important to you now." Hearing Tr. 57:18-22. Cochlear's failure to present the issue to the Special Master means it is now estopped to raise the issue before this court.

*Second*, the claim is not ambiguous or indefinite and in any event Cochlear failed to meet the clear and convincing standard required to invalidate the claim. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

## II. LEGAL ARGUMENT

### A. Cochlear Is Barred As A Matter Of Law From Raising The Indefiniteness Argument

Before the Special Master, Cochlear *agreed* to a construction of the disputed means-plus-function limitations where the corresponding structure includes a "microprocessor" without an "algorithm." JA2800 (R&R at 26) ("The parties agreed to the following corresponding structure: an analog to digital converter and a microprocessor."); *id*. at 3. Cochlear did not object to the Special Master's recommendation on this issue before Judge King, nor did it move for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

reconsideration of Judge King's claim construction. Now, *for the first time*, Cochlear *comes to the Court* to argue that the claims are indefinite for failing to include an algorithm in the construction.

The Federal Circuit has considered and rejected such schemes. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130-31 (Fed. Cir. 2011).

In *Absolute Software*, a special master construed the term "global network communication links." *Absolute*, 659 F.3d at 1130. The plaintiff, Absolute, filed timely objections to the special master's report, but not the special master's recommended construction of "global network communication links." *Id*. The district court adopted the special master's R & R. *Id*. On appeal, the defendant, Stealth, argued that Absolute's failure to object meant it had waived its right to challenge the district court's construction of "global network communication links." *Id*. Absolute asserted that there was no waiver because its argument was "presented to the district court" because it offered its position prior to the special master's report on claim construction. *Absolute*, 659 F.3d at 1131. The Federal Circuit disagreed.

The Federal Circuit ruled that a "primary purpose of appointing a special master is to narrow the issues before the district court judge to facilitate an efficient and timely resolution of complex or highly-technical issues, such as patent claim construction." *Id*. The court held that "Absolute's failure to raise this particular objection, in the face of both Rule 53(f)(2) and a court order setting a specific deadline for the filing of objections, results in waiver of the argument on appeal." *Id*. Furthermore, the court held that "[a]ccepting Absolute's argument that its challenge to the special master's claim construction was 'presented to the district court' simply because it was argued to the special master would eviscerate the very purpose of this procedure." *Id*. at 1130.

Cochlear did not challenge the Special Master's recommendation with regard to the disputed means-plus-function limitations. In fact, by agreeing to the

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

2   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

corresponding structure, Cochlear effectively conceded that no algorithm was needed and any conflicting reservation of rights does not change this fact. Accordingly, because Cochlear failed to contest the construction that lacked an algorithm, they have waived the right to do so now.  *See New Hampshire v. Maine*, 532 U.S. 742, 749-51, 121 S. Ct. 1808, 1814-15, 149 L. Ed. 2d 968 (2001).

      Moreover, the doctrine of judicial estoppel has been applied broadly to prevent a party from adopting inconsistent legal positions in the same or related judicial proceedings. *Interactive Gift Express, Inc. v. Compuserve Incorporated*, 256 F.3d 1323, 1345 (Fed. Cir. 2001).  By agreeing to the corresponding structure, Cochlear effectively short-circuited the review by the Special Master.  If Cochlear had disputed the construction on the grounds that the microprocessor would only constitute the corresponding structure if the patent adequately described an appropriate algorithm, then the Special Master would have analyzed all of the material that is being presented to this Court now for the first time.  Having benefited by evading Special Master review, Cochlear should now be judicially estopped from taking a fundamentally inconsistent position to the district court judge who is now deprived of the Special Master's recommendation on the issue. *See also N. Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("We note at the outset that we look with 'extreme disfavor' on appeals that allege error in claim constructions that were advocated below by the very party now challenging them"); *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) (holding that the "impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face…").

///

///

///

////

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

3   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

**B.     The Specifications Of The AMF Patents Disclose That The Means-Plus-Function Elements In Dispute Do Not Require Programming And Do Not Require Algorithms**

The "microprocessors" disclosed in the specifications of the '691 and '616 patents are special purpose microprocessors—not general purpose programmable processors—and an algorithm is not required to find sufficient structure.  *See Levine v. Samsung Telecommunications Am., LLC*, 2012 WL 383647, at *19 (E.D. Tex. Feb. 3, 2012).  One skilled in the art would recognize that the microprocessors disclosed in these patents are not general purpose computers or microprocessors, but instead are ASICs designed to perform specific functions.

### 1.     Claims 1, 6, 9, and 14 of the '691 Patent

Claims 1, 6, 9, and 14 of the '691 patent each contain a limitation that the wearable processor ("WP") include "means for generating data indicative of the audio signal" which has a function of "generating data indicative of the audio signal" and the corresponding structure to perform that function is "a microprocessor."  This means-plus-function limitation does not require an algorithm.

The microprocessors disclosed and claimed in the '616 and '691 patents are members of a technological family of circuits known to those of skill in the art as digital signal processors ("DSPs"), which are specialized microprocessors.  The '691 patent discloses an embodiment of the WP that includes a digital signal processor integrated circuit:

> The filter bank may also be implemented as a group of digital filters, for example in a <u>digital signal processor integrated circuit</u>. In this case the signal flow would be from the audio front end AGC 22, through an anti-aliasing filter, to an analog to digital converter, then into a digital filter bank 24 and the general processing of microprocessor 30.

JA138 ('691 patent, col. 4, lines 52-58 (emphasis added)).  These microprocessors are included in circuits specifically designed for the application-specific purpose of

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

4    CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

digital signal processing for cochlear implant systems. *Id.* ('691 patent, col. 3, lines 9-17).

In the case of the DSP's of the '616 and '691 patents, the microprocessors must be small so as to be "wearable" by the user. JA138 ('691 patent, col. 4, lines 25-35 ("externally wearable system 10")). Moreover, the microprocessors disclosed in the '616 and '691 patents are designed to conserve battery life. *Id.* ('691 patent, col. 4, line 65 – col. 5, line 11 ("optimizing the power levels of the transmission from the wearable system 10 to the ICS 12 and hence conserving the battery 38")). Even a layman would know that given the power and mobility requirements of the wearable processor, one would not use a general purpose computer or general purpose microprocessor (such as might be used in a laptop or office computer), but an ASIC that includes a DSP. This is especially evident to a person of ordinary skill in the art.

If this were not enough, the inventors also describe that "the preferred forms of the system, includ[e] CMOS integrated circuits and chips." JA138 ('691 patent, col. 4, lines 18-20). Taken together, the foregoing passages describe an ASIC that would contain the audio front end, AGC, anti-aliasing filter, analog-to-digital converter ("ADC"), digital filter bank, and microprocessor components of the WP integrated on an chip made application specific for the WP for a cochlear implant, rather than a general purpose computer or microprocessor.

The DSP of the '616 and '691 patents, *i.e.*, a special-purpose microprocessor, is similar to the one in *Levine*. In *Levine*, the means-plus-function phrase in dispute was "said receiver…having means that responds to the traveler becoming proximate [to] any of said streets to change the display to remove that street name from the visual display." *Levine*, 2012 WL 383647, at *14. Defendants moved for summary judgment arguing that the detector "means," which are necessarily implied by the "means that responds to the traveler becoming proximate" portion of the phrase, renders the claim indefinite because an algorithm for performing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

5   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

detection was not disclosed. *Id*. at *16. Plaintiff argued that "where structure other than a general purpose computer or microprocessor is disclosed then an algorithm need not be disclosed." *Id*. at *17. The court in *Levine* determined that unlike the cases relied on by Defendants, such as *Aristocrat* and *WMS Gaming* ("which rely on a disclosure of a general purpose computer"), "[i]n the present case, by contrast, special-purpose hardware is disclosed…[and] [a]s a result, no algorithm is required." *Id*. at *19.

A comparison of the facts of *Levine* to those of the present case highlights the weakness of Cochlear's argument. In *Levine*, the "special-purpose hardware" included a video image signal transmitter or, alternatively, "the ultrasonic generator 84, detector transducer 82, retroreflector 79, converter 81, as well as the image selector circuit/**processor** 24." *Levine*, 2012 WL 383647, at *19. Similarly, the "special-purpose hardware" of the ASIC in the '616 and '691 patents contains an audio front end, AGC, anti-aliasing filter, analog-to-digital converter, digital filter bank, and a **microprocessor**. JA138 ('691 patent, col. 4, lines 42-57). Even though both systems require "processors," both systems are application specific or "special purpose," and, as such, no algorithm is required.

At the Hearing, Cochlear's counsel boldly claimed that "if it's a general purpose microprocessor or a special purpose microprocessor it's beside the point because they're still programmable….when it's programmable that structure is not complete without the algorithm that programs that." Hearing Tr. at 47:18-22. Cochlear's reasoning is flawed because there is nothing in specification of the AMF patents that requires microprocessor 30 to be programmable. In fact, the contrary is true: AMF's patents require a DSP that need not be programmable. JA492 (Young Decl. at ¶ 26).[1]

---

[1] All citations to the "Young Decl." herein refer to Dr. Young's *first* declaration, *i.e.*, the "Declaration of Dr. Darrin J. Young in Support of Plaintiff's Motion for Summary Judgment" (JA483 – JA515), and not Dr. Young's *second* declaration,

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

Most ASICs, such as a DSP, have limited, if any, programmability on the part of the user. Most ASICs are programmed, if at all, at the factory through special purpose processing, such as EEPROMs (electrically erasable programmable read-only memory), which are not programmable by the user due to their "read-only" nature, which inherently precludes their programmability by the user. Nothing in the '691 or '616 patents indicates that the WP is programmable in this way. JA492 (Young Decl. ¶ 26).

### 2. Claims 1 and 12 of the '616 Patent

Claim 1 of the '616 patent contains the limitation "external processor means…for receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes." The parties agreed that the structure that performs this function is an "an antenna, receiver, and microprocessor." JA2777 – JA2778 (R&R at 3-4). The Court adopted this construction. JA2669. Claim 12 of the '616 patent also contains the limitation "external processor means for processing the received status-indicating signals…." The parties agreed that the structure that performs this function is a "microprocessor." JA2778 (R&R at 4). The Court adopted this construction. JA2669. These means-plus-function limitations do not require an algorithm.

Just like the microprocessor in the '691 patent, the disclosed microprocessor that performs the above functions in claims 1 and 12 of the '616 patent is not a general purpose computer or general purpose microprocessor. This is confirmed by the fact that "the physician's tester [in the '616 patent] is basically a modification of the WP 16" and discloses the same microprocessor 30 that is in the WP in the '691

---

the "Declaration of Dr. Darrin J. Young In Response to Defendants' Opening Brief and the Declarations of Tony Nygard and Robert J. Stevenson, Ph.D" (JA520 – JA526).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

7     CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

1  patent. JA118 ('616 patent, col. 33, lines 7-10); JA87, JA101 ('616 patent, Figs. 1, 7).

Moreover, even if the Court, *arguendo*, determines that the microprocessor 30 is a general purpose computer, Cochlear's position still fails because the Federal Circuit has held that functions such as "processing" and "receiving"[2] performed by a general purpose computer do not require an algorithm. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("[in] the terms 'processing,' 'receiving,' and 'storing,' discussed below, those functions can be achieved by any general purpose computer without special programming…[and] [a]s such, it was not necessary to disclose more structure than the general purpose processor that performs those functions."); *see e-LYNXX Corp. v. Innerworkings, Inc.*, 1:10-CV-2535, 2012 WL 4484921 (M.D. Pa. Sept. 27, 2012) ("'receiving' an electronic communication is a function that may be performed by any general purpose computer, and therefore no specific algorithm is required."). As such, the "receiving" and "processing" means at issue here do not require disclosure of an algorithm.

### C. To The Extent An Algorithm Is Required, The AMF Patents Adequately Disclose Structure To Meet The Definiteness Requirement

The definiteness standard is not "lofty." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1341 (Fed. Cir. 2008). Indefiniteness cannot be found unless the claims are "quite vague" and where "one of skill simply cannot perceive the bounds of the invention." *Id.* Cochlear bears the burden of proving "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton*, 514 F.3d at 1249-50

---

[2] The disputed limitations of the '616 patent require "external processor means…for **receiving and processing**" (claim 1) and "external processor means for **processing**" (claim 12).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

8   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

(Fed. Cir. 2008); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1377 (Fed. Cir. 2010). Cochlear has failed to meet its burden.

Cochlear alleges that the asserted means-plus-function claims of both patents are invalid because they claim "general purpose computers" or "general purpose microprocessors" with no disclosure of corresponding algorithm structure in the patent specification. Cochlear is wrong.

### 1. Claims 1, 6, 9, And 14 Of The '691 Patent

As stated above, claims 1, 6, 9, and 14 of the '691 patent each contain a limitation that the wearable processor include "means for generating data indicative of the audio signal" which has a function of "generating data indicative of the audio signal." JA2800 (R&R at 26).

The '691 patent states that "[t]he WP receives and *processes* the audio signal and includes means for generating data indicative of the audio signals for transmission to the ICS." JA138 ('691 patent, col. 3, lines 15-17 (emphasis added)). One of ordinary skill in the art would understand that the DSP (microprocessor in the WP) encodes digital data from the analog to digital ("A to D") converter with amplitude information for use in generating an amplitude modulated signal, in other words, a signal encoded with amplitude data. JA494 (Young Decl. ¶ 33). For example, the '691 patent states that "the ICS…comprises a receiver 200 for *receiving an input signal generated in the WP16*." JA141 ('691 patent, col. 9, lines 64-66 (emphasis added)). The input signal comprises "an *amplitude-modulated RF signal* consisting of a serial sequence of 83 bits representing 9 words of 9 bits…[wherein] the first 8 words…contain the *digital amplitude*…." JA141 ('691 patent, column 10, lines 1-8 (emphasis added)). One of skill in the art would understand that encoding a digital signal with amplitude data is one of the functions performed by a DSP. JA494 (Young Decl. ¶ 33).

The '691 patent further explains that the ICS utilizes "an exponential D to A converter 64" in processor 46 to convert the received audio-indicative data from the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

9   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

WP back to analog form for use in stimulating electrodes connected to the ICS. *See* JA139 ('691 patent, col. 5, lines 60-65; col. 6, lines 56-58; Figs. 1 and 2). One of skill in the art would understand that "an exponential D to A converter" is only necessary if the digital audio signal has been amplitude modulated using a logarithmic algorithm. *See* JA495 (Young Decl. ¶ 34). Specifically, the DSP of the WP must have performed the inverse function of the exponential, *i.e.*, it must have encoded that analog data using a logarithmic algorithm to generate data indicative of the audio signal. *Id*.

Thus, one of ordinary skill in the art would understand the algorithm performed by the microprocessor in the '691 patent to be: encoding the digital data from the analog to digital converter with logarithmic amplitude information to generate data for use to encode an amplitude modulated signal.

Courts have held that simple algorithms that are well-known to one of skill in the art require less description to meet the definiteness requirement. *SPX Corp. v. Bartec USA, LLC*, 557 F. Supp. 2d 810, 819 (E.D. Mich. 2008). In *SPX Corp*, the court addressed whether the specification of the asserted patent sufficiently disclosed an algorithm for the term "*means for generating* modulated signals."[3] *SPX*, 557 F. Supp. 2d at 818-819. The court held that it did. In doing so, the court stated that "[a]lthough it may seem indulgent to characterize 'providing modulation' as an algorithm, it does describe a task that is distinct from the ultimate function of the claim—'generating modulated signals'—and the person of ordinary skill in the art would recognize this to mean that the microprocessor encodes information on a continuous wave by varying a characteristic of the wave (i.e., its amplitude, frequency, or phase)." *Id*. The court further explained that its holding was consistent with the Congressional policy implemented by means-plus-function.

---

[3] Claims 1, 6, 9, and 14 of the '691 patent also require "*means for generating* data indicative of the audio signal."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

10   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

> The evidence shows that modulation is a simple process that is well known in the art, and not some new development on the cutting edge of electrical and computer engineering. To ask a patentee to outline the steps for providing modulation would be to ask for a level of detail that is both unnecessary and problematic. <u>If details of this variety were required, the purpose behind § 112, ¶ 6 would be defeated and every patent would have to "include a technical treatise for the unskilled reader."</u> *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed.Cir.2001).

*Id.* at 819-820 (emphasis added); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011) ("The amount of detail required to be included in claims depends on the particular invention and the prior art."); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1371 (Fed. Cir. 2012) ("knowledge of one skilled in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness.").

According to Dr. Young, the logarithmic algorithm of the '616 and '691 patents can be implemented with a simple logarithmic lookup table. JA495-96 (Young Decl. ¶ 34; *see also id.* ¶¶ 35-38). In fact, Dr. Young testified that he knows of no other way to implement such a logarithmic algorithm in a DSP. *See* JA2963 – JA2966 (Young Dep. at 40:10-43:11). Moreover, according to Dr, Young, logarithmic speech processing algorithms were well-known in the art at the time of the '616 and '691 patents. JA495 (Young Decl. ¶¶ 36, 37).

### 2.   Claims 1 And 2 Of The '616 Patent

Claims 1 and 12 of the '616 patent, contain "external processor means," which the parties have agreed includes, in part, a "microprocessor." As stated above, the "physician's tester" discloses the same microprocessor 30 that is in the WP in the '691 patent. JA118 ('616 patent, col. 33, lines 7-10); JA87, JA101 (Figs. 1, 7). The microprocessor in the physician's tester "derive[s] information" from the "status-indicating signals" that are telemetered from the cochlear implant to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

11   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

WP. Deriving information from a status-indicating signal, such as a measured voltage or current (or known stimulus current) is a relatively simple processing task, and the steps to accomplish that task are disclosed in the '616 patent.

The '616 patent discloses that the information "derived" from the "status-indicating signals" transmitted from the cochlear implant to a physician's tester includes voltage and current values. JA117 ('616 patent, col. 32, lines 34-46); JA100 ('616 patent, Fig. 6 (disclosing controls for voltage, current, and impedance)). The process of deriving information from a status-indicating signal, for example, calculating impedance from voltage and current, is simple and would readily be understood by one skilled in the art. JA497 (Young Decl. ¶ 43). If the tester is set to display impedance, the microprocessor uses Ohm's law to calculate impedance as the ratio of the measured voltage to the current. One of skill in the art would appreciate that the algorithm disclosed in the '616 patent is simply the application of Ohm's Law. JA497-500 (Young Decl. ¶¶43-46). *See Medversant Technologies, L.L.C. v. Morrisey Associates, Inc.*, 2011 WL 9527718, at *38; *SPX*, 557 F. Supp. 2d at 819.

A simple example of the disclosed algorithm involves using voltage and current to calculate impedance. In describing the physician's tester claimed in the '616 patent, the inventors stated that the "present invention also contemplates physician control over the selection of the voltages and currents to be measured." JA117 ('616 patent, col. 32, lines 41-43). The '616 patent also discloses that the position of the controls for the physician's tester "are read by the microprocessor 30 to control the commands generated thereby and hence the parameters measured and displayed by the ICS and Physician's Tester combination." JA118 ('616 patent, col. 33, lines 15-18). One of the controls of the physician's tester has an impedance setting. JA118 ('616 patent, col. 33, Table 7 ("Control Knob 308 — Position 1 = Impedance of Monopolar A configured channel.")); JA100 ('616 patent, Fig. 6 (control setting "Z," which is the traditional mathematical symbol for impedance

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

12   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

and numeric display)).  By selecting the impedance setting, one of ordinary skill in the art would understand that the physician's tester would be instructing the microprocessor to make an impedance calculation.  This would be done by either 1) measuring voltage and current; or 2) measuring voltage only, since the stimulus current would be known based on one of the seven pre-set current levels shown in Table 7 of the '616 patent; and then 3) making an impedance calculation.

Impedance cannot be measured *per se*.  It is always a calculated number based on the ratio of voltage to current. To the extent that any specific algorithm would be required to calculate impedance, one of ordinary skill in the art would readily appreciate the algorithm.  The algorithm for calculating impedance is Ohm's law, which is fundamental and basic to any person of ordinary skill in the art.  It was first described over a century ago as $Z = V / I$, in other words, Z (impedance) equals V (voltage) divided by I (current).  Therefore, one of ordinary skill in the art would readily appreciate $Z = V / I$ as the algorithm that is disclosed and would be used in the microprocessor of the physician's tester of the '616 patent to make an impedance calculation to "derive information" from the status-indicating signals.

Because one of skill in the art would appreciate that the disclosed microprocessor uses Ohm's law — a simple, well-known algorithm — the '616 patent discloses more than sufficient detail for an algorithm that meets the definiteness requirement.  *Typhoon Touch*, 659 F.3d 1376 at 1385; *Ergo Licensing*, 673 F.3d at 1371.

**D.     A Person Of Ordinary Skill In The Art Would Have Understood The AMF Patents To Provide The Necessary Structure Under 35 U.S.C. § 112, ¶ 6 As To Each Means-Plus-Function Element In Dispute.**

Algorithms need not be disclosed in exact mathematical terms, particularly when suitable algorithms are known in the art.  *Typhoon Touch*, 659. F.3d at 1385 (Fed. Cir. 2011).  A "patent need only disclose sufficient structure for a person of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

13                CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

skill in the field to provide an operative software program for the specified function." *Id*. at 1385. Moreover, an algorithm "can [be] express[ed] in any understandable terms including as a mathematical formula, in prose, or as a flow chart." *Function Media, LLC v. Google Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013). Here, one skilled in the art would appreciate that the '691 and '616 patents disclose sufficient structure to meet the definiteness requirement. JA490 (Young Decl. ¶ 21). AMF's expert, Dr. Young, has provided a detailed and reasoned declaration describing how one of skill in the art would recognize (in the event that the microprocessor disclosed in the specifications is not deemed to be a specialized microprocessor, which it is) that the patent specifications do, in fact, disclose algorithms. JA495; JA497-98 (Young Decl. ¶¶ 34-36, 43-46).

As shown above, one of ordinary skill in the art would understand that the DSP (microprocessor in the WP in the '691 patent) encodes the digital data from the A to D converter with amplitude information for use in generating an amplitude modulated signal, in other words, a signal encoded with amplitude data. Because one of skill in the art would appreciate that the disclosed microprocessor performs the steps of encoding the digital data with, for example, logarithmic amplitude information to generate an encoded, amplitude modulated signal, the '691 patent has disclosed more than sufficient detail for an algorithm that meets the definiteness requirement. Moreover, with regard to the "external processor means" of the '616 patent, by selecting the impedance setting on the physician's tester, one of skill in the art would appreciate that the algorithm disclosed in the '616 patent is simply the application of Ohm's Law. JA497-500 (Young Decl. ¶¶ 43-46). *See Medversant*, 2011 WL 9527718, at *38 (C.D. Cal. Aug. 5, 2011) ("the specification need not disclose all of the specific details of the algorithm, such as computational routines or formulas") (citing cases); *SPX*, 557 F. Supp. 2d at 819 (holding, based on expert testimony, that "providing modulation" was sufficient disclosure of an algorithm for the means-plus-function term "means for generating modulated signals").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

14   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT

## III. CONCLUSION

For at least the reasons stated above, the Court should grant AMF's motion and deny Cochlear's motion.

Dated: September 5, 2013

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Daniel Johnson, Jr.
Daniel Johnson, Jr.
Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

15   CASE NO. 2:07-cv-08108-FMO-SH
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES ISO OF ITS MOTION FOR SUMMARY JUDGMENT