SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
BRUCE G. CHAPMAN (Cal. Bar No. 164258)
bchapman@sheppardmullin.com
SCOTT R. MILLER (Cal. Bar No. 112656)
smiller@sheppardmullin.com
LAURA M. BURSON (Cal. Bar No. 204459)
lburson@sheppardmullin.com
MANUEL C. NELSON (Cal. Bar No. 229590)
mnelson@sheppardmullin.com
DENNIS J. SMITH (Cal. Bar No. 233842)
djsmith@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendants and
Counterclaimants COCHLEAR LIMITED
and COCHLEAR AMERICAS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALFRED MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>COCHLEAR CORPORATION, et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 07-08108 FMO (SHx)<br><br>**JOINT PROPOSED JURY INSTRUCTIONS UPDATED BY THE COCHLEAR DEFENDANTS**<br><br>Judge:  Hon. Fernando M. Olguin<br><br>Trial Date:  January 13, 2014<br>Time:          8:30 a.m.<br>Place:         Hon. Fernando M. Olguin<br>                   Crtrm. 22, Fifth Floor |

# TABLE OF CONTENTS

STATEMENT RE: PLAINTIFFS NON-COOPERATION . . . . . . . . . . . . . . . . . XV

| 1.1 | DUTY OF JURY | Ninth Circuit Manual of Model Jury Instructions, 1.1A | 3 |
|-----|--------------|----------------------------------------------------|---|
| 1.3 | BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.3 | 4 |
| 1.4 | BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.4 | 5 |
| 1.6 | WHAT IS EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.6 | 6 |
| 1.7 | WHAT IS NOT EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.7 | 7 |
| 1.8 | EVIDENCE FOR LIMITED PURPOSE | Ninth Circuit Manual of Model Jury Instructions, 1.8 | 8 |
| 1.9 | DIRECT AND CIRCUMSTANTIAL EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.9 | 9 |
| 1.10 | RULING ON OBJECTIONS | Ninth Circuit Manual of Model Jury Instructions, 1.10 | 10 |
| 1.11 | CREDIBILITY OF WITNESSES | Ninth Circuit Manual of Model Jury Instructions, 1.11 | 11 |
| 1.12 | CONDUCT OF THE JURY | Ninth Circuit Manual of Model Jury Instructions, 1.12 | 12 |
| 1.13 | NO TRANSCRIPT AVAILABLE TO JURY | Ninth Circuit Manual of Model Jury Instructions, 1.13 | 14 |
| 1.14 | TAKING NOTES | Ninth Circuit Manual of Model Jury Instructions, 1.14 | 15 |
| 1.18 | BENCH CONFERENCES AND RECESSES | Ninth Circuit Manual of Model Jury Instructions, 1.18 | 16 |
| 2.1 | STIPULATED TESTIMONY | Ninth Circuit Manual of Model Jury Instructions, 2.1 | 17 |
| 2.2 | STIPULATIONS OF FACT | Ninth Circuit Manual of Model Jury Instructions, 2.2 | 18 |
| 2.3 | JUDICIAL NOTICE | Ninth Circuit Manual of Model Jury | 19 |

| | | Instructions, 2.3 | |
|---|---|---|---|
| 2.4 | DEPOSITION IN LIEU OF LIVE TESTIMONY | Ninth Circuit Manual of Model Jury Instructions, 2.4; FRE 801(d)(2); FRCivPro 30(b)(6) | 20 |
| 2.8 | IMPEACHMENT EVIDENCE—WITNESS | Ninth Circuit Manual of Model Jury Instructions, 2.8 | 21 |
| 2.10 | USE OF INTERROGATORIES OF A PARTY | Ninth Circuit Manual of Model Jury Instructions, 2.10 | 22 |
| 2.11 | EXPERT OPINION | Ninth Circuit Manual of Model Jury Instructions, 2.11 | 23 |
| 2.12 | CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 2.12 | 24 |
| 2.13 | CHARTS AND SUMMARIES IN EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 2.13 | 25 |
| 3.1 | WHAT A PATENT IS AND HOW ONE IS OBTAINED | Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. A-1 | 26 |
| 3.2 | THE FOUNDATION'S PROPOSED INSTRUCTION "NATURE OF THE ACTION" | Model Patent Jury Instructions § A.2, Federal Circuit Bar Association (June 2013) | 29 |
| 3.2a | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "NATURE OF THE ACTION" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:2 (6th ed. Aug. 2013) | 32 |
| 3.3 | PATENT LAW GENERALLY | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:10 (6th ed. Aug. 2013) | 41 |
| 3.4 | THE FOUNDATION'S PROPOSED INSTRUCTION "DESCRIPTION OF PATENT CLAIMS" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:2 (6th ed. Aug. 2013) (as amended) | 42 |
| 3.5 | PATENTABLE INVENTION | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:43 (6th ed., Aug. 2013) | 46 |

| 3.6 | THE FOUNDATION'S PROPOSED INSTRUCTION "OUTLINE OF TRIAL" | Model Patent Jury Instructions for the Northern District of California, Instr. A.5, November 2011 | 46 |
|---|---|---|---|
| 3.6.a | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – OUTLINE OF TRIAL | Model Patent Jury Instructions for the Northern District of California, Instr. A.5, November 2011 | 52 |
| 1.1 | DUTY OF JURY | Ninth Circuit Manual of Model Jury Instructions, 1.1A | 58 |
| 1.3 | BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.3 | 59 |
| 1.4 | BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.4 | 60 |
| 1.6 | WHAT IS EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.6 | 61 |
| 1.7 | WHAT IS NOT EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.7 | 62 |
| 1.8 | EVIDENCE FOR LIMITED PURPOSE | Ninth Circuit Manual of Model Jury Instructions, 1.8 | 63 |
| 1.9 | DIRECT AND CIRCUMSTANTIAL EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 1.9 | 64 |
| 1.10 | RULING ON OBJECTIONS | Ninth Circuit Manual of Model Jury Instructions, 1.10 | 65 |
| 1.11 | CREDIBILITY OF WITNESSES | Ninth Circuit Manual of Model Jury Instructions, 1.11 | 66 |
| 1.12 | CONDUCT OF THE JURY | Ninth Circuit Manual of Model Jury Instructions, 1.12 | 67 |
| 1.13 | NO TRANSCRIPT AVAILABLE TO JURY | Ninth Circuit Manual of Model Jury Instructions, 1.13 | 69 |
| 1.14 | TAKING NOTES | Ninth Circuit Manual of Model Jury Instructions, 1.14 | 70 |
| 1.18 | BENCH CONFERENCES AND RECESSES | Ninth Circuit Manual of Model Jury Instructions, 1.18 | 71 |
| 2.1 | STIPULATED TESTIMONY | Ninth Circuit Manual of Model Jury Instructions, 2.1 | 72 |

-iii-

| 2.2 | STIPULATIONS OF FACT | Ninth Circuit Manual of Model Jury Instructions, 2.2 | 73 |
|---|---|---|---|
| 2.3 | JUDICIAL NOTICE | Ninth Circuit Manual of Model Jury Instructions, 2.3 | 74 |
| 2.4 | DEPOSITION IN LIEU OF LIVE TESTIMONY | Ninth Circuit Manual of Model Jury Instructions, 2.4; FRE 801(d)(2); FRCivPro 30(b)(6) | 75 |
| 2.8 | IMPEACHMENT EVIDENCE—WITNESS | Ninth Circuit Manual of Model Jury Instructions, 2.8 | 76 |
| 2.10 | USE OF INTERROGATORIES OF A PARTY | Ninth Circuit Manual of Model Jury Instructions, 2.10 | 77 |
| 2.11 | EXPERT OPINION | Ninth Circuit Manual of Model Jury Instructions, 2.11 | 78 |
| 2.12 | CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 2.12 | 79 |
| 2.13 | CHARTS AND SUMMARIES IN EVIDENCE | Ninth Circuit Manual of Model Jury Instructions, 2.13 | 80 |
| 4.1 | THE FOUNDATION'S PROPOSED INSTRUCTION "INFRINGEMENT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug. 2013) as amended | 81 |
| 4.1.a | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION - INFRINGEMENT | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug. 2013) as amended | 83 |
| 4.4 | ASSIGNMENT | *O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:28 (6th ed. Aug. 2013) | 88 |
| 4.5.a | THE FOUNDATION'S PROPOSED INSTRUCTION "DIRECT INFRINGEMENT— LITERAL INFRINGEMENT" | *O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013) | 89 |
| 4.5.b | THE FOUNDATION'S PROPOSED INSTRUCTION "DIRECT | Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar Association (June 2013) (and sources cited | 91 |

| | | INFRINGEMENT— INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS" | therein) | |
|---|---|---|---|---|
| | 4.5.b | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION - MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013); Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3;  35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320-21 (Fed. Cir. 1999) | 97 |
| | 4.5.c | THE FOUNDATION'S PROPOSED INSTRUCTION – "DIRECT INFRINGEMENT— INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS— STRUCTURAL EQUIVALENCE" | Adapted from Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar Association (June 2013) (and sources cited therein); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) | 105 |
| | 4.5.d | THE FOUNDATION'S PROPOSED INSTRUCTION – "DIRECT INFRINGEMENT— DOCTRINE OF | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:23 (6th ed. Aug. 2013); Model Patent Jury Instructions § 3.3, Northern District of California (Nov. 3, 2011) (and sources cited therein) | 111 |

-v-

| | | EQUIVALENTS" | | |
|---|---|---|---|---|
| | 4.5.d | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION— INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS | Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *See also Fiskares, Inc. v. Hunt Mfg. Co*., 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999) | 114 |
| | 4.5.e | THE COCHLEAR DEFENDANTS' PROPOUNDED INSTRUCTION – "LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013); Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3;  *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d (Fed. Cir. 2003) (en banc) | 119 |

-vi-

| 4.6 | THE FOUNDATION'S PROPOSED INSTRUCTION "INDUCEMENT OF INFRINGEMENT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013); Model Patent Jury Instructions § B.3 3.2, Federal Circuit Bar Association (June 2013) (and sources cited therein) | 123 |
| 4.6 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION "INDUCEMENT OF INFRINGEMENT" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013) as amended by *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009) | 126 |
| 4.7 | THE COCHLEAR DEFENDANTS' PROPOUNDED INSTRUCTION - REASONABLE BELIEF OF INVALIDITY OF CLAIMS OF THE PATENTS | *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009); *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) | 131 |
| 4.8 | THE FOUNDATION'S PROPOSED INSTRUCTION – "CONTRIBUTORY INFRINGEMENT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:25 (6th ed. Aug. 2013) as amended; Model Patent Jury Instructions § 3.8, Northern District of California (Nov. 3, 2011) (and sources cited therein); 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) | 137 |
| 4.8 | COCHLEAR DEFENDANTS' | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) | 140 |

| | | | | |
|---|---|---|---|---|
| | | PROPOSED INSTRUCTION – "CONTRIBUTORY INFRINGEMENT" | as amended | |
| | 5.0 | THE FOUNDATION'S PROPOSED INSTRUCTION – PRESUMPTION OF VALIDITY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed. Aug. 2013) as amended (citing *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 761 (Fed. Cir. 1984)) | 147 |
| | 5.0 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – PRESUMPTION OF VALIDITY | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed. Aug. 2013) as amended | 148 |
| | 5.1 | THE FOUNDATION'S PROPOSED INSTRUCTION – "INVALIDITY OF PATENT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended | 152 |
| | 5.1 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "INVALIDITY OF PATENT" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by Microsoft Corp. v i4i Ltd. Partnership et. al., 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011) | 153 |
| | 5.2 | VALIDITY OF PATENT CLAIMS TO BE CONSIDERED SEPARATELY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:26 (6th ed. Aug. 2013) as amended | 156 |
| | 5.3 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – EFFECTIVE FILING DATE OF A PATENT | *Santarus and the University of Missouri v. Par Pharmaceutical, Inc., 694 F.3d 1344, 1352* (Fed. Cir. 2012); *Augustine Med., Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999); *Univ. of W. Va. v. Van Voorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002) | 157 |
| | 5.5 | LEVEL OF ORDINARY SKILL | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:48 (6th ed. Aug. 2013) | 161 |
| | 5.6 | THE FOUNDATION'S | 3A Kevin F. O'Malley, Jay E. | 166 |

-viii-

| | | | |
|---|---|---|---|
| | PROPOSED INSTRUCTION – "PRIOR ART" | Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil § 158.47 (6th ed. 2013) | |
| 5.6 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "PRIOR ART" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:47 (6th ed. Aug. 2013) | 169 |
| 5.8a | THE FOUNDATION'S PROPOSED INSTRUCTION – ANTICIPATION— GENERALLY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:68 (6th ed. Aug. 2013) | 171 |
| 5.8b | COCHLEAR'S PROPOSED INSTRUCTION "ANTICIPATION – PRIOR ART – PRINTED PUBLICATION" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:69 (6th ed. Aug. 2013) as amended; Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 4.3(a)(1) | 174 |
| 5.8b | THE FOUNDATION'S PROPOSED INSTRUCTION "ANTICIPATION— PRIOR ART— INHERENCY" | *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002); *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed.Cir.1991) (*quoting In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)); *Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed.Cir.2002); *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) | 179 |
| 5.9 | THE FOUNDATION'S PROPOSED INSTRUCTION – OBVIOUSNESS— GENERALLY | Model Patent Jury Instructions § B.4.3 4.3c, Federal Circuit Bar Association (June 2013) (and sources cited therein) | 183 |
| 5.9 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – OBVIOUSNESS— | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:65 (6th ed. Aug. 2013) as amended | 186 |

-ix-

| | | GENERALLY | | |
|---|---|---|---|---|
| | 5.9a | INVALIDITY – OBVIOUSNESS – HINDSIGHT BIAS | 3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil Ch. 158, p. 585 (6th ed. 2006); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Systems, Inc.*, F.3d , , 107 U.S.P.Q.2d 1737, 2013 WL 3984991, *9 (Fed. Cir. 2013); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) cert. dismissed, 133 S. Ct. 97, 183 L. Ed. 2d 736 (U.S. 2012) | 189 |
| | 5.10 | THE FOUNDATION'S PROPOSED INSTRUCTION – OBVIOUSNESS— COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as amended; *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013)); *Apple Inc. v. I.T.C.*, 725 F. 3d 1356, 1365-67 (Fed. Cir. 2013) | 191 |
| | 5.10 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – OBVIOUSNESS— COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as amended; Media Technologies Licensing v. Upper Deck Co., 596 F.3d 1334, 1339 (Fed. Cir. 2010) | 193 |
| | 6.1 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "INEQUITABLE CONDUCT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) as amended; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc); *Ohio Willow Wood Co. v Alps South, LLC* (Fed Cir. Nov. 15, 2013) | 196 |

-x-

| 6.1 | THE FOUNDATION'S PROPOSED INSTRUCTION – "INEQUITABLE CONDUCT" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) (and sources cited therein); *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc) | 198 |
|---|---|---|---|
| 6.2 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "MISREPRESENTATION; DUTY OF DISCLOSURE, CANDOR AND GOOD FAITH" | *O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:76 (6th ed. Aug. 2013) as amended by § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91(Fed. Cir. 2011) (en banc) | 201 |
| 6.2 | THE FOUNDATION'S PROPOSED INSTRUCTION – "MISREPRESENTATION; DUTY OF DISCLOSURE, CANDOR AND GOOD FAITH" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:76 (6th ed. Aug. 2013) as amended by § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91(Fed. Cir. 2011) (en banc) | 203 |
| 7.1 | DAMAGES GENERALLY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:90 (6th ed. Aug. 2013) as amended | 207 |
| 7.2 | THE FOUNDATION'S PROPOSED INSTRUCTION – REASONABLE ROYALTY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013) as modified by Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B.5.7; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 67-68 (Fed. Cir. 2012); *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 840 (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009); *Internet Machs. LLC v. Alienware Corp.*, 2013 U.S. Dist. LEXIS 115723, *43-45 (E.D. Tex. June 19, 2013) | 209 |

-xi-

| 7.2 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – REASONABLE ROYALTY | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013); Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B.5.7; *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Laserdynamics, Inc. v Quanta Computer Inc.*, 694 F.3d 51 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301(Fed. Cir. 2009); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) | 212 |
| --- | --- | --- | --- |
| 7.2(a) | THE FOUNDATION'S PROPOSED INSTRUCTION – DATE OF COMMENCEMENT OF DAMAGES | Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), § 5.8; 28 U.S.C. §§ 286-287. Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) | 219 |
| 7.3 | THE FOUNDATION'S PROPOSED INSTRUCTION – "REASONABLE ROYALTY – RELEVANT FACTORS" | Adapted from Model Patent Jury Instructions § B.4 4.6, Federal Circuit Bar Association (June 2013) (and sources cited therein) | 225 |
| 7.3(a) | COCHLEAR | *Lucent Tech. v. Gateway, Inc. .*, 580 | 23- |

-xii-

|  |  |  | F. 3d 1301(Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 869 (Fed. Cir 2010) |  |
|--|--|--|--|--|
|  |  | DEFENDANTS' PROPOSED INSTRUCTION – COMPARABLE LICENSES |  |  |
| 7.3(a) | THE FOUNDATION'S PROPOSED INSTRUCTION – COMPARABLE LICENSES | *Lucent Tech. v. Gateway, Inc.* ., 580 F. 3d 1301(Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 869 (Fed. Cir 2010) | 231 |
| 7.4 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "NON-INFRINGING ALTERNATIVES" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:91 (6th ed. Aug. 2013) as amended | 234 |
| 7.5 | SPECULATIVE DAMAGES | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:96 (6th ed. Aug. 2013) as amended | 237 |
| 7.6 | THE FOUNDATION'S PROPOSED INSTRUCTION – "WILLFUL INFRINGEMENT" | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013) and Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3-10, as amended by *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011); *Uniloc v. Microsoft Corp*., 632 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013) | 239 |
| 7.6 | COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION – "WILLFUL INFRINGEMENT" | O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013); Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3-10, as amended by *DePuy Spine v.* | 242 |

-xiii-

| | | | | |
|---|---|---|---|---|
| | | | *Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013) | |
| 7.7 | COCHLEAR'S PROPOSED INSTRUCTION – "PUNITIVE DAMAGES" | | *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:95 (6th ed. Aug. 2013) as amended | 246 |

-xiv-

## STATEMENT RE: PLAINTIFFS NON-COOPERATION

1

2     This Court's Order of October 18, 2013 [D.I. 300] required the parties to

3 work together to prepare and jointly file jury instructions (disputed and undisputed)

4 by December 3, 2013.  Just prior to midnight on December 3, AMF filed a partially

5 completed document of jury instructions with a notation that the Cochlear

6 Defendants had not responded to them.  In fact, it is the Plaintiffs who have refused

7 to cooperate to accomplish the Court-Ordered mandate for the instructions.  Having

8 exhausted all attempts to reach an agreement with AMF to comply with the

9 requirements of the October 18, 2013 Order, the Cochlear Defendants hereby file

10 this supplement to the Joint Jury Instructions improperly filed by AMF on

11 December 3, 2013.

12     Beyond the problems with the Motions in Limine meet and confer detailed in

13 the Declaration of Scott R. Miller filed with the Joint Motions in Limine, there have

14 been issues with meeting and conferring on the joint jury instructions  The parties

15 first exchanged proposed jury instructions on November 12 as part of the Rule 16

16 meeting.

17     Despite the December 3 deadline for filing joint jury instructions, no meet and

18 confer was scheduled by Plaintiffs until November 27, 2013 – the Wednesday

19 afternoon before Thanksgiving.  At that meet and confer lasted approximately 30

20 minutes.  Counsel for AMF indicated they did not think it would be productive to go

21 through each instruction.  Rather, they wanted to discuss a few broad issues where

22 the parties substantively differed.

23     A second meet and confer was requested and held at 4:30 PM on December 2,

24 2013.   Shortly before that meet and confer, AMF send revised instructions to the

25 Cochlear Defendants. Just prior to that meet and confer, the Cochlear Defendants

26 sent a couple of new or replacement instructions to the Plaintiffs for review and

27 consideration in an effort to address issues from the prior meet and confer.  At the

28

1   end of the meet and confer, AMF promised to provide a draft of the joint

2   instructions based on the parties exchanged materials.

3          The filing deadline was December 3, 2012.  At 1:15 PM, Counsel for the

4   Cochlear Defendants inquired by email of AMF asking about the status of the joint

5   jury instructions.  No response was provided.  Later that afternoon, counsel for the

6   Cochlear Defendants asked for a call to discuss the document that needed to be filed

7   that day.  The parties had a call at 4:30 PM.  During that call, counsel for the

8   Cochlear Defendants asked Mr. Lyons when AMF would circulate the draft joint

9   jury instructions, and he indicated it would be in "about an hour."

10         Having received nothing nor heard anything from AMF, counsel for the

11  Cochlear Defendants sent an email to AMF's counsel at 7:58 PM again asking about

12  the status of the joint jury instructions. No reply was received.

13         Ultimately, the first draft of the joint jury instruction filing was sent by email

14  to counsel for the Cochlear Defendants at 8:28 PM on Dec 3, 2013 –3 ½ hours

15  before the filing deadline.   As the Court can tell from what AMF later filed, that

16  document was highly incomplete.  And it contained new jury instructions from

17  AMF.   It was not humanly possible for counsel for the Cochlear Defendants to

18  complete the missing parts of the document in the short time allotted by AMF.

19         Counsel for the Cochlear Defendants immediately began to work on the draft

20  joint jury instructions.  At 11:35 PM, an email was sent by counsel for AMF that

21  inquired about the state of the joint jury instructions.  At 11:59 PM, AMF filed the

22  draft document and advised the Court

23         "Plaintiff did not receive Defendant's Objections and Responses to its
24         Proposed Jury Instructions in advance of the December 3, 2013 filing
25         deadline."  Plaintiff failed to advise the Court about the true chronology
            including that the draft has only been provided to the Cochlear Defendants
26         some 3 ½ hours prior.

27

28

At 12:17 AM, counsel for the Cochlear Defendants advised AMF that they were working on the instructions and expected to send comments that evening so that another draft could be turned and the joint filing completed at the earliest time possible.  At 12:38 AM, AMF replied and stated that they would be willing to discuss with the filing of updated jury instructions "tomorrow."  This meant that it would be impossible to turn another draft so that the filing could be completed as soon as possible after midnight.

Counsel for the Cochlear Defendants continued work on the joint instructions for several more hours, and then resumed in the morning.  The completed proposed joint jury instructions filing, which is set forth below, was sent to AMF as soon as possible on December 4 at 3:50 PM.

On the morning of December 5, 2013, counsel for the Cochlear Defendants had a telephone conference with Mr. Lyons at approximately 9:45 AM regarding the status of the jury instructions.  Mr. Lyons advised counsel for the Cochlear Defendants that AMF was working on the instructions and was expecting to be able to jointly file an updated document on December 5.  Having heard nothing, counsel for the Cochlear Defendants inquired about the status from Mr. Lyons by email at 1:34 PM.  No response was received prior to Mr. Lyons email reply at 3:24 PM in which he advised counsel for the Cochlear Defendants that AMF would not accept the proposed joint jury instructions document provided to AMF absent agreement by the Cochlear Defendants to withdraw various objections.  Those same objections are present in the document filed by AMF just prior to midnight on December 3 [D.I. 337].

Counsel for the Cochlear Defendants advised Mr. Lyons that the joint document should include the position of both parties and that AMF was not in a position dictate what objections could be raised by the Cochlear Defendants.  Mr. Lyons was also advised that counsel for the Cochlear Defendants understood this to

1   be a refusal by AMF to complete the joint jury instructions and that the counsel for

2   the Cochlear Defendants would proceed to file the instructions unilaterally.

3   Accordingly, those joint instructions are provided below.

4          A 5:31 PM, just as the Cochlear Defendants were preparing to file this

5   supplement, AMF's counsel confirmed by email that AMF was unwilling to meet

6   and confer on the joint jury instructions unless the Defendants withdraw the

7   objections that are in the document filed by AMF [D.I. 337] as well as the form of

8   instructions provided to AMF on December 4.  AMF also advised that the objections

9   and statements of AMF in the document before the Court are no longer an accurate

10  statement of AMF's position.

11         The Cochlear Defendants hereby update the jury instructions unilaterally filed

12  by AMF as D.I. 337.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>PRELIMINARY INSTRUCTIONS</u>**

-1-

# 1.1  DUTY OF JURY (UNDISPUTED)

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.1A*

-2-

**1.3  BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE (UNDISPUTED)**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.3*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED BY THE COCHLEAR DEFENDANTS

## 1.4  BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE (UNDISPUTED)

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.4*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 1.6  WHAT IS EVIDENCE (UNDISPUTED)

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 1.6*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**1.7  WHAT IS NOT EVIDENCE (UNDISPUTED)**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.7*

## 1.8  EVIDENCE FOR LIMITED PURPOSE (UNDISPUTED)

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 1.8*

**1.9  DIRECT AND CIRCUMSTANTIAL EVIDENCE (UNDISPUTED)**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.9*

1

## 1.10  RULING ON OBJECTIONS (UNDISPUTED)

2        There are rules of evidence that control what can be received into evidence.

3  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the

4  other side thinks that it is not permitted by the rules of evidence, that lawyer may

5  object.  If I overrule the objection, the question may be answered or the exhibit

6  received.  If I sustain the objection, the question cannot be answered, and the exhibit

7  cannot be received.  Whenever I sustain an objection to a question, you must ignore

8  the question and must not guess what the answer might have been.

9        Sometimes I may order that evidence be stricken from the record and that you

10  disregard or ignore the evidence.  That means that when you are deciding the case,

11  you must not consider the evidence that I told you to disregard.

12

13  *Authority:*

14  *Ninth Circuit Manual of Model Jury Instructions, 1.10*

## 1.11  CREDIBILITY OF WITNESSES (UNDISPUTED)

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case and any bias or prejudice;

5. whether other evidence contradicted the witness's testimony;

6. the reasonableness of the witness's testimony in light of all the evidence; and

7. any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.11*

## 1.12  CONDUCT OF THE JURY (UNDISPUTED)

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other

reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.12*

## 1.13  NO TRANSCRIPT AVAILABLE TO JURY (UNDISPUTED)

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.13*

**1.14  TAKING NOTES (UNDISPUTED)**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.14*

-14-

## 1.18  BENCH CONFERENCES AND RECESSES (UNDISPUTED)

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.18*

## 2.1  STIPULATED TESTIMONY[1] (UNDISPUTED)

The parties may agree on what a particular witness's testimony would be if called as a witness.  If so, you should consider that testimony in the same way as if it had been given here in court.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.2*

---

[1] This instruction should only be read if the parties present any stipulated testimony

-16-

## 2.2  STIPULATIONS OF FACT (UNDISPUTED)

The parties have agreed to certain facts to be placed in evidence in this trial that will now be read to you  You should therefore treat these facts as having been proved.

[The Court reads the stipulated facts]

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.2*

-17-

# 2.3 JUDICIAL NOTICE[2] (UNDISPUTED)

The court has decided to accept as proved the following facts, even though no evidence has been introduced on the subject. You must accept this fact as true.

[The Court reads judicially noticed facts]

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.3*

---

[2] This instruction should only be read if the court takes judicial notice of a fact.

-18-

## 2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY (UNDISPUTED)

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  The deposition of that person may be used at the trial.

If any deposition testimony is provided, you should consider deposition testimony presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

If the deposition is read to you, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.4; FRE 801(d)(2); FRCivPro 30(b)(6)*

## 2.8  IMPEACHMENT EVIDENCE—WITNESS (UNDISPUTED)

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.8*

**2.10  USE OF INTERROGATORIES OF A PARTY (UNDISPUTED)**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.10*

## 2.11  EXPERT OPINION (UNDISPUTED)

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.11*

## 2.12  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE (UNDISPUTED)

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.12*

## 2.13  CHARTS AND SUMMARIES IN EVIDENCE (UNDISPUTED)

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.13*

-24-

## 3.1  WHAT A PATENT IS AND HOW ONE IS OBTAINED (UNDISPUTED)

This case involves a dispute relating to United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later

-25-

time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

***Authority:***

-26-

1    *Model Patent Jury Instructions for the Northern District of California (Nov. 3,*

2    *2011), Instr. A-1.*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 3.2  "NATURE OF THE ACTION" (DISPUTED)
## THE FOUNDATION'S PROPOSED INSTRUCTION

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are the Alfred E. Mann Foundation for Scientific Research, or "the Foundation," the plaintiff, and Cochlear Corporation and Cochlear Limited, or "the Cochlear Defendants," the defendants. Advanced Bionics, a licensee of the Foundation's patents, has also been joined to this suit. The case involves two United States Patent:  No. 5,609,616, obtained by inventors Joseph Schulman, John Gord, Primoz Strojnik and David Whitmoyer, and No. 5,938,691, obtained by inventors Joseph Schulman, John Gord, Primoz Strojnik, David Whitmoyer and James Wolfe. Both these patents were transferred by these inventors to the Foundation. For your convenience, the parties and I will often refer to these patents by the last three numbers of the patent number, namely, as the "'616 patent" and as the "'691 patent."

The Foundation filed suit in this court seeking money damages from the Cochlear Defendants asserting infringement, both directly and indirectly, the '616 and '691 patents.  The Foundation asserts that the Cochlear Defendants infringement because they are making, using, selling, offering for sale in or importing into the United States products and methods that the Foundation believes are covered by claims 1 and 10 of the '616 patent, and claims 6 and 7 of the '691 patent.  For convenience, I will refer to these four separate claims as the asserted claims.  The Foundation also argues that Cochlear has actively induced infringement and infringement of the asserted claims by others.

The products and methods that are alleged to infringe are cochlear implants, external processors, and certain diagnostic tools and calibration procedures associated with Cochlear products, including the Nucleus 24, Freedom and Nucleus

-28-

5 line of implants (models CI24M, CI24R, CI24RE and CI500), associated speech processors, and software for implant diagnostics, including WinDPS software and Custom Sound software (the "Accused Products").

Cochlear denies that it has infringed any claims of the '616 or '691 patents. Cochlear also argues that the asserted claims are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the prior art to the patent.

Your job will be to decide whether or not any of the patent claims have been infringed. If you decide that any of the claims have been infringed, then you will need to decide any money damages to be awarded to the Foundation to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.


Authority:    Adapted from Model Patent Jury Instructions § A.2, Federal Circuit Bar Association (June 2013).

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by AMF as it fails to comply with this Court's directive.

    Here, there is an instruction from the most recent version of O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of a model instruction propounded by the Federal Circuit Bar Association.  The Cochlear Defendants further object to this proposed instruction on the basis that it is out of synch with the content and tone of the current instruction found in the O'Malley, et al. Instructions the Court ordered be used.  For example, the Foundations proffered instruction refers to the "job" of the jury in a misleading manner as the only tasks listed are the jury's determination of infringement, damages and willfulness.  Such lopsided advocacy in a jury instruction is improper.  This can only confuse the jury and diminish the Defendants defenses in the eyes of the jury.

    Lastly, the Cochlear Defendants object to this instruction for various reasons including Plaintiffs seek to wrongfully expand the case beyond the theories disclosed in discovery.  For example, Plaintiffs seek to pursue claims of contributory and induced infringement for all of the Asserted Claims.  But Plaintiff never disclosed during discovery that they intended to pursue these claims as to any of the claims of the patents in suit except as to claim 10 of the '616 patent.  These issues

1  are discussed in the Defendants Memorandum of Fact and Law as Evidentiary
2  Issues 6, 8 and 9, and Issues of Law 4 and 5.

3      Moreover, it is improper to instruct the jury on Claim 1 of the '616 patent and
4  claims 6 and 7 of the '691 patent as each of these claims are invalid as a matter of
5  law as indefinite.  This issue is discussed in the Memorandum of Fact and Law as
6  Issue of Law 1.  In addition, the Defendants objectively reasonable claims of non-
7  infringement, invalidity and inequitable conduct preclude the submission of willful
8  infringement to the jury.  These issues are discussed in the Defendants
9  Memorandum of Fact and Law as Evidentiary Issues 10 and 11, and Issues of Law 6
10 and 7.  And the instruction fails to address the submission of inequitable conduct to
11 the jury.

12     The Cochlear Defendants submit herewith an alternative proposed instruction
13 that is in compliance with the Court's directives in its October 18, 2013 Order.  That
14 instruction has been tailored to address the issues that are properly presented to the
15 jury based on the pleadings, the discovery and the applicable case law.  In the event
16 the Court determines that the issues to be presented to the jury are broader than
17 those articulated by the Cochlear Defendants, a broader additional alternative
18 instruction has been included that is likewise in compliance with the Court's
19 directives in its October 18, 2013 Order.

20

21     **2. Propounded Alternative Instructions**

22         **THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE**
23                            **INSTRUCTION[3]**

24  _____

25  [3] Subject to and without waiving their objections, the Cochlear Defendants submit
    this instruction that addresses the '691 patent.  This reference should be removed if
26  the Court agrees that the '691 patent's claims are indefinite and therefore invalid as
    a matter of law.  Also, subject to and without waiving their objections, the Cochlear
27  Defendants submit this instruction that addresses claim 1 of the '616 patent and/or
28  claims 6 and 7 of the '691 patent.  These references should be removed if the Court

-31-

1      The plaintiffs here are the Alfred Mann Foundation (which I will refer to as

2  the Foundation) and Advanced Bionics LLC.  I will refer to the Foundation and

3  Advanced Bionics collectively as the Plaintiffs.

4      The defendants are Cochlear Americas and its Australian parent company,

5  Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as

6  the Cochlear Defendants.

7      This is an action for patent infringement based on two U.S. patents owned by

8  the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The

9  "patents in suit," are:

10        •  United States Patent No. 5,609,616 entitled Physician's Testing System

11           and Method for Testing Implantable Cochlear Stimulator.  For

12           convenience, the parties and I will often refer to this patent as the `616

13           patent; and,

14

15        •  United States Patent No. 5,938,691 entitled Multichannel Implantable

16           Cochlear Stimulator.  For convenience, the parties and I will often refer

17           to this patent as the `691 patent.

18

19      The Foundation asserts that the Cochlear Defendants allegedly directly

20  infringe claim 1 of the `616 patent and claims 6-7 of the `691 patent, and indirectly

21  infringe (by active inducement of infringement and contributory infringement) claim

22  10 of the `616 patent.  The products that are alleged to infringe are the Nucleus 24,

23  Freedom and Nucleus 5 implants, and the Sprint, ESPrit 3G, Nucleus Freedom and

24  Nucleus 5 sound processors.

25      The Cochlear Defendants deny that they have directly or indirectly infringed

26  any claims either of the patents in suit.  The Cochlear Defendants also assert that, in

27

28  agrees that these claims are indefinite and therefore invalid as a matter of law.

-32-

1  addition, the claims are invalid and unenforceable for inequitable conduct.

2  Invalidity and unenforceability are defenses to infringement.

3       You may hear evidence that the Cochlear Defendants have their own patent(s)

4  or that the Cochlear Defendants improved on the asserted patents.  While this

5  evidence is relevant to some issues you will be asked to decide, a party can still

6  infringe even if it has its own patents in the same area.  You will be instructed after

7  trial as to what, if any, relevance these facts have to the particular issues in this case.

8  Meanwhile, please keep an open mind.

9       Your job will be to decide whether any of the asserted claims of the patents in

10  suit have been infringed and whether those claims are invalid.  If you decide that

11  any claim of either of the patents in suit has been infringed and is not invalid, you

12  will then need to decide any money damages to be awarded to AMF to compensate

13  it for the infringement.  Finally, you will also be asked for your findings on the issue

14  of unenforceability.

15

16  **_Authority:_**

17       *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:1 (6th ed. Aug. 2013);

18  *Model Patent Jury Instructions for the Northern District of California (Nov. 3,*

19  *2011), Instr. A-2.*

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## THE COCHLEAR DEFENDANTS' BROAD ALTERNATIVE INSTRUCTION[4]

The plaintiffs here are the Alfred Mann Foundation (which I will refer to as the Foundation) and Advanced Bionics LLC.  I will refer to the Foundation and Advanced Bionics collectively as the Plaintiffs.

The defendants are Cochlear Americas and its Australian parent company, Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as the Cochlear Defendants.

This is an action for patent infringement based on two U.S. patents owned by the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The "patents in suit," are:

- United States Patent No. 5,609,616 entitled Physician's Testing System and Method for Testing Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `616 patent; and,

- United States Patent No. 5,938,691 entitled Multichannel Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `691 patent.

The Foundation asserts that the Cochlear Defendants allegedly directly infringe claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent, and indirectly infringe (by active inducement of infringement or contributory infringement) claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

---

[4] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses claim 1 of the `616 patent and the `691 patent.  These references should be removed if the Court agrees that the '691 patent's claims are indefinite and therefore invalid as a matter of law.

-34-

The products that are alleged to infringe are the Nucleus 24, Freedom and Nucleus 5 implants, and the Sprint, ESPrit 3G, Nucleus Freedom and Nucleus 5 sound processors.

The Cochlear Defendants deny that they have directly infringed or actively induced infringement or contributorily infringed of any claims either of the patents in suit.  The Cochlear Defendants also assert that, in addition, the claims are invalid and unenforceable for inequitable conduct.  Invalidity and unenforceability are defenses to infringement.

You may hear evidence that the Cochlear Defendants have their own patent(s) or that the Cochlear Defendants improved on the asserted patents.  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case.  Meanwhile, please keep an open mind.

Your job will be to decide whether any of the asserted claims of the patents in suit have been infringed and whether those claims are invalid.  If you decide that any claim of either of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the Foundation to compensate it for the infringement.  You will also need to make a finding as to whether the infringement of the `616 patent was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.  Finally, you will also be asked for your findings on the issue of unenforceability.

***Authority:***

-35-

1    *O'Malley, et al.*, 3A Fed. Jury Prac. & Instr. § 158:1 (6th ed. Aug. 2013); *Model*

2    *Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr.*

3    *A-2.*

### b. The Foundation's Response

The Foundation believes its proposed instruction provides a clearer overview of the case. In contrast, much of the instruction proposed by the Cochlear Defendants is not material to a description of the nature of the case for the jury, and may be entirely unnecessary in this case. For instance, the Cochlear Defendants propose instructing the jury:

> You may hear evidence that the Cochlear Defendants have their own patent(s) or that the Cochlear Defendants improved on the asserted patents. While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area. You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case. Meanwhile, please keep an open mind.

This instruction is not expected to be applicable to this case, and is not needed in initial instructions.

Additionally, the Cochlear Defendants' assertion that claims of direct infringement, inducement, contributory infringement and willfulness are prohibited or limited to only certain claims of the Asserted Claims is new and unfounded. Cochlear has long known that the Foundation alleges all asserted claims are so infringed and should be permitted to argue such to the jury. These arguments are addressed in greater detail in the Foundation's responses to disputed instructions, including 3.6 – Outline of Trial, 4.1 – Infringement, 4.5 – Direct Infringement, 4.5d – Doctrine of Equivalence, 4.6 – Inducement of Infringement, 4.8 – Contributory Infringement and 7.6 – Willful Infringement.

### c. The Cochlear Defendants' Reply

Plaintiffs simply have not provided "greater detail" in response to

-37-

1    Defendants' specific and well-founded objections concerning disputed instructions

2    3.6 (Outline of Trial), 4.1 (Infringement), 4.5 (Direct Infringement), 4.5d (Doctrine

3    of Equivalence), 4.6 (Inducement of Infringement), 4.8 (Contributory Infringement),

4    and 7.6 (Willful Infringement).  Instead, Plaintiffs' responses typically boil down to

5    repeatedly referring to "evidence" while aping the elements of the given legal theory

6    as if this hand-waving somehow addresses Defendants' specific points.

7         For example, Plaintiffs take the Court on a wild goose chase with respect to

8    instruction 3.6.  Defendants object to instruction 3.6, in part, because the instruction

9    tells the jury about theories of indirect infringement despite the fact that Plaintiffs

10   have never put forth any evidence supporting a case of contributory infringement or

11   inducement except with respect to claim 10 of the '616 patent.  Plaintiffs initial

12   response to Defedants' "objections" to instruction 3.6 makes no sense:  "It is

13   undisputed that the Foundation has presented evidence of induced infringement,

14   contributory infringement and willful infringement of all the asserted claims."

15   Obviously, this is very much in dispute—that is why Plaintiffs are responding to

16   Defendants' *objections*.  Plaintiffs then refer the Court to further discussion in

17   connection with instructions 4.6 and 4.8.  Yet, when one reads Plaintiffs' response

18   in connection with instruction 4.6, there are the same conclusory statements:  "The

19   Foundation has provided evidence that Cochlear has had knowledge of the asserted

20   patents since well-before this lawsuit was filed, and intentionally trains surgeons and

21   audiologists to use the accused products in an infringing manner."  To what specific

22   "evidence" are Plaintiffs' referring?  The Court has no way of evaluating this empty

23   statement.

24        In fact, Plaintiffs have done nothing of the sort.  And Plaintiffs' response for

25   both instructions 4.1 and 4.8 concerning Defendants' objections regarding indirect

26   infringement are identical and repeatedly refer to "evidence" without any specificity

27   or detail:  "The Foundation has provided evidence that the accused Cochlear

28

-38-

wearable processor, implant, and diagnostic software products are separate components that may be sold separately.  The Foundation has further provided evidence that although these components may be sold separately, each component is a material part of a single infringing cochlear implant system.  The Foundation has further provided evidence that the components have no substantial non-infringing uses.  Each component product can be used (and is designed to be used) only in combination with, and only with, the other components."

And one sees the exact same pattern in terms of Plaintiffs' responses to Defendants' objections to Plaintiffs' inclusion of the doctrine of equivalents in instructions 4.5 and 4.5d.  The first response is, again, inexplicable:  "It is undisputed that the Foundation has presented allegations that the accused Cochlear products infringe the asserted patents under the Doctrine of Equivalents."  Contrary to Plaintiffs' statement, this point is obviously disputed in light of Defendants' objections.  Plaintiffs then completely ignore Defendants' arguments concerning prosecution history estoppel and simply continue to present conclusory statements that are irrelevant and somewhat unintelligible:  "For at least claim 10 of the '616 patent, it is further undisputed that the Foundation has presented detailed evidence and expert testimony supporting that structures contained in the accused products are equivalent under 35 U.S.C. 112, ¶ 6 for certain disputed terms to show literal infringement.  This same analysis showing literal infringement and equivalence under 35 U.S.C. § 112, ¶ 6 also supports a finding of infringement under the Doctrine of Equivalents."  Claim 10 is a method claim and, thus, Plaintiffs' reference to Section 112, paragraph 6 makes no sense.

In the end, Plaintiffs' promise of "greater detail" is illusory, and merely amounts to paragraphs of empty statements that provide no reason to allow its improper instructions.

-39-

### 3.3  PATENT LAW GENERALLY (UNDISPUTED)

Under the patent law of the United States:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of the U.S. patent laws.

Once a patent is issued, the law confers upon the owner of the patent the right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States beginning on the date on which the patent issues and at the end of the patent's term.  In this case, the `616 patent issued on March 11, 1997 and will expire on March 11, 2014.  The `691 patent issued on August 17, 1999, and expired on September 22, 2009.  Infringement of a patent occurs whenever any person without authority makes, uses, offers to sell, or sells the patented invention anywhere in the United States during the term of the patent.

**Authority**:

*O'Malley et al*., 3A Fed. Jury Prac. & Instr. § 158:10 (6th ed. Aug. 2013).

-40-

## 3.4  "DESCRIPTION OF PATENT CLAIMS" (DISPUTED)
### THE FOUNDATION'S PROPOSED INSTRUCTION

A patent is a document consisting of a specification, a claim or claims that are part of the specification, drawings and an oath supplied by the applicant.  A drawing is required when it is necessary to understand the subject matter sought to be patented.

The specification must contain an adequate written description of the invention and the manner and process of making and using the invention.  The specification must conclude with one or more claims.

Claims are numbered paragraphs defining in words the inventor's rights by marking the limits or boundaries of the invention claimed to have been invented. The patent claims must define with precision the particular thing claimed to have been invented so the public will know what the thing is and be able to avoid infringing the patent.

The patent claims define the exact limits or nature of the invention; it is only the claims of the patent that can be infringed.  Each of the claims must be considered individually.  You may find infringement when only one claim of a patent is infringed. The scope of the patent claims is a question of law for me.

I will now provide a document with my constructions of the asserted claims. You should refer to this document when considering the scope of the patent claims.

[The Court hands out the claim construction]

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:2 (6th ed. Aug. 2013) (as amended).

-41-

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

        The Cochlear Defendants object to this proposed instruction on the basis that it excludes parts of the O'Malley instruction that will be helpful to the jury in understanding its role, and the role of the Court. The O'Malley instruction properly introduces the issue of the Court's construction of the claims. The Cochlear Defendants further object to this instruction which has the Court reading the claim construction before the jury has any meaningful information about the case or the technology involved, much less any evidence of any kind. This will hopelessly confuse the jury and make it much harder for them to understand the case and the issues presented in detail. The claim construction should be presented by the court after the jury has sufficient background to understand what the terms are and how they apply to the claims and defenses presented.

        The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order. That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law. In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.


    **2. The Cochlear Defendants' Propounded Alternative Instructions**

    **THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE INSTRUCTION**

        A patent is a document consisting of a specification, a claim or claims that are part of the specification, a drawing and an oath supplied by the applicant. A

1 drawing is required when it is necessary to understand the subject matter sought to
2 be patented.

3      The specification must contain an adequate written description of the invention
4 and the manner and process of making and using the invention.  The specification
5 must conclude with one or more claims.

6      Claims are numbered paragraphs defining in words the inventor's rights by
7 marking the limits or boundaries of the invention claimed to have been invented.
8 The patent claims must define with precision the particular thing claimed to have
9 been invented so the public will know what the thing is and be able to avoid
10 infringing the patent.

11      The patent claims define the exact limits or nature of the invention; it is only
12 the claims of the patent that can be infringed.  Each of the claims must be considered
13 individually.  You may find infringement when only one claim of a patent is
14 infringed.

15      Before you decide whether the Cochlear Defendants have infringed any of the
16 claims of the patents in suit or whether the claims are invalid, you will need to
17 understand the patent claims.  The scope of the patent claims is a question of law for
18 me.  It is my job as judge to explain to you the meaning of any language in the
19 claims that needs interpretation.

20      As a matter of law, the meaning and scope of these claims of the patent in suit
21 are for the Court to decide, and I will provide those definitions to you at the close of
22 the case.  The parties may also provide you with the constructions that I have
23 previously given to them as they present the evidence in the case.

24

25 *Authority:*

26      *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:2 (6th ed. Aug. 2013).

27

28

-43-

1

**b. The Foundation's Response**

2      While both parties claim to rely on O'Malley for their instruction, the

3  Cochlear Defendants' instruction includes the paragraph:

4              Before you decide whether the Cochlear Defendants have

5              infringed any of the claims of the patents in suit or whether the

6              claims are invalid, you will need to understand the patent

7              claims.  The scope of the patent claims is a question of law for

8              me.  It is my job as judge to explain to you the meaning of any

9              language in the claims that needs interpretation.

10  This paragraph is not included in O'Malley. It is redundant in part, and is

11  unnecessary.  Accordingly, the Court should adopt the Foundation's proposed jury

12  instruction

13  **c. The Cochlear Defendants' Reply**

14  The quoted language is neutral and advises the jury of the Court's role that is not

15  elsewhere included in this introductory instruction.  The paragraph that states:

16              "I will now provide a document with my constructions of the

17              asserted claims.  You should refer to this document when

18              considering the scope of the patent claims.

19              [The Court hands out the claim construction]"

20  Is not in O'Malley and it will confuse and alienate the jury.

21

22

23

24

25

26

27

28

-44-

## 3.5 – PATENTABLE INVENTION(DISPUTED)
## THE FOUNDATION'S PROPOSED INSTRUCTION

Two basic elements are required in order to be a "patentable invention":

First:  Novelty—the invention should disclose something new.  In order to be "new," as that word is used in the patent laws, the achievement must be either one that produces an unusual or improved or advanced result, which was unknown to the same prior art at the time of the claimed invention; or the achievement must be one that produces an old result in an unusual or substantially more efficient, or more economical way.  If a single prior art reference discloses each and every element of the claim, there is no novelty.  However, to be patentable, an invention does not have to be better than the prior art—just different.

Second:  Nonobviousness—the subject matter of the invention must not be "obvious" to a person having ordinary skill in the pertinent art at the time the invention was made.

Thus, novelty and nonobviousness that add or contribute to the sum of useful knowledge are inherent requisites in a patent in order for it to promote progress of the useful arts.

*Authority:*

*O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:43 (6th ed., Aug. 2013).

**a. The Cochlear Defendants' Objection:**

**1. Basis for Objection**

The Cochlear Defendants object to this proposed instruction on the basis that it excludes part of the O'Malley instruction that provides the jury with helpful background information on patents. The O'Malley instruction properly introduces the three basic elements underlying a patent. The Foundation's attempt to exclude utility for no valid reason or asserted prejudice is improper. Moreover, the Foundation incorporates the issue of usefulness in its other instructions (e.g., 5.0 on presumption of validity). The jury should receive the background to put those references into context.

The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order. That instruction includes the language omitted from the O'Malley instruction by the Foundation.

**2. The Cochlear Defendants' Propounded Alternative Instruction**

**3.5  PATENTABLE INVENTION**

The three basic elements required in order to be a "patentable invention" are:

<u>First</u>:  Novelty—the invention should disclose something new. In order to be "new," as that word is used in the patent laws, the achievement must be either one that produces an unusual or improved or advanced result, which was unknown to the same prior art at the time of the claimed invention; or the achievement must be one that produces an old result in an unusual or substantially more efficient, or more economical way. If a single prior art reference discloses each and every element of the claim, there is no novelty. However, to be patentable, an invention does not have to be better than the prior art—just different.

1    <u>Second</u>:  Utility—the invention should be useful.  In order to be "useful," as

2    that word is used in the patent laws, the achievement must have practical application

3    or utility in the same art.  The achievement must operate or function in the manner

4    claimed and produce a useful result calculated by the invention.

5    <u>Third</u>:  Nonobviousness—the subject matter of the invention must not be

6    "obvious" to a person having ordinary skill in the pertinent art at the time the

7    invention was made.

8    Thus, novelty, utility and nonobviousness that add or contribute to the sum of

9    useful knowledge are inherent requisites in a patent in order for it to promote

10   progress of the useful arts.

11

12   ***Authority:***

13   *O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:43 (6th ed. Aug. 2013).

-47-

**<u>b. The Foundation's Response</u>**

**c. The Cochlear Defendants' Reply**

-48-

### 3.6  "OUTLINE OF TRIAL" (DISPUTED)

### THE FOUNDATION'S PROPOSED INSTRUCTION

The trial will now begin.  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.

The Foundation will present their evidence on their contentions that some of the claims of the two patents in suit have been infringed by the Cochlear Defendants, and that the infringement of the asserted patents was willful.  These witnesses will be questioned first by the Foundation's counsel in what is called direct examination.  After the direct examination of a witness is completed, the counsel for the Cochlear Defendants will have an opportunity to cross-examine the witness.  To prove infringement of any claim, the Foundation must persuade you by a preponderance of the evidence that the Cochlear Defendants have infringed that claim.  To persuade you that any infringement was willful, the Foundation must prove that it is highly probable that the infringement was willful.

After the Foundation has presented its witnesses, the Cochlear Defendants will call their witnesses, who will also be examined and cross-examined.  The Cochlear Defendants will present their evidence that the claims of the patents in suit are invalid.  To prove invalidity of any claim, the Cochlear Defendants must present clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, the Cochlear Defendants will put on evidence responding to the Foundation's infringement and willfulness contentions.

The Foundation will then return and will put on evidence responding to the Cochlear Defendants contentions that the claims of the two patents in suit are invalid.  The Plaintiffs will also have the option to put on what is referred to as

-49-

1  "rebuttal" evidence to any evidence offered by the Cochlear Defendants of
2  non-infringement or lack of willfulness.

3          Finally, the Cochlear Defendants will have the option to put on "rebuttal"
4  evidence to any evidence offered by the Plaintiffs on the invalidity of the claims of
5  the two patents in suit.

6          During the presentation of the evidence, the attorneys will be allowed brief
7  opportunities to explain what they believe the evidence has shown or what they
8  believe upcoming evidence will show.  Such comments are not evidence and are
9  being allowed solely for the purpose of helping you understand the evidence.

10         Because the evidence is introduced piecemeal, you need to keep an open mind
11  as the evidence comes in and wait for all the evidence before you make any
12  decisions.  In other words, you should keep an open mind throughout the entire trial.

13         After the evidence has been presented, I will give you final instructions on the
14  law that applies to the case and the attorneys will make closing arguments.  Closing
15  arguments are not evidence.  After the instructions and closing arguments, you will
16  then decide the case.

17

18  *Authority:*

19         *Model Patent Jury Instructions for the Northern District of California, Instr.*
20  *A.5, November 2011.*

21

22

23

24

25

26

27

28

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    The Cochlear Defendants further object to this proposed instruction on the basis that it addresses improper matter as discussed below, it also include an inaccurate statement of the standard for establishing willful infringement that is prejudicial to the Cochlear Defendants.  The proper standard is addressed in the Cochlear Defendants' proffered alternative instruction directed to willful infringement, though the Defendants maintain that it is error to introduce the issue of willful infringement to the jury.

    Lastly, the Cochlear Defendants object to this instruction as the Defendants objectively reasonable claims of non-infringement, invalidity and inequitable conduct preclude the submission of willful infringement to the jury.  These issues are discussed in the Defendants Memorandum of Fact and Law as Evidentiary Issues 10 and 11, and Issues of Law 6 and 7.

    The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.

    **2. Cochlear Defendants' Propounded Alternative Instruction**
    **3.6  "OUTLINE OF TRIAL"**

    The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

    The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.  The Foundation will present its evidence on its contentions that some of the claims of the

-51-

1    two patents in suit have been infringed by the Cochlear Defendants.  These

2    witnesses will be questioned first by the Foundation's counsel in what is called

3    direct examination.  After the direct examination of a witness is completed, the

4    counsel for the Cochlear Defendants will have an opportunity to cross-examine the

5    witness.  To prove infringement of any claim, the Foundation must persuade you by

6    a preponderance of the evidence that the Cochlear Defendants have infringed that

7    claim.

8         After the Foundation has presented its witnesses, the Cochlear Defendants

9    will call their witnesses, who will also be examined and cross-examined.  The

10   Cochlear Defendants will present their evidence that the claims of the patents in suit

11   are invalid.  To prove invalidity of any claim, the Cochlear Defendants must present

12   clear and convincing evidence that the claim is invalid.  In addition to presenting its

13   evidence of invalidity, the Cochlear Defendants will put on evidence responding to

14   the Foundation's infringement.  The Cochlear Defendants will also present evidence

15   of inequitable conduct by the Foundation.

16        The Foundation will then return and will put on evidence responding to the

17   Cochlear Defendants contentions that the claims of the two patents in suit are

18   invalid.  The Foundation will also have the option to put on what is referred to as

19   "rebuttal" evidence to any evidence offered by the Cochlear Defendants of

20   non-infringement.

21        Finally, the Cochlear Defendants will have the option to put on "rebuttal"

22   evidence to any evidence offered by the Foundation on the invalidity of the claims

23   of the two patents in suit.

24        During the presentation of the evidence, the attorneys will be allowed brief

25   opportunities to explain what they believe the evidence has shown or what they

26   believe upcoming evidence will show.  Such comments are not evidence and are

27   being allowed solely for the purpose of helping you understand the evidence.

28

-52-

1    Because the evidence is introduced piecemeal, you need to keep an open mind

2 as the evidence comes in and wait for all the evidence before you make any

3 decisions.  In other words, you should keep an open mind throughout the entire trial.

4    After the evidence has been presented, I will give you final instructions on the

5 law that applies to the case and the attorneys will make closing arguments.  Closing

6 arguments are not evidence.  After the instructions and closing arguments, you will

7 then decide the case.

8

9 *Authority:*

10 *Model Patent Jury Instructions for the Northern District of California, Instr. A.5,*

11 *November 2011.*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**b. The Foundation's Response**

It is undisputed that the Foundation has presented evidence of induced infringement, contributory infringement and willful infringement of all the asserted claims.  With regard to contributory infringement, the Foundation explains the propriety of including these instruction in connection with its response to the Cochlear Defendants' Proposed Instruction 4.8 and with respect to inducement of infringement, in connections with its response to the Cochlear Defendants' propounded instruction in 4.7. These claims were timely made and the jury should be instructed that contributory infringement, inducement and willfulness are all at issue in this case for all the claims asserted.

With particular regard to willfulness, Cochlear has admitted that it had knowledge of the '616 patent since at least 2003, and of the '691 patent since 2004. Despite its knowledge, of the patents, the Cochlear Defendants' have willfully and recklessly persisted in selling infringing products.

To the extent the Court wishes to take up this issue, the Foundation requests an opportunity to fully brief the issue.

**c. The Cochlear Defendants' Reply**

The Foundation continues to ignore the law that willfulness cannot be given to the jury in the face of objectively reasonable defenses of non-infringement, invalidity and/or inequitable conduct.  As the Court is well aware from its review of the summary judgment motions and the evidence submitted, the Cochlear Defendants have objectively reasonable defenses on all three issues.  Thus, it is improper to submit the issues to the jury.  *See* Cochlear Defendants' Memorandum of Fact and Law at pp. 21-22 and 58-59.  *See also DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); and, *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011) (the objective test is a question of law, and if the

-54-

1  defenses are reasonable the question of willfulness cannot be sent to the jury).  Thus,

2  the Cochlear Defendants object to introducing the issue of willful infringement to

3  the jury prior to the Plaintiffs' meeting this threshold issue.  *Guzik Tech v. Western*

4  *Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013).

5         Similarly, the law is equally clear that the Foundation is not permitted to seek

6  a finding of willful infringement of the `691 patent since no notice of that patent was

7  given to the Cochlear Defendants prior to the filing of the Complaint.  The

8  Foundation asserts that the Cochlear Defendants have known of the `691 patent

9  since 2004, notably without any citation to any evidence.  As discussed in the

10 Cochlear Defendants' Memorandum of Fact and Law at pp. 58-59, AMF is not

11 entitled to pursue willful infringement of the `691 patent since all conduct that is

12 alleged to be willful is post-filing of the Complaint.  Absent seeking a preliminary

13 injunction, which they did not do here, Plaintiffs are precluded from seeking willful

14 infringement of the `691 patent.  *In re Seagate Tech*. 497 F.3d 1360  (Fed. Cir.

15 2007).

16        The Foundation's reference to induced infringement and contributory

17 infringement is not relevant or pertinent to this instruction.

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12          **<u>INSTRUCTIONS AT THE CLOSE OF EVIDENCE</u>**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 1.1  DUTY OF JURY  (UNDISPUTED)

It is my duty to provide you with final instructions on the law.

These instructions will help you understand the principles that apply to civil trials and to help you understand the evidence as you weigh it.  This final set of instructions, together with your initial instructions, will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.1A*

**Full Instruction of the Jury**

The Cochlear Defendants believe that the jury should be fully instructed after the close of evidence.  This will necessitate the reinstruction of the jury on certain issues.  The is common practice and recognized in the Northern District Model Jury instructions that are referred to in O'Malley as a source for certain instructions that O'Malley does not provide.  *See* Model Patent Jury Instructions § A.4, Northern District of California (Nov. 3, 2011) ("The court may want to consider giving preliminary instructions on the patent law applicable to the specific issues in the case. This could help focus the jury on the facts relevant to the issues it will have to decide. If this is done, the instructions intended to be given after the close of evidence could be adapted and given as preliminary instructions. This, of course, would not negate the need to give complete instructions at the close of evidence.")

The Cochlear Defendants have inserted the necessary instructions for the jury to be fully instructed below.

## 1.3  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*
*Ninth Circuit Manual of Model Jury Instructions, 1.3*

**1.4  BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.4*

-59-

## 1.6  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

4.    the sworn testimony of any witness;

5.    the exhibits which are received into evidence; and

6.    any facts to which the lawyers have agreed.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.6*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

# 1.7  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

5.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

6.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

7.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

8.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 1.7*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

# 1.8  EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.8*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 1.9  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.9*

# 1.10  RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.10*

## 1.11  CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

8.  the opportunity and ability of the witness to see or hear or know the things testified to;

9.  the witness's memory;

10.  the witness's manner while testifying;

11.  the witness's interest in the outcome of the case and any bias or prejudice;

12.  whether other evidence contradicted the witness's testimony;

13.  the reasonableness of the witness's testimony in light of all the evidence; and

14.  any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.11*

### 1.12  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you have received all the evidence and will now receive the legal instruction you properly may consider to return a verdict, you are still prohibited from reading, watching, or listening to any news or media accounts or commentary about the case or anything to do with it; nor are you permitted to do any research, such as consulting dictionaries, searching the Internet or using other reference materials; nor may you make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**_Authority:_**

_Ninth Circuit Manual of Model Jury Instructions, 1.12_

-67-

# 1.13  NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 1.13*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 1.14  TAKING NOTES

You may use your notes to help you remember the evidence.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.14*

**1.18  BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it was necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how to treat certain evidence under the rules of evidence and to avoid confusion and error.

I may not have always granted an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.18*

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 2.1  STIPULATED TESTIMONY[5]

The parties may agree on what a particular witness's testimony would be if called as a witness.  If so, you should consider that testimony in the same way as if it had been given here in court.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.2*

---

[5] This instruction should only be read if the parties present any stipulated testimony

## 2.2  STIPULATIONS OF FACT

The parties have agreed to certain facts to be placed in evidence in this trial that will now be read to you  You should therefore treat these facts as having been proved.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.2*

## 2.3 JUDICIAL NOTICE[6]

The court has decided to accept as proved the following facts, even though no evidence has been introduced on the subject. You must accept this fact as true.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.3*

---

[6] This instruction should only be read if the court takes judicial notice of a fact.

-73-

## 2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  The deposition of that person may be used at the trial.

As to any deposition testimony provided, you should consider that testimony presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.4; FRE 801(d)(2); FRCivPro 30(b)(6)*

## 2.8  IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 2.8*

## 2.10  USE OF INTERROGATORIES OF A PARTY

Any evidence presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.10*

## 2.11  EXPERT OPINION

Some witnesses, because of education or experience, have been permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.11*

## 2.12  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not received in evidence are shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.12*

-78-

## 2.13  CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries may have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.13*

-79-

## 4.1  "INFRINGEMENT" (DISPUTED)

### THE FOUNDATION'S PROPOSED INSTRUCTION

There are three ways to infringe a patent applicable to this case.

<u>First</u>:  One may directly infringe a patent;

<u>Second</u>:  One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer.

<u>Third</u>: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

The Foundation alleges that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent, both literally and under the doctrine of equivalents.

The Foundation alleges that the Cochlear Defendants have actively induced others to infringe claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent, both literally and under the doctrine of equivalents, both literally and under the doctrine of equivalents.

The Foundation alleges that the Cochlear Defendants have contributorily infringed claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent, both literally and under the doctrine of equivalents.

The burden of proof is upon the Foundation to prove infringement by a preponderance of the evidence.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug. 2013) as amended.

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

The Cochlear Defendants  object to this proposed instruction on the basis that it is contrary to the applicable law and basic due process.  First, it is improper to instruct the jury on Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent as each of these claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

Second, the Plaintiffs are seeking to assert claims that they never disclosed during discovery, to the significant prejudice of the Cochlear Defendants.  This applies to any assertion of inducement of infringement or contributory infringement as to any claim other than claim 10 of the `616 patent and to the assertion of doctrine of equivalents as to any claim other than claim 10 of the `616 patent. These issues are addressed more fully at Defendants Memorandum of Fact and Law as Evidentiary Issues 6-9 and as Issues of Law 3-5.

And the supreme Court made clear that the attempt to apply the doctrine of equivalents to claim 10 of the `616 patent is prohibited by the substantive amendment made by the Foundation to obtain the patent in the first place.  This issue is addressed more fully at Defendants Memorandum of Fact and Law as Evidentiary Issues 7 and 8 and as Issues of Law 3 and 4.

Finally, the Foundation seeks to ignore reality by suggesting that it is entitled to pursue the issue of willful infringement before the jury.  The Defendants objectively reasonable claims of non-infringement, invalidity and inequitable conduct preclude the submission of willful infringement to the jury.  Moreover, the Plaintiffs are legally prohibited from seeking willful infringement of the `691 patent since all of the conduct asserted to be willful is post-filing of the Complaint.  These issues are discussed more fully in the Defendants Memorandum of Fact and Law as Evidentiary Issues 10 and 11, and Issues of Law 6 and 7.

Subject to and without waiving their objections, the Cochlear Defendants submit an alternative instruction. The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving their objections the Cochlear Defendants also submit a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

**2. The Cochlear Defendants' Propounded Alternative Instructions**

**THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE INSTRUCTION**

**4.1  INFRINGEMENT**

There are two ways to infringe a patent applicable to this case.

<u>First</u>:  One may directly infringe a patent;

<u>Second</u>:  One may indirectly infringe a patent.  Indirect infringement can occur either when (i) someone actively induces others to infringe a patent in which case the person inducing infringement is liable for infringement or (ii) when someone contributes to the infringement of another by selling or supplying something less than the entire combination of elements listed in a claim but which has no substantial use other than to infringe the patent and selling or supplying that thing with the knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

Plaintiffs allege that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

-82-

1   Plaintiffs allege that the Cochlear Defendants have actively induced others to
2   infringe and/or have contributorily infringed claim 10 of the `616 patent.

3   The burden of proof is upon the Foundation to prove infringement by a
4   preponderance of the evidence.

5   If you should find that the Foundation has not established that the "accused
6   products" infringe any valid claim of the patents in suit by a preponderance of the
7   evidence in the case, then you should return a verdict in favor of the Cochlear
8   Defendants on the issue of infringement.

9

10  *Authority:*

11  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug.
12  2013) as amended.

**THE COCHLEAR DEFENDANTS' BROAD ALTERNATIVE INSTRUCTION**

**4.1  INFRINGEMENT**

There are two ways to infringe a patent applicable to this case.

First:  One may directly infringe a patent;

Second:  One may indirectly infringe a patent.  Indirect infringement can occur either when (i) someone actively induces others to infringe a patent in which case the person inducing infringement is liable for infringement or (ii) when someone contributes to the infringement of another by selling or supplying something less than the entire combination of elements listed in a claim but which has no substantial use other than to infringe the patent and selling or supplying that thing with the knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

The Foundation alleges that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The Foundation alleges that the Cochlear Defendants have actively induced others to infringe claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The Foundation alleges that the Cochlear Defendants have contributorily infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The burden of proof is upon the Foundation to prove infringement by a preponderance of the evidence.

If you should find that the Foundation has not established that the "accused products" infringe any valid claim of the patents in suit by a preponderance of the evidence in the case, then you should return a verdict in favor of the Cochlear Defendants on the issue of infringement.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug. 2013) as amended.

## b. The Foundation's Response

Cochlear's attempts to exclude the Foundation's allegations of inducement and contributory infringement are improper.  The Foundation has provided evidence that the accused Cochlear wearable processor, implant, and diagnostic software products are separate components that may be sold separately.  The Foundation has further provided evidence that although these components may be sold separately, each component is a material part of a single infringing cochlear implant system. The Foundation has further provided evidence that the components have no substantial non-infringing uses.  Each component product can be used (and is designed to be used) only in combination with, and only with, the other components.

In addition, the Foundation's proposed instruction is clearer, more likely to be understood by the jury, and more accurately supported by *O'Malley*.

For at least these reasons, the Foundation's more accurate proposed instruction should be adopted.

## Cochlear Defendants' Reply:

Nothing the Foundation says here, or anywhere in the draft jury instructions, addresses the fundamental issues that underlie the Defendants' objections.  The instruction proffered by the Defendants is easily understood by the jury and will give them appropriate orientation that will allow them to focus on the evidence rather than the inferences the Foundation seeks to obtain in their proffered improper instructions.

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**4.4  ASSIGNMENT**

The `616 patent and the `691 patent obtained by the inventors were assigned or transferred to the Foundation.  As an assignee of the inventor, the Foundation holds the same rights and interests in the patent as the inventor held.  Therefore, the Foundation holds the patents subject to all defenses of unenforceability and invalidity that could have been raised against the inventor.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:28 (6th ed. Aug. 2013).

### 4.5a  "DIRECT INFRINGEMENT—LITERAL INFRINGEMENT"

Once the patent is issued, the owner of the patent has a right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States for the term of the patent.  Infringement of a patent occurs when a person makes, uses or sells the patented invention anywhere in the United States without the owner's permission while the patent is in force.  To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims.  Those claims contain certain terms for which I will provide you a definition.

### READ CLAIM CONSTRUCTIONS OF TERMS NOT SUBJECT TO THE MEANS-PLUS-FUNCTION REQUIREMENT HERE

The Foundation may prove their claims of infringement by demonstrating that each of the Cochlear Defendants' accused products literally infringes a claim contained in an asserted patent.  In order for you find that the Cochlear Defendants' accused product literally infringes a claim of one of the patents in suit, you must find that each and every element of that patent claim is found in the defendants' product.  In other words, a product literally infringes a patented claim when the same combination of elements found in the patent claim can also be found in the accused product.

In making your determination, you must consider each claim and each product separately.  Not all of the claims of a patent must be infringed before a patent is infringed.  The Foundation is only required to establish by a preponderance of the evidence that one claim is infringed in order for there to be patent infringement.

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1   ***Authority:***

2       *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013).

1  **4.5b "DIRECT INFRINGEMENT—INFRINGEMENT OF MEANS-PLUS-**

2  **FUNCTION CLAIMS" (DISPUTED)**

3  **THE FOUNDATION'S PROPOSED INSTRUCTION**

4    As I have previously explained, claim 1 of the '616 patent, and claims 6 and 7

5  of the '691 patent include elements that are in means-plus-function form.

6    A product meets a means-plus-function element of a claim if: (1) it has a

7  structure or a set of structures that perform the identical function recited in the

8  claim, and (2) that structure or set of structures is either identical or "equivalent" to

9  one or more of the corresponding structures describes in the patent.  I will provide

10  you with my definitions of the functions of certain of these elements in the patent

11  claims and I will identify the corresponding structures in the patent.

12    For purposes of this trial, I have interpreted each means-plus-function element

13  for you and identified the structure in the patent specification that corresponds to

14  these means-plus-function requirements.  Specifically, I have determined the

15  following:

16    **For Claim 1 of the `616 patent**:

17    •    For the term "transmitting means for transmitting data-containing

18  signals to the ICS" the recited function is "transmitting data-containing signals to

19  the ICS" and the corresponding structure is "an antenna and a transmitter."

20    •    For the term "the ICS comprising: (a) receiving means for receiving the

21  data-containing signals" the recited function is "receiving the data-containing

22  signals" and the corresponding structure is "a receiver connected to a main

23  coil/antenna.  The receiver connected to a main antenna/coil is separate structure

24  from the telemetry transmitter and telemetry antenna/coil."

25    •    For the term "monitor means in the processor means and responsive to

26  the data-containing signals for (1) selectively monitoring at least one pair of the

27  tissue-stimulating electrodes as one of the stimulation signals is applied thereto to

28

-90-

1  measure a voltage associated with said pair of electrodes, and (2) generating

2  stimulator status-indicating signals" the two recited functions are "selectively

3  monitoring at least one pair of the tissue-stimulating electrodes as one of the

4  stimulation signals is applied thereto to measure a voltage associated with said pair

5  of electrodes" and "generating stimulator status-indicating signals"; the

6  corresponding structure is "a decoder, a telemetry function decoder and a signal

7  multiplexer."

8          •        For the term "telemetry means for transmitting the stimulator status-

9  indicating signals to the external headpiece/transmitter means" the recited function

10  is "transmitting the stimulator status-indicating signals to the external

11  headpiece/transmitter means" and the corresponding structure is "a telemetry

12  transmitter connected to a coil/antenna.  The telemetry transmitter connected to an

13  antenna/coil is a separate structure from the receiver and main antenna/coil."

14          •        For the term "external processor means coupled to the transmitting

15  means of the external headpiece/transmitter for receiving and processing the status-

16  indicating signals to derive information therefrom regarding the operation of the

17  implanted stimulator and its plurality of tissue stimulating electrodes" the recited

18  function is "receiving and processing the status-indicating signals to derive

19  information therefrom regarding the operation of the implanted stimulator and its

20  plurality of tissue stimulating electrodes" and the corresponding structure is an

21  "antenna, receiver and microprocessor."

22          •        For the term "user-controllable means connected to the external

23  processor means for selectively generating and controlling the data-containing

24  signals transmitted by the transmitting means of external headpiece/transmitter

25  means" the recited function is "selectively generating and controlling the data-

26  containing signals transmitted by the transmitting means of the external

27

28

-91-

1  headpiece/transmitter means" and the corresponding structure is "three rotary panel

2  knobs which control potentiometers that control a microprocessor."

3  •  For the term "manual means for specifying a peak output current for

4  the stimulation signals to be applied to the at least one pair of tissue-stimulating

5  electrodes" the recited function is "specifying a peak output current for the

6  stimulation signals to be applied to the at least one pair of tissue-stimulating

7  electrodes" and the corresponding structure is "an adjustable rotary control knob

8  which controls peak output current."

9

10  **For Claim 6 of the `691 patent**:

11  •  For the term "audio signal receiving means" the recited function is

12  "receiving audio signals" and the corresponding structure is "a microphone."

13  •  For the term "means for generating data indicative of the audio signal"

14  the recited function is "generating data indicative of the audio signal" and the

15  corresponding structure is "a microprocessor."

16  •  For the term "means for transmitting the data to an implanted cochlea

17  stimulator (ICS)" the recited function is "transmitting the data to an implanted

18  cochlea stimulator (ICS)" and the corresponding structure is "an antenna and a

19  transmitter."

20  •  For the term "the ICS including: means for receiving transmissions

21  from the WP" the recited function is "receiving transmissions from the WP" and the

22  corresponding structure is "a receiver connected to a main coil/antenna.  The

23  receiver connected to a main antenna/coil is separate structure from the telemetry

24  transmitter and telemetry antenna/coil."

25  •  For the term "means in the ICS responsive to data from the WP for

26  selectively monitoring at least one of the electrodes or voltages in the ICS and for

27  generating ICS-status-indicating signals" there are two recited functions:

28

-92-

1  "selectively monitoring at least one of the electrodes or voltages in the ICS" and

2  "generating ICS-status-indicating signals"; the corresponding structure is "a

3  decoder, a telemetry function decoder and a signal multiplexer."

4        •  For the term "means in the ICS for transmitting such ICS-status-

5  indicating signals to the WP" the recited function is "transmitting such IC-status-

6  indicating signals to the WP" and the corresponding structure is "a telemetry

7  transmitter connected to a coil/antenna.  The telemetry transmitter connected to an

8  antenna/coil is a separate structure from the receiver and main antenna/coil."

9        •  For the term "means in the WP for receiving and processing the ICS-

10  status-indicating signals" the recited function is "receiving and processing the ICS-

11  status-indicating signals" and the corresponding structure is "a telemetry receiver,

12  microprocessor and gate array."

13

14  **For Claim 7 of the `691 patent**:

15        In addition to the terms from claim 6, the following terms also apply to

16  claim 7:

17        •  For the term "means for transmitting power signals from the WP to the

18  ICS" the recited function is "transmitting power signals from the WP to the ICS"

19  and the corresponding structure is "a transmitter and an antenna."

20        •  For the term "means in the ICS for processing the power signals and for

21  generating power for the ICS" the recited function is "processing the power signals

22  and generating power for the ICS" and the corresponding structure is "a receiver

23  including a power rectifier, a regulator, voltage reference, a voltage regulator, error

24  amplifier and a voltage down converter."

25        •  For the term "means in the WP responsive to at least a portion of the

26  status indicating signals for controlling the power level of transmissions to the ICS"

27

28

-93-

the recited function is "controlling the power level of transmission to the ICS" and the corresponding structure is "a switching regulator of a gate array."

If the product performs the specific function recited in the claims, but uses a different structure than what is described in the patent, there will still be infringement if you determine that that structure in the Accused Product is "equivalent" to the structure disclosed in the patent.

On the other hand, if the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim. Even if the product has a structure that performs the function recited in the claim but the structure is not either identical or "equivalent" to one or more of the structure(s) that I defined to you as being described in the '616 and '691 patents and performing this function, the product does not literally infringe the asserted claim.

*Authority:*

Adapted from Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar Association (June 2013) (and sources cited therein).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**a. The Cochlear Defendant's Objection:**

     **1. Basis for Objection**

     In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by the Foundation as it fails to comply with this Court's directive.

     Here, the most recent version of O'Malley, et al. Instructions instructs users to the applicable instruction in the Northern District of California model instructions since O'Malley does not have the topic covered.  Defendants used that instruction to addresses the issue.  In contravention of the Court's Order, the Foundation seeks to use a modified version of an unapproved model instruction propounded by the Federal Circuit Bar Association.  The Foundation's proffer should be rejected for their failure to comply with the Court's Order.

     The Cochlear Defendants further object to this proposed instruction on the basis that it is contrary to the law and does not provide the jury with a solid footing in understanding means plus function claims, an area with which the jury is certain to be unfamiliar and looking for guidance.  The Foundation's proposed instruction deletes without justification the very instruction that the jury will need to avoid confusion in this tricky area.  The Defendants' proposed instruction closely tracks the Court-ordered source for instructions and the Foundation should not be permitted to flout the Court's Order in its attempt to mislead the jury or leave them confused.

1    Finally, the Cochlear Defendants object to this instruction as it seeks to put
2    improper issues to the jury.  In particular, the Cochlear Defendants renew and
3    preserve their objection that it is improper to instruct the jury on Claim 1 of the '616
4    patent and claims 6 and 7 of the '691 patent as each of these claims are invalid as a
5    matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum
6    of Fact and Law as Issue of Law 1.  Under this objection, no instruction is needed.

7    In the event the Court determines that the issues to be presented to the jury are
8    broader than those articulated by the Cochlear Defendants, subject to and without
9    waiving its objections, the Cochlear Defendants submit herewith an alternative
10   proposed instruction that is in compliance with the Court's directives in its October
11   18, 2013 Order.

12

13   **2. Propounded Alternative Instruction**
14   No instruction is needed for the reasons discussed above.  Subject to and without
15   waiving its objections, The Cochlear Defendants submit the following:

16   **THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**
17   **4.5b  MEANS-PLUS-FUNCTION CLAIMS – LITERAL INFRINGEMENT**[7]

18   I will now describe the separate rules that apply to "means-plus-function"
19   elements that are used in claim 1 of the `616 and claims 6 and 7 of the `691 patent.
20   A means-plus-function element only covers the specific structure disclosed in a
21   patent specification for performing the claimed function and the equivalents of those
22   specific structure that perform the claimed function.  A means-plus-function element
23   does not cover all possible structures that could be used to perform the claimed
24   function.

25   _____

26   [7] Subject to and without waiving their objections the Cochlear Defendants submit
27   this instruction that addresses claim 1 of the `616 patent and/or claims 6 and 7 of the
     `691 patent.  These references should be removed if the Court agrees that these
28   claims are indefinite and therefore invalid as a matter of law.

-96-

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain.  But because the phrase is a means-plus-function element, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

For purposes of this trial, I have interpreted each means-plus-function element for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements.  Specifically, I have determined the following:

**For Claim 1 of the `616 patent**:

- For the term "transmitting means for transmitting data-containing signals to the ICS" the recited function is "transmitting data-containing signals to the ICS" and the corresponding structure is "an antenna and a transmitter."

- For the term "the ICS comprising: (a) receiving means for receiving the data-containing signals" the recited function is "receiving the data-containing signals" and the corresponding structure is "a receiver connected to a main coil/antenna.  The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

- For the term "monitor means in the processor means and responsive to the data-containing signals for (1) selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage associated with said pair of electrodes, and (2) generating stimulator status-indicating signals" the two recited functions are "selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage

-97-

associated with said pair of electrodes" and "generating stimulator status-indicating signals"; the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

- For the term "telemetry means for transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" the recited function is "transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna. The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

- For the term "external processor means coupled to the transmitting means of the external headpiece/transmitter for receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" the recited function is "receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" and the corresponding structure is an "antenna, receiver and microprocessor."

- For the term "user-controllable means connected to the external processor means for selectively generating and controlling the data-containing signals transmitted by the transmitting means of external headpiece/transmitter means" the recited function is "selectively generating and controlling the data-containing signals transmitted by the transmitting means of the external headpiece/transmitter means" and the corresponding structure is "three rotary panel knobs which control potentiometers that control a microprocessor."

-98-

- For the term "manual means for specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" the recited function is "specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" and the corresponding structure is "an adjustable rotary control knob which controls peak output current."

**For Claim 6 of the `691 patent**:

- For the term "audio signal receiving means" the recited function is "receiving audio signals" and the corresponding structure is "a microphone."

- For the term "means for generating data indicative of the audio signal" the recited function is "generating data indicative of the audio signal" and the corresponding structure is "a microprocessor."

- For the term "means for transmitting the data to an implanted cochlea stimulator (ICS)" the recited function is "transmitting the data to an implanted cochlea stimulator (ICS)" and the corresponding structure is "an antenna and a transmitter."

- For the term "the ICS including: means for receiving transmissions from the WP" the recited function is "receiving transmissions from the WP" and the corresponding structure is "a receiver connected to a main coil/antenna.  The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

- For the term "means in the ICS responsive to data from the WP for selectively monitoring at least one of the electrodes or voltages in the ICS and for generating ICS-status-indicating signals" there are two recited functions: "selectively monitoring at least one of the electrodes or voltages in the ICS"

-99-

and "generating ICS-status-indicating signals"; the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

- For the term "means in the ICS for transmitting such ICS-status-indicating signals to the WP" the recited function is "transmitting such IC-status-indicating signals to the WP" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna.  The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

- For the term "means in the WP for receiving and processing the ICS-status-indicating signals" the recited function is "receiving and processing the ICS-status-indicating signals" and the corresponding structure is "a telemetry receiver, microprocessor and gate array."

**For Claim 7 of the `691 patent**:

In addition to the terms from claim 6, the following terms also apply to claim 7:

- For the term "means for transmitting power signals from the WP to the ICS" the recited function is "transmitting power signals from the WP to the ICS" and the corresponding structure is "a transmitter and an antenna."

- For the term "means in the ICS for processing the power signals and for generating power for the ICS" the recited function is "processing the power signals and generating power for the ICS" and the corresponding structure is "a receiver including a power rectifier, a regulator, voltage reference, a voltage regulator, error amplifier and a voltage down converter."

- For the term "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of transmissions to the ICS"

-100-

the recited function is "controlling the power level of transmission to the ICS" and the corresponding structure is "a switching regulator of a gate array."

In deciding if the Foundation has proven that the Cochlear Defendants' programming systems, sound processors and cochlear implants includes structure covered by a means-plus-function requirement, you must first decide for each element of a claim whether the Defendants' programming systems, sound processors and cochlear implants have any structure that performs the function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed. In analyzing a means plus function element for literal infringement, the Cochlear Defendants' programming systems, sound processors and cochlear implants device must perform the identical function as recited in the claim element.

If you find that the Cochlear Defendants' Defendants' programming systems, sound processors and/or cochlear implants do have structure that performs the identical claimed function, you must then determine whether that structure is the same as or equivalent to the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function element is satisfied by that structure of the Defendants' programming systems, sound processors and/or cochlear implant. If all the other elements of the claim are satisfied, the Defendants' programming systems, sound processors and/or cochlear implant infringes the claim.

In order to prove that a structure in the Defendants' programming systems, sound processors and/or cochlear implant is equivalent to the structure in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7), the Foundation must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7) and the structure in the Defendants' programming systems, sound processors and/or

-101-

cochlear implant are not substantial.  The Foundation must also show that the structure was available on the date the date the `616 patent was granted (for analyzing claim 1) or the date the `691 patent was granted (for analyzing claims 6 or 7).  This is important as an equivalent structure under a means plus function element analysis cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon its issuance.

Authorities

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013) directing use of *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3;* 35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320-21 (Fed. Cir. 1999).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**b. The Foundation's Response**

The Foundation's proposed instruction 4.5b should be adopted because it is clearer and more readily understood by the jury.  In contrast, Cochlear's proposed construction is confusing.  For example, Cochlear's proposed construction states that "[t]his is important as an equivalent structure under a means plus function element analysis cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon its issuance."  This sentence is improperly given undue prominence in Cochlear's proposed instruction potentially leading to jury confusion or improper application of law.

**Cochlear Defendants' Reply:**

The fact that a claim scope is fixed upon issuance of the patent is a concept the jury will easily understand, just as court's appreciate the nose of wax analogy of many years ago.  The Foundation's stated reason for opposing the Defendants' instruction exposes the true purpose of the Foundation's proffer, to confuse the jury with inadequate guidance.  This should be rejected by the Court.

-103-

1    **4.5c "DIRECT INFRINGEMENT—INFRINGEMENT OF MEANS-PLUS-**

2    **FUNCTION CLAIMS—STRUCTURAL EQUIVALANCE" (DISPUTED)**

3    **THE FOUNDATION'S PROPOSED INSTRUCTION**

4        As I just instructed, a means-plus-function claim element is met when the

5 accused structure performs an identical function of the claimed invention and either

6 (a) the accused structure is identical to the corresponding structure, or (b) the

7 accused structure is "equivalent" to the corresponding structure.

8        A structure or a set of structures may be found to be "equivalent" to a

9 corresponding structure I have identified in the '616 and '691 patents if a person

10 having ordinary skill in the field of technology of the patents either would have

11 considered the differences between them to be insubstantial at the time the patents

12 issued or if that person would have found the structure(s) performed the function in

13 substantially the same way to accomplish substantially the same result. In deciding

14 whether the differences would be "insubstantial," you may consider whether a

15 person having an ordinary level of skill in the field of technology of the patent

16 would have known of the interchangeability of the two structures or sets of

17 structures.  Interchangeability itself is not sufficient; in order for the structures to be

18 considered to be equivalent, the interchangeability of the two structures must have

19 been known to persons of ordinary skill in that art at the time the patent issued. The

20 fact that a structure or a set of structures is known now and is "equivalent" is not

21 enough. The structure or set of structures must also have been available at the time

22 the patents issued.

23        Do not confuse my instructions on "structural equivalence" with the

24 instructions on "doctrine of equivalence" I will provide you with next. Although

25 similar, they are not the same. For example, under the doctrine of equivalence, you

26 may consider whether the accused product performs substantially the same function;

27

28

-104-

for structural equivalence of a means plus function claim, you must consider only whether the structural differences are insubstantial.

***Authority:***

Adapted from Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar Association (June 2013) (and sources cited therein); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

**a. The Cochlear Defendant's Objection:**

    **1. Basis for Objection**

      This instruction is duplicative and confusing.  The issue of applying equivalents for determining literal infringement of a means-plus-function element is already covered in Defendants' Instruction on that topic, No. 4.5b above.  This proffered instruction is also confusing and misleading in its discussion of a comparison to the application of the doctrine of equivalents, particularly here since the doctrine of equivalents was either not raised in discovery by the Plaintiffs or is precluded by the application of law.

      Moreover, in the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by the Foundation as it fails to comply with this Court's directive.

      As discussed above, O'Malley directs the use of the instruction for the Northern District of CA, which direction Defendants followed and Plaintiffs ignored.  In contravention of the Court's Order, AMF seeks to use a modified version of a model instruction propounded by the Federal Circuit Bar Association.

      Lastly, the Cochlear Defendants object to this instruction as improper on various grounds.  It is improper to instruct the jury on Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent as each of these claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.  Plaintiffs are also improperly attempting to apply the doctrine of equivalents contrary to Plaintiffs' discovery responses and contrary to

1   long settled rules established by the Supreme Court.  These issues are discussed in
2   the Defendants Memorandum of Fact and Law as Evidentiary Issues 7 and 8 and as
3   Issues of Law 3 and 4.

4        The Cochlear Defendants believe that no alternative instruction is proper or
5   needed.  In the event the Court seeks to separately instruct the jury on this issue,
6   without waiving its objection the Cochlear Defendants submit herewith an
7   alternative proposed instruction that is in compliance with the Court's directives in
8   its October 18, 2013 Order.

9

10       **2. Propounded Alternative Instructions**

11       As discussed above, no instruction is needed as it is duplicative of Instruction
12       4.5b.  In the event the Court nonetheless wishes to instruct on this topic,
13       Defendants submit the following proposal:

14       **4.5c "DIRECT INFRINGEMENT—INFRINGEMENT OF MEANS-**
15       **PLUS-FUNCTION CLAIMS—STRUCTURAL EQUIVALENCE"**

16        As I just instructed, a means-plus-function claim element is met when the
17   accused structure performs an identical function of the claimed invention and either
18   (a) the accused structure is identical to the corresponding structure, or (b) the
19   accused structure is "equivalent" to the corresponding structure.

20       A structure or a set of structures may be found to be "equivalent" to a
21   corresponding means-plus-function structure I have identified in the '616 and '691
22   patents if a person having ordinary skill in the field of technology of the patents
23   either would have considered the differences between them to be insubstantial at the
24   time the patents issued or if that person would have found the structure(s) performed
25   the function in substantially the same way to accomplish substantially the same
26   result. In deciding whether the differences would be "insubstantial," you may
27   consider whether a person having an ordinary level of skill in the field of technology

28

-107-

of the patent would have known of the interchangeability of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for the structures to be considered to be equivalent, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued. The fact that a structure or a set of structures is known now and is "equivalent" is not enough. The structure or set of structures must also have been available at the time the patents issued.

You may not use the doctrine of equivalents to find infringement if you find that the structure in the accused products is the same as what was in the prior art before the application for the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7) or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.  Further, if the Cochlear Defendants have offered evidence sufficient to show that the accused product structure is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

-108-

1

### b. The Foundation's Response

2

3    *See* Foundation's response to Instruction 4.5b "Direct Infringement – Infringement

4    of Means-Plus-Function Claims."

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 4.5d  "DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS" (DISPUTED)

### THE FOUNDATION'S PROPOSED INSTRUCTION

If the Foundation did not prove a particular claim was literally infringed, Plaintiffs may still satisfy the second element of direct infringement under the theory of "doctrine of equivalents."

Under the doctrine of equivalents, you may find the particular Cochlear Defendants' accused product infringes a claim if the Foundation proves by a preponderance of the evidence that the Cochlear Defendants' accused products contain elements identical or equivalent to each claimed element of the patented invention.  The focus is on individual elements of the claim, not on the invention as a whole.

A particular Cochlear Defendants' accused product, or step of a method using Cochlear Defendants' accused product, is equivalent to a claimed requirement if a person of ordinary skill in the field of the invention would regard any differences between them as insubstantial.

To find infringement, you must find there are no substantial differences between the patented product and the allegedly infringing product.  In order to make a finding under the doctrine of equivalents, you may consider whether the elements of Cochlear Defendants' accused product perform substantially the same function in substantially the same way to produce substantially the same result when compared to the element disclosed and claimed by the patent.

Even if the Cochlear Defendants' accused product contains each element of the patented claim, there is no infringement under the doctrine of equivalents if the Cochlear Defendants' accused product is so changed in principle that it performs the same or similar function in a substantially different way than the claimed invention.

-110-

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art.  The test is objective, that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial.

On the issue of equivalence, you may consider evidence of whether persons skilled in the art considered the accused element and the claimed element interchangeable at the time of the alleged infringement.  You should consider the element in the context of the entire claim, including the drawings and written descriptions, patent application history, the prior art, and all of the circumstances of the case.

The Foundation is not required to prove that Cochlear Defendants had the intent to infringe the Foundation's patents under the doctrine of equivalents or that Cochlear Defendants knew that its device infringed the patents.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it meets the other requirements of the doctrine of equivalents set forth in this instruction.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:23 (6th ed. Aug. 2013); Adapted from Model Patent Jury Instructions § 3.3, Northern District of California (Nov. 3, 2011) (and sources cited therein).

-111-

**a. The Cochlear Defendant's Objection:**

    **1. Basis for Objection**

        The Cochlear Defendants object to this instruction as it is improper to instruct the jury on Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent as each of these claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.  Plaintiffs are also improperly attempting to apply the doctrine of equivalents contrary to Plaintiffs' discovery responses and contrary to long settled rules established by the Supreme Court.  These issues are discussed in the Defendants Memorandum of Fact and Law as Evidentiary Issues 7 and 8 and as Issues of Law 3 and 4.

        Finally, to the extent Plaintiffs will seek to use this instruction in furtherance of its claims for inducement or contributory infringement, Plaintiffs are wrongfully expanding the case beyond the theories disclosed in discovery.  For example, Plaintiffs seek to pursue claims of contributory and induced infringement for all of the Asserted Claims.  But Plaintiff never disclosed during discovery that they intended to pursue these claims as to any of the claims of the patents in suit except as to claim 10 of the '616 patent.  These issues are discussed in the Defendants Memorandum of Fact and Law as Evidentiary Issues 6, 8 and 9, and Issues of Law 4 and 5.

        No instruction on the doctrine of equivalence is needed since the doctrine cannot be applied by the jury as a matter of law.  To the extend the Court determines that it will instruct the jury on the doctrine of equivalence, subject to and without waiving their objections the  Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

    **2. Propounded Alternative Instruction**

-112-

As discussed above, no instruction on the doctrine of equivalence is needed since the doctrine cannot be applied by the jury as a matter of law.  To the extent the Court determines that it will instruct the jury on the doctrine of equivalence, subject to and without waiving their objections the Cochlear Defendants submit the following:

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION 4.5d  INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that the Cochlear Defendants' programming systems, sound processors and cochlear implants does not literally infringe an asserted patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the Cochlear Defendants' programming systems, sound processors and cochlear implants can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim.  If the Cochlear Defendants' programming systems, sound processors and cochlear implants is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the Cochlear Defendants' programming systems, sound processors and cochlear implants cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the Cochlear Defendants' programming systems, sound processors and cochlear implants has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a Cochlear Defendants' programming systems, sound processors and cochlear implants is equivalent to an element of an asserted claim if a person of ordinary skill in the field would think that the differences between the

-113-

1  part or the step and the requirement were not substantial as of the time of the alleged

2  infringement.

3    Changes in technique or improvements made possible by technology

4  developed after the patent application is filed may still be equivalent for the

5  purposes of the doctrine of equivalents if it still meets the other requirements of the

6  doctrine of equivalents set forth in this instruction.

7    One way to decide whether any difference between a requirement of an

8  asserted claim and a part or a step of the Cochlear Defendants' programming

9  systems, sound processors and cochlear implants is not substantial is to consider

10  whether, as of the time of the alleged infringement, the part or the step of the

11  Cochlear Defendants' programming systems, sound processors and cochlear

12  implants performed substantially the same function, in substantially the same way,

13  to achieve substantially the same result as the requirement in the patent claim.

14    In deciding whether any difference between a claim requirement and the

15  Cochlear Defendants' programming systems, sound processors and cochlear

16  implants is not substantial, you may consider whether, at the time of the alleged

17  infringement, persons of ordinary skill in the field would have known of the

18  interchangeability of the applicable part or step with the claimed requirement.  The

19  known interchangeability between the claim requirement and the applicable part or

20  step of the Cochlear Defendants' programming systems, sound processors and

21  cochlear implants is not necessary to find infringement under the doctrine of

22  equivalents.  However, known interchangeability may support a conclusion that the

23  difference between the part or the step in the Cochlear Defendants' programming

24  systems, sound processors and cochlear implants and the claim requirement is not

25  substantial.  The fact that a part or a step of the Cochlear Defendants' programming

26  systems, sound processors and cochlear implants performs the same function as the

27  claim requirement is not, by itself, sufficient to show known interchangeability.

28

-114-

You may not use the doctrine of equivalents to find infringement if you find that the Cochlear Defendants' programming systems, sound processors and cochlear implants is the same as what was in the prior art before the application for the `616 patent (for analyzing claims 1 or 10) or the `691 patent (for analyzing claims 6 or 7) or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.  Further, if the Cochlear Defendants have offered evidence sufficient to show that the accused programming systems, sound processors and cochlear implants is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the `616 patent (for analyzing claims 1 or 10) or the `691 patent (for analyzing claims 6 or 7) but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

***Authorities:***

*Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3; Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed.

-115-

Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *See also Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1  **b. The Foundation's Response**

2      The Foundation's proposed instruction 4.5d should be adopted because it is

3  clearer and more readily understood by the jury.  In addition, Cochlear's proposed

4  construction is confusing.  For example, Cochlear's proposed construction

5  repeatedly refers to "Cochlear Defendants' programming systems, sound processors

6  and cochlear implants."  This phraseology is likely to confuse the jury into thinking

7  that it is more difficult to find infringement of the accused products.  In addition, the

8  Foundation's proposed instruction is more closely supported by O'Malley.  For at

9  least these reasons, the Foundation's proposed instruction should be adopted.

10

11                                  **Cochlear Defendants' Reply:**

12      The Foundation's argument fails to address the real issue that the doctrine of

13  equivalents is not applicable in this case.  The Foundation's proffered instruction

14  leaves out key issues such as instructing the jury that they cannot apply the doctrine

15  of equivalents to capture material in the prior art.

16

17

18

19

20

21

22

23

24

25

26

27

28

-117-

**4.5e – "LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS"**

**(DISPUTED)**

**THE COCHLEAR DEFENDANTS' PROPOUNDED INSTRUCTION**[8]

Because AMF made certain claim changes or statements during the patent application process for the asserted claims, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

`616 patent:

Claim 1: Where the structure in a mean plus function claim discloses an antenna, a structure using more than one antenna is not equivalent.

Claim 10: "displaying the processed status-indicating signals, whereby the status of the implanted stimulator, including the results of the measurements made within the implanted stimulator, may be made known."

`691 patent:

Claim 6 and 7: Where the structure in a mean plus function claim discloses an antenna, a structure using more than one antenna is not equivalent.

Unless each of these requirements is literally present within the Cochlear Defendants' programming systems, sound processors and cochlear implants, there can be no infringement of the claim.

Authorities
_____

[8] Subject to and without waiving their objections the Cochlear Defendants submit this instruction that addresses claim 1 of the `616 patent and/or claims 6 and 7 of the `691 patent. These references should be removed if the Court agrees that these claims are indefinite and therefore invalid as a matter of law.

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013) directing use of *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. B-3;  Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d (Fed. Cir. 2003) (*en banc*).

**a. The Foundation's Objection:**

    **1. Basis for Objection**

Cochlear's proposed instruction 4.5e is improper and misstates the facts and law. *See* Foundation's Response to Instruction 4.5d. The Court has made no such findings and there is no legal basis for the Court to do so. Moreover, Cochlear's self-serving instruction finds no support in O'Malley or the Federal Circuit Bar Association Model Rules.  As such, the Foundation's proposed instruction should be adopted.

1    **b. The Cochlear Defendants' Response:** O'Malley directs users to the Northern

2    District Model instructions from which the instruction is drawn.  It is long settled

3    law that the doctrine of equivalents cannot be used to capture material surrendered

4    in prosecution.  The Foundation's objection exposes their intent to confuse the jury.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**4.6 "INDUCEMENT OF INFRINGEMENT" (DISPUTED)**

**THE FOUNDATION'S PROPOSED INSTRUCTION**

The Foundation claims the Cochlear Defendants are liable for patent infringement because the Cochlear Defendants actively induced infringement of claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent by another person.

Under U.S. patent law, whoever actively induces infringement of a patent is liable as an infringer. In order to find the Cochlear Defendants liable for inducing infringement, the Foundation must prove each of the following elements by a preponderance of the evidence:

First: The Foundation was the assignee of each of the patents in suit;

Second: The Cochlear Defendants' accused products or process infringed one or more of the Asserted Patent's claims;

Third: The Cochlear Defendants actively induced that infringement of one or more of the Asserted Patent's claims by intentionally inducing another person to use the method or device claimed in the Asserted Patent(s) without the Foundation's consent; and,

Fourth: the Cochlear Defendants knew the induced acts constituted patent infringement, or the Cochlear Defendants believed there was a high probability that the induced acts constituted patent infringement and took deliberate acts to avoid learning that fact.

In order to establish active inducement of infringement, it is not sufficient that the person who was allegedly induced to infringe in fact directly infringes the claim. Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that allegedly constitute the direct infringement. Rather you must find that the Cochlear Defendants specifically intended to cause direct infringement of the `616 patent and the `691 patent, in order to find inducement of infringement. That is, you must find:

-122-

(1) the Cochlear Defendants were aware of the patents; (2) that they know or should have known that the encouraged acts constituted infringement of the patents; and, (3) that they have an intent to cause the encouraged acts.

***Authority:***

O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013); Adapted from Model Patent Jury Instructions § B.3 3.2, Federal Circuit Bar Association (June 2013) (and sources cited therein).

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by AMF as it fails to comply with this Court's directive.

    Here, there is an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF cites to O'Malley but then uses the model instruction propounded by the Federal Circuit Bar Association.  Such is improper.

    Lastly, the Cochlear Defendants object to this instruction Plaintiffs seek to wrongfully expand the case beyond the theories disclosed in discovery.  For example, Plaintiffs seek to pursue claims of contributory and induced infringement for all of the Asserted Claims.  But Plaintiff never disclosed during discovery that they intended to pursue these claims as to any of the claims of the patents in suit except as to claim 10 of the '616 patent.  These issues are discussed in the Defendants Memorandum of Fact and Law as Evidentiary Issues 6, 8 and 9, and Issues of Law 4 and 5.  Likewise, it is improper to instruct the jury on Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent as each of these claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

    No instruction on inducement of infringement other than as to claim 10 of the `616 patent is proper.  The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013

1   Order.  That instruction has been tailored to address the issues that are properly

2   presented to the jury based on the pleadings, the discovery and the applicable case

3   law.  In the event the Court determines that the issues to be presented to the jury are

4   broader than those articulated by the Cochlear Defendants, subject to and without

5   waiving the Defendants' objections, a broader additional alternative instruction has

6   been included that is likewise in compliance with the Court's directives in its

7   October 18, 2013 Order.

8

9        **2. Propounded Alternative Instructions**

10        **THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE**

11        **INSTRUCTION**

12        **4.6  INDUCEMENT OF INFRINGEMENT**

13        The Foundation claims the Cochlear Defendants are liable for patent

14   infringement because the Cochlear Defendants actively induced infringement of

15   claim 10 of the `616 patent by another person.

16        Under U.S. patent law, whoever actively induces infringement of a patent is

17   liable as an infringer.  In order to find the Cochlear Defendants liable for inducing

18   infringement, the Foundation must prove each of the following elements by a

19   preponderance of the evidence:

20        First:  the Foundation was the assignee of each of the patents in suit;

21        Second:  Activity by third persons that shows by a preponderance of the

22   evidence that they infringed claim 10 of the `616 patent;

23        Third:  the Cochlear Defendants actively induced that infringement of claim

24   10 of the `616 patent by intentionally inducing another person to use the method

25   claimed in claim 10 of the `616 patent without the Foundation's consent; and,

26        Fourth:  the Cochlear Defendants knew the induced acts constituted patent

27   infringement.

28

-125-

1    In order to establish active inducement of infringement, it is not sufficient that
2  the person who was allegedly induced to infringe in fact directly infringes the claim.
3  Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that
4  allegedly constitute the direct infringement.  Rather you must find that the Cochlear
5  Defendants specifically intended to cause direct infringement of claim 10 of the
6  `616 patent, in order to find inducement of infringement.  That is, you must find: (1)
7  the Cochlear Defendants were aware of the patent; (2) that they know or should
8  have known that the encouraged acts constituted infringement of the patents; and,
9  (3) that they have an intent to cause the encouraged acts.

10

11 ***Authority:***

12 *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013) as

13 amended by *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009).

**THE COCHLEAR DEFENDANTS' BROAD ALTERNATIVE INSTRUCTION**

**4.6  INDUCEMENT OF INFRINGEMENT**

The Foundation claims the Cochlear Defendants are liable for patent infringement because the Cochlear Defendants actively induced infringement of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent by another person.

Under U.S. patent law, whoever actively induces infringement of a patent is liable as an infringer.  In order to find the Cochlear Defendants liable for inducing infringement, the Foundation must prove each of the following elements by a preponderance of the evidence:

First:  The Foundation was the assignee of each of the patents in suit;

Second:  Activity by third persons that shows by a preponderance of the evidence that they infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent;

Third:  The Cochlear Defendants actively induced that infringement of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent by intentionally inducing another person to use the method or device claimed in claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent without plaintiff's consent; and,

Fourth:  The Cochlear Defendants knew the induced acts constituted patent infringement.

In order to establish active inducement of infringement, it is not sufficient that the person who was allegedly induced to infringe in fact directly infringes the claim.  Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that allegedly constitute the direct infringement.  Rather you must find that the Cochlear Defendants specifically intended to cause direct infringement of the `616 patent and the `691 patent, in order to find inducement of infringement.  That is, you must find:

-127-

(1) the Cochlear Defendants were aware of the patents; (2) that they know or should have known that the encouraged acts constituted infringement of the patents; and, (3) that they have an intent to cause the encouraged acts.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013) as amended by *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009).

**b. The Foundation's Response**

Cochlear's attempts to exclude the Foundation's allegations of inducement are improper.  The Foundation has provided evidence that Cochlear has had knowledge of the asserted patents since well-before this lawsuit was filed, and intentionally trains surgeons and audiologists to use the accused products in an infringing manner.  For at least this reason, the Foundation's proposed instruction should be adopted.

**Cochlear Defendants' Reply:**

The Foundation's response simply does not address with any specificity the Cochlear Defendants' objections to an instruction concerning inducement in relation to claim 1 of the '616 patent or claims 6 and 7 of the '691 patent.  Instead, the Foundation makes the same sorts of conclusory statements as found in the majority of its other responses.  Specifically, the Foundation makes empty representations concerning the "evidence" the Foundation has provided.  As the Cochlear Defendants have pointed out, the Foundation has made no effort to develop an inducement case beyond claim 10 of the '616 patent.  It is also telling that the Foundation's own conclusory statement concerning "surgeons and audiologists" is, at best, relevant only to the '616 patent—because it is the only patent with claims to a physician's tester.  In other words, even if the Court assumes the truth of the Foundation's conclusory statements, which it should not, those statements at most establish that the "evidence" provided does not relate to an inducement case with respect to the claims of the '691 patent.  As a result, the Foundation's response supports the Cochlear Defendants' objections.  The Cochlear Defendants ask that the Court adopt the Cochlear Defendants' proposed instruction.

## 4.7  REASONABLE BELIEF OF INVALIDITY OF CLAIMS OF THE PATENTS (DISPUTED).

The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving the Defendants' objections, a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

## THE COCHLEAR DEFENDANTS' PROPOUNDED TAILORED INSTRUCTION

In considering whether the Foundation has  proven that the Cochlear Defendants are liable for active inducement of infringement or contributory infringement of claim 10 of the '616 patent by another person, you may consider evidence of the Cochlear Defendants' good faith belief that claim 10 of the '616 patent was invalid or unenforceable, or that Cochlear believed that it was practicing what was already publicly available in the prior art.

If the Cochlear Defendants establish by the preponderance of the evidence presented that they reasonably believed that claim 10 of the '616 patent was invalid or unenforceable, or that they were merely practicing what was already publicly available in the prior art, then you must determine if that good faith belief negates the specific intent to encourage another's direct patent infringement, which is required for induced and contributory infringement.

*Authorities:*

-130-

1   *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013)

2   (reversing district court that excluded evidence of defendant's good faith belief in

3   the patent-in-suit's invalidity because "a good-faith belief of invalidity is evidence

4   that may negate the specific intent to encourage another's infringement, which is

5   required for induced infringement"); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp.,*

6   *Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a defendant's "belief that it

7   can freely practice inventions found in the public domain" supports "a jury's finding

8   that the intent required for induced infringement was lacking" and affirming jury

9   verdict where defendant testified it believed it was "practicing the prior art");

10  *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc.*

11  *v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (affirming district court's

12  denial of motion for judgment as a matter of law because defendant presented

13  evidence that it reasonably believed the patent-in-suit did not cover the alleged

14  infringing activity and, therefore, was not liable for inducing infringement).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE COCHLEAR DEFENDANTS' BROAD ALTERNATIVE INSTRUCTION

In considering whether the Foundation has proved that the Cochlear Defendants are liable for active inducement of infringement or contributory infringement of claims 1 and 10 of the '616 patent and claims 6-7 of the `691 patent by another person, you may consider evidence of the Cochlear Defendants' good faith belief that claims 1 and 10 of the '616 patent and claims 6-7 of the `691 patent were invalid or unenforceable, or that Cochlear believed that it was practicing what was already publicly available in the prior art.

If the Cochlear Defendants establish by the preponderance of the evidence presented that they reasonably believed that claims 1 and 10 of the '616 patent and claims 6-7 of the `691 patent were invalid or unenforceable, or that they were merely practicing what was already publicly available in the prior art, then you must determine if that good faith belief negates the specific intent to encourage another's direct patent infringement, which is required for induced infringement and for contributory infringement.

***Authority:***

*Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013) (reversing district court that excluded evidence of defendant's good faith belief in the patent-in-suit's invalidity because "a good-faith belief of invalidity is evidence that may negate the specific intent to encourage another's infringement, which is required for induced infringement"); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a defendant's "belief that it can freely practice inventions found in the public domain" supports "a jury's finding that the intent required for induced infringement was lacking" and affirming jury verdict where defendant testified it believed it was "practicing the prior art");

-132-

1   *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc.*

2   *v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (affirming district court's

3   denial of motion for judgment as a matter of law because defendant presented

4   evidence that it reasonably believed the patent-in-suit did not cover the alleged

5   infringing activity and, therefore, was not liable for inducing infringement).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**a. The Foundation's Objection:**

    **1. Basis for Objection**

As stated above, Cochlear's attempts to exclude the Foundation's allegations of inducement are improper.  The Foundation has provided evidence that Cochlear has had knowledge of the asserted patents since well-before this lawsuit was filed, and intentionally trains surgeons and audiologists to use the accused products in an infringing manner.

In addition, Cochlear's proposed instruction 4.7 is a self-serving instruction which finds no support in O'Malley or the Federal Circuit Bar Association Model Rules.

Moreover, in each case cited by Cochlear, the allegedly inducing party relies on an opinion of counsel to form its "good-faith belief" of invalidity or non-infringement.  Those facts are not applicable in the present case because Cochlear has stipulated that it will not present evidence that it relied on an opinion of counsel in defense of the Foundation's induced infringement claims.  In *Global-Tech Appliances, Inc. v. SEB S.A.*, defendant relied on "an opinion letter stating that Pentalpha's deep fryer did not infringe any of the patents that he had found." *Kinetic Concepts* also involved an opinion of counsel.  The district court opinion that was affirmed elaborated that "Weston carefully researched prior art and obtained opinions of counsel that there was no infringement." *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, SA-03-CV-832-WRF, 2007 WL 1113088 at *8 (W.D. Tex. Apr. 4, 2007) aff'd sub nom.  *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010 (Fed. Cir. 2009).  Moreover, the cases cited in *Commil USA* discussing "good-faith belief" of invalidity all involved opinion of counsel.

For at least the reasons stated above, Cochlear's proposed instruction 4.7 should be rejected.

**b. The Cochlear Defendants' Response**

The Foundation's response simply does not address with any specificity the Cochlear Defendants' objections to an instruction concerning inducement in relation to claim 1 of the '616 patent or claims 6 and 7 of the '691 patent.  Instead, the Foundation makes the same sorts of conclusory statements as found in the majority of its other responses.  Specifically, the Foundation makes empty representations concerning the "evidence" the Foundation has provided.

As the Cochlear Defendants have pointed out, the Foundation has made no effort to develop an inducement case beyond claim 10 of the '616 patent.  It is also telling that the Foundation's own conclusory statement concerning "surgeons and audiologists" is, at best, relevant only to the '616 patent—because it is the only patent with claims to a physician's tester.  In other words, even if the Court assumes the truth of the Foundation's conclusory statements, which it should not, those statements at most establish that the "evidence" provided does not relate to an inducement case with respect to the claims of the '691 patent.  As a result, the Foundation's response supports the Cochlear Defendants' objections.

There is no requirement that an attorney testify that the Cochlear Defendants were practicing the prior art, nor is there any basis to suggest that the Defendants cannot establish that they were practicing the prior art.  Moreover, the circumstances surrounding the Foundations actions properly indicated that the Foundation agreed that the patents were not viewed as being infringed at the time the Foundation sent its letter to Cochlear in 2003.  This is a proper instruction and it is key that the jury understand the issue. For each of these reasons, the Cochlear Defendants ask that the Court adopt the Cochlear Defendants' proposed instruction.

## 4.8  "CONTRIBUTORY INFRINGEMENT" (DISPUTED)
### THE FOUNDATION'S PROPOSED INSTRUCTION

The Foundation claims the Cochlear Defendants are guilty of contributory infringement of claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent.  Contributory infringement involves the selling or supplying of something less than the entire combination of elements listed in a claim with knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

To establish contributory infringement, the law requires the Foundation prove the following by a preponderance of the evidence:

First:  The Foundation are the owners of the patents in suit;

Second:  Some person, acting alone or with others, directly infringed one or more of claims the Asserted Patents;

Third:  The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method;

Fourth:  The material component in question is not a staple article of commerce suitable for a substantial non-infringing use; and

Fifth:  The Cochlear Defendants sold or supplied the component with the knowledge that the component was especially made or adapted for a use that would infringe the claim of the patent in suit you are considering.

As to the third element, it is the Cochlear Defendants' position that the accused products of the Cochlear Defendants are capable of substantial noninfringing use.  If, by a preponderance of the evidence, you find this to be true, you must find that the Cochlear Defendants have not contributorily infringed the patents in suit.

-136-

As to the fourth element, a material component suitable for non-infringing use is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

As to the fifth element, if you find by a preponderance of the evidence that the Cochlear Defendants did not sell the accused products with knowledge that they were going to be used as required by the claim you are considering, you must find that the Cochlear Defendants are not guilty of contributory infringement by sale of the accused products. No contributory infringement can be found unless the Cochlear Defendants knew at the time of sale that the accused products were going to be arranged or used according to the arrangement specified in the patent claim you are considering.

If you find the Foundation has proved each of these elements by a preponderance of the evidence, your verdict should be for the Foundation on the Foundation's claim against Cochlear Defendants for contributory infringement.

If any of these elements has not been proved by a preponderance of the evidence, your verdict should be for the Cochlear Defendants on the Foundation's claim against the Cochlear Defendants for contributory infringement.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:25 (6th ed. Aug. 2013) as amended; Adapted from Model Patent Jury Instructions § 3.8, Northern District of California (Nov. 3, 2011) (and sources cited therein). 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464,

-137-

1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by AMF as it fails to comply with this Court's directive.

    Here, there is an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF cites to O'Malley but distorts that instruction by conforming it to the Northern District of California Model Jury Instructions.  This is improper.

    The Cochlear Defendants further object to this proposed instruction on the basis that it is contrary to and out of sync with the content and tone of the current instruction found in the O'Malley, et al. Instructions the Court ordered be used.

    Lastly, the Cochlear Defendants object to this instruction Plaintiffs seek to wrongfully expand the case beyond the theories disclosed in discovery.  Plaintiffs seek to pursue claims of contributory infringement for all of the Asserted Claims.  But Plaintiff never disclosed during discovery that they intended to pursue these claims as to any of the claims of the patents in suit except as to claim 10 of the '616 patent.  These issues are discussed in the Defendants Memorandum of Fact and Law as Evidentiary Issues 6, 8 and 9, and Issues of Law 4 and 5.  It is also improper to instruct the jury on Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent

1   as each of these claims are invalid as a matter of law as indefinite.  This issue is

2   discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

3          The Cochlear Defendants submit herewith an alternative proposed instruction

4   that is in compliance with the Court's directives in its October 18, 2013 Order.  That

5   instruction has been tailored to address the issues that are properly presented to the

6   jury based on the pleadings, the discovery and the applicable case law.  In the event

7   the Court determines that the issues to be presented to the jury are broader than

8   those articulated by the Cochlear Defendants, subject to and without waiving their

9   objections the Cochlear Defendants also submit a broader additional alternative

10  instruction has been included that is likewise in compliance with the Court's

11  directives in its October 18, 2013 Order.

12

13       **2. Propounded Alternative Instructions**

14       **THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE**

15                          **INSTRUCTION**

16              **4.8  CONTRIBUTORY INFRINGEMENT**

17         Plaintiffs claim the Cochlear Defendants are guilty of contributory

18  infringement of claim 10 of the `616 patent.  Contributory infringement involves the

19  selling or supplying of something less than the entire combination of elements listed

20  in a claim with knowledge that the things sold or supplied will be incorporated into

21  a product or service that will directly infringe on the patents in suit.

22         To establish contributory infringement, the law requires the Foundation to

23  prove the following by a preponderance of the evidence:

24         <u>First</u>:  The Foundation is the owner of the patents in suit;

25         <u>Second</u>:  Some person directly infringed claim 10 of the `616;

26

27

28                          -139-

1    **Third**:  The Cochlear Defendants sold or supplied a material component of the

2    claimed product or method that was especially made or especially adapted for use in

3    the claimed product or method;

4    **Fourth**:  The material component in question is not a staple article of

5    commerce suitable for a substantial non-infringing use; and,

6    **Fifth**:  The Cochlear Defendants sold or supplied the component with the

7    knowledge that the component was especially made or adapted for a use that would

8    infringe the claim of the patent in suit you are considering.

9    As to the third element, it is the Cochlear Defendants' position that the

10   accused products of the Cochlear Defendants are capable of being used to permit

11   hearing by persons with moderate to severe hearing deficit and that they therefore

12   are capable of substantial noninfringing use.  If, by a preponderance of the evidence,

13   you find this to be true, you must find that the Cochlear Defendants have not

14   contributorily infringed the patents in suit.

15   As to the fifth element, if you find by a preponderance of the evidence that

16   the Cochlear Defendants did not sell the accused implant and/or sound processor

17   with knowledge that it was going to be used as required by the claim you are

18   considering, you must find that the Cochlear Defendants are not guilty of

19   contributory infringement by sale of the accused implant and/or sound processor.

20   No contributory infringement can be found unless the Cochlear Defendants knew at

21   the time of sale of the accused implant and/or sound processor was going to be

22   arranged or used according to the arrangement specified in the patent claim you are

23   considering.

24   If any of these elements has not been proved by a preponderance of the

25   evidence, your verdict should be for the Cochlear Defendants on the Foundation's

26   claim against the Cochlear Defendants for contributory infringement.

27

28

-140-

1  *Authority:*

2  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as

3  amended.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-141-

**THE COCHLEAR DEFENDANTS' BROAD ALTERNATIVE
INSTRUCTION**

**4.8  CONTRIBUTORY INFRINGEMENT**

The Foundation claims the Cochlear Defendants are guilty of contributory infringement of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent. Contributory infringement involves the selling or supplying of something less than the entire combination of elements listed in a claim with knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

To establish contributory infringement, the law requires the Foundation prove the following by a preponderance of the evidence:

<u>First</u>:  The Foundation is the owner of the patents in suit;

<u>Second</u>:  Some person directly infringed one or more of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent;

<u>Third</u>:  The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method;

<u>Fourth</u>:  The material component in question is not a staple article of commerce suitable for a substantial non-infringing use; and

<u>Fifth</u>:  The Cochlear Defendants sold or supplied the component with the knowledge that the component was especially made or adapted for a use that would infringe the claim of the patent in suit you are considering.

As to the third element, it is the Cochlear Defendants' position that the accused products of the Cochlear Defendants are capable of being used to permit hearing by persons with moderate to severe hearing deficit and that they therefore are capable of substantial noninfringing use.  If, by a preponderance of the evidence,

-142-

you find this to be true, you must find that the Cochlear Defendants have not contributorily infringed the patents in suit.

As to the fifth element, if you find by a preponderance of the evidence that the Cochlear Defendants did not sell the accused implant and/or sound processor with knowledge that it was going to be used as required by the claim you are considering, you must find that the Cochlear Defendants are not guilty of contributory infringement by sale of the accused implant and/or sound processor. No contributory infringement can be found unless the Cochlear Defendants knew at the time of sale of the accused implant and/or sound processor was going to be arranged or used according to the arrangement specified in the patent claim you are considering.

If any of these elements has not been proved by a preponderance of the evidence, your verdict should be for the Cochlear Defendants on the Foundation's claim against the Cochlear Defendants for contributory infringement.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended.

### b. The Foundation's Response

Cochlear's attempts to exclude the Foundation's allegations of contributory infringement are improper.  The Foundation has provided evidence that the accused Cochlear wearable processor, implant, and diagnostic software products are separate components that may be sold separately.  The Foundation has further provided evidence that although these components may be sold separately, each component is a material part of a single infringing cochlear implant system.  The Foundation has further provided evidence that the components have no substantial non-infringing uses.  Each component product can be used (and is designed to be used) only in combination with, and only with, the other components.

In addition, the Foundation's proposed instruction 4.8 is clearer, more likely to be understood by the jury, and more accurately supported by *O'Malley*. For at least these reasons, the Foundation's more accurate proposed instruction should be adopted.

### Cochlear Defendants' Reply:

The Foundation seeks to instruct the jury on determining the question of whether its licensee (Advance Bionics) practices the patents in suit.  Clearly there is a non-infringing alternative, and the Foundation's arguments are merely noise to distract the Court from the real issues they do not address.   The Defendants' instruction is from O'Malley and the Court directed, tailored to the case facts. It is clear and proper.

The Foundation's response simply does not address with any specificity the Cochlear Defendants' objections to an instruction concerning contributory infringement in relation to claim 1 of the '616 patent or claims 6 and 7 of the '691 patent.  Instead, the Foundation makes the same sorts of conclusory statements as found in the majority of its other responses.  Specifically, the Foundation makes

-144-

1   empty representations concerning the "evidence" the Foundation has provided.  As

2   the Cochlear Defendants have pointed out, the Foundation has made no effort to

3   develop a contributory infringement case beyond claim 10 of the '616 patent.

4   The Foundation's response also completely ignores the Cochlear Defendants' other

5   major objection based on the fact that there are instructions addressing this very

6   issue from the most recent version of the Ninth Circuit model instructions/O'Malley,

7   et al.  The parties were told by this Court to use these instructions if available but the

8   Foundation chose not to comply with the Court's order.  For all of these reasons, the

9   Cochlear Defendants ask that the Court adopt the Cochlear Defendants' proposed

10  instruction.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1
2

**5.0  PRESUMPTION OF VALIDITY (DISPUTED)**

**FOUNDATION PROPOSED INSTRUCTION**

3
4
5
6

The issuance of a patent by the United States Patent and Trademark Office raises a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention that is "novel" and "useful," amounts to a "discovery or invention" over what was already known in the prior art.

7
8
9
10
11

This presumption of validity is merely a rule of evidence placing the burden upon one who disputes the validity of a patent to come forward with clear and convincing evidence that the Patent and Trademark Office acted erroneously in issuing the later patent and failed to distinguish what was apparent in the "prior state of the art" from that shown in the patent in suit.

12
13
14
15
16
17

If you find the evidence is clear and convincing that any differences or advantages in any of the asserted claims of the patents in suit over the prior art existing one year prior to the date of the Foundation's application for the patents were such as would have been obvious to, or would have occurred to, a person skilled in the art, then the claim does not disclose any invention over the prior art, and each such claim is invalid, notwithstanding the presumption of validity.

18
19

*Authority:*

20
21
22

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed. Aug. 2013) as amended (citing *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 761 (Fed. Cir. 1984)).

23
24
25
26
27
28

-146-

**a. The Cochlear Defendants' Objection:**

**1. Basis for Objection**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by the Foundation as it fails to comply with this Court's directive.

The Cochlear Defendants further object to this proposed instruction on the basis that it is contrary to the content and tone of the actual O'Malley, et al. Instructions the Court ordered be used.

The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

**2. Propounded Alternative Instructions**

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**

**5.0  PRESUMPTION OF VALIDITY**

The issuance of a patent by the United States Patent and Trademark Office raises a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention that is "novel" and "useful," amounts to a "discovery or invention" over what was already known in the prior art.

This presumption of validity, amounting to a presumption of invention, extends only to the record before the examiners in the Patent and Trademark Office. Where the "prosecution history" of the patent discloses an earlier patent or publication was considered by the Patent and Trademark Office during the

-147-

1   prosecution of the later application for a patent, it is a presumption the Patent and

2   Trademark Office examiner found the existence of differences amounting to

3   invention between the prior art patents or publications so considered and the patents

4   later issued.  This presumption does not extend or exist as to prior art patents or

5   publications that do not appear from the record of the "prosecution history" and had

6   not been considered by the Patent and Trademark Office in its decision to issue the

7   later patent.

8        This presumption of validity is merely a rule of evidence placing the burden

9   upon one who disputes the validity of a patent to come forward with clear and

10  convincing evidence that the Patent and Trademark Office acted erroneously in

11  issuing the later patent and failed to distinguish what was apparent in the "prior state

12  of the art" from that shown in the patent in suit.

13       If you find the evidence is clear and convincing that any differences or

14  advantages in any of the asserted claims of any of the patents in suit were such as

15  would have been obvious to, or would have occurred to, a person skilled in the art

16  prior to the date of AMF's application for the patent, then the patent claim does not

17  disclose any invention over the prior art, and each such patent claim is invalid,

18  notwithstanding the presumption of validity.

19

20  **_Authority:_**

21       O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed. Aug. 2013) as

22  amended.

23

24

25

26

27

28

-148-

**b. The Foundation's Response**

The Foundation believes that the Cochlear Defendants' proposed instruction 5.7 would be more readily understood if presented as instruction 5.0 here because the presumption of validity is important background to understanding the law of validity.  In addition, the Foundation's proposed instruction hews more closely to the model instruction.  Finally, the Foundation objects to the paragraph included by the Cochlear Defendants suggests that the presumption only applies with regard to prior art before the PTO, whereas as even the model instruction indicates that "It is error to instruct that the presumption of validity does not exist as to prior art that is not considered by the examiner."  O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed. Aug. 2013) (citing *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 761 (Fed. Cir. 1984)).

**Cochlear Defendants' Reply:**

After having Defendants' proposed jury instruction for weeks, and after agreeing on the afternoon of December 2 during the last of several meet and confers on jury instructions to the language of that instruction (but merely moving it from instruction 5.7 to instruction 5.0), the Foundation provides an undisclosed amended version of the instruction at 8:30 PM on December 3 (the due date) with a suggestion that the instruction all parties agreed-upon was changed as inaccurate. One can only ponder the value of such meet and confer sessions.

It is a lie to suggest that the language that the plaintiffs previously agreed-to is contrary to the cited instruction in O'Malley, which states:

> "This presumption of validity, amounting to a presumption of invention, extends only to the record before the examiners in the Patent and Trademark Office. Where the "prosecution history" of the patent discloses an earlier patent or publication was considered by the Patent and Trademark Office during the prosecution of the later application for a patent, it is a presumption the Patent and Trademark Office

-149-

examiner found the existence of differences amounting to invention between the prior art patents or publications so considered and the patents later issued. This presumption does not extend or exist as to prior art patents or publications that do not appear from the record of the 'prosecution history' and had not been considered by the Patent and Trademark Office in its decision to issue the later patent."

It is equally false to say that the Foundation's changed instruction "better tracks" the language of O'Malley.  Indeed, O'Malley provides:

"It might be preferable to omit any discussion of 'presumption' in jury instructions, ***but since an instruction of the kind here set out, explaining the presumption of validity in this manner, has been consistently approved in patent cases***, it is set out without eliminating the reference to presumptions." (emphasis added)

The Court should adopt the instruction with the language from O'Mallley as proper in this case.

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## 5.1  "INVALIDITY OF PATENT" (DISPUTED)

### THE FOUNDATION'S PROPOSED INSTRUCTION

As I previously mentioned, the three elements to a valid patent are (1) novelty, (2) utility, and (3) nonobviousness.  The Cochlear Defendants assert that each of the asserted claims of each of the patents in suit are invalid because they lack novelty or are obvious when compared to the prior art.

Because a patent is presumed to be valid, the Cochlear Defendants have the burden to establish invalidity by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

I will provide you with further instruction on these issues in a minute.

If you find by clear and convincing evidence the `616 patent or the `691 patent lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for the Cochlear Defendants.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended.

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    It is improper to instruct the jury on the '691 patent as both of its asserted claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

    Through its instruction, the Foundation seeks to refuse the instruction on the jury's consideration of whether the Defendants have met their clear and convincing burden of proof for invalidity for prior art not before the PTO.  The Supreme Court expressly directed that this instruction should be given when requested by a party in *i4i v. Microsoft*, cited below.  Thus, it would be error to deny this instruction.

    The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

    **2. Propounded Alternative Instruction**

**THE COCHLEAR DEFENDANTS' TAILORED ALTERNATIVE INSTRUCTION**

**5.1  INVALIDITY OF PATENT[9]**

    As I previously mentioned, the three elements to a valid patent are (1) novelty, (2) utility, and (3) nonobviousness.  The Cochlear Defendants assert that each of the asserted claims of each of the patents in suit are invalid because they lack novelty or are obvious when compared to the prior art.

    Because a patent is presumed to be valid, the Cochlear Defendants have the burden to establish the invalidity by clear and convincing evidence.  You should evaluate whether the evidence before you is materially new and not before the

---

[9] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses the `691 patent.  This reference should be removed if the Court agrees that the '691 patent's claims are indefinite and therefore invalid as a matter of law.

-152-

examiner at the patent office.  If it is contested between the parties, you will need to make a finding if it is new as the burden of proof of the Cochlear Defendants in challenging the patent may be easier to sustain if the evidence is new and not considered by the Patent Office. Thus, you should consider whether any of the material evidence before you is new and consider that fact when determining whether the Cochlear Defendants have established the invalidity of a patent claim by clear and convincing evidence.

I will provide you with further instruction on these issues in a minute.

If you find by clear and convincing evidence the `616 patent and/or the '691 patent lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for the Cochlear Defendants.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011).

## b. The Foundation's Response

The Foundation objects to the language inserted by the Cochlear Defendants because it improperly states the law, is not in the model instruction and is misleading to the jury.

## Cochlear Defendants' Reply:

The US Supreme Court directed that the instruction be given where requrested. The Cochlear Defendants request such an instruction.

-154-

## 5.2  VALIDITY OF PATENT CLAIMS TO BE CONSIDERED SEPARATELY (UNDISPUTED)

The validity of each of the asserted claims of each of the patents in suit must be considered separately.  If the evidence is clear and convincing that all of the claims in a given patent fail to meet the essential requirements of the patent laws, then the patent is invalid.  However, if one or more claims do not meet the essential requirements of the patent laws as given in these instructions, that claim would be invalid but the remaining claims are not necessarily also deficient.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:26 (6th ed. Aug. 2013) as amended.

## 5.3  EFFECTIVE FILING DATE OF A PATENT (DISPUTED) THE COCHLEAR DEFENDANTS' PROPOSED TAILORED INSTRUCTION[10]

Each of the `616 patent and the `691 patent are based on what we call continuation-in-part applications.  I will refer to them as a CIP.  A CIP application is a patent filing that claims priority to a previously filed parent patent document but also adds some amount of new material to the disclosure and/or claims.  The filing of a CIP is an admission by the inventors that the application contains new matter, which is information not previously disclosed in the prior application.

The claims of a patent coming from a CIP application may have an effective date of the filing of the CIP or it may have an earlier filing date (the "effective filing date" of the claim).  Here the effective filing date for both the `616 and `691 patents is August 29, 1991.  The effective filing date will allow you to determine what is the scope of prior art available to potentially invalidate the patent claim and whether the disclosure requirements are met for that claim.

*Authority:*

*Santarus and the University of Missouri v. Par Pharmaceutical, Inc.*, 694 F.3d 1344, 1352 (Fed. Cir. 2012); *Augustine Med., Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999) ("Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the patent application"); *Univ. of W. Va. v. Van Voorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002) ("A continuation-in-part is just what the name implies.  It partly continues subject matter

---

[10] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses the `691 patent.  This reference should be removed if the Court agrees that the `691 patent's claims are indefinite and therefore invalid as a matter of law.

1 disclosed in a prior application, but it adds new subject matter not disclosed in the

2 prior application").

## a. The Foundation's Objection:

### 1. Basis for Objection

The Foundation objects to this instruction as irrelevant and in light of its Motion in Limine No. 1. Moreover, the Foundation objects to the instruction's reference to the effective filing date for "both" patents.

**b. Cochlear's Response to the Foundation's Objection**

The Foundation refuses to admit that the effective filing date for the `691 patent.  Thus the jury must be instructed on this issue.  Defendants reject the Plaintiffs motion in limine No. 1 for the reasons discussed in their opposition.

## 5.5  LEVEL OF ORDINARY SKILL

### THE FOUNDATION'S PROPOSED INSTRUCTION

A person of "ordinary skill in the art" is a hypothetical person who is presumed to be aware of all pertinent prior art.  The skill of the actual inventor is irrelevant, because inventors may possess something setting them apart from workers of ordinary skill in the art.

The Foundation contends a person of ordinary skill in this art would have had, at the time the application from which the '616 and '691 patents seek priority, a baccalaureate degree in electrical engineering from an accredited or otherwise duly recognized institution of higher learning or equivalent, coupled with four-to-five years of experience designing, testing, and evaluating analog and digital electronic circuits and systems.

The Cochlear Defendants contend a person of ordinary skill, in the late 1980s or 1990, in the art of cochlear implant systems as described in the '616 and '691 patents would have an understanding of electrical engineering principles.  This understanding could come from formal or informal education, training, experience, or a combination thereof.  For example, a person of ordinary skill in the art of cochlear implant systems as described in the '616 and '691 patents would have education and experience equivalent to a bachelor's degree in electrical engineering, and three to five years of experience in cochlear implant systems.

You may consider the following factors in determining what the level of ordinary skill in the pertinent art is:

1.   The education level of the inventor.

2.   The types of problems encountered in the art.

3.   The prior art patents and publications.

4.   The activities of others.

5.   Prior art solutions to the problems encountered by the inventor.

-160-

6.   The rapidity of innovation in the field.

7.   The sophistication of the technology.

8.   The education of others working in the field.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:48 (6th ed. Aug. 2013).

-161-

**a. The Cochlear Defendants' Objection:**

**1. Basis for Objection**

By this instruction, the Foundation seeks to change the only definition it provided during discovery of a person of skill in the art.  That definition was provided by Plaintiffs' expert , Dr. Choma, in his report dated January 19 2009. There he said:

> "A person of ordinary skill in this art would have had, in 1997, a baccalaureate degree in electrical engineering from an accredited or otherwise duly recognized institution of higher learning, coupled with four-to-five years of experience designing, testing, and evaluating analog and digital electronic circuits and systems."  (Choma report at 9-10.)

It is improper to allow the Plaintiffs to again shirk from their discovery responses and materially change the issues and facts on the eve of trial for the reasons discussed in the Defendants Memorandum of Fact and Law at Evidentiary Issues 6, 8 and 9, and Issues of Law 4 and 5.

Defendants also object as it is improper to instruct the jury on the '691 patent as each of its asserted claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

**2. Propounded Alternative Instruction**

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION 5.5  LEVEL OF ORDINARY SKILL[11]**

A person of "ordinary skill in the art" is a hypothetical person who is presumed to be aware of all pertinent prior art.  The skill of the actual inventor is

---

[11] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses the '691 patent.  This reference should be removed if the Court agrees that the '691 patent's claims are indefinite and therefore invalid as a matter of law.

-162-

irrelevant, because inventors may possess something setting them apart from workers of ordinary skill in the art.

The Foundation contends a person of ordinary skill in this art would have had, in 1997, a baccalaureate degree in electrical engineering from an accredited or otherwise duly recognized institution of higher learning, coupled with four-to-five years of experience designing, testing, and evaluating analog and digital electronic circuits and systems.

The Cochlear Defendants contend a person of ordinary skill, in the late 1980s or 1990, in the art of cochlear implant systems as described in the '616 and '691 patents would have an understanding of electrical engineering principles.  This understanding could come from formal or informal education, training, experience, or a combination thereof.  For example, a person of ordinary skill in the art of cochlear implant systems as described in the '616 and '691 patents would have education and experience equivalent to a bachelor's degree in electrical engineering, and three to five years of experience in cochlear implant systems.

You may consider the following factors in determining what the level of ordinary skill in the pertinent art is:

1. The education level of the inventor.
2. The types of problems encountered in the art.
3. The prior art patents and publications.
4. The activities of others.
5. Prior art solutions to the problems encountered by the inventor.
6. The rapidity of innovation in the field.
7. The sophistication of the technology.
8. The education of others working in the field.

*Authority:*

-163-

1    *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:48 (6th ed. Aug. 2013).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 5.6 "PRIOR ART" (DISPUTED)

### THE FOUNDATION'S PROPOSED INSTRUCTION

As I stated earlier, in deciding on the issue of invalidity, you must consider the "prior art."  The term "prior art" refers to technology and information publicly available before the date of the invention.  Prior art includes any of the following received into evidence during the trial:

1.      Patents issued before the Foundation's date of the invention for the patent in suit you are considering, or more than one year before the filing date of that patent application that led to each of the patents in suit.

2.      Publications having a date before the Foundation's date of the invention for the patent in suit you are considering, or more than one year before the filing date of the application that let to that patent.

3.      U.S. patents having a filing date before the date of the invention of the subject in the patent in suit you are considering.

4.      Anything in the public use, offered for sale, or on sale, in the United States more than one year before the filing date of the application that led to the patent in suit you are considering.

5.      Anything publicly known or used by others in the country before the date of invention of the claimed subject in the patent in suit of the patent you are considering.

6.      Anything made or built in the United States by another person before the date of invention of the claimed subject matter in the patent in suit you are considering, where the thing made or built was not abandoned, suppressed or controlled.

In this case, the Cochlear Defendants argue the following references qualify as prior art, and rely on only these references in arguing the '616 patent is invalid:

1.  U.S. Patent No. 4,532,930 ("The Crosby patent");

-165-

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. U.S. Patent No. 4,947,844 ("The McDermott patent");

4. An article: McDermott, "An Advanced Multiple Channel Cochlear Implant," IEEE Transactions on Biomedical Engineering, Vol. 36:7, pp. 787-797 (July 1989) ("McDermott 1989");

5. The LAURA Cochlear Prosthesis: Development and Description, by Dr. Ir. S. Peeters et al., found at pp. 547-555 of Cochlear Implant: Current Situation, Proceedings of the International Cochlear Symposium, Duren, West Germany (Banfai, P. ed., September 7-12, 1987); and

6. European Patent Application Publication 0259906 ("the LAURA application").

The Cochlear Defendants argue the following references qualify as prior art, and rely on only these references in arguing the '691 patent is invalid:

1. U.S. Patent No. 4,532,930 ("The Crosby patent");

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. An article: McDermott, "A Custom LSI-CMOS Chip for a Cochlear Implant," Journal of Electrical and Electronics Engineering, Australia-IE Australia and IREE Australia, Vol. 4, No. 4, December 1984, 305-308 ("McDermott 1984");

The parties have not asserted any other prior art, and you should not consider any other references as prior art in your deliberations.[12]

---

[12] [To be read if Hugh McDermott testifies at trial: You should also not consider any witness testimony as adding to or changing the scope of the prior art, including the testimony of Hugh McDermott.]

-166-

1           Authority:    Adapted from 3A Kevin F. O'Malley, Jay E. Grenig, and Hon.

2  William C. Lee, <u>Federal Jury Practice and Instructions</u> – Civil § 158.47 (6th ed.

3  2013).

**a. The Cochlear Defendants' Objection:**

**1. Basis for Objection**

The Foundation's instruction seeks to improperly instruct the jury on the scope of the prior art and ignores the issue of the McDermott Thesis pending before the Court.  The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order and that properly allows the jury to consider whatever prior art the Court allows into evidence.  The newly proffered language about the testimony of Mr. McDermott is prejudicial and wrongly suggest that he will testify improperly.  Any issue of the scope of that testimony can be addressed at trial with proper objections, if any.

**2. Propounded Alternative Instruction**

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**
**5.6  PRIOR ART**

As I stated earlier, in deciding on the issue of invalidity, you must consider the "prior art."  The term "prior art" refers to technology and information publicly available before the date of the invention. In this case, the parties have agreed the following documents qualify as prior art:

1. U.S. Patent No. 4,532,930 ("The Crosby patent");

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. U.S. Patent No. 4,947,844 ("The McDermott patent");

4. An article: McDermott, "A Custom LSI-CMOS Chip for a Cochlear Implant," Journal of Electrical and Electronics Engineering, Australia-IE Australia and IREE Australia, Vol. 4, No. 4, December 1984, 305-308 ("McDermott 1984 article");

5. An article: McDermott, "An Advanced Multiple Channel Cochlear

-168-

Implant," IEEE Transactions on Biomedical Engineering, Vol. 36:7, pp. 787-797 (July 1989) ("McDermott 1989 article");

6. An article: Peeters, "The LAURA Cochlear Prosthesis: Development and Description," Cochlear Implant: Current Situation, pp. 547-555. Proceedings of the International Cochlear Symposium, Düren, West Germany (Banfai, P. ed., Sept. 7-12, 1987) ("LAURA Article"); and

7. European Patent Application Publication No. 0259906 ("the LAURA application");

8. Thesis: McDermott, "An Advanced Cochlear Implant Hearing Prosthesis for Profound To Total Deafness," University of Melbourne Special Collections, June 1988 ("McDermott Thesis").[13]

You should not consider any other references as prior art in your deliberations except as the Court allows into evidence.

**Authority:** *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:47 (6th ed. Aug. 2013).

---

[13] This reference will be deleted from the instruction in the event the Court does not allow it into evidence. Likewise, any other prior art admitted at trial should be added to the list.

-169-

1   **5.8a  ANTICIPATION—GENERALLY (DISPUTED)**
2   **THE FOUNDATION'S PROPOSED INSTRUCTION**

3   As I mentioned to you previously, one of the defenses asserted by the
4   Cochlear Defendants is that the asserted patent claims are anticipated by prior art.
5   In order to prevail on this defense, the Cochlear Defendants must prove anticipation
6   by clear and convincing evidence.

7   In order for a claim to have been anticipated, you must find that the earlier
8   reference or invention completely embodied the same process or product as the
9   patented claim and all the elements listed in the patented claim were previously
10  found in exactly the same situation and united in the same way to perform the
11  identical function.  Each and every element of the patented claim must have been
12  either inherent or expressly disclosed to the person of ordinary skill in the art in a
13  single prior invention or in a single prior art reference.

14  You may not combine two or more items of prior art in order to find
15  anticipation.

16  If you do not find these requirements have been met, then the patented claim
17  is not invalid because of anticipation or lack of novelty.

18
19  *Authority:*
20  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:68 (6th ed. Aug. 2013).

21
22
23
24
25
26
27
28

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    The Cochlear Defendants object to the attempt by the Foundaton to exclude the example of how anticipation applies that is found in the O'Malley instruction. The Foundation has included such examples thoughtout their proposed instruction but seek to delete it here as it discusses how prior art can anticipate a patent.  The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

    **2. Propounded Alternative Instruction**

    **THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**

    **5.8a  ANTICIPATION—GENERALLY**

    As I mentioned to you previously, one of the defenses asserted by the Cochlear Defendants is that the asserted patent claims are invalid because they lack novelty in that the patented claim was anticipated by prior art.  In order to prevail on this defense, the Cochlear Defendants must prove anticipation by clear and convincing evidence.

    In order for a claim to have been anticipated, you must find that a person of ordinary skill in the art would understand that the anticipating prior art reference or invention completely embodied the same process or product as the patented claim and all the elements listed in the patented claim were previously found in exactly the same situation and united in the same way to perform the identical function.  Each and every element of the patented claim must have been either inherent or expressly disclosed to the person of ordinary skill in the art in a single prior invention or in a single prior art reference.

    You may not combine two or more items of prior art in order to find anticipation.

-171-

In the event you conclude that the Cochlear Defendants have shown by clear and convincing evidence that the prior art discloses substantially the same subject matter as the claim of the patent in suit you are considering, thus enabling a person or ordinary skill in the art to understand and practice the invention, then in that event the claim of the patent in suit you are considering would be anticipated by the prior art and is therefore invalid for want or lack of novelty.

If you do not find these requirements have been met, then the patented claim is not invalid because of anticipation or lack of novelty.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:68 (6th ed. Aug. 2013).

**5.8b  "ANTICIPATION – PRIOR ART – PRINTED PUBLICATION"**

**(DISPUTED)**

**COCHLEAR'S PROPOSED INSTRUCTION**[14]

A patent can also be anticipated by a printed publication.

A drawing or written description of an invention is part of the prior art if it constitutes a printed publication.  Such a publication must describe the invention in a document made accessible to the public before the date of the invention or for more than one year before the effective filing date of the patent you are considering.

The Cochlear Defendants claim that the `616 and the `691 patents are invalid for lack of novelty due, in part, to one or more printed publications.  If you find the Cochlear Defendants have proved by clear and convincing evidence that the invention was described in a prior publication in the United States or in a foreign country before it was invented by the inventors who assigned it to the Foundation, or more than one year before the effective filing date of August 31, 1991, then the patent claim is invalid.

The Cochlear Defendants must prove the following:

First:  The publication was made before the Foundation invented the invention claimed in the patent claim you are considering or more than one year before the effective filing date of August 31, 1991.

Second:  The prior publication was at least reasonably available to at least some segment of the public.  It is not necessary that the prior publication be available to every member of the public.  It must be available without restriction to that segment of the public most likely to avail itself of the publication's contents, even if it is difficult to find.  The public, for the purposes of the patent laws,

_____

[14] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses the '691 patent.  This reference should be removed if the Court agrees that the '691 patent's claims are indefinite and therefore invalid as a matter of law.

constitutes those persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents.  A document that is restricted to a part of the public may nevertheless be "accessible" to the public so long as accessibility is sufficient to lead you to believe that the public concerned with the art knew of the contents of the publication prior to the date of the invention or at least one year prior to the effective filing of the patent claim you are considering.

Third:  The prior publication made a meaningful disclosure of the invention claimed in the patent claim you are considering.  To be "meaningful," the disclosure must enable a person of ordinary skill in this art to understand the invitation.  The disclosure must be enabling and meaningful.  In determining whether the disclosure is complete, enabling, and meaningful, you should take into account what would have been within the knowledge of a person of ordinary skill in the art to make, construct, and practice the invention.

**Authority:**

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:69 (6th ed. Aug. 2013) as amended; *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr.* 4.3(a)(1).

**a. The Foundation's Objection:**

**1. Basis for Objection**

The Foundation takes the position that this instruction would be more readily understood if provided as instruction 5.6a above, because it is directed to whether a reference is prior art, not whether such a reference anticipates.  In addition, the Foundation believes such an instruction is only necessary if the jury is permitted to determine whether the McDermott Thesis qualifies is prior art.  However, as discussed in the Foundation's Motion in Limine No. 1, the McDermott Thesis does not qualify as prior art.  To the extent the Court disagrees, the Foundation has proposed an instruction tailored to that reference, at 5.6a above.

With respect to instruction 5.8b here, the Foundation instead proposes an instruction on inherency, proposed below, as the Cochlear Defendants' anticipation arguments require the jury to determine whether certain elements are inherently disclosed by the prior art.

2. Plaintiffs' Proposed alternative instruction:

**5.6a FOUNDATION'S PROPOSED – PRIOR ART PUBLICATION**

In order for the McDermott art to be considered a prior art publication, Cochlear must prove the following:

First: The publication was made before the Foundation invented the invention claimed in the patent claim you are considering or more than one year before the effective filing date of the patent in suit.

Second: The publication was at least reasonably available to at least some segment of the public. It is not necessary that the prior publication be available to every member of the public. It must be available without restriction to that segment of the public most likely to avail itself of the publication's contents.  When considering whether a library reference was available, you may consider when the reference was indexed and catalogued.

-175-

Third: The prior publication made a meaningful disclosure of the invention. To be "meaningful," the disclosure must enable a person of ordinary skill in this art to understand the invention. The disclosure must be enabling and meaningful. In determining whether the disclosure is complete, enabling, and meaningful, you should take into account what would have been within the knowledge of a person of ordinary skill in the art to make, construct, and practice the invention.

For the McDermott art to be considered prior art, the Cochlear Defendants must prove each of the three elements I just read to you is shown by clear and convincing evidence.

*Authority*:     Adapted from 3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil § 158.69 (6th ed. 2013); *In re Lister*, 583 F.3d 1307, 1311–14 (Fed. Cir. 2009); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A.1978); *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *37 (D. Del. 1998), *aff'd on other grounds*, 228 F.3d 1338 (Fed. Cir. 2000).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**b. Cochlear's Response to the Foundation's Objection**

The Cochlear Defendants are surprised that after weeks of exchanging draft jury instuctions and several meet and confer sessions, that the Foundation would put forth a new instruction 5.6 for the first time when it first delivered the draft joint instructions to the Defendants at 8:30 PM on the date they were to be filed.  The Plaintiffs then advised the Court in a unilateral filing at midnight that day that they had presented the draft instrutions to the Defendant but had not received any word back.  This was grossly misleading and a blatant attempt to shift the responsibility for the filing issue to the Defendants, who had repeatedly requested the draft document from the Plaintiffs leading up to the filing deadline.

Belatedly-proposed instruction 5.6 is not appropriate nor does it adequately address the issues presented by the Defendants proffed instruction.  Thus, the Court should adopt the Defendants' instruction.

1    **5.8c  "ANTICIPATION—PRIOR ART—INHERENCY" (DISPUTED)**
2         **THE FOUNDATION'S PROPOSED INSTRUCTION**

3         The Cochlear Defendants have argued that their cited prior art "inherently"
4    anticipates certain limitations of the Foundation's patent claims.

5         Inherent anticipation requires that the missing descriptive material is
6    'necessarily present,' not merely probably or possibly present, in the prior art.  Thus,
7    if you find that the prior art merely probably or possibly discloses any of the claim
8    limitations, then you must find that the prior art does not anticipate the Foundation's
9    patent.

10

11   Authority:

12        The concept of "inherent disclosure" does not alter the requirement that all
13        elements must be disclosed in an anticipatory reference in the same way as
14        they are arranged or combined in the claim. "[A]nticipation by inherent
15        disclosure is appropriate only when the reference discloses prior art that must
16        necessarily include the unstated limitation...." *Transclean Corp. v.*
17        *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002). "Inherency,
18        however, may not be established by probabilities or possibilities. The mere
19        fact that a certain thing may result from a given set of circumstances is not
20        sufficient." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269
21        (Fed.Cir.1991) (*quoting In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)); *see*
22        *also Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295
23        (Fed.Cir.2002) ("Inherent anticipation requires that the missing descriptive
24        material is 'necessarily present,' not merely probably or possibly present, in
25        the prior art." (*quoting In re Robertson*, 169 F.3d 743, 745 (Fed.Cir.1999))).
26        For a claim to be anticipated, each claim element must be disclosed, either
27        expressly or inherently, in a single prior art reference, *1333 and the claimed

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

arrangement or combination of those elements must also be disclosed, either

expressly or inherently, in that same prior art reference.

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010)

(overturning an erroneous district court instruction on anticipation and inherency).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**a. The Cochlear Defendant's Objection:**

    **1. Basis for Objection**

    The Cochlear Defendants object to this proposed instruction on the basis that it is contrary to the controlling authority concerning inherency.  Defendants' instruction maps more closely to the applicable law and provides the jury with a clearer explanation of the legal theory.

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION 5.8c  ANTICIPATION—PRIOR ART—INHERENCY**

    The Cochlear Defendants have argued that their cited prior art "inherently" anticipates certain limitations of the Foundation's patent claims.

    Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art.  A prior art reference may anticipate patent without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in single anticipating reference.  Inherent anticipation of a later patent does not require that a person of ordinary skill in art would have recognized the inherent disclosure before the filing date of the patent invalidated by the inherent disclosure.

    Thus, if you find that the prior art merely probably or possibly discloses any of the claim limitations, then you must find that the prior art does not anticipate the Foundation's patent.  Likewise, if you find that the prior art discloses (expressly or inherently) all of the claim limitations, then you must find that the prior anticipates the Foundation's patent.

*Authority:*

    The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as

-180-

1    they are arranged or combined in the claim.  "[A]nticipation by inherent

2    disclosure is appropriate only when the reference discloses prior art that must

3    necessarily include the unstated limitation...."  *Transclean Corp. v.*

4    *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002).  "Inherency,

5    however, may not be established by probabilities or possibilities.  The mere

6    fact that a certain thing may result from a given set of circumstances is not

7    sufficient."  *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269

8    (Fed.Cir.1991) (*quoting In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)); *see*

9    *also Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295

10    (Fed.Cir.2002) ("Inherent anticipation requires that the missing descriptive

11    material is 'necessarily present,' not merely probably or possibly present, in

12    the prior art." (*quoting In re Robertson*, 169 F.3d 743, 745 (Fed.Cir.1999))).

13    For a claim to be anticipated, each claim element must be disclosed, either

14    expressly or inherently, in a single prior art reference, *1333 and the claimed

15    arrangement or combination of those elements must also be disclosed, either

16    expressly or inherently, in that same prior art reference.

17 *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010)

18 (overturning an erroneous district court instruction on anticipation and inherency);

19 *Schering Corp. v. Geneva Pharmaceuticals Inc.*, 339 F.3d 1373, 1377-78 (Fed.

20 Cir.2003) (A prior art reference may anticipate patent without disclosing a feature of

21 the claimed invention if that missing characteristic is necessarily present, or

22 inherent, in single anticipating reference.  Inherent anticipation of a later patent does

23 not require that a person of ordinary skill in art would have recognized the inherent

24 disclosure before the filing date of the patent invalidated by the inherent

25 disclosure.).

26

27

28

## 5.9  OBVIOUSNESS—GENERALLY (DISPUTED)
### THE FOUNDATION'S PROPOSED INSTRUCTION

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Cochlear may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been

-182-

obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a.     Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.     Whether the invention satisfied a long-felt need;

c.     Whether others had tried and failed to make the invention;

d.     Whether others invented the invention at roughly the same time;

e.     Whether others copied the invention;

f.     Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.     Whether the invention achieved unexpected results;

h.     Whether others in the field praised the invention;

i.     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.     Whether others sought or obtained rights to the patent from the patent

-183-

1    holder; and

2    k.    Whether the inventor proceeded contrary to accepted wisdom in the

3    field.

4

5    Authority:    Adapted from Model Patent Jury Instructions § B.4.3 4.3c, Federal

6    Circuit Bar Association (June 2013) (and sources cited therein).

-184-

**a. The Cochlear Defendants' Objection:**

      **1. Basis for Objection**

      In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by the Foundation as it fails to comply with this Court's directive.

      Here, there is an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of the Federal Circuit Bar Association instructions. That instruction is not proper for a variety of reasons including that it does not fairly portray the standard and it is out of character with the content and tone of the instruction found in the O'Malley, et al. Instructions the Court ordered be used.

      Accordingly, the Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

      **2. Propounded Alternative Instruction**

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**

**5.9  OBVIOUSNESS—GENERALLY**

      As I mentioned to you previously, one of the defenses asserted by the Cochlear Defendants is that, if any asserted claim of each of the two patents in suit are not anticipated by the prior art, that claim is invalid because of obviousness.

      To succeed on this contention, the Cochlear Defendants must prove by clear and convincing evidence, as to the particular claim you are considering, that a person of ordinary skill in the field of the invention, who knew about all the prior art

1  existing at the time the invention was made, would have come up with the invention
2  at that time.  Unlike anticipation, obviousness may be shown by considering two or
3  more items of prior art in combination.

4        In deciding obviousness, you should put yourself in the position of a person
5  with ordinary skill in the art at the time the claimed invention was made.  You must
6  not use hindsight.  You may not consider what is known now or what was learned
7  from the patent in suit you are considering.  In addition, you may not use the patent
8  in suit you are considering as a roadmap for selecting and combining items of prior
9  art.

10       In making your decision regarding obviousness, you should consider the
11  following:

12       1.     The scope and content of the prior art. You may consider prior art that
13  was reasonably relevant to the problem the inventor faced, including prior art in the
14  field of the invention and prior art from other fields that a person of ordinary skill
15  would consider when attempting to solve the problem.

16       2.     Any differences between the prior art and the invention in the patent
17  claim.

18       3.     The level of ordinary skill in the field of the invention at the time of the
19  invention.

20

21       **Authority**:

22       O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:65 (6th ed. Aug. 2013) as
23  amended.

24

25

26

27

28

-186-

**b. The Foundation's Response**

The Foundation's proposed instruction 5.9 is based on the Model Patent Jury Instructions from the Federal Circuit Bar Association and should be used instead of instruction 5.9 proposed by the Cochlear Defendants.  The Federal Circuit Bar Association's instruction is preferable to O'Malley because it clearly and comprehensively covers reasons to combine and secondary considerations of nonobviousness.  Moreover, it is easier to understand than the corresponding O'Malley instructions.  In contrast, the obviousness instruction provided by the Cochlear Defendants at 5.9 above does not address reasons to combine, and the commercial success instruction alone at 5.10 below fails to present the full list of secondary considerations of nonobviousness to be considered.

**Cochlear Defendants' Reply**:

The O'Malley instruction properly instructs the jury under the applicable authorities and should be used as the Court Ordered in its October 18, 2013 Order.

-187-

**5.9a– Invalidity – Obviousness – Hindsight Bias (DISPUTED)**

**FOUNDATION PROPOSED**

In determining obviousness you should bear in mind that a patentable invention may appear obvious in hindsight. To avoid this hindsight bias, you must cast your mind back to the time of the invention to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and then-accepted wisdom in the field. Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention. In this regard, considering the objective evidence may work as a beneficial check on hindsight.

Authority:    3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil Ch. 158, p. 585 (6th ed. 2006); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Systems, Inc.*, F.3d , , 107 U.S.P.Q.2d 1737, 2013 WL 3984991, *9 (Fed. Cir. 2013); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) cert. dismissed, 133 S. Ct. 97, 183 L. Ed. 2d 736 (U.S. 2012)

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

       In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by the Foundation as it fails to comply with this Court's directive.  The Foundation's instruction is already presented in the O/Malley instruction proffered by the Defendants.  That is why the Foundaton had to cite to the out of date 2006 verson of O'Malley as support.  Here, there is an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of a model instruction propounded by the outdated 2006 version of the O'Malley, et al. publication.

       The Cochlear Defendants further object to this proposed instruction on the basis that it is duplicative and draws excessive attention to an issue which is one of many the jury will consider.  This "singling out" can be expected to improperly bias the jury in its deliberations and is an improper attempt by the Foundaton to sway the jury though the instructions.

       The Cochlear Defendants do not submit an alternative proposed instruction because no adddtional instruction is required.

## 5.10  OBVIOUSNESS—COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS (DISPUTED) FOUNDATION PROPOSED

Considerations such as the commercial success of the invention or lack of commercial success, long felt but unresolved needs, failure of others to make such invention, and other similar factors must be considered before determining whether the claimed invention would have been obvious to one of skill in the art at the time of invention.  These considerations play a critical role in the obviousness analysis. They are not just a cumulative or confirmatory part of the obviousness calculus and should not be an afterthought.

These considerations must be related in some way to the patented features of the inventive portion of the subject matter sought to be patented.  For example, if you find that products embodying the claimed inventions were sold more often because of those claimed inventions, then you may consider commercial success as a factor in determining obviousness or nonobviousness. If there have been no commercial sales attributable to the patented features of the invention in the asserted claim you are considering, you may not use any commercial success in determining whether the invention defined by the claims was obvious or nonobvious.

Although inquiry into these considerations is relevant to the issue of obviousness, it is not determinative apart from the basic factual inquiries explained in these instructions.  Thus, if you conclude commercial success, if any, is due solely to advertising, promotion, or salesmanship and is not due to features of the product claimed in the patent in suit, then the evidence of commercial success should not weigh against defendant's evidence on the question of obviousness.

*Authority:*

-190-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as amended; *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013)); *Apple Inc. v. I.T.C.*, 725 F. 3d 1356, 1365-67 (Fed. Cir. 2013) (vacating and remanding the ITC's decision on obviousness for failing to consider Apple's objective indicia of nonobviousness, including "the iPhone's high degree of commercial success").

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

The Cochlear Defendants object to this proposed instruction on the basis that it is biased and contrary to the law.  It will confuse the jury and lead to jury error. The instruction includes a false advocacy about the sales of products and commercial success.  The law, in fact, is that strong evidence of commercial success is not sufficient to overcome strong evidence of obviousness.

The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

    **2. Propounded Alternative Instruction**

**THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION 5.10  OBVIOUSNESS—COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS**

Considerations such as the commercial success of the invention or lack of commercial success, long felt but unresolved needs, failure of others to make such invention, and other similar factors may be considered in your determination of obviousness if the issue is a close one.

These considerations must be related in some way to the patented features of the inventive portion of the subject matter sought to be patented.  Any evidence of commercial success, or other secondary considerations, is only significant if it is the result of the claimed invention as opposed to other factors. Thus, if there have been no commercial sales attributable to the patented features of the invention in the asserted claim you are considering, you may not use any commercial success in determining whether the invention defined by the claims was obvious or nonobvious.

Although inquiry into these considerations is relevant to the issue of

obviousness, it is not determinative apart from the basic factual inquiries explained in these instructions.  Thus, if you conclude commercial success, if any, is due solely to advertising, promotion, or salesmanship and is not due to features of the product claimed in the patent in suit, then the evidence of commercial success should not weigh against defendant's evidence on the question of obviousness. Additionally, even evidence of substantial commercial success is not sufficient to overcome strong evidence of obviousness.

**Authority:**

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as amended; *Media Technologies Licensing v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010).

**b. The Foundation's Response**

The Cochlear Defendants' instruction mischaracterizes the law by misinterpreting *Media Technologies* in its instruction 5.10.  Rather than establishing the general proposition that "even evidence of substantial commercial success is not sufficient to overcome strong evidence of obviousness," the Federal Circuit in *Media Technologies* merely concluded that under the particular facts of that case "a highly successful product alone would not overcome the strong showing of obviousness."  596 F.3d at 1339.

**Cochlear Defendants' Reply**:

*Media Technologies* provides the jury with a proper hierarchy of how to consider commercial success in the context of strong evidence of obviousness.  The jury should be instructed on this to avoid bias and prevent jury error.

## 6.1  "INEQUITABLE CONDUCT" (DISPUTED)

## COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION

The Cochlear Defendants contend that the Foundation engaged in inequitable conduct before the U.S. Patent and Trademark Office.  The question of whether the Foundation, its attorney or the inventors engaged in inequitable conduct is a question for me to decide.  However, I will decide that question based upon whether you find the Cochlear Defendants have proven the following facts:

1.  Plaintiff made a misrepresentation to the Patent and Trademark Office (by clear and convincing evidence);

2.  The misrepresentation was material (by a preponderance of the evidence); and,

3.  Whether the Foundation, its attorney or the inventors acted with the intent to deceive the Patent and Trademark Office (by clear and convincing evidence).

You will be asked to answer questions on the verdict form about Inequitable Conduct based on this instruction.  Based on your findings of whether the misrepresentation was made, its materiality, and the intent of the Foundation, its attorney or the inventors I will make the determination of whether the Foundation, its attorney or the inventors engaged in inequitable conduct.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) as amended; *Therasense, Inc. v. Becton, Dickinson and Company,* 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc); *Ohio Willow Wood Co. v Alps South, LLC* (Fed Cir. Nov. 15, 2013).

-195-

**a. The Foundation's Objection:**

    **1. Basis for Objection**

As outlined in the Foundation's Motion *in limine* No. 2, the Foundation believes that this issue should not be presented to the jury because inequitable conduct is a matter solely for the Court, and highly prejudicial to the Foundation.

However, to the extent the Court disagrees, and inequitable conduct is tried to the jury, the Foundation also objects to the Cochlear Defendants particular proposed instruction and proposes an alternative.

Additionally, in this instruction, the Cochlear Defendants rely on *Ohio Willow Wood Co.* for the proposition that materiality need only be shown by a preponderance of the evidence. *Ohio Willow Wood* is an aberration. It pronounces a new standard of evidence without deference to decades of Federal Circuit opinions, including *en banc* opinions, which just as plainly state that materiality must be shown by clear and convincing evidence. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998) ("Materiality of the non-disclosed information, and culpable intent, must be established by clear and convincing evidence");  *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (en banc) ("Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence"). Indeed, under Federal Circuit rules of precedent, *older* panel decisions are binding against more recent ones, so it would be legal error to follow this recent November 15 case, rather than the senior, binding authority in *ATD Corp.* and *Kingsdown*. *See Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 764 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc . . . Where there is direct conflict, the precedential decision is the first.") (internal

1  citations omitted).

2       The proposed instruction also includes the binding rule from *Therasense*, a

3  case cited by the Cochlear Defendants, that "specific intent to deceive must be the

4  single most reasonable inference able to be drawn from the evidence." *Therasense,*

5  *Inc. v. Becton, Dickinson and Company,* 649 F.3d 1276, 1290-91 (Fed. Cir. 2011)

6  (en banc).

7       **2. The Foundation's Proposed Alternative Instruction**

8       The Cochlear Defendants contend that the Foundation engaged in inequitable

9  conduct before the U.S. Patent and Trademark Office.  The question of whether the

10  Foundation engaged in inequitable conduct is a question for me to decide.

11  However, I will decide that question based upon whether you find the Cochlear

12  Defendants have proven the following facts by clear and convincing evidence:

13       4.    The Foundation made a misrepresentation to the Patent and

14  Trademark Office;

15       5.    The misrepresentation was material; and,

16       6.    Whether AMF, it attorney or the inventors acted with the intent

17  to deceive the Patent and Trademark Office.

18       Because direct evidence of deceptive intent is rare, you may infer intent from

19  indirect and circumstantial evidence.  However, to meet the clear and convincing

20  evidence standard, the specific intent to deceive must be the single most reasonable

21  inference able to be drawn from the evidence.  Hence, when there are multiple

22  reasonable inferences that may be drawn, intent to deceive cannot be found.

23       You will be asked to answer questions on the verdict form about Inequitable

24  Conduct based on this instruction.  Based on your findings of whether the

25  misrepresentation was made, its materiality, and the intent of plaintiff, I will make

26  the determination of whether plaintiff engaged in inequitable conduct.

27  *Authority:*

28

-197-

1  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) as

2  amended; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276,

3  1290-91 (Fed. Cir. 2011) (en banc).

**b. Cochlear's Response to the Foundation's Objection**

The Cochlear Defendants direct the Court and the Foundation to the Federal Circuit's *en banc* opinion in *Therasense*, which also holds that materiality need only be shown by a preponderance of the evidence.

> "This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality.  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.  In making this patentability determination, **the court should apply the preponderance of the evidence standard** and give claims their broadest reasonable construction."  649 F.3d at 1291-92 (emphasis added).

The Foundation's objection to the Defendants' instruction is frivolous. Defendants' instruction maps more closely to the applicable law and provides the jury with a clearer explanation of the legal rule they need to apply.

The Defendants have addresses the propriety of submitting this issue to the jury in their opposition to the cited motion in limine, and will not burden this document with a restatement of those arguments.  While the Foundation seeks to improperly put the issue of willful infringement to the jury, it seeks to keep the issue of inequitable conduct from the jury. But the jury must determine if the Defendants defenses (which includes inequitable conduct) are objective reasonable as part of their determination of willful infringement.  The Foundation cannot have it both ways.

## 6.2 "MISREPRESENTATION; DUTY OF DISCLOSURE, CANDOR AND GOOD FAITH" (DISPUTED)

### COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION

A patent is a special privilege designed to serve the public purpose of promoting the progress of the useful arts.  It is affected with a public interest, and is an exception to the general rule against the granting of special privileges.

A patent infringement case must be measured by both public and private standards of equity in view of the public's paramount interest in seeing that patents spring from backgrounds free from misrepresentations and inequitable conduct.

In a patent infringement case, where it is alleged the patent owner made misrepresentations in applying for a patent, the test you should apply in considering this issue is the standard of conduct displayed by the patent owner in the pursuit of his patent.

"Absolute honesty and good faith disclosure" is required of an applicant dealing with the Patent and Trademark Office.  This standard forbids the suppression of facts known to the applicant that are inconsistent with statements made in pursuit of the applicant's patent.  This standard also forbids omission of any material fact that could result in misleading conclusions as well as affirmative misstatements of material fact.

This rule of absolute candor with the Patent and Trademark Office is a beneficial one in that it should encourage the applicant, where the materiality of facts is in question, to resolve all doubts in favor of disclosure.

The concept of misrepresentation as applied to patent infringement cases recognizes that part of the quid pro quo or the consideration for acquisition of the right to exclude others from use of the invention is the insistence that the circumstances surrounding the application for patent be free from bad faith or

-200-

1    inequitable conduct.  This requirement places upon the patent owner the burden of

2    full disclosure free of misconduct.

3           Intentional concealment and non-disclosure in connection with an application

4    for a patent may be evidence of, and equivalent to a false misrepresentation.  It is of

5    no consequence that the concealment and non-disclosure is achieved through

6    affirmative misrepresentations of material facts or by misleading omission.

7           Misrepresentation can be in the form of either a false statement of a material

8    fact or the omission of a material fact from a statement that was made.  A fact is

9    material when but for the deception, the PTO would not have allowed the claim.  In

10   making this patentability determination, you should apply the preponderance of the

11   evidence standard and give the claims their broadest reasonable construction.

12          The question of intent may be established by circumstantial evidence, based

13   upon a person's outward manifestations, the person's words, conduct, acts, and all

14   the surrounding circumstances disclosed by the evidence together with the rational

15   and logical inferences that may be drawn from them.  If you find the Foundation, its

16   attorney or the inventors knowingly submitted a false or misleading statement

17   material to the consideration of the patent application, you may, but are not required

18   to, conclude the statement was part of a deliberate scheme to deceive the Patent and

19   Trademark Office.

20

21   **Authority:**

22   *O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:76 (6th ed. Aug. 2013) as

23   amended by § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649

24   F.3d 1276, 1290-91(Fed. Cir. 2011) (en banc).

25

26

27

28

-201-

**a. The Foundation's Objection:**

    **1. Basis for Objection**

As outlined in the Foundation's Motion *in limine* No. 2, the Foundation believes that this issue should not be presented to the jury because inequitable conduct is a matter solely for the Court, and highly prejudicial to the Foundation.

Even if the Court decide that the Jury should be instructed on Inequitable Conduct, the Foundation believes this instruction is unnecessary and that the Foundation's proposed instruction on Inequitable Conduct generally would be sufficient.

This instruction is also legally flawed and highly prejudicial. As noted in the Foundation's objection to the proposed Inequitable Conduct instruction above, materiality must be proved by clear and convincing evidence, not, as Cochlear contends, by preponderance of the evidence. *See ATD Corp.,* 159 F.3d at 546; *Kingsdown Med. Consultants, Ltd.,* 863 F.2d at 872.

The first two paragraphs of the Cochlear Defendants proposed instruction are prejudicial and risk jury bias or confusion. For instance, the sentence "this requirement places upon the patent owner the burden of full disclosure free of misconduct" suggests that the Foundation has the burden of disproving inequitable conduct, rather than properly instructing that Cochlear has the initial burden of proving inequitable conduct by clear and convincing evidence.

To the extent the Court believes any additional instruction is necessary, the Foundation proposes an alternative instruction.


    **2. The Foundation's Proposed Alternative Instruction**

In a patent infringement case, where it is alleged the patent owner made misrepresentations in applying for a patent, the test you should apply in considering this issue is the standard of conduct displayed by the patent owner in the pursuit of

his patent.

"Absolute honesty and good faith disclosure" is required of an applicant
dealing with the Patent and Trademark Office.  This standard forbids the
suppression of facts known to the applicant that are inconsistent with statements
made in pursuit of the applicant's patent.  This standard also forbids omission of any
material fact that could result in misleading conclusions as well as affirmative
misstatements of material fact.

This rule of absolute candor with the Patent and Trademark Office is a
beneficial one in that it should encourage the applicant, where the materiality of
facts is in question, to resolve all doubts in favor of disclosure.

The concept of misrepresentation as applied to patent infringement cases
recognizes that part of the quid pro quo or the consideration for acquisition of the
right to exclude others from use of the invention is the insistence that the
circumstances surrounding the application for patent be free from bad faith or
inequitable conduct.

Intentional concealment and non-disclosure in connection with an application
for a patent may be evidence of, and equivalent to a false misrepresentation.  It is of
no consequence that the concealment and non-disclosure is achieved through
affirmative misrepresentations of material facts or by misleading omission.

Misrepresentation can be in the form of either a false statement of a material
fact or the omission of a material fact from a statement that was made.  A fact is
material when but for the deception, the PTO would not have allowed the claim.  In
making this patentability determination, you should apply the preponderance of the
evidence standard and give the claims their broadest reasonable construction.

The question of intent may be established by circumstantial evidence, based
upon a person's outward manifestations, the person's words, conduct, acts, and all
the surrounding circumstances disclosed by the evidence together with the rational

and logical inferences that may be drawn from them.  However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence.  Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Authority:*

*O'Malley et al.,* 3A Fed. Jury Prac. & Instr. § 158:76 (6th ed. Aug. 2013) as amended by § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91(Fed. Cir. 2011) (en banc).]

1  **b. Cochlear's Response to the Foundation's Objection**

2  The Cochlear Defendants reject the Foundation's frivolous argments about the

3  standard of proof as discussed in conjunction with the last instruction above.

4  They further object to the Foundation's proposed instruction on the basis that it is

5  contrary to the controlling authority concerning misrepresentation; duty of

6  disclosure, candor and good faith.  Defendants' instruction comes directely from the

7  current version of O'Malley that the Court ordered the parties to use.  That

8  instruction maps more closely to the applicable law and provides the jury with a

9  clearer explanation of these legal rules to assist in their decision.

## 7.1  DAMAGES GENERALLY (UNDISPUTED)[15]

Damages must be proved as any other issue in this case.  The Foundation must prove by the preponderance of the evidence the damage, if any, caused by the infringement.

If your verdict is for the Foundation and you find the Cochlear Defendants have infringed any of the asserted claims of the `616 or the `691 patents and that these claims are not invalid, then you should consider the amount of money the Foundation should be awarded as damages.

The Foundation has the burden of proving a by a preponderance of the evidence the amount damages caused by the Cochlear Defendants' infringement. The actual damage to the Foundation, if any, caused by infringement is most accurately determined on the basis of what you find from a preponderance of the evidence in the case.  In no event shall the amount in dollars be less than the amount of money that would have been received by the Foundation if the Cochlear Defendants had been paying a reasonable royalty to the Foundation for the use made by the Cochlear Defendants during the period of infringement.

Because the amount of damages for induced infringement or contributory infringement is limited by the number of instances of direct infringement, the Foundation must further prove by a preponderance of the evidence the number of direct acts of infringement by others of claim 10 of the '616 patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.  You may not award more than one amount of damages for any particular event of infringement by the Cochlear

---

[15] Subject to and without waiving their objections, the Cochlear Defendants submit this instruction that addresses claim 1 of the `616 patent and/or claims 6 and 7 of the `691 patent.  These references should be removed if the Court determines that these claims are indefinite and therefore invalid as a matter of law.

1   Defendants, regardless of whether you find the infringement to be based on direct,

2   induced or contributory infringement.

3          You are not permitted to award speculative damages.  This means you are not

4   to include in any verdict compensation for prospective loss that, although possible,

5   is wholly remote or left to conjecture and/or guess.  However, when the amount of

6   damages cannot be ascertained with precision, any doubts regarding the amount are

7   to be resolved against the infringer.

8          In determining the issue of damage, you should bear in mind that the law does

9   not permit you to award any greater sum than the monetary loss that the Foundation

10  has suffered as a result of Cochlear Defendants' infringement, without regard to

11  gains or losses that accrued to the Cochlear Defendants as a result of the

12  infringement.

13         In fixing the amount of your verdict you may not include in or add to an

14  otherwise just award any sum for the purpose of punishing the Cochlear Defendants,

15  or to set an example.

16         The fact that I have instructed you as to the proper measure of damages

17  should not be construed as intimating my view as to which party is entitled to

18  prevail in this case.  Instructions as to the measure of damages are given for your

19  guidance in the event you find from the evidence in favor of the Foundation.

20

21  *Authority:*

22  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:90 (6th ed. Aug. 2013) as

23  amended; *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir.

24  2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir.

25  2009).

26

27

28

-207-

## 7.2  REASONABLE ROYALTY (DISPUTED)
### THE FOUNDATION'S PROPOSED INSTRUCTION

If you find the Cochlear Defendants have infringed either of the patents-in-suit, then the Foundation is entitled to an award of damages adequate to compensate for the infringement.  In no event may the award of damages be less than a reasonable royalty for the use made of the invention by the infringer.

The damages caused by the Cochlear Defendants' infringement may be determined on the basis of what you find from a preponderance of the evidence would have been a reasonable royalty to be paid for a license to use the claimed inventions during the period of the infringement.  A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder, here, the Foundation, and the infringer, here, the Cochlear Defendants, taking place at the time when the infringing activity first began.  The parties agree that the hypothetical negotiation would have taken place in approximately June 1998, the date on which the allegedly infringing products came on the market.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  A reasonable royalty is the amount that the owner of a patent would accept, assuming a willingness to license its use, from a person who wants to obtain a license to use the claimed invention, neither of whom is acting under financial distress or other compulsion to enter into the agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

1    A royalty can be calculated in several different ways and it is for you to

2    determine which way is the most appropriate based on the evidence you have heard.

3    One way to calculate a royalty is to determine what is called an "ongoing royalty."

4    To calculate an ongoing royalty, you must first determine the "base," that is, the

5    product on which the infringer is to pay.  You then need to multiply the revenue the

6    defendant obtained from that base by the "rate" or percentage that you find would

7    have resulted from the hypothetical negotiation.  For example, if the patent covers a

8    nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue

9    would be $200.  If the rate you find would have resulted from the hypothetical

10   negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base

11   revenue of $200.

12   If the patent covers only part of the product that the infringer sells, then the

13   base would normally be only that feature or component.  For example, if you find

14   that for a $100 car, the patented feature is the tires which sell for $5, the base

15   revenue would be $5.

16   The cochlear implant system ("CIS") as claimed by the patents-in-suit

17   includes an implant and a speech processor, which are used together with the

18   diagnostic software.  In determining the royalty base, you should use the revenues of

19   the CIS if either: (1) the demand for the CIS is attributable to the technology in the

20   patents-in-suit, that is, if the patented feature is the reason customers buy the whole

21   product; or (2) if the CIS constitutes the smallest salable patent-practicing unit.  You

22   should find that the CIS is the "smallest salable patent-practicing unit" if both the

23   implant and the speech processor used together with the diagnostic software are

24   necessary to practice the technology in the patents-in-suit.

25   A second way to calculate a royalty is to determine a one-time lump sum

26   payment that the infringer would have paid at the time of the hypothetical

27   negotiation for a license covering all sales of the licensed product both past and

28

future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

*Authority:*

O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013) as modified by *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011),* Instr. B.5.7; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 67-68 (Fed. Cir. 2012); *VirnetX Inc. v. Apple Inc*., 925 F. Supp. 2d 816, 840 (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009); *Internet Machs. LLC v. Alienware Corp.*, 2013 U.S. Dist. LEXIS 115723, *43-45 (E.D. Tex. June 19, 2013).

**a. The Cochlear Defendants' Objection:**

    **1. Basis for Objection**

    The Cochlear Defendants object to this instruction as biased, prejudicial and contrary to law.  The Plaintiffs' instruction repeatedly refers to the Defendants as the "infringer."  This is not by accident and totally unnecessary since the instruction properly states that the parties believe that the patents are valid and infringed.

    Moreover, the instruction departs from the correct statement of the law as it wrongly indicates that one can use the entirety of the Cochlear Defendants' sales revenue in calculating the royalty.  This issue is addressed in the Defendants Motion in Limine No. 2 and Defendants Opposition to Plaintiffs Motion in Limine No. 5.

    The Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

    **2. Propounded Alternative Instruction –**

    **THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION**

    **7.2  REASONABLE ROYALTY**

    If you find the Cochlear Defendants have infringed either of the patents in suit for which one or more of the asserted claims is not invalid, then the Foundation is entitled to an award of damages adequate to compensate for the infringement, but in no event may the award of damages be less than a reasonable royalty for the use made of the invention by the infringer.

    The damages caused by the Cochlear Defendants' infringement may be determined on the basis of what you find from a preponderance of the evidence would have been a reasonable royalty to be paid for a license to use the claimed invention during the period of the infringement.  A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license."  A reasonable royalty is the payment for the license

1   that would have resulted from a hypothetical negotiation between the patent holder

2   and the Cochlear Defendants taking place in June of 1998.  In considering the nature

3   of this negotiation, you must assume that the patent holder and the infringer would

4   have acted reasonably and would have entered into a license agreement.  A

5   reasonable royalty is the amount that the owner of a patent would accept, assuming

6   a willingness to license its use, from a person who wants to obtain a license to use

7   the claimed invention, neither of whom is acting under financial distress or other

8   compulsion to enter into the agreement.  You must also assume that both parties

9   believed the patent was valid and infringed.  Your role is to determine what the

10  result of that negotiation would have been.  The test for damages is what royalty

11  would have resulted from the hypothetical negotiation and not simply what either

12  party would have preferred.

13      A royalty can be calculated in several different ways and it is for you to

14  determine which way is the most appropriate based on the evidence you have heard.

15  One way to calculate a royalty is to determine what is called an "ongoing royalty."

16  To calculate an ongoing royalty, you must first determine the "base," that is, the

17  product on which the infringer is to pay.  You then need to multiply the revenue the

18  defendant obtained from that base by the "rate" or percentage that you find would

19  have resulted from the hypothetical negotiation.  For example, if the patent covers a

20  nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue

21  would be $200.  If the rate you find would have resulted from the hypothetical

22  negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base

23  revenue of $200.

24      If the patent covers only part of the product that the infringer sells, then the

25  base would normally be only that feature or component.  For example, if you find

26  that for a $100 car, the patented feature is the tires which sell for $5, the base

27  revenue would be $5.  However, in a circumstance in which the patented feature is

28

-212-

the reason customers buy the whole product, the base revenue could be the value of the whole product.  If the sale of the patented feature is not made separate from the whole product, then you must use the evidence supplied and make an apportionment of the revenue to reflect how you believe the parties would have apportioned the revenue at the time of the negotiation because the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

*Authority:*

O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013) as modified by *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011),* Instr. B.5.7; *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884) ("the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . ."); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011) (it is improper to use the entire product base and reduce the royalty percentage); *Laserdynamics, Inc. v Quanta Computer Inc.,* 694 F.3d 51 (Fed. Cir. 2012) (royalty only allowed on the smallest saleable unit); *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301(Fed. Cir. 2009) (only

-213-

comparable licenses can be considered in determining a reasonable royalty); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) (expert testimony that failed to apportion damages base not admissible).

**b. The Foundation's Response**

The Foundation proposes the language regarding the cochlear implant system as the appropriate royalty base.  The language proposed by the Foundation reflects that the cochlear implant system can be the appropriate royalty base if (1) the demand for the cochlear implant system is driven by the patented technology (i.e., satisfies the Entire Market Value Rule) or (2) the cochlear implant system is the smallest salable patent-practicing unit.  As noted by the Federal Circuit:

> Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the "smallest salable patent-practicing unit." *Cornell Univ. v. Hewlett–Packard Co.,* 609 F.Supp.2d 279, 283, 287–88 (N.D.N.Y.2009) (explaining that "counsel would have wisely abandoned a royalty base claim encompassing a product with significant non-infringing components. The logical and readily available alternative was the smallest salable infringing unit with close relation to the claimed invention—namely the processor itself.").
> The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. *Rite–Hite,* 56 F.3d at 1549, 1551. In other words, "[t]he entire market value rule allows for the recovery of damages based on the value of an entire

-215-

1    apparatus containing several features, when the feature patented

2    constitutes the basis for customer demand." *Lucent,* 580 F.3d at

3    1336 (quoting *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901

4    (Fed.Cir.1986)).

5  Furthermore, the language proposed by Plaintiffs reflects that the smallest salable

6  patent-practicing unit must reflect the claimed invention itself, and be necessary to

7  practice the invention.  *See VirnetX Inc. v. Apple Inc*., 925 F. Supp. 2d 816, 840

8  (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283,

9  287-88 (N.D.N.Y. 2009).  The Foundation's position as to these issues is further

10  explained in its opposition to Defendants' Joint Motion in Limine No. 2, regarding

11  the testimony of the Foundation's damages expert, Cate Elsten, Dkt. 313.

12      The language proposed by the Cochlear Defendants is not supported by the

13  law.  The cases cited by the Defendants do not support the premise that the jury is to

14  make an apportionment of how the parties would have apportioned the revenue at

15  the time of the hypothetical negotiation.  Moreover, Defendants' proposed language

16  would confuse the jury by purporting to require them to determine some

17  apportionment of revenue.

18      As described below for Instruction No. 7.2 (a), regarding date of

19  commencement of damages, the Foundation's proposed instruction better reflects

20  the law and conforms with the evidence likely to be admitted in this case, i.e., that

21  the date on which damages commence for the '691 patent may be different than that

22  for the '616 patent, and the requirement to mark products.

23

24  **The Cochlear Defendants' Reply:**

25      The Federal Circuit has time and again ruled that any damages award must be

26  directed to capture the incremental value the invention provides. This issue has been

27  briefed and will be argued at the pre-trial conference so Defendants will not burden

28

-216-

1   the record with the arguments.  Rather, they are addressed in Defendants Motion in

2   Limine No. 2 and Defendants Opposition to Plaintiffs Motion in Limine No. 5.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**7.2(a) DATE OF COMMENCEMENT OF DAMAGES (DISPUTED)**

**THE FOUNDATION'S PROPOSED INSTRUCTION**

For each of the Patents-in-Suit, you must determine the date on which damages commence.  The Foundation is entitled to damages for infringement of its patents occurring up to six year prior to filing suit against the Cochlear Defendants.  Since the suit was filed on December 13, 2007, the Foundation is eligible to receive damages beginning December 13, 2001.  However, if the Foundation's licensee, Advanced Bionics, made and sold products that use the inventions of the patent-in-suit, then the Foundation will only be entitled to damages as of the date the Cochlear Defendants received notice of the patents.

If you find that Advanced Bionics, a licensee of the '616 and '691 patents, does not manufacture or sell products covered by the patents-in-suit, then damages for the Cochlear Defendants' infringement of both the '616 and '691 patents begins on December 13, 2001.

If you find that Advanced Bionics does manufacture or sell a product that includes a claimed invention, then damages will commence when you find that the Cochlear Defendants received notice of the patents.  Notice may be provided by informing the Cochlear Defendants directly, sometimes called "actual" notice, or may be provided by "marking" products that are covered by a patent with the patent number.  To establish that it has provided notice through "marking," the Foundation bears the burden of showing that it made reasonable efforts to ensure that any licensee who makes or sells a product that includes a claimed invention has marked the covered products with the patent number.

If you find that Advanced Bionics does manufacture or sell products that include the inventions claimed in the '616 patent, but failed to mark the covered products, then damages for the Cochlear Defendants' infringement of the '616 patent begins on July 21, 2003, the date the Cochlear Defendants' received actual

-218-

1   notice of the '616 patent.  If you find that Advanced Bionics does manufacture or

2   sell products that include the invention claimed in the '616 patent and satisfied its

3   obligation to mark its products with the '616 patent prior to the Cochlear Defendants

4   receiving actual notice on July 21, 2003, then damages for the Cochlear Defendants'

5   infringement of the '616 patents begins on December 13, 2001.

6       If you find Advanced Bionics manufactures or sells a product that is covered

7   by the '691 patent, then damages for the Cochlear Defendants' infringement of the

8   '691 patent begins on December 13, 2007, the date the Cochlear Defendants

9   received actual notice of the '691 patent.

10  Authority:  Model Patent Jury Instructions for the Northern District of California

11  (Nov. 3, 2011), § 5.8; 28 U.S.C. §§ 286-287. Federal Circuit Bar Association's

12  Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal*

13  *Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed.

14  Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998);

15  *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v.*

16  *Med. Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v.*

17  *Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**a. The Cochlear Defendant's Objection:**

    **1. Basis for Objection**

    The Cochlear Defendants further object to this proposed instruction on the basis that it inadequately identifies the marking issue that is presented here so as to invite jury error.  The Cochlear Defendants further object to this instruction as it is improper to instruct the jury on the claims of the '691 patent as each of these claims are invalid as a matter of law as indefinite.  This issue is discussed in the Defendants' Memorandum of Fact and Law as Issue of Law 1.

    Subject to and without waiving its objections, the Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.


    **THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION[16]**

    For any of the Patents-in-Suit that you find infringement of a valid claim, you must determine the date on which damages commence.  The Foundation may be entitled to damages for infringement of its patents occurring up to six year prior to filing suit against the Cochlear Defendants.  Since the suit was filed on December 13, 2007, the Foundation may be eligible to receive damages beginning December 13, 2001.  However, if the Foundation or Advanced Bionics, its licensee of the '616 and '691 patents, made and sold products that use the inventions of the patent-in-suit, then the Foundation will only be entitled to damages as of the date the Foundation provided notice of the patents to the Cochlear Defendants.

    If you find that neither the Foundation nor Advanced Bionics manufacture or sell products covered by the patents-in-suit, then damages for any infringement by

---

[16] Subject to and without waiving their objections the Cochlear Defendants submit this instruction that addresses the claims of the `691 patent.  These references should be removed if the Court determines that these claims are indefinite and therefore invalid as a matter of law.

-220-

1  the Cochlear Defendants of both the '616 and '691 patents begins on December 13,

2  2001.

3       If you find that either the Foundation or Advanced Bionics do manufacture or

4  sell a product that includes a claimed invention, then damages will commence when

5  you find that the Cochlear Defendants received notice of the patents.  Notice may be

6  provided by informing the Cochlear Defendants directly, sometimes called "actual"

7  notice, or may be provided by "marking" products that are covered by a patent with

8  the patent number.

9       To establish that it has provided notice through "marking," the Foundation

10  bears the burden of showing by a preponderance of the evidence that both it and

11  Advanced Bionics marked substantially all of their patented products with the word

12  "patent" or the abbreviation "pat." together with the number of the patent.  The

13  marking must be fixed on the patented product.  If marking the patented product is

14  not possible, then the marking must be fixed to the package containing the article.

15  The Foundation may meet its burden of proof as to products produced by Advanced

16  Bionics by demonstrating that it made reasonable efforts to ensure that Advanced

17  Bionics has marked substantially all of the covered products with the patent number.

18       If you find that either the Foundation or Advanced Bionics do manufacture or

19  sell products that include the inventions claimed in the '616 patent, but failed to

20  mark substantially all of the covered products, then damages for any infringement of

21  the '616 patent by the Cochlear Defendants begins on July 21, 2003, the date the

22  Cochlear Defendants' received actual notice of the '616 patent from the Foundation.

23  If you find that either the Foundation or Advanced Bionics do manufacture or sell

24  products that include the invention claimed in the '616 patent and satisfied their

25  obligation to mark substantially all of their products with the '616 patent prior to the

26  Cochlear Defendants receiving actual notice on July 21, 2003, then damages for any

27  infringement of the '616 patents by the Cochlear Defendants begins on December

28

-221-

13, 2001 or the date that the Foundation and Advanced Bionics began marking substantially all of their patented products, whichever is later.

If you find the Foundation or Advanced Bionics manufactures or sells a product that is covered by the '691 patent, then damages for any infringement of the '691 patent by the Cochlear Defendants begins on December 13, 2007, the date the Cochlear Defendants received actual notice of the '691 patent.

***Authority:***

Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), § 5.8; 28 U.S.C. § 286. Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**b. The Foundation's Response**

The Foundation would use the Northern District's Model jury instructions, as modified by the Federal Circuit Bar Association's model jury instructions, with respect to the date of commencement of damages, as they are more specific and provide a more complete statement of the law.  These instructions reflect that there are questions of fact as to the appropriate dates for the commencement of damages, and that damages may commence on different dates for the '616 patent and the '691 patent.  In an attempt to simplify proof for the dates on which damages commence, the Foundation asked whether the Cochlear Defendants would enter into a stipulation regarding whether Advanced Bionics' product use the inventions in the patents in suit, but Cochlear refused.  In addition, the Cochlear Defendants, in their proposed special verdict form, would have the jury determine the date on which the Cochlear Defendants received notice, yet do not want to include an instruction regarding what constitutes notice.


**Cochlear Defendants' Reply:**

The Cochlear Defendants have included an alternative instruction that properly instructs the jury on the issue concerning marking in a way that is understandable and complete.  The Foundation's proffered instruction is incomplete and invites jury error.  As such, subject to their objection, the Defendants' instruction should be adopted.

**7.3 – "REASONABLE ROYALTY – RELEVANT FACTORS" (DISPUTED)**

**THE FOUNDATION'S PROPOSED INSTRUCTION**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased

the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Authority:  Adapted from Model Patent Jury Instructions § B.4 4.6, Federal Circuit Bar Association (June 2013) (and sources cited therein).

**a. The Cochlear Defendant's Objection:**

     **1. Basis for Objection**

     In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants object to the instruction proposed by AMF as it fails to comply with this Court's directive.

     Plaintiffs proffered instruction finds no support in O'Malley as it is unnecessary and overly burdensome to provide all of the Georgia Pacific factors to the jury.  The lack of support for this ploy is why plaintiffs had to resort to sources other than those directed by the Court.  The other instructions are adequate and this instruction should be rejected.  The Cochlear Defendants further object to this proposed instruction on the basis that it is out of sync with the content and tone of the other instructions found in the O'Malley, et al. Instructions the Court ordered be used.

The Cochlear Defendants do not submit an alternative proposed instruction as none is needed.

**b. The Foundation's Response**

This instruction reflects the factors relevant to determining a reasonable royalty rate, as described in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1119-1120 (S.D. N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971).  The factors in Georgia-Pacific have been endorsed repeatedly by the Federal Circuit as bearing on the amount of a reasonable royalty.  See, e.g., Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1337 (Fed. Cir. Jun. 13, 2013) ("To aid them in assessing the right to and appropriate measure of damages, we instruct the jury to consider a broad range of factors."); Uniloc USDA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the Georgia-Pacific factors to frame the reasonable royalty inquiry.  Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue."); Wordtech Sys., Inc. v. Integrated Network Sol'ns, Inc., 609 F.3d 1308, 1319 (Fed. Cir. 2010).

Cochlear Defendants' Reply:

These issues are addressed better in the existing instructions, making this unnecessary and duplicative.  This instruction will overburden the jury and distract from their duties of determining damages based on the evidence.

## 7.3(a) –COMPARABLE LICENSES (DISPUTED)

## COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION

In determining a reasonable royalty based on the hypothetical negotiation, you are free to consider other licenses.  In considering other licenses as a comparison, you must rely only on licenses that are comparable to the license that is the subject of the hypothetical negotiation you are considering.  A comparable license is one that:

− Is negotiated under comparable circumstances

− Involves comparable technology

− Is of a comparable scope

− Contains comparable terms; and,

− Provides insight into the market value of the patents in suit.

The proponent of the position that a particular license is comparable to a license resulting  from the hypothetical negotiation bears the burden of establishing its comparability by a preponderance of the evidence.

*Authority:*

*Lucent Tech. v. Gateway, Inc.* ., 580 F. 3d 1301(Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 869 (Fed. Cir 2010).

**a. The Foundation's Objection:**

**1. Basis for Objection**

The Foundation takes the position that this instruction is not necessary to be given to the jury.  The royalties received by the patentee for the licensing of the patents in suit, proving or tending to prove an established royalty and rates paid by the licensee for use of other patents comparable to the patents-in-suit are only two of fifteen factors to be considered in a hypothetical negotiation under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970).

Moreover, this instruction misstates the law.  Under *Lucent* and *ResQNet*, a license should be "sufficiently" comparable, and both cases present factors that can be considered in determining the weight a license should be given in a damages determination.  580 F.3d at 1325-1332 (considering factors for whether licenses can support damages award); 594 F.3d 871-73 (considering licenses in royalty analysis and finding that license that arose out of litigation was the most relevant).  Further, this instruction would lead to confusion for the jury.  The Foundation proposes giving the instruction regarding the *Georgia-Pacific* factors to be considered in a hypothetical negotiation.  If the Cochlear Defendants' proposed instruction is given to the jury, the Foundation proposes the changes shown below:

**THE FOUNDATION'S ALTERNATIVE INSTRUCTION**

**7.3 Comparable Licenses**

In determining a reasonable royalty based on the hypothetical negotiation, you are free to consider other licenses.  In considering other licenses as a comparison, you should rely on licenses that are comparable to the license that is the subject of the hypothetical negotiation you are considering.  Factors to be considered in determining whether a license is comparable are:

    –   Whether the license was negotiated under similar circumstances

-230-

    &ndash;   Whether the license involves comparable technology

    &ndash;   Whether the license is of a comparable scope

    &ndash;   Whether the license contains comparable terms; and,

    &ndash;   Whether the license provides insight into the market value of the patents in suit.

The proponent of the position that a particular license is comparable to a license resulting  from the hypothetical negotiation bears the burden of establishing its comparability by a preponderance of the evidence.

-231-

**b. Cochlear's Response to the Foundation's Objection**

The importance of the jury understanding the factors applicable to the evaluation of licenses argued to be comparable is critical in this case.  Absent guidance, the jury will be forced to resort to a superficial analysis of the issues and weighing of the evidence.  This instruction properly states the law and should be given.

1      **7.4  "NON-INFRINGING ALTERNATIVES" (DISPUTED)**

2      **THE COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION**

3          In determining a reasonable royalty, you may consider whether the Cochlear

4  Defendants had any noninfringing alternatives, including commercially acceptable

5  noninfringing alternatives, to taking a license from the Foundation and whether that

6  would have affected the reasonable royalty the parties would have agreed upon.

7

8  *Authority:*

9  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:91 (6th ed. Aug. 2013) as

10  amended.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**a. The Foundation's Objection:**

**1. Basis for Objection**

The Foundation contends that it is not necessary to give this instruction, and that the Cochlear Defendants will not be able to adduce at trial any evidence of non-infringing alternatives.  The Cochlear Defendants have disclosed a damages expert, but their damages expert does not disclose any non-infringing alternatives. Moreover, this factor in licensing is covered in the *Georgia-Pacific* factors.

**b. Cochlear's Response to the Foundation's Objection**

As discussed above, the Plaintiffs' admit that there is an issue about whether non-infringing alternative exist since Plaintiffs intend to put to the jury the question of whether Advanced Bionics practices the patents in suit.  This instruction is directly from the O'Malley Instructions and is properly given here.

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1

## 7.5  SPECULATIVE DAMAGES

2        You may not include damages that are speculative, only possible, or that are

3   based on guesswork.

4

5   *Authority:*

6   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:96 (6th ed. Aug. 2013) as

7   amended.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**Foundation's Position**:  The Foundation contends that this instruction is redundant of language in instruction 7.1 – Damages Generally.

**Cochlear Defendants' Reply:**

This instruction is directly from the O'Malley Instructions and is properly given here to avoid any risk that the jury decides damages that are based on speculation.  It is not lengthy or misleading and will properly provide the jury with a clear boundary for making any necessary decisions.

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

1 | **7.6 "WILLFUL INFRINGEMENT" (DISPUTED)**

2 | **THE FOUNDATION'S PROPOSED INSTRUCTION**

3 | The Foundation argues that the Cochlear Defendants willfully infringed the

4 | `616 patent and the '691 patent.

5 | To prove willful infringement, the Foundation must first persuade you by

6 | clear and convincing evidence that the Cochlear Defendants infringed a valid and

7 | enforceable claim of the Foundation's patent

8 | In addition, to prove willful infringement, the Foundation must persuade you

9 | that it is highly probable that the Cochlear Defendants acted with reckless disregard

10 | of the infringed patent claims.

11 | To demonstrate such "reckless disregard," the Foundation must satisfy a two-

12 | part test.  The first part of the test is objective.  The Foundation must persuade you

13 | that the Cochlear Defendants acted despite an objectively high likelihood that its

14 | actions constituted infringement of a valid and enforceable patent.  The state of

15 | mind of the Cochlear Defendants is not relevant to this inquiry.  Rather, the only

16 | appropriate inquiry is whether the defenses put forth by the Cochlear Defendants fail

17 | to raise any substantial question with regard to infringement, validity or

18 | enforceability.  Only if you conclude that the defenses fail to raise any substantial

19 | question with regard to infringement, validity or enforceability, do you need to

20 | consider the second part of the test.

21 | The second part of the test does depend on the state of mind of the Cochlear

22 | Defendants.  The Foundation must persuade you that the Cochlear Defendants

23 | actually knew, or it was so obvious that the Cochlear Defendants should have

24 | known, that their actions constituted infringement of a valid and enforceable patent.

25 | In deciding whether the Cochlear Defendants acted with reckless disregard

26 | for the Foundation's patents, you should consider all of the facts surrounding the

27 | alleged infringement including, but not limited to, the following factors.

28 |

-238-

1    Factors that may be considered as evidence that the Cochlear Defendants

2 were not willful include:

3    (1)    Whether the Cochlear Defendants acted in a manner consistent with the

4 standards of commerce for the industry;

5    Factors that may be considered as evidence that the Cochlear Defendants was

6 willful include:

7    (1)    Whether the Cochlear Defendants intentionally copied a product of the

8 Foundation that was covered by the patent.

9    (2)  the failure of the Cochlear Defendants to offer any opinion or other

10 advice of counsel to support a claim that they believed that they did not infringe, or

11 that the asserted patents were invalid.

12    Any evidence of willful infringement you consider, and any determination

13 you make concerning willful infringement should be put out of your mind

14 completely in the award of damages. I will address the issue later with the parties.

15

16 ***Authority:***

17    *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013) and

18 *Model Patent Jury Instructions for the Northern District of California (Nov. 3,*

19 *2011), Instr. 3-10,* as amended by *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-

20 37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011)

21 (the objective test is a question of law, and if the defenses are reasonable the

22 question of willfulness cannot be sent to the jury); *Uniloc v. Microsoft Corp.*, 632

23 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed.

24 Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL

25 6116129, *8-9 (N.D. Cal. Nov. 20, 2013).

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

## a. The Cochlear Defendants' Objection:

### 1. Basis for Objection

As discussed in the Cochlear Defendants' Memorandum of Fact and Law (hereafter "Memo"), the issue of willful infringement of the `616 patent can only go to the jury after the Foundation establishes that the defenses of the Cochlear Defendants are not objectively reasonable. *See* Memo at pp. 21-22 and 58-59. *See also DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); and, *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011) (the objective test is a question of law, and if the defenses are reasonable the question of willfulness cannot be sent to the jury).  Thus, the Cochlear Defendants object to introducing the issue of willful infringement to the jury as to any patent prior to the Foundation's meeting this threshold issue. *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013).

As was additionally discussed in the Memo at pp. 57-58, a party is not permitted to seek willful infringement against an alleged infringer whose first notice of the patent was with the Complaint in the action absent seeking a preliminary injunction. *In re Seagate Tech*. 497 F.3d 1360  (Fed. Cir. 2007).  No such preliminary injunction was sought here so there can be no willful infringement of the `691 patent under any circumstances.

Thus, the Cochlear Defendants do not believe any instruction is proper here. In the event the Court determines that it should instruct the jury on this issue, subject to and without waiving its objections, the Cochlear Defendants submit herewith an alternative proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.

### 2. Propounded Alternative Instruction

The Cochlear Defendants do not believe any instruction is proper here.   In the event the Court determines that it should instruct the jury on this issue,

-240-

1    subject to and without waiving its objections, The Cochlear Defendants

2    submit the following:

3    ### THE COCHLEAR DEFENDANTS' ALTERNATIVE INSTRUCTION

4    ### 7.6  WILLFUL INFRINGEMENT

5    The Plaintiffs argue that the Cochlear Defendants willfully infringed the `616

6    patent in suit.

7    To prove willful infringement, the Plaintiffs must first persuade you by clear

8    and convincing evidence that the Cochlear Defendants infringed a valid and

9    enforceable patent claim.  In addition, to prove willful infringement, the plaintiffs

10   must persuade you that it is highly probable that the Cochlear Defendants acted with

11   reckless disregard of the infringed patent claims.

12   To demonstrate such "reckless disregard," Plaintiffs must satisfy a two-part

13   test.  The first part of the test is objective.  The Plaintiffs must persuade you that the

14   Cochlear Defendants acted despite an objectively high likelihood that its actions

15   constituted infringement of a valid and enforceable patent.  The state of mind of the

16   Cochlear Defendants is not relevant to this inquiry.  Rather, the only appropriate

17   inquiry is whether the defenses put forth by the Cochlear Defendants fail to raise

18   any substantial question with regard to infringement, validity or enforceability.

19   Only if you conclude that the defenses fail to raise any substantial question with

20   regard to infringement, validity or enforceability, do you need to consider the

21   second part of the test.

22   The second part of the test does depend on the state of mind of the Cochlear

23   Defendants.  The Plaintiff must persuade you that the Cochlear Defendants actually

24   knew, or it was so obvious that the Cochlear Defendants should have known, that

25   their actions constituted infringement of a valid and enforceable patent.

26

27

28

-241-

In deciding whether the Cochlear Defendants acted with reckless disregard for AMF's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

Factors that may be considered as evidence that the Cochlear Defendants were not willful include:

(1) Whether the Cochlear Defendants acted in a manner consistent with the standards of commerce for the industry;

(2) Although there is no obligation to obtain an opinion of counsel whether the Cochlear Defendants relied on a legal opinion that was well-supported and believable and that advised one or more of the Cochlear Defendants (1) that the accused products did not infringe AMF's patent or (2) that the patent was invalid or unenforceable; and/or

(3) Whether the Cochlear Defendants had a good faith belief that the patents were not infringed and/or that they were practicing the prior art as discussed in instruction no. 4.7.

Factors that may be considered as evidence that the Cochlear Defendants was willful include:

(1) Whether the Cochlear Defendants intentionally copied a product of the Plaintiffs that was covered by the patent.

Any evidence of willful infringement you consider, and any determination you make concerning willful infringement should be put out of your mind completely in the award of damages. I will address the issue later with the parties.]

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013) and *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3-10,* as amended by *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir.

-242-

1  2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011) (the objective

2  test is a question of law, and if the defenses are reasonable the question of

3  willfulness cannot be sent to the jury); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292,

4  1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007);

5  and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9

6  (N.D. Cal. Nov. 20, 2013).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS UPDATED
BY THE COCHLEAR DEFENDANTS

**b. The Foundation's Response**

The parties have entered into a stipulation that the Cochlear Defendants are not relying on an opinion of counsel with respect to willfulness, so the Foundation should be permitted to refer to the Cochlear Defendants' lack of reliance on an opinion of counsel.  Numeral (3) does not appear in either the Northern District pattern instructions, or the O'Malley pattern instructions, nor do the authorities Defendants cite support adding defenses of "good faith belief that the patents were not infringed," or that Defendants were practicing the prior art to the second prong of the willfulness inquiry.  If anything, Defendants' defenses to infringement are relevant to the first, objective prong of the test, not to the second.  See Spine Solutions, Inc. v. Medtronic Sofamor Danek, USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010).  Even if it were relevant, the Foundation believes that because the Cochlear Defendants asserted attorney-client privilege and attorney work-product immunity when the Foundation pursued discovery into its state of mind, the Cochlear Defendants should not be permitted to put on such evidence, as described in Plaintiff's Joint Motion in Limine No. 4.

**Cochlear Defendants' Reply:**

The Plaintiffs' instruction improperly addresses the advice of counsel issue so as to create an inference that the lack of advice is a negative factor. It also does not clearly articulate the test for willful infringement and invites jury error.

What the Courts require is that the lack of advice is a factor just like any other factor.  If an instruction is to be given, which Defendants dispute, the Court should use the Defendants instruction as it properly presents the issues the jury must decide.

## 7.7 "PUNITIVE DAMAGES" (DISPUTED)

The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to exclude willfulness (for the reasons discussed above on the willfulness instruction) and only address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving its objections, the Cochlear Defendants also submit a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

## THE COCHLEAR DEFENDANTS' PROPOSED INSTRUCTION

You must not award the Foundation more than the amount of damages adequate to compensate for the Cochlear Defendants' infringement.  You must not include any additional amount for the purpose of punishing the Cochlear Defendants or setting an example.

In addition, you should not include any amount in your damages award for interest, attorney fees, or other expenses.

*Authority*:

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:95 (6th ed. Aug. 2013) as amended.

## THE COCHLEAR DEFENDANTS' ALTERNATIVE BROAD INSTRUCTION

### 7.7  PUNITIVE DAMAGES

You must not award the Foundation more than the amount of damages adequate to compensate for the Cochlear Defendants' infringement.  You must not include any additional amount for the purpose of punishing the Cochlear Defendants or setting an example.

In determining damages, you must not consider the Foundation's claims of willfulness, or take into account any evidence relating to those claims.  The consideration of willfulness, if any, is entirely separate from the question of any damages you are asked to determine.

You should not increase damages because you find willfulness, or decrease damages because you do not find willfulness.  In addition, you should not include any amount in your damages award for interest, attorney fees, or other expenses.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:95 (6th ed. Aug. 2013) as amended.

**Foundation's Response:**

This jury instruction is in part redundant of Defendants' Proposed Jury Instruction Section 7.1.  If this instruction is given, the Foundation would give the full instruction, including the portions bracketed by Defendants ("In fixing the amount of your verdict you may not include in or add to an otherwise just award any sum for the purpose of punishing the Cochlear Defendants or to set an example.").

***Cochlear Defendants' Reply:***

This instruction is directly from the O'Malley Instructions and is properly given here to avoid any risk that the jury decides damages that are punitive.  It is not lengthy or misleading and will properly provide the jury with a clear boundary for making any necessary decisions.

Dated:  December 5, 2013

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By    /s/ Scott R. Miller

SCOTT R. MILLER
Defendants and Counterclaimants
COCHLEAR LIMITED and COCHLEAR AMERICAS

-247-