1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10   ALFRED E. MANN FOUNDATION FOR    )    Case No. CV 07-8108 FMO (SHx)
     SCIENTIFIC RESEARCH,             )

11                                    )
                     Plaintiff,       )

12                                    )    **ORDER Re:  MOTIONS IN LIMINE**
                     v.               )

13                                    )
     COCHLEAR CORPORATION, et al.,    )

14                                    )
                     Defendants.      )

15   _____)

16          Having reviewed and considered all the briefing filed with respect to the parties' motions

17   in limine, and having considered oral arguments of the parties at the pretrial conference on

18   December 19, 2013, the court orders as follows.

19                            **INTRODUCTION**[1]

20          On December 13, 2007, plaintiff Alfred E. Mann Foundation for Scientific Research ("AMF"

21   or "plaintiff") initiated this patent infringement suit against defendants Cochlear Corporation and

22   Cochlear, Ltd. (collectively, "Cochlear" or "defendants").  On March 3, 2009, Cochlear filed a

23   motion to dismiss for lack of standing.  On June 19, 2009, the court entered judgment dismissing

24   AMF's Complaint for lack of standing.  AMF appealed and the Federal Circuit reversed the

25   decision of the district court.  (See Mandate of Federal Circuit Re: Notice of Appeal to Federal

26

27   _____

28          [1] The parties are familiar with the factual and procedural background of the case.  The court
     repeats the facts here and throughout only as necessary.

1   Circuit of Appeals, filed June 24, 2010).[2]  On September 30, 2010, AMF filed its First Amended

2   Complaint ("FAC"), asserting several patents.  Cochlear asserted affirmative defenses as well as

3   counterclaims against AMF for declaratory judgment of non-infringement, invalidity, and

4   unenforceability.  (See Cochlear's Answer and Counterclaims, filed October 12, 2010).

5        AMF presently asserts two patents, U.S. Patent No. 5,609,616, entitled "Physician's Testing

6   System and Method for Testing Implantable Cochlear Stimulator" ("the '616 patent"), and U.S.

7   Patent No. 5,938,691, entitled "Multichannel Implantable Cochlear Stimulator" ("the '691 patent"),

8   (collectively, "the patents-in-suit").  (See [Proposed] Final Pretrial Conference Order (Document

9   No. 336), lodged December 3, 2013, at 4).

10       AMF filed the following five motions in limine:  (1) Plaintiff's Motion in Limine No. 1 to

11  Exclude the McDermott Thesis as Admissible Prior Art ("PMIL 1"); (2) Plaintiff's Motion in Limine

12  No. 2 to Exclude Evidence of Equitable Defenses Against Enforceability of the Patents, Including

13  Inequitable Conduct, Laches or Estoppel ("PMIL 2"); (3) Plaintiff's Motion in Limine No. 3 to

14  Exclude All Testimony and Evidence Originating or Otherwise Derived from Defendants' "Patent

15  Law" Expert ("PMIL 3"); (4) Plaintiff's Motion in Limine No. 4 to Exclude Evidence Withheld on the

16  Basis of Privilege by Defendants During Discovery ("PMIL 4"); and (5) Plaintiff's Motion in Limine

17  No. 5 to Exclude in Part Testimony of Defendants' Damages Expert, Russell Parr ("PMIL 5").

18  AMF's motions in limine were accompanied by the Omnibus Declaration of Michael J. Lyons

19  ("Lyons Decl.").

20       Cochlear filed the following four motions in limine:  (1) Defendants' Motion in Limine No.

21  1 to Exclude Reference to Plaintiffs' Charitable and/or Humanitarian Activities ("DMIL 1"); (2)

22  Defendants' Motion in Limine No. 2 to Exclude the Testimony of Cate Elsten under FRE 702 and

23  Daubert ("DMIL 2"); (3) Defendants' Motion in Limine No. 3 to Exclude Pre-Notice Damages

24  Evidence ("DMIL 3"); and (4) Defendants' Motion in Limine No. 4 to Exclude Testimony of Nine

25

26       [2] On August 26, 2010, AMF filed a motion to join Advanced Bionics, LLC ("Advanced Bionics").

27  Cochlear filed a notice of non-opposition, and AMF's motion was granted. On December 3, 2013,
    the parties lodged a [Proposed] Final Pretrial Conference Order, formally realigning Advanced

28  Bionics as a plaintiff (collectively, "plaintiffs").

1  Late Identified Witnesses ("DMIL 4").  Cochlear's motions in limine were accompanied by the

2  Omnibus Declaration of Scott R. Miller ("Miller Decl.").

3  The trial in this matter is set to begin on January 13, 2014.  Because the parties require a

4  ruling on their motions on an expedited basis, the court will keep its analysis brief.

5  **LEGAL STANDARDS**

6  I.  MOTIONS IN LIMINE.

7  Motions in limine are procedural devices to obtain an early and preliminary ruling on the

8  admissibility of evidence.  See also Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1218

9  (Fed. Cir. 2006) ("Evidentiary rulings by the district court are reviewed under regional circuit law.").

10  Although the Federal Rules of Evidence ("FRE" or "Rule") do not explicitly authorize motions in

11  limine, the Supreme Court has noted that trial judges have developed the practice pursuant to their

12  authority to manage trials.  See Luce v. United States, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463

13  n. 4 (1984).  Trial courts have broad discretion when ruling on motions in limine.  See Jenkins v.

14  Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not

15  be used to resolve factual disputes or weigh evidence.  See C & E Servs., Inc. v. Ashland Inc., 539

16  F.Supp.2d 316, 323 (D.D.C. 2008).

17  To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on

18  all potential grounds."  Ind. Ins. Co. v. Gen. Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).

19  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that

20  questions of foundation, relevancy and potential prejudice may be resolved in proper context."

21  Hawthorne Partners v. AT & T Tech., Inc., 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).  This is

22  because although rulings on motions in limine may save "time, cost, effort and preparation, a court

23  is almost always better situated during the actual trial to assess the value and utility of evidence."

24  Wilkins v. Kmart Corp., 487 F.Supp.2d 1216, 1218 (D. Kan. 2007).

25  Rulings on motions in limine "are not binding on the trial judge [who] may always change

26  his mind during the course of a trial."  Ohler v. United States, 529 U.S. 753, 758 n. 3, 120 S.Ct.

27  1851, 1854 n. 3 (2000).  "Denial of a motion in limine does not necessarily mean that all evidence

28  contemplated by the motion will be admitted to trial.  Denial merely means that without the context

1   of trial, the court is unable to determine whether the evidence in question should be excluded."

2   Ind. Ins. Co., 326 F.Supp.2d at 846.

3   II.   ADMISSIBILITY OF EXPERT TESTIMONY.

4       "Patent cases, like all other cases, are governed by Rule 702." Sundance, Inc. v. Demonte

5   Fabricating Ltd., 550 F.3d 1356, 1360 (Fed. Cir. 2008). "Federal Rule of Evidence 702 allows

6   admission of 'scientific, technical, or other specialized knowledge' by a qualified expert if it will

7   'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Mukhtar v. Cal.

8   State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002), amended on other grounds, 319 F.3d

9   1073 (9th Cir. 2003). "The requirement that the opinion testimony 'assist the trier of fact' 'goes

10  primarily to relevance[.]'" Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (quoting Daubert

11  v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591, 113 S.Ct. 2786, 2795 (1993)). "Expert testimony

12  is admissible pursuant to Rule 702 if it is both relevant and reliable." Mukhtar, 299 F.3d at 1063.

13      "Daubert provided a non-exhaustive list of factors for determining whether expert testimony

14  is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or

15  technique can be (and has been) tested, (2) whether the theory or technique has been subjected

16  to peer review and publication, (3) whether there is a known or potential error rate, and (4)

17  whether the theory or technique is generally accepted in the relevant scientific community."

18  Mukhtar, 299 F.3d at 1064. However, "the inquiry is a flexible one," and "[s]haky but admissible

19  evidence is to be attacked by cross examination, contrary evidence, and attention to the burden

20  of proof, not exclusion." Primiano, 598 F.3d at 564.

21      In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999), the Supreme

22  Court held that "the Daubert frame-work applies not only to scientific testimony but to all expert

23  testimony." Primiano, 598 F.3d at 564 (italics in original). "It emphasize[d], though, that the 'test

24  of reliability is "flexible" and Daubert's list of specific factors neither necessarily nor exclusively

25  applies to all experts or in every case.' The 'list of factors was meant to be helpful, not definitive,'

26  and the trial court has discretion to decide how to test an expert's reliability as well as whether the

27  testimony is reliable, based on 'the particular circumstances of the particular case.'" Id. (quoting

28  Kumho Tire, 526 U.S. at 141, 150-51, 119 S.Ct. at 1171, 1175).

"The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.  Under *Daubert*, the district judge is a gatekeeper, not a fact finder.  When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony."  Primiano, 598 F.3d at 564-65 (internal quotation marks omitted).  If the court determines that it has an adequate record before it to make its ruling, it is "not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence."  In re Hanford Nuclear Reservation Litig., 292 F.3d 1124, 1138 (9th Cir. 2002).

## DISCUSSION

I.    PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE THE MCDERMOTT THESIS AS ADMISSIBLE PRIOR ART.

AMF seeks to exclude a document entitled "An Advanced Cochlear Implant Hearing Prosthesis for Profound to Total Deafness," by Hugh J. McDermott (the "McDermott Thesis") on the basis that the McDermott Thesis is not admissible as a prior art "printed publication" within the meaning of 35 U.S.C. § 102.  (PMIL 1 at 1).  AMF asserts that Cochlear's Exhibit B to the Declaration of Ailsa Marian Dott ("Dott"), (hereinafter referred to as "Dott Decl." and Exhibit B attached thereto as "Catalogue Screenshot"), is not admissible as a self-authenticating business record under Federal Rule of Evidence 902(12), and therefore, Cochlear cannot establish by clear and convincing evidence that the McDermott Thesis was publicly available before the critical date of the patents-in-suit.  (Id.; Notice of PMIL 1 at 1).  AMF argues that to admit the McDermott Thesis would be highly prejudicial.  (See PMIL 1 at 1).

Public accessibility is the touchstone in determining whether a reference constitutes a "printed publication" under 35 U.S.C. § 102.  See In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986).  "The § 102 publication bar is a legal determination based on underlying fact issues, and therefore must be approached on a case-by-case basis.  The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation."  Id. (internal citations omitted); see In re

1   Klopfenstein, 380 F.3d 1345, 1348 n. 2 (Fed. Cir. 2004) ("[T]he question to be resolved in a

2   'printed publication' inquiry is the extent of the reference's 'accessibility to at least the pertinent

3   part of the public, of a perceptible description of the invention, in whatever form it may have been

4   recorded.'").  The cataloging and shelving of a doctoral thesis in a university library that is readily

5   accessible to those interested in the art by the critical date satisfies the standard.  See In re Hall,

6   781 F.2d at 899-900; Ajinomoto Co. v. Archer-Daniels-Midland Co.,1998 WL 151411, *38 (D. Del.

7   1998) ("The key to determining whether the Tribe thesis was publicly available is whether the

8   thesis was indexed, cataloged, and shelved on the critical date.").

9         Here, although AMF does not specifically address which patent-in-suit PMIL 1 concerns,

10   (see, generally, Notice of PMIL 1 & PMIL 1 at 1-7), Cochlear identifies the '616 patent and the

11   parties appear to agree that the critical date at issue is August 29, 1990.  (See PMIL 1 at 1 (AMF),

12   8 (Cochlear)).  Cochlear relies on the Dott Decl. and accompanying exhibits to show that the

13   McDermott Thesis was publicly available at least as early as January 25, 1990, in the Ballieu

14   Library ("the Library") of the University of Melbourne.  (See id. at 8-10).  AMF asserts – and

15   Cochlear does not contest – that Dott started working at the Library after the McDermott Thesis

16   was allegedly filed.  (See id. at 3-4 (AMF), 13-14 (Cochlear)).

17         The Dott Decl. establishes that (1) Dott is employed by the Library in a senior cataloguing

18   position, (see Dott Decl. at ¶¶ 1-2); (2) she has experience with the procedures used by the

19   Library to catalogue its collections, (id. at ¶ 3); (3) it is the regular practice of the Library to

20   catalogue by author and subject matter and shelve theses shortly after completion in the ordinary

21   course of business, (id. at ¶ 6); (4) the Library regularly creates catalogue records at the time the

22   record is entered onto the University of Melbourne database, (id. at ¶ 8); and (5) in the ordinary

23   course of business, the Library regularly uploads those catalogue records after the items have

24   been catalogued and shelved at the Library.[3]  (See id. at ¶¶ 8- 9).  The Catalogue Screenshot,

25

26         [3] AMF argues that Dott was not deposed.  (See PMIL 1 at 3).  AMF cites no authority and the

27   court is not able to discern how AMF's argument is dispositive.  Moreover, given that the Dott Decl.
     appears to have been available to AMF since 2009, the court is not clear why AMF did not depose

28   or seek to depose Dott.

1  which is attached to the Dott Decl., is described as "a document printed from Libraries Australia
2  showing the catalogue entry for the McDermott Thesis" and which shows field "005" corresponding
3  with the entry "19900125000000.0." (Dott Decl. at ¶ 10 & Exh. B). The Dott Decl. also attaches
4  the definition for field "005", (Dott Decl. at Exh. C), which the Dott Decl. describes as showing the
5  date on which the catalogue entry was made for the McDermott Thesis as "25 January 1990" and
6  which indicates that the date has the format of "yyyymmdd" with time having the format of
7  "hhmmss.f" of the latest record transaction as generated by the system. (See Dott Decl. at ¶¶ 11-
8  12 & Exh. C).

9      The evidence presented in the Dott Decl. is analogous to the evidence in In re Hall, which
10 was sufficient to satisfy the public availability standard. See 781 F.2d at 899 (concluding that
11 "competent evidence of the general library practice may be relied upon to establish an
12 approximate time when a thesis became accessible"); In re NTP, Inc., 654 F.3d 1279, 1295-1296
13 (Fed. Cir. 2011) (same); see also OKI America, Inc. v. Advanced Micro Devices, Inc., 2006 WL
14 2711555, *4 (N.D. Cal. 2006) ("The 'custodian or other qualified person' needed for authentication
15 under Rule 902(11) 'is broadly interpreted to require only that the witness understand the
16 record-keeping system.'") (quoting United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990)).

17     In short, the court will deny PMIL 1. However, the court's denial does not mean the
18 McDermott Thesis and the Catalogue Screenshot are admitted into evidence – each must still be
19 moved into evidence, subject to objections, at trial. Moreover, Cochlear must still establish that
20 the McDermott Thesis qualifies as prior art under 35 U.S.C. § 102. See In re Hall, 781 F.2d at
21 899.

22 II.   PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF EQUITABLE
23      DEFENSES AGAINST ENFORCEABILITY OF THE PATENTS, INCLUDING
24      INEQUITABLE CONDUCT, LACHES OR ESTOPPEL.

25     AMF seeks to exclude from the purview of the jury all testimony, evidence, or argument in
26 support of Cochlear's inequitable conduct, laches, and estoppel defenses, on the grounds that
27 these are reserved exclusively for the court and likely to prejudice AMF. (PMIL 2 at 1). AMF
28 seeks bifurcation to divide the equitable and legal issues into a bench and jury trial. (Id. at 2, 6).

1    There is no dispute, (see PMIL 2 at 1-2 (AMF), 6 n. 1 & 13 (Cochlear)), that the defenses

2    of inequitable conduct, laches, and estoppel are equitable in nature and, therefore, must be

3    resolved by the court.   See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d

4    1315, 1318 (Fed. Cir. 2000) ("The defense of inequitable conduct is entirely equitable in nature,

5    and thus not an issue for a jury to decide."); A. C. Aukerman Co. v. R. L. Chaides Constr. Co., 960

6    F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) ("As equitable defenses, laches and equitable estoppel

7    are matters committed to the sound discretion of the trial judge and the trial judge's decision is

8    reviewed by this court under the abuse of discretion standard.").

9        A.    Inequitable Conduct.

10   "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars

11   enforcement of a patent."   Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285

12   (Fed. Cir. 2011) (en banc).  "To prove inequitable conduct, the challenger must show by clear and

13   convincing evidence that the patent applicant (1) misrepresented or omitted information material

14   to patentability, and (2) did so with specific intent to mislead or deceive the PTO."   In re

15   Rosuvastatin Calcium Patent Litig. v. Aurobindo Pharma Ltd., 703 F.3d 511, 519 (Fed. Cir. 2012).

16   Materiality and intent are separate and independent requirements.  See Therasense, 649 F.3d at

17   1290 ("A district court should not use a 'sliding scale,' where a weak showing of intent may be

18   found sufficient based on a strong showing of materiality, and vice versa.").

19   The specific intent to deceive prong requires the accused infringer to prove "by clear and

20   convincing evidence that [1] the applicant knew of the reference, [2] knew it was material, and [3]

21   made a deliberate decision to withhold it."   Therasense, 649 F.3d at 1290.  "[T]he materiality

22   required to establish inequitable conduct is but-for materiality."   Therasense, 649 F.3d at 1291;

23   see also 1st Media, LLC v. Elec. Arts, Inc., 694 F.3d 1367, 1374 (Fed. Cir. 2012)  ("Moreover, [a]

24   finding that the misrepresentation or omission amounts to gross negligence or negligence under

25   a 'should have known' standard does not satisfy this intent requirement.") (internal quotation marks

26   omitted) (alteration in original).  A non-disclosed reference is material "if the PTO would not have

27

28

1  allowed a claim had it been aware of the undisclosed prior art."[4] Therasense, 649 F.3d at 1291.

2  A non-disclosed reference that is cumulative of prior art properly before the patent examiner is not

3  material.  See id. at 1294; Fujitsu Ltd. v. Tellabs Operations, Inc., 2012 WL 3133548, *2 (N.D. Ill.

4  2012).

5       The Federal Circuit has approved of the use of an advisory jury verdict on the issue of

6  inequitable conduct at the trial court's discretion.[5]  See, e.g., Am. Calcar, Inc. v. Am. Honda Motor

7  Co., 651 F.3d 1318, 1332-36 (Fed. Cir. 2011) (discussing jury's advisory verdict on inequitable

8  conduct); Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1110 (Fed. Cir. 2003) ("Inequitable

9  conduct is equitable in nature and the trial court has the obligation to resolve the underlying facts

10  of materiality and intent.  A trial court has some discretion in choosing whether to submit special

11  interrogatories to the jury regarding the underlying facts.") (internal citation omitted); Hebert v.

12  Lisle Corp., 99 F.3d 1109, 1114 (Fed. Cir. 1996) ("There are a variety of ways in which the district

13  court may choose to handle the issue of inequitable conduct during a jury trial, as the Federal

14  Circuit has recognized.  Some courts have reserved the entire issue of inequitable conduct unto

15  themselves; some have submitted special interrogatories to the jury on the facts of materiality and

16  intent; and some have instructed the jury to find and weigh the facts of materiality and intent and

17  decide the ultimate question of inequitable conduct, as in the case at bar."); see also Duhn Oil

18  Tool, Inc. v. Cooper Cameron Corp., 818 F.Supp.2d 1193, 1228 (E.D. Cal. 2011) (allowing jury

19  to return advisory verdict on materiality and intent); Metso Minerals, Inc. v. Powerscreen Int'l

20  Distrib. Ltd., 833 F.Supp.2d 321, 325 & 331-32 (E.D.N.Y. 2011) (allowing jury to return advisory

21  _____

22       [4]  While the clear-and-convincing-evidence standard applies to the inequitable conduct
23  defense, the preponderance-of-the-evidence standard applies to whether the PTO would have
    issued the patent "but for" the failure to disclose.  See Therasense, 649 F.3d at 1291-92.

24       [5]  Such an advisory verdict is not binding on the court.  See Fed. R. Civ. P. 52(a) ("In an action
25  tried on the facts without a jury or with an advisory jury, the court must find the facts specially and
    state its conclusions of law separately. The findings and conclusions may be stated on the record
26  after the close of the evidence or may appear in an opinion or a memorandum of decision filed by
    the court."); Am. Calcar, 651 F.3d at 1333 ("As a preliminary matter we note that the advisory jury
27  verdict on inequitable conduct was not binding on the district court."); Heinze v. Butte & B. Consol.
    Mining Co., 126 F. 1, 27 (9th Cir. 1903) ("Where a court sitting in equity allows a jury trial, the
28  verdict is but advisory to the court, and in no sense binding.").

1  verdict on intent).  Here, the court will seek an advisory verdict as to both the intent to deceive and

2  materiality prongs of the inequitable conduct analysis.

3      In arguing for bifurcation, AMF asserts that putting inequitable conduct to the jury is

4  prejudicial and "wholly unrelated to any alleged judicial efficiency."  (PMIL 2 at 2).  The court

5  disagrees.  In deciding whether to bifurcate a trial, the court considers judicial resources required

6  for such bifurcation, including a coherent presentation of the facts to the jury and duplication of

7  evidence.  See, e.g., Fresenius Medical Care Holdings, Inc. v. Baxter Intern. Inc., 2006 WL

8  1646108, *3 (N.D. Cal. 2006) ("[T]he Court does not find that bifurcating the trial would conserve

9  judicial resources, as it would require the parties to present the same evidence and many of the

10 same witnesses to the bench at the conclusion of the trial."); Transclean Corp. v. Bridgewood

11 Services, Inc., 101 F.Supp.2d 788, 792 (D. Minn. 2000) ("Moreover, we have considerable

12 concern that a bifurcation of the inequitable conduct issue will artificially balkanize the evidence

13 in such a way as to impede a coherent presentation of the facts to the Jury, and result in a

14 considerable amount of duplicate testimony. The Jury will be introduced, by one or both parties,

15 to the patent application process, and we think it to be an inadvisable use of judicial resources to

16 segregate certain factual issues, which may require the recalling of witnesses, for a separate

17 evidentiary Hearing to the Court."); see also Calmar, Inc. v. Emson Research, 850 F.Supp. 861,

18 865 (C.D. Cal. 1994) ("Pursuant to Fed. R. Civ. P. 42(b), the court in furtherance of convenience

19 or to avoid prejudice or when separate trials will be conducive to expedition and economy may

20 order a separate trial of any separate issue.  The decision as to whether to bifurcate a trial rests

21 with the sound discretion of the trial court.  Motions to bifurcate are to be granted on a case by

22 case basis only when the separation will result in judicial economy and will not unduly prejudice

23 any party.  Factors to be considered when ruling on a [Fed. R. Civ. P.] 42(b) motion include

24 complexity of issues, factual proof, risk of jury confusion, difference between the separated issues,

25 the chance that separation will lead to economy in discovery and, the possibility that the first trial

26 may be dispositive of the case.") (internal quotation marks and citations omitted).

27      Here, Cochlear has shown that there is substantial overlap of evidence as to invalidity and

28 materiality.  (See PMIL 2 at 10-13).  Cochlear states that a 1989 article – specifically, Hugh

1    McDermott, An Advanced Multiple Channel Cochlear Implant, IEEE Transactions on Biomedical

2    Engineering, Vol. 36, No. 7 (July 1989)) (hereinafter "the McDermott article"), (see Lyons Decl.,

3    Ex. 16; Miller Decl., Ex. II) – is central to Cochlear's inequitable conduct defense.  (PMIL 2 at 10).

4    Cochlear asserts that the McDermott article anticipates claim 10 of the '616 patent and renders

5    all of the asserted patent claims obvious in combination with other prior art.  (Id. at 11).  The

6    parties do not dispute that questions germane to the invalidity defenses of anticipation and

7    obviousness go to the jury.  (See, generally, id. at 1-6 (AMF), 11 (Cochlear)); see also, e.g., IPXL

8    Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1380 (Fed. Cir. 2005) ("Anticipation is a

9    question of fact."); Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1303-04 (Fed. Cir.

10   2005) ("Obviousness is a question of law based on underlying facts.  The underlying factual

11   disputes were submitted to the jury.  The question thus becomes whether the jury verdict of

12   nonobviousness was supported by substantial evidence.").  Moreover, Cochlear points out that

13   AMF's patent prosecution attorney, Bryant Gold ("Gold"), claimed that he did not disclose the

14   McDermott article to the PTO because it was cumulative of other prior art of record, including the

15   McDermott patent.  (PMIL 2 at 11 (citing Miller Decl., Ex. JJ, Gold 30(b)(6) Tr. at 37:22-38:10)).

16   Thus, the parties will be presenting the teachings of the McDermott article to the jury in relation

17   to the asserted patent claims, both as to invalidity and materiality.  Under the circumstances, the

18   court is not persuaded that bifurcating the trial would conserve judicial resources, as it would

19   require the parties to present duplicative evidence to the bench at the conclusion of the jury trial.

20   See Fresenius, 2006 WL 1646108, *2-3 (declining to bifurcate inequitable conduct defense where

21   jury already determining validity of patents at issue).

22        Finally, AMF failed to show that it would be prejudiced if the court did not bifurcate.  (See,

23   generally, PMIL 2 at 2-4).[6]  AMF failed to address Cochlear's arguments regarding substantial

24   overlapping evidence on the issues of invalidity and materiality, (see, generally, id.), instead

25

26   _____

27        [6]  AMF's concern regarding prejudice appears to be focused on what Cochlear's patent
     attorney expert, Laurence H. Pretty ("Pretty"), may testify about.  (See PMIL 2 at 3-4 & 6 (AMF);
28   see also id. at 10 n. 2 & 12 (Cochlear)).  The court will separately address the parties' dispute
     concerning Pretty's testimony in its resolution of PMIL 3.  See infra at § III.

1  relying on a blanket assertion that anticipation or obviousness are separate analyses from

2  materiality.  (See id. at 4);  see, e.g., Fresenius, 2006 WL 1646108, at *2-3 (declining to bifurcate

3  where overlapping validity issues, evidence, and jury determinations).  Nor do the cases AMF

4  relies on mandate bifurcation under the circumstances here.  (See PMIL 2 at 2-4); Interactive

5  Health LLC v. King Kong USA, Inc., 2008 WL 8793640, *4 (C.D. Cal. 2008) (defendant offering

6  additional evidence not related to any other claims presented to the jury in support of its

7  inequitable conduct defense and therefore distinguishable); Liquid Dynamics Corp. v. Vaughan

8  Co., Inc., 2004 WL 2260626, *7 (N.D. Ill. 2004) (no discussion of overlapping evidence); Plumley

9  v. Mockett, 836 F.Supp.2d 1053, 1080-82 (C.D. Cal. 2010) (not resolving bifurcation issue and

10  instead denying summary judgment on defendants' inequitable conduct defense).  Further, any

11  risk of prejudice can be addressed through jury instructions and interrogatories presented to the

12  jury as part of the special verdict form.  See Transclean, 101 F.Supp.2d at 792 (limiting jury's fact-

13  finding by specific interrogatories and jury instructions, and concluding that risk that the jury's

14  findings on the merits of plaintiff's adjoining legal claims will be based upon evidence of inequitable

15  conduct seems inappreciable).

16       B.    Laches and Estoppel.

17       AMF also seeks to preclude the jury from hearing evidence relating to laches and equitable

18  estoppel.  (See PMIL 2 at 4).  Cochlear argues that the evidence is applicable to other jury issues,

19  including AMF's claims regarding willful infringement and inducement of infringement of the

20  patents-in-suit.  (See id. at 13-16).  Cochlear does not seek to put the issues of laches and

21  equitable estoppel to the jury.  (See id.).

22       "Two elements underlie the defense of laches: (a) the patentee's delay in bringing the suit

23  was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice

24  attributable to the delay."  A.C. Aukerman, 960 F.2d at 1028.  Three elements are required to

25  establish equitable estoppel:  "(a) The patentee, through misleading conduct, leads the alleged

26  infringer to reasonably infer that the patentee does not intend to enforce its patent against the

27  alleged infringer.  'Conduct' may include specific statements, action, inaction, or silence where

28  there was an obligation to speak. (b) The alleged infringer relies on that conduct. (c) Due to its

1  reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed

2  with his claim."  Id.

3      Cochlear outlines evidence establishing a pre-litigation timeline intended to show

4  Cochlear's "belief that they did not infringe valid patents."  (See PMIL 2 at 14).  Cochlear contends

5  that this same evidence, which Cochlear will rely on to show laches and equitable estoppel, will

6  be before the jury because it will be relevant to AMF's claims of willful and induced infringement.[7]

7  (Id.).  In other words, the evidence Cochlear intends to rely on in support of its laches and

8  equitable estoppel defenses appears to be the evidence Cochlear intends to rely on to shed light

9  on its own pre-litigation conduct and subjective intent in connection with rebutting AMF's claims

10  of willful infringement and inducement.  (Id. at 15).

11      The court is persuaded by Cochlear's argument, since the issues of willful infringement and

12  inducement may require inquiry into Cochlear's pre-litigation conduct and state of mind.[8]  See,

13  e.g., In re Seagate Tech. LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) ("[T]o establish

14  willful infringement, a patentee must show by clear and convincing evidence that the infringer

15  acted despite an objectively high likelihood that its actions constituted infringement of a valid

16  _____

17  [7]  Cochlear asserts that the evidence of laches and equitable estoppel "overlaps entirely" and
18  is the "same evidence" Cochlear intends to present to the jury to rebut AMF's claims of willful
    infringement and inducement.  (See PMIL 2 at 15).  Indeed, the court will hold Cochlear to it and
    will not permit Cochlear to present incremental evidence as to those issues.

19  [8]  Cochlear has not asked the court to decide as a matter of law the objectiveness prong of the
20  two-part willfulness test, which is a pre-requisite to an ultimate finding of willfulness, to keep the
    question of willfulness from going to the jury; nor has Cochlear filed a motion in limine relating to
21  willfulness.  (See, generally, Cross-Motions for Summary Judgment (AMF's at Document No. 251;
22  Cochlear's at Document No. 243); DMILs 1-4); see, e.g., Bard Peripheral Vascular, Inc. v. W.L.
    Gore and Associates, Inc., 682 F.3d 1003, 1006 (Fed. Cir. 2012) ("While the ultimate question of
23  willfulness based on an assessment of the second prong of Seagate may be a question of fact,
    Seagate also requires a threshold determination of objective recklessness.  That determination
24  entails an objective assessment of potential defenses based on the risk presented by the patent.
    Those defenses may include questions of infringement but also can be expected in almost every
25  case to entail questions of validity that are not necessarily dependent on the factual circumstances
26  of the particular party accused of infringement.").  In any event, if the evidence shows that AMF
    cannot support a claim for willful infringement, Cochlear may raise the issue pursuant to Federal
27  Rule of Civil Procedure 50.  See also HTC Corp. v. Tech. Props. Ltd., 2013 WL 5225043, *8 (N.D.
    Cal. 2013) ("But where factfinding is necessary, trial courts generally reserve willfulness until after
28  a full presentation of the evidence on the record to the jury.").

patent.  The state of mind of the accused infringer is not relevant to this objective inquiry.  If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.") (internal citation and parenthetical omitted); id. at 1374 (recognizing that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct"); Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1321 (Fed. Cir. 2013) ("The willfulness determination requires the fact finder to consider the state of mind of the infringer as well as the reasonableness of the defenses it presented."); see also Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011) (holding that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement); DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (Section III.B only en banc) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (internal quotation marks omitted).

Finally, AMF failed to make a showing of prejudice necessitating bifurcation as to the issues of laches and equitable estoppel.[9]  (See, generally, PMIL 2 at 4-5); see also Morse/Diesel v. Fidelity Deposit Co. of Maryland, 763 F.Supp. 28, 35 (S.D.N.Y. 1991) (stating that "[a] motion to sever and stay under Fed. R. Civ. P. 42(b) is addressed to the discretion of the court, and must be denied unless it appears that separate trials are necessary in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy") (internal quotation marks and citations omitted).  AMF failed to address Cochlear's argument concerning evidentiary overlap, (see, generally, PMIL 2 at 15), arguing instead that the issues of laches and

---

[9]  Further, the court is not persuaded by AMF's reliance on Illinois Tool Works, Inc. v. MOC Products Co., Inc., 2012 WL 8169898 (S.D. Cal. 2012).  (See PMIL 2 at 5-6).  In Illinois Tool, the court "exclude[d] evidence from the jury *that raises purely equitable considerations*."  2012 WL 8169898, at *1 (emphasis added).  Thus, Illinois Tool is distinguishable because, here, there appears to be overlapping evidence as to the issues of laches and equitable estoppel, and inducement and willful infringement.

1  equitable estoppel are "entirely separate issues" from whether Cochlear had subjective intent to

2  infringe the patents-in-suit.  (See id. at 5).

3       C.    Conclusion.

4       In sum, the court will deny PMIL 2.  See Rolscreen Co. v. Pella Products of St. Louis, Inc.,

5  64 F.3d 1202, 1209 (8th Cir. 1995) ("District judges should be given considerable latitude in

6  deciding the most efficient and effective method of disposing of the issues in a case, so long as

7  a party is not prejudiced."); York v. American Tel. & Tel. Co., 95 F.3d 948, 957 (10th Cir. 1996)

8  ("Nor did the court abuse its wide discretion in denying York's motion to bifurcate the trial.  Such

9  decisions must be made with regard to judicial efficiency, judicial resources, and the likelihood that

10  a single proceeding will unduly prejudice either party or confuse the jury.").

11  III.  PLAINTIFF'S  MOTION  IN  LIMINE  NO.  3  TO  EXCLUDE  ALL  TESTIMONY  AND

12       EVIDENCE ORIGINATING OR OTHERWISE DERIVED FROM DEFENDANTS' "PATENT

13       LAW" EXPERT.

14       AMF seeks to exclude all testimony and evidence originating or otherwise derived from

15  Cochlear's patent attorney expert, Pretty, on the grounds that his opinions: (I) are the type of

16  conclusory, legal opinions courts routinely exclude as impermissible; and (ii) are unreliable

17  opinions of a witness who is not competent to testify.[10]  (PMIL 3 at 1).  AMF's instant motion

18  concerns whether Pretty may provide opinions in support of Cochlear's inequitable conduct

19  allegations as to the '616 patent.  (See PMIL 3 at 1).  Cochlear insists that Pretty will only testify

20  as to: (1) the prosecution history of the patents-in-suit; and (2) the understanding of "a skilled

21  patent attorney prosecuting the patents."[11]  (Id. at 11).  Thus, the parties appear to disagree as

22

23       [10]  It is unclear what AMF means by "unreliable opinions of a witness who is not competent to
24  testify."  (PMIL 3 at 1).  AMF makes no showing that Pretty fails to qualify as a patent attorney
    expert under FRE 702.  (See, generally, id. at 1-10); see Sundance, 550 F.3d at 1361 n. 2 ("We
25  have no reason to doubt that Mr. Bliss--an experienced patent attorney--is qualified to testify as
    to patent office procedure generally.").

26
27       [11]  Cochlear's descriptions of Pretty's expected testimony and opinions are unclear.  Cochlear's
    Witness List states that "Mr. Pretty will testify about the events in the prosecution history of the
28  patents-in-suit, including the filing of the original application, the filing of the continuation-in-part
    application and the prior art considered by the Patent Office. Mr. Pretty may testify about what a

to the scope and content of Pretty's expected testimony.  (Compare id. at 1 (AMF) with 11 (Cochlear)).

In any event, a district court may consider expert testimony of a patent attorney if relevant. See Reiffin v. Microsoft Corp., 270 F.Supp.2d 1132, 1145 (N.D. Cal. 2003) (citing Endress + Hauser, Inc. v Hawk Measurement Sys. Pty. Ltd, 122 F.3d 1040, 1042 (Fed. Cir. 1997)); see also Szoka v. Woodle, 2004 WL 5512964, *2 (N.D. Cal. 2004) (When determining whether a patent attorney's opinion is proper expert testimony, courts examine whether the expert offers a legal conclusion or whether the opinion involves "the application of a legal framework to the factual record.").  Therefore, the court will not categorically exclude Pretty's expert testimony.  However, Pretty's testimony will be closely monitored to ensure that no improper opinions are put forward.[12] Based on the concerns raised by the parties' briefing, the court will set the following guidelines on Pretty's testimony.

First, the court will permit Pretty to testify on proceedings before the United States Patent and Trademark Office ("PTO"), including the prosecution of the patents-in-suit.  "Given the complexity of patent litigation, courts have regularly permitted expert testimony by patent attorneys on a range of issues, including proceedings before the Patent and Trademark Office (PTO)." Szoka, 2004 WL 5512964, at *3; see also Bausch & Lomb, Inc. v. Alcon Labs., Inc., 79 F.Supp.2d

_____

patent attorney would have known during the prosecution of U.S. Patent No. 5,609,616." (Cochlear's Witness List (Document No. 309) at 5-6).  Cochlear's statement that "Mr. Pretty may testify about what a patent attorney would have known during the prosecution of U.S. Patent No. 5,609,616" is vague.

[12] For example, the court is concerned that Pretty "may be asked to state opinions relevant to a breach of the duty of disclosure by the applicants for the '616 patent and their patent attorney in withholding knowledge of material prior art from the patent examine," (PMIL 3 at 2-3 (citing Lyons Decl., Ex. 13 (Pretty Substitute Rpt.) at ¶ 23)), or may testify that the attorney (Gold) who prosecuted the '616 patent "would have known" that the McDermott article was "material." (See PMIL 3 at 7 (citing Lyons Decl., Ex. 13 (Pretty Substitute Rpt.) at ¶¶ 25, 78)); cf. Aspex Eyewear, Inc. v. Miracle Optics, Inc., 2003 WL 24854204, *12 (C.D. Cal. 2003) ("Just as an attorney who specializes in medical malpractice would not be a proper expert witness as to whether a doctor performed a surgery correctly; or an attorney specializing in construction defect litigation would not be a proper witness regarding whether a building was soundly built; the court finds that an attorney who specializes in patent law is not the proper witness to testify as to what one skilled in the art would reasonably understand.").

1  252, 256 (W.D.N.Y. 2000) ("Obviously PTO procedures are foreign to the average person, and

2  it may be helpful to the jury to hear someone experienced in those procedures to explain how they

3  operate in terms that a layperson can understand."). Here, too, Pretty may explain the prosecution

4  of the patents-in-suit but only as to background information and the PTO's procedures, assuming

5  these were properly disclosed in Pretty's expert report. See Szoka, 2004 WL 5512964, at *3

6  (finding that the testifying expert's experience with patent prosecution procedures qualified him

7  to "assist the trier of fact to understand the evidence or to determine a fact in issue" under FRE

8  702, and permitting the expert to testify only as to background information or information

9  describing PTO procedure); Bausch & Lomb, Inc., 79 F.Supp.2d at 254-55 (allowing testimony

10  directed to general patent application process procedures).

11          Second, the court will not permit Pretty to testify or opine on matters requiring technical

12  expertise. The parties agree that Pretty is not a technical expert. (See PMIL 4 at 1, 5-7, 9 (AMF),

13  15-16 (Cochlear)). Cochlear repeatedly indicates that Pretty will not testify or opine on matters

14  requiring technical expertise. (Id. at 15 (stating that "Mr. Pretty's testimony does not opine on the

15  technical details of the operation of the accused systems or disclosed invention"), 16 (stating that

16  "Mr. Pretty's opinions do not fall within such technical expertise, and is centered on his personal

17  expertise in the area of patent law")); see also, e.g., Sundance, 550 F.3d at 1363, 1365

18  (concluding that defendant failed to demonstrate "any possible relevancy or reliability" of the

19  expert's testimony at issue "as to technical matters in light of his lack of relevant technical

20  expertise" and that the expert lacked "the necessary expertise to be of assistance to the court or

21  the jury on the technical aspects of this case"); Aspex Eyewear, 2003 WL 24854204, at *11 ("The

22  court agrees with Plaintiffs that McGuire, although she might constitute a patent expert, is not one

23  skilled in the art of eyeglass design. Patent attorneys are experts on the legal aspects of patents,

24  not the design or scientific aspects."); Applied Materials, Inc. v. Advanced Semiconductor

25  Materials America, Inc., 1995 WL 261407, *2 (N.D. Cal. 1995) ("Both parties agree Nusbaum

26  cannot testify as to what the prior art teaches, because he is not a technical expert. The motion

27  [in limine regarding testimony of defendant's legal expert], therefore, as to this area is granted.").

28  Accordingly, Pretty will not be permitted to testify about the underlying technical questions involved

1    in determining materiality of the scientific article at issue.  See, e.g., Plumley v. Mockett, 836

2    F.Supp.2d 1053, 1065 (C.D. Cal. 2010) ("Although Van Horn, a former Deputy Assistant

3    Commissioner for Patent Policy with the PTO, may properly testify as to PTO procedure for patent

4    prosecution and reexamination, a witness not qualified in the pertinent art may not testify as to the

5    underlying technical questions involved in determining materiality of information withheld from the

6    PTO, such as the scope and content of prior art references.").

7         Third, the court will not allow Pretty to testify about what conclusion to reach on the issue

8    of inequitable conduct, including any opinions as to breach of the duty of disclosure, intent to

9    deceive, or materiality.  See Brigham and Women's Hosp. Inc. v. Teva Pharmaceuticals USA, Inc.,

10   2010 WL 3907490, *2 (D. Del. 2010) ("As a general rule, expert witnesses may not testify as to

11   the law governing a dispute or offer conclusions concerning a party's compliance with legal duties.

12   The law of this district is clear that experts in patent cases may not opine on whether a party

13   engaged in inequitable conduct, discuss whether certain information was material to a pending

14   patent application, or otherwise provide legal conclusions on substantive issues of patent law.")

15   (internal quotation marks omitted); Am. Med. Sys. v. Laser Peripherals, LLC, 712 F.Supp.2d 885,

16   903 (D. Minn. 2010) ("Gerstman opines that Paul Davis, an attorney at Laserscope, breached the

17   duty of disclosure when prosecuting the '699 Patent.  Courts routinely exclude such testimony

18   because it simply tells a court what conclusion to reach on the issue of inequitable conduct.");

19   Anagram Int'l, Inc. v. Mayflower Distrib. Co., 2008 WL 5500764, *1 (D. Minn. 2008) ("[A]ny

20   testimony from [the expert] regarding his opinions, legal or otherwise, regarding inequitable

21   conduct, including his opinions regarding materiality or the intent to deceive, are presumptively

22   inadmissible."); Pharmacia Corp. v. Par Pharm., Inc., 2004 WL 5614917, *2 (D.N.J. 2004) ("[T]he

23   Court will not permit [the expert] to offer testimony regarding alleged inequitable conduct or

24   materiality."); Applied Materials, 1995 WL 261407, at *2-3 (excluding defendant's patent legal

25   expert's testimony "about what the examiner would have done if [the expert] had been the

26   examiner, or if the examiner had different information").

27        In addition, the court will not permit Pretty to testify about or offer improper opinions on

28   witness credibility, including the credibility of Gold.  See Szoka, 2004 WL 5512964, at *3 (not

1   permitting improper opinion on witness credibility).  Nor will the court permit Pretty to provide

2   instructions on applicable patent law within the inequitable conduct analysis or otherwise, or offer

3   testimony as to what practices Gold followed in the prosecution of the '616 patent.  See Bausch

4   & Lomb, Inc., 79 F.Supp.2d at 255 ("Simply put, testimony that is designed to instruct the jury on

5   the applicable law is not admissible because, by purporting to do what lies with the exclusive

6   province of the court, it cannot be helpful to the jury."); Argus Chem. Corp. v. Fibre Glass-Evercoat

7   Co., 759 F.2d 10, 13 (Fed. Cir. 1985) ("The question of the appropriate standard for determining

8   inequitable conduct in procuring a patent is one of law. Thus, the testimony of an attorney on the

9   practice which some attorneys followed is irrelevant.").  Finally, Pretty will not be allowed to testify

10  about factual determinations within the province of the trier of fact.  See, e.g., Allen Organ Co. v.

11  Kimball International, Inc., 839 F.2d 1556, 1567 (Fed. Cir. 1988) ("Intent is a factual determination

12  particularly within the province of the trier of fact.").

13          In short, the court will grant-in-part and deny-in-part PMIL 3 as specified above.

14  IV.     PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE WITHHELD ON THE

15          BASIS OF PRIVILEGE BY DEFENDANTS DURING DISCOVERY.

16          AMF seeks to preclude Cochlear from presenting evidence or testimony regarding matters

17  for which they claimed the attorney-client privilege and/or work-product doctrine during discovery.

18  (See Notice of PMIL 4 at 1).  Specifically, AMF seeks to exclude evidence regarding (1) Cochlear's

19  activities in reviewing patents in the field of cochlear implants; (2) Cochlear's actions in response

20  to receiving a notice letter from AMF and their state of mind; (3) how and when Cochlear became

21  aware of the asserted patents, and Cochlear's actions in response and state of mind; and (4) any

22  other matters for which Cochlear asserted the attorney-client privilege and/or work-product

23  doctrine.  (See Proposed Order Re: PMIL 4 at 1).

24          The court agrees with the general proposition that a party may not use the attorney-client

25  privilege "both as a sword and a shield," Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th

26  Cir. 1992), by relying on the privilege to refuse to provide information on a topic during discovery

27  and then seek to introduce evidence on that same topic at trial. See Columbia Pictures Television,

28  Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001), cert. denied, 534

1  U.S. 1127 (2002) (affirming the district court's decision to preclude the defendant from relying on

2  advice of counsel to demonstrate that his infringement was not willful where the defendant

3  "refused to answer questions regarding his interactions with counsel at his deposition"); Weil v.

4  Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981) (noting that a privilege

5  holder "may elect to withhold or disclose, but after a certain point his election must remain final");

6  Fox v. Cal. Sierra Fin. Servs., 120 F.R.D. 520, 530 (N.D. Cal. 1988); ("If the holder intends to

7  consent to waiver of the attorney-client privilege at trial, such intention must be disclosed during

8  the discovery stage and any information as to which the privilege will be waived must be made

9  available to the opposing party through discovery so as not to afford the one party an unfair

10  advantage at trial.").

11       Here, some of the categories of exclusion proposed by AMF are not appropriate in light of

12  the deposition testimony at issue.  For example, AMF seeks to preclude Cochlear from presenting

13  evidence regarding their actions and state of mind in response to receiving a notice letter from

14  AMF, but the deponent asserted attorney-client privilege in response to a question about why

15  Cochlear had not stopped producing devices after this lawsuit was filed.  (See Lyons Decl., Exh.

16  17 at 145-46).  However, these are two different issues.  More to the point, while referring to the

17  lack of an immediate response from AMF to Cochlear's reply to the notice letter, AMF's counsel

18  asked the question, "what actions did the company take that it would not have taken if AMF had

19  responded differently?"  (See id. at 145; PMIL 4 at 3).  Cochlear's counsel objected that the

20  question was a hypothetical and called for speculation, but allowed the deponent to answer to the

21  extent he knew, and the deponent said that he did not "know what to answer on that."  (See id.).

22  There was no objection on privilege grounds, (see, generally, id.), so AMF's argument that

23  Cochlear should be precluded from presenting evidence regarding their response to the notice

24  letter is without merit.

25       Finally, "[m]otions in limine should rarely seek to exclude broad categories of evidence, as

26  the court is almost always better situated to rule on evidentiary issues in their factual context

27  during trial." Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., 2010 WL 2035800, *1 (C.D.

28  Cal. 2010); see Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975)

1  ("Orders in limine which exclude broad categories of evidence should rarely be employed.  A

2  better practice is to deal with questions of admissibility as they arise.").  Here, all the proposed

3  categories of exclusion are impermissibly broad and vague.  See Morris v. Long, 2012 WL

4  1498889, *5 (E.D. Cal. 2012) (finding that "any document or evidence not disclosed in discovery

5  due to the invocation of a privilege cannot be introduced at trial[,]" but "reserv[ing] jurisdiction over

6  the application of this ruling until such time as Defendant seeks to introduce specific evidence

7  Plaintiffs contends was not produced on ground of privilege"); Feezor v. Golden Bear Rest. Grp.,

8  Inc., 2012 WL 2873353, *3 (E.D. Cal. 2012) (denying motion to preclude cross-defendants from

9  offering evidence that was withheld from opposing party during discovery because the "motion

10  [was] over-broad and vague"); Maharaj v. California Bank & Trust, 288 F.R.D. 458, 462 (E.D. Cal.

11  2013) ("Plaintiff seeks to 'exclud[e] any and all testimony, references to testimony [,] or argument

12  related to documents associated with Plaintiff's exhaustion of administrative remedies.'  Since it

13  is unclear what evidence is involved in this motion, it is DENIED.") (internal citation omitted)

14  (alterations in original).

15       Therefore, the court will deny PMIL 4 without prejudice to revisiting the issue upon AMF's

16  objection to specific pieces of evidence or testimony offered during trial.

17  V.    PLAINTIFF'S MOTION IN LIMINE NO. 5 TO EXCLUDE IN PART TESTIMONY OF

18      DEFENDANTS' DAMAGES EXPERT, RUSSELL PARR.

19       Having conferred with the parties on PMIL 5 at the pretrial conference held on December

20  19, 2013, the court permitted the parties to tender new damages expert reports.  (See Order Re:

21  Pretrial Filings, filed December 23, 2013, at 5).  Therefore, the court will deny PMIL 5 as moot.

22  VI.    DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE REFERENCE TO PLAINTIFFS'

23      CHARITABLE AND/OR HUMANITARIAN ACTIVITIES.

24       Cochlear seeks to preclude AMF and Advanced Bionics from introducing any evidence or

25  argument that attempts to characterize AMF as anything other than a tax-exempt entity, or that

26  references any humanitarian and charitable works or purposes, including but not limited to, any

27  awards received by AMF, or any person associated with it, or evidence of AMF's charter and

28  mission statement, unless such evidence is directly related to the area of cochlear implants.  (See

1   DMIL at 1-2).  Cochlear asserts, pursuant to Fed. R. Evid. 401, that such evidence is not relevant

2   and that, in any event, the evidence is prejudicial under Fed. R. Evid. 403.[13]  (See id.).  Cochlear's

3   assertions are unpersuasive.

4          First, evidence regarding AMF's non-profit status, charitable and humanitarian works or

5   purposes, and awards received by either plaintiff or persons associated with them, provides

6   relevant background information on AMF, the nature of its research, the various methodologies

7   it uses, and the development of the inventions at issue.  (See, e.g., Lyons Decl., Exh. 26 (Hankin

8   Deposition) at 9 ("AMF's purpose is to identify unmet medical needs and determine whether [it]

9   can apply its resources toward the development of solutions . . . that can address those . . .

10  needs."); FAC at ¶ 13 ("Over the years, AMF scientists have focused on cutting edge research in

11  a number of medical technologies, including an implantable glucose sensor for diabetic patients,

12  technology to restore function to partially paralyzed stroke patients, and implantable cochlear

13  implants to help restore hearing to deaf patients.")); see also Koito Mfg. Co., Ltd. v. Turn-

14  Key-Tech, L.L.C., 2003 WL 25674799, *7 (S.D. Cal. 2003) (permitting limited background

15  information regarding the parties' businesses in order to place the issues in context).

16         Second, the evidence is relevant to damages because the parties' experts considered

17  information regarding hypothetical negotiations and licensing royalties, which involve AMF's non-

18  profit status, mission, history, and funding model.[14]  (See DMIL 1 at 9-10); see also  Bryce v.

19  Trace, Inc., 2008 WL 906142, *3 (W.D. Okla. 2008) (denying, in a Title VII case, plaintiff's motion

20

21         [13]  Under FRE 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or

22  less probable than it would be without the evidence; and (b) the fact is of consequence in
    determining the action."   Under FRE 403, "[t]he court may exclude relevant evidence if its

23  probative value is substantially outweighed by a danger of one or more of the following:  unfair
    prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

24  presenting cumulative evidence."

25         [14]  Cochlear also seeks to preclude AMF from introducing evidence regarding any awards

26  received by either plaintiff in areas other than cochlear implants.  (DMIL 1 at 1).  AMF responds
    that evidence of awards that directly relate to the area of cochlear implants are relevant to proving

27  the significance of the inventions at issue.  (Id. at 10).  However, AMF failed to address evidence
    of awards not related to the area of cochlear implants.  (See, generally, id. at 6-13).  Thus, the

28  court will permit AMF to introduce evidence of awards only as they relate to cochlear implants.

1  in limine which sought to exclude all evidence of the defendant's status as a "not for profit"
2  corporation where the defendant's corporate structure and organizational mission were relevant
3  and where defendant's financial status was found to be a proper factor for consideration in
4  awarding damages).  For example, in her discussion regarding hypothetical negotiations, AMF's
5  damages expert, Cate Elsten ("Elsten"), references AMF's first informal licensing goal, which is
6  to "ensure that technologies reach the intended patient population." (See Lyons Decl., Exh. 40
7  (2012 Elsten Suppl. Report) at 52).  Cochlear's damages expert also references this goal as
8  support for the argument that AMF "should be eager to have Cochlear get [its] invention to
9  Cochlear's 70% market share and thereby benefitting [sic] many more people in need." (See id.,
10  Exh. 21 (2009 Parr Report) at 26).  Moreover, the evidence is necessary to provide the jury with
11  some context for understanding the role that licensing royalties play in permitting AMF to perform
12  the work that it does and help explain why AMF licenses its technology rather than being in
13  business itself. (See, e.g., Lyons Decl., Exh. 40 (2012 Elsten Suppl. Report) at 12 (discussing that
14  AMF was established "to develop and promulgate innovative medical technologies that might not
15  otherwise be pursued by for-profit entities")).

16       Finally, Cochlear has not established that the probative value of the subject evidence
17  substantially outweighs any potential prejudice it may suffer.  Cochlear relies on Ty Inc. v.
18  Softbelly's Inc., 2006 WL 5111124 (N.D. Ill. 2006), a trademark infringement case, for the
19  proposition that admission of a party's charitable contributions would make it possible for the jury
20  to decide the case for "improper reasons." (See DMIL 1 at 4).  Cochlear's reliance on Ty is
21  misplaced.  There, the court excluded as irrelevant and unfairly prejudicial any evidence or
22  testimony pertaining to a for-profit corporation's charitable contributions resulting from the sale of
23  a particular type of toy.  See 2006 WL 5111124, at *13.  Whereas in Ty, the plaintiff was a
24  corporation seeking to admit evidence of charitable contributions to demonstrate its "outstanding
25  reputation in the community and the potential damage that befalls [its] reputation when others
26  trade off of [its] goodwill," see id., here, AMF is seeking to introduce such evidence to provide the
27  jury with a framework to understand the development of the patents-in-suit and damages

28

calculations.[15]  (See DMIL 1 at 11-12); see also Old Chief v. United States, 519 U.S. 172, 183, 117
S.Ct. 644, 651 (1997) (weighing evidence under FRE 403 must involve "an appreciation of the
offering party's need for evidentiary richness and narrative integrity in presenting a case").  In
short, the court will deny DMIL 1.

VII.   **DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY OF CATE
ELSTEN UNDER FRE 702 AND _DAUBERT_.**

Having conferred with the parties on DMIL 2 at the pretrial conference held on December
19, 2013, the court permitted the parties to tender new damages expert reports.  (See Order Re:
Pretrial Filings, filed December 23, 2013, at 5).  Therefore, the court will deny DMIL 2 as moot.

VIII.   **DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE PRE-NOTICE DAMAGES
EVIDENCE.**

Cochlear seeks to exclude "evidence concerning any damages prior to the date on which
the Cochlear Defendants received actual notice of each of the two patents in suit."  (Notice of
DMIL 3 at ii).  Cochlear argues that the products were not adequately marked pursuant to 35
U.S.C. § 287(a), which precludes AMF from recovering any damages prior to the time of actual
notice of infringement.  (See id.).  Accordingly, Cochlear asserts that any evidence relating to
damages prior to (1) July 21, 2003, the date of AMF's Notice Letter, for the '616 patent, and (2)
December 13, 2007, the date the Complaint was filed in the present case, for the '691 patent, is
irrelevant and should be excluded under Federal Rules of Evidence 401 and 402.  (See id.).
Alternatively, Cochlear argues that the evidence should be excluded under Rule 403 because its

---

[15]  Cochlear also cites Levinson v. Westport Nat. Bank, 2013 WL 2181042 (D. Conn. 2013),
(see DMIL 1 at 4), in which the court excluded evidence of a national bank's community
involvement, including its charitable contributions, because it was deemed irrelevant to the claims
at issue.  See 2013 WL 2181042, at *4.  AMF, also citing Levinson, argues that neither party
should be permitted to provide evidence of any tax-deductible charitable donations, monetary or
in-kind, regardless of their relationship to the field of cochlear implants.  (See DMIL at 7).
However, in both Ty and the instant case the parties' motives for seeking to introduce such
evidence was evident.  In contrast, the motives of the defendant in Levinson were unclear.  See,
generally, 2013 WL 2181042.  Thus, the court finds Levinson unpersuasive.

probative value is substantially outweighed by its potential to confuse the issues, mislead the jury, cause undue prejudice, and waste time.  (See id.).

"In cases where a patent owner sells a product embodying the invention, a patent owner may seek damages for infringement occurring during a period in which the accused infringer had actual or constructive notice of the asserted patent."  Sentry Prot. Prods. v. Eagle Mfg. Co., 400 F.3d 910, 918 (Fed. Cir. 2005).  Under the marking and notice statute of 35 U.S.C. § 287(a), a patentee who fails to mark a patented article fails to provide constructive notice of infringement, and is not entitled to damages for infringement prior to actual notice.[16]  See Crown Packaging Tech., Inc. v. Rexam Bev. Can Co., 559 F.3d 1308, 1316 (Fed. Cir. 2009); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996), cert. denied, 520 U.S. 1115 (1997) ("Thus, the statute defines that [a patentee] is entitled to damages from the time when it either began marking its product in compliance with section 287(a)[,  constructive notice,] or when it actually notified [the accused infringer] of its infringement, whichever was earlier.") (alterations in original) (quotation marks omitted).

"A patentee who makes, uses, or sells its own invention is obligated to comply with the marking provisions to obtain the benefit of constructive notice."  Maxwell, 86 F.3d at 1111.  "In order to satisfy the constructive notice provision of the marking statute, [the patentee] must have shown that substantially all of the [patented articles at issue] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous."  Nike,

---

[16]  A patentee "may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice."  35 U.S.C. § 287(a).  If the products are not marked in this manner, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."  Id.  Filing an action for infringement constitutes notice.  Id.  In short, the notice of infringement may be provided by (1) giving actual notice to the alleged infringer or (2) constructive notice by marking patented articles with the patent number.  See id.

1    Inc. v. Wal-Mart Stores, 138 F.3d 1437, 1446 (Fed. Cir. 1998); see also Am. Med. Sys., Inc. v.

2    Med. Eng'g Corp., 6 F.3d 1523, 1538 (Fed. Cir. 1993) ("The law is clear that the notice provisions

3    of section 287 do not apply where the patent is directed to a process or method."). Compliance

4    with the marking statute is a question of fact, and the burden of proving compliance with the

5    marking statute is upon the patentee, here AMF.[17]  See Nike, 138 F.3d at 1447; Maxwell, 86 F.3d

6    at 1111.  The marking provisions also apply to licensees; thus, licensees, such as Advanced

7    Bionics here, must also comply with the marking statute.  See Maxwell, 86 F.3d at 1111.

8        As an initial matter, the court agrees with AMF that Cochlear's motion in limine is a

9    disguised motion for summary judgment because it seeks to establish Cochlear's marking defense

10   as a matter of law.  (DMIL 3 at 7).  In support of its motion to preclude evidence of pre-notice

11   damages, Cochlear invites the court to decide several factual issues that are disputed by AMF,

12   including whether any products sold under the license with Advanced Bionics were adequately

13   marked, whether any marking was "substantially consistent, and continuous," and whether AMF

14   made reasonable efforts to ensure that Advanced Bionics was marking its licensed, patented

15   articles.  (See DMIL 3 at 2-3 (Cochlear), 9-11 (AMF)); Nike, 138 F.3d at 1447 (compliance with

16

17       [17]  AMF argues that the notice requirements of 35 U.S.C. § 287(a) do not apply because "[n]o
18   evidence exists that the Foundation has produced or sold any products upon which its patent
     numbers may be marked"; "[t]here is no evidence that the Foundation has licensed the
19   patents-in-suit to any company other than Advanced Bionics"; "Defendants submit no evidence
     that Advanced Bionics, has produced or sold a product that practices the inventions in the
20   patents-in-suit"; and "[n]or have Defendants submitted any evidence of the existence of any other
21   invention practicing products." (DMIL 3 at 8-9).  However, AMF has not asked the court to decide
     that the marking statute is inapplicable here as a matter of law; nor has AMF filed a related motion
22   in limine.  (See, generally, Cross-Motions for Summary Judgment (AMF's at Document No. 251;
     Cochlear's at Document No. 243); PMILs 1-5).  Moreover, AMF's argument is contradicted by the
23   factual record.  (See, e.g., DMIL 3 at 2 & Miller Decl. Exh. Z (Hankin Rule 30(b)(6) Depo. Tr.) at
     41:6-11 (testifying that "I believe they mark the '616 and for sure I don't know if they mark the '691"
24   when asked "Has Advanced Bionics Corporation marked its products with the patent numbers of
     either exhibits 1001 or 1002?"), 43:20-44:2 (testifying that it was the "natural practice" of Advanced
25   Bionics to mark); DMIL 3 at 10 & Lyons Decl. Exhs. 33 & 34 (licensing agreements between AMF
26   and Advanced Bionics requiring Advanced Bionics to mark their products)). In any event, if the
     evidence shows that Cochlear cannot support a claim for limiting damages pursuant to 35 U.S.C.
27   § 287(a), AMF may raise the issue pursuant to Federal Rule of Civil Procedure 50.  See Tex.
     Digital Sys. v. Telegenix, Inc., 308 F.3d 1193, 1219 (Fed. Cir. 2002) (holding that the district court
28   did not err in sustaining the jury's award of damages).

1    the marking statute is a question of fact); Maxwell, 86 F.3d at 1111 (same); SEB S.A. v.

2    Montgomery Ward & Co., 594 F.3d 1360, 1378 (Fed. Cir. 2010) ("Constructive notice requires the

3    record to show that the patentee consistently marks substantially all of its patented products.")

4    (internal quotation marks omitted), aff'd by Global-Tech Appliances v. SEB S. A., 131 S.Ct. 2060

5    (2011); see also U.S. Cosmetics Corp v. Greenburg Traurig, LLP, 2007 WL 980148 at *4 (D.N.J.

6    2007) ("In the case where a product cannot be marked directly, courts have taken a pragmatic

7    approach to the marking requirement, considering whether the patentee has chosen to list the

8    patent in a location that will reasonably put the public on notice.").  A motion in limine is not the

9    proper forum for the court to resolve these factual disputes.  See Colton Crane, 2010 WL

10    2035800, at *1 ("In particular, motions *in limine* should not be used as disguised motions for

11    summary judgment."); (Court's Order Re: Further Proceedings of October 18, 2013, at 3) ("The

12    court will not hear or resolve motions in limine that are disguised summary judgment motions.").

13        Next, the evidence at issue is relevant to whether the asserted claims of the patents-in-suit

14    are obvious.  "Whether the claimed subject matter would have been obvious to an ordinarily skilled

15    artisan at the time of the invention is a question of law based on underlying questions of fact,"

16    which include objective indicia of nonobviousness such as commercial success. Plantronics, Inc.

17    v. Aliph, Inc., 724 F.3d 1343, 1353 (Fed. Cir. 2013) (internal quotation marks omitted).  Here, AMF

18    intends to argue that the commercial success of Cochlear's and Advanced Bionics' products is

19    objective indicia of nonobviousness, and will therefore "present evidence of Defendants' and

20    Advanced Bionics's sales of cochlear implants and processors, dating back to the mid-1990's –

21    before the beginning of any damages period in this case."  (DMIL 3 at 12); see also Plantronics,

22    724 F.3d 1355 ("[A]ll evidence pertaining to the objective indicia of nonobviousness must be

23    considered before reaching an obviousness conclusion."); Leo Pharm. Products, Ltd. v. Rea, 726

24    F.3d 1346, 1358 (Fed. Cir. 2013) (emphasizing that objective indicia of nonobviousness "are

25    crucial in avoiding the trap of hindsight when reviewing, what otherwise seems like, a combination

26    of known elements").

27        Finally, Cochlear has not established that the probative value of the subject evidence

28    substantially outweighs any potential prejudice it may suffer.  First, Cochlear did not address the

use of the evidence at issue for the purpose of proving commercial success. (See, generally, DMIL 3 at 1-5). Second, Cochlear hypothesizes that "unfair prejudice would result if Plaintiffs are able to use the pre-notice period to calculate an extremely large damages figure – one that, by statute, they are not entitled to recover" and that the jury could be confused if it is instructed that plaintiffs are statutorily barred from pre-notice damages but is then presented with expert testimony relating to pre-notice damages. (See id. at 5). But Cochlear failed to cite to any cases where a court precluded evidence of pre-notice damages under Rule 403. (See, generally, id. at 4-5). Regardless, any risk of prejudice can be addressed through jury instructions and closing arguments. Moreover, if the evidence shows that AMF is not entitled to pre-notice damages due to a failure to mark, Cochlear may raise the issue pursuant to Federal Rule of Civil Procedure 50. In short, the court will deny DMIL 3.

IX.   DEFENDANTS' MOTION IN LIMINE NO. 4 TO EXCLUDE TESTIMONY OF NINE LATE IDENTIFIED WITNESSES.

Cochlear seeks to exclude the testimony of nine witnesses: Farah Boroomand ("Boroomand"), Chuck Byers ("Byers"), Mark Chamberlain ("Chamberlain"), Steve Hazard ("Hazard"), Dr. John Niparko ("Niparko"), Thomas Santogrossi ("Santogrossi"), Robert Schindler ("Schindler"), Dr. Ginger Stickney ("Stickney"), and Dr. Nancy Young ("Young"). (See Notice of DMIL 4 at iii). Cochlear argues that AMF failed to comply with Federal Rule of Civil Procedure ("FRCP") 26(a)(1) by failing to identify those witnesses in their initial or supplemental disclosures, and that this failure was neither justified nor harmless. (See id. at ii).

Under FRCP 26(a), "a party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A). FRCP 26(e) provides that "[a] party who has made a disclosure under [FRCP] 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process

or in writing[.]"  Fed. R. Civ. P. 26(e)(1).  "If a party fails to provide information or identify a witness as required by FRCP 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

AMF does not assert that it formally disclosed any of the nine witnesses in its initial or supplemental disclosures; instead, it argues that the witnesses were "otherwise made known" to Cochlear pursuant to FRCP 26(e).  (See DMIL 4 at 11-12).  The Advisory Committee Note to the 1993 Amendments to FRCP 26 states that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report."  1993 Adv. Comm. Notes to Fed. R. Civ. P. 26(e).

A.    Witnesses Properly Disclosed.

Boroomand, Byers, Chamberlain, Santogrossi, Stickney, and Schindler had all "otherwise been made known" to Cochlear prior to the close of the final discovery period on February 1, 2013.  (See Court's Order Adopting Joint Proposed Case Schedule, filed on October 17, 2012, at 1).  Boroomand is "referenced extensively in Cate Elsten's expert report," (DMIL 4 at 16), dated November 30, 2012.  (See Lyons Decl., Exh. 40 at 1, 24, 33-34 & App'x B).  Additionally, Boroomand's position as the Chief Financial Officer of AMF, (see DMIL 4 at 16 n. 3), and her presence at a two-day mediation between the parties, (see id. at 16), should have alerted Cochlear that she was "likely to have discoverable information . . . that [AMF] may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A).

Similar reasoning applies to Chamberlain, AMF's Chief Operating Officer.  (See DMIL 4 at 16 n. 3).  Like Boroomand, he was referenced in Cate Elsten's expert report.  (See Lyons Decl., Exh. 40 at 1, 6 & 26).  Further, Chamberlain was discussed at Cate Elsten's deposition, (see id., Exh. 42 at 104-06 & 187-88), which is sufficient to fulfill the requirements of FRCP 26(e).  See Shimozono v. May Dep't Stores Co., 2002 WL 34373490, *18 (C.D. Cal. 2002) ("Mr. Smith was identified during a deposition as someone who worked with the Plaintiffs' retail expert, Dr. Michael

Levy. Mr. Levy mentioned this in his deposition.  As stated above, the Advisory Committee notes explicitly point out that when someone is identified in a deposition this may satisfy the disclosure rules.  If Plaintiff does not know the content of his potential testimony it is because they failed to depose or attempt to depose the witness.  They cannot now argue that the testimony should be precluded."); Coleman v. Keebler Co., 997 F.Supp. 1102, 1107 (N.D. Ind. 1998) ("The duty to supplement imposed by Fed.R.Civ.P. 26(e)(1) does not require an application of form over substance.  In fact, both the Advisory Committee and leading commentators indicate that the incidental discovery, particularly during a deposition, of information ordinarily subject to supplementation satisfies the [FRCP] 26(e)(1) duty as sufficiently as a formal filing[.]") (internal citations omitted); Boynton v. Monarch, 1994 WL 463905, *1 (N.D. Ill. 1994) ("Boynton identified these two women by name in her deposition on May 21, 1993 as persons with whom she had discussed her work situation; thus, these witnesses were 'made known to the other party during the discovery process' as required by [FRCP] 26(e)(2).").

Santogrossi, Byers, and Schindler, were each discussed in depositions that took place in this case.  (See Lyons Decl., Exh. 9 at 53; id., Exh. 10 at 22, 24, 26, 29-30, 44, 47, 94 & 100; id., Exh. 11 at 52 & 52-53; id., Exh. 46 at 78; id., Exh. 50 at 21; id., Exh. 53 at 10 & 12).  Moreover, both Byers and Schindler were disclosed on Cochlear's own FRCP 26(a) disclosure regarding the topic of "prior art."  (See id., Exh. 36 at 2 & 10).

Regarding Stickney, AMF notes that during the deposition of Dr. Darin Young, "the attorney for Cochlear asked Dr. Young at least 27 questions regarding his conversations with Dr. Stickney." (DMIL 4 at 12) (citing Lyons Decl., Exh. 55 at 119-24 & 157-63).  Stickney was also discussed in two other depositions and two expert reports.  (See Lyons Decl., Exh. 39 at 6-7; id., Exh. 40 at 1 & 29; id., Exh. 42 at 130-33; id., Exh. 49 at 59, 62 & 65).  Additionally, she provided a declaration in support of a motion for summary judgment in this case, which "clearly and unambiguously signals that the declarant is likely to have discoverable information that the disclosing party may use to support its claims or defenses."  GenSci OrthoBiologics v. Osteotech, Inc., 2001 WL 36239743, *14 (C.D. Cal. 2001).

1   Thus, Boroomand, Byers, Chamberlain, Santogrossi, Stickney, and Schindler may testify

2   at trial.  However, should Cochlear wish to take their depositions prior to trial, AMF must make

3   them available for that purpose prior to trial.  See Coleman, 997 F.Supp. at 1107 ("[T]o the extent

4   that Keebler believes that it has been harmed by this turn of events the Court will ameliorate any

5   possible prejudice by allowing Keebler to depose Martinez and Smith prior to trial.").[18]

6       B.    Witnesses Not Properly Disclosed.

7   Hazard, Niparko, and Young were not properly disclosed pursuant to FRCP 26(a) and (e).

8   AMF asserts that Hazard has "otherwise been made known" to Cochlear because he was

9   disclosed on several documents produced by Cochlear and his name appears on technical

10  documents produced to Cochlear by AMF.  (DMIL 4 at 17).  However, in the documents AMF

11  produced to Cochlear, Hazard's name appears with many other names, and in some cases, the

12  context is not clear because pages are missing.  (See Lyons Decl., Exh. 43 at 11, Exh. 48 at Bates

13  No. AMF039815, Exh. 51 at Bates No. AMF039505).  The one document produced by Cochlear

14  that AMF cites is an email from Chuck Byers to Hazard, saying that it was good to see Hazard and

15  meet his wife, and attaches Byers' engagement picture.  (See id. at Exh. 41).  Not every reference

16  to a person in documents produced during discovery is sufficient under FRCP 26(e) to put the

17  opposing side on notice that the producing party may use that person to support its claims or

18

19  _____

20  [18]  Cochlear also argues that AMF intends to proffer testimony from Byers, Santogrossi, and
    Schindler that could only be admissible under Federal Rule of Evidence 702 as expert testimony,
21  but AMF failed to designate these witnesses as experts.  (See DMIL 4 at 6-8).  AMF states that
    none of these witnesses will testify as experts.  (See id. at 19).  From AMF's knowledge of the
22  proffered testimony, it appears that much of it is based on the witnesses' personal knowledge
    resulting from their experiences in the cochlear implant field, which is proper lay-witness testimony
23  under Rule 701.  However, any comparison of the patents in suit to the limitations of the prior
    technology would require specialized knowledge and therefore constitute expert testimony, and
24  will not be permitted.  See Gart v. Logitech, Inc., 254 F.Supp.2d 1119, 1123 (C.D. Cal. 2003) ("Dr.
    Vanderheiden directed the research group that designed the Autocom and he is a named inventor
25  on the Autocom's '131 Patent.  When Mr. Volk was a graduate student at the University of
    Wisconsin, he worked on creating the Autocom.  Both men have personal knowledge of the
26  Autocom and its handpieces.  Therefore, the Court finds that Mr. Volk and Dr. Vanderheiden are
    permitted to testify as lay witnesses based on their personal knowledge.  By contrast, when the
27  declarants compare the handpieces to the limitations of the '165 Patent, they provide testimony
    that does require specialized knowledge.  This they are not permitted to do as lay witnesses.").
28

1  defenses.   See Shimozono, 2002 WL 34373490, at *18 ("The court is inclined to reject

2  Defendant's argument that because a document or two among many alerted AMF to the existence

3  of a person, this complied with the rules of disclosure of potential witnesses."); id. at *19 ("Phil

4  Didion was identified on a number of documents during discovery.  Because of the voluminous

5  amount of discovery in this case, it is not reasonable to assume that AMF's would be alerted to

6  every person's name in those documents.  Therefore, Defendant was required to supplement its

7  responses when it came to their attention that these other individuals might have relevant

8  information.").  In short, the documents AMF relies on are insufficient to establish that Hazard had

9  otherwise been made known to Cochlear.

10        AMF also asserts that Hazard was identified in previous litigation between Cochlear and

11 Advanced Bionics, and the he worked for Cochlear from 2004-2012.  (DMIL 4 at 17).  That Hazard

12 was identified as relevant in a previous case between Cochlear and Advanced Bionics does not

13 exempt AMF from its disclosure obligations in this case, nor does the fact that Hazard was at one

14 point a Cochlear employee.

15        Regarding Niparko and Young, AMF argues that they were disclosed in documents

16 produced by Cochlear relating to an FDA pre-market approval for Cochlear's Nucleus 24 product,

17 and that they were listed as "primary investigators" in the cited document.  (See DMIL 4 at 17-18).

18 However, each of the 65 people referenced in that document were listed as "primary

19 investigators," (see Lyons Decl. at Exh. 45), and as noted above, a passing mention of a person's

20 name in a document produced in discovery is not enough to satisfy AMF's discovery obligations.

21        C.    Preclusion From Testifying.

22        Given that Hazard, Niparko, and Young were neither formally disclosed or "otherwise made

23 known" to Cochlear within the meaning of FRCP 26(e), the court must determine whether they

24 should be precluded from testifying.  "Where the movant seeks preclusion of the evidence, the

25 focus of the court's inquiry is on surprise and prejudice.   A party that without substantial

26 justification fails to disclose information required by [FRCP] 26(a) or 26(e)(1) shall not, unless such

27 failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any

28 witness or information not so disclosed." Shimozono, 2002 WL 34373490, at *17 (internal citation

omitted); see Fed. R. Civ. P. 37(c)(1).  "When considering whether evidence should be excluded pursuant to [FRCP] 37, courts have considered (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." Dugan v. Cnty. of L.A., 2013 WL 3863979, *4 (C.D. Cal. 2013) (internal quotation marks omitted).

These factors generally favor exclusion of the witnesses at issue here.  AMF essentially argues that these witnesses have caused no surprise because AMF complied with the disclosure requirements.  (See DMIL 4 at 22) ("For the reasons already discussed, Cochlear has not been surprised by any of these witnesses.").  However, the court has already found that AMF's disclosures with respect to these witnesses were not sufficient.  Cochlear would be prejudiced if it had to take the depositions of witnesses who were not previously disclosed properly while simultaneously preparing for trial in this complex patent case.  See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001) ("Plaintiffs received Vuckovich's report one month before they were to litigate a complex case. To respond to it, plaintiffs would have had to depose Vuckovich and prepare to question him at trial.").

In short, Hazard, Niparko, and Young are precluded from testifying at trial.

D.     Conclusion.

In sum, the court will grant-in-part and deny-in-part DMIL 4.

## CONCLUSION

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion in Limine No. 1 to Exclude the McDermott Thesis as Admissible Prior Art **(Document No. 320)** is **denied**.

2.  Plaintiff's Motion in Limine No. 2 to Exclude Evidence of Equitable Defenses Against Enforceability of the Patents, Including Inequitable Conduct, Laches or Estoppel **(Document No. 321)** is **denied**.

3.  Plaintiff's Motion in Limine No. 3 to Exclude All Testimony and Evidence Originating or Otherwise Derived from Defendants' "Patent Law" Expert **(Document No. 322)** is **granted-in-part and denied-in-part**.

4.  Plaintiff's Motion in Limine No. 4 to Exclude Evidence Withheld on the Basis of Privilege by Defendants During Discovery **(Document No. 323)** is **denied**.

5.  Plaintiff's Motion in Limine No. 5 to Exclude in Part Testimony of Defendants' Damages Expert, Russell Parr **(Document No. 324)** is **denied** as moot.

6.  Defendants' Motion in Limine No. 1 to Exclude Reference to Plaintiffs' Charitable and/or Humanitarian Activities **(Document No. 312)** is **denied**.

7.  Defendants' Motion in Limine No. 2 to Exclude the Testimony of Cate Elsten under FRE 702 and *Daubert* **(Document No. 313)** is **denied** as moot.

8.  Defendants' Motion in Limine No. 3 to Exclude Pre-Notice Damages Evidence **(Document No. 314)** is **denied**.

9.  Defendants' Motion in Limine No. 4 to Exclude Testimony of Nine Late Identified Witnesses **(Document No. 315)** is **granted-in-part and denied-in-part**.

Dated this 3rd day of January, 2014.

/s/
Fernando M. Olguin
United States District Judge