1   DANIEL JOHNSON, JR. (SBN 57409)
    Email: djjohnson@morganlewis.com
2   DANIEL GRUNFELD (SBN 128494)
    Email: dgrunfeld@morganlewis.com
3   MICHAEL J. LYONS (SBN 202284)
    Email: mlyons@morganlewis.com
4   JASON E. GETTLEMAN (SBN 269733)
    Email: jgettleman@morganlewis.com
5   MORGAN, LEWIS & BOCKIUS LLP
6   3000 El Camino Real, Suite 7000
    Palo Alto, CA 94306-2122
7   Tel:  650.843.4000
8   Fax:  650.843.4001

9   Attorneys for Plaintiff and Counterdefendant
10  ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH

11  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership Including Professional Corporations
12  BRUCE G. CHAPMAN (Cal. Bar No. 164258)
    Email: bchapman@sheppardmullin.com
13  SCOTT R. MILLER (Cal. Bar No. 112656)
    Email: smiller@sheppardmullin.com
14  LAURA M. BURSON (Cal. Bar No. 204459)
    Email: lburson@sheppardmullin.com
15  MANUEL C. NELSON (Cal. Bar No. 229590)
    Email: mnelson@sheppardmullin.com
16  DENNIS J. SMITH (Cal. Bar No. 233842)
17  Email: djsmith@sheppardmullin.com
    333 South Hope Street, 43rd Floor
18  Los Angeles, California 90071-1422
    Telephone: 213.620.1780
19  Facsimile: 213.620.1398
20
21  Attorneys for Defendants and Counterclaimants
    COCHLEAR LIMITED and COCHLEAR AMERICAS
22

23              UNITED STATES DISTRICT COURT

24      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

25  ALFRED E. MANN FOUNDATION          Case No. 2:07-cv-08108-FMO-SH
    FOR SCIENTIFIC RESEARCH,
26                                     **FIRST AMENDED JOINT
                 Plaintiff,            DISPUTED JURY INSTRUCTIONS**
27
28                                     Judge:    Hon. Fernando M. Olguin

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

vs.

COCHLEAR CORPORATION, et al.,

Defendants.

AND RELATED COUNTERCLAIMS.

Pretrial:     January 9, 2014
Trial Date: January 13, 2014
Time:        8:30 A.M.
Courtroom: Ctrm 22, 5th Floor

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| No. | Title | Source | Pg. |
|---|---|---|---|
| **PRELIMINARY INSTRUCTIONS** | | | |
| 3.2 | "NATURE OF THE ACTION" (DISPUTED) | AMF: Fed. Cir. Bar § A.2.<br><br>Cochlear: O'Malley § 158:1; N. D. Cal. A-2 | 1 |
| **INSTRUCTIONS AT THE CLOSE OF EVIDENCE** | | | |
| 1.1 to 2.13 | REPEAT OF CERTAIN PRELIMINARY INSTRUCTIONS (DISPUTED) | | 22-41 |
| 4.1 | "INFRINGEMENT" (DISPUTED) | O'Malley § 158:20 and 158.77 | 42 |
| 4.5b | "DIRECT INFRINGEMENT—LITERAL INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS" (DISPUTED) | AMF: Fed. Cir. Bar § B.3 3.1b<br><br>Cochlear: O'Malley § 158:22; N. D. Cal. B-3;  35 U.S.C. § 112(6); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320-21 (Fed. Cir. 1999) | 55 |
| 4.5c | "DIRECT INFRINGEMENT—INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS—STRUCTURAL EQUIVALENCE" (DISPUTED) | AMF: Fed. Cir. Bar § B.3 3.1b; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)<br><br>Cochlear: | 65 |

| 4.5d | "DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS" (DISPUTED) | AMF: O'Malley § 158:23; N. D. Cal. § 3.3<br><br>Cochlear: N. D. Cal. B-3; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *See also Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999) | 78 |
| 4.5e | "LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS" (DISPUTED) | AMF: O'Malley § 158:63.<br><br>Cochlear: O'Malley § 158:22; N. D. Cal. B-3; *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v.* | 90 |

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

ii

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| | | | | |
|---|---|---|---|---|
| | | | *Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d (Fed. Cir. 2003) (*en banc*) | |
| | 4.5f | "NON-INFRINGEMENT UNDER EQUIVALENTS" (DISPUTED) | AMF: O'Malley § 158:77 | 93 |
| | 4.6 | "INDUCEMENT OF INFRINGEMENT" (DISPUTED) | AMF: O'Malley § 158:24; Fed. Cir. Bar § B.3 3.2<br><br>Cochlear: O'Malley § 158:24; *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009) | 96 |
| | 4.7 | "REASONABLE BELIEF OF INVALIDITY OF CLAIMS OF THE PATENTS" (DISPUTED) | Cochlear: *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) ; *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) | 111 |
| | 4.8 | "CONTRIBUTORY INFRINGEMENT" (DISPUTED) | AMF: O'Malley § 158:25; N. D. Cal. § 3.8; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986)<br><br>Cochlear: O'Malley § 158:60 | 120 |
| | 5.1 | "INVALIDITY OF A PATENT" | AMF: O'Malley § 158:60 as | 136 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| | | | | |
|---|---|---|---|---|
| | | (DISPUTED) | amended by *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011), Federal Circuit Bar Association's Model Patent Jury Instructions 4.1, 5.1. Cochlear: O'Malley § 158:60 as amended by *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011) | |
| | 5.6 | "PRIOR ART PUBLICATION" (DISPUTED) | O'Malley § 158.47 | 142 |
| | 5.6a / 5.8b | "ANTICIPATION – PRIOR ART – PRINTED PUBLICATION" (DISPUTED) | AMF: 3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil § 158.69 (6th ed. 2013); *In re Lister*, 583 F.3d 1307, 1311–14 (Fed. Cir. 2009); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986); *In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A.1978); *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *37 (D. Del. 1998), *aff'd on other grounds*, 228 F.3d 1338 (Fed. Cir. 2000) Cochlear: O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:69 (6th ed. Aug. 2013) as amended; Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 4.3(a)(1); *In re Lister*, 583 F.3d 1307 (Fed. Cir. 2009), *Klopfenstein*, 380 F.3d at 1348. | 150 / 155 / |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

iv        FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| 1 | 5.8b / 5.8c | "ANTICIPATION—PRIOR ART—INHERENCY" (DISPUTED) | AMF: *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002); *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991); *In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981); *Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed.Cir.2002); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010); *Applied Materials v Advanced Semiconductor*, 98 F3d 1563, 1576 (Fed. Cir. 1996); *Gubelmann v. Gang*, 408 F.2d 758, (C.C.P.A. 1969); *Diodem, LLC v. Lumenis Inc.*, No. CV03–2142, 2005 WL 6225366, at *15 (C.D. Cal. Jan. 24, 2005); *Glaxo, Inc. v. Novopharm, Ltd.*, 830 F.Supp. 871, 874 (E.D.N.C.1993), *aff'd*, 52 F.3d 1043 (Fed. Cir. 1995).<br><br>Cochlear: *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002); *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed.Cir.1991); *In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981); *see also Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed.Cir.2002); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Therasense, Inc. v.* | 164 |

Lines numbered 1–28 along the left margin.

| | | | |
|---|---|---|---|
| | | *Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010); *Schering Corp. v. Geneva Pharmaceuticals Inc.*, 339 F.3d 1373, 1377-78 (Fed. Cir. 2003) | |
| 5.9 | "OBVIOUSNESS— GENERALLY" (DISPUTED) | AMF: Fed. Cir. Bar § B.4.3 4.3c as amended<br><br>Cochlear: O'Malley § 158:65 as amended. | 168 |
| 5.9a | "INVALIDITY – OBVIOUSNESS – HINDSIGHT BIAS" (DISPUTED) | AMF: O'Malley Ch. 158, p. 585; *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Systems, Inc.* 107 U.S.P.Q.2d 1737, 2013 WL 3984991, *9 (Fed. Cir. 2013); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) cert. dismissed, 133 S. Ct. 97, 183 L. Ed. 2d 736 (U.S. 2012) | 177 |
| 5.10 | "OBVIOUSNESS— COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS" (DISPUTED) | AMF: O'Malley § 158:66; *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013); *Plantronics, Inc. v. Aliph, Inc.*, 724 F. 3d 1343, 1355 (Fed. Cir. 2013); *Apple Inc. v. I.T.C.*, 725 F. 3d 1356, 1365-67 (Fed. Cir. 2013).<br><br>Cochlear: O'Malley § 158:66; *Media Technologies Licensing v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010) | 180 |
| 6.2 | "INEQUITABLE CONDUCT" (DISPUTED) | AMF: O'Malley § 158:76 and § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290- | 189 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

vi

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| | | | | |
|---|---|---|---|---|
| | | | 91(Fed. Cir. 2011) (en banc); *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1244 fn. 2 (Fed. Cir. Sept. 24, 2013)<br><br>Cochlear:  O'Malley § 158:76 and § 158.79; *Therasense, Inc. v. Becton, Dickinson and Company*, 649 F.3d 1276, 1290-91(Fed. Cir. 2011) (en banc) | |
| 7.1 | "DAMAGES GENERALLY" (DISPUTED) | | AMF: O'Malley § 158:90<br><br>Cochlear: O'Malley § 158:90; *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) | 204 |
| 7.2 | "REASONABLE ROYALTY" (DISPUTED) | | AMF: O'Malley § 158:93; N. D. Cal. B.5.7; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 67-68 (Fed. Cir. 2012); *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 840 (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009); *Internet Machs. LLC v. Alienware Corp.*, 2013 U.S. Dist. LEXIS 115723, *43-45 (E.D. Tex. June 19, 2013)<br><br>Cochlear: O'Malley § 158:93; N. D. Cal. B.5.7; *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. | 212 |

| | | | | |
|---|---|---|---|---|
| 1 2 3 4 5 6 | | | 2011); *Laserdynamics, Inc. v Quanta Computer Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301(Fed. Cir. 2009) ; *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) | |
| 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 7.2a | "DATE OF COMMENCEMENT OF DAMAGES" (DISPUTED) | AMF:  N. D. Cal. § 5.8; 28 U.S.C. §§ 286-287; Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); Sessions v. Romadka, 145 U.S. 29, 50, 12 S. Ct. 799, 805, 36 L. Ed. 609 (1892); Rexnord, Inc. v. Laitram Corp., 6 U.S.P.Q.2d 1817, 1845 (E.D.Wisc.1988).<br><br>Cochlear:  N. D. Cal. § 5.8; 28 U.S.C. §§ 286-287; Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. | 225 |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

viii

FIRST AMENDED JOINT DISPUTED
JURY INSTRUCTIONS
07-08108-FMO-SH

| | | | | |
|---|---|---|---|---|
| | | | 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) | |
| | 7.3 | "REASONABLE ROYALTY – RELEVANT FACTORS" (DISPUTED) | AMF: Fed. Cir. Bar § B.4 4.6 | 234 |
| | 7.3a | "COMPARABLE LICENSES" (DISPUTED) | Cochlear: *Lucent Tech. v. Gateway, Inc.* ., 580 F. 3d 1301(Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 869 (Fed. Cir 2010). | 239 |
| | 7.4 | "NON-INFRINGING ALTERNATIVES" (DISPUTED) | Cochlear: O'Malley § 158:91 | 242 |
| | 7.6 | "WILLFUL INFRINGEMENT" (DISPUTED) | O'Malley § 158:94; N. D. Cal. 3-10, *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013) | 245 |

# **PRELIMINARY INSTRUCTIONS**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1

## 3.2  "NATURE OF THE ACTION"- FOUNDATION'S PROPOSED INSTRUCTION (DISPUTED)

The plaintiffs here are the Alfred Mann Foundation (which I will refer to as the Foundation) and Advanced Bionics LLC.  I will refer to the Foundation and Advanced Bionics collectively as the Plaintiffs.

The defendants are Cochlear Americas and its Australian parent company, Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as the Cochlear Defendants.

This is an action for patent infringement based on two U.S. patents owned by the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The "patents in suit," are:

- United States Patent No. 5,609,616 entitled Physician's Testing System and Method for Testing Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `616 patent; and,

- United States Patent No. 5,938,691 entitled Multichannel Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `691 patent.

The Foundation asserts that the Cochlear Defendants infringe because they are making, using, selling, offering for sale in or importing into the United States products and methods that the Foundation believes are covered by claims 1 and 10 of the '616 patent, and claims 6 and 7 of the '691 patent.  For convenience, I will refer to these four separate claims as the asserted claims.  The Foundation also argues that Cochlear has actively induced infringement and contributed to infringement of the asserted claims by others.

The products and methods that are alleged to infringe are cochlear implants, external processors, and certain diagnostic tools and calibration procedures associated with Cochlear products: the Nucleus 24, Freedom and Nucleus 5 line of implants (models CI24M, CI24R, CI24RE and CI500), associated speech processors, and software (WinDPS software and Custom Sound software) (the "Accused Products").

The Cochlear Defendants deny that they have directly or indirectly infringed any claims of either of the patents in suit.  The Cochlear Defendants also assert that, in addition, the claims are invalid and unenforceable for inequitable conduct.

You may hear evidence that the Cochlear Defendants have their own patent(s).  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case.  Meanwhile, please keep an open mind.

Your job will be to decide whether or not any of the patent claims have been infringed and whether or not those claims are invalid.  You will also be asked to answer questions on inequitable conduct. If you decide that any of the claims have been infringed and are not invalid, then you will need to decide any money damages to be awarded to the Foundation to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

***Authority:***
Adapted from Model Patent Jury Instructions § A.2, Federal Circuit Bar Association (June 2013).

**Cochlear's Objection:**

The basis for the Cochlear Defendants' proposed instruction is that, throughout this litigation, Plaintiffs have not provided discovery to support their indirect infringement theories for claim 1 of the '616 patent and claims 6-7 of the '691 patent. The first time AMF indicted it was intending to pursue indirect infringement on any claim other than claim 10 of the `616 patent was at the Rule 16 meeting of counsel on November 12, 2013. This was long after the date for filing summary judgment motions or motions in limine. Up to that time, the Defendants had relied on AMF's discovery responses that indirect infringement only applied to Claim 10 of the `616 patent. It would be highly prejudicial to allow AMF to put claims and theories of liability to the jury that it ***never*** disclosed in discovery.

Indeed, during discovery, Plaintiffs only identified claim 10 of the '616 patent as a claim that was indirectly infringed. In response to an interrogatory that asked for the basis of the "alleged infringement of each asserted claim by each asserted product, whether it's direct infringement, contributory infringement, or inducement infringement," the Foundation responded:

> Through its acts, the Cochlear defendants, either individually or collectively, infringe at least Claim 10 of the 616 patent, either directly, by inducement of others, or contributorily…

(*See* May 2008 Interrogatory Response No. 1). The remainder of the response referred to claim charts that did not address indirect infringement of any of the other asserted claims. (*Id.*) Plaintiffs have not provided a supplemental discovery response that identifies any indirect infringement theories for the other asserted claims. The result of this discovery, then, is that claim 10 is the *only* claim that Plaintiffs asserted was indirectly infringed.

When confronted by this discovery during the meet and confer process, Plaintiffs contended that they had always asserted indirect infringement claims in their *pleadings*. This is insufficient to preserve the issue for trial. Settled law recognizes that the purpose of discovery is to narrow the issues in dispute. As the

United States Supreme Court observed in *Hickman v. Taylor*, 329 U.S. 495, 501 (1947):

> The [Federal Rules of Civil Procedure], however, restrict the pleadings to the task of general notice-giving and invent the deposition-discovery process with a vital role in the preparation for trial.  The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues…"

*Hickman*, 329 U.S. at 501; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"); *Kashlan v. TCBY Systems, LLC*, 2013 WL 3309123, *4 (E.D. Ark., Nov. 6, 2007) ("The point of requiring substantive answers to written discovery is to narrow a claiming party's theory of liability and damages prior to taking depositions.  A party is not required to go into a deposition blind, but is entitled to use written discovery to bring the opposing party's claim into focus…"); *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).

Simply put, Plaintiffs may not rely upon their pleadings (which are the broad, "notice pleading" identified in *Hickman*) to avoid being bound to a written discovery response, the purpose of which is to define the issues in dispute and narrow the case.  Conversely, the Cochlear Defendants are entitled to rely upon a discovery response (rather than the notice-pleading) as the identification of the issues actually in dispute for trial.  When Plaintiffs failed to identify indirect infringement theories for the other asserted claims, the Cochlear Defendants were entitled to rely upon that answer as evidence that Plaintiffs were abandoning their overbroad pleadings where every claim was infringed in every possible way.  Indeed, AMF's assertion that Defendants are seeking a "de facto motion for Summary Judgment" is merely a smokescreen to obscure the fact that AMF now

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-4-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                                    07-08108-FMO-SH

wants to entirely redirect its case contrary to its years of discovery responses that do not raise or allow the jury to decide Plaintiffs' claims for contributory infringement and induced infringement for three of the asserted claims.  AMF misunderstands, or just seeks to ignore, the pleading and discovery process.

Finally, Rule 37 of the Federal Rules of Civil Procedure is consistent with the Cochlear Defendants' proffered instruction.  Rule 37(c)(1) provides for an automatic exclusion of information from trial when a party fails to disclose that information during discovery (unless that failure was substantially justified).  Here, Plaintiffs failed to disclose their indirect infringement theories regarding three of the four asserted claims.  Accordingly, Rule 37 requires that Plaintiffs be precluded from introducing that information at trial.  Accepting Plaintiffs' reasoning would turn Rule 37 on its head: a party could assert one hundred claims in its complaint, provide discovery on five of those claims, and then assert all one hundred claims at trial because, it argues, the defendant had notice of those claims.  That is not how discovery works under the Federal Rules of Civil Procedure.  Accordingly, the Court should reject Plaintiffs' Instruction No. 3.2 because it improperly allows the jury to decide claims that Plaintiffs effectively abandoned because they failed to provide discovery about those theories of infringement.

Plaintiffs claim that the Cochlear Defendants will not be arguing that they improved upon the Foundation's design.  The Defendants have no issue with the withdrawal of this provision if the Court feels it makes the instruction more balanced.

**Foundation's Response:**

The Cochlear Defendants seek to wrap their flawed instruction in the warm embrace of O'Malley, but this does not improve their flawed instruction.

Where the 9th Circuit Model Instructions were inapplicable, the Court ordered the parties to "consult the current edition of O'Malley." Dckt. No. 300. The Foundation did not interpret that order as a straight jacket, and indeed, both parties have, where they believe appropriate, submitted instructions based on the Federal Circuit Bar Association Model Instructions, Northern District of California Model Patent Jury Instructions and relevant case law. See, infra Instruction 3.1 (WHAT A PATENT IS AND HOW ONE IS OBTAINED (UNDISPUTED)); Instruction 7.2 (DATE OF COMMENCEMENT OF DAMAGES (DISPUTED)). Of course, where O'Malley provides an appropriate instruction, the Foundation has worked to incorporate that authority. But here, the O'Malley instruction is not appropriate.

O'Malley requires the Court to "describe separately each claim plaintiff alleges to have been infringed." O'Malley et al., §158.1. Notwithstanding the difficulty the Foundation foresees on reaching agreement on a neutral description of the claims, this requirement is not appropriate in the preliminary instructions, and is duplicative of the claim construction that will be provided to the jury, Instruction 4.5b on means-plus-function claims, and much of the argument expected to be presented to the jury. Likewise, the next sentence in O'Malley calls for the Court to "describe court's claim construction of meaning and scope of claims." Id. The Cochlear Defendants objected to reading a lengthy, technical, claim construction order before the trial started, and the Foundation concurs. The next sentence in O'Malley reads "Plaintiff ___ seeks damages for the period commencing with the issuance of the patent in suit up until the present time." Id. Again, O'Malley is off point in this case, since damages will commence beginning six years prior to the filing of suit. Indeed, the Cochlear Defendants argue that damages are further

limited by marking requirements.  See Instruction 7.2a  "DATE OF COMMENCEMENT OF DAMAGES" (DISPUTED).

Recognizing that the bulk of O'Malley is apposite, the Cochlear Defendants' rely on the Northern District Instruction A-3.  But much of this is not material the jury.  For instance, the Cochlear Defendants propose instructing the jury that "You may hear evidence …that the Cochlear Defendants improved on the asserted patents." This instruction is not relevant to this case.

Defendants next attempt to prohibit the Foundation from arguing direct infringement of Claim 10 of the '616 patent, or contributory infringement and inducement of Claim 1 of the '616 Patent and Claims 6 and 7 of the '691 Patent. However, rather than argue that these claims were not pled, the Cochlear Defendants argue that the claims are not supported by discovery. *See*, *e.g.*, Cochlear's Argument *supra* ("the Foundation has only provided discovery on the indirect infringement of claim 10 of the '616 patent.") The Foundation disagrees with Cochlear's summary of discovery in this case. Moreover, to the extent that discovery is insufficient, the Court has already admonished Cochlear that now is not the time to file a summary judgment motion. *See* Pretrial Conference Tr. at 13:15 ("It's too late to file a summary judgment motion"). Similarly, the Cochlear Defendants have not filed any moving papers or motions in limine on this issue. Just as the Court rejected the defendants' previous attempt to use the pretrial conference order as a platform for summary judgment on willfulness, the Court should reject the defendants' attempt to achieve summary judgment through its jury instruction argument.

## 3.2  NATURE OF THE ACTION

### [THE COCHLEAR DEFENDANTS' TAILORED PROPOSED INSTRUCTION]

The plaintiffs here are the Alfred Mann Foundation (which I will refer to as the Foundation) and Advanced Bionics LLC.  I will refer to the Foundation and Advanced Bionics collectively as the Plaintiffs.

The defendants are Cochlear Americas and its Australian parent company, Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as the Cochlear Defendants.

This is an action for patent infringement based on two U.S. patents owned by the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The "patents in suit," are:

- United States Patent No. 5,609,616 entitled Physician's Testing System and Method for Testing Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `616 patent; and,

- United States Patent No. 5,938,691 entitled Multichannel Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `691 patent.

The Foundation asserts that the Cochlear Defendants infringe because they are making, using, selling, offering for sale in or importing into the United States products and methods that the Foundation believes are covered by claims of the patents in suit.  The Foundation asserts that the Cochlear Defendants allegedly directly infringe claim 1 of the `616 patent and claims 6-7 of the `691 patent, and indirectly infringe (by active inducement of infringement and contributory infringement) claim 10 of the `616 patent.  For convenience, I will sometimes refer

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-8-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

to claims 1 and 10 of the `616 patent as the "Asserted Claims of the `616 patent." Likewise, I will sometimes refer to claims 6 and 7 of the `691 patent as the "Asserted Claims of the `691 patent." When I refer to the Asserted Claims of the patents in suit, I mean to include all four of these claims.

The products that are alleged to infringe are: (i) the Nucleus 24, Freedom and Nucleus 5 implants; (ii)  the Sprint, ESPrit 3G, Nucleus Freedom and Nucleus 5 sound processors; and, (iii) the WinDPS software and Custom Sound software.  For convenience, I will sometimes refer to these products as the "Accused Products."

The Cochlear Defendants deny that they have directly or indirectly infringed any of the Asserted Claims of the patents in suit.  The Cochlear Defendants also assert that the Asserted Claims of the patents in suit are invalid or unenforceable for inequitable conduct.

You may hear evidence that the Cochlear Defendants have their own patent(s) or that the Cochlear Defendants improved on the asserted patents.  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case.  Meanwhile, please keep an open mind.

Your job will be to decide whether any of the asserted claims of the patents in suit have been infringed and whether those claims are invalid.  If you decide that any claim of either of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to AMF to compensate it for the infringement.  In that case, you will also need to make a finding as to whether the infringement was willful.  That decision should not affect any damages award you give.  I will take willfulness into account later.

Finally, you will also be asked to answer questions on the verdict form about Inequitable Conduct.  Once again, your decision on these questions should not affect

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-9-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  any of the other decisions you are asked to make.   I will make the determination of

2  whether anyone engaged in inequitable conduct based on your findings.

3

4  *Authority:*

5  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:1 and § 158:79 (6th ed. Aug.

6  2013); *Model Patent Jury Instructions for the Northern District of California (Nov.*

7  *3, 2011), Instr. A-2.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-10-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

### 3.2  NATURE OF THE ACTION

### [THE COCHLEAR DEFENDANTS' BROAD PROPOSED INSTRUCTION]

The plaintiffs here are the Alfred Mann Foundation (which I will refer to as the Foundation) and Advanced Bionics LLC.  I will refer to the Foundation and Advanced Bionics collectively as the Plaintiffs.

The defendants are Cochlear Americas and its Australian parent company, Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as the Cochlear Defendants.

This is an action for patent infringement based on two U.S. patents owned by the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The "patents in suit," are:

- United States Patent No. 5,609,616 entitled Physician's Testing System and Method for Testing Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `616 patent; and,

- United States Patent No. 5,938,691 entitled Multichannel Implantable Cochlear Stimulator.  For convenience, the parties and I will often refer to this patent as the `691 patent.

The Foundation asserts that the Cochlear Defendants infringe because they are making, using, selling, offering for sale in or importing into the United States products and methods that the Foundation believes are covered by claims of the patents in suit.  The Foundation asserts that the Cochlear Defendants directly infringe claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent, and indirectly infringe (by active inducement of infringement or contributory infringement) claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent. For convenience, I will sometimes refer to claims 1 and 10 of the `616 patent as the

"Asserted Claims of the `616 patent."  Likewise, I will sometimes refer to claims 6 and 7 of the `691 patent as the "Asserted Claims of the `691 patent."  When I refer to the Asserted Claims of the patents in suit, I mean to include all four of these claims.

The products that are alleged to infringe are: (i) the Nucleus 24, Freedom and Nucleus 5 implants; (ii) the Sprint, ESPrit 3G, Nucleus Freedom and Nucleus 5 sound processors; and, (iii) the WinDPS software and Custom Sound software.  For convenience, I will sometimes refer to these products as the "Accused Products."

The Cochlear Defendants deny that they have directly or indirectly infringed any of the Asserted Claims of the patents in suit.  The Cochlear Defendants also assert that the Asserted Claims of the patents in suit are invalid or unenforceable for inequitable conduct.

You may hear evidence that the Cochlear Defendants have their own patent(s) or that the Cochlear Defendants improved on the asserted patents.  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case.  Meanwhile, please keep an open mind.

Your job will be to decide whether any of the asserted claims of the patents in suit have been infringed and whether those claims are invalid.  If you decide that any claim of either of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to AMF to compensate it for the infringement.  In that case, you will also need to make a finding as to whether the infringement was willful.  That decision should not affect any damages award you give.  I will take willfulness into account later.

Finally, you will also be asked to answer questions on the verdict form about Inequitable Conduct.  Once again, your decision on these questions should not affect

any of the other decisions you are asked to make.   I will make the determination of whether anyone engaged in inequitable conduct based on your findings.

***Authority:***

*O'Malley, et al.*, 3A Fed. Jury Prac. & Instr. § 158:1 and § 158:79 (6th ed. Aug. 2013); *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. A-2.*

**The Foundation's Objection:**

*Cochlear's* de facto *motion for Summary Judgment of No Contributory Infringement or Inducement*

The Cochlear Defendants' accusation that the Foundation has not supported its claims of contributory infringement and inducement through pleadings and discovery is false, and their filings amount to an improper attempt to reach summary judgment on this issues through a pseudo motion *in limine*, contrary to the Court's admonishment otherwise.  Dckt. No. 300 at 3 ("The court will not hear or resolve motions in limine that are disguised summary judgment motions.").

The Cochlear Defendants have known for years that the Foundation alleged contributory infringement and inducement of all the asserted claims.  On August 18, 2008, the Foundation pled that Cochlear was "infringing the '691 patent, either directly, contributorily, or by inducing others to infringe." Dckt. No. 49, Reply and Counterclaims in response to Cochlear's Answer and Counterclaims, at ¶ 21.  Consistent with this pleading, the Foundation amended its interrogatory answer on November 13, 2008 to state:

> …in addition to claim 10 of the '616 patent, sales and offers for sale in the United States of various devices relating to cochlear implants and the importation of the devices into the United States coupled with the use of the devices in the United States by clinics, clinicians and doctors infringes at least claims 1 and 12 of the '616 patent, and claims 1, 2, 3, 4, 5, 6, 7, 8, 9, and 14 of the '691 patent.

Defendant Cochlear Ltd.'s First Set of Interrogatories to Plaintiff Alfred E. Mann Foundation for Scientific Research and Plaintiff's Objections and Second Supplemental Response to Same, at 9.

Contrary to the Cochlear Defendants' reading, this does not limit the Foundation to *only* direct infringement.  Indeed, the discussion of third party actors in the response, and "devices relating to" cochlear implant systems implies that

inducement and contributory infringement will be at issue.  Read in context with the Foundation's reply and additional pleadings, it is clear that the Foundation was asserting contributory and induced infringement.

Moreover, any doubt in Cochlear's mind would have been erased in 2010, when the Foundation filed a First Amended Complaint, followed by a reply to Cochlear's counterclaims, stating that Cochlear was "infringing the '616 patent, either directly, contributorily or by inducing others" and was "infringing the '691 patent, either directly, contributorily or by inducing others to infringe." Docket 146, ¶ 22; Docket 168, ¶ 21.

Indeed, ample evidence goes to support the Foundation's assertions on these issues.[1]  Dr. Kelsall testified about the contents of Cochlear's user manual, and stated that his staff was trained by courses provided by Cochlear, showing that Cochlear actively induced the infringing acts. *See* Deposition of David Kelsall, M.D., Dec. 10, 2008 at 17:3-18:6.  The claim charts indicate that Cochlear products were meant to work together in an infringing system, *e.g.* that they had no substantial noninfringing uses.  *See, e.g.,* Claim Chart for U.S. Pat. No. 5,938,691 at 43, 66.  Cochlear's knowledge that the third party acts infringe can be inferred from its knowledge of the '616 and '691 patents by at least 2003 and 2004 respectively. *See* Cochlear's Third Amended Response to Plaintiff's First Set of Interrogatories at 44-45.

Of course, the Cochlear Defendants are free to make counter arguments at trial and if, after the close of evidence, the Cochlear Defendants are still not convinced, they may file a motion for judgment as a matter of law.  However, using

---

[1] Since the Foundation does not believe that Cochlear's attempt to seek summary judgment on contributory infringement and inducement is proper, it has not burdened the Court with a comprehensive list of relevant facts at issue. Should the Court take Cochlear's summary judgment motion under advisement, the Foundation requests additional briefing.

the jury instructions and pretrial memorandum as an attempt to get a third bite at the summary judgment apple is inappropriate.

*The Cochlear Defendant's Other Language*

Much of the other language in Cochlear's instruction that differs from the Foundation's is not expected to be needed. For instance, the defendants suggest instructing that "You may hear evidence that the Cochlear Defendants have their own patent(s) **or that the Cochlear Defendants improved on the asserted patents.**" (emphasis added). None of the pleadings or evidence has suggested that the Cochlear Defendants will be arguing that they improved upon the Foundation's Design. Indeed, as discussed at the Meet and Confer, the Cochlear Defendants indicated that they will be primarily arguing that they thought they were practicing the prior art. This instruction is not expected to be applicable to this case and is not needed in the initial instructions.

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 3.2 is a correct statement of the law and the facts of this case.  Moreover, this instruction tracks the structure and language of the model instruction from O'Malley that the Court directed be used in its Order re Pretrial Proceedings [D.I. 300].  Accordingly, the Court should give this instruction.

First, the Cochlear Defendants Instruction No. 3.2, unlike the Foundation's proposed instruction, accurately reflects the claims at issue in this case.  The "Tailored Instruction" properly informs the jury that the Foundation accuses the Cochlear Defendants of directly infringing claim 1 of the '616 patent and claims 6-7 of the '691 patent, and indirectly infringing claim 10 of the '616 patent.

Throughout this case, particularly during discovery, the Foundation has only provided discovery on the indirect infringement of claim 10 of the '616 patent.  For example, when the Foundation was asked to "specifically identify the basis of the alleged infringement for each asserted claim by each asserted product…" the Foundation responded, in part, "Through its acts, the Cochlear defendants…infringe at least Claim 10 of the 616 patent, either directly, by inducement of others, or contributorily."  (See, the Foundation's May 2008 Response to Interrogatory No. 1).

The Foundation failed to provide any supplemental response that identifies any other claims of the patents-in-suit as being indirectly infringed.  Indeed, it was not until the Rule 16 meeting on November 12, 2013 that the Cochlear Defendants learned that the Foundation intended to pursue indirectly infringement claims for the other Asserted Claims.  By then, it was too late to file a motion for summary judgment or even a motion in limine.  Having failed to provide discovery on these indirect theories of infringement (coupled with its failure to supplement its

Responses), the Foundation cannot now pursue indirect infringement theories under all of the Asserted Claims.[2]

In *ATD Corp. v. Lydall, Inc.*, the Federal Circuit upheld the exclusion of an invalidity theory that was proposed by the defendants after the close of discovery. 159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated reason for precluding the invalidity theory was "exercising [its] discretion under the rule of the Federal Rules of Civil Procedure to preclude a party from relying on theories not made available or not disclosed to the opposing side."  Id.  The Federal Circuit agreed, holding that "[t]he district court in the instant case was well within its discretion in excluding the Munters patent, for the record shows that Lydall offered no reason to justify its submission long after the close of discovery."  *See also Markos v .Sears, Roebuck and Co.*, 2007 WL 5162457 at *1 (C.D. Cal., Mar. 19, 2007) (precluding "all testimony by Plaintiff related to his [newly asserted] claim" under Rule 26 because "Defendant has had no opportunity to conduct discovery on this theory [so] it would be unfairly prejudicial for Plaintiff to argue this theory at trial.")

Here, Plaintiffs have no justification for their failure to assert a claim of inducement or contributory infringement for any claim other than claim 10 of the '616 patent prior to the close of discovery.  The Cochlear Defendants would be substantially prejudiced if the court were to allow these claims to be inserted into this action at this 11th hour as they have taken no discovery on them nor have they prepared any expert testimony on these never previously-asserted claims.  As such, the jury should only be instructed as to those claims that are properly at issue in this

---

[2] Without waiving the foregoing arguments and objections, the Cochlear Defendants have though-out its proposed instructions also proposed a "Broad" Instruction to the Court in the event the court does not restrict AMF to its discovery responses in pursuing its claims at the upcoming trial.  The Broad Instructions address the remaining shortcomings in the instruction proffered by AMF.  For brevity, the Defendants will not repeat this discussion or reservation in every instance, but will rely on this blanket statement as to all such "Broad" instructions.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-18-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of

2   the '691 patent, and active inducement/contributory infringement of only claim 10

3   of the '616 patent.

4         Second, the Cochlear Defendants Instruction No. 3.2 properly informs the

5   jury that it will be asked to make a decision regarding inequitable conduct.  This is

6   an important affirmative defense to the enforceability of the '616 patent and this

7   Court has already determined that the jury will provide an advisory opinion on this

8   issue.  As such, the Cochlear Defendants' instruction tells the jury that it will be

9   asked to answer questions about inequitable conduct on the verdict form, thereby

10  telling them to watch for that issue during the trial.  The Foundation's proposed

11  instruction ignores the jury's role on this issue completely and, therefore, is

12  incomplete and not proper under the Court's ruling at the first Pre-Trial Conference.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-19-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                   07-08108-FMO-SH

1
2
3
4
5
6
7
8
9
10
11
12

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-20-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Full Instruction of the Jury**

The Cochlear Defendants believe that the jury should be fully instructed after the close of evidence.  This will necessitate the reinstruction of the jury on certain issues.  This is common practice and recognized in the Northern District Model Jury instructions that are referred to in O'Malley as a source for certain instructions that O'Malley does not provide.  *See* Model Patent Jury Instructions § A.4, Northern District of California (Nov. 3, 2011) ("The court may want to consider giving preliminary instructions on the patent law applicable to the specific issues in the case.  This could help focus the jury on the facts relevant to the issues it will have to decide.  If this is done, the instructions intended to be given after the close of evidence could be adapted and given as preliminary instructions. This, of course, would not negate the need to give complete instructions at the close of evidence.")

The Cochlear Defendants have inserted the necessary instructions [1.3 – 2.13] for the jury to be fully instructed below.

### 1.3  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.3*

## 1.4  BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.4*

# 1.6  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

        1.     the sworn testimony of any witness;

        2.     the exhibits which are received into evidence; and

        3.     any facts to which the lawyers have agreed.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.6*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-24-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 1.7  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.     Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.7*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-25-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 1.8  EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.8*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-26-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                        07-08108-FMO-SH

## 1.9  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.9*

## 1.10  RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.10*

## 1.11  CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness's testimony;

6.    the reasonableness of the witness's testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.11*

### 1.13  NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

***Authority:***

*Ninth Circuit Manual of Model Jury Instructions, 1.13*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-30-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

# 1.14  TAKING NOTES

You may use your notes to help you remember the evidence.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.14*

## 1.18  BENCH CONFERENCES AND RECESSES

From time to time during the trial, it was necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how to treat certain evidence under the rules of evidence and to avoid confusion and error.

I may not have always granted an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 1.18*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.1  STIPULATED TESTIMONY[3]

The parties may agree on what a particular witness's testimony would be if
called as a witness.  If so, you should consider that testimony in the same way as if it
had been given here in court.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.1*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

[3] This instruction should only be read if the parties present any stipulated testimony

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 2.2  STIPULATIONS OF FACT

The parties have agreed to certain facts to be placed in evidence in this trial that will now be read to you.  You should therefore treat these facts as having been proved.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.2*

1

## 2.3 JUDICIAL NOTICE[4]

2

    The court has decided to accept as proved the following facts, even though no

3

evidence has been introduced on the subject. You must accept this fact as true.

4

5

*Authority:*

6

*Ninth Circuit Manual of Model Jury Instructions, 2.3*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

[4] This instruction should only be read if the court takes judicial notice of a fact.

## 2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  The deposition of that person may be used at the trial.

As to any deposition testimony provided, you should consider that testimony presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.4; FRE 801(d)(2); FRCivPro 30(b)(6)*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-36-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1

## 2.8  IMPEACHMENT EVIDENCE—WITNESS

2      The evidence that a witness lied under oath on a prior occasion may be

3 considered, along with all other evidence, in deciding whether or not to believe the

4 witness and how much weight to give to the testimony of the witness and for no

5 other purpose.

6

7 *Authority:*

8 *Ninth Circuit Manual of Model Jury Instructions, 2.8*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 2.10  USE OF INTERROGATORIES OF A PARTY

2
3
4
5
6

Any evidence presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

7

8

*Authority:*

9

*Ninth Circuit Manual of Model Jury Instructions, 2.10*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## 2.11  EXPERT OPINION

2

     Some witnesses, because of education or experience, have been permitted to

3

state opinions and the reasons for those opinions.

4

     Opinion testimony should be judged just like any other testimony.  You may

5

accept it or reject it, and give it as much weight as you think it deserves, considering

6

the witness's education and experience, the reasons given for the opinion, and all the

7

other evidence in the case.

8

9

*Authority:*

10

*Ninth Circuit Manual of Model Jury Instructions, 2.11*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-39-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**2.12  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence are shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.12*

## 2.13  CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries may have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority:*

*Ninth Circuit Manual of Model Jury Instructions, 2.13*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-41-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

### 4.1 "INFRINGEMENT" (DISPUTED) – THE FOUNDATION'S PROPOSED INSTRUCTION

There are three ways to infringe a patent applicable to this case.

<u>First</u>:  One may directly infringe a patent;

<u>Second</u>:  One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer.

<u>Third</u>: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

The Foundation alleges that the Cochlear Defendants have directly infringed claims 1 and 10 of the '616 patent and claims 6 and 7 of the '691 patent, both literally and under the doctrine of equivalents.

The Foundation alleges that the Cochlear Defendants have actively induced others to infringe claims 1 and 10 of the '616 patent and claims 6 and 7 of the '691 patent, both literally and under the doctrine of equivalents.

The Foundation alleges that the Cochlear Defendants have contributorily infringed claims 1 and 10 of the '616 patent and claims 6 and 7 of the '691 patent, both literally and under the doctrine of equivalents.

The burden of proof is upon the Foundation to prove infringement by a preponderance of the evidence.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 and 158.77 (6th ed. Aug. 2013) as amended.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-42-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

As discussed fully above in conjunction with Instruction 3.2, it would be highly prejudicial to allow AMF to put claims and theories of liability to the jury that it *never* disclosed in discovery.  Throughout this litigation, AMF never provided discovery to support its indirect infringement theories for claim 1 of the '616 patent and claims 6-7 of the '691 patent.  Indeed, the first time AMF indicted it was intending to pursue indirect infringement on any claim other than claim 10 of the '616 patent was at the Rule 16 meeting of counsel on November 12, 2013.  This was long after the date for filing summary judgment motions or motions in limine.  Up to that time, the Defendants had properly relied on AMF's discovery responses that indirect infringement only applied to Claim 10 of the '616 patent.  Thus, this instruction is wrong as it allows AMF to proceed on improper claims and theories.

The Plaintiffs also incorrectly seek to apply the doctrine of equivalents to claim 10 of the '616 patent.  Prosecution history estoppel bars Plaintiffs from arguing that displaying impedance is equivalent to displaying voltage under the doctrine of equivalents as a matter of law.  The Supreme Court made clear that the attempt to apply the doctrine of equivalents to claim 10 of the '616 patent is prohibited by the substantive amendment made by the Foundation to obtain the patent in the first place.  Plaintiff substantively amended this element of the relevant claims to avoid prior art and obtain allowance of the claims.  This activity results in a surrender of any scope of equivalents.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope.");  *see also Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) ("[P]rosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution.").

**Foundation's Response:**

The Cochlear Defendants' position on Instruction 4.1 is fundamentally flawed.  As stated in the Foundation's Objections to Cochlear's Proposed Instruction 4.1, Cochlear's attempts to exclude the Foundation's allegations of inducement and contributory infringement are improper for several reasons.  First, as the Court explained at the December 19, 2013 Pre-Trial Conference, Cochlear should have moved for summary judgment or filed a motion in limine to resolve such issues.  *See* December 19, 2013 Pre-trial Conference Tr. at 12:22 – 15:10.  Cochlear failed to do either.

Moreover, the Cochlear Defendants' accusation that the Foundation has not supported its claims of contributory infringement and inducement through pleadings and discovery is false, and their filings amount to an improper attempt to reach summary judgment on this issues through a pseudo motion in limine, contrary to the Court's admonishment otherwise. Docket 300 at 3 ("The court will not hear or resolve motions in limine that are disguised summary judgment motions.")

The Cochlear Defendants have known for years that the Foundation alleged contributory infringement and inducement of all the asserted claims. On August 18, 2008, the Foundation pled that Cochlear was "infringing the '691 patent, either directly, contributorily, or by inducing others to infringe." Docket 49, Reply and Counterclaims in response to Cochlear's Answer and Counterclaims ¶ 21. Consistent with this pleading, the Foundation amended its interrogatory answer on November 13, 2008 to state:

> …in addition to claim 10 of the '616 patent, sales and offers for sale in the United States of various devices relating to cochlear implants and the importation of the devices into the United States coupled with the use of the devices in the United States by clinics, clinicians and doctors infringes at least claims 1 and 12 of the '616 patent, and claims 1, 2, 3, 4, 5, 6, 7, 8, 9, and 14 of the '691 patent.

1  Defendant Cochlear Ltd.'s First Set of Interrogatories to Plaintiff Alfred E. Mann

2  Foundation for Scientific Research and Plaintiff's Objections and Second

3  Supplemental Response to Same at 9.

4      Contrary to the Cochlear Defendants' reading, this does not limit the

5  Foundation to only direct infringement.  Indeed, the discussion of third party actors

6  in the response, and "devices relating to" cochlear implant systems implies that

7  inducement and contributory infringement will be at issue.  Read in context with the

8  Foundation's reply and additional pleadings, Cochlear would have inferred that the

9  Foundation was asserting contributory and induced infringement.

10     Moreover, any doubt in Cochlear's mind would have been erased in 2010,

11  when the Foundation's First Amended Complaint, and subsequent reply stated that

12  Cochlear was "infringing the '616 patent, either directly, contributorily or by

13  inducing others" and was "infringing the '691 patent, either directly, contributorily

14  or by inducing others to infringe." Docket 146, ¶ 22; Docket 168, ¶ 21.

15     Indeed, ample discovery goes to support the Foundation's assertions on these

16  issues.  Dr. Kelsall testified about Cochlear's user manual, and that his staff were

17  trained by courses provided by Cochlear, showing that Cochlear actively induced

18  the infringing acts. See Deposition of David Kelsall, M.D., Dec. 10, 2008 at 17:3-

19  18:6.  The Foundation's expert's reports indicate that Cochlear products were meant

20  to work together in an infringing system, e.g., that they had no substantial non-

21  infringing uses.  See, e.g., Supplemental Expert Report of John Choma, Ph.D.

22  (November 30, 2012) at App. B, p. 21-22 and App. D, p. 1.  Cochlear's knowledge

23  that the third party acts infringe can be inferred from its knowledge of the '616 and

24  '691 patents by at least 2003 and 2004 respectively. See Cochlear's Third Amended

25  Response to Plaintiff's First Set of Interrogatories at 44-45.

26     Of course, the Cochlear Defendants are free to make counter arguments at

27  trial and if, after the close of evidence, the Cochlear Defendants are still not

28  convinced, they may (and no doubt, will) file a motion for judgment as a matter of

law.  However, using the jury instructions and pretrial memorandum as an attempt to get a third bite at the summary judgment apple is inappropriate.

The Cochlear Defendants' attempt to exclude the Foundation's allegations of infringement under the doctrine of equivalents is also improper.  It is undisputed that the Foundation has presented allegations that the accused Cochlear products infringe the asserted patents under the Doctrine of Equivalents.  For at least claim 10 of the '616 patent, it is further undisputed that the Foundation has presented detailed evidence and expert testimony supporting that structures contained in the accused products are equivalent under 35 U.S.C. 112, ¶ 6 for certain disputed terms to show literal infringement.  This same analysis showing literal infringement and equivalence under 35 U.S.C. § 112, ¶ 6 also supports a finding of infringement under the Doctrine of Equivalents.

For at least these reasons, Cochlear's proposed instruction should be rejected.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-46-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.1  INFRINGEMENT

## [THE COCHLEAR DEFENDANTS' TAILORED PROPOSED INSTRUCTION]

There are three ways to infringe a patent applicable to this case.

<u>First</u>:  One may directly infringe a patent;

<u>Second</u>:  One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer.

Third:  One may contribute to the infringement of another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

Plaintiffs allege that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

Plaintiffs allege that the Cochlear Defendants have actively induced others to infringe and/or have contributorily infringed claim 10 of the `616 patent.

The burden of proof is upon the Foundation to prove infringement by a preponderance of the evidence.


*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 (6th ed. Aug. 2013) as amended.

## 4.1  INFRINGEMENT

## [THE COCHLEAR DEFENDANTS' BROAD PROPOSED INSTRUCTION]

There are three ways to infringe a patent applicable to this case.

<u>First</u>:  One may directly infringe a patent;

<u>Second</u>:  One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer.

Third:  One may contribute to the infringement of another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

The Foundation alleges that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The Foundation alleges that the Cochlear Defendants have actively induced others to infringe claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The Foundation alleges that the Cochlear Defendants have contributorily infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent.

The burden of proof is upon the Foundation to prove infringement by a preponderance of the evidence.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:20 (6th ed. Aug. 2013) as amended.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-48-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

With its proposed instruction, Cochlear attempts to exclude the Foundation's allegations of inducement and contributory infringement.  This is improper for several reasons.  First, as the Court explained at the December 19, 2013 Pre-Trial Conference, Cochlear should have moved for summary judgment or filed a motion in limine to resolve such issues.  *See* December 19, 2013 Pre-trial Conference Tr. at 12:22 – 15:10.  Cochlear failed to do either.

Moreover, the Cochlear Defendants' accusation that the Foundation has not supported its claims of contributory infringement and inducement through pleadings and discovery is false, and their filings amount to an improper attempt to reach summary judgment on this issues through a pseudo motion in limine, contrary to the Court's admonishment otherwise. Docket 300 at 3 ("The court will not hear or resolve motions in limine that are disguised summary judgment motions.")

The Cochlear Defendants have known for years that the Foundation alleged contributory infringement and inducement of all the asserted claims. On August 18, 2008, the Foundation pled that Cochlear was "infringing the '691 patent, either directly, contributorily, or by inducing others to infringe." Docket 49, Reply and Counterclaims in response to Cochlear's Answer and Counterclaims ¶ 21. Consistent with this pleading, the Foundation amended its interrogatory answer on November 13, 2008 to state:

> …in addition to claim 10 of the '616 patent, sales and offers for sale
> in the United States of various devices relating to cochlear implants
> and the importation of the devices into the United States coupled with
> the use of the devices in the United States by clinics, clinicians and
> doctors infringes at least claims 1 and 12 of the '616 patent, and
> claims 1, 2, 3, 4, 5, 6, 7, 8, 9, and 14 of the '691 patent.

Defendant Cochlear Ltd.'s First Set of Interrogatories to Plaintiff Alfred E. Mann Foundation for Scientific Research and Plaintiff's Objections and Second

Supplemental Response to Same at 9.

Contrary to the Cochlear Defendants' reading, this does not limit the Foundation to only direct infringement.  Indeed, the discussion of third party actors in the response, and "devices relating to" cochlear implant systems implies that inducement and contributory infringement will be at issue.  Read in context with the Foundation's reply and additional pleadings, Cochlear would have inferred that the Foundation was asserting contributory and induced infringement.

Moreover, any doubt in Cochlear's mind would have been erased in 2010, when the Foundation's First Amended Complaint, and subsequent reply stated that Cochlear was "infringing the '616 patent, either directly, contributorily or by inducing others" and was "infringing the '691 patent, either directly, contributorily or by inducing others to infringe." Docket 146, ¶ 22; Docket 168, ¶ 21.

Indeed, ample discovery goes to support the Foundation's assertions on these issues.  Dr. Kelsall testified about Cochlear's user manual, and that his staff were trained by courses provided by Cochlear, showing that Cochlear actively induced the infringing acts. See Deposition of David Kelsall, M.D., Dec. 10, 2008 at 17:3-18:6.  The Foundation's expert's reports indicate that Cochlear products were meant to work together in an infringing system, e.g., that they had no substantial non-infringing uses.  *See, e.g.*, Supplemental Expert Report of John Choma, Ph.D. (November 30, 2012) at App. B, p. 21-22 and App. D, p. 1.  Cochlear's knowledge that the third party acts infringe can be inferred from its knowledge of the '616 and '691 patents by at least 2003 and 2004 respectively. See Cochlear's Third Amended Response to Plaintiff's First Set of Interrogatories at 44-45.

Of course, the Cochlear Defendants are free to make counter arguments at trial and if, after the close of evidence, the Cochlear Defendants are still not convinced, they may (and no doubt will) file a motion for judgment as a matter of law.  However, using the jury instructions and pretrial memorandum as an attempt to get a third bite at the summary judgment apple is inappropriate.

The Cochlear Defendants' attempt to exclude the Foundation's allegations of infringement under the doctrine of equivalents is also improper.  It is undisputed that the Foundation has presented allegations that the accused Cochlear products infringe the asserted patents under the Doctrine of Equivalents.  For at least claim 10 of the '616 patent, it is further undisputed that the Foundation has presented detailed evidence and expert testimony supporting that structures contained in the accused products are equivalent under 35 U.S.C. 112, ¶ 6 for certain disputed terms to show literal infringement.  This same analysis showing literal infringement and equivalence under 35 U.S.C. § 112, ¶ 6 also supports a finding of infringement under the Doctrine of Equivalents.

The Foundation's proposed instruction is clearer, more likely to be understood by the jury, and more accurately supported by O'Malley.

For at least these reasons, the Foundation's more accurate proposed instruction should be adopted.

**Cochlear's Response:**

The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order. The proposed instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law. In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving their objections the Cochlear Defendants also submit a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

In particular, the Cochlear Defendants submit an instruction instructing the jury that the Plaintiffs allege that the Cochlear Defendants have directly infringed claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent and that the Cochlear Defendants have actively induced others to infringe and/or have contributorily infringed claim 10 of the `616 patent.

The Plaintiffs are seeking to assert claims that they never disclosed during discovery, to the significant prejudice of the Cochlear Defendants. This applies to any assertion of inducement of infringement or contributory infringement as to any claim other than claim 10 of the `616 patent and to the assertion of doctrine of equivalents as to any claim other than claim 10 of the `616 patent.

Defendants' Interrogatory No. 1 required Plaintiffs to set forth the claims of each of the patents in suit together with the theory of infringement and the details of how each element of the claim was met by the Cochlear Defendants' products under each theory of infringement. Defendants' Interrogatory No. 2 required Plaintiffs to set forth, inter alia, claims of each of the patents in suit on which the contend the doctrine of equivalents applies. In their response and supplemental responses, the only claim ever identified as being subject to an assertion of inducement of infringement or contributory infringement was claim 10 of the `616 patent. Thus,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-52-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   Fed. R. Evid. Rule 37, and the case law interpreting Rule 37, uniformly require the

2   automatic exclusion of any argument and evidence at trial based on a claim not

3   asserted during discovery and on which no discovery was ever provided by

4   Plaintiffs.

5        In *ATD Corp. v. Lydall, Inc*., the Federal Circuit upheld the exclusion of an

6   invalidity theory that was proposed by the defendants after the close of discovery.

7   159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated reason for

8   precluding the invalidity theory was "exercising [its] discretion under the rule of the

9   Federal Rules of Civil Procedure to preclude a party from relying on theories not

10  made available or not disclosed to the opposing side." Id.  The Federal Circuit

11  agreed, holding that "[t]he district court in the instant case was well within its

12  discretion in excluding the Munters patent, for the record shows that Lydall offered

13  no reason to justify its submission long after the close of discovery."  *See also*

14  *Markos v .Sears, Roebuck and Co*., 2007 WL 5162457 at *1 (C.D. Cal., Mar. 19,

15  2007) (precluding "all testimony by Plaintiff related to his [newly asserted] claim"

16  under Rule 26 because "Defendant has had no opportunity to conduct discovery on

17  this theory [so] it would be unfairly prejudicial for Plaintiff to argue this theory at

18  trial.")

19       Here, Plaintiffs have no justification for their failure to assert a claim of

20  inducement or contributory infringement for any claim other than claim 10 of the

21  '616 patent prior to the close of discovery.  The Cochlear Defendants would be

22  substantially prejudiced if the court were to allow these claims to be inserted into

23  this action at this 11th hour as they have taken no discovery on them nor have they

24  prepared any expert testimony on these never previously-asserted claims.  As such,

25  the jury should only be instructed as to those claims that are properly at issue in this

26  case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of

27  the '691 patent, and active inducement/contributory infringement of only claim 10

28  of the '616 patent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-53-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

The Plaintiffs also incorrectly seek to apply the doctrine of equivalents to claim 10 of the '616 patent.  Prosecution history estoppel bars Plaintiffs from arguing that displaying impedance is equivalent to displaying voltage under the doctrine of equivalents as a matter of law.  The Supreme Court made clear that the attempt to apply the doctrine of equivalents to claim 10 of the `616 patent is prohibited by the substantive amendment made by the Foundation to obtain the patent in the first place.  Plaintiff substantively amended this element of the relevant claims to avoid prior art and obtain allowance of the claims.  This activity results in a surrender of any scope of equivalents.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope.");  *see also Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) ("[P]rosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution.").

## 4.5b "DIRECT INFRINGEMENT— LITERAL INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS" (DISPUTED) – FOUNDATION'S PROPOSAL

As I have previously explained, claim 1 of the '616 patent, and claims 6 and 7 of the '691 patent include elements that are in means-plus-function form.

A product meets a means-plus-function element of a claim if: (1) it has a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to one or more of the corresponding structures described in the patent.  I will provide you with my definitions of the functions of certain of these elements in the patent claims and I will identify the corresponding structures in the patent.

For purposes of this trial, I have interpreted each means-plus-function element for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements.  Specifically, I have determined the following:

**For Claim 1 of the `616 patent**:

• For the term "transmitting means for transmitting data-containing signals to the ICS" the recited function is "transmitting data-containing signals to the ICS" and the corresponding structure is "an antenna and a transmitter."

• For the term "the ICS comprising: (a) receiving means for receiving the data-containing signals" the recited function is "receiving the data-containing signals" and the corresponding structure is "a receiver connected to a main coil/antenna.  The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

• For the term "monitor means in the processor means and responsive to the data-containing signals for (1) selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage associated with said pair of electrodes, and (2) generating

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

stimulator status-indicating signals," the two recited functions are "selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage associated with said pair of electrodes" and "generating stimulator status-indicating signals;" the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

• For the term "telemetry means for transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" the recited function is "transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna. The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

• For the term "external processor means coupled to the transmitting means of the external headpiece/transmitter for receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" the recited function is "receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" and the corresponding structure is an "antenna, receiver and microprocessor."

• For the term "user-controllable means connected to the external processor means for selectively generating and controlling the data-containing signals transmitted by the transmitting means of external headpiece/transmitter means" the recited function is "selectively generating and controlling the data-containing signals transmitted by the transmitting means of the external headpiece/transmitter means" and the corresponding structure is "three rotary panel knobs which control potentiometers that control a microprocessor."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-56-   FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

•       For the term "manual means for specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" the recited function is "specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" and the corresponding structure is "an adjustable rotary control knob which controls peak output current."

**For Claim 6 of the '691 patent**:

•       For the term "audio signal receiving means" the recited function is "receiving audio signals" and the corresponding structure is "a microphone."

•       For the term "means for generating data indicative of the audio signal" the recited function is "generating data indicative of the audio signal" and the corresponding structure is "a microprocessor."

•       For the term "means for transmitting the data to an implanted cochlea stimulator (ICS)" the recited function is "transmitting the data to an implanted cochlea stimulator (ICS)" and the corresponding structure is "an antenna and a transmitter."

•       For the term "the ICS including: means for receiving transmissions from the WP" the recited function is "receiving transmissions from the WP" and the corresponding structure is "a receiver connected to a main coil/antenna.  The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

•       For the term "means in the ICS responsive to data from the WP for selectively monitoring at least one of the electrodes or voltages in the ICS and for generating ICS-status-indicating signals" there are two recited functions: "selectively monitoring at least one of the electrodes or voltages in the ICS" and "generating ICS-status-indicating signals"; the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

•     For the term "means in the ICS for transmitting such ICS-status-indicating signals to the WP" the recited function is "transmitting such IC-status-indicating signals to the WP" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna.  The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

•     For the term "means in the WP for receiving and processing the ICS-status-indicating signals" the recited function is "receiving and processing the ICS-status-indicating signals" and the corresponding structure is "a telemetry receiver, microprocessor and gate array."

**For Claim 7 of the '691 patent**:

In addition to the terms from claim 6, the following terms also apply to claim 7:

•     For the term "means for transmitting power signals from the WP to the ICS" the recited function is "transmitting power signals from the WP to the ICS" and the corresponding structure is "a transmitter and an antenna."

•     For the term "means in the ICS for processing the power signals and for generating power for the ICS" the recited function is "processing the power signals and generating power for the ICS" and the corresponding structure is "a receiver including a power rectifier, a regulator, voltage reference, a voltage regulator, error amplifier and a voltage down converter."

•     For the term "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of transmissions to the ICS" the recited function is "controlling the power level of transmission to the ICS" and the corresponding structure is "a switching regulator of a gate array."

If the product performs the specific function recited in the claims, but uses a different structure than what is described in the patent, there will still be

infringement if you determine that that structure in the Accused Product is "equivalent" to the structure disclosed in the patent.

In order to prove that a structure in the Defendants' accused products is equivalent to the structure in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7), the Foundation must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7) and the structure in the Defendants' accused products are not substantial.

On the other hand, if the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim.  Even if the product has a structure that performs the function recited in the claim but the structure is not either identical or "equivalent" to one or more of the structure(s) that I defined to you as being described in the '616 and '691 patents and performing this function, the product does not literally infringe the asserted claim.

*Authority:*

Adapted from Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar Association (June 2013) (and sources cited therein).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-59-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  In contravention of the Court's Order, the Foundation seeks to use a modified version of an unapproved model instruction propounded by the Federal Circuit Bar Association.  The Foundation's proffer should be rejected for their failure to comply with the Court's Order.

The Plaintiffs, in their Objection, conspicuously fail to mention that their instructions are in direct contradiction to the Court's Order, choosing instead to make mushy arguments that their instruction is "clearer and more readily understood by the jury."  By completely ignoring this Court's Order, the Foundation has increased the burden on the Parties and this Court and created a controversy when none need exist.  Moreover, the tone and flow of the instruction is out of synch with the O'Malley model instructions that Defendants have used as the Court ordered.

O'Malley specifically recommends the use of the model instructions from the ND of CA for this issue.  Defendants' language comes directly from the NDCA instruction.  Defendants submit that its instruction, unlike AMF's, is balanced and fair.  It is long enough to cover the issues but not so long as to cause the jury to get confused.  It stands in stark contrast to AMF's proposal which is highly stilted toward AMF.

AMF's instructions are confusing and longer than the defendants one instruction.  Moreover, they do not explain the issue in the clear and brief way presented by Defendants example in their instruction.  This real world example is verbatim from the ND CA model that O'Malley suggests be used and actually explains the issue with clarity and brevity.  AMF's real objection is just that, they do

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-60-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                        07-08108-FMO-SH

1   not want the jury to understand the analysis, and hope to browbeat them into a

2   verdict.

3        AMF wants to repeatedly discuss equivalence in the hope that if they

4   browbeat the jury, they will get a verdict.  Thus, AMF discussed equivalence in this

5   instruction, in its proposed separate instruction on structural equivalents and in a

6   third instruction on doctrine of equivalence.  This is wrong and prejudicial to

7   Defendants.  This repeated directing of the jury to equivalents is improper as, here,

8   the analysis under 35 USC section 112 para 6 structural equivalents and the doctrine

9   of equivalents are identical.  AMF admitted in the meet and confer transcript that the

10   same evidence will be presented for each.  Meet and Confer transcript from 12-27-

11   2013 at 71: 6-13 and 72: 2-24; Meet and Confer transcript from 01-02-2014 at 102:

12   25 – 103:22 (the same evidence will be used for all equivalent analysis leading to no

13   distinction).

14        The single multiple instructions provided by AMF are improper for the reason

15   that the only dispute is regarding structural equivalents under 35 U.S.C. § 112, ¶ 6.

16   The Federal Circuit has recognized that the structural equivalents analysis is nearly

17   identical to equivalence analysis under the doctrine of equivalents.  *See, e.g.,*

18   *Chiuminatta Concrete Concepts Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303,

19   1310 (Fed. Cir. 1998) (holding that the two tests for equivalence are "closely

20   related" and that both apply "similar analyses of insubstantiality of differences.")

21   The key distinction between § 112, ¶ 6 structural equivalents and the Doctrine of

22   Equivalents is that the Doctrine of Equivalents encompasses after-developed

23   technologies.  This is not an issue in this case, which means that Doctrine of

24   Equivalents analysis and § 112, ¶ 6 structural equivalents analysis are identical as

25   only structure is involved.  *See, e.g.*, *Kemco Sales, Inc. v. Control Papers Co., Inc.*,

26   208 F.3d 1352, 1364 (Fed. Cir. 2000) (holding that the test for structural equivalents

27   under section 112, paragraph 6 requires performing the function in "substantially the

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-61-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

same way, with substantially the same result.")  As such, there is no reason to separate these instructions into two separate instructions as the Plaintiffs have done.

Further, under Supreme Court precedent, the Foundation is estopped from making its Doctrine of Equivalents arguments.  It is long settled law that the doctrine of equivalents cannot be used to capture material surrendered in prosecution.  *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (*en banc*) ("However, prosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution… 'Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope.'") (citing *Fest Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)).  Each of the limitations presented above were amended during prosecution for reasons of patentability.  As such, the doctrine of equivalents is not available to these limitations under prosecution history estoppel.  The jury must be instructed as to these limitations.  Otherwise, they may incorrectly find infringement under the doctrine of equivalents, which would require this Court and the parties to re-try the issue of infringement.  The Foundation's objection to this instruction, based on a basic tenet of patent law, exposes their intent to confuse the jury.

Further, in order for a jury to determine whether an element of the accused product is equivalent to an element of the claim, the jury must be informed as to the boundaries of what constitutes an equivalent.  It is clear that it is the duty of the jury to determine whether an element of the accused product is equivalent to an element of the claim.  See, e.g., O'Malley Instruction 4.5e (charging the jury with determining "whether an element of the 'accused product' is the substantial equivalent of an essential element of the invention" and stating that such determination must be made "in the light of what range of equivalents is reasonably allowable.")  By failing to instruct the juries as to the boundaries of what constitutes an equivalent, Plaintiffs' instruction does not give the jury sufficient information on

1   which to make an equivalence determination.

2        The Cochlear Defendants do not seek to put the issues of prosecution history

3   estoppel or prosecution disclaimer with the jury, but to provide the jury with

4   sufficient instruction so that it can correctly determine whether or not there is

5   infringement by equivalents.  If Plaintiffs' instruction is used, the jury may find

6   infringement under the doctrine of equivalents, only for the Court to determine that

7   equivalents are narrowed by prosecution history estoppel or prosecution disclaimer.

8   Such a scenario would then require the Court and the parties to retry the issue of

9   infringement because the jury was not instructed as to the limitations on equivalents,

10  and it would be impossible to parse the jury's decision to determine whether the

11  jury's decision was based on an equivalent that should not have been considered.

12       Finally, AMF's complains about the reference to the claim being "Fixed upon

13  issuance." This is not a hard concept to understand – namely, that the literal scope of

14  a patent claim is fixed the day the patent is issued.  It comes directly from NDCA,

15  blessed by O'Malley.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Foundation's Response:**

In this case, the jury will be asked, in part, to find infringement of several means-plus-function limitations directly, as well as infringement of several means-plus-function limitations via structural equivalence.  Such a task is daunting even to the most savvy patent litigator.  Cochlear's proposed instruction provides no assistance to the jury as it muddles these concepts into a single, lengthy instruction.  Since the Foundation's proposed instruction separates these concepts into two, easily understood instructions, both of the Foundations proposed instructions should be adopted.

In addition, the Cochlear Defendants' proposed instruction is further improper as it attributes the responsibility for determining the legal limitation on the scope of Doctrine of Equivalents to the jury, instead of the judge.  While we agree with Cochlear that the duty of the jury is to determine whether an element of the accused product is equivalent to an element of the claim, it would be improper and altogether confusing to instruct the jury to determine the scope of the equivalent.

For at least these reasons, the Cochlear Defendants' proposed instruction should be rejected in favor of the Foundation's proposed instruction.

## 4.5c DIRECT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS – COCHLEAR DEFENDANTS' PROPOSAL

I will now describe the separate rules that apply to "means-plus-function" elements that are used in claim 1 of the `616 and claims 6 and 7 of the `691 patent. A means-plus-function element only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structure that perform the claimed function. A means-plus-function element does not cover all possible structures that could be used to perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain. But because the phrase is a means-plus-function element, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

For purposes of this trial, I have interpreted each means-plus-function element for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements. Specifically, I have determined the following:

**For Claim 1 of the `616 patent**:

• For the term "transmitting means for transmitting data-containing signals to the ICS" the recited function is "transmitting data-containing signals to the ICS" and the corresponding structure is "an antenna and a transmitter."

• For the term "the ICS comprising: (a) receiving means for receiving the data-containing signals" the recited function is "receiving the data-containing signals" and the corresponding structure is "a receiver connected to a main coil/antenna. The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

- For the term "monitor means in the processor means and responsive to the data-containing signals for (1) selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage associated with said pair of electrodes, and (2) generating stimulator status-indicating signals" the two recited functions are "selectively monitoring at least one pair of the tissue-stimulating electrodes as one of the stimulation signals is applied thereto to measure a voltage associated with said pair of electrodes" and "generating stimulator status-indicating signals"; the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

- For the term "telemetry means for transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" the recited function is "transmitting the stimulator status-indicating signals to the external headpiece/transmitter means" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna.  The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

- For the term "external processor means coupled to the transmitting means of the external headpiece/transmitter for receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" the recited function is "receiving and processing the status-indicating signals to derive information therefrom regarding the operation of the implanted stimulator and its plurality of tissue stimulating electrodes" and the corresponding structure is an "antenna, receiver and microprocessor."

- For the term "user-controllable means connected to the external processor means for selectively generating and controlling the data-containing signals

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-66-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                      07-08108-FMO-SH

transmitted by the transmitting means of external headpiece/transmitter means" the recited function is "selectively generating and controlling the data-containing signals transmitted by the transmitting means of the external headpiece/transmitter means" and the corresponding structure is "three rotary panel knobs which control potentiometers that control a microprocessor."

• For the term "manual means for specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" the recited function is "specifying a peak output current for the stimulation signals to be applied to the at least one pair of tissue-stimulating electrodes" and the corresponding structure is "an adjustable rotary control knob which controls peak output current."

**For Claim 6 of the `691 patent:**

• For the term "audio signal receiving means" the recited function is "receiving audio signals" and the corresponding structure is "a microphone."

• For the term "means for generating data indicative of the audio signal" the recited function is "generating data indicative of the audio signal" and the corresponding structure is "a microprocessor."

• For the term "means for transmitting the data to an implanted cochlea stimulator (ICS)" the recited function is "transmitting the data to an implanted cochlea stimulator (ICS)" and the corresponding structure is "an antenna and a transmitter."

• For the term "the ICS including: means for receiving transmissions from the WP" the recited function is "receiving transmissions from the WP" and the corresponding structure is "a receiver connected to a main coil/antenna.  The receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil."

- For the term "means in the ICS responsive to data from the WP for selectively monitoring at least one of the electrodes or voltages in the ICS and for generating ICS-status-indicating signals" there are two recited functions: "selectively monitoring at least one of the electrodes or voltages in the ICS" and "generating ICS-status-indicating signals"; the corresponding structure is "a decoder, a telemetry function decoder and a signal multiplexer."

- For the term "means in the ICS for transmitting such ICS-status-indicating signals to the WP" the recited function is "transmitting such IC-status-indicating signals to the WP" and the corresponding structure is "a telemetry transmitter connected to a coil/antenna.  The telemetry transmitter connected to an antenna/coil is a separate structure from the receiver and main antenna/coil."

- For the term "means in the WP for receiving and processing the ICS-status-indicating signals" the recited function is "receiving and processing the ICS-status-indicating signals" and the corresponding structure is "a telemetry receiver, microprocessor and gate array."

## For Claim 7 of the `691 patent:

In addition to the terms from claim 6, the following terms also apply to claim 7:

- For the term "means for transmitting power signals from the WP to the ICS" the recited function is "transmitting power signals from the WP to the ICS" and the corresponding structure is "a transmitter and an antenna."

- For the term "means in the ICS for processing the power signals and for generating power for the ICS" the recited function is "processing the power signals and generating power for the ICS" and the corresponding structure is "a receiver including a power rectifier, a regulator, voltage reference, a voltage regulator, error amplifier and a voltage down converter."

- For the term "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of transmissions to the ICS" the recited function is "controlling the power level of transmission to the ICS" and the corresponding structure is "a switching regulator of a gate array."

In deciding if the Foundation has proven that the Accused Products include structure covered by a means-plus-function requirement, you must first decide for each element of a claim whether each of the Defendants' Accused Products have any structure that performs the exact function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed. In analyzing a means plus function element for literal infringement, the Cochlear Defendants' Accused Products must perform the identical function as recited in the claim element.

If you find that one or more of the Cochlear Defendants' Accused Products have structure that performs the identical claimed function, you must then determine whether that structure in that product is the same as or equivalent to the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function element is satisfied by that structure of that particular Accused Product. If all the other elements of the claim are satisfied, then that Accused Product infringes the claim.

In order to prove that a structure in the Defendants' Accused Products is equivalent to the structure in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7), the Foundation must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the `616 patent (for analyzing claim 1) or the `691 patent (for analyzing claims 6 or 7) and the structure in the Accused Product are not substantial. The Foundation must also show that the structure was available on the date the date the `616 patent was granted (for analyzing claim 1) or the date the `691 patent was

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-69-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

granted (for analyzing claims 6 or 7).  This is important as an equivalent structure under a means plus function element analysis cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon its issuance.

   If you find that the Cochlear Defendants have offered evidence sufficient to show that the structure of the accused product you are considering is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover as an equivalent is not in the prior art or would not have been obvious from the prior art.

*Authorities:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:22 (6th ed. Aug. 2013) directing use of *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3.4;* 35 U.S.C. § 112(6); *Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999).*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320-21 (Fed. Cir. 1999).

**Foundation's Objection:**

The Foundation's proposed Instruction regarding infringement of means-plus-function claims should be adopted because it is clearer and more readily understood by the jury.  In contrast, Cochlear's proposed instruction is unbalanced and unhelpful to the jury.  The example provided in the second paragraph appears designed more to discourage a finding of infringement of a means-plus-function claim than to give a recitation of the process of determining infringement.  Moreover, the example is completely unrelated to the subject matter before the jury, and, as such, may be confusing for the jury.

Moreover, Cochlear's proposed instruction includes the guidance for finding infringement of a means-plus-function term, as well as guidance on structural equivalence.  This creates a lengthy and confusing instruction for the jury.  Instead, the Foundation proposes a separate instruction regarding infringement of a means-plus-function claim with structural equivalence, *i.e.*, Instruction 4.5(c).  Cochlear's lengthy proposed instruction is intended to confuse the jury and deny them the foundation to understand the task appointed them.

Cochlear's proposed construction is confusing.  For example, Cochlear's proposed construction states that "[t]his is important as an equivalent structure under a means plus function element analysis cannot embrace technology developed after the issuance of the patent because the literal meaning of a claim is fixed upon its issuance."  This sentence is improperly given undue prominence in Cochlear's proposed instruction potentially leading to jury confusion or improper application of law.

**Cochlear's Response:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions. As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions. In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions. The Cochlear Defendants have presented a jury instruction that complies with the Court's October 18 Order.

Here, the most recent version of O'Malley, et al. Instructions instructs users to the applicable instruction in the Northern District of California model instructions since O'Malley does not have the topic covered. Defendants used that instruction to addresses the issue. In contravention of the Court's Order, the Foundation seeks to use a modified version of an unapproved model instruction propounded by the Federal Circuit Bar Association. The Foundation's proffer should be rejected for their failure to comply with the Court's Order.

The Cochlear Defendants have modified the O'Malley instruction to include the statement that if the Cochlear Defendants have offered evidence sufficient to show that the structure of the accused product is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover as an equivalent is not in the prior art or would not have been obvious from the prior art. This instruction is based on explicit holdings by the Federal Circuit. *See, e.g.*, *Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998); *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

Based on the parties' January 2, 2014 meet-and-confer, the Plaintiffs have indicated that they agree with the substance of the law contained in this instruction. Transcript at 98-99.  However, Plaintiffs object to this portion of the instruction by arguing that limitations on equivalents are the province of the Court, rather than the jury.  However, it is clear that it is the duty of the jury to determine whether an element of the accused product is equivalent to an element of the claim.  *See, e.g.*, O'Malley Instruction 4.5e (charging the jury with determining "whether an element of the 'accused product' is the substantial equivalent of an essential element of the invention" and stating that such determination must be made "in the light of what range of equivalents is reasonably allowable.")  In order for a jury to determine whether an element of the accused product is equivalent to an element of the claim, the jury must be informed as to the boundaries of what constitutes an equivalent. Otherwise, the jury may find infringement under the doctrine of equivalents, only for the Court to determine that equivalents are narrowed by prosecution history estoppel or prosecution disclaimer.  Such a scenario would require the Court and the parties to retry the issue of infringement because the jury was not instructed as to the limitations on equivalents.  In order for the jury to make an accurate determination of equivalence, they must be instructed as to the legal requirements for equivalence. The Foundation does not contend that the instruction provided is contrary to the law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-73-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

### 4.5c  "DIRECT INFRINGEMENT—INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS—STRUCTURAL EQUIVALENCE" FOUNDATION'S PROPOSAL

As I just instructed, a means-plus-function claim element is met when the accused structure performs an identical function of the claimed invention and either (a) the accused structure is identical to the corresponding structure, or (b) the accused structure is "equivalent" to the corresponding structure.

A structure or a set of structures may be found to be "equivalent" to a corresponding means-plus-function structure I have identified in the '616 and '691 patents if a person having ordinary skill in the field of technology of the patents either would have considered the differences between them to be insubstantial at the time the patents issued or if that person would have found the structure(s) performed the function in substantially the same way to accomplish substantially the same result. In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures.  Interchangeability itself is not sufficient; in order for the structures to be considered to be equivalent, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued. The fact that a structure or a set of structures is known now and is "equivalent" is not enough. The structure or set of structures must also have been available at the time the patents issued.

Do not confuse my instructions on "structural equivalence" with the instructions on "doctrine of equivalence" I will provide you with next. Although similar, they are not the same. For example, you may consider whether the accused product infringes under the doctrine of equivalents even if it does not perform the identical function recited in the means plus function limitation.

1

*Authority:*

2

Adapted from Model Patent Jury Instructions § B.3 3.1b, Federal Circuit Bar

3

Association (June 2013) (and sources cited therein); *Odetics, Inc. v. Storage Tech.*

4

*Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-75-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1
2
3
4

**Cochlear's Objection:**

      As discussed fully above on the prior instruction, this instruction is unnecessary and prejudicial to defendants as it will likely lead to jury confusion and error.  Thus, the Court should decline to give this instruction.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Foundation's Response:**

The Foundation's response is discussed in its Objection to Cochlear's proposed instruction regarding infringement of means-plus-function claims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-77-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.5d  DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS

## FOUNDATION'S PROPOSAL

If the Foundation did not prove a particular claim was literally infringed, Defendants may still directly infringe under the "doctrine of equivalents."

Under the doctrine of equivalents, you may find the particular Cochlear Defendants' accused product infringes a claim if the Foundation proves by a preponderance of the evidence that the Cochlear Defendants' accused products contain elements identical or equivalent to each claimed element of the patented invention.  The focus is on individual elements of the claim, not on the invention as a whole.

A particular Cochlear Defendants' accused product, or step of a method using Cochlear Defendants' accused product, is equivalent to a claimed requirement if a person of ordinary skill in the field of the invention would regard any differences between them as insubstantial.

To find infringement, you must find there are no substantial differences between the patented product and the allegedly infringing product.  In order to make a finding under the doctrine of equivalents, you may consider whether the elements of the Cochlear Defendants' accused product perform substantially the same function in substantially the same way to produce substantially the same result when compared to the element disclosed and claimed by the patent.

Even if the Cochlear Defendants' accused product contains each element of the patented claim, there is no infringement under the doctrine of equivalents if the Cochlear Defendants' accused product is so changed in principle that it performs the same or similar function in a substantially different way than the claimed invention.

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art.  The test is objective, that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial.

On the issue of equivalence, you may consider evidence of whether persons skilled in the art considered the accused element and the claimed element interchangeable at the time of the alleged infringement.  You should consider the element in the context of the entire claim, including the drawings and written descriptions, patent application history, the prior art, and all of the circumstances of the case.

The Foundation is not required to prove that Cochlear Defendants had the intent to infringe the Foundation's patents under the doctrine of equivalents or that Cochlear Defendants knew that its device infringed the patents.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it meets the other requirements of the doctrine of equivalents set forth in this instruction.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:23 (6th ed. Aug. 2013); Adapted from Model Patent Jury Instructions § 3.3, Northern District of California (Nov. 3, 2011) (and sources cited therein).

**Cochlear's Objection:**

As fully discussed above, this instruction, drawn from the Federal Circuit Bar Assn, violates the Court's order to use O'Malley model instructions when available. Here, O'Malley's directs users to the ND CA model instructions, which Defendant used for the last three paragraphs of its construction.  The AMF construction provides inadequate guidance on the issues the jury needs to understand to tackle this subject matter.

Moreover, as discussed above, the Plaintiffs confusing two separate instructions for infringement of means-plus-function claims, including infringement by structural equivalence, and then *another* instruction on the doctrine of equivalents is an invitation to confuse and mislead the jury.  The Plaintiffs argue that the Cochlear Defendants' instructions are long and confusing, but it is quite the opposite.  The Cochlear Defendants propose a single instruction of just over 5 pages (4.5c), whereas the Plaintiffs propose three instructions (4.5b, 4.5c, 4.5d) totaling 8 pages.

The single instruction provided by the Cochlear Defendants is proper for the reason that the only dispute is regarding structural equivalents under 35 U.S.C. § 112, ¶ 6.  The Federal Circuit has recognized that the structural equivalents analysis is nearly identical to equivalence analysis under the doctrine of equivalents.  *See, e.g., Chiuminatta Concrete Concepts Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998) (holding that the two tests for equivalence are "closely related" and that both apply "similar analyses of insubstantiality of differences.") The key distinction between § 112, ¶ 6 structural equivalents and the Doctrine of Equivalents is that the Doctrine of Equivalents encompasses after-developed technologies.  This is not an issue in this case, which means that Doctrine of Equivalents analysis and § 112, ¶ 6 structural equivalents analysis are essentially identical.  *See, e.g., Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) (holding that the test for structural equivalents under section

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-80-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

112, paragraph 6 requires performing the function in "substantially the same way, with substantially the same result.")  As such, there is no reason to separate these instructions into two separate instructions as the Plaintiffs have done.

Further, under Supreme Court precedent, the Foundation is estopped from making its Doctrine of Equivalents arguments.  It is long settled law that the doctrine of equivalents cannot be used to capture material surrendered in prosecution.  *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (*en banc*) ("However, prosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution… 'Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope.'") (citing *Fest Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)).  Each of the limitations presented above were amended during prosecution for reasons of patentability.  As such, the doctrine of equivalents is not available to these limitations under prosecution history estoppel.  The jury must be instructed as to these limitations.  Otherwise, they may incorrectly find infringement under the doctrine of equivalents, which would require this Court and the parties to re-try the issue of infringement.  The Foundation's objection to this instruction, based on a basic tenet of patent law, exposes their intent to confuse the jury.

In order for a jury to determine whether an element of the accused product is equivalent to an element of the claim, the jury must be informed as to the boundaries of what constitutes an equivalent.  It is clear that it is the duty of the jury to determine whether an element of the accused product is equivalent to an element of the claim.  See, e.g., O'Malley Instruction 4.5e (charging the jury with determining "whether an element of the 'accused product' is the substantial equivalent of an essential element of the invention" and stating that such determination must be made "in the light of what range of equivalents is reasonably allowable.")  By failing to instruct the juries as to the boundaries of what constitutes an equivalent, Plaintiffs'

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-81-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

instruction does not give the jury sufficient information on which to make an equivalence determination.

The Cochlear Defendants do not seek to put the issues of prosecution history estoppel or prosecution disclaimer with the jury, but to provide the jury with sufficient instruction so that it can correctly determine whether or not there is infringement by equivalents.  If Plaintiffs' instruction is used, the jury may find infringement under the doctrine of equivalents, only for the Court to determine that equivalents are narrowed by prosecution history estoppel or prosecution disclaimer. Such a scenario would then require the Court and the parties to retry the issue of infringement because the jury was not instructed as to the limitations on equivalents, and it would be impossible to parse the jury's decision to determine whether the jury's decision was based on an equivalent that should not have been considered.

Finally, Plaintiffs' assertion that the Cochlear Defendants' instruction "finds no support in O'Malley's" is misleading and incorrect.  O'Malley's instructions on infringement (158:22) explicitly state: "See Instruction 3.2 from the Model Patent Jury Instructions adopted by the Northern District of California for a suggested instruction on direct infringement and Instruction 3.3 for a suggested instruction on literal infringement. See also Instruction 3.5 for a suggested instruction on "Means-Plus-Functions Claims—Literal Infringement."  O'Malley's instruction refers a reader to the N.D. Cal. Model Patent Jury Instructions, from which the last three paragraphs of Defendants' instruction were drawn.  As such, Defendants' instruction does find support in O'Malley.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-82-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

Cochlear attempts to comingle § 112, ¶ 6 structural equivalents and the Doctrine of Equivalents as identical legal concepts.  This is incorrect.  While the evidence relied on by the jury in making its determination may be the same, these two legal concepts are not.  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) ("the statutory equivalence analysis, while rooted in similar concepts of insubstantial differences as its doctrine of equivalents counterpart, is narrower.").  As the Court noted in *Odetics*, the "tripartite test developed for the doctrine of equivalents is not wholly transferable to the § 112, ¶ 6 statutory equivalence context." *Id*.  The jury should be allowed to consider infringement under § 112, ¶ 6 structural equivalents and the Doctrine of Equivalents separately, and Cochlear Defendants' attempts at confusion must not be allowed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-83-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                                      07-08108-FMO-SH

## 4.5d  DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS[5]

## COCHLEAR DEFENDANTS' PROPOSAL

If the Foundation does not prove the patented claim was literally infringed, the Foundation may still satisfy the second element of direct infringement under the theory of "doctrine of equivalents."

Under the doctrine of equivalents, you may find an Accused Product infringes an asserted claim if the Foundation proves by a preponderance of the evidence that the Accused Product contains elements identical or equivalent to each claimed element of the asserted claim. The focus is on individual elements of the claim, not on the invention as a whole.

To find infringement, you must find there are no substantial differences between the element in the asserted claim and the allegedly infringing product. In order to make a finding under the doctrine of equivalents, you may consider whether the elements of the Accused Product perform substantially the same function in substantially the same way to produce substantially the same result when compared to the element of the asserted claim.

Even if the Accused Product contains each element of the asserted claim, there is no infringement under the doctrine of equivalents if the Accused Product is so changed in principle that it performs the same or similar function in a substantially different way than the claimed invention.

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art. The test is objective, that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial.

-------------------

[5] No instruction on the doctrine of equivalence is needed since the doctrine cannot be applied by the jury as a matter of law. To the extent AMF seeks such an instruction and the Court determines that it will instruct the jury on the doctrine of equivalence, subject to and without waiving their objections the Cochlear Defendants submit herewith an alternative proposed instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-84-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

On the issue of equivalence, you may consider evidence of whether persons skilled in the art considered the accused element and the claimed element interchangeable at the time of the alleged infringement.  You should consider the context of the entire claim, including the drawings and written descriptions, patent application history, the prior art, and all of the circumstances of the case.  The fact that a part or a step of the Accused Product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

The Foundation is not required to prove that the Cochlear Defendants had the intent to infringe the asserted patent under the doctrine of equivalents or that the Cochlear Defendants knew that the accused device infringed the patent.

You may not use the doctrine of equivalents to find infringement if you find that the Accused Product is the same as what was in the prior art before the application for the `616 patent (for analyzing claims 1 or 10) or the `691 patent (for analyzing claims 6 or 7) or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

If you find that the Cochlear Defendants have offered evidence sufficient to show that the accused programming systems, sound processors and cochlear implants is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the `616 patent (for analyzing claims 1 or 10) or the `691 patent (for analyzing claims 6 or 7) but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-85-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1

2   *Authorities:*

3   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:23 (6th ed. Aug. 2013) augmented

4   by *Model Patent Jury Instructions for the Northern District of California (Nov. 3,*

5   *2011), Instr. 3.4; Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S.

6   722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17

7   (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950);

8   *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.,* 467 F.3d 1370, 1379-82

9   (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed.

10   Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed.

11   Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473,

12   1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397

13   (Fed. Cir. 1994); *See also Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323

14   (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360,

15   1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d

16   974, 981-84 (Fed. Cir. 1999); *Cardiac Science, Inc., v. Koninklijke Philips Elect.*

17   *N.V.* 2007 WL 4591596, *1-2 (D. Minn., April 17, 2007).

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-86-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Foundation's proposed Instruction regarding the doctrine of equivalents should be adopted because it is clearer and more readily understood by the jury.

Cochlear's proposed construction is confusing and lacks support of O'Malley. Specifically, the last three paragraphs of Cochlear's proposed instruction are found nowhere in O'Malley §158.23.  Moreover, these paragraphs are Cochlear's attempt put the issue of prosecution history estoppel in front of the jury.  For example, Cochlear's proposed instruction on the Doctrine of Equivalents states that "a patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office."  As the Court has already decided, the issue of prosecution history estoppel is an issue for the Court, not the jury.

Moreover, as stated above, the Cochlear Defendants' attempt to exclude the Foundation's allegations of infringement under the doctrine of equivalents in its proposed jury instructions is improper.  *See e.g.*, Foundation's Objection to Cochlear's Proposed Instruction 4.1.  It is undisputed that the Foundation has presented allegations and evidence that the accused Cochlear products infringe the asserted patents under the Doctrine of Equivalents.

For at least these reasons, the Foundation's proposed instruction should be rejected.

**Cochlear's Response:**

The Cochlear Defendants present a single instruction regarding equivalents so as to simplify the issues for the jury.  Conversely, the Plaintiffs, confusingly, provide two separate instructions for means-plus-function equivalents, and doctrine of equivalents.  The single instruction provided by the Cochlear Defendants is proper for the reason that the only dispute is regarding structural equivalents under 35 U.S.C. § 112, ¶ 6.  The Federal Circuit has recognized that the structural equivalents analysis is nearly identical to equivalence analysis under the doctrine of equivalents.  *See, e.g., Chiuminatta Concrete Concepts Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998) (holding that the two tests for equivalence are "closely related" and that both apply "similar analyses of insubstantiality of differences.")  The key distinction between § 112, ¶ 6 structural equivalents and the Doctrine of Equivalents is that the Doctrine of Equivalents encompasses after-developed technologies.  This is not an issue in this case, which means that Doctrine of Equivalents analysis and § 112, ¶ 6 structural equivalents analysis are essentially identical.  *See, e.g., Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) (holding that the test for structural equivalents under section 112, paragraph 6 requires performing the function in "substantially the same way, with substantially the same result.")  As such, there is no reason to separate these instructions into two separate instructions as the Plaintiffs have done.

The Cochlear Defendants have modified the O'Malley instruction to include the statement that if the Cochlear Defendants have offered evidence sufficient to show that the structure of the accused product is in the prior art, the burden shifts to the Foundation to prove that what it attempts to cover as an equivalent is not in the prior art or would not have been obvious from the prior art.  This instruction is based on explicit holdings by the Federal Circuit.  *See, e.g., Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra-Tex Surfaces, Inc. v. Hill*

*Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998); *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

Based on the parties' January 2, 2014 meet-and-confer, the Plaintiffs have indicated that they agree with the substance of the law contained in this instruction. Transcript at 98-99.  However, Plaintiffs object to this portion of the instruction by arguing that limitations on equivalents are the province of the Court, rather than the jury.  However, it is clear that it is the duty of the jury to determine whether an element of the accused product is equivalent to an element of the claim.  *See, e.g.*, O'Malley Instruction 4.5e (charging the jury with determining "whether an element of the 'accused product' is the substantial equivalent of an essential element of the invention" and stating that such determination must be made "in the light of what range of equivalents is reasonably allowable.")  In order for a jury to determine whether an element of the accused product is equivalent to an element of the claim, the jury must be informed as to the boundaries of what constitutes an equivalent. Otherwise, the jury may find infringement under the doctrine of equivalents, only for the Court to determine that equivalents are narrowed by prosecution history estoppel or prosecution disclaimer.  Such a scenario would require the Court and the parties to retry the issue of infringement because the jury was not instructed as to the limitations on equivalents.  In order for the jury to make an accurate determination of equivalence, they must be instructed as to the legal requirements for equivalence. The Foundation does not contend that the instruction provided is contrary to the law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-89-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**4.5e – LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS –
(DISPUTED) – DEFENDANTS' PROPOSAL**

Because AMF made certain claim changes or statements during the patent application process for the asserted claims, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

**`616 patent**:

Claim 1: Where the structure in a mean plus function claim discloses an antenna, a structure using more than one antenna is not equivalent.

Claim 10: "displaying the processed status-indicating signals, whereby the status of the implanted stimulator, including the results of the measurements made within the implanted stimulator, may be made known."

**`691 patent**:

Claim 6 and 7: Where the structure in a mean plus function claim discloses an antenna, a structure using more than one antenna is not equivalent.

Unless each of these requirements is literally present within the Cochlear Defendants' programming systems, sound processors and cochlear implants, there can be no infringement of the claim.

***Authorities:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:23 (6th ed. Aug. 2013) directing use of *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3.7; Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d (Fed. Cir. 2003) (*en banc*).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-90-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

Cochlear's proposed instruction 4.5d is improper and misstates the facts and law.  See Foundation's Response to Instruction 4.5d. The Court has made no such findings and there is no legal basis for the Court to do so. Moreover, Cochlear's self-serving instruction finds no support in O'Malley or the Federal Circuit Bar Association Model Rules.

Cochlear Defendants' proposal of this "limitation on the doctrine of equivalents" instruction is nothing more than an attempt to put the issue of prosecution history estoppel before the jury.  This is improper since, as the Court already decided, prosecution history estoppel is an issue of law for the Court to decide.  If, for example, the issue of the scope of the doctrine of equivalents had already been decided by the Court before going to the jury, an instruction on the limitations of the doctrine may be helpful.  Since that is not the case here, such an instruction is confusing for the jury, and highly prejudicial to the Foundation.

As such, the Cochlear Defendants' proposed instruction should be rejected.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-91-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                                07-08108-FMO-SH

**Cochlear's Response:**

O'Malley directs users to the Northern District Model instructions from which the instruction is drawn. It is long settled law that the doctrine of equivalents cannot be used to capture material surrendered in prosecution. *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (*en banc*) ("However, prosecution history estoppel may bar the patentee from asserting equivalents if the scope of the claims has been narrowed by amendment during prosecution… 'Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patents scope.'") (citing *Fest Corp v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002)). Each of the limitations presented above were amended during prosecution for reasons of patentability. As such, the doctrine of equivalents is not available to these limitations under prosecution history estoppel. The jury must be instructed as to these limitations. Otherwise, they may incorrectly find infringement under the doctrine of equivalents, which would require this Court and the parties to re-try the issue of infringement. The Foundation's objection to this instruction, based on a basic tenet of patent law, exposes their intent to confuse the jury.

## 4.5f NON-INFRINGEMENT UNDER EQUIVALENTS – DISPUTED-DEFENDANTS' PROPOSAL

Defendant contends that no infringement has been proved because there are substantial differences between the "accused product" and any valid claim of the patent in suit, and these differences are such as to be beyond any allowable range of equivalents for the invention.

Before you may correctly find the "accused product" infringes any claim of the patent in suit, it must appear, from a preponderance of the evidence in the case, that the "accused product" embraces or contains or uses every essential element of the invention, or the substantial equivalent thereof.

Whether an element of the "accused product" is the substantial equivalent of an essential element of the invention must be determined by you in the light of what range of equivalents is reasonably allowable. This, in turn, must depend upon the extent of the advance made by the invention over the prior art.

If you should find from a preponderance of the evidence in the case that the "accused product" does not infringe any valid claim of the patent in suit, then you should return a verdict in favor of the defendant on the issue of infringement.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:77 (6th ed. Aug. 2013).

**Foundation's Objection:**

Cochlear's proposed construction is unbalanced and lacks support of O'Malley.  Specifically, Cochlear's proposed instruction fails to include the last paragraph of O'Malley which states "On the other hand, if you should find in favor of plaintiff on the issue of infringement, you must then proceed to consider and determine the issue as to damages."  *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:77 (6th ed. Aug. 2013).  Moreover, in the first sentence, Cochlear's proposed instruction fails to state "even though one or more of the claims of the patent in suit be found valid," as require by O'Malley.

As such, the Cochlear Defendants' proposed instruction should be rejected.

**Cochlear's Response:**

AMF's complaint about this instruction is misplaced.  It is directly from O'Malley and it relates directly to the Defendants defense of non-infringement.  The issues here are not covered elsewhere in the instructions.  There is no basis to call it unbalanced.

Regarding the small changes made to the O'Malley's language, the first paragraph was modified as it was confusing.  Likewise, the last paragraph was not included as it suggests to the jury that they can skip the validity analysis.  In the Meet and Confer, Defendants offered to delete the last of the proposed paragraphs if AMF would agree to the instruction but AMF rejected that proposal.  (01022014 rough transcript at 105:20-106:10).

The instruction is proper and should be given by the Court.

## 4.6  "INDUCEMENT OF INFRINGEMENT" (DISPUTED) – FOUNDATION'S PROPOSAL

The Foundation claims the Cochlear Defendants are liable for patent infringement because the Cochlear Defendants actively induced infringement of claims 1 and 10 of the `616 patent and claims 6 and 7 of the `691 patent by another person.

Under U.S. patent law, whoever actively induces infringement of a patent is liable as an infringer.  In order to find the Cochlear Defendants liable for inducing infringement, the Foundation must prove each of the following elements by a preponderance of the evidence:

First:  The Foundation was the assignee of each of the patents in suit;

Second:  The Cochlear Defendants' accused products or process infringed one or more of the Asserted Patent's claims;

Third:  The Cochlear Defendants actively induced that infringement of one or more of the Asserted Patent's claims by intentionally inducing another person to make, use, sell or offer to sell the method or device claimed in the Asserted Patent(s) without the Foundation's consent; and,

Fourth:  the Cochlear Defendants knew the induced acts constituted patent infringement, or the Cochlear Defendants believed there was a high probability that the induced acts constituted patent infringement and took deliberate acts to avoid learning that fact.

In order to establish active inducement of infringement, it is not sufficient that the person who was allegedly induced to infringe in fact directly infringes the claim.  Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that allegedly constitute the direct infringement.  Rather you must find that the Cochlear Defendants specifically intended to cause direct infringement of the `616 patent and the `691 patent, in order to find inducement of infringement.  That is, you must find: (1) the Cochlear Defendants were aware of the patents; (2) that they know or should

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-96-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  have known that the encouraged acts constituted infringement of the patents; and,

2  (3) that they have an intent to cause the encouraged acts.

3

4  ***Authority:***

5   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013);

6  Adapted from Model Patent Jury Instructions § B.3 3.2, Federal Circuit Bar

7  Association (June 2013) (and sources cited therein).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Cochlear's Objection:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., Federal Jury Practice and Instructions.  In contravention of the Court's Order, the Foundation seeks to use a modified version of an unapproved model instruction propounded by the Federal Circuit Bar Association.  The Foundation's proffer should be rejected for their failure to comply with the Court's Order.

The Plaintiffs, in their Objection, conspicuously fail to mention that their instructions are in direct contradiction to the Court's Order, choosing instead to make mushy arguments that their instruction is "clearer and more readily understood by the jury."  By completely ignoring this Court's Order, the Foundation has increased the burden on the Parties and this Court and created a controversy when none need exist.

Plaintiffs' argument that it should be allowed to bring indirect infringement claims for all of the claims-in-suit fails because it reflects a misunderstanding of the pleading and discovery process as discussed fully in response to instruction 3.2.

The basis for the Cochlear Defendants' proposed instruction is that, throughout this litigation, Plaintiffs have not provided discovery to support their indirect infringement theories for claim 1 of the '616 patent and claims 6-7 of the '691 patent.  Indeed, during discovery, Plaintiffs only identified claim 10 of the '616 patent as a claim that was indirectly infringed.  In response to an interrogatory that asked for the basis of the "alleged infringement of each asserted claim by each asserted product, whether it's direct infringement, contributory infringement, or inducement infringement," the Foundation responded:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-98-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

> Through its acts, the Cochlear defendants, either
> individually or collectively, infringe at least Claim 10 of
> the 616 patent, either directly, by inducement of others, or
> contributorily…

(*See* May 2008 Interrogatory Response No. 1).  The remainder of the response referred to claim charts that did not address indirect infringement of any of the other asserted claims.  (*Id.*)  Plaintiffs have not provided a supplemental discovery response that identifies any indirect infringement theories for the other asserted claims.  The result of this discovery, then, is that claim 10 is the *only* claim that Plaintiffs asserted was indirectly infringed.

When confronted by this discovery during the meet and confer process, Plaintiffs contended that they had always asserted indirect infringement claims in their *pleadings*.  This is insufficient to preserve the issue for trial.  Settled law recognizes that the purpose of discovery is to narrow the issues in dispute.  As the United States Supreme Court observed in *Hickman v. Taylor*, 329 U.S. 495, 501 (1947):

> The [Federal Rules of Civil Procedure], however, restrict
> the pleadings to the task of general notice-giving and
> invent the deposition-discovery process with a vital role in
> the preparation for trial.  The various instruments of
> discovery now serve (1) as a device, along with the pre-
> trial hearing under Rule 16, to narrow and clarify the basic
> issues between the parties, and (2) as a device for
> ascertaining the facts, or information as to the existence or
> whereabouts of facts, relative to those issues…"

*Hickman*, 329 U.S. at 501; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-99-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"); *Kashlan v. TCBY Systems, LLC*, 2013 WL 3309123, *4 (E.D. Ark., Nov. 6, 2007) ("The point of requiring substantive answers to written discovery is to narrow a claiming party's theory of liability and damages prior to taking depositions.  A party is not required to go into a deposition blind, but is entitled to use written discovery to bring the opposing party's claim into focus…"); *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).  Thus, Plaintiffs may not rely upon their pleadings (which are the broad, "notice pleading" identified in *Hickman*) to avoid being bound to a written discovery response, the purpose of which is to define the issues in dispute and narrow the case.  Conversely, the Cochlear Defendants are entitled to rely upon a discovery response (rather than the notice-pleading) as the identification of the issues actually in dispute for trial. When Plaintiffs failed to identify indirect infringement theories for the other asserted claims, the Cochlear Defendants were entitled to rely upon that answer as evidence that Plaintiffs were abandoning their overbroad pleadings where every claim was infringed in every possible way.

Finally, Rule 37 of the Federal Rules of Civil Procedure is consistent with the Cochlear Defendants' proffered instruction.  Rule 37(c)(1) provides for an automatic exclusion of information from trial when a party fails to disclose that information during discovery (unless that failure was substantially justified).  Here, Plaintiffs failed to disclose their indirect infringement theories regarding three of the four asserted claims.  Accordingly, Rule 37 suggests that Plaintiffs would be precluded from introducing that information at trial.  Accepting Plaintiffs' reasoning would turn Rule 37 on its head: a party could assert one hundred claims in its complaint, provide discovery on five of those claims, and then assert all one hundred claims at trial because, it argues, the defendant had notice of those claims.  That is not how discovery works under the Federal Rules of Civil Procedure.  Accordingly, the Court should reject Plaintiffs' Instruction because it improperly allows the jury to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-100-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  decide claims that Plaintiffs effectively abandoned because they failed to provide

2  discovery about those theories of infringement.

3  Further, the Plaintiffs improperly attempt to include the instruction relating to

4  taking "deliberate acts to avoid learning that fact."  Such instruction is improper, as

5  the Plaintiffs have provided no evidence that the Cochlear Defendants took

6  deliberate acts to avoid learning of the Asserted Patents.  The only "evidence"

7  proffered by the Plaintiffs is Plaintiffs' contention that the Cochlear Defendants did

8  not obtain an opinion of counsel.  This is insufficient to demonstrate that the

9  Cochlear Defendants "believed there was a high probability that the induced acts

10  constituted patent infringement and took deliberate acts to avoid learning that fact."

11  Indeed, doing so creates a risk of an improper inference about the attorney client

12  privilege asserted by the Defendants contrary to the Federal Circuit precedent.

13  *Broadcom Corp. v. Qualcomm*, 543 F.3d 683, 698-700 (Fed. Cir. 2008); *In re*

14  *Seagate Tech.*, 497 F.3d 1360 (Fed. Cir. 2007).  As such, the instruction proffered

15  by the Plaintiffs will serve only to confuse the jury, and should be omitted.

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-101-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1

**Foundation's Response:**

2

     The Cochlear Defendants' position here is a reiteration of its flawed position

3

with regard to Instruction 4.1.  As stated above, the Cochlear Defendants

4

preparation of a pseudo summary judgment motion embedded in the jury

5

instructions is wholly improper, as explained by the Court.  Moreover, as stated in

6

the Foundation's Opposition to the Cochlear Defendants' proposed instructions on

7

infringement, the Cochlear Defendants' accusation that the Foundation has not

8

supported its claims of inducement through pleadings and discovery is false and

9

unsupported by the ample discovery provided in this case.

10

     For at least these reasons, the Cochlear Defendants' proposed instruction on

11

inducement should be rejected.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-102-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.6  INDUCEMENT OF INFRINGEMENT

### [THE COCHLEAR DEFENDANTS' TAILORED PROPOSED INSTRUCTION]

The Foundation claims the Cochlear Defendants are liable for patent infringement because the Cochlear Defendants actively induced infringement of claim 10 of the `616 patent by another person.

Under U.S. patent law, whoever actively induces infringement of a patent is liable as an infringer.  In order to find the Cochlear Defendants liable for inducing infringement, the Foundation must prove each of the following elements by a preponderance of the evidence:

First:  the Foundation was the assignee of each of the patents in suit;

Second:  Activity by third persons that shows by a preponderance of the evidence that they infringed claim 10 of the `616 patent;

Third:  the Cochlear Defendants actively induced that infringement of claim 10 of the `616 patent by intentionally inducing another person to use the method claimed in claim 10 of the `616 patent without the Foundation's consent; and,

Fourth:  the Cochlear Defendants knew the induced acts constituted patent infringement.

In order to establish active inducement of infringement, it is not sufficient that the person who was allegedly induced to infringe in fact directly infringes the claim.  Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that allegedly constitute the direct infringement.  Rather you must find that the Cochlear Defendants specifically intended to cause direct infringement of claim 10 of the `616 patent, in order to find inducement of infringement.  That is, you must find: (1) the Cochlear Defendants were aware of the patent; (2) that they knew or should have known that the encouraged acts constituted infringement of the patents; and, (3) that they have an intent to cause the encouraged acts.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-103-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  *Authority:*

2      *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013) as

3      amended by *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-104-                FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                        07-08108-FMO-SH

## 4.6  INDUCEMENT OF INFRINGEMENT

## [THE COCHLEAR DEFENDANTS' BROAD PROPOSED INSTRUCTION]

The Foundation claims the Cochlear Defendants are liable for patent infringement because the Cochlear Defendants actively induced infringement of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent by another person.

Under U.S. patent law, whoever actively induces infringement of a patent is liable as an infringer.  In order to find the Cochlear Defendants liable for inducing infringement, the Foundation must prove each of the following elements by a preponderance of the evidence:

First:  The Foundation was the assignee of each of the patents in suit;

Second:  Activity by third persons that shows by a preponderance of the evidence that they infringed claims 1 and/or 10 of the `616 patent and claims 6 and/or 7 of the `691 patent;

Third:  The Cochlear Defendants actively induced the third person's infringement by intentionally inducing another person to use the method or device claimed in the claim you are considering without the Foundation's consent; and,

Fourth:  The Cochlear Defendants knew the induced acts constituted patent infringement.

In order to establish active inducement of infringement, it is not sufficient that the person who was allegedly induced to infringe in fact directly infringes the claim. Nor is it sufficient that the Cochlear Defendants were aware of the act(s) that allegedly constitute the direct infringement.  Rather you must find that the Cochlear Defendants specifically intended to cause direct infringement of the claim directly infringed by the third person in order to find inducement of infringement.  That is, you must find: (1) the Cochlear Defendants were aware of the patents; (2) that they knew or should have known that the encouraged acts constituted infringement of the patents; and, (3) that they have an intent to cause the encouraged acts.

1   ***Authority:***

2   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:24 (6th ed. Aug. 2013) as

3   amended by *Qualcomm v Broadcom*, 543 F.3d 683, 688 (Fed. Cir. 2009).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-106-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Foundation's proposed instruction is clearer, more likely to be understood by the jury, and more accurately supported by O'Malley.   Moreover, as stated above, Cochlear's attempts to exclude the Foundation's allegations of inducement are improper.  The Foundation has provided allegations and evidence that Cochlear has had knowledge of the asserted patents since well-before this lawsuit was filed, and intentionally trains surgeons and audiologists to use the accused products in an infringing manner.  Moreover, the Foundation has provided evidence that the accused products consist of separate components that may be sold separately.  The Cochlear Defendants' induce others to purchase these components which can be used (and are designed to be used) in combination with, and only with, the other components.  See Foundation's Response to Cochlear Defendants' Alternative Instruction 4.1 – Infringement.   For at least this reason, the Foundation's proposed instruction should be adopted.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-107-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., <u>Federal Jury Practice and Instructions</u>.  The instruction provided by the Cochlear Defendants is an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF cites to O'Malley but then uses the model instruction propounded by the Federal Circuit Bar Association.  Such is improper.

Further, the Cochlear Defendants' proposed instruction properly limits the induced infringement inquiry to claim 10 of the '616 patent.  The Plaintiffs are seeking to assert claims that they never disclosed during discovery, to the significant prejudice of the Cochlear Defendants.  This applies to any assertion of inducement of infringement or contributory infringement as to any claim other than claim 10 of the `616 patent and to the assertion of doctrine of equivalents as to any claim other than claim 10 of the `616 patent.

Defendants' Interrogatory No. 1 required Plaintiffs to set forth the claims of each of the patents in suit together with the theory of infringement and the details of how each element of the claim was met by the Cochlear Defendants' products under each theory of infringement.  Defendants' Interrogatory No. 2 required Plaintiffs to set forth, inter alia, claims of each of the patents in suit on which the contend the doctrine of equivalents applies.  In their response and supplemental responses, the only claim ever identified as being subject to an assertion of inducement of infringement or contributory infringement was claim 10 of the `616 patent.  Thus, Fed. R. Evid. Rule 37, and the case law interpreting Rule 37, uniformly require the automatic exclusion of any argument and evidence at trial based on a claim not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-108-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  asserted during discovery and on which no discovery was ever provided by

2  Plaintiffs.

3       In *ATD Corp. v. Lydall, Inc*., the Federal Circuit upheld the exclusion of an

4  invalidity theory that was proposed by the defendants after the close of discovery.

5  159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated reason for

6  precluding the invalidity theory was "exercising [its] discretion under the rule of the

7  Federal Rules of Civil Procedure to preclude a party from relying on theories not

8  made available or not disclosed to the opposing side."  Id.  The Federal Circuit

9  agreed, holding that "[t]he district court in the instant case was well within its

10  discretion in excluding the Munters patent, for the record shows that Lydall offered

11  no reason to justify its submission long after the close of discovery."  *See also*

12  *Markos v .Sears, Roebuck and Co*., 2007 WL 5162457 at *1 (C.D. Cal., Mar. 19,

13  2007) (precluding "all testimony by Plaintiff related to his [newly asserted] claim"

14  under Rule 26 because "Defendant has had no opportunity to conduct discovery on

15  this theory [so] it would be unfairly prejudicial for Plaintiff to argue this theory at

16  trial.")

17       Here, Plaintiffs have no justification for their failure to assert a claim of

18  inducement or contributory infringement for any claim other than claim 10 of the

19  '616 patent prior to the close of discovery.  The Cochlear Defendants would be

20  substantially prejudiced if the court were to allow these claims to be inserted into

21  this action at this 11th hour as they have taken no discovery on them nor have they

22  prepared any expert testimony on these never previously-asserted claims.  As such,

23  the jury should only be instructed as to those claims that are properly at issue in this

24  case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of

25  the '691 patent, and active inducement/contributory infringement of only claim 10

26  of the '616 patent.

27       No instruction on inducement of infringement other than as to claim 10 of the

28  '616 patent is proper.  The Cochlear Defendants submit herewith a proposed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-109-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving the Defendants' objections, a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

Further, the Plaintiffs improperly attempt to include the instruction relating to taking "deliberate acts to avoid learning that fact."  Such instruction is improper, as the Plaintiffs have provided no evidence that the Cochlear Defendants took deliberate acts to avoid learning of the Asserted Patents.  The only "evidence" proffered by the Plaintiffs is Plaintiffs' contention that the Cochlear Defendants did not obtain an opinion of counsel.  This is insufficient to demonstrate that the Cochlear Defendants "believed there was a high probability that the induced acts constituted patent infringement and took deliberate acts to avoid learning that fact." Indeed, doing so creates a risk of an improper inference about the attorney client privilege asserted by the Defendants contrary to the Federal Circuit precedent. *Broadcom Corp. v. Qualcomm*, 543 F.3d 683, 698-700 (Fed. Cir. 2008); *In re Seagate Tech.*, 497 F.3d 1360 (Fed. Cir. 2007).  As such, the instruction proffered by the Plaintiffs will serve only to confuse the jury, and should be omitted.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-110-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.7  REASONABLE BELIEF OF INVALIDITY OF CLAIMS OF THE PATENTS (DISPUTED)

### [DEFENDANTS' TAILORED PROPOSED INSTRUCTION]

In considering whether the Foundation has proven that the Cochlear Defendants are liable for active inducement of infringement of claim 10 of the '616 patent by another person, you may consider evidence of the Cochlear Defendants' good faith belief that claim 10 of the '616 patent was invalid or unenforceable, or that Cochlear believed that it was practicing what was already publicly available in the prior art.

If the Cochlear Defendants establish by the preponderance of the evidence presented that they reasonably believed that claim 10 of the '616 patent was invalid or unenforceable, or that they were merely practicing what was already publicly available in the prior art, then you must determine if that good faith belief negates the specific intent to encourage another's direct patent infringement, which is required for induced infringement.

*Authorities:*

*Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013) (reversing district court that excluded evidence of defendant's good faith belief in the patent-in-suit's invalidity because "a good-faith belief of invalidity is evidence that may negate the specific intent to encourage another's infringement, which is required for induced infringement"); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a defendant's founder's "belief that it can freely practice inventions found in the public domain" supports "a jury's finding that the intent required for induced infringement was lacking" and affirming jury verdict where defendant testified it believed it was "practicing the prior art" – no opinion of counsel relied upon by Fed. Cir.); *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d

1335, 1351 (Fed. Cir. 2009) (affirming district court's denial of motion for judgment as a matter of law because defendant presented evidence that it reasonably believed the patent-in-suit did not cover the alleged infringing activity and, therefore, was not liable for inducing infringement- no opinion of counsel relied upon by Fed. Cir.); *MPT, Inc. v. Marathon Labels, Inc.*, 505 F. Supp. 2d 401, 417 (N.D. OH 2007) (Defendant employee knowledgeable of industry testified did not believe infringement existed sufficient to avoid a finding of willfulness - -no opinion of counsel).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-112-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.7  REASONABLE BELIEF OF INVALIDITY OF CLAIMS OF THE PATENTS

### [DEFENDANTS' BROAD PROPOSED INSTRUCTION]

In considering whether the Foundation has proved that the Cochlear Defendants are liable for active inducement of infringement of claims 1 and 10 of the '616 patent and claims 6-7 of the `691 patent by another person, you may consider evidence of the Cochlear Defendants' good faith belief that claims 1 and/or 10 of the '616 patent and/or claims 6 -7 of the `691 patent were invalid or unenforceable, or that Cochlear believed that it was practicing what was already publicly available in the prior art.

If the Cochlear Defendants establish by the preponderance of the evidence presented that they reasonably believed that any of the Asserted Claims of the '616 patent and/or the Asserted Claims of the `691 patent were invalid or unenforceable, or that they were merely practicing what was already publicly available in the prior art, then you must determine if that good faith belief negates the specific intent to encourage another's direct patent infringement, which is required for induced infringement .

*Authorities:*

*Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69 (Fed. Cir. 2013) (reversing district court that excluded evidence of defendant's good faith belief in the patent-in-suit's invalidity because "a good-faith belief of invalidity is evidence that may negate the specific intent to encourage another's infringement, which is required for induced infringement"); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a defendant's founder's "belief that it can freely practice inventions found in the public domain" supports "a jury's finding that the intent required for induced infringement was lacking" and affirming jury verdict where defendant testified it believed it was "practicing the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-113-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

prior art" – no opinion of counsel relied upon by Fed. Cir.); *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (affirming district court's denial of motion for judgment as a matter of law because defendant presented evidence that it reasonably believed the patent-in-suit did not cover the alleged infringing activity and, therefore, was not liable for inducing infringement- no opinion of counsel relied upon by Fed. Cir.); *MPT, Inc. v. Marathon Labels, Inc.*, 505 F. Supp. 2d 401, 417 (N.D. OH 2007) (Defendant employee knowledgeable of industry testified did not believe infringement existed sufficient to avoid a finding of willfulness - -no opinion of counsel).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-114-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

As stated above, Cochlear's attempts to exclude the Foundation's allegations of inducement are improper.  The Foundation has provided evidence that Cochlear has had knowledge of the asserted patents since well before this lawsuit was filed, and intentionally trains surgeons and audiologists to use the accused products in an infringing manner.  *See* Foundation's Responses to Cochlear Defendants' Alternative Instruction 3.2 – Nature of the Case, 4.1 – Infringement and 4.6 – Inducement.

In addition, Cochlear's proposed Instruction 4.7 is a self-serving instruction which finds no support in O'Malley or the Federal Circuit Bar Association Model Rules.

Moreover, in each case cited by Cochlear, the allegedly inducing party relies on an opinion of counsel to form its "good-faith belief" of invalidity or non-infringement.  Those facts are not applicable in the present case because Cochlear has stipulated that it will not present evidence that it relied on an opinion of counsel in defense of the Foundation's induced infringement claims.  In *Global-Tech Appliances, Inc. v. SEB S.A.*, defendant relied on "an opinion letter stating that Pentalpha's deep fryer did not infringe any of the patents that he had found." *Kinetic Concepts* also involved an opinion of counsel.  The district court opinion that was affirmed elaborated that "Weston carefully researched prior art and obtained opinions of counsel that there was no infringement." *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, SA-03-CV-832-WRF, 2007 WL 1113088 at *8 (W.D. Tex. Apr. 4, 2007) aff'd sub nom. *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010 (Fed. Cir. 2009).  Moreover, the cases cited in *Commil USA* discussing "good-faith belief" of invalidity all involved opinion of counsel.  Moreover, the "good-faith" allegedly practiced by the defendants in MPT was based, in part on obtaining opinions of counsel. *MPT, Inc. v. Marathon Labels, Inc.*, 505 F. Supp. 2d 401, 417 (N.D. Ohio 2007).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-115-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1    For at least the reasons stated above, Cochlear's proposed Instruction 4.7

2  should be rejected.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-116-    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants' proposed instruction properly limits the induced infringement inquiry to claim 10 of the '616 patent.  The Plaintiffs are seeking to assert claims that they never disclosed during discovery, to the significant prejudice of the Cochlear Defendants.  This applies to any assertion of inducement of infringement or contributory infringement as to any claim other than claim 10 of the `616 patent and to the assertion of doctrine of equivalents as to any claim other than claim 10 of the `616 patent.

Defendants' Interrogatory No. 1 required Plaintiffs to set forth the claims of each of the patents in suit together with the theory of infringement and the details of how each element of the claim was met by the Cochlear Defendants' products under each theory of infringement.  Defendants' Interrogatory No. 2 required Plaintiffs to set forth, inter alia, claims of each of the patents in suit on which the contend the doctrine of equivalents applies.  In their response and supplemental responses, the only claim ever identified as being subject to an assertion of inducement of infringement or contributory infringement was claim 10 of the `616 patent.  Thus, Fed. R. Evid. Rule 37, and the case law interpreting Rule 37, uniformly require the automatic exclusion of any argument and evidence at trial based on a claim not asserted during discovery and on which no discovery was ever provided by Plaintiffs.

In *ATD Corp. v. Lydall, Inc*., the Federal Circuit upheld the exclusion of an invalidity theory that was proposed by the defendants after the close of discovery. 159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated reason for precluding the invalidity theory was "exercising [its] discretion under the rule of the Federal Rules of Civil Procedure to preclude a party from relying on theories not made available or not disclosed to the opposing side."  Id.  The Federal Circuit agreed, holding that "[t]he district court in the instant case was well within its discretion in excluding the Munters patent, for the record shows that Lydall offered

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-117-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

no reason to justify its submission long after the close of discovery." *See also Markos v .Sears, Roebuck and Co*., 2007 WL 5162457 at *1 (C.D. Cal., Mar. 19, 2007) (precluding "all testimony by Plaintiff related to his [newly asserted] claim" under Rule 26 because "Defendant has had no opportunity to conduct discovery on this theory [so] it would be unfairly prejudicial for Plaintiff to argue this theory at trial.")

Here, Plaintiffs have no justification for their failure to assert a claim of inducement or contributory infringement for any claim other than claim 10 of the '616 patent prior to the close of discovery.  The Cochlear Defendants would be substantially prejudiced if the court were to allow these claims to be inserted into this action at this 11th hour as they have taken no discovery on them nor have they prepared any expert testimony on these never previously-asserted claims.  As such, the jury should only be instructed as to those claims that are properly at issue in this case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of the '691 patent, and active inducement/contributory infringement of only claim 10 of the '616 patent.

No instruction on inducement of infringement other than as to claim 10 of the '616 patent is proper.  The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving the Defendants' objections, a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

The Plaintiffs incorrectly remove this instruction, contending that reasonable belief of invalidity of the claims of a patent only applies when advice of counsel is

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-118-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

sought.  This is simply not in accordance with the law.  *See, e.g., Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.,* 554 F.3d 1010, 1024-25 (Fed. Cir. 2009) (finding no active inducement based on defendants' "founds explain[ing] why they did not believe they were infringing…" which was a belief they arrived at because they thought they were practicing the prior art."); and *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (finding no active inducement because the testimony of a "Dr. Cords" who testified that Defendant thought it was practicing a prior art patent.)  There is no support for the Plaintiffs' position that the defense of a reasonable belief of invalidity of the claims only applies when advice of counsel is sought.  This is a proper instruction and it is key that the jury understand the issue. For each of these reasons, the Cochlear Defendants ask that the Court adopt the Cochlear Defendants' proposed instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-119-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.8 "CONTRIBUTORY INFRINGEMENT" (DISPUTED) – FOUNDATION'S PROPOSAL

The Foundation claims the Cochlear Defendants are liable for contributory infringement of claims 1 and 10 of the '616 patent and claims 6 and 7 of the '691 patent. Contributory infringement involves the selling or supplying of something less than the entire combination of elements listed in a claim with knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

To establish contributory infringement, the law requires the Foundation prove the following by a preponderance of the evidence:

First: The Foundation is the owner of the patents in suit;

Second: Some person, acting alone or with others, directly infringed one or more of claims the Asserted Patents;

Third: The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method;

Fourth: The material component in question is not a staple article of commerce suitable for a substantial non-infringing use; and

Fifth: The Cochlear Defendants sold or supplied the component with the knowledge that the component was especially made or adapted for a use that would infringe the claim of the patent in suit you are considering.

As to the third element, it is the Cochlear Defendants' position that the accused products of the Cochlear Defendants are capable of substantial noninfringing use. If, by a preponderance of the evidence, you find this to be true, you must find that the Cochlear Defendants have not contributorily infringed the patents in suit.

As to the fourth element, a material component suitable for non-infringing use is a component that has uses other than as a component of the patented product or

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-120-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

As to the fifth element, if you find by a preponderance of the evidence that the Cochlear Defendants did not sell the accused products with knowledge that they were going to be used as required by the claim you are considering, you must find that the Cochlear Defendants are not liable for contributory infringement by sale of the accused products.  No contributory infringement can be found unless the Cochlear Defendants knew at the time of sale that the accused products were going to be arranged or used according to the arrangement specified in the patent claim you are considering.  The Cochlear Defendants did not need to know there was infringement, just that the accused system would be used in the manner accused of infringement in this case.

If you find the Foundation has proved each of these elements by a preponderance of the evidence, your verdict should be for the Foundation on the Foundation's claim against Cochlear Defendants for contributory infringement.

If any of these elements has not been proved by a preponderance of the evidence, your verdict should be for the Cochlear Defendants on the Foundation's claim against the Cochlear Defendants for contributory infringement.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:25 (6th ed. Aug. 2013) as amended; Adapted from Model Patent Jury Instructions § 3.8, Northern District of California (Nov. 3, 2011) (and sources cited therein). 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et al.*, 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**Cochlear's Objection:**

Plaintiffs' argument that it should be allowed to bring indirect infringement claims for all of the claims-in-suit fails because it reflects a misunderstanding of the pleading and discovery process.

The basis for the Cochlear Defendants' proposed instruction is that, throughout this litigation, Plaintiffs have not provided discovery to support their indirect infringement theories for claim 1 of the '616 patent and claims 6-7 of the '691 patent. Indeed, during discovery, Plaintiffs only identified claim 10 of the '616 patent as a claim that was indirectly infringed. In response to an interrogatory that asked for the basis of the "alleged infringement of each asserted claim by each asserted product, whether it's direct infringement, contributory infringement, or inducement infringement," the Foundation responded:

> Through its acts, the Cochlear defendants, either individually or collectively, infringe at least Claim 10 of the 616 patent, either directly, by inducement of others, or contributorily…

(*See* May 2008 Interrogatory Response No. 1). The remainder of the response referred to claim charts that did not address indirect infringement of any of the other asserted claims. (*Id.*) Plaintiffs have not provided a supplemental discovery response that identifies any indirect infringement theories for the other asserted claims. The result of this discovery, then, is that claim 10 is the *only* claim that Plaintiffs asserted was indirectly infringed.

When confronted by this discovery during the meet and confer process, Plaintiffs contended that they had always asserted indirect infringement claims in their *pleadings*. This is insufficient to preserve the issue for trial. Settled law recognizes that the purpose of discovery is to narrow the issues in dispute. As the United States Supreme Court observed in *Hickman v. Taylor*, 329 U.S. 495, 501 (1947):

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-122-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

The [Federal Rules of Civil Procedure], however, restrict the pleadings to the task of general notice-giving and invent the deposition-discovery process with a vital role in the preparation for trial.  The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues…"

*Hickman*, 329 U.S. at 501; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"); *Kashlan v. TCBY Systems, LLC*, 2013 WL 3309123, *4 (E.D. Ark., Nov. 6, 2007) ("The point of requiring substantive answers to written discovery is to narrow a claiming party's theory of liability and damages prior to taking depositions.  A party is not required to go into a deposition blind, but is entitled to use written discovery to bring the opposing party's claim into focus…"); *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).  Thus, Plaintiffs may not rely upon their pleadings (which are the broad, "notice pleading" identified in *Hickman*) to avoid being bound to a written discovery response, the purpose of which is to define the issues in dispute and narrow the case.  Conversely, the Cochlear Defendants are entitled to rely upon a discovery response (rather than the notice-pleading) as the identification of the issues actually in dispute for trial.  When Plaintiffs failed to identify indirect infringement theories for the other asserted claims, the Cochlear Defendants were entitled to rely upon that answer as evidence that Plaintiffs were abandoning their overbroad pleadings where every claim was infringed in every possible way.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

Finally, Rule 37 of the Federal Rules of Civil Procedure is consistent with the Cochlear Defendants' proffered instruction.  Rule 37(c)(1) provides for an automatic exclusion of information from trial when a party fails to disclose that information during discovery (unless that failure was substantially justified).  Here, Plaintiffs failed to disclose their indirect infringement theories regarding three of the four asserted claims.  Accordingly, Rule 37 suggests that Plaintiffs would be precluded from introducing that information at trial.  Accepting Plaintiffs' reasoning would turn Rule 37 on its head: a party could assert one hundred claims in its complaint, provide discovery on five of those claims, and then assert all one hundred claims at trial because, it argues, the defendant had notice of those claims.  That is not how discovery works under the Federal Rules of Civil Procedure.  Accordingly, the Court should reject Plaintiffs' Instruction No. 3.2 because it improperly allows the jury to decide claims that Plaintiffs effectively abandoned because they failed to provide discovery about those theories of infringement.

Additionally, the Plaintiffs add the instruction that some person, "**acting alone or with others**," may directly infringe the patent to satisfy the direct infringement requirement of contributory infringement.  There is no law in support of this instruction proposed by the Plaintiffs, and it is in contradiction to Federal Circuit precedent.  *See, e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961) (holding that "there can be no contributory infringement in the absence of a direct infringement.").  While the Federal Circuit did extend active inducement to include multi-actor infringement, there is no case law that does so for direct infringement or contributory infringement.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (holding that direct infringement requires that "**a party** commit all the acts necessary to infringe the patent," and that they were not "revisit[ing] any of those principles regarding the law of divided infringement as it applies to liability for direct infringement…") (emphasis added).  Direct infringement is required for contributory infringement,

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-124-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   which means that a single party must infringe the patent in order for there to be

2   contributory infringement.

3       Further, the Plaintiffs misleadingly add the instruction that "The Cochlear

4   Defendants did not need to know there was infringement, just that the accused

5   system would be used in the manner accused of infringement in this case."  This

6   instruction is wholly contrary to the law.  *See, e.g. SynQor, Inc. v. Artesyn Techs,*

7   *Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) ("Liability for induced or contributory

8   infringement…requires 'knowledge that the induced acts constitute patent

9   infringement.'") (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060,

10  2068 (2011).)

11      Defendants cite in their instruction to the *SynQor* case which O'Malley's

12  addresses in the notes to the proposed instruction so as to enable its use for an

13  appropriate case as is the situation here.  Defendants instruction is superior as is it

14  not confusing nor duplicative but clear and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

The Cochlear Defendants' position here is a reiteration of its flawed position with regard to Instruction 4.1.  As stated above, the Cochlear Defendants preparation of a pseudo summary judgment motion embedded in the jury instructions is wholly improper, as admonished by the Court.  Moreover, as stated in the Foundation's Opposition to the Cochlear Defendants' proposed instructions on infringement, the Cochlear Defendants' accusation that the Foundation has not supported its claims of contributory infringement through pleadings and discovery is false and unsupported by the ample discovery provided in this case.

For at least these reasons, the Cochlear Defendants' proposed instruction on contributory infringement should be rejected.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-126-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.8  CONTRIBUTORY INFRINGEMENT

### [DEFENDANTS' TAILORED PROPOSED INSTRUCTION]

Plaintiffs claim the Cochlear Defendants are liable for contributory infringement of claim 10 of the `616 patent.  Contributory infringement involves the selling or supplying of something less than the entire combination of elements listed in a claim with knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

To establish contributory infringement, the law requires the Foundation to prove the following by a preponderance of the evidence:

First:  The Foundation is the owner of the patents in suit;

Second:  Some third person directly infringed claim 10 of the `616;

Third:  The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method used by the third person to directly infringe the Asserted Claim;

Fourth:  The material component in question is not a staple article of commerce suitable for a substantial non-infringing use; and,

Fifth:  The Cochlear Defendants sold or supplied the component with the knowledge that the component was especially made or adapted for a use that would infringe the claim 10 of `616 patent.

It is the Cochlear Defendants' position that the accused products are capable of being used to enable a person to hear without any use of the invention embodied in the patents in suit and that they therefore are capable of substantial noninfringing use.  If, by a preponderance of the evidence, you find this to be true, you must find that the Cochlear Defendants have not contributorily infringed the patents in suit.

As to the fifth element, if you find by a preponderance of the evidence that the Cochlear Defendants did not sell the Accused Product with knowledge that it was going to be used as required by the claim you are considering, you must find

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-127-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

that the Cochlear Defendants are not liable for contributory infringement due to the Accused Product.  No contributory infringement can be found unless the Cochlear Defendants knew at the time of sale that the Accused Product was going to be arranged or used in a way that constitutes infringement of the patent claim you are considering.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by *SynQor, Inc. v Artesyn Technologies, Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) ("Liability for induced or contributory patent infringement . . . requires knowledge that the acts constitute patent infringement"); *T5 Labs (Delaware) LLC v. Gaikai, Inc.*, 2013 WL 1400983, *3 (D. Del. April 5, 2013) ("With respect to elements (3) and (4), the pleading may use the same knowledge for contributory infringement as under inducement, because the knowledge for inducement is the same knowledge for contributory infringement.  Therefore, when a plaintiff has plead sufficient facts to show knowledge of inducement, sufficient facts to show knowledge of contributory infringement have also been pled.").  *See also Swipe Innovations, LLC v. NCR Corp.*, 2013 WL 6080439, *5 (N.D. Georgia, Nov. 18, 2013) ("Because contributory and induced infringement share the same knowledge requirement, the Court's conclusion in induced infringement analysis applies equally here").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-128-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 4.8  CONTRIBUTORY INFRINGEMENT

## [DEFENDANTS' BROAD PROPOSED INSTRUCTION]

The Foundation claims the Cochlear Defendants are liable for contributory infringement of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent. Contributory infringement involves the selling or supplying of something less than the entire combination of elements listed in a claim with knowledge that the things sold or supplied will be incorporated into a product or service that will directly infringe on the patents in suit.

To establish contributory infringement, the law requires the Foundation prove the following by a preponderance of the evidence:

First:  The Foundation is the owner of the patents in suit;

Second:  Some third person directly infringed one or more of claims 1 and 10 of the `616 patent and claims 6-7 of the `691 patent;

Third:  The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method used by the third person to directly infringe;

Fourth:  The material component in question is not a staple article of commerce suitable for a substantial non-infringing use; and

Fifth:  The Cochlear Defendants sold or supplied the component with the knowledge that the component was especially made or adapted for a use that would infringe the claim of the patent in suit you are considering.

If the Foundation has not proven any of these elements by a preponderance of the evidence, your verdict should be for the Cochlear Defendants on the Foundation's claim against the Cochlear Defendants for contributory infringement.

It is the Cochlear Defendants' position that the accused products are capable of being used to enable a person to hear without any use of the invention embodied in the patents in suit and that they therefore are capable of substantial noninfringing

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-129-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

use.  If, by a preponderance of the evidence, you find this to be true, you must find that the Cochlear Defendants have not contributorily infringed the patents in suit.

As to the fifth element, if you find by a preponderance of the evidence that the Cochlear Defendants did not sell the Accused Product with knowledge that it was going to be used as required by the claim you are considering, you must find that the Cochlear Defendants are not liable for contributory infringement due to the Accused Product.  No contributory infringement can be found unless the Cochlear Defendants knew at the time of sale that the Accused Product was going to be arranged or used in a way that constitutes infringement of the patent claim you are considering.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by *SynQor, Inc. v Artesyn Technologies, Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) ("Liability for induced or contributory patent infringement . . . requires knowledge that the acts constitute patent infringement"); *T5 Labs (Delaware) LLC v. Gaikai, Inc.*, 2013 WL 1400983, *3 (D. Del. April 5, 2013) ("With respect to elements (3) and (4), the pleading may use the same knowledge for contributory infringement as under inducement, because the knowledge for inducement is the same knowledge for contributory infringement.  Therefore, when a plaintiff has plead sufficient facts to show knowledge of inducement, sufficient facts to show knowledge of contributory infringement have also been pled."); *See also Swipe Innovations, LLC v. NCR Corp.*, 2013 WL 6080439, *5 (N.D. Georgia, Nov. 18, 2013) ("Because contributory and induced infringement share the same knowledge requirement, the Court's conclusion in induced infringement analysis applies equally here").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-130-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

Cochlear's attempts to exclude the Foundation's allegations of contributory infringement are improper.  The Foundation has provided evidence that the accused Cochlear wearable processor, implant, and diagnostic software products are separate components that may be sold separately.  The Foundation has further provided evidence that although these components may be sold separately, each component is a material part of a single infringing cochlear implant system.  The Foundation has further provided evidence that the components have no substantial non-infringing uses.  Each component product can be used (and is designed to be used) only in combination with, and only with, the other components.

In addition, the Foundation's proposed Instruction 4.8 is clearer, more likely to be understood by the jury, and more accurately supported by *O'Malley*. For at least these reasons, the Foundation's more accurate proposed instruction should be adopted.

1

**Cochlear's Response:**

2

3        In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth

4    express directions concerning the jury instructions.  As relevant here, that Order

5    directed the parties to use the most recent version of the applicable Ninth Circuit's

6    model instructions.  In the event those instructions were not applicable, the Court

7    directed the parties to use the most recent version of the instructions in O'Malley,

8    et al., <u>Federal Jury Practice and Instructions</u>.  The Cochlear Defendants present an

9    instruction from the most recent version of the O'Malley, et al. Instructions that

10   addresses the issue.

11       Additionally, the Cochlear Defendants' proposed instruction properly limits

12   the contributory infringement inquiry to claim 10 of the '616 patent.  The Plaintiffs

13   are seeking to assert claims that they never disclosed during discovery, to the

14   significant prejudice of the Cochlear Defendants.  This applies to any assertion of

15   inducement of infringement or contributory infringement as to any claim other than

16   claim 10 of the `616 patent and to the assertion of doctrine of equivalents as to any

17   claim other than claim 10 of the `616 patent.

18       Defendants' Interrogatory No. 1 required Plaintiffs to set forth the claims of

19   each of the patents in suit together with the theory of infringement and the details of

20   how each element of the claim was met by the Cochlear Defendants' products under

21   each theory of infringement.  Defendants' Interrogatory No. 2 required Plaintiffs to

22   set forth, inter alia, claims of each of the patents in suit on which the contend the

23   doctrine of equivalents applies.  In their response and supplemental responses, the

24   only claim ever identified as being subject to an assertion of inducement of

25   infringement or contributory infringement was claim 10 of the `616 patent.  Thus,

26   Fed. R. Evid. Rule 37, and the case law interpreting Rule 37, uniformly require the

27   automatic exclusion of any argument and evidence at trial based on a claim not

28   asserted during discovery and on which no discovery was ever provided by

Plaintiffs.

In *ATD Corp. v. Lydall, Inc.*, the Federal Circuit upheld the exclusion of an invalidity theory that was proposed by the defendants after the close of discovery. 159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated reason for precluding the invalidity theory was "exercising [its] discretion under the rule of the Federal Rules of Civil Procedure to preclude a party from relying on theories not made available or not disclosed to the opposing side."  Id.  The Federal Circuit agreed, holding that "[t]he district court in the instant case was well within its discretion in excluding the Munters patent, for the record shows that Lydall offered no reason to justify its submission long after the close of discovery."  *See also Markos v .Sears, Roebuck and Co.*, 2007 WL 5162457 at *1 (C.D. Cal., Mar. 19, 2007) (precluding "all testimony by Plaintiff related to his [newly asserted] claim" under Rule 26 because "Defendant has had no opportunity to conduct discovery on this theory [so] it would be unfairly prejudicial for Plaintiff to argue this theory at trial.")

Here, Plaintiffs have no justification for their failure to assert a claim of inducement or contributory infringement for any claim other than claim 10 of the '616 patent prior to the close of discovery.  The Cochlear Defendants would be substantially prejudiced if the court were to allow these claims to be inserted into this action at this 11th hour as they have taken no discovery on them nor have they prepared any expert testimony on these never previously-asserted claims.  As such, the jury should only be instructed as to those claims that are properly at issue in this case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of the '691 patent, and active inducement/contributory infringement of only claim 10 of the '616 patent.

No instruction on contributory infringement other than as to claim 10 of the `616 patent is proper.  The Cochlear Defendants submit herewith a proposed instruction that is in compliance with the Court's directives in its October 18, 2013 Order.  That instruction has been tailored to address the issues that are properly

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-133-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

presented to the jury based on the pleadings, the discovery and the applicable case law.  In the event the Court determines that the issues to be presented to the jury are broader than those articulated by the Cochlear Defendants, subject to and without waiving the Defendants' objections, a broader additional alternative instruction has been included that is likewise in compliance with the Court's directives in its October 18, 2013 Order.

Additionally, the Plaintiffs add the instruction that some person, "**acting alone or with others**," may directly infringe the patent to satisfy the direct infringement requirement of contributory infringement.  There is no law in support of this instruction proposed by the Plaintiffs, and it is in contradiction to Federal Circuit precedent.  *See, e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42 (1961) (holding that "there can be no contributory infringement in the absence of a direct infringement.").  While the Federal Circuit did extend active inducement to include multi-actor infringement, there is no case law that does so for direct infringement or contributory infringement.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (holding that direct infringement requires that "**a party** commit all the acts necessary to infringe the patent," and that they were not "revisit[ing] any of those principles regarding the law of divided infringement as it applies to liability for direct infringement…") (emphasis added).  Direct infringement is required for contributory infringement, which means that a single party must infringe the patent in order for there to be contributory infringement.

Further, the Plaintiffs misleadingly add the instruction that "The Cochlear Defendants did not need to know there was infringement, just that the accused system would be used in the manner accused of infringement in this case."  This instruction is wholly contrary to the law.  *See, e.g. SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) ("Liability for induced or contributory infringement…requires 'knowledge that the induced acts constitute patent

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-134-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  infringement.'"") (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060,

2  2068 (2011).)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-135-            FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 5.1  "INVALIDITY OF A PATENT" (DISPUTED) – FOUNDATION'S PROPOSAL

As I previously mentioned, the three elements to a valid patent are (1) novelty, (2) utility, and (3) nonobviousness.  The Cochlear Defendants assert that each of the asserted claims of each of the patents in suit are invalid because they lack novelty or are obvious when compared to the prior art.

Because a patent is presumed to be valid, the Cochlear Defendants have the burden to establish invalidity by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.  You should evaluate whether the evidence before you is materially new and not before the before the examiner at the patent office, because the burden of proof on the Cochlear Defendants in challenging the patent may be easier to sustain if the evidence is new and was not considered by the patent office.  In evaluating whether any prior art is new, you should consider whether the evidence is cumulative of, or less relevant to any patentability requirement compared to information the examiner already had from any source.

I will provide you with further instruction on these issues in a minute.

If you find by clear and convincing evidence the `616 patent or the `691 patent lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for the Cochlear Defendants.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011), Federal Circuit Bar Association's Model Patent Jury Instructions 4.1, 5.1.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-136-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

The Foundation's instruction completely ignores the Supreme Court's decision in *i4i v. Microsoft*, 131 S.Ct. 2238 (2011).  The Foundation makes the conclusory statement that the Cochlear Defendants' instruction does not "instruct the jury on this issue," when, in fact, it is the Foundation's instruction that has completely removed any instruction on the issue.  The Cochlear Defendants' instruction takes the language of the Supreme Court in *i4i*, and faithfully translates it into an instruction.  *See, i4i v. Microsoft*, 131 S.Ct. 2238, 2250-51 (2011) ("the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence"); and Cochlear's instruction ("Thus, you should consider whether any of the material evidence before you is new and consider that fact when determining whether the Cochlear Defendants have established the invalidity of a patent claim by clear and convincing evidence.") AMF's removal of this language from the Defendants' instruction removes an important step to be undertaken by the jury.  As such, AMF's instruction simply proffers an abstract statement of the law in the hopes that the jury will misunderstand and ignore the instruction.

The Foundation seeks to improperly mischaracterize the invalidity instruction by saying that the jury must have a "clear conviction" that the claim is invalid.  This language distracts from the actual "clear and convincing" standard that is discussed just a few sentences later.

**Foundation's Response:**

The Cochlear Defendants may cite *Microsoft v. i4i,* 131 S.Ct. 2238, 2250-51 (2011) above, but they do not apply it correctly in their proposed instruction.  The phrase "you should consider whether any of the material evidence before you is new" is not supported by *Microsoft* and reduces the question to whether a reference is new, not whether it is *materially* new.  *See id*. at 2251.

Furthermore, the Cochlear Defendants ignore the fact that the Foundation proposed a compromise instruction during the Friday, December 27th, 2013 meet and confer, one that brought the parties much closer together than they had been previously.  *See* Dec. 27 Meet and Confer Transcript at pg. 144, line 12-pg. 145, line 15.  The "custom" instruction that the Cochlear Defendants object to here was included in that compromise instruction offered a week ago ("I think we would consider adding the following sentence *at the end of* our second paragraph in 5.1 as a compromise"), and indeed it has been in the Foundation's proposed instruction for weeks.  *Id.*  Moreover, the "custom" phrase is supported by the Federal Circuit Bar Association's Model Patent Jury Instructions.  Thus, their accusations of bad faith "acceptance" and "retraction" are misplaced.  Indeed, it was only when the Cochlear Defendants finally made it clear that they were rejecting the Foundation's compromise instruction, that the Foundation's chose the alternative of a cumulativeness instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-138-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 5.1  INVALIDITY OF PATENT- COCHLEAR DEFENDANTS' PROPOSAL

As I previously mentioned, the three elements to a valid patent are (1) novelty, (2) utility, and (3) nonobviousness.  The Cochlear Defendants assert that each of the asserted claims of each of the patents in suit are invalid because they lack novelty or are obvious when compared to the prior art.  I will provide you with further instruction on these issues in a minute.

Because a patent is presumed to be valid, the Cochlear Defendants have the burden to establish the invalidity by clear and convincing evidence.

You should evaluate whether the evidence before you is materially new and not before the examiner at the patent office.  The burden of proof of the Cochlear Defendants in challenging the patent may be easier to sustain if the evidence is new and was not considered by the Patent Office. Thus, you should consider whether any of the material evidence before you is new and consider that fact when determining whether the Cochlear Defendants have established the invalidity of a patent claim by clear and convincing evidence.

If you find by clear and convincing evidence the `616 patent and/or the `691 patent lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for the Cochlear Defendants.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:60 (6th ed. Aug. 2013) as amended by *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2250-51, 180 L.Ed. 2d 131 (2011).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-139-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Foundation objects to the language inserted by the Cochlear Defendants because it is not in the model instruction, misstates the law, and is misleading to the jury.  First, *Microsoft Corp. v i4i Ltd. Partnership et. al.*, 131 S.Ct. 2238, 2251 (2011) does not *require* an instruction on the effect of new evidence in all cases. Nonetheless, the Foundation's proposal includes such an instruction. Second, the Cochlear Defendants' ignore where *Microsoft* states that "[w]hen it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question." *Id.*  Rather than instruct the jury on this dispute, the Cochlear Defendants' provide a sentence that is confusingly repetitive and implies the conclusion that *any* evidence raised is material ("…you should consider whether any of the material evidence before you is new…").  In contrast, the Foundation's instruction provides the jury with guidance on how to determine if any proffered evidence should enter into the jury's invalidity deliberation.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-140-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

Through its instruction, the Foundation seeks to refuse the instruction on the jury's consideration of whether the Defendants have met their clear and convincing burden of proof for invalidity for prior art not before the PTO (i.e., "Thus, you should consider whether any of the material evidence before you is new and consider that fact when determining whether the Cochlear Defendants have established the invalidity of a patent claim by clear and convincing evidence.")  The Supreme Court expressly directed that this instruction should be given when requested by a party in *i4i v. Microsoft*, 131 S.Ct. 2238, 2250-51 (2011) ("When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.")  Thus, it would be error to deny this instruction.

The Plaintiffs' bad faith in compromising on these jury instructions is evidenced by the fact that Plaintiffs accepted the instruction from *i4i*, recognizing that it is the correct law, but then quickly retracted its acceptance when the Cochlear Defendants objected to inclusion of Plaintiffs' "custom" instruction that was submitted without any support in *O'Malley* or any other precedent.  *See,* Jan. 2, 2014 Meet and Confer Transcript at pg. 116, line 16 – pg. 12, line 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-141-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 5.6  "PRIOR ART" (DISPUTED) – FOUNDATION'S PROPOSAL

As I stated earlier, in deciding on the issue of invalidity, you must consider the "prior art."  The term "prior art" refers to technology and information publicly available before the date of the invention.  In this case, the Cochlear Defendants argue the following references qualify as prior art, and rely on only these references in arguing the '616 patent is invalid:

1. U.S. Patent No. 4,532,930 ("The Crosby patent");

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. U.S. Patent No. 4,947,844 ("The McDermott patent");

4. An article: McDermott, "An Advanced Multiple Channel Cochlear Implant," IEEE Transactions on Biomedical Engineering, Vol. 36:7, pp. 787-797 (July 1989) ("McDermott 1989");

5. The LAURA Cochlear Prosthesis: Development and Description, by Dr. Ir. S. Peeters et al., found at pp. 547-555 of Cochlear Implant: Current Situation, Proceedings of the International Cochlear Symposium, Duren, West Germany (Banfai, P. ed., September 7-12, 1987); and

6. European Patent Application Publication 0259906 ("the LAURA application").

The Cochlear Defendants argue the following references qualify as prior art, and rely on only these references in arguing the '691 patent is invalid:

1. U.S. Patent No. 4,532,930 ("The Crosby patent");

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. An article: McDermott, "A Custom LSI-CMOS Chip for a Cochlear Implant," Journal of Electrical and Electronics Engineering, Australia- IE Australia and IREE Australia, Vol. 4, No. 4, December 1984, 305- 308 ("McDermott 1984"); and

4. The LAURA Cochlear Prosthesis: Development and Description, by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-142-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1    Dr. Ir. S. Peeters et al., found at pp. 547-555 of Cochlear Implant:

2    Current Situation, Proceedings of the International Cochlear

3    Symposium, Duren, West Germany (Banfai, P. ed., September 7-12,

4    1987).

5

6  The defendants have not relied upon any other prior art, and you should not consider

7  any other references as prior art in your deliberations.

8  *Authority:*

9    Adapted from 3A Kevin F. O'Malley, <u>Federal Jury Practice and Instructions</u> –

10  Civil § 158.47 (6th ed. 2013).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Cochlear's Objection:**

AMF seeks to wrongly constrict the trial of this case and prevent the interfere with the Court's right to admit proper evidence during trial. As stated in the Cochlear Defendants' Position in support of their instruction, the Foundation's instruction completely ignores the fact that there are numerous evidentiary issues still open on which the Court has yet to rule. This was discussed repeatedly in the meet and confer sessions. [See 12-27-13 Transcript, pg. 150, line 17 – pg. 163, line 8; and 1-2-14 Transcript, pg. 130, line 8 – pg. 134, line 1.]

As such, the jury instruction require a certain generality such that the instructions will apply to whatever evidence and prior art the Court deems admissible during trial. There is no reason to limit the jury instructions as the Foundation insists on doing. The Foundation's stance is unsupportable and unreasonable.

**Foundation's Response:**

 As explained in its objection to the Cochlear Defendants' instruction, the Foundation merely seeks to prevent them from impermissibly expanding the scope of their invalidity case well after every deadline to disclose invalidity references has passed.  *See, e.g.*, *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850-51 (Fed. Cir. 2006) (affirming exclusion of prior art not identified as potential prior art until after discovery had closed and shortly before trial commenced) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed.Cir.1998) (stating that the purpose of both the Federal Rules of Civil Procedure and 35 U.S.C. § 282 is to prevent unfair and prejudicial surprise and not to permit last-minute production of evidence).

## 5.6  PRIOR ART – COCHLEAR DEFENDANTS' PROPOSAL

As I stated earlier, in deciding on the issue of invalidity, you must consider the "prior art."  The term "prior art" refers to technology and information publicly available before the date of the invention. In this case, the parties have agreed the following documents qualify as prior art:

1. U.S. Patent No. 4,532,930 ("The Crosby patent");

2. U.S. Patent No. 4,612,934 ("The Borkan patent");

3. U.S. Patent No. 4,947,844 ("The McDermott patent");

4. An article: McDermott, "A Custom LSI-CMOS Chip for a Cochlear Implant," Journal of Electrical and Electronics Engineering, Australia-IE Australia and IREE Australia, Vol. 4, No. 4, December 1984, 305-308 ("McDermott 1984 article");

5. An article: McDermott, "An Advanced Multiple Channel Cochlear Implant," IEEE Transactions on Biomedical Engineering, Vol. 36:7, pp. 787-797 (July 1989) ("McDermott 1989 article");

6. An article: Peeters, "The LAURA Cochlear Prosthesis: Development and Description," Cochlear Implant: Current Situation, pp. 547-555. Proceedings of the International Cochlear Symposium, Düren, West Germany (Banfai, P. ed., Sept. 7-12, 1987) ("LAURA Article"); and

7. European Patent Application Publication No. 0259906 ("the LAURA application");

8. Thesis:  McDermott, "An Advanced Cochlear Implant Hearing Prosthesis for Profound To Total Deafness," University of Melbourne Special Collections, June 1988 ("McDermott Thesis").[6]

You should not consider any other references as prior art in your deliberations

---

[6] This reference will be deleted from the instruction in the event the Court does not allow it into evidence.  Likewise, any other prior art admitted at trial should be added to the list.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-146-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   except as the Court allows into evidence.

2

3   *Authority:*

4   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:47 (6th ed. Aug. 2013) as to the

5   first paragraph.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Foundation's Objection:**

The Foundation takes the position that the Cochlear Defendants should not be permitted to present the McDermott Thesis as prior art, as fully discussed in the Foundation's Motion in Limine No. 1.  The Cochlear Defendants have removed Hugh McDermott from their witness list, and have identified no other basis for admitting this reference into evidence.  The Foundation also does not stipulate that the list of references provided by the Cochlear Defendants are prior art to the patents in suit.

The Foundation's instruction is appropriate, based on the references relied upon and the opinions disclosed by the Cochlear Defendants' expert, as well as the Cochlear Defendants' invalidity contentions and § 282 notice of prior art.  The Cochlear Defendants should not be permitted to expand the scope of their invalidity case beyond these disclosures.  The last sentence is objectionable because it suggests that the Cochlear Defendants are entitled to rely on every document that is admitted into evidence to argue for invalidity, regardless of their contentions in the case and regardless of whether they qualify as prior art under the applicable statute. Indeed, the Cochlear Defendants have insisted on including this language because they contend that they have some as-yet-unidentified prior art that they intend to rely on for their invalidity contentions that they allege was related in some unspecified way to the recent deposition of the Foundation's witness, Dr. Schindler. This is an improper attempt to expand the scope of their invalidity contentions long past the permissible deadlines.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-148-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The instruction submitted by the Cochlear Defendants properly allows the jury to consider whatever prior art the Court allows into evidence.  This instruction is appropriate, as there are numerous evidentiary issues still open, and it is inappropriate for the Foundation to attempt to determine these issues on its own by limiting the scope of prior art that may be admitted by the Court.  The Foundation's instruction seeks to improperly instruct the jury on the scope of the prior art and ignores outstanding evidentiary issues that will be decided at trial.  For example, the Plaintiffs' instruction improperly removes consideration of the McDermott Thesis as prior art, when this is still an open issue.  The Plaintiffs' instruction further restricts other prior art that may be presented during the case, such as the testimony of the Plaintiffs' witness Dr. Schindler, and his testimony regarding his use of telemetry long prior to the filing date of the patents in suit.  The Foundation's instruction attempts to usurp the jurisdiction of this Court to make evidentiary rulings on its own.  Conversely, the Cochlear Defendants' proposed instruction correctly recognizes the fact that the Court will continue to make evidentiary rulings during the trial that will affect the scope of prior art to be considered by the jury.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

-149-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 5.6a  PRIOR ART PUBLICATION (DISPUTED) – FOUNDATION'S PROPOSAL

In order for the McDermott art to be considered a prior art publication, Cochlear must prove the following:

First: The publication was made before the Foundation invented the invention claimed in the patent claim you are considering or more than one year before the effective filing date of the patent in suit.

Second: The publication was at least reasonably available to at least some segment of the public. It is not necessary that the prior publication be available to every member of the public. It must be available without restriction to that segment of the public most likely to avail itself of the publication's contents.  When considering whether a library reference was available, it is not enough that the library has possession, it must also make the reference reasonably accessible by including the reference in a library index and catalog indicating where the item is "shelved."

Third: The prior publication made a meaningful disclosure of the invention. To be "meaningful," the disclosure must enable a person of ordinary skill in this art to understand the invention. The disclosure must be enabling and meaningful. In determining whether the disclosure is complete, enabling, and meaningful, you should take into account what would have been within the knowledge of a person of ordinary skill in the art to make, construct, and practice the invention.

For the McDermott art to be considered prior art, the Cochlear Defendants must prove each of the three elements I just read to you is shown by clear and convincing evidence.

***Authority:***

Adapted from 3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice and Instructions – Civil § 158.69 (6th ed. 2013); *In re*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-150-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  *Lister*, 583 F.3d 1307, 1311–14 (Fed. Cir. 2009); *In re Hall*, 781 F.2d 897, 899

2  (Fed. Cir. 1986); *In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A.1978); *Ajinomoto Co.*

3  *Inc. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *37 (D.

4  Del. 1998), *aff'd on other grounds*, 228 F.3d 1338 (Fed. Cir. 2000).

**Cochlear's Objection:**

As stated in the Cochlear Defendants' Position in support of their instruction (5.8b), the Foundation's instruction completely ignores the fact that there are numerous evidentiary issues still open on which the Court has yet to rule.  As such, the jury instruction require a certain generality such that the instructions will apply to whatever evidence and prior art the Court deems admissible during trial.  There is no reason to limit the jury instructions as the Foundation insists on doing.  The Foundation's stance is unsupportable and unreasonable.

Further, the Foundation fails to address the fact that their instruction regarding cataloguing and indexing is simply a misstatement of the law.  Regardless of the facts of the case, the jury must be correctly instructed on the law   It is <u>not</u> the law that a library "**<u>must</u>**…include[e] the reference in a library index and catalog indicating where the item is "shelved."  Rather, in *In re Lister,* the Federal Circuit explicitly held that "[w]hile cataloging and indexing have played a significant role in our cases involving library references, **<u>we have explained that neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible</u>**."  583 F.3d 1307, 1312 (Fed. Cir. 2009) (citing *In re Klopfenstein,* 80 F.3d 1345, 1348 (Fed. Cir. 2004) ("[Our cases] do not limit this court to finding something to be a `printed publication' only when there is distribution and/or indexing.")

Plaintiffs' instruction expressly ignores these holdings by the Federal Circuit, and misleads the jury into believing that a library reference can only be public accessible when the reference is indexed, cataloged, and shelved.  Instead, Plaintiffs' instruction mischaracterizes the law by instructing the jury that a library can only make a reference "reasonably accessible by including the reference in a library index and catalog indicating where the item is 'shelved.'"  This is directly contrary to the law.  Conversely, the Cochlear Defendants' instruction correctly states the law, that "cataloging and indexing can play a significant role in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-152-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

establishing a reference is publicly available," but "neither cataloging nor indexing is a necessary condition."  This instruction is verbatim what is stated in the law and should be adopted by the Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

**Foundation's Response:**

As explained in its objection to the Cochlear Defendants' instruction, the Foundation merely seeks to prevent them from impermissibly expanding the scope of their invalidity case well after every deadline to disclose invalidity references has passed.  *See, e.g.*, *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850-51 (Fed. Cir. 2006) (affirming exclusion of prior art not identified as potential prior art until after discovery had closed and shortly before trial commenced) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed.Cir.1998) (stating that the purpose of both the Federal Rules of Civil Procedure and 35 U.S.C. § 282 is to prevent unfair and prejudicial surprise and not to permit last-minute production of evidence).

## 5.8b  ANTICIPATION – PRIOR ART – PRINTED PUBLICATION – COCHLEAR DEFENDANTS' PROPOSAL

A patent can also be anticipated by a printed publication.

A drawing or written description of an invention is part of the prior art if it constitutes a printed publication.  Such a publication must describe the invention in a document made accessible to the public before the date of the invention or for more than one year before the effective filing date of the patent you are considering.

The Cochlear Defendants claim that the `616 and the `691 patents are invalid for lack of novelty due, in part, to one or more printed publications.  If you find the Cochlear Defendants have proved by clear and convincing evidence that the invention was described in a prior publication in the United States or in a foreign country before it was invented by the inventors who assigned it to the Foundation, or more than one year before the effective filing date of August 31, 1991, then the patent claim is invalid.

The Cochlear Defendants must prove the following:

First:  The publication was made before the Foundation invented the invention claimed in the patent claim you are considering or more than one year before the effective filing date of August 31, 1991.

Second:  The prior publication was at least reasonably available to at least some segment of the public.  It is not necessary that the prior publication be available to every member of the public.  It must be available without restriction to some segment of the public most likely to avail itself of the publication's contents, even if it is difficult to find.  The public, for the purposes of the patent laws, constitutes those persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents.  A document that is restricted to a part of the public may nevertheless be "accessible" to the public so long as accessibility is sufficient to lead you to believe that the public concerned with the art knew of the contents of the publication prior to the date of the invention or at least

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-155-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

one year prior to the effective filing of the patent claim you are considering. While cataloging and indexing can play a significant role in establishing a reference is publicly available, neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible. Depending on the circumstances surrounding the disclosure, a variety of factors may be useful in determining whether a reference was publicly accessible.

Third: The prior publication made a meaningful disclosure of the invention claimed in the patent claim you are considering. To be "meaningful," the disclosure must enable a person of ordinary skill in this art to understand the invitation. The disclosure must be enabling and meaningful. In determining whether the disclosure is complete, enabling, and meaningful, you should take into account what would have been within the knowledge of a person of ordinary skill in the art to make, construct, and practice the invention.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:69 (6th ed. Aug. 2013) as amended; *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr.* 4.3(a)(1); *In re Lister*, 583 F.3d 1307 (Fed. Cir. 2009) ("While cataloging and indexing have played a significant role in our cases involving library references, we have explained that neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible. *See Klopfenstein*, 380 F.3d at 1348 ("[Our cases] do not limit this court to finding something to be a `printed publication' only when there is distribution and/or indexing."). Depending on the circumstances surrounding the disclosure, a variety of factors may be useful in determining whether a reference was publicly accessible.").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-156-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Foundation takes the position that this instruction would be more readily understood if provided as Instruction 5.6a above, because it is directed to whether a reference is prior art, not whether such a reference anticipates.  In addition, the Foundation believes such an instruction is only necessary if the jury is permitted to determine whether the McDermott Thesis qualifies as prior art.  However, as discussed in the Foundation's Motion in Limine No. 1, the McDermott Thesis is not admissible and even if it is, it does not automatically qualify as prior art.  To the extent the Court disagrees, the Foundation has proposed an instruction tailored to that reference, at 5.6a above.

With this instruction, the Cochlear Defendants also attempt to backtrack from their own arguments regarding the public accessibility of the McDermott Thesis. They have provided no evidence for the date it became publicly accessible beyond the Dott Declaration's specific discussion of library cataloging practices.  It may be true generally that neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible.  But this is the only basis for the Cochlear Defendants' contention that the McDermott Thesis qualifies as prior art and, thus, their vague reference to "a variety of factors" will only confuse the jury.  Moreover, they point to no case involving a library reference in which any factor other than indexing or cataloguing was used to find public accessibility, including *In re Lister* itself.

With respect to Instruction 5.8b here, the Foundation instead proposes an instruction on inherency, proposed below, as the Cochlear Defendants' anticipation arguments require the jury to determine whether certain elements are inherently disclosed by the prior art

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-157-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

(Plaintiffs' instruction is listed at 5.6a, instead of 5.8b)

Once again, the instruction submitted by the Cochlear Defendants properly allows the jury to consider whatever prior art the Court allows into evidence. This instruction is appropriate, as there are numerous evidentiary issues still open, and it is inappropriate for the Foundation to attempt to determine these issues on its own by limiting the scope of prior art that may be admitted by the Court. The Foundation's instruction seeks to improperly instruct the jury on the scope of the prior art and ignores outstanding evidentiary issues that will be decided at trial. For example, the Plaintiffs' instruction improperly limits the scope of prior art publications to the McDermott prior art. The Plaintiffs' instruction fails to address or recognize other prior art that may be presented during the case. The Foundation's instruction attempts to usurp the jurisdiction of this Court to make evidentiary rulings on its own. Conversely, the Cochlear Defendants' proposed instruction correctly recognizes the fact that the Court will continue to make evidentiary rulings during the trial that will affect the scope of prior art to be considered by the jury.

Further, Plaintiffs' instruction mischaracterizes the law by instructing the jury that a library can only make a reference "reasonably accessible by including the reference in a library index and catalog indicating where the item is 'shelved.'" This is directly contrary to the law. In *In re Lister*, the Federal Circuit explicitly held that "[w]hile cataloging and indexing have played a significant role in our cases involving library references, **we have explained that neither cataloging nor indexing is a necessary condition for a reference to be publicly accessible**." 583 F.3d 1307, 1312 (Fed. Cir. 2009) (citing *In re Klopfenstein,* 80 F.3d 1345, 1348 (Fed. Cir. 2004) ("[Our cases] do not limit this court to finding something to be a `printed publication' only when there is distribution and/or indexing.") Plaintiffs' instruction expressly ignores these holdings by the Federal Circuit, and misleads the jury into believing that a library reference can only be public accessible when the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-158-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

reference is indexed, cataloged, and shelved.  Conversely, the Cochlear Defendants' instruction correctly states the law, that "cataloging and indexing can play a significant role in establishing a reference is publicly available," but "neither cataloging nor indexing is a necessary condition."  This instruction is verbatim what is stated in the law.  As such, it would be error to elect Plaintiffs' misleading mischaracterization of the law over Defendants' verbatim restatement of the law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-159-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 5.8b  "ANTICIPATION—PRIOR ART—INHERENCY" (DISPUTED) – FOUNDATIONS' PROPOSAL

The Cochlear Defendants have argued that their cited prior art "inherently" anticipates certain limitations of the Foundation's patent claims.

Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art.  It is not sufficient that a person following the disclosure might obtain the result set forth in the patent claim; it must invariably happen.  A prior art reference may anticipate a patent without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in a single anticipating reference.

Thus, if you find that the prior art merely probably or possibly discloses any of the claim limitations, then you must find that the prior art does not anticipate the Foundation's patent.  Likewise, if you find that the prior art discloses (expressly or inherently) all of the claim limitations, then you must find that the prior anticipates the Foundation's patent.

*Authority:*

The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim. "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation...." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed.Cir.1991) (*quoting In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)); *see also Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed.Cir.2002) ("Inherent anticipation requires that the missing descriptive material

is 'necessarily present,' not merely probably or possibly present, in the prior art." (*quoting In re Robertson*, 169 F.3d 743, 745 (Fed.Cir.1999))). For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, *1333 and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (overturning an erroneous district court instruction on anticipation and inherency); *Applied Materials v Advanced Semiconductor*, 98 F3d 1563, 1576 (Fed. Cir. 1996) (Archer J., concurring) ("[I]t is not sufficient that a person following the disclosure might obtain the result set forth in the [claim]; it must invariably happen.") (citing *Gubelmann v. Gang*, 408 F.2d 758, (C.C.P.A. 1969)); *see also Diodem, LLC v. Lumenis Inc.*, No. CV03–2142, 2005 WL 6225366, at *15 (C.D. Cal. Jan. 24, 2005) (same) (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 830 F.Supp. 871, 874 (E.D.N.C.1993), *aff'd*, 52 F.3d 1043 (Fed.Cir.1995)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-161-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

AMF again seeks to browbeat the jury into adopting its position – here that there can never be an inherent disclosure.  Thus, AMF make three requests for statements (i.e., "[i]t is not sufficient that a person following the disclosure might obtain the result set forth in the patent claim; it must invariably happen").  There is absolutely no reason to state in three consecutive statements that "probability," or "possibility," or "might," are insufficient, and that the missing trait must "necessarily," or "invariably," or "inherently" be present.

Secondly, the proposed instruction deletes language from the instructions offered by Defendants that provides a balance and further context for the jury to fairly determine what inherent disclosures, if any, are present.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-162-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  **Foundation's Response:**

2       The Cochlear Defendants accuse the Foundation of "usurp[ing] the

3  jurisdiction of this Court to make evidentiary rulings" while attempting to

4  circumscribe every prior art notice provision in the Federal Rules of Civil Procedure

5  and federal patent statutes.

6       As discussed in its objection to the Cochlear Defendants' instruction, the

7  Cochlear Defendants have provided no basis for the McDermott Thesis to qualify as

8  prior art beyond cataloging and indexing.  Their instruction may be an accurate

9  statement of the law in general, but provides no guidance to the jury on how to

10  apply it in this case.  On the other hand, the Foundation's instruction includes the

11  relevant factors the jury should consider based on the evidence to be presented in

12  this case.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.8c  ANTICIPATION—PRIOR ART—INHERENCY – DEFENDANTS' PROPOSAL

The Cochlear Defendants have argued that their cited prior art "inherently" anticipates certain limitations of the Foundation's patent claims.

Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art.  A prior art reference may anticipate patent without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in single anticipating reference.  Inherent anticipation of a later patent does not require that a person of ordinary skill in art would have recognized the inherent disclosure before the filing date of the patent invalidated by the inherent disclosure.

Thus, if you find that the prior art merely probably or possibly discloses any of the claim limitations, then you must find that the prior art does not anticipate the Foundation's patent.  Likewise, if you find that the prior art discloses (expressly or inherently) all of the claim limitations, then you must find that the prior anticipates the Foundation's patent.

*Authority:*

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010) (overturning an erroneous district court instruction on anticipation and inherency).

The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim.  "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation...."  *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed.Cir.2002).  "Inherency, however, may not be established by probabilities or possibilities.  The mere

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-164-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

fact that a certain thing may result from a given set of circumstances is not sufficient." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed.Cir.1991) (*quoting In re Oelrich*, 666 F.2d 578, 581 (CCPA 1981)); *see also Trintec Indus., Inc. v. Top–U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed.Cir.2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." (*quoting In re Robertson*, 169 F.3d 743, 745 (Fed.Cir.1999))). For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, *1333 and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.

*See also, Schering Corp. v. Geneva Pharmaceuticals Inc.*, 339 F.3d 1373, 1377-78 (Fed. Cir.2003) (A prior art reference may anticipate patent without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in single anticipating reference.  Inherent anticipation of a later patent does not require that a person of ordinary skill in art would have recognized the inherent disclosure before the filing date of the patent invalidated by the inherent disclosure.).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-165-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The parties' instructions differ in two small yet important ways.

First, the Cochlear Defendants' omit the statement that "[i]t is not sufficient that a person following the disclosure might obtain the result set forth in the patent claim; it must invariably happen."  This comes directly from *Applied Materials v Advanced Semiconductor*, 98 F3d 1563, 1576 (Fed. Cir. 1996) (Archer J., concurring) ("[I]t is not sufficient that a person following the disclosure might obtain the result set forth in the [claim]; it must invariably happen.") (citing *Gubelmann v. Gang*, 408 F.2d 758, (C.C.P.A. 1969)); *see also Diodem, LLC v. Lumenis Inc.*, No. CV03–2142, 2005 WL 6225366, at *15 (C.D. Cal. Jan. 24, 2005) (same) (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 830 F.Supp. 871, 874 (E.D.N.C.1993), *aff'd*, 52 F.3d 1043 (Fed.Cir.1995)).

Second, the Cochlear Defendants' inclusion of language from *Schering Corp. v. Geneva Pharmaceuticals Inc.*, 339 F.3d 1373, 1377-78 (Fed. Cir. 2003) about recognition of an inherent disclosure at the time of filing the application is irrelevant and needlessly confusing because it has no applicability to the facts of this case.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-166-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants have attempted to provide a balanced instruction that correctly presents the law of inherency to the jury.  Conversely, the Plaintiffs insist on an instruction that is clearly skewed and can provide no justification for doing so.  The statement that "[i]nherent anticipation of a later patent does not require that a person of ordinary skill in art would have recognized the inherent disclosure before the filing date of the patent invalidated by the inherent disclosure" is in accordance with Federal Circuit precedent.  This cannot be denied by the Plaintiffs.  There is no reason to remove this instruction, as Plaintiffs insist on doing.

Further, Plaintiffs seek to skew this instruction in their favor by stating the same principle in three consecutive sentences.  The second sentence of the instruction states that inherent anticipation requires that the missing descriptive material is " 'necessarily present,' not merely probably or possibly present."  Then, the very next sentence states that a prior art reference may anticipate if a missing feature is "necessarily present, or inherent, in a single anticipating reference."  Despite these two statements, essentially stating the same thing, the Plaintiffs seek a third sentence that it is insufficient that a person "might obtain the result", and that it must "invariably" happen.  The sentence suggested by the Plaintiffs is simply a restatement of the two sentences surrounding it.  As such, it is entirely unnecessary, and designed only to unfairly skew the instruction the Plaintiffs' favor, when there is no justification for doing so.

## 5.9 "OBVIOUSNESS—GENERALLY" (DISPUTED) – FOUNDATION'S PROPOSAL

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Cochlear may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-168-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-169-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

field.

*Authority:*

Adapted from Model Patent Jury Instructions § B.4.3 4.3c, Federal Circuit Bar Association (June 2013) (and sources cited therein).

**Cochlear's Objection:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants, in accordance with the Court's Order, provide an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of the Federal Circuit Bar Association instructions.  That instruction is not proper for a variety of reasons including that it does not fairly portray the standard and it is out of character with the content and tone of the instruction found in the O'Malley, et al. Instructions the Court ordered be used.  AMF can provide no justification as to why the instruction provided in O'Malley, which was ordered by the Court, should not be used.  By completely ignoring this Court's Order, the Foundation has increased the burden on the Parties and this Court and created a controversy when none need exist.

Further, the Foundation objects that the O'Malley's instruction does not include the full listing of secondary considerations.  However, it neglects to mention the fact that the Foundation expressly refused Cochlear's compromise to include the full listing of secondary considerations in instruction 5.10.  [See 1-2-2014 meet and confer transcript at 141:11-142:13.]  Moreover, despite AMF's rejection of the proposal, that the full listing is presented in Defendants' proposed Instruction 5.10.  As such, AMF's argument is without any merit.  The Court should continue to use the O'Malley instructions proffered by Defendants as it directed all parties to do.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-171-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

     The Cochlear Defendants have provided no explanation for how they believe Federal Circuit Bar Association instructions are "out of character with the content and tone" with O'Malley.  The reasons for the Foundation's proposed alternative instruction, however, as explained in its objection to the Cochlear Defendants instruction, are that it provides a more comprehensive treatment of the law the jury will need to consider to evaluate obviousness.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-172-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**5.9 OBVIOUSNESS—GENERALLY – DEFENDANTS' PROPOSAL**

As I mentioned to you previously, one of the defenses asserted by the Cochlear Defendants is that, if any asserted claim of each of the two patents in suit are not anticipated by the prior art, that claim is invalid because of obviousness.

To succeed on this contention, the Cochlear Defendants must prove by clear and convincing evidence, as to the particular claim you are considering, that a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time the invention was made, would have come up with the invention at that time.  Unlike anticipation, obviousness may be shown by considering two or more items of prior art in combination.

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the art at the time the claimed invention was made.  You must not use hindsight.  You may not consider what is known now or what was learned from the patent in suit you are considering.  In addition, you may not use the patent in suit you are considering as a roadmap for selecting and combining items of prior art.

In making your decision regarding obviousness, you should consider the following:

1.     The scope and content of the prior art. You may consider prior art that was reasonably relevant to the problem the inventor faced, including prior art in the field of the invention and prior art from other fields that a person of ordinary skill would consider when attempting to solve the problem.

2.     Any differences between the prior art and the invention in the patent claim.

3.     The level of ordinary skill in the field of the invention at the time of the invention.

***Authority:***

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:65 (6th ed. Aug. 2013) as

2   amended.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-174-    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Court's Order of October 18, 2013 [D.I. 300], states that "Counsel may submit alternatives to these instructions only if counsel has a reasoned argument that they do not properly state the law or they are incomplete."  The Foundation's proposed Instruction 5.9 is based on the Model Patent Jury Instructions from the Federal Circuit Bar Association and should be used instead of Instruction 5.9 proposed by the Cochlear Defendants.  The Federal Circuit Bar Association's instruction is preferable to O'Malley because it clearly and comprehensively covers reasons to combine and secondary considerations of nonobviousness.  Moreover, it is easier to understand than the corresponding O'Malley instructions.  In contrast, the obviousness instruction provided by the Cochlear Defendants at 5.9 above does not address reasons to combine, and the commercial success instruction by itself at 5.10 below fails to present the full list of secondary considerations of nonobviousness to be considered.  Thus, this instruction is incomplete and should be rejected in favor of the Foundation's proposed alternative.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-175-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants, in accordance with the Court's Order, provide an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of the Federal Circuit Bar Association instructions.  That instruction is not proper for a variety of reasons including that it does not fairly portray the standard and it is out of character with the content and tone of the instruction found in the O'Malley, et al. Instructions the Court ordered be used.  AMF can provide no justification as to why the instruction provided in O'Malley, which was ordered by the Court, should not be used.

### 5.9a  "INVALIDITY – OBVIOUSNESS – HINDSIGHT BIAS" (DISPUTED) – FOUNDATIONS' PROPOSAL

In determining obviousness you should bear in mind that a patentable invention may appear obvious in hindsight. To avoid this hindsight bias, you must cast your mind back to the time of the invention to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and then-accepted wisdom in the field. Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention. In this regard, considering the objective evidence may work as a beneficial check on hindsight.

*Authority:*

3A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, <u>Federal Jury Practice and Instructions</u> – Civil Ch. 158, p. 585 (6th ed. 2006); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Cheese Systems, Inc. v. Tetra Pak Cheese and Powder Systems, Inc.*, F.3d , , 107 U.S.P.Q.2d 1737, 2013 WL 3984991, *9 (Fed. Cir. 2013); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-177-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

    This instruction proposed by the Plaintiffs is entirely unnecessary, and is not a part of O'Malley's jury instructions.  In fact, this section is entirely duplicative of O'Malley's general instruction on obviousness (see, Defendants' proposed Instruction 5.9).  This section is a portion of O'Malley's treatise, rather than O'Malley's suggested jury instructions.  As such, this "instruction" is inappropriate, superfluous, and not in conformance with this Court's Order of October 18, 2013 [D.I. 300].

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-178-        FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

The Foundation's proposed instruction comports with the law and is appropriate here.  The support cited to in O'Malley is identical to the latest version of that text.  Because the Foundation proposes the Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3 4.3c for Instruction 5.9, it is not duplicative of any other instruction.

## 5.10  "OBVIOUSNESS—COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS" (DISPUTED) – FOUNDATION'S PROPOSAL

Considerations such as the commercial success of the invention or lack of commercial success, long felt but unresolved needs, failure of others to make such invention, and other similar factors must be considered before determining whether the claimed invention would have been obvious to one of skill in the art at the time of invention.  These considerations play a critical role in the obviousness analysis and you must consider them before reaching a conclusion on obviousness.  They are not just a cumulative or confirmatory part of the obviousness calculus and should not be an afterthought.

These considerations must be related in some way to the patented features of the inventive portion of the subject matter sought to be patented.  For example, if you find that products embodying the claimed inventions were sold more often because of those claimed inventions, then you may consider commercial success as a factor in determining obviousness or nonobviousness. If there have been no commercial sales attributable to the patented features of the invention in the asserted claim you are considering, you may not use any commercial success in determining whether the invention defined by the claims was obvious or nonobvious.

Although inquiry into these considerations is relevant to the issue of obviousness, it is not determinative apart from the basic factual inquiries explained in these instructions.  Thus, if you conclude commercial success, if any, is due solely to advertising, promotion, or salesmanship and is not due to features of the product claimed in the patent in suit, then the evidence of commercial success should not weigh against defendant's evidence on the question of obviousness.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as amended; *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-180-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

2013); *Plantronics, Inc. v. Aliph, Inc.*, 724 F. 3d 1343, 1355 (Fed. Cir. 2013); *Apple Inc. v. I.T.C.*, 725 F. 3d 1356, 1365-67 (Fed. Cir. 2013) (vacating and remanding the ITC's decision on obviousness for failing to consider Apple's objective indicia of nonobviousness, including "the iPhone's high degree of commercial success").

**Cochlear's Objection:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable O'Malley, et al., Federal Jury Practice and Instructions.  The Cochlear Defendants, in accordance with the Court's Order, provide an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of the Federal Circuit Bar Association instructions.  That instruction is not proper for a variety of reasons including that it does not fairly portray the standard and it is out of character with the content and tone of the instruction found in the O'Malley, et al. Instructions the Court ordered be used.  AMF can provide no justification as to why the instruction provided in O'Malley, which was ordered by the Court, should not be used.  By completely ignoring this Court's Order, the Foundation has increased the burden on the Parties and this Court and created a controversy when none need exist.

Further, in the spirit of compromise, the Cochlear Defendants have accepted the revised listing of secondary considerations to conform to that suggested by the Plaintiffs.  Despite the fact that (1) the Cochlear Defendants are using the correct O'Malley instruction ordered by the Court, and (2) the Cochlear Defendants offered the compromise of incorporating the Plaintiffs' list of secondary considerations, Plaintiffs continue to unreasonably reject the Cochlear Defendants' instruction.

Finally, AMF's instruction is highly misleading in that nothing in AMF's instruction suggests to the jury that it can weigh the evidence of secondary considerations against validity (i.e., for invalidity).  AMF argues that Cochlear's instruction "mischaracterises the law."  However, Cochlear's alleged "mischaracterization" seems to be substantively identical to the Federal Circuit's holding.  Compare Cochlear's Instruction ("even evidence of substantial commercial success may not be sufficient to overcome strong evidence of obviousness,") with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-182-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   *Media Technologies*, 596 F.3d at 1339 ("a highly successful product alone would

2   not overcome [a] strong showing of obviousness.")  Cochlear's instruction that was

3   pulled from *Media Technologies* provides an even-handed, and balanced instruction

4   as to how secondary considerations should be used to make an obviousness

5   determination.  Conversely, AMF attempts to sway the instruction in their favor, and

6   minimize any analysis by the jury of the causal nexus the invention and the

7   secondary considerations.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-183-                FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

Inexplicably, the Foundation's instruction 5.9 is out of character with the content and tone of O'Malley as instruction 5.9, but a portion of it is acceptable to the Cochlear Defendants to be inserted into the O'Malley-based instruction at 5.10. The Cochlear Defendants provide no justification for this.  Nor do they provide justification for their other deviations from O'Malley in this instruction.

In addition, the penultimate paragraph of the Cochlear Defendants' instruction contains a typo that makes the instruction incomprehensible.

The Foundation's instruction, on the other hand, provides an accurate summary of the law, starting with O'Malley and updated with recent Federal Circuit case law, and should be adopted here.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-184-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**5.10 OBVIOUSNESS—COMMERCIAL SUCCESS AND OTHER SECONDARY CONSIDERATIONS – DEFENDANTS' PROPOSAL**

In deciding obviousness, you must take into account any objective evidence (sometimes called "secondary considerations"), if any, that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

l.     Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

m.     Whether the invention satisfied a long-felt need;

n.     Whether others had tried and failed to make the invention;

o.     Whether others invented the invention at roughly the same time;

p.     Whether others copied the invention;

q.     Whether there were changes or related technologies or market needs contemporaneous with the invention;

r.     Whether the invention achieved unexpected results;

s.     Whether others in the field praised the invention;

t.     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

u.     Whether others sought or obtained rights to the patent from the patent holder; and

v.     Whether the inventor proceeded contrary to accepted wisdom in the field.

These considerations must be related in some way to the patented and any evidence of commercial success, or other secondary considerations, is only significant if it is the result of the claimed invention as opposed to other factors. Thus, if there have been no commercial sales attributable to the patented features of the invention in the asserted claim you are considering, you may not use any

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-185-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   commercial success in determining whether the invention defined by the claims was

2   obvious or nonobvious.

3   　　　　Although inquiry into these considerations is relevant to the issue of

4   obviousness, it is not determinative apart from the basic factual inquiries explained

5   in these instructions.  Thus, for example, if you conclude commercial success is not

6   due to features of the product claimed in the patent in suit but rather to advertising,

7   promotion, or salesmanship, then the evidence of commercial success should not

8   weigh against defendant's evidence on the question of obviousness.  Additionally,

9   even evidence of substantial commercial success may not be sufficient to overcome

10   strong evidence of obviousness.

11

12   ***Authority:***

13   *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:66 (6th ed. Aug. 2013) as

14   amended; *Media Technologies Licensing v. Upper Deck Co.*, 596 F.3d 1334, 1339

15   (Fed. Cir. 2010).

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-186-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Cochlear Defendants' instruction mischaracterizes the law by misinterpreting *Media Technologies* in its Instruction 5.10.  Rather than establishing a general proposition that "even evidence of substantial commercial success may not be sufficient to overcome strong evidence of obviousness," the Federal Circuit in *Media Technologies* merely concluded that under the particular facts of that case "a highly successful product alone would not overcome the strong showing of obviousness."  596 F.3d at 1339.

Conversely, the Foundation's instruction comports with, and is supported by, recent Federal Circuit case law recognizing the importance of commercial success in the fact finder's obviousness determination.  Indeed, the Foundation's instruction is supported by more recent case law than the alternative propounded by the Cochlear Defendants.  *Leo Pharmaceutical Products, Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013) ("Objective indicia of nonobviousness play a critical role in the obviousness analysis. They are 'not just a cumulative or confirmatory part of the obviousness calculus but constitute[ ] independent evidence of nonobviousness.'"); *Plantronics, Inc. v. Aliph, Inc.*, 724 F. 3d 1343, 1355-57 (Fed. Cir. 2013) (vacating and remanding where court failed to analyze secondary considerations, including commercial success and failure of others, noting that "[f]ailure to give proper consideration to such evidence, as in this case, can be fatal because 'common sense' may not be so apparent in view of objective evidence of nonobviousness (*e.g.*, commercial success and copying)"); *Apple Inc. v. I.T.C.*, 725 F. 3d 1356, 1365-67 (Fed. Cir. 2013) (vacating and remanding the ITC's decision on obviousness for failing to consider Apple's objective indicia of nonobviousness, including "the iPhone's high degree of commercial success").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-187-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable O'Malley, et al., <u>Federal Jury Practice and Instructions</u>.  The Cochlear Defendants, in accordance with the Court's Order, provide an instruction from the most recent version of the O'Malley, et al. Instructions that addresses the issue.  In contravention of the Court's Order, AMF seeks to use a modified version of the Federal Circuit Bar Association instructions.  That instruction is not proper for a variety of reasons including that it does not fairly portray the standard and it is out of character with the content and tone of the instruction found in the O'Malley, et al. Instructions the Court ordered be used.  AMF can provide no justification as to why the instruction provided in O'Malley, which was ordered by the Court, should not be used.

Further, in the spirit of compromise, the Cochlear Defendants have accepted the revised listing of secondary considerations to conform to that suggested by the Plaintiffs.  Despite the fact that (1) the Cochlear Defendants are using the correct O'Malley instruction ordered by the Court, and (2) the Cochlear Defendants offered the compromise of incorporating the Plaintiffs' list of secondary considerations, Plaintiffs continue to unreasonable reject the Cochlear Defendants' instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-188-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 6.2  INEQUITABLE CONDUCT – THE FOUNDATION'S PROPOSAL

The Cochlear Defendants contend the Foundation's patent attorney, Mr. Gold, engaged in inequitable conduct before the U.S. Patent and Trademark Office. The question of inequitable conduct is a question for me to decide. However, I will decide that question based upon whether you find the following facts have been proved by clear and convincing evidence:

1. The Foundation's Patent Attorney, Mr. Gold, made a misrepresentation to the Patent and Trademark Office;

2. Any such misrepresentation was material; and

3. That Mr. Gold acted with an intent to deceive the Patent and Trademark Office.

Misrepresentation can be in the form of either a false statement of a material fact or the omission of a material fact from a statement that was made. When an Applicant is accused of failing to disclose prior art to the PTO, the prior art is material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. In deciding how the PTO would have acted, you should apply the preponderance of evidence standard. If the undisclosed prior art is cumulative of prior art already before the PTO, then the undisclosed prior art is not material.

The question of intent may be established by circumstantial evidence, based upon a person's outward manifestations, the person's words, conduct, acts, and all the surrounding circumstances disclosed by the evidence together with the rational and logical inferences that may be drawn from them.  However, to meet the clear and convincing evidence standard, the specific intent to deceive must be sufficient to require a finding of deceitful intent in light of all the circumstances and must be the single most reasonable inference able to be drawn from the evidence.  Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. Proving that the applicant knew of a reference, should have known

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-189-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.

If you find Mr. Gold knowingly submitted a false or misleading statement material to the consideration of the patent application, you may, but are not required to, conclude the statement was part of a deliberate scheme to deceive the Patent and Trademark Office. If the evidence of inequitable conduct, and/or concealment and non-disclosure amounting to a misrepresentation or omission of material facts is clear and convincing, the patent may be invalid.   However, a misrepresentation that results from negligence or even gross negligence will not render a patent invalid. After you render an advisory verdict on these issues, I will decide if the patent is unenforceable.

Based on your findings of whether the misrepresentation was made, its materiality, and the intent of Mr. Gold, I will make the determination of whether the patent is invalid for inequitable conduct.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) as amended; *Therasense, Inc. v. Becton, Dickinson and Company,* 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-190-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

**AMF's Instruction Improperly Limits the Claim of Inequitable Conduct to Mr. Gold**

Plaintiffs' instruction inexplicitly names Mr. Gold as the sole individual accused of inequitable conduct before the PTO.  This is a mischaracterization of the Cochlear Defendants' position and is directly contrary to the admission made by AMF that the inventors and/or the attorney knew of the withheld reference and knew that it had not been disclosed.  In fact, the record strongly supports the fact that Mr. Gold and the inventors of the '616 patent engaged in inequitable conduct.

First, the Foundation has admitted in its pleadings that the "the named inventors and/or their attorneys of record were aware of and did not disclose the prior art on which the inequitable conduct defense is based to the PTO during the prosecution of the '616 patent.  (*See* the Foundation's Reply to Amended Counterclaims [D.I. 31], ¶ 12; the Foundation's Reply and Counterclaims-in-Reply to Cochlear's Counterclaims [D.I. 171], ¶ 18 ["AMF admits that the McDermott article was known to the named inventors and/or their attorneys of record during the prosecution of the '616 and/or the '691 patents"].  Both the inventors and AMF's attorney had independent duties of disclosure and each failed to meet that obligation.

Moreover, the evidence in the record shows that at least Mr. Schulman (one of the inventors of the patents-in-suit) testified at his deposition that he worked closely with and reviewed all of the PTO filings and that he followed the work of Hugh McDermott, the author of the thesis that both Mr. Schindler and the attorney (Mr. Gold) failed to disclose to the PTO during the prosecution of the '616 patent. Clearly, there is a sufficient basis to assert that other actors besides Mr. Gold are responsible for the inequitable conduct.  Any attempt to limit the issue of inequitable conduct to Mr. Gold is improper.

Third, the doctrine of "adoptive admissions" under Federal Rule of Evidence

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-191-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

801(d)(2)(B) provides further evidence that the inventors knew about the McDermott Article.  Under FRE 801(d)(2)(B), a party may "adopt" an admission by failing to deny a statement when a reasonable person would do so.  *United States v. Sears*, 663 F.2d 896, 904 (9th Cir. 1981).  Here, the inventors were accused of knowing about the McDermott Article during the prosecution of the '616 patent (i.e., the basis of the inequitable conduct claim) by the Cochlear Defendants and they failed to affirmatively deny the statement.  Thus, the jury could conclude that, by their silence, the inventors admitted that they knew about the McDermott Article even while they prosecuted the '616 patent before the PTO.

## The Proposed Instruction Uses the Wrong Burden of Proof for Inequitable Conduct

This instruction misstates the burden of proof for "materiality" for inequitable conduct claims as being "clear and convincing."  However, as set forth in the Federal Circuit's *en banc* opinion in *Therasense*, the element of materiality need only be shown by a preponderance of the evidence.

> "This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality.  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.  In making this patentability determination, **the court should apply the preponderance of the evidence standard** and give claims their broadest reasonable construction."

*Therasense*, 649 F.3d at 1291-92 (emphasis added).  The Federal Circuit recently reaffirmed this standard in the case of *Ohio WillowWood v. Alps*, 735 F.3d 1333 (Fed Cir. 2013).  As the Cochlear Defendants' proposed instruction incorporates the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-192-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

holding of *Therasense*, the Court should adopt the Cochlear Defendants' instruction and reject Plaintiffs.

Plaintiffs' attempts to dispute the *Therasense* and *Ohio Willow* holdings by suggesting that *Ohio Willow* is an "aberration" that is not precedential authority. This fails because it ignores the fact that *Willow Wood* followed and applied *Therasense*, which is unquestionably precedential authority for the Federal Circuit.

AMF also improperly relies on a case cited for the first time in its objection, namely, *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.,* 731 F.3d 1239, 1244 fn. 2 (Fed. Cir. Sept. 24, 2013).;  The Court, in its Order of December 23, 2013 [D.I. 346], the Court indicated that it would not receive arguments made for the first time in the written record.  Accordingly, Defendants do not address this matter further, other than to state that the Defendants instruction is far more balanced and proper.

**The Foundation's Response:**

As repeatedly amplified for the record, inequitable conduct is a serious allegation. *See, e.g.*, 12-27-2013 Tr. at 233:22-234:21. The willingness of parties to assert inequitable conduct "on the slenderest of grounds" prompted the *Therasense* Court to heighten the evidence required. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). Yet now, based on the vague admission that "named inventors and/or their attorneys" had access to undisclosed prior art, the Cochlear Defendants seek to impugn the reputations of all the named inventors with an overly broad instruction. Cochlear has cited no evidence that John Gord committed Inequitable Conduct, no evidence that Primoz Strojnik committed inequitable conduct, no evidence that David Whitmoyer committed inequitable conduct and only an admission that Mr. Schulman reviewed submissions to the PTO, hardly enough to establish by clear and convincing evidence that he had an intent to deceive. The Court should not confuse the jury or drag the names of these inventors through the mud with an overly broad instruction.

The Cochlear Defendants have also taken a myopic view of *Therasense*. Overall, the *en banc* ruling was the result of years of overly aggressive claims of inequitable conduct. The Court expressly stated that its ruling "now tightens the standards for finding both intent and materiality." *Id.* at 1290. It reiterated the evidentiary standard articulated in by every case and treatise, including O'Malley, that "[t]he accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Id*. at 1287 (Fed. Cir. 2011). The preponderance of the evidence test only applies to considering whether prior art is but-for material from the perspective of the PTO. *Id.* at 1290-91. The Foundation's proposed instruction captures this nuance, the Cochlear Defendants' does not.

To the extent *Ohio Willow Wood* confuses the standard, that case is preempted. *See Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1244 fn. 2 (Fed. Cir. Sept. 24, 2013) ("The dissent also states that the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-194-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1 "materiality" component of inequitable conduct need be shown by only a

2 preponderance of the evidence when the information relates to patentability.

3 However, the en banc court in *Therasense* stated that '[t]he accused infringer must

4 prove both elements—intent and materiality—by clear and convincing evidence.');

5 Newell Companies, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 764 (Fed. Cir. 1988)

6 ("This court has adopted the rule that prior decisions of a panel of the court are

7 binding precedent on subsequent panels unless and until overturned in banc . . .

8 Where there is direct conflict, the precedential decision is the first.") (internal

9 citations omitted).

10     Finally, the Cochlear Defendants gloss over the other instructions required by

11 *Therasense, e.g.,* "specific intent to deceive must be the single most reasonable

12 inference able to be drawn from the evidence." *Therasense, Inc.* 649 F.3d at 1290-

13 91; "Proving that the applicant knew of a reference, should have known of its

14 materiality, and decided not to submit it to the PTO does not prove specific intent to

15 deceive." *Id* at 1290.

16     As such, the Court should reject the proposed instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-195-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                         07-08108-FMO-SH

## 6.2 – INEQUITABLE CONDUCT – DEFENDANTS' PROPOSAL

The Cochlear Defendants contend that the inventors and/or the Foundation's attorney engaged in inequitable conduct before the U.S. Patent and Trademark Office.  The question of whether the inventor and/or the Foundation's attorney engaged in inequitable conduct is a question for me to decide.  However, I will decide that question based upon whether you find the Cochlear Defendants have proven the following facts:

1.     The inventors and/or the Foundation's attorney made a misrepresentation to the Patent and Trademark Office (by clear and convincing evidence);

2.     The misrepresentation was material (by a preponderance of the evidence); and,

3.     Whether the inventors and/or the Foundation's attorney acted with the intent to deceive the Patent and Trademark Office (by clear and convincing evidence).

Misrepresentation can be in the form of either a false statement of a material fact or the omission of a material fact from a statement that was made.  A fact is material when but for the deception, the PTO would not have allowed the claim.  In making this patentability determination, you should apply the preponderance of the evidence standard and give the claims their broadest reasonable construction.

The question of intent may be established by circumstantial evidence, based upon a person's outward manifestations, the person's words, conduct, acts, and all the surrounding circumstances disclosed by the evidence together with the rational and logical inferences that may be drawn from them.  If you find the inventors and/or the Foundation's attorney knowingly submitted a false or misleading statement material to the consideration of the patent application, you may, but are not required to, conclude the statement was part of a deliberate scheme to deceive the Patent and Trademark Office.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-196-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

You will be asked to answer questions on the verdict form about Inequitable Conduct based on this instruction.  Based on your findings of whether the misrepresentation was made, its materiality, and the intent of the inventors and/or the Foundation's attorney I will make the determination of whether inequitable conduct exists here.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:79 (6th ed. Aug. 2013) as amended; *Therasense, Inc. v. Becton, Dickinson and Company,* 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc); *Ohio Willow Wood Co. v Alps South, LLC* (Fed Cir. Nov. 15, 2013); AMF Reply to Counterclaim.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

-197-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**The Foundation's Objection:**

a. Failure to limit claims of Inequitable Conduct to Mr. Gold

The court in *Therasense* tightened the evidentiary requirements for a finding of inequitable conduct while noting that "allegations of inequitable conduct are routinely brought on 'the slenderest grounds.'" *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). The Cochlear Defendants theory, finally revealed at the at the January 2 meet and confer, reveals that the Court's work is not yet done.

Until the new year, all of Cochlear's discovery, including depositions of the inventors and Mr. Gold, as well Cochlear's arguments in summary judgment, have articulated that the defendant's only basis for alleging inequitable conduct was that Mr. Gold had made an intentional misrepresentation. But rather than change the proposed instruction from

> 3.      Whether the Foundation, its attorney or the inventors acted with the intent to deceive the Patent and Trademark Office (by clear and convincing evidence).

to

> 3.      Whether Mr. Gold acted with the intent to deceive the Patent and Trademark Office (by clear and convincing evidence).

The Cochlear Defendants insist that the jury be allowed to find that such unidentified inventors could have committed inequitable conduct. Yet Cochlear has not alleged with any specificity that any of the inventors of the Foundation's patents have committed inequitable conduct.  Even in the January 2, 2013 meet and confer, counsel for Cochlear was unable to state its allegation of inequitable conduct with regard to the inventors of the Foundation's patents.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-198-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   Such vague pleading comes incredibly late, goes against the spirit of

2   *Therasense*¸ invites jury error, and needlessly impunes the reputation of the

3   inventors. As such, the Court should reject the proposed language.

4       This issue is discussed thuroughly in the meet and confer.

5       b. Incorrect standard of materiality

6       The Cochlear Defendants' proposed instruction relies on *Ohio Willow Wood*

7   *Co.* for the proposition that materiality need only be shown by a preponderance of

8   the evidence. *Ohio Willow Wood* is an aberration. It pronounces a new standard of

9   evidence without deference to decades of Federal Circuit opinions, including *en*

10  *banc* opinions, which just as plainly state that materiality must be shown by clear

11  and convincing evidence. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed.

12  Cir. 1998) ("Materiality of the non-disclosed information, and culpable intent, must

13  be established by clear and convincing evidence"); *Kingsdown Med. Consultants,*

14  *Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (en banc) ("Inequitable

15  conduct resides in failure to disclose material information, or submission of false

16  material information, with an intent to deceive, and those two elements, materiality

17  and intent, must be proven by clear and convincing evidence").

18      *Therasense* reiterated that the standard of proof for materiality is "clear and

19  convincing evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276,

20  1287 (Fed. Cir. 2011) ("To prevail on the defense of inequitable conduct,… the

21  accused infringer must prove both elements—intent and materiality—by clear and

22  convincing evidence").  To the extent *Therasense* articulates a different standard for

23  the but-for test for whether or not an examiner would have rejected an application

24  based on uncited prior art, (*id.* at 1291-92), it did not change the *overall* standard of

25  clear and convincing evidence for materiality. *See Network Signatures, Inc. v. State*

26  *Farm Mut. Auto. Ins. Co.,* 731 F.3d 1239, 1244 fn. 2 (Fed. Cir. Sept. 24, 2013)

27  ("The dissent also states that the "materiality" component of inequitable conduct

28  need be shown by only a preponderance of the evidence when the information

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-199-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  relates to patentability. However, the en banc court in *Therasense* stated that '[t]he

2  accused infringer must prove both elements—intent and materiality—by clear and

3  convincing evidence.' 649 F.3d at 1287. The court did not distinguish among issues,

4  when the charge was that the lawyer had committed inequitable conduct"). Under

5  Federal Circuit rules of precedent, *older* panel decisions are binding against more

6  recent ones, so it would be legal error to follow *Ohio Willow Wood's* interpretation

7  of *Therasense*, dated November 15, rather than the senior, binding authority in

8  *Network Signatures, Inc.,* dated September 24. *See Newell Companies, Inc. v.*

9  *Kenney Mfg. Co.*, 864 F.2d 757, 764 (Fed. Cir. 1988) ("This court has adopted the

10  rule that prior decisions of a panel of the court are binding precedent on subsequent

11  panels unless and until overturned in banc . . . Where there is direct conflict, the

12  precedential decision is the first.") (internal citations omitted).

13      c. No citation to limiting language from *Therasense*

14      The defendants' proposed instruction also fails to include the binding rule

15  from *Therasense* that "specific intent to deceive must be the single most reasonable

16  inference able to be drawn from the evidence." *Therasense, Inc.* 649 F.3d at 1290-

17  91. It would be legal error not to instruct the jury on this binding precedent.

18      Finally, the Cochlear Defendants omit the single most relevant instruction

19  from the Therasense caseas applied to the facts of this case: "Proving that the

20  applicant knew of a reference, should have known of its materiality, and decided not

21  to submit it to the PTO does not prove specific intent to deceive." Therasense, 649

22  F.3d at 1290. This is the most relevant instruction because it refers to the totality of

23  the evidence the Cochlear Defendants rely upon to allege intent to deceive.

24      As such, Cochlear's proposed instruction should be rejected.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                          07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 6.2 is an accurate statement of the law and the record in this case and, therefore, should be given to the jury. This is particularly true when compared to the Foundation's proffered Instruction No. 6.2.

This instruction properly informs the jury that the Cochlear Defendants accuse the inventors and the Foundation's attorneys of inequitable conduct. In contrast, the Foundation's proposed Instruction No. 6.2 attempts to limit the accusation of inequitable conduct to the Foundation's patent attorney, Mr. Gold. The Foundation's attempt to limit the scope of the inequitable conduct to Mr. Gold is improper for several reasons.

First, the Foundation has admitted in its pleadings that the "the named inventors and/or their attorneys of record were aware of and did not disclose the prior art on which the inequitable conduct defense is based to the PTO during the prosecution of the '616 patent. (*See* the Foundation's Reply to Amended Counterclaims [D.I. 31], ¶ 12; the Foundation's Reply and Counterclaims-in-Reply to Cochlear's Counterclaims [D.I. 171], ¶ 18 ["AMF admits that the McDermott article was known to the named inventors and/or their attorneys of record during the prosecution of the '616 and/or the '691 patents"]. Both the inventors and AMFs attorney had independent duties of disclosure and each failed to meet that obligation.

Moreover, the evidence in the record shows that at least Mr. Schulman (one of the inventors of the patents-in-suit) testified at his deposition that he worked closely with and reviewed all of the PTO filings and that he followed the work of Hugh McDermott, the author of the thesis that both Mr. Schindler and the attorney (Mr. Gold) failed to disclose to the PTO during the prosecution of the '616 patent. Clearly, there is a sufficient basis to assert that other actors besides Mr. Gold are responsible for the inequitable conduct. Any attempt to limit the issue of inequitable conduct to Mr. Gold is improper.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-201-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

Third, the doctrine of "adoptive admissions" under Federal Rule of Evidence 801(d)(2)(B) provides further evidence that the inventors knew about the McDermott Article.  Under FRE 801(d)(2)(B), a party may "adopt" an admission by failing to deny a statement when a reasonable person would do so.  *United States v. Sears*, 663 F.2d 896, 904 (9th Cir. 1981).  Here, the inventors were accused of knowing about the McDermott Article during the prosecution of the '616 patent (i.e., the basis of the inequitable conduct claim) by the Cochlear Defendants and they failed to affirmatively deny the statement.  Thus, the jury could conclude that, by their silence, the inventors admitted that they knew about the McDermott Article even while they prosecuted the '616 patent before the PTO.

Finally, unlike the Foundation's Proposed Instruction No. 6.2, the Cochlear Defendants' proposed instruction properly informs the jury about the burden of proof on each element of the inequitable conduct affirmative defense.  During the meet and confer, the Foundation disputed the standard of proof for "materiality."  However, as set forth in the Federal Circuit's *en banc* opinion in *Therasense*, the element of materiality need only be shown by a preponderance of the evidence.

"This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality.  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.  In making this patentability determination, **the court should apply the preponderance of the evidence standard** and give claims their broadest reasonable construction."

*Therasense*, 649 F.3d at 1291-92 (emphasis added).  The Federal Circuit recently reaffirmed this standard in the case of *Ohio WillowWood v. Alps* , 735 F.3d 1333

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-202-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

(Fed Cir. 2013).  Accordingly, as this instruction tracks the Federal Circuit's requirements, the Court should adopt this instruction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-203-                FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.1  "DAMAGES GENERALLY" (DISPUTED) – FOUNDATION'S PROPOSAL

Damages must be proved as any other issue in this case.  The Foundation must prove by the preponderance of the evidence the damage, if any, caused by the infringement.  If your verdict is for the Foundation and you find the Cochlear Defendants have infringed any of the asserted claims of the '616 or the '691 patents and that these claims are valid, then you should consider the amount of money the Foundation should be awarded as damages.

The Foundation has the burden of proving by a preponderance of the evidence the amount of damages caused by the Cochlear Defendants' infringement.  The actual damage to the Foundation, if any, caused by infringement is most accurately determined on the basis of what you find from a preponderance of the evidence in the case.  In no event shall the amount in dollars be less than the amount of money that would have been received by the Foundation if the Cochlear Defendants had been paying a reasonable royalty to the Foundation for the use made by the Cochlear Defendants during the period of infringement.

You may also consider any opinions expressed as to the amount of money that would have constituted a reasonable royalty during the period of infringement.  The owner of a patent is permitted to express the owner's opinion as to a reasonable royalty.  Such testimony is to be weighed and considered by you in accordance with the instructions that I have given you.

You are not permitted to award speculative damages.  This means you are not to include in any verdict, compensation for prospective loss that, although possible, is wholly remote or left to conjecture and/or guess.  However, when the amount of damages cannot be ascertained with precision, any doubts regarding the amount are to be resolved against the infringer.

In determining the issue of damages, you should bear in mind that the law does not permit you to award any greater sum than the monetary loss that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-204-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  Foundation has suffered as a result of the Cochlear Defendants' infringement,
2  without regard to gains or losses that accrued to the Cochlear Defendants as a result
3  of the infringement.

4      In fixing the amount of your verdict you may not include in or add to an
5  otherwise just award, any sum for the purpose of punishing the Cochlear
6  Defendants, or to set an example.

7      The fact that I have instructed you as to the proper measure of damages
8  should not be construed as intimating my view as to which party is entitled to
9  prevail in this case.  Instructions as to the measure of damages are given for your
10 guidance in the event you find from the evidence in favor of the Foundation.

11

12 ***Authority:***

13 *O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:90 (6th ed. Aug. 2013) as
14 amended.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-205-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

During the meet and confer process, the Foundation asserted that company owners could offer damages testimony as lay witnesses, and that the Cochlear Defendant's Instruction is too restrictive.  This is incorrect.  Even if a lay witness could testify about damages, the Foundation has failed to identify, in its initial disclosures under Rule 26, any lay witness to testify about these topics.  See Fed. R. Civ. Pro. 26(a)(1)(A)(i) (requiring the identity of all witnesses with discoverable information "along with the subjects of that information" as part of the Rule 26 initial disclosures).  Suggesting to the jury that a patent owner can testify will introduce jury confusion and likely error by the jury.

AMF argues that the Cochlear Defendants' instruction improperly includes language regarding induced or contributory infringement.  This is a ridiculous argument, as the jury must be instructed as to how its determinations of liability translate into a damages determination.  It is impossible to instruct the jury as to damages without referring to the liability issues that give rise to damages and how they affect the damages calculation.  The jury does not make a damages calculation in a vacuum, it makes them based on its liability determinations.

AMF argues that Cochlear's instructions improperly revise the O'Malley instruction.  However, any revisions were solely for the purpose of clarification, and make no substantive changes to the instruction.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-206-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

The Foundation's instruction reflects the instruction as laid out in O'Malley. The Cochlear Defendants have omitted the language from the O'Malley instruction, regarding the patentees' ability to present testimony on the value of its invention. Defendants have presented no justification for omitting this language.

To the extent that the Cochlear Defendants' contend that any testimony by the patent owner regarding a reasonable royalty would need to be disclosed under Rule 26, this is incorrect, as the patent owner would not be testifying as an expert. *See* Fed. R. Civ. P. 26(a)(2)(A) ("[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705); Fed. R. Civ. P. 26(a)(2)(C) (same, regarding expert witnesses who need not provide a report). The patent owner would be providing lay opinion under Fed. R. Evid. 701.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

-207-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.1  DAMAGES GENERALLY – DEFENDANTS' PROPOSAL

The Foundation must prove by the preponderance of the evidence the damage, if any, caused by the infringement.

If your verdict is for the Foundation and you find the Cochlear Defendants have infringed any of the asserted claims of the `616 or the `691 patents and that these claims are not invalid, then you should consider the amount of money the Foundation should be awarded as damages.

The Foundation has the burden of proving a by a preponderance of the evidence the amount damages caused by any infringement by the Cochlear Defendants.  You may consider the opinions of experts expressing the amount of money that would have constituted a reasonable royalty during the period of infringement.  Such testimony is to be weighed and considered by you in accordance with the instructions that I have given you.

In no event shall the amount in dollars be less than the amount of money that would have been received by the Foundation if the Cochlear Defendants had been paying a reasonable royalty to the Foundation for the use made by the Cochlear Defendants during the period of infringement.

Because the amount of damages for induced infringement or contributory infringement is limited by the number of instances of direct infringement, the Foundation must further prove by a preponderance of the evidence the number of direct acts of infringement by others of claim 10 of the `616 patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.  You may not award more than one amount of damages for any particular event of infringement by the Cochlear Defendants, regardless of whether you find the infringement to be based on direct, induced or contributory infringement.

You are not permitted to award speculative damages.  This means you are not to include in any verdict compensation for prospective loss that, although possible,

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-208-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

is wholly remote or left to conjecture and/or guess.  However, when the amount of damages cannot be ascertained with precision, any doubts regarding the amount are to be resolved against the infringer.

In determining the issue of damages, you should bear in mind that the law does not permit you to award any greater sum than the monetary loss that the Foundation has suffered as a result of any infringement by the Cochlear Defendants, without regard to gains or losses that accrued to the Cochlear Defendants as a result of any infringement.

In fixing the amount of your verdict you may not include in or add to an otherwise just award any sum for the purpose of punishing the Cochlear Defendants, or to set an example.

The fact that I have instructed you as to the proper measure of damages should not be construed as intimating my view as to which party is entitled to prevail in this case.  Instructions as to the measure of damages are given for your guidance in the event you find from the evidence in favor of the Foundation.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:90 (6th ed. Aug. 2013) as amended; *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

-209-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Cochlear Defendants cannot present any justification for including the language regarding induced or contributory infringement.  First, issues of induced and contributory infringement present questions of liability, not of damages.  These issues are adequately covered in the instructions dealing with indirect infringement, and need not be presented for damages.

The authority that the Cochlear Defendants cite does not justify or support giving that portion of the instruction. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009) deals with the infringement of method claims, and held that the patentee "can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period."  Here, the Foundation has asserted both method and apparatus claims.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) found that "[p]laintiffs who identify individual acts of direct infringement must restrict their theories of vicarious liability – and tie their claims for damages or injunctive relief – to the identified act" while "[p]laintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category." (citations and emphasis omitted).  Neither of these cases compel the instruction propounded by the Cochlear Defendants.

As described in the Foundation's Response to the Cochlear Defendants' objections regarding the Foundations' proposed instructions, the Cochlear Defendants provide no support for omitting the language regarding the opinion of a patent owner regarding the value of the patent.  In addition, Cochlear moves this language, and omits other language from the O'Malley instruction without providing justification.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-210-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 7.1 is superior to the Foundation's Instruction No. 7.1 for several important reasons.

First, the instruction tracks the model instruction found in the O'Malley, et al. Model Instructions the Court ordered be used in its Order of October 18, 2013 [D.I. 300]. Cochlear Defendants believe that its proposed instruction is in synch with the content and tone of the O'Malley instruction.

Second, the Cochlear Defendants' instruction properly informs the jury about the nature of the action and the damages claim presented in a clear and balanced manner.

During the meet and confer process, the Foundation asserted that company owners could offer damages testimony as lay witnesses, and that the Cochlear Defendant's Instruction is too restrictive. This is incorrect. Even if a lay witness could testify about damages, the Foundation has failed to identify, in its initial disclosures under Rule 26, any lay witness to testify about these topics. See Fed. R. Civ. Pro. 26(a)(1)(A)(i) (requiring the identity of all witnesses with discoverable information "along with the subjects of that information" as part of the Rule 26 initial disclosures). Suggesting to the jury that a patent owner can testify will introduce jury confusion and likely error by the jury. Defendants instruction avoids this problem.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-211-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.2 "REASONABLE ROYALTY" (DISPUTED) – Foundation's Proposal

If you find the Cochlear Defendants have infringed a valid claim of either of the patents-in-suit, then the Foundation is entitled to an award of damages adequate to compensate for the infringement.  In no event may the award of damages be less than a reasonable royalty for the use made of the invention by the infringer.

The damages caused by the Cochlear Defendants' infringement may be determined on the basis of what you find from a preponderance of the evidence would have been a reasonable royalty to be paid for a license to use the claimed inventions during the period of the infringement.  A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the Foundation, and the Cochlear Defendants, in approximately June 1998, the date on which the allegedly infringing products came on the market.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  A reasonable royalty is the amount that the owner of a patent would accept, assuming a willingness to license its use, from a person who wants to obtain a license to use the claimed invention, neither of whom is acting under financial distress or other compulsion to enter into the agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

The cochlear implant system ("CIS") as claimed by the patents-in-suit includes an implant and a speech processor, which are used together with the diagnostic software.  In determining the royalty base, you should use the revenues of the CIS if either: (1) the demand for the CIS is attributable to the technology in the patents-in-suit, that is, if the patented feature is the reason customers buy the whole product; or (2) if the CIS constitutes the smallest salable patent-practicing unit.  You should find that the CIS is the "smallest salable patent-practicing unit" if both the implant and the speech processor used together with the diagnostic software are necessary to practice the technology in the patents-in-suit.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-213-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013) as modified by *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011),* Instr. B.5.7; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51, 67-68 (Fed. Cir. 2012); *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 840 (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009); *Internet Machs. LLC v. Alienware Corp.*, 2013 U.S. Dist. LEXIS 115723, *43-45 (E.D. Tex. June 19, 2013).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-214-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

As has been extensively briefed, the issue of a royalty base does not end with the smallest salable unit. *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884) ("the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . ."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (it is improper to use the entire product base); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301(Fed. Cir. 2009) (it is improper to use the entire product base); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) (expert testimony that failed to apportion damages base not admissible).

Instead, the jury they must determine the reasonable royalty by using a royalty base that is connected to the value of the invention.  Where the product is a multi-feature devise or system, an allocation is required to track the value of the invention, where, as here, the invention does not drive the sale of the accused product.  See e.g., *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) (expert testimony that failed to apportion damages base not admissible); *Rembrandt Social Media, LP v. Facebook, Inc.*, Case No. 1:13-cv-158, 2013 WL 6327852, *6 (E.D. Vir., Dec. 3, 2013), (the Court rejected the use of a base that exceeded the value delivered by the patented invention); *AVM Technologies, LLC v. Intel Corporation*, Civil Action No. 10-610-RGA, 2013 WL 126233, *3 (D. Del., Jan. 4, 2013) (whenever the smallest salable unit is greater than the patented feature, you will introduce *Uniloc* error in the absence of apportionment of the royalty base.)  Each of these is consistent with the same issue presented, and the lead Federal Circuit cases, where a multi-feature product was involved and the court reversed use of the sales of the entire product as a base. *Lucent Tech. v. Gateway, Inc.*, 580 F. 3d 1301(Fed. Cir. 2009); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011).  AMF's argument about the

smallest salable unit ignores these controlling cases and their dictates.  The smallest salable unit has only been approved by the Federal Circuit for cases where there is a plug-in component, which AMF contends is not present here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-216-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

The Foundation proposes the language regarding the cochlear implant system as the appropriate royalty base. The language proposed by the Foundation reflects that the cochlear implant system can be the appropriate royalty base if (1) the demand for the cochlear implant system is driven by the patented technology (i.e., satisfies the Entire Market Value Rule) or (2) the cochlear implant system is the smallest salable patent-practicing unit. As noted by the Federal Circuit:

> Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the "smallest salable patent-practicing unit." *Cornell Univ. v. Hewlett–Packard Co.,* 609 F.Supp.2d 279, 283, 287–88 (N.D.N.Y.2009) (explaining that "counsel would have wisely abandoned a royalty base claim encompassing a product with significant non-infringing components. The logical and readily available alternative was the smallest salable infringing unit with close relation to the claimed invention—namely the processor itself.").
>
> The entire market value rule is a narrow exception to this general rule. If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product. *Rite–Hite,* 56 F.3d at 1549, 1551. In other words, "[t]he entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-217-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1    constitutes the basis for customer demand." *Lucent,* 580 F.3d at

2    1336 (quoting *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901

3    (Fed.Cir.1986)).

4          Furthermore, the language proposed by Plaintiffs reflects that the smallest

5    salable patent-practicing unit must reflect the claimed invention itself, and be

6    necessary to practice the invention.  *See VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d

7    816, 840 (E.D. Tex. 2013); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d

8    279, 283, 287-88 (N.D.N.Y. 2009).  The authority cited by Defendants is inapposite.

9    Here, unlike in *Rembrandt Social Media, LP v. Facebook, Inc.*, Case No. 1:13-cv-

10   158, 2013 WL 6327852, *6 (E.D. Vir., Dec. 3, 2013), the royalty base reflects the

11   significant value and improvement that resulted from the invention.  The

12   Foundation's position as to these issues is further explained in its opposition to

13   Defendants' Joint Motion in Limine No. 2, regarding the testimony of the

14   Foundation's damages expert, Cate Elsten, Dkt. 313.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-218-                FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.2  REASONABLE ROYALTY – DEFENDANTS' PROPOSAL

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the Cochlear Defendants taking place in June of 1998.  In considering the nature of this negotiation, you must assume that the Foundation and the Cochlear Defendants would have acted reasonably and would have entered into a license agreement.  A reasonable royalty is the amount that the owner of a patent would accept, assuming a willingness to license its use, from a person who wants to obtain a license to use the claimed invention, neither of whom is acting under financial distress or other compulsion to enter into the agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-219-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  If the sale of the patented feature is not made separate from the whole product, then you must use the evidence supplied and make an apportionment of the revenue to reflect how you believe the parties would have apportioned the revenue at the time of the negotiation because the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Authority:**

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:93 (6th ed. Aug. 2013) as modified by *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011),* Instr. B.5.7; *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884) ("the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . ."); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011) (it is improper to use the entire product base and reduce the royalty percentage); *Laserdynamics, Inc. v Quanta Computer Inc.,* 694 F.3d 51 (Fed. Cir. 2012) (royalty only allowed on the smallest saleable unit);

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-220-          FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301(Fed. Cir. 2009) (only

2  comparable licenses can be considered in determining a reasonable royalty); *Dynetix*

3  *Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22,

4  2013) (expert testimony that failed to apportion damages base not admissible).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-221-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Cochlear Defendants' instruction omits language regarding conditions for the Foundation's entitlement to damages, and the appropriate evidentiary standard. These instructions should be included to give the jury a proper framework for analysis.

The language regarding the entire market value rule and the smallest-salable patent practicing unit proposed by the Cochlear Defendants is not supported by the law.  The cases cited by the Defendants do not support the premise that the jury is to make an apportionment of how the parties would have apportioned the revenue at the time of the hypothetical negotiation.  Moreover, Defendants' proposed language would confuse the jury by purporting to require them to determine some apportionment of revenue.

As described below for Instruction No. 7.2 (a), regarding date of commencement of damages, the Foundation's proposed instruction better reflects the law and conforms with the evidence likely to be admitted in this case, i.e., that the date on which damages commence for the '691 patent may be different than that for the '616 patent, and the requirement to mark products.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-222-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 7.2 correctly informs the jury that no allocation of the royalty base is required in this case.  As has been extensively briefed, the issue of a royalty base does not end with the smallest salable unit. *Garretson v. Clark*, 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884) ("the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . ."); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011) (it is improper to use the entire product base); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301(Fed. Cir. 2009) (it is improper to use the entire product base); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) (expert testimony that failed to apportion damages base not admissible).

Instead, the jury they must determine the reasonable royalty by using a royalty base that is connected to the value of the invention.  Where the product is a multi-feature devise or system, an allocation is required to track the value of the invention, where, as here, the invention does not drive the sale of the accused product.  See e.g., *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 453821 (N.D. Cal. Aug. 22, 2013) (expert testimony that failed to apportion damages base not admissible);  *Rembrandt Social Media, LP v. Facebook, Inc.*, Case No. 1:13-cv-158, 2013 WL 6327852, *6 (E.D. Vir., Dec. 3, 2013), (the Court rejected the use of a base that exceeded the value delivered by the patented invention); *AVM Technologies, LLC v. Intel Corporation*, Civil Action No. 10-610-RGA, 2013 WL 126233, *3 (D. Del., Jan. 4, 2013) (whenever the smallest salable unit is greater than the patented feature, you will introduce *Uniloc* error in the absence of apportionment of the royalty base.)  Each of these is consistent with the same issue presented, and the lead Federal Circuit cases, where a multi-feature product was involved and the court reversed use of the sales of the entire product as

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-223-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

a base.  *Lucent Tech. v. Gateway, Inc.*, 580 F. 3d 1301(Fed. Cir. 2009); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011).  AMF's argument about the smallest salable unit ignores these controlling cases and their dictates.  The smallest salable unit has only been approved by the Federal Circuit for cases where there is a plug-in component, which AMF contends is not present here.

As the Cochlear Defendants' instruction tells the jury that it must apportion the royalty base, this instruction is an accurate statement of the law.

While the Cochlear Defendants' Instruction No. 7.2 informs the jury that it must make an apportionment of the revenue, the Plaintiffs' Instruction No. 7.2 encourages the jury to conclude that the "cochlear implant system" is the "smallest salable patent-practicing unit."  This is wrong under the a law and prejudicial to the Cochlear Defendants, as the evidence will show that there are smaller "saleable units" than the "cochlear implant system."

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

-224-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

### 7.2a "DATE OF COMMENCEMENT OF DAMAGES" (DISPUTED) – FOUNDATION'S PROPOSAL

For any of the Patents-in-Suit that you find infringement of a valid claim, you must determine the date on which damages commence.  The Foundation maybe entitled to damages for infringement of its patents occurring up to six year prior to filing suit against the Cochlear Defendants.  Since the suit was filed on December 13, 2007, the Foundation may be eligible to receive damages beginning December 13, 2001.  However, if the Foundation's licensee, Advanced Bionics, made and sold products that use the inventions of the patent-in-suit, then the Foundation will only be entitled to damages as of the date the Foundation and for its licensee provided notice of the patents to the Cochlear Defendants.

If you find that the Cochlear Defendants have not proven that Advanced Bionics, a licensee of the '616 and '691 patents, does not manufacture or sell products covered by the patents-in-suit, then damages for any infringement by the Cochlear Defendants of both the '616 and '691 patents begins on December 13, 2001.

If you find that Advanced Bionics does manufacture or sell a product that includes a claimed invention, then damages will commence when you find that the Cochlear Defendants received notice of the patents.  Notice may be provided by informing the Cochlear Defendants directly, sometimes called "actual" notice, or may be provided by "marking" products that are covered by a patent with the patent number.  To establish that it has provided notice through "marking," the Foundation bears the burden of showing that it made reasonable efforts to ensure that any licensee who makes or sells a product that includes a claimed invention has marked the covered products with the patent number.

If you find that Advanced Bionics does manufacture or sell products that include the inventions claimed in the '616 patent, but failed to mark the covered products, then damages for any infringement by the Cochlear Defendants of the

'616 patent begins on July 21, 2003, the date the Cochlear Defendants' received actual notice of the '616 patent.  If you find that Advanced Bionics does manufacture or sell products that include the invention claimed in the '616 patent and satisfied its obligation to mark its products with the '616 patent prior to the Cochlear Defendants receiving actual notice on July 21, 2003, then damages for any infringement by the Cochlear Defendants of the '616 patents begins on December 13, 2001.

If you find Advanced Bionics manufactures or sells a product that is covered by the '691 patent, then damages for any infringement by the Cochlear Defendants of the '691 patent begins on December 13, 2007, the date the Cochlear Defendants received actual notice of the '691 patent.

*Authority:*

Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), § 5.8; 28 U.S.C. §§ 286-287. Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Sessions v. Romadka*, 145 U.S. 29, 50, 12 S. Ct. 799, 805, 36 L. Ed. 609 (1892); *Rexnord, Inc. v. Laitram Corp.*, 6 U.S.P.Q.2d 1817, 1845 (E.D.Wisc.1988) (finding that marking installation instructions provided adequate notice).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-226-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

Plaintiff's proposed instruction completely ignores relevant law on the issue of marking that the jury must be informed of.  The Plaintiffs' instruction contains no mention of the fact that the Foundation bears the burden of proving, by a preponderance of the evidence, that its exclusive licensee (Advanced Bionics) marked substantially all of their patented products, on either the product itself or the product packaging.  *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).  Plaintiffs' instruction further makes absolutely no mention of the requirement that "substantially all" of it or its licensee's products must be "consistently" marked.  *Id.*

Plaintiffs argue that the Cochlear Defendants "misstate[] the law" because "[t] is no explicit requirement that 'if marking the patented product is not possible, then the marking must be fixed to the package containing the article.'"  However, it is the Plaintiffs who ignore the law.  The marking statute, 35 U.S.C. 287(a), explicitly states that patentees making or selling any patented article may give constructive notice by "fixing **thereon** the word 'patent' or the abbreviation 'pat.,' together with the number of the patent…**or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice**." (emphasis added).  *See also  Calmar, Inc. v. Emson Research, Inc.*, 850 F.Supp. 861, 867 (C.D. Cal., Feb. 22, 1994) ("Both the clear language of section 287(a) and relevant case law indicate that merely marking some literature associated with a patented article is insufficient to satisfy the marking requirements of the statute."); and *Metrologic Instruments, Inc. v. PSC, Inc.*, 2004 WL 2851955 at *21 (D.N.J. Dec. 13, 2004) (holding that patentee who listed patents in a product user's guide failed to comply with the marking statute because "[w]hen, as here, the public finds no marking or writing on the product itself, the statute contemplates that the packaging is the next most logical place for effective notice of the existence of the patent," and "[patentee] failed to

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-227-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

provide that notice on the package.")

Further, nowhere in AMF's cited cases does a court state that patentees are given "latitude" to determine the manner of marking.  In fact, in *Sessions*, relied on by the Plaintiffs, the Court specifically noted that products large enough to be marked were marked, and, for those that were too small, the patentee "complied with the alternative provision of the act, in affixing a label to the packages in which the fasteners were shipped and sold."  145 U.S. 29, 50 (1892) The marking statute clearly states that marking must be on the product itself, or, when that is not feasible, on the packaging.  Plaintiff's mischaracterization of the law is a clear demonstration that plaintiff's instruction does not accurately instruct the jury as to the law on marking.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-228-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

The Foundation would use the Northern District's Model jury instructions, as modified by the Federal Circuit Bar Association's model jury instructions, with respect to the date of commencement of damages, as they are more specific and provide a more complete statement of the law.  These instructions reflect that there are questions of fact as to the appropriate dates for the commencement of damages, and that damages may commence on different dates for the '616 patent and the '691 patent.  In an attempt to simplify proof for the dates on which damages commence, the Foundation asked whether the Cochlear Defendants would enter into a stipulation regarding whether Advanced Bionics' product use the inventions in the patents in suit, but Cochlear refused.  The Cochlear Defendants have also refused to state whether they will seek to prove that Advanced Bionics products practice the asserted patents.

Based on the Cochlear Defendants' representations, this proposed instruction will not reflect the evidence.  The Cochlear Defendants have stated that they will not stipulate that Advanced Bionics' products use the asserted patents, nor have they stated that they will present evidence at trial that Advanced Bionics products practice the patents.  Where there is no evidence that the product does not practice the patent, the marking requirement does not apply.  *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002).  To the extent that Defendants assert that the Foundation's damages expert's opinion relies on Advanced Bionics products practicing the patents, that is not the case.  Ms. Elsten relies properly on the parties' belief, at the time of the negotiation of the license, that the patents had value and that they would be used by Advanced Bionics.  Therefore, assuming that Defendants do not present any such evidence, damages will commence for both patents on December 13, 2001.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-229-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**7.2(a)  DATE OF COMMENCEMENT OF DAMAGES  - DEFENDANTS' PROPOSAL**

For any of the Patents-in-Suit that you find infringement of a valid claim, you must determine the date on which damages commence.  The Foundation may be entitled to damages for infringement of its patents occurring up to six year prior to filing suit against the Cochlear Defendants.  Since the suit was filed on December 13, 2007, the Foundation may be eligible to receive damages beginning December 13, 2001.  However, if the Foundation or Advanced Bionics, its licensee of the `616 and `691 patents, made and sold products that use the inventions of the patent-in-suit, then the Foundation will only be entitled to damages as of the date the Foundation provided notice of the patents to the Cochlear Defendants.

If you find that neither the Foundation nor Advanced Bionics manufacture or sell products covered by the patents-in-suit, then damages for any infringement by the Cochlear Defendants of both the '616 and '691 patents begins on December 13, 2001.

If you find that either the Foundation or Advanced Bionics do manufacture or sell a product that includes a claimed invention, then damages will commence when you find that the Cochlear Defendants received notice of the patents.  Notice may be provided by informing the Cochlear Defendants directly, sometimes called "actual" notice, or may be provided by "marking" products that are covered by a patent with the patent number.

To establish that it has provided notice through "marking," the Foundation bears the burden of showing by a preponderance of the evidence that both it and Advanced Bionics marked substantially all of their patented products with the word "patent" or the abbreviation "pat." together with the number of the patent.  The marking must be fixed on the patented product.  If marking the patented product is not possible, then the marking must be fixed to the package containing the article. The Foundation may meet its burden of proof as to products produced by Advanced

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-230-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

Bionics by demonstrating that it made reasonable efforts to ensure that Advanced Bionics has marked substantially all of the covered products with the patent number.

If you find that either the Foundation or Advanced Bionics do manufacture or sell products that include the inventions claimed in the '616 patent, but failed to mark substantially all of the covered products, then damages for any infringement of the '616 patent by the Cochlear Defendants begins on July 21, 2003, the date the Cochlear Defendants' received actual notice of the '616 patent from the Foundation. If you find that either the Foundation or Advanced Bionics do manufacture or sell products that include the invention claimed in the '616 patent and satisfied their obligation to mark substantially all of their products with the '616 patent prior to the Cochlear Defendants receiving actual notice on July 21, 2003, then damages for any infringement of the '616 patents by the Cochlear Defendants begins on December 13, 2001 or the date that the Foundation and Advanced Bionics began marking substantially all of their patented products, whichever is later.

If you find the Foundation or Advanced Bionics manufactures or sells a product that is covered by the '691 patent, then damages for any infringement of the '691 patent by the Cochlear Defendants begins on December 13, 2007, the date the Cochlear Defendants received actual notice of the '691 patent.

*Authority:*

Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), § 5.8; 28 U.S.C. § 286-287. Federal Circuit Bar Association's Model Patent Jury Instructions 6.8; 35 U.S.C. § 287; 35 U.S.C. § 286; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-231-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

Based on the Cochlear Defendants' representations, this proposed instruction will not reflect the evidence.  The Cochlear Defendants have stated that they will not stipulate that Advanced Bionics' products use the asserted patents, nor have they stated that they will present evidence at trial that Advanced Bionics products practice the patents.  Where there is no evidence that the product does not practice the patent, the marking requirement does not apply.  *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002).  To the extent that Defendants assert that the Foundation's damages expert's opinion relies on Advanced Bionics products practicing the patents, that is not the case.  Ms. Elsten relies properly on the parties' belief, at the time of the negotiation of the license, that the patents had value and that they would be used by Advanced Bionics.  Therefore, assuming that Defendants do not present any such evidence, damages will commence for both patents on December 13, 2001.

The Cochlear Defendants' proposed instruction misstates the law.  There is no explicit requirement that "if marking the patented product is not possible, then the marking must be fixed to the package containing the article."  To the contrary, the patentee has latitude to determine the manner of marking.  *See Sessions v. Romadka*, 145 U.S. 29, 50, 12 S. Ct. 799, 805, 36 L. Ed. 609 (1892); *Rexnord, Inc. v. Laitram Corp.*, 6 U.S.P.Q.2d 1817, 1845 (E.D.Wisc.1988) (finding that marking installation instructions provided adequate notice).  Moreover, where, as here, a third party is producing a product that practices the patent, a "rule of reason" approach is used, and substantial compliance with the marking requirement may be found to satisfy the requirement.  *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).  These issues are addressed more fully in the Foundation's response to the Cochlear Defendants' Joint Motion in Limine No. 3, Dkt. 314.

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 7.2(a) apprises the jury of the requirements for damages calculations.  It is superior to the Foundation's Instruction No. 7.2(a) because it correctly sets forth the standard of proof for providing notice of the patent through "marking."  The instruction states that the Foundation bears the burden of proving, by a preponderance of the evidence, that its exclusive licensee (Advanced Bionics) marked substantially all of their patented products, on either the product itself or the product packaging.  *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).  The instruction also informs the jury that the Foundation may sustain this burden by proving that it made reasonable efforts to ensure that Advanced Bionics marked substantially all of the products.  The Plaintiffs' proposed Instruction No. 7.2(a) removes this language entirely, completely ignoring the burden of proof on this issue and ignoring the role Advanced Bionics' marking of its products plays in determining the Foundations' damages.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Palo Alto

-233-                FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.3 "REASONABLE ROYALTY – RELEVANT FACTORS" (DISPUTED)

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the Foundation for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the Cochlear Defendants for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The Foundation's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the Foundation and the Cochlear Defendants, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the Cochlear Defendants, the existing value of the invention to the Foundation as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the Foundation, and the benefits to those who have used the invention.

(11)   The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   The opinion and testimony of qualified experts.

(15)   The amount that a licensor (such as the Foundation) and a licensee (such as the Cochlear Defendants) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-235-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

royalty, that is, the payment that would have resulted from a negotiation between the Foundation and the Cochlear Defendants taking place at a time prior to when the infringement began.

*Authority:*

Adapted from Model Patent Jury Instructions § B.4 4.6, Federal Circuit Bar Association (June 2013) (and sources cited therein).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-236-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Objection:**

In the Court's Order of October 18, 2013 [D.I. 300], the Court set forth express directions concerning the jury instructions.  As relevant here, that Order directed the parties to use the most recent version of the applicable Ninth Circuit's model instructions.  In the event those instructions were not applicable, the Court directed the parties to use the most recent version of the instructions in O'Malley, et al., <u>Federal Jury Practice and Instructions</u>.  In contravention of the Court's Order, the Foundation seeks to use a modified version of an unapproved model instruction propounded by the Federal Circuit Bar Association.  The Foundation's proffer should be rejected for their failure to comply with the Court's Order.

The Foundation's refusal to comply with the Court's Order has created an extra jury instruction, leading to greater potential for jury confusion, and has created controversies in the damages instructions that are unnecessary and wasting the time and resources of the Parties and this Court.

In addition, this instruction is unduly complicated and is covered in other instructions. AMF is hoping the jury will see so many factors that they cannot feel proper not awarding some damages.  Such inundation of the jury with needless instructions is not proper, and should be rejected by the Court here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-237-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Response:**

This instruction reflects the factors relevant to determining a reasonable royalty rate, as described in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-1120 (S.D. N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).  The factors in *Georgia-Pacific* have been endorsed repeatedly by the Federal Circuit as bearing on the amount of a reasonable royalty.  *See, e.g., Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1337 (Fed. Cir. Jun. 13, 2013) ("To aid them in assessing the right to and appropriate measure of damages, we instruct the jury to consider a broad range of factors."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the Georgia-Pacific factors to frame the reasonable royalty inquiry.  Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue."); *Wordtech Sys., Inc. v. Integrated Network Sol'ns, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).  Without this instruction, the jury will lack an appropriate framework and factors to consider in determining a reasonable royalty rate.  In contrast to instructions 7.3(a) and 7.4 proposed by the Cochlear Defendants, which only focus on certain factors, this instruction fully and fairly lays out all factors to be considered in determining a reasonable royalty.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-238-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**7.3(a)  COMPARABLE LICENSES – DEFENDANTS' PROPOSAL**

In determining a reasonable royalty based on the hypothetical negotiation, you are free to consider other licenses.  In considering other licenses as a comparison, you must rely only on licenses that are comparable to the license that is the subject of the hypothetical negotiation you are considering.  Factors to be considered in determining whether a license is comparable are:

– Whether the license was negotiated under comparable circumstances

– Whether the license involves comparable technology

– Whether the license is of a comparable scope

– Whether the license contains comparable terms; and,

– Whether the license provides insight into the market value of the patents in suit.

The proponent of the position that a particular license is comparable to a license resulting from the hypothetical negotiation bears the burden of establishing its comparability by a preponderance of the evidence.

*Authority:*

*Lucent Tech. v. Gateway, Inc.*, 580 F. 3d 1301(Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 869 (Fed. Cir 2010).

**Foundation's Objection:**

The Foundation takes the position that this instruction is not necessary to be given to the jury.  The royalties received by the patentee for the licensing of the patents in suit, proving or tending to prove an established royalty and rates paid by the licensee for use of other patents comparable to the patents-in-suit are only two of fifteen factors to be considered in a hypothetical negotiation under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970). This instruction unfairly elevates and emphasizes certain factors over all others relevant to the reasonable royalty analysis.  Under *Lucent* and *ResQNet*, a license should be "sufficiently" comparable, and both cases present factors that can be considered in determining the weight a license should be given in a damages determination.  *Lucent*, 580 F.3d at 1325-1332 (considering factors for whether licenses can support damages award); *ResQNet*, 594 F.3d 871-73 (considering licenses in royalty analysis and finding that license that arose out of litigation was the most relevant).  Further, this instruction would lead to confusion for the jury. The Foundation proposes giving the instruction regarding the *Georgia-Pacific* factors to be considered in a hypothetical negotiation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-240-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 7.3(a) is necessary because the Foundation's damages expert, Cate Elsten, relies on a number of different licenses to calculate a comparable licensing fee for a reasonable royalty calculation.  This instruction provides the jury with the framework with which it can analyze these licenses and determine what weight, if any, to give them.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-241-        FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.4  NON-INFRINGING ALTERNATIVES – DEFENDANTS' PROPOSAL

In determining a reasonable royalty, you may consider whether the Cochlear Defendants had any noninfringing alternatives, including commercially acceptable noninfringing alternatives, to taking a license from the Foundation and whether that would have affected the reasonable royalty the parties would have agreed upon.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:91 (6th ed. Aug. 2013) as amended.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-242-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

**Foundation's Objection:**

The Foundation contends that it is not necessary to give this instruction, and that the Cochlear Defendants will not be able to adduce at trial any evidence of non-infringing alternatives.  The Cochlear Defendants have disclosed a damages expert, but their damages expert does not disclose any non-infringing alternative.  Thus, even if it were proper, this instruction is unlikely to fit the evidence presented by the parties.

Moreover, this factor in licensing is covered in the *Georgia-Pacific* factors. By giving this instruction, the Cochlear Defendants attempt to unfairly elevate and emphasize certain factors in the reasonable royalty analysis over others.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-243-        FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1   **Cochlear's Response:**

2   This instruction is directly from the O'Malley Instructions and is properly

3   given here because whether non-infringing alternatives exist is a question of fact

4   that will be submitted to the jury.  This instruction provides the framework

5   necessary for the jury to consider these issues.

6   AMF argues that this instruction is not necessary, because Cochlear will be

7   unable to present any evidence of non-infringing alternatives at trial.  However, this

8   is not true.

9   AMF has contended on numerous occasions that it is an open question as to

10   whether or not Advanced Bionics practices the patents in suit.  For example, in the

11   Foundation's Objection to Defendants' Instruction 7.2(a), infra, AMF argues that

12   the Cochlear Defendants must establish that Advanced Bionics practices the patents

13   in order to establish AMF's marking defense.  However, if AMF contends that it is

14   possible that Advanced Bionics does not practice the patents, then there must clearly

15   be non-infringing alternatives (i.e., those practiced by Advanced Bionics).  As such,

16   AMF's contention that Cochlear must demonstrate that Advanced Bionics practices

17   the patents would necessarily mean that there are non-infringing alternatives.

18   Further, prior to the use of impedance telemetry, the functionality of cochlear

19   implants was determined using other methods.  Cochlear has presented evidence that

20   these methods would still work today, and these methods would clearly qualify as

21   non-infringing alternatives. Indeed, Dr. Shinder, the late added witness requested by

22   AMF testified to a non-infringing alternative at his recent deposition.

23   Thus, the Court should give this instruction as offered.

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-244-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.6 "WILLFUL INFRINGEMENT" (DISPUTED) – FOUNDATION'S PROPOSAL

The Foundation argues that the Cochlear Defendants willfully infringed the `616 patent and the '691 patent.

To prove willful infringement, the Foundation must first persuade you by clear and convincing evidence that the Cochlear Defendants infringed a valid and enforceable claim of the Foundation's patent

In addition, to prove willful infringement, the Foundation must persuade you that it is highly probable that the Cochlear Defendants acted with reckless disregard of the infringed patent claims.

To demonstrate such "reckless disregard," the Foundation must satisfy a two-part test. The first part of the test is objective. The Foundation must persuade you that the Cochlear Defendants acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of the Cochlear Defendants is not relevant to this inquiry. Rather, the only appropriate inquiry is whether the defenses put forth by the Cochlear Defendants fail to raise any substantial question with regard to infringement, validity or enforceability. If so there can be no willful infringement. Only if you conclude that the defenses fail to raise any substantial question with regard to infringement, validity or enforceability, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of the Cochlear Defendants. The Foundation must persuade you that the Cochlear Defendants actually knew, or it was so obvious that the Cochlear Defendants should have known, that their actions constituted infringement of a valid and enforceable patent.

In deciding whether the Cochlear Defendants acted with reckless disregard for the Foundation's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-245-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

Factors that may be considered as evidence that the Cochlear Defendants were not willful include:

(1)    Whether the Cochlear Defendants acted in a manner consistent with the standards of commerce for the industry;

Factors that may be considered as evidence that the Cochlear Defendants was willful include:

(1)    Whether the Cochlear Defendants intentionally copied a product of the Foundation that was covered by the patent.

(2)    The failure of the Cochlear Defendants to offer any opinion or other advice of counsel to support a claim that they believed that they did not infringe, or that the asserted patents were invalid.

Any evidence of willful infringement you consider, and any determination you make concerning willful infringement should be put out of your mind completely in the award of damages. I will address the issue later with the parties.

***Authority:***

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013) and *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3-10,* as amended by *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011) (the objective test is a question of law, and if the defenses are reasonable the question of willfulness cannot be sent to the jury); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9 (N.D. Cal. Nov. 20, 2013).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-246-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1

2    **Cochlear's Objection:**

3        Defendants object to this instruction as misleading and unfairly unbalanced

4    toward AMF.  AMF is seeking to have the jury draw a negative inference from the

5    assertion of the attorney client privilege in direct contravention to settled Federal

6    Circuit law that dictates that parties may not draw a negative inference against a

7    party who does not disclose an opinion of counsel regarding infringement.

8    *Broadcom Corp. v. Qualcomm*, 543 F.3d 683, 698-700 (Fed. Cir. 2008); *Knorr-*

9    *Bremse Sys. Fuer Nutzfahrzeuge v. Dana*, 383 F.3d 1337, 1343 (Fed. Cir. 2004).

10   Thus, AMF tells the jury to hold against the Defendants the lack of an opinion.

11       AMF appears to justify this assertion by complaining that the Defendants'

12   instruction, taken directly from the ND CA model instructions recommended by

13   O'Malley, uses a clause that AMF argues is contra-indicated in footnote 9 of that

14   instruction.  But footnote 9 says to avoid using the bracketed language, not the entire

15   provision as AMF argues.

16       AMF is silent as to how the provision it contends is not allowed to be used

17   where the Model instructions place it, but it can be moved it to a part of the

18   instruction that will create the negative inference the clause is designed to prevent!

19   Either the provision is in where defendants (and the Model instructions) placed it, or

20   it is out.  It is not AMF's plaything to move and place where it desires on an

21   unexplained whim.

22       Accordingly, Defendants respectfully submit that the instruction they

23   submitted is proper, fair and balanced, and should be given rather than AMF's

24   cobbled-together instruction.

25       AMF is also objecting to the testimony and seeking to re-raise the broad

26   exclusion this Court rejected in response to its motion in limine.  This too should be

27   rejected by the Court.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

**Foundation's Response:**

The parties have entered into a stipulation that the Cochlear Defendants are not relying on an opinion of counsel with respect to willfulness, so the Foundation's proposed language, "the failure of the Cochlear Defendants to offer any opinion or other advice of counsel to support a claim that they believed that they did not infringe, or that the asserted patents were invalid," is appropriate.  The Foundation, however, should be permitted to refer to the Cochlear Defendants' lack of reliance on an opinion of counsel, and has proposed appropriate language to that effect. Finally, the instruction proposed by the Foundation does not, as Defendants contend, create the inference that lack of advice is a negative factor.

The authority cited by the Cochlear Defendants does not support its position. *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.* 554 F.3d 1010, 1025 (Fed. Cir. 2009), does not address willful infringement, and dealt with induced infringement. *MPT, Inc. v. Marathon Labels, Inc.,* 505 F. Supp. 2d 401, 417 (N.D. Ohio 2007) is not binding on this Court, and there the Court's determination was based on the viability of the defendants' defenses, not on the defendants' unsupported, subjective belief that it was practicing the prior art.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-248-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

## 7.6  WILLFUL INFRINGEMENT – DEFENDANTS' PROPOSAL

The Foundation argue that the Cochlear Defendants willfully infringed the `616 and `691 patents.

To prove willful infringement, the Foundation must first persuade you by clear and convincing evidence that the Cochlear Defendants infringed a valid and enforceable asserted claim.  In addition, to prove willful infringement, the Foundation must persuade you that it is highly probable that the Cochlear Defendants acted with reckless disregard of the infringed asserted patent claim.

To demonstrate such "reckless disregard," Foundation must satisfy a two-part test.  The first part of the test is objective.  The Foundation must persuade you that the Cochlear Defendants acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent.  The state of mind of the Cochlear Defendants is not relevant to this inquiry.  Rather, the only appropriate inquiry is whether the defenses put forth by the Cochlear Defendants fail to raise any substantial question with regard to infringement, validity or enforceability.  If so there can be no willful infringement.  Only if you conclude that the defenses fail to raise any substantial question with regard to infringement, validity or enforceability, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of the Cochlear Defendants.  The Plaintiff must persuade you that the Cochlear Defendants actually knew, or it was so obvious that the Cochlear Defendants should have known, that their actions constituted infringement of a valid and enforceable patent.

In deciding whether the Cochlear Defendants acted with reckless disregard for AMF's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

Factors that may be considered as evidence that the Cochlear Defendants were not willful include:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-249-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

(1)     Whether the Cochlear Defendants acted in a manner consistent with the standards of commerce for the industry;

(2)     Although there is no obligation to obtain an opinion of counsel whether the Cochlear Defendants relied on a legal opinion that was well-supported and believable and that advised one or more of the Cochlear Defendants (1) that the accused products did not infringe AMF's patent or (2) that the patent was invalid or unenforceable; and/or

(3)     Whether the Cochlear Defendants had a good faith belief that the patents were not infringed and/or that they were practicing the prior art as discussed in instruction no. 4.7.

Factors that may be considered as evidence that the Cochlear Defendants was willful include:

(1)     Whether the Cochlear Defendants intentionally copied a product of the Foundation that was covered by the patent.

Any evidence of willful infringement you consider, and any determination you make concerning willful infringement should be put out of your mind completely in the award of damages.  I will address the issue of willfulness later with the parties.

*Authority:*

*O'Malley et al.*, 3A Fed. Jury Prac. & Instr. § 158:94 (6th ed. Aug. 2013) and *Model Patent Jury Instructions for the Northern District of California (Nov. 3, 2011), Instr. 3-10,* as amended by *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009); *Powell v. Home Depot*, 663 F.3d 1221,1236 (Fed. Cir. 2011) (the objective test is a question of law, and if the defenses are reasonable the question of willfulness cannot be sent to the jury); *Uniloc v. Microsoft Corp.*, 632 F.3d 1292, 1311(Fed. Cir. 2011); *In re Seagate Tech.*, 497 F.3d 1360, 1374(Fed. Cir. 2007); and, *Guzik Tech v. Western Digital*, 5:11-cv-03786-PSG, 2013 WL 6116129, *8-9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-250-     FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1  (N.D. Cal. Nov. 20, 2013).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Foundation's Objection:**

First, the Cochlear Defendants propose to use language regarding the opinion of counsel from the Northern District of California Model Jury Instructions 3-10: "(2) Although there is no obligation to obtain an opinion of counsel whether the Cochlear Defendants relied on a legal opinion that was well-supported and believable and that advised one or more of the Cochlear Defendants (1) that the accused products did not infringe AMF's patent or (2) that the patent was invalid or unenforceable." In the Northern District instructions, this language is footnoted as only to be given when a defendant actually relies on an opinion of counsel. Northern Dist. of Calif. Model Jury Instructions, 3-10, fn.9. The parties have stipulated that the Cochlear Defendants are not relying on an opinion of counsel, thus this language is inappropriate. Indeed, the Cochlear Defendants include this reference in a listing of evidence that tends to show that they "were not willful." This makes no sense because the failure of the Cochlear Defendants to offer or rely upon an opinion of counsel is a factor that tends to show they "were fully." The Cochlear Defendants instruction is calculated to mislead and the confuse the jury about the relevance of the Cochlear Defendants failure to rely upon advice of counsel.

Second, the Cochlear Defendants' proposed language at Numeral (3) does not appear in either the Northern District pattern instructions, or the O'Malley pattern instructions, nor do the authorities Defendants cite support adding defenses of "good faith belief that the patents were not infringed," or that Defendants were practicing the prior art to the second prong of the willfulness inquiry. If anything, Defendants' defenses to infringement are relevant to the first, objective prong of the test, not to the second. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek, USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010). Moreover, none of the authorities cited by the Cochlear Defendants concern a situation where, as here, the defendants did not rely on an opinion of counsel. *DePuy Spine*, 567 F.3d at 1336-37, did not reach the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-252-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

second prong of willfulness, nor did *Uniloc v. Microsoft Corp.*, 632 F.3d at 1311. The Federal Circuit in *Powell,* 663 F.3d at 1236, stated that the question of whether defenses were reasonable was for the court, not the jury.  Even if it were relevant, the Foundation believes that because the Cochlear Defendants asserted attorney-client privilege and attorney work-product immunity when the Foundation pursued discovery into its state of mind, the Cochlear Defendants should not be permitted to put on such evidence, as described in Plaintiff's Joint Motion in Limine No. 4.

**Cochlear's Response:**

The Cochlear Defendants' Instruction No. 7.6 properly instructs the jury on relevant factors that they may consider in determining whether the Cochlear Defendants' willfully infringed the patents-in-suit.  This instruction is superior to the Plaintiffs' proposed Instruction No. 7.6 for two reasons.

First, the Cochlear Defendants' Instruction No. 7.6 accurately describes the law with respect to an alleged infringer's "good faith belief" regarding their non-infringement.  A good faith belief of non-infringement may negate the intent required to prove willful infringement.  This instruction sets out the various ways in which that good faith belief can arise, including (1) receiving an opinion from counsel or (2) practicing the prior art.  *See e.g. Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.* 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a non-lawyer's belief that the defendant could "freely practice inventions found in the public domain" supported a jury's finding that intent for induced infringement was not present); *MPT, Inc. v. Marathon Labels, Inc.,* 505 F. Supp. 2d 401, 417 (N.D. OH 2007) (Defendant employee knowledgeable of industry testified that he did not believe the defendant infringed the product was sufficient to negate finding of willful infringement).

Second, unlike the Plaintiffs' Instruction No. 7.6, the Cochlear Defendants do not create a negative inference from their refusal to disclose the opinions of counsel they may have had regarding infringing the patents-in-suit.  Settled Federal Circuit law dictates that parties may not draw a negative inference against a party who does not disclose an opinion of counsel regarding infringement.  *Broadcom Corp. v. Qualcomm*, 543 F.3d 683, 698-700 (Fed. Cir. 2008); *Knorr-Bremse Sys. Fuer Nutzfahrzeuge v. Dana*, 383 F.3d 1337, 1343 (Fed. Cir. 2004).  Here, the Cochlear Defendants' instruction states that the presence of a counsel's opinion could be a factor in demonstrating good faith, but does not suggest that the absence of an opinion should be held against the alleged infringer.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-254-

FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
07-08108-FMO-SH

1    Plaintiffs' proposed Instruction No. 7.6 impermissibly attempts to draw the

2    negative inference rejected by the Federal Circuit.  By adding language suggesting

3    that the jury should consider "The failure of the Cochlear Defendants to offer any

4    opinion or other advice of counsel to support a claim that they believed that they did

5    not infringe," the Plaintiffs are effectively punishing the Cochlear Defendants for

6    asserting the attorney-client privilege and withholding any opinions they may have

7    received.  Such an instruction is, therefore, biased, prejudicial, and contrary to the

8    law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-255-                    FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                         07-08108-FMO-SH

1    Respectfully submitted,

2    Dated:  January 3, 2013          MORGAN, LEWIS & BOCKIUS LLP

3
4                                     By: /s/ Daniel Johnson Jr.
                                           Daniel Johnson Jr.
5                                          Attorneys for Plaintiff
                                           ALFRED E. MANN FOUNDATION
6                                          FOR SCIENTIFIC RESEARCH

7    Dated:  January 3, 2013          SHEPPARD, MULLIN, RICHTER &
                                      HAMPTON LLP
8
9                                     By: /s/ Scott R. Miller
10                                         Scott R. Miller
                                           Attorneys for Defendants
11                                         COCHLEAR LTD. and COCHLEAR
                                           AMERICAS
12

13
     Dated:  January 3, 2013          FELDMAN GALE, P.A.
14

15                                    By: /s/ Greg Wood
16                                         Greg Wood
                                           Attorneys for Defendant/Involuntary
17                                         Plaintiff
                                           ADVANCED BIONICS, LLC
18

19                        **FILER ATTESTATION**

20        I, Daniel Johnson Jr., pursuant to L.R. 5-4.3.4(a)(2)(i), attest that all other

21   signatories listed, and on whose behalf the filing is submitted, concur in the filing's

22   content and have authorized the filing.

23
                                      By: Daniel Johnson Jr.
24                                         Daniel Johnson Jr.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

-256-          FIRST AMENDED JOINT DISPUTED JURY INSTRUCTIONS
                                       07-08108-FMO-SH