SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
BRUCE G. CHAPMAN, Cal. Bar No. 164258
bchapman@sheppardmullin.com
SCOTT R. MILLER (Cal. Bar No. 112656)
smiller@sheppardmullin.com
LAURA M. BURSON (Cal. Bar No. 204459)
lburson@sheppardmullin.com
MANUEL C. NELSON, Cal. Bar No. 229590
mnelson@sheppardmullin.com
DENNIS J. SMITH, Cal. Bar No. 233842
dsmith2@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendants and
Counterclaimants COCHLEAR LTD. and
COCHLEAR AMERICAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALFRED MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>COCHLEAR CORPORATION, et al.,<br><br>Defendants.<br>_____<br>AND RELATED COUNTERCLAIMS. | Case No. CV 07-08108 FMO (SHx)<br><br>**DEFENDANTS COCHLEAR LTD. AND COCHLEAR AMERICAS' TRIAL BRIEF**<br><br>Judge:  Hon. Fernando M. Olguin<br><br>Trial Date:  January 13, 2014<br>Time:          8:30 a.m.<br>Place:         Crtrm. 22, Fifth Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  DISCUSSION ................................................................................................. 1

   A.   Plaintiffs May Not Pursue Their Claims of Active Inducement and Contributory Infringement On Any Claim Other Than Claim 10 of the '616 Patent ....................................................................... 1

   B.   The Cochlear Defendants' Claim of Inequitable Conduct is Asserted Against the Inventors of the Asserted Patents and Their Attorneys .................................................................................. 9

   C.   The Cochlear Defendants Are Entitled to a Judgment As to Their Counterclaims of Non-Infringement ...................................... 11

III. CONCLUSION ............................................................................................. 12

SMRH:415123892.4                                        DEFENDANTS' TRIAL BRIEF

1

**TABLE OF AUTHORITIES**

2

3 <u>Cases</u>

4 *ATD Corp. v. Lydall, Inc.*,
      159 F.3d 534 (Fed. Cir. 1998) ................................................................8
5

6 *Hickman v. Taylor*,
      329 U.S. 495 (1947) .............................................................................2, 3

7 *Kashlan v. TCBY Systems, LLC*,
      2013 WL 3309123 (E.D. Ark., Nov. 6, 2007) ......................................3
8

9 *Markos v .Sears, Roebuck and Co.*,
      2007 WL 5162457 (C.D. Cal., Mar. 19, 2007) ....................................8

10 *Phillip v. University of Rochester*,
      316 F.3d 291 (2d Cir. 2003) ..................................................................3
11

12 *Swierkiewicz v. Sorema N.A.*,
      534 U.S. 506 (2002) ...............................................................................3

13 *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
      259 F.3d 1101 (9th Cir. 2001) ...............................................................7
14

15 <u>Rules</u>

Federal Rules of Civil Procedure 26(e)(1)(A) .............................................4
16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Plaintiffs Alfred E Mann Foundation for Scientific Research ("AMF") and Advanced Bionics LLC ("AB") (collectively "Plaintiffs") have alleged infringement of claims 1 and 10 of U.S. Patent No. 5,609,616 (the "'616 Patent") and claims 6 and 7 of U.S. Patent No. 5,938,691 (the "'691 Patent") (collectively, the "Asserted Claims" of the "Asserted Patents").

Pursuant to Local Rule 16-10, Defendants Cochlear Ltd. and Cochlear Americas (collectively the "Cochlear Defendants") present this Trial Brief in response to certain arguments presented in PLAINTIFF ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (D.I. 326) (hereafter "Plaintiffs' Memo"). In particular, the Cochlear Defendants respond that (1) Plaintiffs are not entitled to pursue their claims of active inducement and/or contributory infringement on any claim other than claim 10 of the '616 patent; (2) the Cochlear Defendants' claim of inequitable conduct is asserted against the inventors of the Asserted Patents and their attorneys; and (3) the Cochlear Defendants are entitled to a judgment on their counter-claims of non-infringement as admitted by the Plaintiffs.

# II.   DISCUSSION

## A.   Plaintiffs May Not Pursue Their Claims of Active Inducement and Contributory Infringement On Any Claim Other Than Claim 10 of the '616 Patent

Plaintiffs' Memo improperly alleges active inducement and contributory infringement of all four of the Asserted Claims, rather than limiting these claims to only claim 10 of the '616 patent. *See* [D.I. 326] at 4-5. Under the Federal Rules of Civil Procedure and Federal Circuit case law, Plaintiffs' attempts are improper and should not be permitted.

Throughout this case, particularly during discovery, AMF has only provided discovery on the indirect infringement of claim 10 of the '616 patent. For

example, Defendants' Interrogatory No. 1 required AMF to "specifically identify the basis of the alleged infringement for each asserted claim by each asserted product…"  (See, AMF's May 2008 Response to Interrogatory No. 1, attached hereto as **Exhibit A**).  AMF responded, in part:

> "Through its acts, the Cochlear defendants…infringe at least Claim 10 of the 616 patent, either directly, by inducement of others, or contributorily."

(*Id.*)  The remainder of the response referred to claim charts that did not address indirect infringement of any of the other asserted claims.

Plaintiffs have not provided a supplemental discovery response that identifies any indirect infringement theories for the other asserted claims.  The result of this discovery, then, is that claim 10 is the only claim that Plaintiffs asserted was indirectly infringed.

When confronted by this discovery during the Court-ordered meet and confer process, Plaintiffs contended that they had always asserted indirect infringement claims in their pleadings.  But this mere assertion does not override the verified discovery responses AMF provided.

Settled law recognizes that the purpose of discovery is to narrow the issues in dispute.  As the United States Supreme Court observed in *Hickman v. Taylor*, 329 U.S. 495, 501 (1947):

> The [Federal Rules of Civil Procedure], however, restrict the pleadings to the task of general notice-giving and invent the deposition-discovery process with a vital role in the preparation for trial.  The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for

1            ascertaining the facts, or information as to the existence or

2            whereabouts of facts, relative to those issues…"

3 *Hickman*, 329 U.S. at 501; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512

4 (2002) ("This simplified notice pleading standard relies on liberal discovery rules

5 and summary judgment motions to define disputed facts and issues and to dispose of

6 unmeritorious claims"); *Kashlan v. TCBY Systems, LLC*, 2013 WL 3309123, *4

7 (E.D. Ark., Nov. 6, 2007) ("The point of requiring substantive answers to written

8 discovery is to narrow a claiming party's theory of liability and damages prior to

9 taking depositions.  A party is not required to go into a deposition blind, but is

10 entitled to use written discovery to bring the opposing party's claim into focus…");

11 *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003).

12          Simply put, Plaintiffs may not rely upon their pleadings (which are the

13 broad, "notice pleading" identified in *Hickman*) to avoid being bound to a written

14 discovery response, the purpose of which is to define the issues in dispute and

15 narrow the case.  Conversely, the Cochlear Defendants are entitled to rely upon a

16 discovery response (rather than the notice-pleading) as the identification of the

17 issues actually in dispute for trial.  When Plaintiffs failed to identify indirect

18 infringement theories for the other asserted claims, the Cochlear Defendants were

19 entitled to rely upon that answer as evidence that Plaintiffs were abandoning their

20 overbroad pleadings where every claim was infringed in every possible way.

21          In the parties' joint jury instructions filed on January 3, 2014 [D.I.

22 367], AMF now asserts that its later discovery responses demonstrate that Plaintiffs

23 have been pursuing indirect infringement of the remaining apparatus claims.  There,

24 AMF argues:

25            [T]he Foundation amended its interrogatory answer on

26            November 13, 2008 to state:

27            …in addition to claim 10 of the '616 patent, sales and

28            offers for sale in the United States of various devices

1         relating to cochlear implants and the importation of the

2         devices into the United States coupled with the use of the

3         devices in the United States by clinics, clinicians and

4         doctors infringes at least claims 1 and 12 of the '616

5         patent, and claims 1, 2, 3, 4, 5, 6, 7, 8, 9, and 14 of the

6         '691 patent.

7   [D.I. 367] at 14.  However, this response cited by the Plaintiffs merely says that

8   there is direct infringement by the "sales, offers for sale…and importation of"

9   accused devices.  Nowhere does it say that AMF is pursuing indirect infringement

10  claims under any of the apparatus claims of the patents in suit.

11      Plaintiffs argue that the amended interrogatory response "<u>implies</u>" that

12  Plaintiffs are asserting indirect infringement of a series of claims. (*Id.*)  This

13  argument is flawed for several reasons.  First, one cannot change an express

14  response detailing the scope of the indirect infringement claim at only claim 10 of

15  the `616 with an "implied" response that supposedly contradicts the prior response.

16  The Fed Rules say that if a response is in error, a party must inform the other party

17  of the error by correcting its disclosure in a timely manner.  Fed. R. Civ. P.

18  26(e)(1)(A).  An "implicit" correction that does not inform the other party of any

19  previous error to be corrected does not satisfy the disclosure requirements of Fed. R.

20  Civ. P. 26(e)(1)(A).

21      Second, nothing in this response identifies or points to an assertion of

22  indirect infringement for anything other than the "use of the devices in the United

23  States by clinics, clinicians and doctors."   Nowhere does AMF mention use of the

24  apparatus by patients, assembly of the apparatus, or components of the apparatus, as

25  would be required for indirect infringement of any of the apparatus claims.

26      Indeed, this response – in conjunction with the jury instruction

27  proffered by AMF – actually confirms that AMF continued to assert indirect

28  infringement only under the method claim of claim 10 of the '616 patent.  In

1   opposition to the Defendants' jury instruction 4.6 regarding induced infringement

2   AMF asserts:

3           "The Cochlear Defendants induce others to purchase these components

4           which can be used (and are designed to be used) in combination with,

5           and only with, the other components."

6   [D.I. 367] at 107.

7           Comparing this assertion to the amended interrogatory answer quoted

8   above that AMF asserts "implicitly" amended the previous express response limiting

9   the indirect infringement claims to claim 10 of the `616 patent, exposes the falsity of

10  the AMF's assertion that the amended interrogatory answer did anything but

11  confirm AMF's intent to only pursue indirect infringement of the `616 patent at the

12  time of the amended response.  Gone from AMF's indirect claim is any activity by

13  "clinics, clinicians and doctors."  AMF's substitution of activities by cochlear and

14  the persons who purchase and use the implant systems (i.e., patients) with no

15  mention of "clinics, clinicians and doctors" illustrates in stark detail how AMF

16  intends to make an 11th hours switch of its infringement theories with no basis in

17  AMF's previous discovery responses.

18          In fact, there is also no support for AMF's position that they provided

19  any disclosure or discovery with respect to indirect infringement of any claim other

20  than claim 10 of the '616 patent.  And Plaintiffs' argument in conjunction with

21  disputed jury Instruction 4.1 further confirms this fact.  There, Plaintiffs assert that

22  the testimony of Dr. Kelsall supports AMF's theory of  induced infringement.  [D.I.

23  376] at 45 (citing Deposition of David Kelsall, M.D., Dec. 10, 2008 at 17:3-18:6)

24  (excerpts of the Dec. 10, 2008 deposition of David Kelsall, attached hereto as

25  **Exhibit B**).  But that testimony is exclusively about the use of the impedance

26  telemetry by Dr. Kelsall's staff to test an implant while the patient is in surgery

27  allegedly using the *method* of claim 10 of the `616 patent.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 17
3 A. My staff would have been trained at
4 training courses provided by the manufacturer.
5 Q. (BY MR. GERGELY) Okay. Drawing your
6 attention to the page -- it's marked "Custom Sound
7 User Manual 29," and in the lower right-hand corner
8 there's a document control number called COC-2083658,
9 and the page is headed "Intraoperative Testing."
10 A. I got it.
11 Q. Okay. Does this page describe the
12 impedance measurements that you and your staff take in
13 the operating room on a cochlear implant manufactured
14 by Cochlear Corporation?
15 A. Yes.
16 Q. Okay. And then on the following page,
17 there's a screen shot of an electrode array. Have you
18 seen that screen shot before --
19 A. Yes.
20 Q. -- or one like it?
21 Okay. And what does that information
22 signify to you?
23 A. The screen shot shows a representation of
24 a coiled cochlear implant inside of the cochlea, and
25 the electrodes numbered from 1 to 22

Page 18
1 Q. And why is it important to take an
2 impedance check in the operating room?
3 A. It's important to know whether the device
4 is functioning by conducting current on each of the 22
5 electrodes. It rules out an out-of-box failure, just
6 to make sure that the device is functional.

There is no testimony from Dr. Kelsall regarding the structure of the
accused products that is at issue in all of the *apparatus* claims. In sum, AMF does
not have a single credible argument that it disclosed or provided discovery of its
newly minted assertions of indirect infringement as to any of the asserted claims
other than claim 10 of the '616 patent.

AMF contends that the court should ignore the prejudice and manifest injustice that it seeks to impose on defendants by their belated assertions simply because they arose so late in the case.  But that is the fault of AMF, not the defendants.  It was not until the Rule 16 meeting on November 12, 2013 that the Cochlear Defendants learned that AMF intended to pursue indirect infringement claims for the other Asserted Claims.  By then, it was too late to file a motion for summary judgment or even a motion in limine.  Having failed to provide discovery on these indirect theories of infringement (coupled with its failure to supplement its Responses), Fed. R. Evid. Rules 26 and 37, and the case law interpreting these rules, uniformly require the automatic exclusion of any argument and evidence at trial based on a claim not asserted during discovery and on which no discovery was ever provided by Plaintiffs.

Rule 37(c)(1) provides for an automatic exclusion of information from trial when a party fails to comply with Rule 26 by failing to disclose that information during discovery (unless that failure was substantially justified).  As recognized by the Ninth Circuit, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001).  Preclusion is a "self-executing," "automatic" sanction to "provide[] a strong inducement for disclosure of material" and "Courts have upheld the sanction even when a litigant's entire cause of action or defense has been precluded." *Id*.  "[T]he burden is on the party facing [preclusion] sanctions to prove harmlessness." *Id*. at 1107.  Here, Plaintiffs failed to disclose their indirect infringement theories regarding three of the four asserted claims.  Accordingly, Rule 37 suggests that Plaintiffs would be precluded from introducing that information at trial.  Accepting Plaintiffs' reasoning would turn Rule 37 on its head: a party could assert one hundred claims in its complaint, provide discovery on five of those claims, and then assert all one hundred claims at trial because, it argues, the

1    defendant had notice of those claims.  That is not how discovery works under the

2    Federal Rules of Civil Procedure.

3              In *ATD Corp. v. Lydall, Inc*., the Federal Circuit upheld the exclusion

4    of an invalidity theory that was proposed by the defendants after the close of

5    discovery.  159 F.3d 534, 550-51 (Fed. Cir. 1998).  The District Court's stated

6    reason for precluding the invalidity theory was "exercising [its] discretion under the

7    rule of the Federal Rules of Civil Procedure to preclude a party from relying on

8    theories not made available or not disclosed to the opposing side."  *Id.*  The Federal

9    Circuit agreed, holding that "[t]he district court in the instant case was well within

10   its discretion in excluding the Munters patent, for the record shows that Lydall

11   offered no reason to justify its submission long after the close of discovery."  *See

12   also Markos v .Sears, Roebuck and Co*., 2007 WL 5162457 at *1 (C.D. Cal., Mar.

13   19, 2007) (precluding "all testimony by Plaintiff related to his [newly asserted]

14   claim" under Rule 26 because "Defendant has had no opportunity to conduct

15   discovery on this theory [so] it would be unfairly prejudicial for Plaintiff to argue

16   this theory at trial.")

17             Here, Plaintiffs have no justification for their failure to assert a claim of

18   inducement or contributory infringement for any claim other than claim 10 of the

19   '616 patent prior to the close of discovery.  The Cochlear Defendants would be

20   substantially prejudiced if the court were to allow these claims to be inserted into

21   this action at this 11th hour as they have taken no discovery on them nor have they

22   prepared any expert testimony on these never previously-asserted claims.  As such,

23   the jury should only be presented with those claims that are properly at issue in this

24   case, i.e., direct infringement of claims 1 and 10 of the '616 patent and claims 6-7 of

25   the '691 patent, and active inducement/contributory infringement of only claim 10

26   of the '616 patent.

27

28

**B.**   **The Cochlear Defendants' Claim of Inequitable Conduct is Asserted Against the Inventors of the Asserted Patents and Their Attorneys**

AMF improperly attempts to limit Defendants' accusation of inequitable conduct to AMF's patent attorney, Mr. Gold.  [D.I. 326] at 20.  AMF's attempt to limit the scope of the inequitable conduct to Mr. Gold is improper for several reasons.

First, the Cochlear Defendants' counterclaim of inequitable conduct specifically names the inventors and the attorney as the parties who perpetrated the inequitable conduct.  [D.I. 166] at 10-11, ¶¶11-21 ("one or more persons involved in the prosecution of each of the applications that matured into the AMF patents, **including the named inventors** and/or their attorneys of record, failed to submit material references to PTO with the intent to deceive the PTO.") (emphasis added).

Moreover, AMF has admitted this allegation as to both the inventors and the attorney, admitting that the named inventors and/or their attorneys of record were aware of and did not disclose to the PTO during the prosecution of the '616 patent the prior art on which the inequitable conduct defense is based.  *See, e.g.,* AMF's Reply to Amended Counterclaims [D.I. 31], ¶ 12 ( "AMF admits that during the prosecution of the '616 patent, the named inventors and/or their attorneys of record did not disclose" the prior art references); *id.* at ¶ 13 ("AMF admits the allegations of paragraph 13 of the Amended Counterclaims" that certain of the omitted prior art references were known to at least named inventor Joseph H. Schulman); *id.* at ¶ 16-17 ("AMF admits that during the prosecution of the '616 patent, the named inventors and/or their attorneys of record did not disclose… 'the McDermott article'" and "AMF admits that the McDermott article was known to the named inventors and/or their attorneys of record during the prosecution of the '616 patent."); and AMF's Reply and Counterclaims-in-Reply to Cochlear's Counterclaims [D.I. 171], ¶ 18 ("AMF admits that the McDermott article was known to the named inventors and/or their attorneys of record during the

1  prosecution of the '616 and/or the '691 patents").  Both the inventors and AMFs

2  attorney had independent duties of disclosure and each failed to meet that

3  obligation.

4           Indeed, the Cochlear Defendants have never limited their inequitable

5  conduct allegations to only Mr. Gold.  In the Cochlear Defendants' Third Amended

6  Response to Plaintiff's First Set of Interrogatories, the Cochlear Defendants clearly

7  implicated both the inventors and their attorneys for failure to disclose material prior

8  art references.  *See* **Exhibit C** at 36 ("During prosecution of each of the applications

9  that matured into the AMF patents, **the named inventors and, at least in some**

10 **instances, their attorney** failed to disclose the following prior art references…")

11 (emphasis added); and *id.* at 37 ("…**the named inventors** and their attorney failed

12 to disclose McDermott, 'An Advanced Multiple Channel Cochlear Implant,' IEEE

13 Transactions on Biomedical Engineering, vol. 36:7, pp. 789-797 (July 1989) ('the

14 McDermott article').  The McDermott article was known **to the named inventors**

15 or their attorney at the time of the prosecution of each of the applications that

16 matured into the '774, '616, '726, '172 and '691 patents.") (emphasis added).  The

17 Cochlear Defendants have consistently alleged inequitable conduct by both the

18 named inventors and their attorneys.

19          Moreover, the evidence in the record shows that at least Mr. Schulman

20 (one of the inventors of the patents-in-suit) was aware of undisclosed prior art

21 during prosecution of the '616 patent.  Mr. Schulman testified at his deposition that

22 he worked closely with AMF's patent attorney Mr. Gold and reviewed all of the

23 PTO filings.  *See* Dec. 2, 2008 Deposition of Joseph Schulman at 112:15 – 113:11

24 (attached hereto as **Exhibit D**) (Mr. Schulman testifying that he was the person at

25 AMF responsible for communicating with AMF's patent attorney, Bryant Gold, and

26 that Mr. Gold reviewed actions by the patent office with Mr. Schulman.)  Mr.

27 Schulman further testified that he followed and was familiar with the work of Hugh

28 McDermott, the author of the thesis that both Mr. Schindler and AMF's patent

1  attorney (Mr. Gold) failed to disclose to the PTO during the prosecution of the '616
2  patent.  *See,* **Exhibit E** at AMF014893 (May 9, 1994 document by Mr. Schulman in
3  which Mr. Schulman refers to "a very interesting paper by Hugh McDermott"; also
4  marked Defendants' Exhibit 1063); and **Exhibit D** at 115:19 – 116:21 (Mr.
5  Schulman testifying that the document attached hereto as **Exhibit E**, which
6  discussed an article by Hugh McDermott, was "a proposal to most likely Advanced
7  Bionics that this should be considered as a next generation device to stay
8  competitive.")  The documentary evidence and Mr. Schulman's testimony indicate
9  that Mr. Schulman was aware of the work of Hugh McDermott, considered Hugh
10  McDermott's work to be relevant to the field of next generation cochlear implant
11  devices, and that Mr. Schulman was intimately involved in AMF's patent filings.
12  Clearly, actors besides Mr. Gold were involved in the prosecution and it would be
13  improper to limit argument or evidence solely to Mr. Gold.

14          For these reasons, Defendants' defense of inequitable conduct should
15  not be limited to Mr. Gold, and AMF's attempts to so limit Defendants' inequitable
16  conduct defense are baseless and improper.

17

18  **C.**      **The Cochlear Defendants Are Entitled to a Judgment As to Their**
19              **Counterclaims of Non-Infringement**

20          The Cochlear Defendants are entitled to a declaratory judgment of non-
21  infringement on at least all claims and patents for which Plaintiffs have admitted
22  non-infringement.

23          While the remaining controversy is presently limited to the '616 and
24  '691 patents,  AMF's Complaint alleged that the Cochlear Defendants may be
25  infringing four additional patents, including U.S. Patent Nos. 5,531,774 ("the '774
26  patent"), 5,569,307 ("the '307 patent"), 5,603,726 ("the '726 patent"), and
27  5,776,173 ("the '173 patent").  [D.I. 1], ¶¶ 14 and 19.  In its Second Amended
28  Answer to Complaint and Counterclaims, the Cochlear Defendants asserted

1  counterclaims of non-infringement of each of the '616, '691, '774, '307, '726, or

2  '172 patents.  [D.I. 48], ¶¶ 30, 36, 42, 48, 54, and 60.

3          In its Reply and Counterclaims-in Reply to Second Amended

4  Counterclaims, AMF denied the Cochlear Defendants asserted counterclaims of

5  non-infringement as to the '616 and '691 patents.  [D.I. 49], ¶¶ 36 and 60.

6  However, AMF admitted that the Cochlear Defendants do not infringe any of the

7  '773, '307, '726, or '173 patents.  *Id.* at ¶ 30 (admitting that the Cochlear

8  Defendants do not infringe the '774 patent by stating, "Based on a review of

9  documents produced by Cochlear as of the date of the filing this Reply and

10  Counterclaims-in-Reply and to the extent that those documents accurately describe

11  Cochlear's products and activities, AMF admits the allegations of paragraph 30 of

12  the Second Amended Counterclaims."); ¶ 42 (similarly admitting that the Cochlear

13  Defendants do not infringe the '307 patent); ¶ 48 (similarly admitting that the

14  Cochlear Defendants do not infringe the '726 patent); and ¶ 54 (similarly admitting

15  that the Cochlear Defendants do not infringe the '172 patent).

16          Based on AMF's own admission, the Cochlear Defendants are entitled

17  to a judgment of non-infringement as to the '774, '307, '726, and '172 patents.

18

19                        **III.   CONCLUSION**

20          Based on the foregoing arguments, the Cochlear Defendants

21  respectfully request judgment in Cochlear's favor on each of the issues discussed

22  above.

23  DATED:  January 6, 2014              SHEPPARD MULLIN RICHTER & HAMPTON LLP

24

25                                      By:_____*/s/ Scott R. Miller*_____

26                                              Scott R. Miller
                                          Attorneys for Defendants/
27                                      Counterclaimants COCHLEAR
                                          LTD. and COCHLEAR
28                                              AMERICAS

EXHIBIT A

1   CHARLES S. BARQUIST (CA SBN 133785)
    CBarquist@mofo.com
2   MORRISON & FOERSTER LLP
    555 West Fifth Street
3   Los Angeles, California  90013-1024
    Telephone: 213.892.5200
4   Facsimile:  213.892.5454

5   BRIAN G. BODINE
    Bbodine@merchantgould.com
6   BRETT A. HERTZBERG
    bhertzberg@merchantgould.com
7   KAUSTUV M. DAS
    kdas@merchantgould.com
8   MERCHANT & GOULD, P.C.
    701 Fifth Avenue, Suite 4100
9   Seattle, Washington  98104
    Telephone: 206.342.6200
10  Facsimile:  206.342.6201

11  PETER A. GERGELY
    Pgergely@merchantgould.com
12  MERCHANT & GOULD, P.C.
    1050 17th Street, Suite 1950
13  Denver, CO 80265-0100

14  Attorneys for Plaintiff
    ALFRED E. MANN FOUNDATION FOR
15  SCIENTIFIC RESEARCH

16              UNITED STATES DISTRICT COURT

17           CENTRAL DISTRICT OF CALIFORNIA

18

19  ALFRED E. MANN FOUNDATION          Case No. CV 07-08108 GHK (CTX)
    FOR SCIENTIFIC RESEARCH,
20                                     DEFENDANT COCHLEAR LTD.'S
              Plaintiff,               FIRST SET OF
21                                     INTERROGATORIES TO
         v.                            PLAINTIFF ALFRED E. MANN
22                                     FOUNDATION FOR SCIENTIFIC
    COCHLEAR CORPORATION and           RESEARCH **AND PLAINTIFF'S
23  COCHLEAR LTD.,                     OBJECTIONS AND RESPONSE
                                       TO SAME**
24            Defendants.

25

26

27

28

                            1

1  COCHLEAR AMERICAS and
   COCHLEAR LTD.,
2
                            Counterclaimants,
3
4       v.

5  ALFRED E. MANN FOUNDATION
   FOR SCIENTIFIC RESEARCH,
6
                            Counterdefendant

7        Pursuant to Federal Rules of Civil Procedure 26 and 33, plaintiff Alfred E.

8
   Mann Foundation for Scientific Research ("AMF"), by and through its attorneys,
9
10 submits these objections and responses to Defendant Cochlear Ltd.'s First Set of

11 Interrogatories to Plaintiff Alfred E. Mann Foundation for Scientific Research.

12
                    I.      **GENERAL OBJECTIONS**
13
14       1.      AMF objects to these interrogatories to the extent that they seek

15 information or documents that are subject to attorney-client privilege or any other

16
   applicable privilege, constitute attorney work product, or are otherwise immune
17
18 from discovery under the Federal Rules of Civil Procedure.

19       2.      AMF objects to these interrogatories to the extent that they seek
20
   information that is unreasonably cumulative or duplicative, or that is obtainable
21
22 from some other source that is more convenient, less expensive, less burdensome,

23 or that Cochlear Ltd. has had an opportunity to seek from another source, or where

24
   the burden or expense to AMF of the proposed discovery outweighs its likely
25
26 benefit to Cochlear Ltd., taking into account the needs of the case, the amount in

27 controversy, the parties' resources, the importance of the issues at stake in the

28
                                        2

19.   AMF specifically incorporates each and every one of these General

Objections into the responses, whether or not express reference is made therein to

these General Objections.

## II.   OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  For each asserted claim and each accused
product, specifically identify whether the basis for the alleged infringement of each
asserted claim by each accused product is direct infringement, contributory
infringement, or inducement of infringement, and specifically describe all acts
forming the basis for the direct infringement, contributory infringement, or
inducement of infringement, including the acts of the Cochlear defendants that
allegedly contribute to, or induce, each direct infringement, identify all documents
on which you rely to support your contention, and identify all persons, other than
AMF's expert witness(es) and other than the Cochlear defendants, most
knowledgeable about such facts with information or knowledge relevant to your
contention, summarizing each person's knowledge.

**RESPONSE:**  AMF incorporates its General Objections by reference as if

set forth fully herein.  AMF further objects to this interrogatory to the extent that it

seeks information that is covered by the attorney-client privilege and/or constitutes

attorney work product.  AMF objects to this interrogatory to the extent that it

attempts to require AMF to state all facts relating to the issues addressed by this

interrogatory before AMF has had an adequate opportunity to obtain discovery

from either of the Cochlear defendants.  AMF objects to this interrogatory to the

extent it attempts to require AMF to identify persons who are not known to AMF at

this early stage of the case.  AMF further objects to this interrogatory to the extent it

attempts to require AMF to identify acts that are not known to AMF at this stage of

discovery.  AMF further objects to this interrogatory to the extent that, including all

7

discrete subparts, it constitutes more than a single interrogatory.  AMF objects to the terms "contributory infringement" and "inducement of infringement" to the extent those terms call for a legal conclusion and are subject to interpretation by the Court.  AMF objects to the phrase "persons . . . most knowledgeable about such facts with information or knowledge relevant" as being ambiguous and vague.  AMF interprets that phrase as "person . . . most knowledgeable about such facts and/or with information or knowledge relevant . . . ."  AMF objects to this interrogatory to the extent that it attempts to require AMF to identify a person or persons "most knowledgeable" about AMF's contentions.  Subject to and without waiving its specific objections and General Objections, AMF states that sales and offers for sale in the United States of various devices relating to cochlear implants and the importation of the devices into the United States coupled with the use of the devices in the United States by clinics, clinicians, and doctors infringes at least claim 10 of the '616 patent.  Through its acts, the Cochlear defendants (either individually or collectively) infringe at least claim 10 of the '616 patent, either directly, by inducement of others, or contributorily.  AMF reserves its rights to amend and/or supplement this response as it obtains additional discovery from the Cochlear defendants and from non-parties.  AMF further states:  see Claim Chart attached hereto.

8

1

2

3   Dated:  May 16, 2008       CHARLES S. BARQUIST
                               MORRISON & FOERSTER LLP
4
                               BRIAN G. BODINE
5                              PETER A. GERGELY
                               BRETT A. HERTZBERG
6                              MERCHANT & GOULD, P.C.

7

8   By: _____
                               Brett A. Hertzberg
9                              Attorneys for Plaintiff
                               ALFRED E. MANN FOUNDATION
10                             FOR SCIENTIFIC RESEARCH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

1

## CERTIFICATION

2

     I certify under penalty of perjury that the foregoing responses to

3

interrogatories are true to the best of my knowledge, information, and belief.

4

     Executed this 16th day of May, 2008.

5

6

7

                 Lawrence A. Fischer

Chief Financial Officer

8

Alfred E. Mann Foundation for

Scientific Research

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

1

### CERTIFICATE OF SERVICE

2

3
I hereby certify that I caused the following document:

4
Defendant Cochlear Ltd.'s First Set of Interrogatories to Plaintiff Alfred E.

5
Mann Foundation for Scientific Research **and Plaintiff's Objections and**

6

7
**Response to Same** to be served via e-mail on May 16, 2008, and via Federal

8
Express for delivery on May 19, 2008, to the below-named counsel.

9
Bruce G. Chapman

10
Keith Douglas Fraser
Manual C. Nelson

11
John L. Paik

12
Connolly Bove Lodge & Hutz LLP
333 S Grand Avenue, Suite 2300

13
Los Angeles, CA  90071

14

15
Attorneys for Defendants
Cochlear Corporation and Cochlear LTD.

16

17
Dated this 16th day of May, 2008

18

19
_Kaustuv M. Das_ (signature)

20
Kaustuv M. Das

21

22

23

24

25

26

27

28

14

# EXHIBIT B

Alfred E. Mann Foundation v. Cochlear Americas, et al. DAVID KELSALL, M.D.                                    12/8/2008

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

Case No. CV 07-08108 GHK (CTX)

ALFRED E. MANN FOUNDATION FOR SCIENTIFIC
RESEARCH,

Plaintiff,

v.

COCHLEAR CORPORATION and COCHLEAR LTD.,

Defendants,

COCHLEAR AMERICAS and COCHLEAR LTD.,

Counterclaimants,

v.

ALFRED E. MANN FOUNDATION FOR SCIENTIFIC
RESEARCH,

Counterdefendant.
_____

DEPOSITION OF:  DAVID KELSALL, M.D., December 10, 2008
_____


                PURSUANT TO NOTICE, the deposition of
DAVID KELSALL, M.D., was taken on behalf of the
Plaintiff at 1050 Seventeenth Street, Suite 1950,
Denver, Colorado 80265, on December 10, 2008, at
2:06 p.m., before Tina M. Stuhr, Registered
Professional Reporter and Notary Public within
Colorado.

EXHIBIT B, Page 20

Alfred E. Mann Foundation v. Cochlear Americas, et al. DAVID KELSALL, M.D.                                    12/8/2008

```
                                                              Page 2

     1                  A P P E A R A N C E S

     2    For the Plaintiff:        PETER A. GERGELY, ESQ.
                                    Merchant & Gould, P.C.
     3                              1050 Seventeenth Street
                                    Suite 1950
     4                              Denver, Colorado  80265

     5    For the Defendants:       KEITH D. FRASER, ESQ.
                                    Connolly Bove Lodge & Hutz, LLP
     6                              333 South Grand Avenue
                                    Suite 2300
     7                              Los Angeles, California  90071

     8

     9

    10

    11

    12

    13

    14

    15

    16

    17

    18

    19

    20

    21

    22

    23

    24

    25
```

EXHIBIT B, Page 21

Page 3

1                    I N D E X

2    EXAMINATION OF DAVID KELSALL, M.D.:              PAGE
     December 10, 2008
3
     By Mr. Gergely                                   4
4

5
     DEPOSITION EXHIBITS:   (Previously marked)
6
     4   Custom Sound Manual                          16
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                    Page 17
      1            MR. FRASER:  Objection.  Lacks

      2     foundation.

      3            A.   My staff would have been trained at

      4     training courses provided by the manufacturer.

      5            Q.   (BY MR. GERGELY)  Okay.  Drawing your

      6     attention to the page -- it's marked "Custom Sound

      7     User Manual 29," and in the lower right-hand corner

      8     there's a document control number called COC-2083658,

      9     and the page is headed "Intraoperative Testing."

     10            A.   I got it.

     11            Q.   Okay.  Does this page describe the

     12     impedance measurements that you and your staff take in

     13     the operating room on a cochlear implant manufactured

     14     by Cochlear Corporation?

     15            A.   Yes.

     16            Q.   Okay.  And then on the following page,

     17     there's a screen shot of an electrode array.  Have you

     18     seen that screen shot before --

     19            A.   Yes.

     20            Q.   -- or one like it?

     21            Okay.  And what does that information

     22     signify to you?

     23            A.   The screen shot shows a representation of

     24     a coiled cochlear implant inside of the cochlea, and

     25     the electrodes numbered from 1 to 22.
```

Page 18

1          Q.   And why is it important to take an

2    impedance check in the operating room?

3          A.   It's important to know whether the device

4    is functioning by conducting current on each of the 22

5    electrodes.  It rules out an out-of-box failure, just

6    to make sure that the device is functional.

7          Q.   Okay.  And have you ever had an

8    out-of-box failure detected in the operating room via

9    this technology?

10         A.   Yes.

11         Q.   Okay.  And then if there is an out-of-box

12   failure in the operating room, what's the next step?

13         A.   You generally troubleshoot it to be sure

14   that it's accurate, and if it is, in fact, an accurate

15   out-of-box failure, the device would be removed and a

16   backup device would be placed at the time of the

17   operation.

18         Q.   Okay.  So I take it at the time of the

19   operation you have some backup devices available in

20   inventory that could be installed or -- is installed

21   the right word?

22         A.   Surgically placed.  Yes, we have a backup

23   for every case in the operating room with us.

24         Q.   Okay.  And then drawing your attention to

25   "Custom Sound User Manual 35," which has the document

Alfred E. Mann Foundation v. Cochlear Americas, et al. DAVID KELSALL, M.D.                    12/8/2008

Page 29

1              I, DAVID KELSALL, M.D., do hereby certify

2      that I have read the above and foregoing deposition

3      and that the same is a true and accurate transcription

4      of my testimony, except for attached amendments, if

5      any.

6                      Amendments attached    (  ) Yes   (  ) No

7

8

9                          _____

                           DAVID KELSALL, M.D.
10

11

12

13              The signature above of DAVID KELSALL,

14      M.D., was subscribed and sworn to before me in the

15      county of _____, state of

16      _____, this _____ day of

17      _____, 2008/2009.

18

19

20                         _____

                           Notary Public
21                         My commission expires

22

23

24

25      Alfred E. Mann Foundation, 12/10/08 (ts)

Alfred E. Mann Foundation v. Cochlear Americas, et al.   DAVID KELSALL, M.D.                    12/8/2008

Page  30

REPORTER'S CERTIFICATE

STATE OF COLORADO              )
                               ) ss.
CITY AND COUNTY OF DOUGLAS )

        I, TINA M. STUHR, Registered Professional
Reporter and Notary Public, State of Colorado, do
hereby certify that previous to the commencement of
the examination, the said DAVID KELSALL, M.D., was
duly sworn by me to testify to the truth in relation
to the matters in controversy between the parties
hereto; that the said deposition was taken in machine
shorthand by me at the time and place aforesaid and
was thereafter reduced to typewritten form; that the
foregoing is a true transcript of the questions asked,
testimony given, and proceedings had.

        I further certify that I am not employed
by, related to, nor counsel for any of the parties
herein, nor otherwise interested in the outcome of
this litigation.

        IN WITNESS WHEREOF, I have affixed my
signature this 18th day of December, 2008.

        My commission expires July 28, 2009.


__X__ Reading and Signing was requested.

_____ Reading and Signing was waived.

_____ Reading and Signing is not required.

EXHIBIT C

Bruce G. Chapman (State Bar No. 164,258)
bchapman@cblh.com
Manuel Nelson (State Bar No. 229,590)
mnelson@cblh.com
John L. Paik (State Bar No. 216,024)
jpaik@cblh.com
Keith D. Fraser (State Bar No. 216,279)
kfraser@cblh.com
**CONNOLLY BOVE LODGE & HUTZ LLP**
333 S. Grand Avenue, Suite 2300
Los Angeles, California 90071
Telephone (213) 787-2500; Fax (213) 687-0498

Attorneys for Defendants and Counterclaimants
COCHLEAR CORPORATION (n/k/a
COCHLEAR AMERICAS) and COCHLEAR
LTD.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COCHLEAR CORPORATION and COCHLEAR LTD.,<br><br>　　　　　　　Defendants.<br>────────────────────<br>AND RELATED COUNTERCLAIMS. | Case No. **CV 07-08108 GHK (CTX)**<br><br>**DEFENDANTS COCHLEAR AMERICAS AND COCHLEAR LTD.'S THIRD AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>**CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO STIPULATED PROTECTIVE ORDER** |

Pursuant to Fed. R. Civ. P. 33, defendants/counterclaimants Cochlear Americas and Cochlear, Ltd. serve their third amended response to plaintiff Alfred E. Mann Foundation For Scientific Research's First Set of Interrogatories.

## General Objections

1.      Defendants/counterclaimants generally object to the definitions and instructions in Plaintiff's First Set of Interrogatories to the extent those definitions and instructions exceed the requirements of the Federal Rules of Civil Procedure. Defendants/Counterclaimants shall comply with the applicable requirements of the Federal Rules.

2.      Defendants/counterclaimants object to the definitions of "Defendant," "you," Cochlear" and "your" as rendering specific interrogatories overly broad, vague and ambiguous in view of the incorporation in the definition of individuals and entities over who defendants/counterclaimants have no control and/or current relationship.

3.      Defendants/counterclaimants object to the definitions of "AMF" and "plaintiff" as rendering specific interrogatories vague and ambiguous as having a scope which cannot be determined by defendants/counterclaimants.

4.      Defendants/counterclaimants object to the definitions of "concerning," "referring," "relating," and "describing" as rendering specific interrogatories vague and ambiguous, as well as overly broad.

2

Schulman, PhD wrote on behalf of plaintiff/counterdefendant to Jack O'Mahoney on

behalf of defendants/counterclaimants stating that defendants/counterclaimants

"Nucleus cochlear implants [of defendants/counterclaimants] utilize features that

may infringe our U.S. Patent 5,609,616."  On October 1, 2003, Mr. O'Mahoney

responded to Dr. Schulman stating "the Nucleus implants do not infringe the

patents."  Defendants/counterclaimants relied on this silence in introducing a new

generation product into the United States, namely the Nucleus® Freedom implant, in

2005.

**INTERROGATORY NO. 6:**

   Please state the factual basis for your contention that the AMF patents are

unenforceable because of inequitable conduct before the United States Patent &

Trademark Office including but not limited to providing, for each of the Allegedly

Withheld References and each of the AMF Patents, on a reference-by-reference,

patent-by-patent, and claim element-by-claim element basis, the complete factual

basis for your contention that (a) the Allegedly Withheld Reference was material, (b)

persons associated with the prosecution of the AMF Patents intentionally withheld

the reference with intent to deceive, and (c) the Allegedly Withheld References are

not cumulative to references that were already before the examiner.

**RESPONSE TO INTERROGATORY NO. 6:**

   Defendants/counterclaimants object to this interrogatory as premature in view

of the fact that discovery has just begun and defendants'/counterclaimants' analysis is continuing.  Subject to this and the general objections, defendants/counterclaimants respond as follows:

During prosecution of each of the applications that matured into the AMF patents, the named inventors and, at least in some instances, their attorney failed to disclose the following prior art references:  U.S. Patent No. 3,942,535 ("the '535 reference"), issued to Joseph H. Schulman on March 9, 1976; U.S. Patent No. 4,082,097 ("the '097 reference"), issued to Alfred E. Mann and Joseph H. Schulman on April 4, 1978; U.S. Patent No. 4,197,850 ("the '850 reference"), issued to Joseph H. Schulman and Jozef I. Kie Sioe Tan on April 15, 1980; U.S. Patent No. 4,220,156 ("the '156 reference"), issued to Joseph H. Schulman and Wayne A. Morgan on September 2, 1980; and U.S. Patent No. 4,223,679 ("the '679 reference"), issued to Joseph H. Schulman, Brian M. Mann and Russell R. Beane on September 23, 1980. The '535 reference, the '097 reference, the '850 reference, the '156 reference and the '679 reference were known to at least Joseph H. Schulman (a named inventor on all of the AMF patents) at the time of the prosecution of each of the applications that matured into the AMF patents.  The '535 reference, the '097 reference, the '850 reference, the '156 reference and the '679 reference would have been material to the prosecution of each of the applications that matured into the AMF patents because each of the references discloses an implantable human tissue stimulator and the use of back telemetry, which is the subject matter of the AMF patents, and because the

DEFS' THIRD AMENDED RESPONSE TO FIRST SET INTERROGATORIES
**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

references demonstrate the applicability of pacemaker prior art to the AMF patents and contradict statements made during the prosecution history of at least one of the applications that matured into the AMF patents, including statements that such prior art was not relevant.  Moreover, the inventor and/or the attorneys never otherwise disclosed that at least one of the inventors was an expert in pacemaker technology.  See e.g. testimony of B. Gold dated 12/18/08.  The inventors and/or attorneys on the AMF patents failed to submit the '535 reference, the '097 reference, the '850 reference, the '156 reference and the '679 reference to the PTO during the prosecution of the applications that matured into the AMF patents with the intent to deceive the PTO.

During the prosecution of each of the applications that matured into U.S. Patent No. 5,531,774 ("the '774 patent"), U.S. Patent No. 5,609,616 ("the '616 patent"), U.S. Patent No. 5,603,726 ("the '726 patent"), U.S. Patent No. 5,776,172 ("the '172 patent"), and U.S. Patent No. 5,938,691 ("the '691 patent"), the named inventors and their attorney failed to disclose McDermott, "An Advanced Multiple Channel Cochlear Implant," IEEE Transactions on Biomedical Engineering, vol. 36:7, pp. 789-797 (July 1989) ("the McDermott article").  The McDermott article was known to the named inventors or their attorney at the time of the prosecution of each of the applications that matured into the '774, '616, '726, '172 and '691 patents. The McDermott article would have been material to the prosecution of each of the applications that matured into the '774, '616, '726, '172 and '691 patents because the

DEFS' THIRD AMENDED RESPONSE TO FIRST SET INTERROGATORIES
**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

reference discloses an implantable Cochlear stimulator having back telemetry and provides more explicit details relating to patentability than that provided by the prior art that was disclosed.  Moreover, the McDermott article directly contradicted the reasons for allowance provided by the examiner in the application that led to the '616 patent, yet was cited in the application that led to the '307 patent where it was largely irrelevant.  The named inventors or their attorney failed to submit the McDermott article to the PTO during the prosecution of each of the applications that matured into the '774, '616, '726, '172 and '691 patents with the intent to deceive the PTO.

During the prosecution of each of the applications that matured into the '774 patent, U.S. Patent No. 5,569,307 ("the '307 patent"), the '172 patent and the '691 patent, the named inventors and/or their attorneys of record failed to disclose U.S. Patent No. 4,232,679, issue to Joseph H. Schulman on November 11, 1980.  U.S. Patent No. 4,232,679 was known to at least Joseph H. Schulman (a named inventor of the AMF patents) at the time of the prosecution of each of the applications that matured into the '774, '307, '172 and '691 patents.  U.S. Patent No. 4,232,679 would have been material to the prosecution of each of the applications that matured into the '774, '307, '172 and '691 patents because it discloses an implantable human tissue stimulator having back telemetry, which is the subject matter of the '774, '307, '172 and '691 patents, and provides significant details relating to patentability not provided by prior art that was disclosed.  The named inventors or their attorney failed to submit U.S. Patent No. 4,232,679 to the PTO during the prosecution of the

applications that matured into the '774, '307, '172 and '691 patents with the intent to deceive the PTO.

During prosecution of each of the applications that matured into the '726, '774, '307, '172, and '691 patents, the named inventors and/or their attorneys of record failed to disclose U.S. Patent No. 4,809,697, filed October 14, 1987 and issued in March 7, 1989.  U.S. Patent No. 4,809,697 was known at the time of the prosecution of each of the applications that matured into the '726, '774, '307, '172, and '691 patents to at least their attorney Bryant R. Gold, the attorney who prosecuted the AMF patents.  U.S. Patent No. 4,809,697 would have been material to the prosecution of each of the applications that matured into the '726, '774, '307, '172, and '691 patents because it discloses an implantable human tissue stimulator having back telemetry, which is the subject matter of the '726, '774, '307, '172, and '691 patents, and provides significant details relating to patentability not provided by prior art that was disclosed.  At least Bryant R. Gold failed to submit U.S. Patent No. 4,809,697 to the PTO during the prosecution of the applications that matured into the '726, '774, '307, '172, and '691 patents with the intent to deceive the PTO.

**INTERROGATORY NO. 7:**

Please provide a claim chart that states, on a patent-by-patent and claim element-by-claim element basis, your interpretation of each claim and identify (a) any plain or ordinary meaning or any special or uncommon meaning you attribute to

DEFS' THIRD AMENDED RESPONSE TO FIRST SET INTERROGATORIES
**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

5,609,616."[1]  On October 1, 2003, Mr. O'Mahoney responded to Dr. Schulman stating "the Nucleus implants do not infringe the patents."  Plaintiff/counterdefendant did not respond to this denial.


DATED:  January 14, 2009.          Connolly Bove Lodge & Hutz LLP


                                   By: _____
                                          Bruce G. Chapman

                                   Attorneys for Defendants and
                                   Counterclaimants Cochlear Corporation
                                   (n/k/a Cochlear Americas) and Cochlear
                                   Ltd.

---

[1] Cochlear was aware of the '616 patent and its subject matter by July 2003, when it received the letter from Dr. Schulman, and aware of the '691 patent and its subject matter by June 2004.

45

## CERTIFICATE OF SERVICE

I, Dori Dellisanti, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause.  My business address is Connolly Bove Lodge & Hutz LLP, 333 South Grand Avenue, Suite 2300, Los Angeles, California 90071.

On January 14, 2009, I served the foregoing documents described as: **DEFENDANTS COCHLEAR AMERICAS AND COCHLEAR LTD.'S THIRD AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** on the following person in this action by placing a true copy thereof enclosed in sealed envelope addressed as follows:

| | |
|---|---|
| Charles S. Barquist, Esq.<br>Morrison & Foerster LLP<br>555 W. Fifth St.,<br>Los Angeles, CA 90013-1024 | Attorneys for Plaintiff Alfred E. Mann Foundation for Scientific Research<br><br>Tel:  (213) 892-5200<br>Email:  cbarquist@mofo.com |
| Brian G. Bodine, Esq.<br>Kaustuv M. Das, Esq.<br>Merchant & Gould, P.C.<br>701 Fifth Ave., Suite 4100<br>Seattle, WA 98104 | Attorneys for Plaintiff Alfred E. Mann Foundation for Scientific Research<br><br>Tel:  (206) 342-6200<br>Email:  bbodine@merchantgould.com<br>KDas@merchantgould.com |
| Peter A. Gergely, Esq.<br>Merchant & Gould, P.C.<br>1050 17th St., Suite 1950<br>Denver, CO 80265-0100 | Attorneys for Plaintiff Alfred E. Mann Foundation for Scientific Research<br><br>Tel:  (303) 357-1670<br>Email:  pgergely@merchantgould.com |

**[X] BY MAIL**  I am readily familiar with the firm's practice regarding collection and processing of correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[ ] BY PERSONAL SERVICE**:  I caused such envelope to be delivered by hand to the addressee(s) as stated above.

**[ ] FEDERAL EXPRESS**:  I am readily familiar with the office practice of Connolly Bove Lodge & Hutz LLP for collecting and processing correspondence for overnight delivery by Federal Express.  Such practice is that when correspondence for overnight delivery by Federal Express is deposited with the Connolly Bove Lodge & Hutz LLP personnel responsible fore delivering correspondence to Federal Express, such correspondence is delivered to a Federal Express location or to an authorized courier or driver authorized by Federal Express to receive documents or deposited at a facility regularly maintained by Federal Express for receipt of documents on the same day in the ordinary course of business.

DEFS' THIRD AMENDED RESPONSE TO FIRST SET INTERROGATORIES
**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

EXHIBIT C, Page 35

**[X] BY E-Mail**  Based upon a mutual agreement of the parties, I caused the
document(s) to be sent to the person(s) at the e-mail address(es) indicated above.

**[X] FEDERAL**  I declare that I am employed in the office of a member of the bar of
this court at whose direction the service was made.

I hereby declare under penalty of perjury that the foregoing is true and correct.
Executed on January 14, 2009, at Los Angeles, California.

Dori Dellisanti
_____
Name

_____
Signature

DEFS' THIRD AMENDED RESPONSE TO FIRST SET INTERROGATORIES
**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# EXHIBIT D

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION


ALFRED E. MANN FOUNDATION FOR
SCIENTIFIC RESEARCH,

      Plaintiff,

                        Case No.
      vs.                CV 07-08108 GHK (CTx)

COCHLEAR CORPORATION and
COCHLEAR LTD.,

      Defendants.

_____

AND RELATED CROSS-ACTION.
_____

CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF JOSEPH H. SCHULMAN, Ph.D.

Santa Clarita, California

Tuesday, December 2, 2008


Reported by:
RENEE D. ZEPEZAUER, CRR
CSR No. 6275

JOB No. 99860

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 2

1                 UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4   ALFRED E. MANN FOUNDATION FOR
    SCIENTIFIC RESEARCH,

5
              Plaintiff,

6                                        Case No.
              vs.                        CV 07-08108 GHK (CTx)

7

    COCHLEAR CORPORATION and

8   COCHLEAR LTD.,

9             Defendants.

10

11   _____

     AND RELATED CROSS-ACTION.

12   _____

13

14             Videotaped Deposition of JOSEPH H.

15        SCHULMAN, Ph.D., taken on behalf of

16        Defendants, at 25134 Rye Canyon Loop,

17        Suite 200, Santa Clarita, California,

18        beginning at 10:12 a.m. and ending at

19        4:03 p.m., Tuesday, December 2, 2008,

20        before RENEE D. ZEPEZAUER, Certified

21        Shorthand Reporter No. 6275.

22

23

24

25

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 3

```
 1   APPEARANCES:

 2

 3   For Plaintiff:

 4           MERCHANT & GOULD
             BY:  BRIAN G. BODINE
 5           Attorney at Law
             701 Fifth Avenue, Suite 4100
 6           Seattle, Washington  98104
             (206) 342-6200
 7

 8   For Defendants and Counterclaimants Cochlear Corporation
     (n/k/a Cochlear Americas) and Cochlear Ltd.:
 9
             CONNOLLY BOVE LODGE & HUTZ LLP
10           BY:  BRUCE G. CHAPMAN
             Attorney at Law
11           333 South Grand Avenue, Suite 2300
             Los Angeles, California  90071
12           (213) 787-2500

13   The Videographer:

14           CHARLES GUILLEN
15           SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
             20 Corporate Park, Suite 350
16           Irvine, California  92606
             (877) 955-3855
17

18   Also Present:

19                   MALCOLM ROMANO

20

21

22

23

24

25
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 110

15:03:36    1          (Defendants' Exhibit 1062 was marked.)

            2    BY MR. CHAPMAN:

            3        Q    Do you recognize Exhibit 1062?

            4        A    I see what it says.  What this is -- this is

15:04:02    5    later.  Later.  '93.  '93.  Okay.  I see what it says.

            6        Q    Let me just ask you a couple more direct

            7    questions.  Exhibit 1062 is entitled "Clarion 2

            8    Feasibility Study"; correct?

            9        A    Right.  Yes.

15:04:34   10        Q    What is the Clarion?

           11        A    I don't know -- I'd have to read it to tell you

           12    what this was --

           13        Q    Okay.

           14        A    -- because there's more than one version.

15:04:45   15        Q    Okay.  Well, let me ask this.  Was there

           16    something known as Clarion 1?

           17        A    Clarion 1 was our original.  But even that had

           18    little changes made on it.

           19        Q    Clarion 1 was the original cochlear implant?

15:05:05   20        A    (No audible response.)

           21        Q    Is Clarion 2 referring to a next generation?

           22        A    I'd have to read it to find out.

           23        Q    Okay.  Well, take a moment and look at it.

           24        A    What's the question?

15:08:46   25        Q    My question is, is Clarion 2 the next

SARNOFF  COURT  REPORTERS  AND  LEGAL  TECHNOLOGIES
877.955.3855

EXHIBIT D, Page 40

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 111

15:08:48    1   generation of cochlear implant?

            2       A    Well, it was -- it was a next generation

            3   design, yes.

            4       Q    In 1993 were you working on the next generation

15:08:59    5   design for the cochlear implant?

            6       A    I conceived of it and it was obvious, to me

            7   obvious, not other people, that this is the way to go.

            8       Q    And you appear as an author on Exhibit 1062 --

            9       A    Say again.

15:09:25   10       Q    You appear as an author on Exhibit 1062;

           11   correct?

           12       A    Yes.  I brought in Ron Lebel to manage it and

           13   Yitzhak -- the best managers I had.

           14       Q    In 1993 was Ron Lebel at AMF?

15:09:42   15       A    Yes.  He was an employee of -- hired him

           16   originally into MiniMed and then he went to Advanced

           17   Bionics.  This was Advanced Bionics.  '93. '93.  Yes.

           18       Q    And was Yitzhak Zilberman at Advanced Bionics

           19   then?

15:10:05   20       A    Yes, he was at Advanced Bionics.  We had --

           21   he -- Yitzhak Zilberman went right to Advanced Bionics

           22   when I set up the team, I took half my team and set up

           23   Advanced Bionics under Jeff Greiner.

           24       Q    And 1993 you were still at AMF; correct?

15:10:25   25       A    Correct.  But ...

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 112

15:10:33   1      Q    I'm sorry.

2      A    That's okay.  Never mind.

3      Q    Okay.  Can we mark this next document Exhibit

4    1063, please.

15:10:57   5           (Defendants' Exhibit 1063 was marked.)

6    BY MR. CHAPMAN:

7      Q    Do you recognize Exhibit 1063?

8      A    I don't remember the document, but I -- I -- I

9    know what -- I think I know what this improved human

15:11:23  10    tissue stimulator is.  I'm not even sure of that.  I'd

11    have to look at the follow-on documents.

12      Q    Okay.

13      A    Everything was called a human tissue

14    stimulator.

15:11:33  15      Q    Exhibit 1063 is a letter from Bryant Gold to

16    you dated May 18, 1993; correct?

17      A    Yeah.  Yeah.  Yeah.  That's what this is, but

18    there's a patent -- this refers to a patent, but I don't

19    remember -- I'd have to look at it, the patent to know

15:11:51  20    what it's about.

21      Q    I understand that.  Is -- who is Bryant Gold?

22      A    Bryant Gold is a patent attorney.

23      Q    Was he a patent attorney for AMF?

24      A    For AMF back then in the early '90s or

15:12:04  25    something.  Somewhere along the way he transferred over

SARNOFF  COURT  REPORTERS  AND  LEGAL  TECHNOLOGIES
877.955.3855

JOSEPH H. SCHULMAN, PH.D.          12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 113

15:12:07    1    to be a patent attorney for AB.

            2         Q    AB being Advanced Bionics?

            3         A    Uh-huh.

            4         Q    Were -- were you the person at AMF responsible

15:12:16    5    for communicating with Bryant Gold?

            6         A    Yes.

            7         Q    And did Bryant Gold send you copies of actions

            8    by the patent office on AMF patent applications?

            9         A    For AMF he reviewed it with me.  I don't know

15:12:40   10    if he sent -- you know, called me to his office or

           11    whatever.

           12         Q    What -- was Bryant Gold located at AMF at the

           13    time?

           14         A    Well, he lives in Ramona and he travels out

15:12:50   15    here and visits us and sometimes we do it by telephone.

           16    Oh, and he had an office -- sorry.  At one time he had

           17    an office in La Jolla, a few blocks from the university.

           18         Q    So documents he received from the patent office

           19    he might bring with him rather than mail them to you; is

15:13:10   20    that --

           21         A    Yeah.  Yeah.  Or faxed whatever.

           22         Q    I'd like to have this next document marked as

           23    Exhibit 1064, please.

           24              (Defendants' Exhibit 1064 was marked.)

15:13:38   25    BY MR. CHAPMAN:

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 114

15:13:38  1         Q    Do you recognize Exhibit 1064?

          2         A    No.  I'm sorry.  I have to read this one.

          3         Q    Okay.

          4         A    I don't know where Bryant College is.  Oh,

15:14:37  5    these are all the same documents.

          6         Q    Yes.  I believe they were produced to us as a

          7    single document as multiple pages of the same thing.

          8         A    I just don't remember.

          9         Q    You don't remember Exhibit 1064?

15:14:51 10         A    No.  The -- I heard lots of lectures and I

         11    asked lots of questions.

         12         Q    Exhibit 1064 appears to be a fax from --

         13         A    This is 10-4-93.  Oh, 1064, sorry.

         14         Q    Yeah, Exhibit 1064 appears to be a fax from

15:15:15 15    Hugh McDermott to you or R. Labeo; correct?

         16         A    I don't know who Labeo is.

         17         Q    And it's dated October 4, 1993; correct?

         18         A    This is Ken -- Ron Lebel, I bet.  I have no

         19    idea.  '93.

15:15:39 20         Q    Does Exhibit 1064 refresh your recollection as

         21    to whether you spoke to Hugh McDermott?

         22         A    I have no idea.  Sorry.  I can't help you on

         23    this at all.

         24         Q    Do you have any reason to believe that you did

15:15:55 25    not receive a copy of Exhibit 1064?

EXHIBIT D, Page 44

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 115

15:15:58   1        A    No.  I assume it's a real document.  I just

            2    don't remember it.

            3        Q    I take it --

            4        A    Do you know who Emily Tobey is?  I don't know

15:16:11   5    who she is either.

            6        Q    Exhibit 1064 is not the document that you

            7    mentioned -- at the beginning you mentioned a document

            8    that you saw a note that mentioned Hugh McDermott.

            9        A    Yeah.  No.

15:16:27  10        Q    That's not it?

           11        A    No.

           12        Q    I'd like to have this next document marked as

           13    Exhibit 1065, please.

           14             (Defendants' Exhibit 1065 was marked.)

15:17:10  15    BY MR. CHAPMAN:

           16        Q    Do you recognize Exhibit 1065?

           17        A    No.  But let me read it.

           18             So what is your question?  I'm sorry.

           19        Q    Do you recognize Exhibit 1065?

15:19:50  20        A    I don't recognize it, but after reading I think

           21    I know what it is.

           22        Q    Is it a document that you wrote?

           23        A    Yes, most likely I wrote it.

           24        Q    And did you write it in around May, 1984?

15:20:00  25        A    I assume that's the date that's on there,

Page 116

```
15:20:03    1   May 9, 1994.

            2        Q    Okay.  What is -- what is Exhibit 1065?

            3        A    This is a proposal to most likely Advanced

            4   Bionics that this should be considered as a next

15:20:18    5   generation device to stay competitive.  That's what it

            6   looks like to me.

            7        Q    Okay.  And on the second page, the top

            8   paragraph is labeled D refers to a very interesting

            9   paper by Hugh McDermott.  Does that refresh your

15:20:42   10   recollection at all regarding Hugh McDermott?

           11        A    I -- I really don't remember -- oh, there's

           12   talk of an MDX -- so I might have gotten a copy of the

           13   paper.  I don't think I was at the talk itself.  I don't

           14   remember.

15:21:01   15        Q    In the -- I guess it's the third full paragraph

           16   there's a sentence that says, "I fully expect that a

           17   headpiece speech processor is planned for the next

           18   generation Nucleus cochlear implant."  Do you see that?

           19   Do you see that sentence?

15:21:20   20        A    Yeah.  Right.  Sounded like that from the

           21   paper.

           22        Q    Did you follow developments with the nuclear

           23   cochlear implants?  Strike that.

           24             Did you follow up on developments with the

15:21:34   25   Nucleus cochlear implants?
```

JOSEPH H. SCHULMAN, PH.D.                12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 117

15:21:36   1        A    Only if I heard about it at a -- at a meeting.

2        Q    Do you understand Nucleus to be the brand --

3   the brand name for Cochlear Limited --

4        A    Cochlear, yes, same company.

15:21:54   5        Q    And starting at the fourth page of Exhibit 1065

6   there's a chart.  And there's a --

7        A    Which page are you on?

8        Q    The fourth page of Exhibit 1065.

9        A    The fourth?

15:22:15  10        Q    Yes.

11        A    Fourth page of the document?

12        Q    Of the document.

13        A    Sorry.  Okay.  Yeah.

14        Q    Do you see a column in that chart, "competition

15:22:27  15   as of 1994"?

16        A    Yes.

17        Q    Competition to who?

18        A    Well, I guess N is Nucleus.  It says here B is

19   Belgium.  A is Austria.  And F is France.

15:22:46  20        Q    Okay.  What's -- let's -- whose -- what's

21   Nucleus referring to?

22        A    That's the Cochlear -- Australian company.

23        Q    Okay.  What's Belgium referring to?

24        A    There was a company in Belgium.

15:22:59  25        Q    Is that -- is that also sometimes known as the

SARNOFF  COURT  REPORTERS  AND  LEGAL  TECHNOLOGIES
877.955.3855

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 135

1

2

3

4

5

6

7

8

9          I, JOSEPH H. SCHULMAN, Ph.D., do hereby declare

10   under penalty of perjury that I have read the foregoing

11   transcript; that I have made any corrections as appear

12   noted, in ink, initialed by me; that my testimony as

13   contained herein, as corrected, is true and correct.

14          EXECUTED this _____ day of _____,

15   200____, at _____, _____.
                        (City)                (State)

16

17

18          _____

19                 JOSEPH H. SCHULMAN, Ph.D.

20

21

22

23

24

25

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT D, Page 48

JOSEPH H. SCHULMAN, PH.D.                    12/02/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

Page 136

1           I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3           That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that any

5     witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand which

8     was thereafter transcribed under my direction; that the

9     foregoing transcript is a true record of the testimony

10    given.

11          Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [X ] was [  ] was not requested.

15          I further certify I am neither financially

16    interested in the action nor a relative or employee of any

17    attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated: _____

22

23               _____
                 RENEE D. ZEPEZAUER
                 CSR #6275
24

25

# EXHIBIT E

# FITCH, EVEN, TABIN & FLANNERY

MORGAN L. FITCH, JR.
FRANCIS A. EVEN
JULIUS TABIN *
JOHN F. FLANNERY
ROBERT B. JONES
JAMES J. SCHUMANN
R. STEVEN FINKSTAFF
JAMES J. HAMILL
PHILLIP H. WATT
TIMOTHY E. LEVSTIK
JOSEPH E. SHIPLEY
BRYANT R. GOLD *
ROBERT J. FOX
KENNETH H. SAMPLES
STEPHANIE L. SEIDMAN
PHILIP T. PETTI
DAVID A. CROSSMAN
DONALD A. PETERSON
JOHN J. CAVANAUGH
JAMES R. MCBRIDE
JAMES A. SPROWL
BRUCE R. MANSFIELD
STANLEY J. TOMSA
JOHN S. PANIAGUAS
JOSEPH T. NABOR

*Admitted to California Bar

4250 EXECUTIVE SQUARE, SUITE 510
LA JOLLA, CALIFORNIA 92037
TELEPHONE (619) 552-1311
TELEFAX (619) 552-0095

LOUIS BERNAT
ROBERT R. MEADS *
OF COUNSEL

SCOTT B. FEDER
JACK D. NIMZ
DANIEL J. KRIEGER
MARK A. HAMILL
PERRY J. HOFFMAN
RICHARD A. KABA

135 SOUTH LA SALLE STREET, SUITE 900
CHICAGO, ILLINOIS 60603-4277
TELEPHONE (312) 372-7842

May 18, 1993

150-USA

Dr. Joseph H. Schulman
Alfred E. Mann Foundation
15700 San Fernando Rd.
Sylmar, CA  91342

RE:   Schulman, IMPROVED HUMAN TISSUE STIMULATOR
      S.N. 08/023,584; Filed 2/26/93
      CIP of 07/752,069; Filed 8/26/91
      FETF File No. 54234

Dear Joe:

    Enclosed for your files please find a copy of the Petition to
Accord Filing Date and related documents which were recently filed
with the U.S. Patent & Trademark Office relative to the above-
identified patent application.

    Please contact our office should you have any questions and/or
comments relative to this matter.

                         Very truly yours,

                         FITCH, EVEN, TABIN & FLANNERY

                         Bryant R. Gold

BRG/cc
Encls.
cc:  FETF Chicago
     Jeff Greiner (w/encls.)

H:\54234xjs.001

Defendant's EXHIBIT 1063
WITNESS: Schulman, Ph.D.
PAGE 1 OF
RENEE D. ZEPEZAUER, 6275
DATE: 12-2-08

*Established in 1859*