**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALFRED E. MANN FOUNDATION FOR       )     Case No. CV 07-8108 FMO (SHx)
SCIENTIFIC RESEARCH, et al.,        )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )
                                    )
COCHLEAR CORPORATION, et al.,       )
                                    )
            Defendants.             )
_____     )

**PRELIMINARY JURY INSTRUCTIONS**

Dated this 13th day of January, 2014.


                                    _____
                                                /s/
                                        Fernando M. Olguin
                                      United States District Judge

# JURY INSTRUCTION NO. 1

## Duty of Jury

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**JURY INSTRUCTION NO. 2**

**BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 3**

**BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 4**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the lawyers have agreed.

# JURY INSTRUCTION NO. 5

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they will say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 6**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**JURY INSTRUCTION NO. 7**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**JURY INSTRUCTION NO. 8**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

# JURY INSTRUCTION NO. 9

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

      1.    the opportunity and ability of the witness to see or hear or know the things testified to;

      2.    the witness's memory;

      3.    the witness's manner while testifying;

      4.    the witness's interest in the outcome of the case and any bias or prejudice;

      5.    whether other evidence contradicted the witness's testimony;

      6.    the reasonableness of the witness's testimony in light of all the evidence; and

      7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 10**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would

require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**JURY INSTRUCTION NO. 11**

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**JURY INSTRUCTION NO. 12**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**JURY INSTRUCTION NO. 13**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**JURY INSTRUCTION NO. 14**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts to be placed in evidence in this trial that will now be read to you. You should therefore treat these facts as having been proved.

**JURY INSTRUCTION NO. 15**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  The deposition of that person may be used at the trial.

If any deposition testimony is provided, you should consider deposition testimony presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

If the deposition is read to you, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**JURY INSTRUCTION NO. 16**

**IMPEACHMENT EVIDENCE-WITNESS**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**JURY INSTRUCTION NO. 17**

**USE OF INTERROGATORIES OF A PARTY**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**JURY INSTRUCTION NO. 18**

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**JURY INSTRUCTION NO. 19**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**JURY INSTRUCTION NO. 20**

**CHARTS AND SUMMARIES IN EVIDENCE**


Certain charts and summaries may be received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**JURY INSTRUCTION NO. 21**

**WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly

23

1   known, or used in a publicly accessible way in this country, or that were patented or described in

2   a publication in any country.  The examiner considers, among other things, whether each claim

3   defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the

4   prior art that the examiner considered; this list is called the "cited references."

5          After the prior art search and examination of the application, the patent examiner then

6   informs the applicant in writing what the examiner has found and whether any claim is patentable,

7   and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the

8   examiner rejects the claims, the applicant then responds and sometimes changes the claims or

9   submits new claims.  This process, which takes place only between the examiner and the patent

10  applicant, may go back and forth for some time until the examiner is satisfied that the application

11  and claims meet the requirements for a patent.  The papers generated during this time of

12  communicating back and forth between the patent examiner and the applicant make up what is

13  called the "prosecution history."  All of this material becomes available to the public no later than

14  the date when the patent issues.

15         The fact that the PTO grants a patent does not necessarily mean that any invention claimed

16  in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had

17  available to it all the information that will be presented to you.  A person accused of infringement

18  has the right to argue here in federal court that a claimed invention in the patent is invalid because

19  it does not meet the requirements for a patent.

20

21

22

23

24

25

26

27

28

# JURY INSTRUCTION NO. 22

## SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The plaintiffs here are the Alfred Mann Foundation, which I will refer to as the Foundation, and Advanced Bionics LLC.  I will refer to the Foundation and Advanced Bionics collectively as the Plaintiffs.

The defendants are Cochlear Americas and its Australian parent company, Cochlear LTD.  I will refer to Cochlear Americas and Cochlear LTD collectively as the Cochlear Defendants.

This is an action for patent infringement based on two United States patents owned by the Foundation and exclusively licensed to Plaintiff Advanced Bionics, LLC.  The patents involved in this case are:

- United States Patent No. 5,609,616, entitled "Physician's Testing System and Method for Testing Implantable Cochlear Stimulator."  For convenience, the parties and I will often refer to this patent as the '616 patent; and,

- United States Patent No. 5,938,691, entitled "Multichannel Implantable Cochlear Stimulator."  For convenience, the parties and I will often refer to this patent as the '691 patent.

For convenience, the parties and I will sometimes refer to the two patents involved in this case as the "patents in suit."

The Foundation filed suit in this court seeking money damages from the Cochlear Defendants for allegedly infringing the patents in suit by making, using, selling, offering for sale in or importing into the United States products and methods that the Foundation argues are covered by claims 1 and 10 of the '616 patent, and claims 6 and 7 of the '691 patent.  The Foundation also argues that the Cochlear Defendants have actively induced infringement of these claims by others and contributed to the infringement of these claims by others.

For convenience, I will sometimes refer to claims 1 and 10 of the '616 patent as the "Asserted Claims of the '616 patent."  Likewise, I will sometimes refer to claims 6 and 7 of the '691 patent as the "Asserted Claims of the '691 patent."  When I refer to the "Asserted Claims" of the patents in suit, I mean to include all four of these claims.

The products and methods that are alleged to infringe are cochlear implants, external processors, and diagnostic tools and calibration procedures associated with: (i) the Nucleus 24 (CI24 series) cochlear implants; (ii) the Nucleus Freedom (CI24RE series and CI422) cochlear implants; (iii) the Nucleus 5 (CI500 series) cochlear implants; (iv) the Sprint (SP5) sound processors; (v) the Freedom (SP12) sound processors; (vi) the Nucleus 5 (SP15) sound processors; (vii) the WinDPS software; and (viii) the Custom Sound software.  For convenience, I will sometimes refer to these products as the "Accused Products."

The Cochlear Defendants deny that they have directly or indirectly infringed any of the claims of the patents in suit.  The Cochlear Defendants also argue that the claims of the patents in suit are invalid.  I will instruct you later as to the ways in which a patent claim may be invalid.  The Cochlear Defendants also argue that the '616 patent is unenforceable due to inequitable conduct.  I will instruct you later as to the ways in which a patent may be unenforceable due to inequitable conduct.

You may hear evidence that the Cochlear Defendants have their own patent(s) or that the Cochlear Defendants improved on the patents in suit.  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case.  Meanwhile, please keep an open mind.

Your job will be to decide whether any of the asserted claims of the patents in suit have been infringed and whether those claims are invalid.  If you decide that any claim of either of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the Foundation to compensate it for the infringement.  In that case, you will also need to make a finding as to whether the infringement was willful.  If you decide that any

1 | infringement was willful, that decision should not affect any damage award you give.  I will take
2 | willfulness into account later.
3 |
4 |
5 |
6 |
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**JURY INSTRUCTION NO. 23**

**PATENT LAW GENERALLY**

Under the patent law of the United States:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of the U.S. patent laws.

Once a patent is issued, the law confers upon the owner of the patent the right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States beginning on the date on which the patent issues and at the end of the patent's term.  In this case, the '616 patent issued on March 11, 1997 and will expire on March 11, 2014.  The '691 patent issued on August 17, 1999, and expired on September 22, 2009.  Infringement of a patent occurs whenever any person without authority makes, uses, offers to sell, or sells the patented invention anywhere in the United States during the term of the patent.

**JURY INSTRUCTION NO. 24**

**DESCRIPTION OF THE PATENT CLAIMS**

A patent is a document consisting of a specification, a claim or claims that are part of the specification, drawings and an oath supplied by the applicant.  A drawing is required when it is necessary to understand the subject matter sought to be patented.

The specification must contain an adequate written description of the invention and the manner and process of making and using the invention.  The specification must conclude with one or more claims.

Claims are numbered paragraphs defining in words the inventor's rights by marking the limits or boundaries of the invention claimed to have been invented.  The patent claims must define with precision the particular thing claimed to have been invented so the public will know what the thing is and be able to avoid infringing the patent.

The patent claims define the exact limits or nature of the invention; it is only the claims of the patent that can be infringed.  Each of the claims must be considered individually.  You may find infringement when only one claim of a patent is infringed.  Before you decide whether the Cochlear Defendants have infringed any of the claims of the patents in suit or whether the claims are invalid, you will need to understand the patent claims.  The scope of the patent claims is a question of law for me.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

As a matter of law, the meaning and scope of the claims of the patents in suit are for the Court to decide, and all of them will be provided to you during the case.  The parties and/or witnesses may also discuss some or all of the constructions that I have previously given to them as they present their evidence in the case.

**JURY INSTRUCTION NO. 25**

**PATENTABLE INVENTION**

The three basic elements required in order to be a "patentable invention" are:

First:  Novelty-the invention should disclose something new.  In order to be "new," as that word is used in the patent laws, the achievement must be either one that produces an unusual or improved or advanced result, which was unknown to the same prior art at the time of the claimed invention; or the achievement must be one that produces an old result in an unusual or substantially more efficient, or more economical way.  If a single prior art reference discloses each and every element of the claim, there is no novelty.  However, to be patentable, an invention does not have to be better than the prior art-just different.

Second:  Utility-the invention should be useful.  In order to be "useful," as that word is used in the patent laws, the achievement must have practical application or utility in the same art.  The achievement must operate or function in the manner claimed and produce a useful result calculated by the invention.

Third:  Nonobviousness-the subject matter of the invention must not be "obvious" to a person having ordinary skill in the pertinent art at the time the invention was made.

Thus, novelty, utility and nonobviousness that add or contribute to the sum of useful knowledge are inherent requisites in a patent in order for it to promote progress of the useful arts.

**JURY INSTRUCTION NO. 26**

**OUTLINE OF TRIAL**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.

The Foundation will present its evidence on its contentions that some of the claims of the two patents in suit have been infringed by the Cochlear Defendants, and that the alleged infringement of the asserted patents was willful.  These witnesses will be questioned first by the Foundation's counsel in what is called direct examination.  After the direct examination of a witness is completed, the counsel for the Cochlear Defendants will have an opportunity to cross-examine the witness.  To prove infringement of an Asserted Claim, the Foundation must persuade you by a preponderance of the evidence that the Cochlear Defendants have infringed that claim.  The Foundation must establish willful infringement by clear and convincing evidence.

After the Foundation has presented its witnesses, the Cochlear Defendants will call their witnesses, who will also be examined and cross-examined.  The Cochlear Defendants will present their evidence that the claims of the patents in suit are invalid.  To prove invalidity of any claim, the Cochlear Defendants must present clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, the Cochlear Defendants will present evidence responding to the Foundation's claims of infringement and willfulness.  The Cochlear Defendants will also present evidence of inequitable conduct by the Foundation.

The Foundation will then return and will put on evidence responding to the Cochlear Defendants contentions that the claims of the two patents in suit are invalid and that the '616 patent is unenforceable for inequitable conduct.  The Foundation will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by the Cochlear Defendants of non-infringement or lack of willfulness.

Finally, the Cochlear Defendants will have the option to put on "rebuttal" evidence to any evidence offered by the Foundation on the invalidity of the claims of the two patents in suit and the inequitable conduct issue.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. After the instructions and closing arguments, you will then decide the case.