1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

12   Alfred E. Mann Foundation for
Scientific Research, *et al.*,

Case No. 2:07-cv-08108-FMO-SHx

13

**FINAL PRETRIAL
CONFERENCE ORDER**

Plaintiffs,

14

15        vs.

16   Cochlear Corporation, et al.,

17                Defendants.

18

19        Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16,

IT IS ORDERED:[1]

20

21        1. The parties are:

22        • Plaintiff Alfred E. Mann Foundation for Scientific Research ("the

23          Foundation");

24        • Involuntary Plaintiff Advanced Bionics, LLC ("Advanced Bionics");

25          and

26

27   _____

[1] References to the pretrial filings in this Order are in reference to the parties' First Amended pretrial filings pursuant to the court's Order Re: Pretrial Filings, filed December 23, 2013 (Document No. 346), unless otherwise specified.

28

- Defendants Cochlear Corporation (n/k/a Cochlear Americas) and Cochlear Limited ("Cochlear Defendants").

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

- Plaintiff's First Amended Complaint for Patent Infringement, Dkt. 164;
- Defendants Cochlear Corporation and Cochlear Limited's Answer to First Amended Complaint and Counterclaims, Dkt. 166
- Defendant Advanced Bionics' Answer to First Amended Complaint, Dkt. 167;
- Plaintiff's Reply and Counterclaims-in-Reply to Cochlear Americas and Cochlear Limited's Counterclaims, Dkt. 171; and
- Answer to Counterclaims-in-Reply Dkt. 174.

2. Federal jurisdiction and venue are invoked upon the grounds:

a. The Court has subject matter jurisdiction over this matter because the complaint and counterclaims allege causes of action under the patent laws of the United States, 35 U.S.C. § 1, *et seq.* The Court has original jurisdiction of such claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

b. The Foundation alleges that venue is appropriate in this judicial district under 28 U.S.C. §§ 1391(a), (b) and (c) and/or 1400(b) because the Cochlear Defendants each regularly and systemically transact business in this judicial district and alleged acts of infringement

occurred in this judicial district, and because Advanced Bionics systematically transacts business and is headquartered in this district.

c. The Cochlear Defendants do not contest that personal jurisdiction and venue are appropriate. Plaintiff Advanced Bionics had admitted that personal jurisdiction is appropriate as to it, but neither admitted or denied that venue is appropriate.

3. Parties shall have thirteen (13) hours per side for the jury trial, and two (2) hours per side for the bench trial.

4. The trial is to include a jury trial. Concurrently with this order, the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire. *See* Order re: Further Proceedings, Dkt. No. 300, 307.

5. The following facts are admitted and require no proof: *See* Appendix A.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection: *See* Appendix B.

7. Claims and defenses to be presented at trial:

Plaintiff(s):

(a) Plaintiff plans to pursue the following claims against the following defendants:

- Claim 1: The Cochlear Defendants have directly infringed, and are directly infringing, U.S. Patent No. 5,609,616 ("'616 patent") and U.S.

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

Patent No.5,938,691 ("'691 patent") (collectively, the "Asserted Patents") both literally and under the doctrine of equivalents. Specifically, the Cochlear Defendants have infringed, and are infringing, claims 1 and 10 of U.S. Patent No. 5,609,616 and claims 6 and 7 of U.S. Patent No. 5,938,691 (collectively, the "Asserted Claims");

- Claim 2: The Cochlear Defendants have induced infringement of the Asserted Claims;

- Claim 3: The Cochlear Defendants have contributorily infringed the Asserted Claims; and

- Claim 4: The Cochlear Defendants have willfully infringed the Asserted Claims.

(b) The elements required to establish Plaintiff's claims are:

## Claim 1

(1)     The Foundation is the assignee of the given United States patent;

(2)     The Cochlear Defendants' made, used, offered for sale or sold in the United States, or imported into the United States, the accused product without the Foundation's permission while the given patent was in force; and

(3)     The Cochlear Defendants' accused product included each and every element of the given asserted claim.

## Claim 2

Cochlear is liable for active inducement of a claim if the Foundation proves by a preponderance of the evidence:

(1)     The Foundation was the assignee of the given patent;

(2)     The Accused Products infringed one or more of the Foundation's claims;

(3)     The Cochlear Defendants actively induced that infringement of one or more of the Asserted Patent's claims by intentionally inducing another person to use the method or device claimed in the Asserted Patent(s) without the Foundation's consent; and,

(4)     The Cochlear Defendants knew the induced acts constituted patent infringement, or believed there was a high probability that the induced acts constituted patent infringement and took deliberate acts to avoid learning that fact.

<u>Claim 3</u>

Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Cochlear, someone other than Cochlear, alone or in combination with others, must directly infringe a claim of the Asserted Patent(s); if there is no direct infringement by anyone, there can be no contributory infringement.

If someone has directly infringed either of the Asserted Patents, then contributory infringement exists as to that patent if:

(1)     Plaintiffs are the owners of the given patent;

(2)     Some person directly infringed the given claim;

(3)     The Cochlear Defendants sold or supplied a material component of the claimed product or method that was especially made or especially adapted

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

for use in the claimed product or method that was used by the person who directly infringed a given claim;

(4)     The material component from the Cochlear Defendants is not a staple article of commerce suitable for a substantial non-infringing use; and

(5)     The Cochlear Defendants sold or supplied the material component with the knowledge that the material component was especially made or adapted for a use that would infringe the given claim.

### Claim 4

Willfulness requires a determination by clear and convincing evidence that defendant acted recklessly.

Plaintiff must prove two things by clear and convincing evidence:

(1) that defendant acted despite a high likelihood that defendant's actions infringed a valid and enforceable patent. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.

(2) that the defendant actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. This determination is made based on the totality of the circumstances, and relevant facts including, but not limited, to:

(A)     Whether or not defendant is offering any advice of counsel to support an alleged good faith belief of non-infringement or invalidity;

(B)     Whether or not defendant acted in accordance with the standards of commerce for its industry;

(C)     Whether or not defendant intentionally copied a product of plaintiff that is covered by the patents;

(D)     Whether or not there is a reasonable basis to believe that defendant did

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

not infringe or had a reasonable defense to infringement;

(E)     Whether or not defendant made a good-faith effort to avoid infringing the patents, for example, whether defendant attempted to design around the patents; and

(F)     Whether or not defendant tried to cover up its infringement.

(c) In brief, the key evidence Plaintiff relies on for each of the claims is:

<u>Claim 1</u>

**Generally:** The Court has already construed the patent terms via a special master's report, adopted with amendments by Judge King on June 18, 2012. Dkt. 212. The Foundation and its experts will rely on these constructions at trial.

**Element 1:** The Cochlear Defendants have stipulated that the Foundation remains the assignee and lawful owner of the '616 patent and the '691 patent. Appendix A, para. k.

**Element 2:**

- Expert report and testimony of Cate Elsten. *See, e.g.,* Trial Ex. 575-577.
- Quarterly reports on implant revenues and units sold. *See, e.g.*, Trial Ex. 308-354.
- Cochlear Annual Reports 1998-2009. *See, e.g.*, Trial Ex. 305-313.
- Testimony of David Kelsall. *See, e.g.,* Trial Ex. 191; Deposition designations.
- Testimony of Ginger Stickney. *See, e.g.,* Trial Ex. 140.

**Element 3:**

- U.S. Patent 5,609,616. *See, e.g.*, Trial Ex. 1001.

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

- U.S. Patent 5,938,691. *See, e.g.*, Trial Ex. 1002.
- Expert Report and Testimony of Darrin Young. *See, e.g.*, Trial Ex. 138 – 139, 141, 573, 652.
- Technical documents describing the functions and structures of the accused products. *See, e.g.*, Trial Ex. 3, 4, 5, 8, 10, 12, 155, 160, 161, 165, 167, 169, 175, 177, 178, 179, 180, 182, 212, 233, 1288, 1289.
- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.
- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.
- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.

<u>Claim 2</u>

**Element 1:** The Cochlear Defendants have stipulated that the Foundation remains the assignee and lawful owner of the '616 patent and the '691 patent. Appendix A, para. k.

**Element 2:**

- U.S. Patent 5,609,616. *See, e.g.*, Trial Ex. 1001.
- U.S. Patent 5,938,691. *See, e.g.*, Trial Ex. 1002.
- Expert Report and Testimony of Darrin Young. *See, e.g.*, Trial Ex. 138 – 139, 141, 573, 652.
- Technical documents describing the functions and structures of the accused products. *See, e.g.*, Trial Ex. 3, 4, 5, 8, 10, 12, 155, 160, 161, 165, 167, 169, 175, 177, 178, 179, 180, 182, 212, 233, 1288, 1289.
- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,*

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

Trial Ex. 108, 194; Deposition Designations.

- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.
- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.
- Testimony of David Kelsall. *See, e.g.,* Trial Ex. 191.
- Testimony of Ginger Stickney. *See, e.g.,* Trial Ex. 140.

**Element 3:**

- Testimony of David Kelsall. *See, e.g.,* Trial Ex. 191, Deposition Designations.
- Testimony of Ginger Stickney. *See, e.g.,* Trial Ex. 140.
- Testimony of Robert Schindler.
- Cochlear Product Manuals. *See, e.g.,* Trial Ex. 4, 64, 166, 466.
- Deposition Testimony from Theresa Adkins. *See* Deposition Designations.
- Deposition Testimony of Jeffrey Graunke. *See* Deposition Designations.

**Element 4:**

- The Cochlear Defendants' Interrogatory Responses indicating they had knowledge of the '616 and '691 patents in 2003 and 2004 respectively. Trial Ex. 186.
- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.
- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.
- Deposition Testimony of Christopher van den Honert. Trial Ex. 85;

Depositions Designations.

- Deposition Testimony from Theresa Adkins. *See* Deposition Designations.

- Deposition Testimony of Jeffrey Graunke. *See* Deposition Designations.


<u>Claim 3</u>

**Element 1:** The Cochlear Defendants have stipulated that the Foundation remains the assignee and lawful owner of the '616 patent and the '691 patent. Appendix A, para. k.

**Element 2:**

- U.S. Patent 5,609,616. *See, e.g.*, Trial Ex. 1001.

- U.S. Patent 5,938,691. *See, e.g.*, Trial Ex. 1002.

- Expert Report and Testimony of Darrin Young. *See, e.g.*, Trial Ex. 138 – 139, 141, 573, 652.

- Technical documents describing the functions and structures of the accused products. *See, e.g.*, Trial Ex. 3, 4, 5, 8, 10, 12, 155, 160, 161, 165, 167, 169, 175, 177, 178, 179, 180, 182, 212, 233, 1288, 1289.

- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.

- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.

- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.

**Element 3:**

- Expert report and testimony of Cate Elsten. *See, e.g.,* Trial Ex. 575-

577.

- Quarterly reports on implant revenues and units sold. *See, e.g.*, Trial Ex. 308-354.
- Cochlear Annual Reports 1998-2009. *See, e.g.*, Trial Ex. 305-313.
- Testimony of David Kelsall. *See, e.g.,* Trial Ex. 191; Deposition designations.
- Testimony of Ginger Stickney. *See, e.g.,* Trial Ex. 140.
- Cochlear Product Manuals. *See, e.g.,* Trial Ex. 4, 64, 166, 466.

**Element 4:**

- Testimony of Ginger Stickney. *See, e.g.,* Trial Ex. 140.
- Expert Report and Testimony of Darrin Young. *See, e.g.*, Trial Ex. 138 – 139, 141, 573, 652.

**Element 5:**

- The Cochlear Defendants' Interrogatory Responses indicating they had knowledge of the '616 and '691 patents in 2003 and 2004 respectively. Trial Ex. 186.
- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.
- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.
- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.
- Deposition Testimony from Theresa Adkins. *See* Deposition Designations.
- Deposition Testimony of Jeffrey Graunke. *See* Deposition Designations.

<u>Claim 4</u>

**Element 1:**

- U.S. Patent 5,609,616. *See, e.g.*, Trial Ex. 1001.

- U.S. Patent 5,938,691. *See, e.g.*, Trial Ex. 1002.

- Expert Report and Testimony of Darrin Young. *See, e.g.*, Trial Ex. 138 – 139, 141, 573, 652.

- Technical documents describing the functions and structures of the accused products. *See, e.g.*, Trial Ex. 3, 4, 5, 8, 10, 12, 155, 160, 161, 165, 167, 169, 175, 177, 178, 179, 180, 182, 212, 233, 1288, 1289.

- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.

- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.

- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.

**Element 2:**

- The Cochlear Defendants' Interrogatory Responses indicating they had knowledge of the '616 and '691 patents in 2003 and 2004 respectively. Trial Ex. 186.

- Deposition Testimony and Declarations from Tony Nygard. *See, e.g.,* Trial Ex. 108, 194; Deposition Designations.

- Deposition Testimony and Declaration of James F. Patrick. Trial Ex. 48; Deposition Designations.

- Deposition Testimony of Christopher van den Honert. Trial Ex. 85; Depositions Designations.

- Deposition Testimony from Theresa Adkins. *See* Deposition

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

Designations.

- Deposition Testimony of Jeffrey Graunke. *See* Deposition Designations.

Defendant(s):

(a) Defendants plan to pursue the following counterclaims and affirmative defenses: [2]

- Affirmative Defense and Counterclaim 1:  none of the asserted claims of the '616 or '691 patent are infringed
- Affirmative Defense and/or Counterclaim 2:  all of the asserted claims of the '616 and '691 are invalid as obvious
- Affirmative Defense and Counterclaim 3:  Claim 10 of the '616 patent and claim 6 of the '691 patent are invalid as anticipated
- Affirmative Defense and Counterclaim 4:  Claim 1 of the '616 patent and claims 6 and 7 of the '691 patent are invalid as indefinite
- Affirmative Defense and Counterclaim 5:  The '616 patent is unenforceable for inequitable conduct
- Affirmative Defense and Counterclaim 6:  Whether damages are barred by laches
- Affirmative Defense and Counterclaim 7:  Whether relief is barred by estoppel

---

[2] The court's Order following the pretrial conference proceeding held on January 9, 2014, (Document No. 384 ("Court's Order of January 9, 2014")), specified "Defendants' Counterclaims 8-11" as dismissed without prejudice, in reference to the parties' First Amended [Proposed] Pretrial Conference Order, filed January 3, 2014 (Document No. 360).  This Final Pretrial Conference Order serves to clarify the specific claims dismissed without prejudice,, here Counterclaims 9-12, and hereby modifies the Court's Order of January 9, 2014, accordingly.

FIRST AMENDED [PROPOSED] FINAL PRETRIAL CONF. ORDER 07-8108-FMO-SH

- Affirmative Defense and Counterclaim 8: Whether damages are barred by a failure of notice
- Counterclaim 9:

    U.S. Patent No. 5,531,774 ("the '774 patent") is not infringed: dismissed without prejudice for reasons stated at the January 9, 2014, pretrial conference.

- Counterclaim 10:

    U.S. Patent No. 5,569,307 ("the '307 patent") is not infringed: dismissed without prejudice for reasons stated at the January 9, 2014, pretrial conference.

- Counterclaim 11:

    U.S. Patent No. 5,603,726 ("the '726 patent") is not infringed: dismissed without prejudice for reasons stated at the January 9, 2014, pretrial conference.

- Counterclaim 12:

    U.S. Patent No. 5,776,172 ("the '172 patent") is not infringed: dismissed without prejudice for reasons stated at the January 9, 2014, pretrial conference.

(b) The elements required to establish Defendants affirmative defenses and counterclaims are:

<u>Affirmative Defense/Counterclaim 1</u>

The Defendants must show that the Plaintiffs have failed to establish by a preponderance of the evidence any one or more of the following: a. the Foundation is the assignee of the given United States patent; b. The Defendants' made, used, offered for sale or sold in the United States, or imported into the United States, the accused product without the Foundation's permission while the given patent was in

force; or c. The Defendants' accused product included each and every element of

the given asserted claim. In addition, for contributory and induced infringement, the

Defendants may show that the Plaintiffs have failed to establish by a preponderance

of the evidence any one or more of the following: that the accused products are

capable of substantial non-infringing use and Defendants' lack intent to cause

infringement.

### Affirmative Defense/Counterclaim 2

By clear and convincing evidence, a person of ordinary skill in the field of the

invention, who knew about all the prior art existing at the time the given patent

claim was made, would have come up with the invention identified by a given

patent claim at that time.

### Affirmative Defense/Counterclaim 3

By clear and convincing evidence, a person of ordinary skill in the art would

understand that that the anticipating prior art reference or invention completely

embodied the same invention as claim 10 of the '616 patent or claim 6 of the '691

patent in that all elements listed in claim 10 of the '616 patent or claim 6 of the '691

patent were previously found in exactly the same situation and united in the same

way to perform the identical function.

### Affirmative Defense/Counterclaim 4

Determining the sufficiency of the specification's disclosure of the necessary

algorithm is a question of law.  Thus, whether the claims are indefinite is an issue

of law for the court to decide, namely whether:  a. the means plus function claim

elements of the given patent claim include a computer programmed to perform an

algorithm to accomplish all or part of a claimed function; and b. the specification fails to disclose the algorithm necessary to achieve the claimed function.

### Affirmative Defense/Counterclaim 5

By clear and convincing evidence, the Foundation made a misrepresentation to the Patent and Trademark Office about the '616 patent; By a preponderance of the evidence, the misrepresentation was material; By clear and convincing evidence, the Foundation, its attorney or the inventors acted with the intent to deceive the Patent and Trademark Office.

### Affirmative Defense/Counterclaim 6

By a preponderance of the evidence: a. The owner of the patents-in-suit delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its claims against the Cochlear Defendants; b. The delay resulted in material prejudice or injury to the Cochlear Defendants; and c. The material prejudice was either evidentiary prejudice or economic prejudice. A delay of 6 years or more creates a rebuttable presumption of laches.

### Affirmative Defense/Counterclaim 7

By a preponderance of the evidence: a. the Foundation, through misleading conduct, led the Cochlear Defendants to reasonably believe that it did not intend to enforce the '616 patent or the '691 patent against the Cochlear Defendants; b. The Cochlear Defendants relied on that conduct; and c. Due to their reliance, the Cochlear Defendants would be materially prejudiced if the Foundation was permitted to proceed with its charge of infringement of the '616 patent or '691 patent.

<u>Affirmative Defense/Counterclaim 8</u>

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.  In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

(c) In brief, the key evidence Defendants rely on for each of the claims is:

<u>Affirmative Defense/Counterclaim 1</u>

<u>U.S. Patent No. 5,609,616 and its file history</u>

<u>U.S. Patent No. 5,938,691 and its file history</u>

The Defendants must show that the Plaintiffs have failed to establish by a preponderance of the evidence any one or more of the following: a. the Foundation is the assignee of the given United States patent; b. The Defendants' made, used, offered for sale or sold in the United States, or imported into the United States, the accused product without the Foundation's permission while the given patent was in

force; or c. The Defendants' accused product included each and every element of the given asserted claim. In addition, for contributory and induced infringement, the Defendants may show that the Plaintiffs have failed to establish by a preponderance of the evidence any one or more of the following: that the accused products are capable of substantial non-infringing use and Defendants' lack intent to cause infringement.

The report of the special master [D.I. 200] and the Court's claim construction order Documentary evidence and testimony regarding Defendants' Nucleus 24 and Nucleus Freedom cochlear implants showing that the Defendants' accused cochlear implants have a single antenna responsible for both receiving and transmitting. Documentary evidence and testimony regarding Defendants' Windows based Diagnostic and Programming System (WinDPS) and Custom Sound programming systems showing that the graphical user interfaces of the accused programming systems display computer-generated images of slider bars on a computer screen. Documentary evidence and testimony regarding Defendants' WinDPS and Custom Sound programming systems showing that the accused programming systems do not display a voltage measured within the cochlear implant at the time of stimulation.

Documentary evidence and testimony regarding Defendants' SPrint and Freedom speech processors showing that the signals they transmit to the cochlear implants cannot be selectively controlled as the signals are transmitted to the cochlear implants.

Documentary evidence and testimony establishing that the requirement for measurement of voltage at the time of stimulation, and the step of displaying the processed status indicating signals including the measured voltage, were added to make claim 10 allowable over the prior art resulting in Plaintiffs being estopped

from asserting infringement of claim 10 under the doctrine of equivalents. Other evidence (or the lack thereof) at trial that establishes that the Foundation has not met its burden to prove direct infringement by Defendants or any third party. Documentary evidence and testimony showing that Defendants' lacked the necessary intent based on their good faith belief that they did not infringe the given claim of the patent and/or were practicing the prior art.

Documentary evidence and testimony showing that the Defendants did not sell or supply a material component of the claimed product or method that was especially made or especially adapted for use in the claimed product or method.

Documentary evidence and testimony showing that the Defendants' accused products, or the applicable material component thereof, are a staple article of commerce suitable for a substantial non-infringing use.

Documentary evidence and testimony showing that Defendants' lacked the necessary knowledge of infringement based on their good faith belief that they did not infringe the given claim of the patent and/or that they were practicing the prior art. Documentary evidence and testimony regarding Defendants' Nucleus 24 and Nucleus Freedom cochlear implants showing that, among other things, the Defendants' accused cochlear implants have electrodes that are short circuited together and to a common voltage supply (both between stimulation frames and during a portion of each stimulation frame) and all of the electrodes in the Nucleus Freedom implants are connected together via five mega-ohm (5 MΩ) resistors. Documentary evidence and testimony regarding Defendants' Speech Processor 5 (SPrint speech processor) and Speech Processor 12 (Freedom speech processor), as well as Defendants' programming software source code, showing that the power level of the transmissions from Defendants' external speech processors to the cochlear implant cannot be modified in any way. Other evidence (or the lack

thereof) at trial that establishes that the Foundation has not met its burden to prove direct infringement.

Affirmative Defense/Counterclaim 2

U.S. Patent No. 5,609,616 (Exh. 1001) and its file history (Exh. 1303)

U.S. Patent No. 5,938,691 (Exh. 1002)

"An Advanced Cochlear Implant Hearing Prosthesis for Profound To Total Deafness," Hugh McDermott's thesis, University of Melbourne Special Collections, including attached Thesis Request Form (COC-0120396 to COC-0120589) ("McDermott Thesis") (Exh. 1157)

"An Advanced Multiple Channel Cochlear Implant," by Hugh McDermott - IEEE Transactions on Biomedical Engineering," Vol. 36, No. 7, July 1989 (COC-0102102 to COC-0102113) ("McDermott '89 Article") (Exh. 1039)

"A Custom LSI CMOS Chip for a Cochlear Implant," by Hugh McDermott, Journal of Electrical and Electronics Engineering, Australia - IE Aust. & IREE Aust., Vol. 4, No. 4, pp. 305-309 (Dec. 1984) (COC-0101902 to COC-0101907) ("McDermott '84 Article") (Exh. 1197)

"The LAURA Cochlear Prosthesis: Development and Description," by Dr. Ir. S. Peeters et al., Cochlear Implant: Current Situation, pp. 547-555.  Proceedings of the International Cochlear Symposium, Düren, West Germany (Banfai, P. ed., Sept. 7-12, 1987) (COC-0119660 to COC-0119672, COC-0120221 to COC-0120229, COC-0120391) ("LAURA Article") (Exh. 1200)

European Patent Application Publication No. 0259906 (COC-0119439 to COC-0119445) ("Laura-EP") (Exh. 1194)

U.S. Patent No. 4,532,930 (COC-0100711 to COC-0100766) ("Crosby") (Exh. 1190)

U.S. Patent No. 4,612,934 ("Borkan") (Exh. 1152)

U.S. Patent No. 4,947,844 (AMF001718 to AMF001730) ("McDermott '844 patent") (Exh. 1150)

Testimony from James Patrick, Tony Nygard and Gerald Loeb.


### Affirmative Defense/Counterclaim 3

U.S. Patent No. 5,609,616 (Exh. 1001) and its file history (Exh. 1303)

"An Advanced Multiple Channel Cochlear Implant," by Hugh McDermott - IEEE Transactions on Biomedical Engineering," Vol. 36, No. 7, July 1989 (COC-0102102 to COC-0102113) ("McDermott '89 Article") (Exh. 1039)

"An Advanced Cochlear Implant Hearing Prosthesis for Profound To Total Deafness," Hugh McDermott's thesis, University of Melbourne Special Collections, including attached Thesis Request Form (COC-0120396 to COC-0120589) ("McDermott Thesis") (Exh. 1157)

U.S. Patent No. 5,938,691 (Exh. 1002)

U.S. Patent No. 4,612,934 ("Borkan") (Exh. 1152)

Testimony from Gerald Loeb.


### Affirmative Defense/Counterclaim 4

U.S. Patent No. 5,609,616 (Exh. 1001)

U.S. Patent No. 5,938,691 (Exh. 1002)

The report of the special master [D.I. 200]

Testimony from Joseph Schulman and Robert Stevenson.


### Affirmative Defense/Counterclaim 5

U.S. Patent No. 5,609,616 (Exh. 1001) and its file history (Exh. 1303)

File history of patent application SN 07/411,563, filed 9/22/89  (Exh. 1358)

First application filed on Sept. 22, 1989 in the prosecution file of application SN 07/411,563 (Exh. 1359)

Production copy of file history of patent application SN 08/322,066, filed 10/12/94 (Exh. 1360)

Information Disclosure Statement, dated Jan. 9, 1995, regarding application SN 08/322,066 (Exh. 1147)

Amendment in response to Office Action, dated March 18, 1996, regarding application SN 08/447,157 (Exh. 1148)

Examiner's Final Office Action regarding application SN 08/447,157, mailed May 7, 1996  (Exh. 1149)

"An Advanced Multiple Channel Cochlear Implant," by Hugh McDermott - IEEE Transactions on Biomedical Engineering," Vol. 36, No. 7, July 1989 (COC-0102102 to COC-0102113) ("McDermott '89 Article") (Exh. 1039)

Testimony of Bryant Gold, Joseph Schulman and Laurence Pretty.

Affirmative Defense/Counterclaim 6

Letter from Joseph Schulman (Exh. 65)

Letter to Joseph Schulman (Exh. 1072)

2005 Annual Report (Exh. 27)

Testimony from Joseph Schulman, Jon Phil Mobley, Tony Nygard and Jan Janssen

Stipulated fact regarding the date of filing of the complaint.

Affirmative Defense/Counterclaim 7

Letter from Joseph Schulman (Exh. 65)

Letter to Joseph Schulman (Exh. 1072)

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

2005 Annual Report (Exh. 27)

Testimony from Joseph Schulman, Jon Phil Mobley, Tony Nygard and Jan Janssen

Stipulated fact regarding the date of filing of the complaint.

Affirmative Defense/Counterclaim 8

Letter from Joseph Schulman (Exh. 65)

Stipulated fact regarding the date of filing of the complaint.

Testimony from Joseph Schulman and David Hankin.

8. In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

    (1) For Claim 1:

        (a) Whether any of the Accused Products infringe any of the Asserted Claims, as presently constructed;

    (2) For Claim 2:

        (a) Whether actions carried out by others using the Accused Products infringed any of the Asserted Claims;

        (b) Whether the Cochlear Defendants intended to cause the alleged infringing acts in (2)(a);

        (c) Whether the Cochlear Defendants knew the acts in (2)(a), if taken, would constitute infringement of any of the Asserted Patents;

    (3) For Claim 3:

        (a) Whether any of the Accused Products supplied by the Cochlear Defendants are an important component of an infringing product or method;

(b) Whether the Accused Products are not a common component suitable for non-infringing use;

(c) Whether the Cochlear Defendants supplied the Accused Products with knowledge that they were especially made or adapted for use in an infringing manner;

(d) Whether the actions carried out by others using the Accused Products have been shown to infringe any of the Asserted Claims;

(4) For Claim 4:

(a) Whether the Cochlear Defendants acted recklessly. This entails two questions, the first of which is whether the Cochlear Defendants made, used, offered for sale or sold in the United States or imported into the United States the Accused Products despite an objectively high likelihood that the Accused Products infringed a valid and enforceable patent. It is the Cochlear Defendants' position that legitimate or credible defenses to infringement or enforceability, even if not ultimately successful but which are objectively reasonable, demonstrate a lack of recklessness.

(b) Whether Cochlear knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

(5) In the event that Cochlear is found liable for any of claims (1)-(4), the amount of damages in the form of a reasonable royalty to which the Foundation is entitled.

(6) For Affirmative Defense/Counterclaim 1, whether: (a) defendants' products directly infringe; (b) defendants' products have contributed to infringement; and (c) defendants have induced infringement.

(7) For Affirmative Defense/Counterclaim 2, whether all of the asserted claims were obvious at the time the patent applications were filed.

(8) For Affirmative Defense/Counterclaim 3, whether claim 10 of the '616 patent and claim 6 of the '691 patent are anticipated.

(9) For Affirmative Defense/Counterclaim 4, whether claim 1 of the '616 patent and claims 6 and 7 of the '691 patent are indefinite.

(10)    For Affirmative Defense/Counterclaim 5, whether the Foundation committed inequitable conduct in procuring the '616 patent.

(11)    For Affirmative Defense/Counterclaim 6, whether the Foundation so delayed filing the lawsuit such that damages are barred by laches.

(12)    For Affirmative Defense/Counterclaim 7, whether the Foundation misled defendants by silence upon which the defendants relied such that relief is barred by estoppel.

(13)    For affirmative Defense/Counterclaim 8, whether Advanced Bionics practices the patents and if so, whether the Foundation failed to give notice and/or mark their products such that a portion of damages is barred.

9. All discovery is complete.

10. All disclosures under F. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed

-25-

below:

Plaintiff objects to Exhibit Nos.:

1064, 1065, 1066, 1067, 1068, 1072, 1075, 1076, 1084, 1085, 1089, 1157, 1196, 1205, 1206, 1207, 1208, 1209, 1210 ,1211, 1212, 1213, 1214, 1215, 1298, 1307, 1308, 1311, 1312, 1314, 1315, 1316, 1317, 1318, 1319, 1320, 1321, 1323, 1323, 1324, 1325, 1326, 1328, 1329, 1330, 1331, 1332, 1333, 1334, 1335, 1336, 1337, 1338, 1339, 1340, 1341, 1342, 1344, 1345, 1346, 1347, 1348, 1349, 1350, 1351, 1352, 1353, 1354, 1355, 1356, 1357, 1367, 1368, 1370, 1500-2000

Defendants object to Exhibit Nos.

6, 29,  32, 33, 34, 35,  42,  44, 45,  47,  59,  96,  98, 107,   248, 257, 282, 302, 303, 304,   481, 482, 483,  486, 487, 488, 489,    557,  561,   574, 575, 576, 577, 578, 579,  587, 588,  590, 591,  595, 596, 600, 600.1, 600.2 , 600.3, 600.4, 600.5, 600.6, 600.7, 600.8, 600.9, 608,   623, 624,  636, 638, 643, 653-707, 710-728, 730-735, 740-745, 3001, 3003, 3005, 3007, 3008, 3019-3021.

The objections and grounds therefor are identified in the Pretrial Exhibit Stipulation filed contemporaneously herewith.

11. Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: Designations by Plaintiff:

a)  Deposition of Theresa Adkins, dated December 30, 2008;

b)  Deposition of Jeffrey Graunke, dated December 12, 2008;

c)  Deposition of David Kelsall, dated December 10, 2008;

d)  Deposition of Tony Nygard, dated October 1, 2008;

e)  Deposition of James Patrick, dated December 18, 2008; and

f)  Deposition of Christopher van den Honert, dated December 8, 2008.

Designations by Defendant:

a)  Deposition of Lawrence A. Fischer, dated December 17, 2008;

b)  Deposition of Bryant Gold, dated December 18, 2008;

c)  Deposition of Jeffrey Greiner, dated December 16, 2008;

d)  Deposition of Alfred E. Mann, dated December 10, 2008;

e)  Deposition of Jon Mobley, dated November 20, 2008;

f)  Deposition of Joseph Schulman, dated December 2, 2008; and

g)  Deposition of Joseph Schulman, dated December 17, 2008.

Plaintiff (Defendant) objects to the presentation of testimony by deposition of the following witnesses:

o  Plaintiff's Objections

The Foundation objects to the designations of deposition testimony of Bryant Gold, Jeffrey Greiner, Jon Mobley and Joseph Schulman's December 2, 2008 deposition, because there has been no showing the witnesses are unavailable and such testimony is inadmissible hearsay pursuant to Fed. R. Civ. P. 32(a)(4) and Fed. R. Ev. 802 and 804.

More specific objections are stated in the transcript to be lodged in advance of trial.

o  Defendant's Objections

Defendants' objections are stated in the transcripts to be lodged in advance of

trial and listed in Appendix C

12. The following law and motion matters and motions in limine, and no others, are pending or contemplated: None.

13. Bifurcation:

The following issues will be tried to the jury:

- o Infringement,
- o Willfulness,
- o Anticipation,
- o Obviousness, and
- o Damages
- o Inequitable Conduct (Advisory Verdict)

The following issues will be decided by the Court via a bench trial:

- o Inequitable Conduct,
- o Laches,
- o Equitable Estoppel,
- o Prosecution History Estoppel
- o Indefiniteness
- o Award of enhanced damages due to willful infringement, and Attorneys' Fees

14. The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

1

2

3      Dated:  January 13, 2014                    By: _____/s/_____

4                                                      Fernando M. Olguin
                                                       UNITED STATES DISTRICT JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-29-

## APPENDIX A

The following facts are admitted and require no proof:

| Original Proposed Number | Final Text |
|---|---|
| 1 | Plaintiff Alfred E. Mann Foundation for Scientific Research ("the Foundation") is a nonprofit medical research foundation with its principle place of business in Los Angeles County, incorporated under the laws of the State of California. |
| 2 | Defendant Cochlear Ltd. is a for-profit Australian company headquartered in Sydney. |
| 3 | Defendant Cochlear Corporation is a for-profit corporation Incorporated under the laws of the State of Delaware with its principle place of business in Colorado. |
| 4 | Involuntary Plaintiff Advanced Bionics LLC is a for-profit limited liability company with its primary place of business in Valencia, California and its state of incorporation in Delaware. |
| 5 | Advanced Bionics Corporation was founded in 1993. |
| 6 | Advanced Bionics Corporation was purchased by Boston Scientific Corporation in June 2004. |
| 7 | Advanced Bionics LLC was formed as a separate company and assigned Advanced Bionics Corporation's rights in the cochlear implant business and related patents. |
| 8 | Sonova Holdings acquired Advanced Bionics LLC in 2009. |
| 9 | U.S. Patent Application No. 447,157 was filed on May 25, 1995 and issued on March 11, 1997 as U.S. Patent No. 5,609,616, titled "Physician's Testing System and Method for Testing Implantable |

| | |
|---|---|
| | Cochlear Stimulator" (the "'616 patent"). The USPTO issued the '616 patent as a continuation of U.S. Patent Application Ser. No. 23,584, filed on February 26, 1993, which was a continuation of U.S. Patent Application Ser. No. 752,069, filed on August 29, 1991, which was a continuation in part of U.S. Patent Application Ser. No. 411,563, filed on September 22, 1989. The '616 patent lists Joseph H. Schulman, John C. Gord, Primoz Strojnik, and David I. Whitmoyer as inventors, and the Foundation as the original assignee. |
| 11 | U.S. Patent Application No. 09/103,264 was filed on June 23, 1998 and issued on August 17, 1999 as U.S. Patent No. 5,938,691, titled "Multichannel Implantable Cochlear Stimulator" (the "'691 patent"). The USPTO issued the '691 patent as a division of application No. 08/450,041, filed on May 25, 1995, which was a continuation of application No. 08/322,065, filed on October 12, 1994, which was a continuation in part of U.S. Patent Application Ser. No. 23,584, filed on February 26, 1993, which is a continuation of U.S. Patent Application Ser. No. 752,069, filed on August 29, 1991, which was a continuation in part of U.S. Patent Application Ser. No. 411,563, September 22, 1989. The '691 patent lists Joseph H. Schulman, John C. Gord, Primoz Strojnik, David I. Whitmoyer, and James H. Wolfe as inventors, and the Foundation as the original assignee. |
| 14 | While prosecuting the application that issued as the '616 patent, patent attorney Bryant R. Gold, filed an Information Disclosure Statement on August 31, 1995 that disclosed 63 references ("the |

| | |
|---|---|
| | 1995 IDS"). |
| 15 | United States Patent No. 4,947,844 to McDermott ("the McDermott patent") was cited in the 1995 IDS. |
| 16 | United States Patent No. 4,612,934 to Borkan ("the Borkan patent") was cited in the 1995 IDS. |
| 17 | United States Patent No. 4,532,930 to Crosby ("the Crosby patent") was cited in the 1995 IDS. |
| 18 | On May 6, 1996, patent examiner William E. Kamm initialed the column "Examiner Initial" on the 1995 IDS, indicating that he considered the McDermott patent, the Borkan patent, and the Crosby patent. |
| 19 | The McDermott patent appears on the face of the '616 patent. |
| 20 | The Borkan patent appears on the face of the '616 patent. |
| 21 | The Crosby patent appears on the face of the '616 patent. |
| 22 | On August 17, 1998, during the prosecution of the '691 patent, patent examiner Carl H. Layno filed a Notice of References Cited that disclosed 3 references ("the 1998 Notice"). |
| 23 | The McDermott patent was cited in the 1998 Notice. |
| 24 | The Crosby patent was cited in the 1998 Notice. |
| 25 | On January 20, 1999, patent examiners Carl H. Layno and William E. Kamm issued a Notice of Allowability, allowing the '691 patent over the McDermott patent and the Crosby patent. |
| 26 | The McDermott patent appears on the face of the '691 patent. |
| 27 | The Crosby patent appears on the face of the '691 patent. |
| 28 | Figure 1 of the '616 and '691 patents shows a preferred embodiment of the invention as including a speech processor and |

| | |
|---|---|
| | an implant. |
| 30 | An article titled "Back-Telemetry and the Clarion Cochlear Prosthesis" was published in the September 1995 supplement to Annals of Otology, Rhinology and Laryngology. |
| 34 | It is possible to use telemetry to assess the function of the implanted components of a cochlear implant. |
| 36a | Cochlear Americas has imported Nucleus 24 (CI24 series), Nucleus Freedom (CI24RE series and CI422) and Nucleus 5 (CI500 series) cochlear implants into the United States. |
| 36b | Cochlear Americas has imported Sprint (SP5), Freedom (SP12) and Nucleus 5 (SP15) sound processors into the United States. |
| 36c | Cochlear Americas has distributed, in the United States, software for use with the accused implants and sound processors (WinDPS and Custom Sound). |
| 37 | Defendants' accused implants are capable of transmitting back telemetry. |
| 38 | The Sprint (SP5), SP12, and CP810 speech processors ("Accused Speech Processors") are capable of receiving back telemetry. |
| 40 | The Nucleus 22 cochlear implant is not capable of back-telemetry. |
| 43 | The Nucleus 24 cochlear implant (Pre-Market Approval Application No. P970051) received FDA approval on June 25, 1998. |
| 44 | The Nucleus 24 implant was first sold in the United States in 1998. |
| 45 | The Nucleus 24 Contour Advance implant was first sold in the |

| | |
|---|---|
| | United States in 2002. |
| 46 | The Nucleus Freedom speech processor was first sold in the United States in 2005. |
| 47 | The Nucleus Freedom implant was first sold in the United States in 2005. |
| 48 | The Nucleus Freedom speech processor for the Nucleus 24 implant was first sold in the United States in 2006. |
| 50 | The SP5 (commercially known as the Sprint speech processor) can be used with the Nucleus 24 implants. |
| 51 | The SP12 (commercially known as the Freedom speech processor) can be used with the Nucleus Freedom implants and is backward compatible (i.e., can be used) with the Nucleus 24 implants. |
| 53 | The Accused Implants all are connected to a multiplicity of electrodes. |
| 54 | The Accused Implants use an intracochlear electrode array, which comprises 22 separate electrodes. |
| 55 | The Accused Implants also have two extra-cochlear electrodes. |
| 56 | The Accused Implants also have two extra-cochlear electrodes connected in series with a capacitor. |
| 57 | The Accused Implants, in certain circumstances, transmit a signal indicative of certain electrode voltages. |
| 58 | The CI24M, CI24R and CI24RE include a decoder and a signal multiplexer for monitoring of the electrodes or the processor voltages. |
| 59 | The Accused Implants have back-telemetry capability. |

| | |
|---|---|
| 60 | The Accused Implants, in certain circumstances, measure voltage at the time of electrode stimulation. |
| 61 | The custom chip designated as CIC3 (Cochlear Implant Chip 3) is found in the Nucleus 24 implants (CI24M and CI24R implants). |
| 64 | The custom chip designated as CIC4 (Cochlear Implant Chip 4) is found in the Nucleus Freedom implants (CI24RE implants). |
| 72 | Cochlear does not dispute that the Accused Implants have a plurality of tissue-stimulating electrodes in the cochlea. |
| 73 | The following is a schematic representation of voltage telemetry in Cochlear's CIC4 chip:  Figure A20: Voltage telemetry schematic representation. |
| 74 | Cochlear does not dispute that the headset that is used with the CI24M and/or CI24R in conjunction with the SP5 speech processor includes a microphone. |
| 75 | The CI24M and/or CI24R in conjunction with the SP5 or SP12 includes a digital speech processor that can be worn. |
| 76 | Cochlear does not dispute that the SP5 and the SP12 speech |

| | |
|---|---|
| | processors both use custom made and programmable digital signal processors that implement audio and speech processing algorithms. |
| 77 | Cochlear does not dispute that the SP12 speech processor includes a transmitter and an antenna that are used to transmit power from the SP12 to the implant (CI24RE). |
| 80 | On November 20, 2008, Cochlear submitted to the FDA a 180-day supplement ("Application") to its previously-approved application for the Nucleus Cochlear Implant System which sought approval to market two modified versions of the Nucleus Freedom Cochlear Implant - the CI500 cochlear implant series (the CI512 and CI513) also known as the Nucleus 5 implants. |
| 83 | The CI500 implants use the "[s]ame CIC4 Integrated Circuit as the CI24RE." |
| 88 | The CI500 implant uses the same chip as the CI24 implant except that there is a provision for more implant ID resistors. |
| 89 | No new clinical data was required to demonstrate safety and effectiveness, as the results for the CI24RE models presently on the market are valid. |
| 90 | Cochlear's documents refer to the Nucleus 5/CP810 wearable processor as the SP15. |
| 93 | The SP15 is compatible with the Freedom implant, and its hardware is capable of supporting legacy implants of the Nucleus 24 (CI24) family. |
| 94 | The CIC4 is an ASIC that performs the core functionality for the CI24RE implant. |

| | |
|---|---|
| 95 | The Nucleus 500 series products can be programmed by certain versions of Custom Sound programming software. |
| 98 | By connecting the SP15 sound processor to a SP15 programming shoe, the SP15 sound processor can be programmed using the Freedom Programming Pod and the Custom Sound computer program. |
| 100 | In the accused products, the programming software is used to develop a MAP which is written to the speech processor to account for the individual differences of each implant recipient, such as the recipient's sensitivities to electrical stimulation. |
| 102 | Cochlear's WinDPS (Windows based Diagnostic and Programming System) and Custom Sound are the software at issue in this matter. |
| 103 | WinDPS can be used to program the SP5. |
| 104 | Versions of Custom Sound can be used to program both the SP5 and the SP12, as well as the SP15 speech processor. |
| 105 | WinDPS and Custom Sound allow a user to select electrodes for which impedance measurements are taken. |
| 106 | WinDPS and Custom Sound are capable of setting T(threshold) and C(comfort) levels. |
| 108 | The process of setting T-levels and C-levels is called "mapping." |
| 114 | Audiologists have used software provided by Cochlear to perform impedance testing. |
| 115 | Audiologists have been trained by Cochlear and/or its representatives on how to perform impedance testing and perform mapping. |

| 116 | Audiologists have performed mapping sessions using Cochlear's software. |
|---|---|
| 117 | The SP12 processor can be connected to a desktop or laptop computer. |
| 118 | The SP5 processor can be connected to a desktop or laptop computer. |
| 119 | The Foundation and Advanced Bionics Corporation entered into the "License Agreement – Cochlear Implant Field," effective as of May 18, 1999. |
| 121a | Under the May 18, 1999 Agreement, Advanced Bionics Corporation was to pay a royalty rate of 3.0% on net revenues for the first four years of the Agreement, 2.5% on net revenues of the fifth through eighth years of the Agreement, and 2.0% on net revenues thereafter. |
| 122 | The licensed properties under the May 18, 1999 Agreement encompassed, among other patents and know-how, the '616 and '691 patents. |
| 123 | The May 18, 1999 Agreement was to remain in effect until the expiration of the last remaining patent or until the know-how became public information. |
| 124 | The Foundation and Advanced Bionics Corporation entered into the "Cochlear Technology License and Royalty Agreement," effective January 1, 2004. |
| 125b | Under the January 1, 2004 Agreement, Advanced Bionics was to pay a royalty rate of 3.0% for the period January 1, 2003 through May 18, 2003; 2.5% for the period of May 19, 2003 through |

| | |
|---|---|
| | December 31, 2003; 1.25% for the years 2004, 2005, 2006 and 2007; and 1.0% for the balance of the term. |
| 126 | The term of the January 1, 2004 Agreement was to be 18 years. |
| 127 | The Foundation received $18,067,413 as a result of the acquisition of Advanced Bionics LLC by Sonova Holdings. |
| 128 | The Foundation entered into an exclusive world-wide license agreement with Advanced Bionics Corporation effective May 18, 1999, titled "License Agreement - Battery-Powered Bion Technology Field."   Under the terms of this license, Advanced Bionics agreed to pay the Foundation a running royalty of 3% of net revenues for certain patents, patent applications, and know-how. |
| 129 | On January 1, 2004, the Foundation and Advanced Bionics terminated the "License Agreement – Battery-Powered Bion Technology Field," and entered into a "License, Royalty and Manufacturing Agreement" related to "Battery Powered Bion Devices and Services."  Under this license, Advanced Bionics was to pay a running royalty of 4.0% of net revenues and 50% of any net sublicensing revenues. |
| 130 | The Foundation entered into an exclusive, world-wide license agreement with Advanced Bionics Corporation effective May 18, 1999, titled "License Agreement – RF Bion Technology Field." Under the terms of this license, Advanced Bionics agreed to pay the Foundation a running royalty of 3.0% of net revenues for certain patents, patent applications and know-how. |
| 131 | On January 1, 2004, the Foundation and Advanced Bionics |

-39-

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

| | | |
|---|---|---|
| | | terminated the "License Agreement – RF Bion Technology Field," and entered into a "License, Royalty and Manufacturing Agreement – RF Bion Devices and Services."  Under this license, Advanced Bionics agreed to pay a running royalty of 4.0% of net revenues and 50% of any net sublicensing revenues. |
| 133 | | Total revenue from sales of the CI24 line of cochlear implants from December 1, 2001 through June 30, 2002 was $24,299,256. |
| 134 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2003 was $50,037,368. |
| 135 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2004 was $47,474,546. |
| 136 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2005 was $55,972,969. |
| 137 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2006 was $77,093,625. |
| 138 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2007 was $90,516,439. |
| 139 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2008 was $100,377,295. |
| 140 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2009 was $104,700,845. |
| 141 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2010 was $23,616,000. |
| 142 | | Total revenue from sales of the CI24 line of cochlear implants in FY 2011 was $9,555,707. |
| 143 | | Total revenue from sales of the CI24 line of cochlear implants in |

| | |
|---|---|
| | FY 2012 was $93,513,884. |
| 144 | Total revenue from sales of the SPrint line of sound processors from December 1 through June 30, 2002 was $8,452,933. |
| 145 | Total revenue from sales of the SPrint line of sound processors in FY 2003 was $14,866,796. |
| 146 | Total revenue from sales of the SPrint line of sound processors in FY 2004 was $11,843,510. |
| 147 | Total revenue from sales of the SPrint line of sound processors in FY 2005 was $9,389,476. |
| 148 | Total revenue from sales of the SPrint line of sound processors in FY 2006 was $2,076,480. |
| 149 | Total revenue from sales of the SPrint line of sound processors in FY 2007 was $1,452,950. |
| 150 | Total revenue from sales of the SPrint line of sound processors in FY 2008 was $398,375. |
| 151 | Total revenue from sales of the SPrint line of sound processors in FY 2009 was $6,000. |
| 152 | Total revenue from sales of the SPrint line of sound processors in FY 2010 was negative $20,494. |
| 153 | Total revenue from sales of the SPrint line of sound processors in FY 2011 was negative $5,000. |
| 154 | Total revenue from sales of the SPrint line of sound processors in FY 2012 was negative $6,285. |
| 155 | Total revenue from sales of the SP12 line of sound processors in FY 2005 was $7,849,072. |
| 156 | Total revenue from sales of the SP12 line of sound processors in |

| | | |
|---|---|---|
| | | FY 2006 was $38,452,036. |
| 157 | | Total revenue from sales of the SP12 line of sound processors in FY 2007 was $68,439,988. |
| 158 | | Total revenue from sales of the SP12 line of sound processors in FY 2008 was $69,995,908. |
| 159 | | Total revenue from sales of the SP12 line of sound processors in FY 2009 was $80,567,007. |
| 160 | | Total revenue from sales of the SP12 line of sound processors in FY 2010 was $29,715,255. |
| 161 | | Total revenue from sales of the SP12 line of sound processors in FY 2011 was $15,797,858. |
| 162 | | Total revenue from sales of the SP12 line of sound processors in FY 2012 was $7,429,240. |
| 163 | | Total revenue from sales of the CP800 line of sound processors in FY 2010 was $60,272,320. |
| 164 | | Total revenue from sales of the CP800 line of sound processors in FY 2011 was $87,268,754. |
| 165 | | Total revenue from sales of the CP800 line of sound processors in FY 2012 was $99,278,614. |
| 166 | | Total revenue from sales of the CI500 line of cochlear implants in FY 2009 was $254,100. |
| 167 | | Total revenue from sales of the CI500 line of cochlear implants in FY 2010 was $98,451,814. |
| 168 | | Total revenue from sales of the CI500 line of cochlear implants in FY 2011 was $124,909,498. |
| 169 | | Total revenue from sales of the CI500 line of cochlear implants in |

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

| | |
|---|---|
| | FY 2012 was $27,227,907. |
| 170 | Total revenue from sales of the CI422 line of cochlear implants in FY 2012 was $3,458,058. |
| 172 | Cochlear was aware of the '691 patent and its subject matter by June 2004. |
| 173 | Cochlear was aware of the '616 patent and its subject matter by July 2003. |
| 180a | Cochlear continued selling the Nucleus 24 after July 2003. |
| 181a | Cochlear continued selling the Nucleus 24 after July 2003. |
| 182a | Cochlear continued selling the Nucleus 24 after 2004. |
| 183a | Cochlear continued selling the Nucleus 24 after 2004. |
| 184 | James Findlay Patrick is an employee of Cochlear. |
| 185 | At least one of the authors of "The Development of the Nucleus FreedomTM Cochlear Implant System" was James F. Patrick, who was and still is an employee of Cochlear Limited. |
| 188 | Mr. Patrick testified at his deposition regarding the October 1, 2003 letter [i.e., Plaintiff's Exhibit 65] from Jack O'Mahony to Joseph Schulman PhD: "It's [Plaintiff's Exhibit 65] [a] letter from Jack Mahony [sic] to Joe Shawn [sic]. . . . It certainly has my name with CC against it on the bottom." When asked, "[W]hether based on either Dr. Shulman's [sic] letter or this letter, this October 1st letter in response, whether Cochlear changed its development plans for its implants or wearable processors?" Mr. Patrick testified, "I don't believe so." |
| 189 | Cochlear designated Tony Nygard as its Fed. R. Civ. P. 30(b)(6) witness on the issues of laches and estoppel. |

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

| 193 | At least as of October 1, 2008, Cochlear had not stopped producing any devices in response to this litigation. |
| 195 | Cochlear's expert witness, Dr. Gerald Loeb, was deposed on March 26, 2009 ("2009 Depo") and May 31, 2013 ("2013 Depo"). |
| 199 | Dr. Loeb was the "Chief Scientist (consulting)" at Advanced Bionics Corporation from 1994-1999. |
| 200 | Dr. Loeb was Director of Medical Device Development, Alfred E. Mann Institute for Biomedical Engineering at the University of Southern California from 1999-2008. |
| 201 | Dr. Loeb testified that he was involved in the Foundation's work on the pilot device that became the Clarion. |
| 202 | Dr. Loeb testified that he was an employee of the Foundation. |
| 203 | Dr. Loeb testified that from time to time he worked with the Foundation on cochlear implants from 1988 to 1994. |
| 204 | Mr. Christopher van den Honert was deposed on December 8, 2008 in this matter.  At that time, he was an employee of Cochlear Americas. |
| 206 | Cochlear's affirmative defense of laches is based on its assertion that: "[the Foundation] knew or should have known about any infringement issues raised by the Nucleus® cochlear implants of [Cochlear] prior to December 13, 2001. . . . Additionally, on July 21, 2003, Joseph H. Schulman, Ph.D. wrote on behalf of [the Foundation] to Jack O'Mahoney on behalf of [Cochlear] stating that [Cochlear's] 'Nucleus cochlear implants … utilize features that may infringe our U.S. Patent No. . .  616.'  On October 1, |

| | | |
|---|---|---|
| | | 2003, Mr. O'Mahoney responded to Dr. Schulman stating 'the Nucleus implants do not infringe the patents.' [sic] [Cochlear] relied on this silence in introducing a new generation product into the United States, namely the Nucleus® Freedom implant, in 2005."Cochlear has had knowledge of the '616 patent since at least July 21, 2003. |
| 207 | | Cochlear's estoppel defense is based on its assertion that "[o]n July 21, 2003, Joseph H. Schulman, Ph.D. wrote on behalf of [the Foundation] to Jack O'Mahoney on behalf of [Cochlear] stating that 'Nucleus cochlear implants [of Cochlear] … utilize features that may infringe our U.S. Patent No. . . .616.' On October 1, 2003, Mr. O'Mahoney responded to Dr. Schulman stating 'the Nucleus implants do not infringe the patents.' [sic] [the Foundation] remained silent in the face of this denial of infringement, and [Cochlear] relied on this silence in introducing a new generation product into the United States, namely the Nucleus® Freedom implant, in 2005." |
| | | United States Patent No. 4,947,844 ("the '844 patent") issued from an application filed in the United States prior to the priority date claimed in the United States Patent No. 5,609,616 ("the '616 patent"). |
| | | COC-0119439 to COC-0119445 is a copy of European Patent Application No. 0259906 published March 16, 1988. |
| | | European Patent Application No. 0259906 ("the '906 Application") was published more than one year prior to the earliest date to which the '616 patent is entitled to claim priority. |

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

| | |
|---|---|
| | The '906 Application was published more than one year prior to the earliest date to which the '691 patent is entitled to claim priority. |
| | During the prosecution of the '616 and/or the '691 patents, the named inventors and/or their attorneys of record did not submit McDermott, "An Advanced Multiple Channel Cochlear Implant," IEEE Transactions on Biomedical Engineering, vol. 36:7, p. 789-797 (July 1989) ("the McDermott article") to the PTO. |
| | The McDermott article was known to Bryant R. Gold when he submitted it to the PTO during the prosecution of Ser. No. 08/322,066. |
| | Bryant R. Gold was one of the attorneys who prosecuted the applications that issued as U.S. Patent No. 5,938,691. |
| | Cochlear Limited and Cochlear Americas are neither offering nor relying on any opinion or other advice of counsel to support their claim that prior to the filing of the suit they believed the accused products did not infringe the '616 and '691 patents. |
| | The '616 Patent will expire on March 11, 2014. |
| | The '691 patent expired on September 22, 2009. |
| | The Foundation remains the assignee and lawful owner of the '616 patent and the '691 patent. |
| | On May 18, 1999, the Foundation and Advanced Bionics Corporation entered into the "License Agreement – Cochlear Implant Field." |
| | The May 18, 1999 Agreement was intended to memorialize an existing, verbal agreement between the Foundation and Advanced |

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH

| | Bionics Corporation. |
| --- | --- |
| | The '616 Patent issued on March 11, 1997. |
| | The '691 Patent issued on August 17, 1999. |
| | The Foundation filed the Complaint against Cochlear Limited and Cochlear Americas on December 13, 2007. |

## APPENDIX B

| Original Proposed Number | Text |
| --- | --- |
| 121b | Under the May 18, 1999 Agreement, Advanced Bionics would grant one million shares of stock out of 21,572,026 shares outstanding to the Foundation, representing a 4.64% interest in Advanced Bionics Corporation.  AMF018352-AMF018368, at Section 2.1 (AMF018354). |
| 125a | Under the January 1, 2004 Agreement, Advanced Bionics was to grant an additional 1.1 million shares of stock to the Foundation. |

## APPENDIX C

Defendants' Objections to Plaintiff's Counter Designations

**Tony Nygard (taken 10/1/2008):**

18:6-12  Relevance

52:1-3  Relevance

117:15- 118:16  Relevance

119:16- 121:7  Relevance

133:19-25  No Answer

**Joseph Schulman (taken 12/2/2008) :**

16: 19 – 18:2  Irrelevant

**Christopher Van den Honert (taken 12/8/2008)**

17: 16-23 Foundation

51: 12 – 52: 5 Relevance

75: 3-24 Foundation

112: 24- 113:7 Foundation, Speculation

115:19 – 117:2 Foundation, Speculation

**David Kelsall (taken 12/10/2008):**

24:3-18 Relevance

**Alfred E. Mann (taken 12/10/2008):**

9:12 - 10:20 Relevance, Unduly, Prejudicial

**Jeffrey Graunke (taken 12/12/2008):**

28:5- 30:2 Foundation

34:2 -23 Foundation

35: 5-19 Foundation, Speculation

36: 3-6 Foundation

43:13 – 44 : 17 Foundation, Speculation

51: 14-20 Relevance

52: 16-24 Relevance, Foundation

57: 12- 21 Relevance

60: 1-14 Relevance

62: 1-6 Relevance

64: 16 -18 Relevance

**Jeffrey Greiner (taken 12/16/2008):**

26:4-22 Foundation

32:6-18 Relevance

33: 11-24 Relevance

**James Findlay Patrick (taken 12/18/2008):**

43 : 2-7 Relevance, Hypothetical

53: 6 -10 Relevance

97: 3 -10 Relevance, Hearsay

146: 8-24 Foundation

156: 14-22 Foundation, Hearsay

168 : 2 -16 Foundation, Hearsay

180: 14 – 181:12 Relevance, Unduly Prej, No Answer, Colloquy

FIRST AMENDED [PROPOSED]
FINAL PRETRIAL CONF. ORDER
07-8108-FMO-SH