DANIEL JOHNSON, JR. (SBN 57409)
DANIEL GRUNFELD (SBN 128494)
MICHAEL J. LYONS (SBN 202284)
JASON E. GETTLEMAN (SBN 269733)
MORGAN, LEWIS & BOCKIUS LLP
3000 El Camino Real, Suite 7000
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
Email: djjohnson@morganlewis.com
Email: dgrunfeld@morganlewis.com
Email: mlyons@morganlewis.com
Email: jgettleman@morganlewis.com

Attorneys for Plaintiff
ALFRED E. MANN FOUNDATION FOR
SCIENTIFIC RESEARCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALFRED E. MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>Plaintiff,<br><br>vs.<br><br>COCHLEAR CORPORATION, et al.,<br><br>Defendants. | Case No. 2:07-cv-08108-FMO (SHx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge: Hon. Fernando M. Olguin<br>Trial Date: January 14, 2014<br>Time: 9:00 A.M.<br>Courtroom: Ctrm 22, 5th Floor |
| AND RELATED COUNTERCLAIMS | |

Plaintiff Alfred E. Mann Foundation for Scientific Research ("the Foundation") hereby opposes Defendants Cochlear Corporation and Cochlear Ltd. ("Defendants") Rule 50 Motion for Judgment as a Matter of Law ("Motion") on the issues of (1) direct infringement, (2) indirect infringement, (3) willful infringement and (4) damages.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. LEGAL STANDARD .................................................................................. 1

III. DEFENDANTS' MOTION FOR JUDGMENT OF A MATTER OF LAW OF NO DIRECT INFRINGEMENT SHOULD BE DENIED ............. 2

    A. A reasonable jury will find that the accused Cochlear products infringe claim 1 of the '616 patent ......................................................... 2

        1. The accused Cochlear products have an "ICS comprising . . . receiving means" .............................................. 2

        2. The accused Cochlear products have "user controllable means connected to the external processor means for selectively generating and controlling the data-containing signals" .................................................................................... 4

    B. A reasonable jury will find that the accused Cochlear products infringe claim 10 of the '616 patent ....................................................... 5

    C. A reasonable jury will find that the accused Cochlear products infringe claim 6 of the '691 patent ......................................................... 7

        1. The accused Cochlear products have an "ICS including: means for receiving transmissions from the WP" ..................... 7

        2. The accused Cochlear products have a "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes ............................................................................... 8

    D. A reasonable jury will find that the accused Cochlear products infringe claim 7 of the '691 patent ......................................................... 9

# TABLE OF CONTENTS
(continued)

**Page**

  1. The accused Cochlear products have a "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of the transmissions to the ICS" ............................................................. 9

IV. THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE OF "INDIRECT INFRINGEMENT" .................................................................. 10

V. THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE OF WILLFUL INFRINGEMENT ................................................................... 11

VI. THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE SUPPORTING ITS PROPOSED DAMAGES AWARD ............................. 11

VII. CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Costa v. Desert Palace*,
   299 F. 3d 838 (9th Cir. 2002) ................................................................................ 1

*Dawn Equipment Co. v. Kentucky Farms, Inc.*,
   140 F.3d 1009 (Fed. Cir. 1998) ............................................................................. 4

*Funai Elec. Co. Ltd. v. Daewoo Electronics Corp.*,
   616 F.3d 1357 (Fed. Cir. 2010) ......................................................................... 4, 8

*Georgia-Pacific v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................... 14

*Harris Corp. v. Ericsson Inc.*,
   417 F.3d 1241 (Fed. Cir. 2005) ............................................................................. 1

*In re Seagate Technology, LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) (en banc) ..................................................... 12, 13

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   470 F. Supp. 2d 424 (D. Del. 2007) .................................................................... 13

*Johnson v. Paradise Valley Unified Sch. Dist.*,
   251 F.3d 1222 (9th Cir. 2001) ............................................................................... 2

*Ostad v. Or. Health Sci. Univ.*,
   327 F.3d 878 (9th Cir. 2003) ............................................................................... 11

*Ostad v. Oregon Health Sciences University*,
   327 F.3d 876 (9th Cir. 2003) ................................................................................. 1

*Salazar v. Procter & Gamble Co.*,
   414 F. 3d 1342 (Fed. Cir. 2005) ............................................................................ 4

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
   305 F. 3d 1318 (Fed. Cir. 2002) ............................................................................ 4

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ........................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

35 U.S.C. §112 .................................................................................................... 3

35 U.S.C. §274(a) ............................................................................................. 14

35 U.S.C. § 287(a) ............................................................................................ 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(a) ................................................................................... passim

## I. INTRODUCTION

Defendants make their Motion at the close of the Foundation's case-in-chief. Defendants' Motion should be denied. Defendants fail to specify the law and any citations to the trial record that would entitle them to the judgment sought. *See* Fed. R. Civ. P. 50(a)(2). Defendants' Motion does not provide the specificity required to assure Plaintiffs have an opportunity to cure any deficiencies in their proof before submission to the jury. *See* Notes of Advisory Committee on Rules—1991 Amendment for Fed. R. Civ. P. 50(a)(2).

Moreover, as discussed below, the Foundation has presented a legally sufficient basis to support all the claims asserted.

## II. LEGAL STANDARD

If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for" a party on a particular issue, "the court may . . . resolve the issue against the party; and grant a motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law "is not a patent-law-specific issue, so regional circuit law applies." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005). In the Ninth Circuit, the district court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law has a "very high" standard to meet. *Costa v. Desert Palace*, 299 F. 3d 838, 859 (9th Cir. 2002). The Ninth Circuit has held that parties seeking judgment as a matter of law have such a high burden to meet because courts generally should not impinge upon the province of the jury. *Id.* ("[t]his high hurdle [of meeting the standard for judgment as a matter of law] recognizes that credibility, inferences, and factfinding are the province of the jury, not this court"). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe …

and may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## III. DEFENDANTS' MOTION FOR JUDGMENT OF A MATTER OF LAW OF NO DIRECT INFRINGEMENT SHOULD BE DENIED

The Foundation has adduced substantial evidence upon which a jury could conclude that the accused Cochlear products infringe the asserted claims of the '616 and '691 patents both literally and under the doctrine of equivalents. During his testimony, the Foundation's expert, Dr. Darrin Young, discussed reviewing the accused products and related documents, and explained in detail that he found each and every element of the asserted claims were infringed. *See* Jan. 15, 2014 PM Tr. at 67:3 – 112:10; Jan 16, 2014 AM Tr. at 21:3-47:25. The specific elements disputed by the Defendants were discussed in some detail, as referenced below. This evidence warrants denial of the Cochlear Defendants' motion for judgment as a matter of law of no direct infringement.

### A. A reasonable jury will find that the accused Cochlear products infringe claim 1 of the '616 patent

#### 1. The accused Cochlear products have an "ICS comprising . . . receiving means"

Claim 1 of the '616 patent recites "the ICS comprising (a) receiving means for receiving data-containing signals . . . ." TX-1001. The Court construed this limitation to require that "[t]he receiver connected to a main antenna/coil is separate structure from the telemetry transmitter and telemetry antenna/coil." The evidence adduced at trial more than preponderates in favor a reasonable jury finding that the accused Cochlear products contain this limitation.

The Foundation first proved that the accused products literally infringe this limitation by showing that the Accused Implants "have antenna and they also have

a data receiver that can receive the data that's transmitted from outside to the insider, receiving the data-containing signal." Jan 15, 2014 PM Tr. at 98:23-99:1; TX-5.076; TX-5.012. Since this is a means plus function claim, the Foundation would be entitled to a finding of literal infringement if the Accused Products contain identical structures or "equivalents thereof." 35 U.S.C. § 112 ¶ 6.

Since the Foundation alleges the products literally infringe, they would also infringe if the jury applied the doctrine of equivalents.

None of this evidence is discussed—much less analyzed—in Defendants' motion, thus defeating their bald assertions of insufficiency and warranting a denial of their motion. In fact, Defendants' main argument on this limitation is based on prosecution history estoppel. But that is a *legal* issue to be tried to the bench *next week*. Because neither party "has been fully heard on [this] issue," Defendants' prosecution history estoppel arguments are procedurally defective and should be rejected. Fed. R. Civ. P. 50(a)

Defendants' prosecution history estoppel arguments should also be rejected because they are substantively baseless. First, Defendants confuse the issue by equating the doctrine of disavowal with prosecution history estoppel. Defendants' Motion at 4 (alleging that "…the doctrine of equivalents is barred by prosecution history estoppel. Plaintiffs clearly disavowed coverage of the single antenna approach … in the background section of the patents themselves") (emphasis added). No such disavowal has occurred. The Foundation has not attempted to distinguish its invention from the prior art, *i.e.*, U.S. Patent No. 4,947,844 ("McDermott Patent"), as requiring two antennas. Instead, the Foundation simply commented in the Background of the Specification that the '844 patent's system of "simultaneous transmission of the telemetry signal and reception of the input carrier signal" will lead to undesirable results when done in a system "as described" by the McDermott Patent. Ex. 3 at 2:60-61 ('691 Patent). This statement neither

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

3

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION

disavows a single antenna implant nor suggests that a system that is not "as described" in the McDermott patent could not successfully use a single antenna. *Id.* Indeed, the '691 patents specifically describes and encourages using a single antenna in cochlear implant systems. Specifically, the Foundation's patent encourages the use of a single "antenna 20 for transmitting and receiving electromagnetic energy." *Id.* at 4:32-34. Accordingly, the single sentence misinterpreted by Defendants does not give rise to a disavowal of literal claim scope as a structural equivalent. *See Salazar v. Procter & Gamble Co.*, 414 F. 3d 1342, 1347-48 (Fed. Cir. 2005) ("Because such statements do not amount to a clear disavowal of claim scope by the applicant, this court vacates the portion of the district court's claim construction excluding nylon from falling within the scope of the 'elastic' element").

Finally, even if the Court found that a presumption of estoppel arose, there would still not be estoppel in this case because the purported amendments are only tangentially related to the equivalents at issue. *See Funai Elec. Co. Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1369 (Fed. Cir. 2010).

Defendants' cited caselaw is not to the contrary. For instance, in *Dawn Equipment*, the "damning evidence" was that the accused product shared the "problems" with the mechanisms criticized in the specification. *See Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998). Similarly, ruling on the issue of disavowal, the Federal Circuit in *GmbH* held that the criticism of the prior art in the specification of the patent at issue did not amount to a disavowal. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F. 3d 1318, 1325 (Fed. Cir. 2002).

### 2. The accused Cochlear products have "user controllable means connected to the external processor means for selectively generating and controlling the data-containing signals"

Claim 1 of the '616 patent recites: "user controllable means connected to the external processor means for selectively generating and controlling the data-containing signals." The Court has construed the function of this limitation as "selectively generating and controlling the data-containing signals transmitted by the transmitting means of the external headpiece/transmitter means" and the structure of this limitation as "three rotary panel knobs which control potentiometers that control a microprocessor."

There is no dispute that the accused Cochlear products perform the function of the "user controllable means." Defendants' only dispute is that its accused products do not have the structure of the "user controllable means." But to the contrary, the Foundation presented in great detail how the accused products have the corresponding structure of this limitation. For example, Dr. Young cited Trial Exhibits 212 at 5 and 160 at 32, which shows the physician's testing station with a rotary control knob. Jan. 15 2014 PM Tr. at 104:18-106:16. Dr. Young also explained that the sliders used in the present software are structural equivalents. *See id.*; TX-159.043. Indeed, Dr. Young specifically addressed Cochlear's contention that the two weren't structurally equivalent demonstrating the knobs and sliders are frequently interchanged to control power. Jan. 15 2014 PM Tr. at 111:1-112:10. Similarly, Dr. Ginger Stickney, an audiologist who has used both the knob-type and slider-type controls testified as follows: "Q: Is there really any difference from your perspective? A: No." *Id.* at 52:24-25.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

5

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION

### B. A reasonable jury will find that the accused Cochlear products infringe claim 10 of the '616 patent

Claim 10 of the '616 patent recites: "displaying the processed status indicating signals . . . ." The Foundation submitted substantial evidence that the accused Cochlear products perform this step in the asserted method claim.

First, as to literal infringement, the Foundation proved that "displaying occurred in the accused products." Jan. 15 2014 PM Tr. at 89:24-90:4. Put simply, in the Accused Products, "once you process the status indicating signal, the computer will display the process of the status-indicating signal." *Id.* Elaborating on this straight-forward explanation, Dr. Young cited several Cochlear documents indicating that the status indicating signals would be displayed. *See* TX-177.008, 808.070, 808.071, 155.001-002; Jan 15, 2014 PM Tr. at 90:5-91:7. Dr. Young also elaborated that – contrary to the Cochlear Defendants' assertion – displaying impedance literally infringes because impedance makes known voltage, since the formula for impedance is "Voltage / Current." *Id*. at 91:8-95:1.

Second, as to infringement under the Doctrine of Equivalents, the Foundation proved that even if the claim literally required displaying a value measured only in units of volts, that the accused products would still infringe under the doctrine of equivalents. Specifically, Dr. Young testified that "there is insubstantial difference between displaying impedance and displaying voltage" and "the function is to displaying process of status-indicating signal, and that's the same [sic]. You're displaying the process of status-indicating signal as the impedance or as the voltage. And the way and the result are the same. The doctors would know what's going on inside the implant." *Id*. at 95:14-96:1.

Defendants misleadingly omit this substantial evidence from its Motion. Rather, its primary argument is based on prosecution history estoppel—again, a legal issue to be tried to this Court next week. But for the reasons discussed earlier,

1  Rule 50(a) renders these arguments procedurally immature. And for the reasons
2  discussed in the Foundation's Trial Brief, the substance of Cochlear's arguments is
3  without merit.

4      The Foundation is not estopped from arguing infringement under the doctrine
5  of equivalents because the Foundation never amended the relevant claim language
6  and never attempted to distinguish its invention from the prior art by limiting the
7  claims to "measuring of electrode voltage for external display." Instead, the
8  Foundation argued that claim 10 should be allowed over pacemaker prior art
9  because the claimed invention, unlike the pacemaker prior art, monitored electrodes
10 in real time and at the same time as stimulation of the electrode. TX 1303.233. In
11 other words, the Foundation argued that the claimed invention differed from the
12 pacemaker prior art because it allowed for sending signals to a physician's tester as
13 part of a feedback signal as opposed to merely downloading histograms as in the
14 pacemaker prior art. *Id*. Only the displaying capability and not the nature of what
15 was actually to be displayed was material to the Foundation's argument and
16 amendment.

17     The Defendants contend, incorrectly, that the "displaying" step of claim 10 of
18 the '616 patent requires "mak[ing] voltage known externally." Motion at 4:28.
19 There is nothing in Judge King's claim construction order or the file history of the
20 Foundation's patents supporting the Defendants' view that "displaying the
21 processed status-indicating signals" is limited to displaying voltage. In fact, during
22 prosecution, the Foundation explained that "many of the functions carried out by
23 the ICS, e.g., measuring a voltage, measuring a current, determining an electrode
24 impedance, are carried out simultaneously with the application of the stimulating
25 signal to the output electrodes." TX 1303.232. Likewise, the Foundation's patents
26 clearly show a physician's tester displaying impedance values. *See, e.g.,* TX-1001,
27 Fig. 6 ("Z(A), Z(B), Z(bipolar)"), Table 7 ('616 patent).

Moreover, the Cochlear Defendants' argument that the "displaying" limitation requires displaying voltage, and that the Examiner allowed the claims on this basis, was rejected by Judge King. Dkt. No. 212, Civil Minutes at 3 ("We disagree…the Patent Examiner did not emphasize the measuring and displaying of the electrode voltage in voltage form. Rather, the Patent Examiner focused on the fact that this invention, as opposed to a pacemaker, allowed for a display of the data measurements that are taken in real time."). Judge King recognized that "AMF stated that its invention was novel because rather than downloading histogram data that has accumulated in the invention over a period of time (the technology employed in an implantable pacemaker), its invention deals with a physician's tester that measures signals in real time, which are 'sent back to the physician's tester as part of a feedback signal' where they are 'displayed or otherwise processed.'" *Id*.

Finally, even if the Court found that a presumption of estoppel arose, there would still not be estoppel in this case because the purported amendments are only tangentially related to the equivalents at issue. *See Funai Elec. Co.,* 616 F. 3d at 1369 (Fed. Cir. 2010).

As such, the Defendants' prosecution history estoppel argument is meritless and should be rejected.

### C. A reasonable jury will find that the accused Cochlear products infringe claim 6 of the '691 patent

#### 1. The accused Cochlear products have an "ICS including: means for receiving transmissions from the WP"

For this limitation, Defendants recycle their arguments previously raised for claim 1 of the '616 patent. Based on reasons already discussed, the Foundation adduced substantial evidence upon which a jury could conclude that the accused

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

8

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION

Cochlear products infringe this element literally and under the doctrine of equivalents. Motion for judgment as a matter of law on this issue should be denied.

The evidence previously cited for the parallel limitation of Claim 1 of the '616 patent was again relayed to the jury through Doctor Young's testimony. Jan. 16, 2014 AM Tr. at 26:21-27:6; TX-177.008.

### 2. The accused Cochlear products have a "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes . . ."

Claim 6 of the '691 patent recites: "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes . . . ." As construed by the Court, "electrically isolated" means "the electrodes are electrically isolated from the power supplies, from the logic circuitry and from other channels in the ICS" and "capacitor-coupled" "does not require a direct electrical connection between capacitor and electrode"

Contrary to Cochlear's conclusory assertions, the Foundation adduced substantial evidence proving that the accused products infringe this limitation as construed by the Court. At trial, Doctor Young explained TX-157.006 (also 5.075) to the jury, specifically noting that during testing "if you pick one of those electrodes, and also select one of the extra cochlear electrodes as a pair, that condition of the current will flow from one electrode to the other and going through this capacitor, go through the loop. … So, therefore it is capacitor coupled." Jan. 16, 2014 AM Tr. at 29:14-19.

Dr. Young went on to explain that the electrodes in the accused products are electrically isolated. Jan. 16, 2014 AM Tr. at 29:20-31:14. Specifically, Dr. Young explained the process of impedance testing, in which "one [electrode] is connected to current source, the other one is connected to supply voltage called the VDD. And all the other unused electrodes, whether they are inside the cochlear or outside the

cochlear, they are open circuit.  Open circuit means that they are not connected to anything, they are unplugged.  Therefore, they are electrically isolated." *Id.* at 30:3-10 (referencing TX-157.006, 5.075, 161.016, 5.022, 1002.010 and 5.076).

As such, Cochlear's motion for JMOL should be denied.

### D. A reasonable jury will find that the accused Cochlear products infringe claim 7 of the '691 patent

#### 1. The accused Cochlear products have a "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of the transmissions to the ICS"

Claim 7 of the '691 patent depends from claim 6 and further recites: "means in the WP responsive to at least a portion of the status indicating signals for controlling the power level of the transmissions to the ICS."  The construed function of this limitation is "controlling the power level of transmission to the ICS" and its corresponding structure is "a switching regulator of a gate array."

There is no dispute that the accused Cochlear products have the corresponding structure required by this limitation.  Despite this, Cochlear argues that the construed function is not performed.  That argument ignores the evidence of record.  The Foundation proved at trial, via extensive testimony, that the accused speech processors infringe this element of the claim. *See* Jan. 16, 2014 AM Tr. at 40:1-46:9.  These included:

- Technical Documents for the Freedom Speech Processor showing the power saving feature. *Id* at 40:15-41:6 (citing TX-1289)
- Custom Sound programming documents stating "custom[] sound files enable power level and automatic optimization, and you can do it in the automatic mode, or you can do it in the manual mode." *Id*. at 41:19-22 (citing TX-182).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

10

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION

- Physician instructions stating that power level should be measured and adjusted "every time you go into doctor office." *Id* at 42:21-22 (citing TX-1289).

Dr. Young also explained that the linear regulator used in the accused products is equivalent to a switching regulator – "These are just standard off-the-shelf components, and it's a design choice. The difference between a linear regulator and the switching regulat[or] is insubstantial." *Id.* at 44:14-18; 45:16-9.

Moreover, Defendants' argument that Dr. Young "never looked at any of the accused sound processors' source code" is irrelevant and wrong. Motion at 7:1. Dr. Young properly relied on technical documents that provided a reasonable basis for his conclusions as an expert. *See, e.g.*, Jan. 16, 2014 AM Tr. at 57: 10-13. Cochlear did not object to such testimony as speculative. Whether or not Dr. Young reviewed the software code goes to the weight of his testimony and here, where all reasonable inferences must be drawn in favor of the non-moving party, these arguments are irrelevant. *See Ostad v. Or. Health Sci. Univ.*, 327 F.3d 878, 881 (9th Cir. 2003). Additionally, the documents relied on by Dr. Young include identification of the specific variables in the software code that enable the infringing feature. *See, e.g.,* TX-233.074.

Direct infringement having been shown both literally and under the doctrine of equivalents for asserted claims 1 and 10 of the '616 patent and claims 6 and 7 of the '691 patent, Cochlear's motion for JMOL should be denied.

**IV.  THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE OF "INDIRECT INFRINGEMENT"**

As discussed above, the Foundation presented to the jury more than sufficient evidence of Defendants' direct infringement. As such, Defendants' argument that the Foundation's indirect infringement allegations must fail due to the lack of evidence of direct infringement is unavailing. Moreover, The Foundation's

witness, Dr. Ginger Stickney, provided ample evidence showing the Cochlear Defendants acted with intent to cause infringing acts, including evidence of a network of representatives on call to assist in taking impedance readings, instruction from Cochlear representatives on performing the infringing methods and assembling the infringing structures and workshops and seminars hosted by Cochlear representatives. *See* Jan. 15, 2014 PM Tr. at 55:13-56:25. The Defendants have also designed their software with the option to "always show NRT objective measures." *Id.* at 51:20-21. Dr. Kelsall similarly testified that that the Cochlear Defendants instructed his staff on performing the infringing methods. *Id.* at 34:8-9.

## V. THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE OF WILLFUL INFRINGEMENT

The Foundation has presented sufficient evidence that the Cochlear Defendants knew of the asserted patents and acted despite an objectively high likelihood that they would be infringed. *See In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). The Foundation's expert, Dr. Darrin Young, explained in great detail as described above how Defendants infringed the asserted patents despite knowing that there existed an objectively high likelihood that their actions were infringing.

It is undisputed that the Defendants knew of the '691 patent by June 2004, and of the '616 patent and its subject matter by July 2003. *See* Stipulated Facts [Dkt. 360-1] at nos. 172 and 173.[1] Despite knowing of the patents and their subject matter, the Cochlear Defendants made no changes to their products, and continued selling infringing products. *Id.* at nos. 180a, 181a, 182a, 183a, 188 and 193. In

---

[1] The Stipulated Facts in the Pretrial Conference Order were read into evidence without corresponding numbers provided. Jan 14, 2014 AM Tr. at 66:7-86:13. Reference to the Pretrial Conference Order Stipulated Facts with numbers, rather than the transcript, is simply for ease of reference.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

12

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION

addition, the Cochlear Defendants continued to introduce new infringing products after being aware of the patents-in-suit, and after this lawsuit was filed. *Id.* at no. 46-48 (Nucleus Freedom Speech processor introduced in 2005); 80 (Nucleus Freedom FDA application). The Defendants also admit that the CI500 implants use the same CIC4 integrated circuit as the CI24RE. *Id.* at no. 88.

Finally, the Defendants are neither offering nor relying on the advice of counsel in their defense. *Id.* at no. 156.

## VI. THE FOUNDATION HAS SUBMITTED AMPLE EVIDENCE SUPPORTING ITS PROPOSED DAMAGES AWARD

Defendants' two-line argument that they are entitled to judgment as a matter of law on the issue of damages fails to fulfill the requirements under Rule 50(a)(2). Defendants' blanket incorporation of their *Daubert* motions and objections to Cate Elsten's PowerPoint presentation—all made before Ms. Elsten's trial testimony—fails to cure this problem. The Court denied Defendants' *Daubert* motion as moot (Dkt. 354 at 24:7-9) and overruled Defendants' objections to Ms. Elsten's PowerPoint presentation and testimony. *See* Jan. 16, 2014 AM Tr. at 18:5-10 (ruling that Ms. Elsten could testify because "under *Daubert*, it comes in, and so I am going to allow it").

Moreover, in determining a reasonable royalty, Ms. Elsten analyzed three well-established valuation methods – performing analyses under the Market Approach and the Income Approach, and lacking sufficient information to perform and analysis under the Cost Approach. *See Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) ("A reasonable royalty can be calculated from an established royalty, the infringer's profit projection for infringing sales, or a hypothetical negotiation between the patentee and the infringer . . ."); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 432 (D. Del. 2007) (describing expert's analysis of royalty under the

Market, Income and Cost Approaches).  Ms. Elsten applied the *Georgia-Pacific* factors to further determine a reasonable royalty in this case.  *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).

Contrary to Defendants' conclusory argument that Plaintiffs have failed to proffer any admissible evidence of damages, the Foundation's expert, Ms. Elsten testified at length regarding the reasonable royalty of 7.5% that is due to the Foundation if the patents are found valid and infringed.  *See* Jan. 16. 2014 AM Tr. at 124:16-134:13; 135:16-146:7; Jan. 16. 2014 Trial Tr. PM, 5:16-21:14.  Ms. Elsten also presented ample evidence of Defendants' sales of the accused products. *See* TX-18-21; TX-314-352; TX-394-399; TX-3028; Jan. 16, 2014 PM Tr. at 21:15-24:16.  Moreover, revenue for the accused products from December 2001 to December 2012 is not in dispute as the parties have stipulated to those amounts. *See* Stipulated Facts [Dkt. 360-1] at nos. 133-170.

With respect to marking, Defendants claim no evidence exists that Plaintiffs "marked products or product packaging with the patents-in-suit." Motion at 8:21-22.  Defendants cite to a non-existent statute, 35 U.S.C. Section 274(a), and do not specify the judgment sought as to this issue.  *See* Fed. R. Civ. P. 50(a)(2). Presuming that the Cochlear Defendants mean 35 U.S.C. § 287(a), they have not established that any products practice the inventions in the patents-in-suit that would require compliance with the marking statute.

Even assuming marking were required, the Foundation has adduced evidence that Advanced Bionics marked its products with the '616 patent and that Advanced Bionics was required to mark its products with the patent numbers pursuant to the terms of the license between the Foundation and Advanced Bionics.  *See* TX-277; TX-1125, Jan. 16, 2014 AM Tr. at 95:14-25; Jan. 14, 2014 PM Tr. at 105:17-107:7.

## VII. CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that the Court deny Defendants' Motion.

Dated: January 18, 2014

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Michael Lyons
Michael Lyons
Attorneys for Plaintiff
Alfred E. Mann Foundation for Scientific Research

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

15

OPPOSITION TO DEFENDANTS'
RULE 50 MOTION