SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
BRUCE G. CHAPMAN, Cal. Bar No. 164258
bchapman@sheppardmullin.com
SCOTT R. MILLER, Cal. Bar No. 112656
smiller@sheppardmullin.com
LAURA M. BURSON, Cal. Bar No. 204459
lburson@sheppardmullin.com
MANUEL C NELSON, Cal. Bar No. 229590
mnelson@sheppardmullin.com
DENNIS J. SMITH, Cal. Bar No. 233842
dsmith2@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendants and
Counterclaimants COCHLEAR LTD. and
COCHLEAR AMERICAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALFRED MANN FOUNDATION FOR SCIENTIFIC RESEARCH,<br><br>                  Plaintiff,<br><br>        v.<br><br>COCHLEAR CORPORATION et al.,<br><br>                  Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 07-08108 FMO (SHx)<br><br>**DEFENDANTS' COCHLEAR LTD. AND COCHLEAR AMERICAS OPPOSITION TO PLAINTIFFS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Trial Date:  January 14, 2014<br>Time:          9:00 a.m.<br>Place:         Hon. Fernando M. Olguin<br>                   Ctrm. 22, Fifth Floor |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................ 1

II.   LEGAL STANDARD ......................................................................... 1

III.  PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW
      REGARDING INVALIDITY SHOULD BE DENIED ............................ 2

      A.    U.S. Patent No. 5,609,616 ("the '616 patent") .................................. 2

            1.    The "selectively monitoring the at least one pair of
                  the…electrodes" element of claims 1 and 10 is taught in prior
                  art ........................................................................................... 3

            2.    "transmitting the stimulator status-indicating signals to an
                  external receiver coupled to the external transmitter" is also
                  found in prior art .................................................................... 4

      B.    U.S. Patent No. 5,938,691 ("the '691 patent") .................................. 5

            1.    "a decoder, a telemetry function decoder and a signal
                  multiplexer" are also found in the prior art .......................... 5

            2.    "means…for controlling the power level of transmissions to
                  the ICS" is taught by the prior art ......................................... 5

IV.  PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF
     DIRECT INFRINGEMENT SHOULD BE DENIED ............................. 7

      A.    The '616 Patent ................................................................................ 8

            1.    Dr. Robert Stevenson has shown that the accused implants
                  have a single antenna for both receiving and transmitting
                  and that there is no equivalents .............................................. 8

            2.    Dr. Robert Stevenson has also shown that the accused devices
                  do not make use of the "user controllable means connected to
                  the external processor means for selectively generating and
                  controlling the data-containing signals" element of claim 1 of
                  the '616 patent ...................................................................... 10

            3.    Dr. Robert Stevenson has also shown that the accused devices
                  do not perform the "displaying the processed status
                  indicating signals . . . ." step of claim 10 of the '616 patent 11

4.      Plaintiffs also have failed to prove Defendants infringe claims 6 or 7 of the '691 patent for one of the same reasons as addressed for claim 1 of the '616 patent:  accused implants have just a single antenna ...................................................... 12

5.      Dr. Stevenson also proved that the accused implants do not make use of a "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes . . ." as required by claims 6 and 7 of the '691 patent ........................................... 12

6.      Dr. Stevenson proved that the accused sound processors do not include a "means . . . responsive to at least a portion of the status indicating signals for controlling the power level of the transmissions to the ICS" ................................................ 13

**V. PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF INDIRECT INFRINGEMENT SHOULD BE DENIED** ........................ 14

**VI. PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INEQUITABLE CONDUCT SHOULD BE DENIED** .................... 16

**VII. PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF WILLFUL INFRINGEMENT SHOULD BE DENIED** ................... 17

**VIII. THE DAMAGES AWARD SHOULD BE LIMITED BY THE MARKING STATUTE** ................................................................ 18

**IX. CONCLUSION** .............................................................................. 19

Defendants Cochlear Corporation and Cochlear Ltd. ("Defendants") hereby opposes Plaintiff Alfred E. Mann Foundation for Scientific Research ("Plaintiffs") Rule 50 Motion for Judgment as a Matter of Law ("Motion") on the issues of (1) direct infringement, (2) indirect infringement, (3) invalidity, (4) willful infringement, (5) damages not being limited by the marking statute, and (6) inequitable conduct.

## I.
## INTRODUCTION

As discussed below, Defendants have presented a legally sufficient basis to support all the claims asserted and, therefore, the Motion should be denied.

## II.
## LEGAL STANDARD

If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for" a party on a particular issue, "the court may . . . resolve the issue against the party; and grant a motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(a)(1).  A motion for judgment as a matter of law "is not a patent-law-specific issue, so regional circuit law applies." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005).  In the Ninth Circuit, the district court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 881 (9th Cir. 2003).  A party seeking judgment as a matter of law has a "very high" standard to meet.  *Costa v. Desert Palace*, 299 F. 3d 838, 859 (9th Cir. 2002). The Ninth Circuit has held that parties seeking judgment as a matter of law have such a high burden to meet because courts generally should not impinge upon the province of the jury.  *Id.* ("[t]his high hurdle [of meeting the standard for judgment as a matter of law] recognizes that credibility, inferences, and factfinding are the province of the jury, not this court"). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe… and

-1-

1  may not substitute its view of the evidence for that of the jury." *Johnson v.*

2  *Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (quoting

3  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

4  ### III.

5  ### PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW

6  ### REGARDING INVALIDITY SHOULD BE DENIED

7      Defendants have presented clear and convincing evidence that would

8  allow a reasonable jury to find that the asserted claims are invalid.  In particular, Dr.

9  Gerald Loeb, Defendants' expert, testified that he analyzed the asserted claims as

10  construed by the Court and compared those claims to the prior art.  Dr. Loeb then

11  concluded that every element of the asserted claims was found in one or more prior

12  art references.  Accordingly, Dr. Loeb testified that it is his opinion that all of the

13  asserted claims are invalid.  *See* Jan. 17, 2014 P.M. Tr. at 42:16-93:5; Jan. 21, 2014

14  A.M. Tr. (Rough) at 11:2-67:20; TX 1039, 1152, 1190, 1200.  Loeb also testified

15  that his conclusions that all of the asserted claims are invalid was based on

16  Exhibits 1039, 1150, 1152, 1157, 1190, 1194, 1197, 1200.  (Jan. 17, 2014 P.M. Tr.

17  at 49:13-52:14.)

18  **A.**     **U.S. Patent No. 5,609,616 ("the '616 patent")**

19      Dr. Loeb testified that he found all of the elements of claim 1 are

20  disclosed in Crosby (Exhibit 1190) when combined with Borkan (Exhibit 1152) and

21  the McDermott '89 Article (Exhibit 1039).  *See* Jan. 17, 2014 P.M. Tr. at 76:3-93:5.

22  Therefore, Dr. Loeb testified that he found claim 1 of the '616 patent invalid as

23  obvious.  Dr. Loeb also testified that he found all of the elements of claim 10 in the

24  McDermott '89 Article (Exhibit 1039).  *See* Jan. 17, 2014 P.M. Tr. at 42:16-76:2.

25  Therefore, Dr. Loeb testified that he concluded that claim 10 of the '616 patent is

26  invalid as anticipated.

27

28

1.   **The "selectively monitoring the at least one pair of the…electrodes" element of claims 1 and 10 is taught in prior art**

In terms of validity, Plaintiffs' Motion first argues that the "selectively monitoring the at least one pair of the . . . electrodes" element of claims 1 and 10 of the '616 patent is not found in the prior art. (Motion at 11.)  However, the Motion ignores the clear disclosure of exactly this element as Dr. Loeb explained.  *See* Jan. 17, 2014 P.M. Tr. at 64:9-65:14; 81:21-85:21.  With respect to claim 10 of the '616 patent, Dr. Loeb testified that the McDermott '89 Article teaches that "Any two electrodes can be configured as a bipolar pair to conduct a symmetric, biphasic, constant-current pulsatile stimulus." (Exhibit 1039 at p. 789.)  McDermott '89 Article goes on to explain that "the telemetry system, which is included to allow electrode voltage waveforms to be monitored externally…" (*Id.* at p. 792.)  McDermott '89 Article then teaches that "electrode voltage excursions resulting from particular stimuli can be measured . . ." (*Id.* at p. 793.)

And for claim 1 of the '616 patent, Dr. Loeb testified that Crosby teaches using "An electrode array with platinum rings 52 (of which twenty-one are shown in FIG. 5…" (Exhibit 1190 at col. 14, lines 43-46.)  And Borkan teaches that "The electrode voltage is buffered and placed into a sample and hold circuit 598.  A fixed current charges a capacitor 604 in a voltage controlled oscillator 602, which, for a present amount of time determined by timer 607, is counted by counter 608, producing an impedance equivalent binary code for the measured voltage." (Exhibit 1152 at col. 24, lines 29-34.)  In fact, Plaintiffs' own witness, Mr. John C. Gord agreed that one always measures the voltage between two electrodes (a pair):

> Q And to determine impedance of tissue that's being stimulated, you have to measure the voltage between two electrodes; correct?

A It depends on what you mean by electrodes.  But, yes, generally you need two connections somehow to the tissue.

Q Two connections on either side of the tissue where you're determining the impedance; correct?

A It generally requires, I think, two connections. Yes.

(Jan. 15, 2014 P.M. Tr. at p. 28:23-29:5.)

2.    **"transmitting the stimulator status-indicating signals to an external receiver coupled to the external transmitter" is also found in prior art**

Plaintiffs' Motion next argues that invalidity of claim 10 was not proven by clear and convincing evidence because Dr. Loeb did not show the external receiver and external transmitter discussed in the McDermott '89 Article are "coupled."  (Motion at 12.)  Again, Plaintiffs ignore Dr. Loeb's explicit discussion of this very element—a discussion based in part on the broad definition of "coupled" with which Plaintiffs' expert, Dr. Darrin Young, agrees.  (Jan. 17, 2014 P.M. Tr. at 67:6-25; 73:14-75:9.)  Specifically, Dr. Loeb explained that under the broad definition that both experts have adopted for "coupled," the McDermott '89 Article expressly discloses an external transmitter that is coupled to an external receiver because the definition encompasses any transfer of electromagnetic energy and also includes intervening components.  (Exhibit 1039 at Fig. 4.)

And Dr. Loeb explained that even if one were to apply a more narrow functional or structural understanding of "coupled," that it would have been obvious to physically or functionally couple the external transmitter and external receiver. (Jan. 17, 2014 P.M. Tr. at 73:14-75:9.)  For example, Dr. Loeb testified that because the cochlear implant's antenna must be properly aligned with both the wearable processor's transmitting coil and the telemetry receiving probe disclosed in the McDermott '89 Article, it would have been obvious to a person of ordinary skill in

1   the art to physically attach the external coils in the same housing or with some other

2   attachment means such as glue or tape.  (*Id.*)

3   **B.      U.S. Patent No. 5,938,691 ("the '691 patent")**

4        **1.      "a decoder, a telemetry function decoder and a signal multiplexer"**

5            **are also found in the prior art**

6            The Plaintiffs' Motion next states that Dr. Loeb failed to come forth

7   with adequate evidence showing that the prior art discloses the required

8   corresponding structure of a "decoder, a telemetry function decoder and a signal

9   multiplexer" for claim 6 of the '691 patent.  (Motion at 12.)  First, Plaintiffs appear

10  to analyze the wrong testimony.  Plaintiffs' argument purports to be that Dr. Loeb's

11  cited testimony was inadequate as applied to **claim 6 of the '691 patent** by citing

12  Dr. Loeb's testimony given the afternoon of Friday, January 17, 2014.  (Motion at

13  12 ("*See*. Jan. 17, 2014 PM Tr. at 84:12-13.").)  Dr. Loeb did not discuss claim 6 of

14  the '691 patent until the morning of Tuesday, January 21, 2014.  Plaintiffs' Motion

15  should be denied as to the validity of claim 6 of the '691 patent for this reason alone.

16          Plaintiffs are also substantively incorrect.  Dr. Loeb explains that

17  Borkan uses a microprocessor to perform all decoding functions as made clear by

18  Figure 16.  (Jan. 21, 2014 A.M. Tr. (Rough) at 23:14-24:24; Exhibit 1152 at

19  Fig. 16.)  The text in Borkan also states that the implant taught in Borkan performs

20  the function of selectively monitoring electrode voltages and telemetering those

21  signals to the external programmer.  (Exhibit 1152 at col. 21, lines 28-42; col. 24,

22  lines 29-34.)

23      **2.      "means...for controlling the power level of transmissions to the**

24            **ICS" is taught by the prior art**

25          Lastly regarding validity, the Motion argues that Dr. Loeb did not

26  provide adequate evidence with respect to claim 7 of the '691 patent to show that

27  the prior art discloses the structure or function associated with the "means...for

28  controlling the power level of transmissions to the ICS" element.  (Motion at 13.)

1   Like its earlier arguments, Plaintiffs once again ignore Dr. Loeb's relevant

2   testimony on this point.  Dr. Loeb explained to the jury that the Peeters '87 Article

3   describes the very feedback control that this element of claim 7 recites:

4                    Peeters is describing feedback control to measure the

5                    voltages at the electrode and send the information back,

6                    and he goes on to say that in 1986 there is an extended

7                    feedback control and included the voltage measurements

8                    on electrodes, internal power supply control, and full

9                    control of every step in the internal processor.

10                   * * * *

11                   All the energy in the internal power supply comes from

12                   the external transmission. The only way you could change

13                   the -- the values that are available -- the energy that's

14                   available to the internal power supply is to change the

15                   amount of power that's being transmitted from the outside.

16   (Jan. 21, 2014 A.M. Tr. (Rough) at 31:21-32:23; Exhibit 1200 at 551.)

17                   And in terms of the corresponding structure, Dr Loeb clearly stated that

18   it is his opinion that it would have been obvious to a person of ordinary skill in the

19   art at the time to use a switching regulator because that is a basic component that has

20   been available for decades:

21                   Peeters does not describe in detail the circuitry that he

22                   used to accomplish this function, but it would be obvious

23                   to any engineer that, particularly for a system that needs to

24                   be power efficient

25                   * * * *

26                   Q. Why do you think that structure is present if it's not

27                   shown in Peeters?

28

1  A. This is a typical engineering solution for the problem of
2  efficiently changing the power level of the transmission.
3  You would use a switching regulator.
4  Q. Would it have been obvious at the time of the filing of
5  the '691 patent to do that?
6  A. Yes, they've been available for decades.
7  (Jan. 21, 2014 A.M. Tr. (Rough) at 33:6-25.)

8  Therefore, the Motion fails to establish that Defendants have not

9  presented clear and convincing evidence that would allow a reasonable jury to find

10  that the asserted claims are invalid.  On the contrary, Dr. Loeb provided more than

11  adequate evidence to support a finding of invalidity and, thus, Plaintiffs' motion for

12  judgment as a matter of law regarding invalidity should be denied.

13  **IV.**

14  **PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF**

15  **DIRECT INFRINGEMENT SHOULD BE DENIED**

16  "Literal infringement …requires that the accused device contain each

17  of the claim elements and their recited limitations." *Signtech USA, Ltd. v. Vutek,*

18  *Inc.*, 174 F.3d 1352, 1358 (Fed. Cir. 1999).  A patentee claiming infringement must

19  prove that claim by a preponderance of the evidence.  *Carroll Touch, Inc. v. Electro*

20  *Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993).

21  Defendants have presented substantial evidence upon which a jury

22  could conclude that the accused Cochlear products do not directly infringe the

23  asserted claims of the '616 and '691 patents either literally or under the doctrine of

24  equivalents.  During his testimony, Dr. Robert L. Stevenson discussed reviewing the

25  accused products and related documents, and explained in detail that he found one

26  or more elements from each of the asserted claims was absent from the accused

27  products, thereby preventing a finding of infringement.  *See* Jan. 21, 2014 A.M. Tr.

28

(Rough) at 92:11-145:9.  The specific elements identified in the Motion were discussed in detail, as explained below.

**A.     The '616 Patent**

> **1.     Dr. Robert Stevenson has shown that the accused implants have a single antenna for both receiving and transmitting and that there is no equivalents**

Plaintiffs begin this section of the Motion by mischaracterizing Dr. Loeb's testimony about design choices as somehow acknowledging equivalents— which he did not do.  (Motion at 4.)  Dr. Loeb testified that Specifically, Dr. Loeb explained that "Borkan quite specifically realized that there might be reasons to have one antenna that could be used both to transmit and receive or to have a same or different antenna."  (Jan. 21, 2014 A.M. Tr. (Rough) at 18:6-9.)  However, Plaintiffs conveniently omit Dr. Loeb's very next statement which clearly explains his opinion that an implant with a single antenna that performs both the receiving and transmitting functions is <u>not</u> equivalent to an implant that has two separate antennae for performing these functions separately:

> There are electronic advantages to doing it one way or the
> other. You would get a rather different result, but he
> clearly anticipated both schemes for transmitting and
> receiving information in which the antenna is the same or
> is a separate antenna.

(*Id.* at 18:10-14.)

The Motion also glosses over Dr. Stevenson's unambiguous testimony that these structures are not equivalent.  (Jan. 21, 2014 A.M. Tr. (Rough) at 95:2-4 ("Q. What about equivalence? Do you think that one antenna could be equivalent to two antenna in this situation? A. Certainly not in this case, no.").)  Dr. Stevenson then goes on to point out that both patents-in-suit criticize the single antenna approach used in the Defendants' accused implants:

1    Q. Does the patent describe problems with that approach?

2    A. Yes. So you can see right after that. The very next

3    sentence starts with "Unfortunately," and it's -- it points

4    out the problem with such a structure.

5    He points out that such a telemetry system is not only

6    limited to the monitoring of one voltage, but the

7    simultaneous transmission of the telemetry signal and

8    reception of the input carrier signal as described will result

9    in undesired modulation and possible loss of input data.

10   (*Id.* at 96:3-12.)

11   In fact, Plaintiffs' own expert, Dr. Young used an analogy based on

12   walkie talkies that perfectly illustrates the loss of data issues that the patents-in-suit

13   are criticizing:

14   You used the Walkie Talkie example, correct?

15   A. That's correct.

16   Q. So, one person talks on the Walkie Talkie?

17   A. Yes.

18   Q. And they lift their finger, and the other person can talk

19   on the Walkie Talkie. What happens if both people push

20   the send button at the same time?

21   A. If those people push the button simultaneously, under

22   the Walkie Talkie condition, you may hear some noise.

23   (Jan. 16, 2014 A.M. Tr. at 74:20-75:3.)

24   Therefore, Dr. Loeb, Dr. Stevenson, the patents-in-suit and even Dr.

25   Young's own analogy show that there can be no direct infringement of claim 1 of

26   the '616 patent because a cochlear implant with a single antenna for both receiving

27   and transmitting signals is not equivalent to a cochlear implant that has two separate

28   antennae for performing each function separately.

1       **2.**      **Dr. Robert Stevenson has also shown that the accused devices do**

2               **not make use of the "user controllable means connected to the**

3               **external processor means for selectively generating and controlling**

4               **the data-containing signals" element of claim 1 of the '616 patent**

5       The Motion next addresses the "user controllable means" element of

6 claim 1.  The Court construed the function of this element as "selectively generating

7 and controlling the data-containing signals transmitted by the transmitting means of

8 the external headpiece/transmitter means" and the structure of this limitation as

9 "three rotary panel knobs which control potentiometers that control a

10 microprocessor."

11       Dr. Young has opined that the graphical slider bar elements displayed

12 by Custom Sound on the computer screen are the infringing structures in the

13 accused products.  (Jan. 15, 2014 A.M. Tr. at 52:20-25.)  It is undisputed that the

14 accused devices do not have "three rotary panel knobs which control potentiometers

15 that control a microprocessor."  And Dr. Stevenson testified that the accused

16 products do not perform the "selectively generating the data-containing signals"

17 function because the slider bars are not on the device that generates the

18 stimulation—the device that does the generating of the signal is the separate speech

19 processor:

20           In the accused device as you adjust these sliders, there is

21           no stimulation signal being generated you can move them

22           up and ask down they're not getting stimulation signals, so

23           these sliders don't control the microprocessor to generate

24           stimulation signals and comptroller control them as

25           required by the functional elements.

26 (Jan. 21, 2014 A.M. Tr. (Rough) at 115:3-8.)  Accordingly, the structure that

27 Plaintniffs' have identified as the corresponding structure does not performed the

28 recited function and, therefore, the accused products cannot infringe claim 1.

3.    **Dr. Robert Stevenson has also shown that the accused devices do not perform the "displaying the processed status indicating signals . . . ." step of claim 10 of the '616 patent**

It is not disputed that the accused products display impedance only—they do not display voltage as is required by this step of claim 10 of the '616 patent. And Dr. Stevenson testified that the display of impedance is not equivalent to the display of voltage.  (Jan. 21, 2014 A.M. Tr. (Rough) at 118:20-121:25.)  Dr. Young's entire argument concerning equivalents of displaying impedance versus displaying voltage is based on Ohm's Law.  Specifically, Dr. Young testified:

> If you know the voltage that you measure, if you know the current that you define, you just simply take the ratio. The voltage divided by the current will give you the impedance. The Ohm's Law equation like Z is equal to voltage V, divided by the current. So knowing that the impedance and also knowing the current, you will know the voltage.

(Jan. 15, 2014 P.M. Tr. at 92:7-13.)

However, Dr. Young's reliance on Ohm's law actually provides to a mathematically certainty that displaying impedance alone, which is what the accused products do, is not equivalent to the display of voltage.  As Dr. Young explained in the above quote of his testimony, Ohm's law states that voltage equals resistance times impedance.  (*Id.*)  Thus, to know voltage one necessarily must know two other variables:  both current and impedance.  But, again, it is undisputed that the accused devices only display impedance—not voltage and not resistance.

Plaintiffs then, again, mischaracterize a statement by Dr. Loeb.  (Motion at 6.)  Dr. Loeb stated that "as we know from multiple previous witnesses, impedance is information that provides something about the status of the implanted system, Ohm's Law and all that sort of thing we were talking about.  This would be

information about the status that's being displayed for the user." (Jan. 17, 2014 P.M. Tr. at 92:14-18.) However, Dr. Loeb was not discussing claim 10 of the '616 patent—he was discussing the very different displaying element of claim 1 of the '616 patent. (*Id.*)

> **4.** **Plaintiffs also have failed to prove Defendants infringe claims 6 or 7 of the '691 patent for one of the same reasons as addressed for claim 1 of the '616 patent:  accused implants have just a single antenna**

The Motion then addresses the same "means for receiving . . ." element discussed above in connection with claim 1 of the '616 patent (Section IV(A)(1) *supra*). Like claim 1 of the '616 patent, claims 6 and 7 of the '691 patent require that the accused implants have separate receiving and transmitting antennae. Defendants cannot infringe claim 6 or 7 of the '691 patent because the accused implants all have a single antenna as discussed above, that discussion is hereby incorporated by reference as if fully stated herein.

> **5.** **Dr. Stevenson also proved that the accused implants do not make use of a "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes . . ." as required by claims 6 and 7 of the '691 patent**

Plaintiffs next argue that they have proven that the accused implants make use of Claim 6 of a "plurality of electrically isolated capacitor-coupled cochlea stimulating electrodes . . . ." This element has been construed by the Court so that "electrically isolated" means "the electrodes are electrically isolated from the power supplies, from the logic circuitry and from other channels in the ICS" and "capacitor-coupled" "does not require a direct electrical connection between capacitor and electrode." Dr. Stevenson testified about and pointed to numerous pieces of evidence showing that the neither the Nucleus 24 nor the Nucleus Freedom

1  implants have electrically isolated and capacitor-coupled cochlear stimulating

2  electrodes.  (Jan. 21, 2014 A.M. Tr. (Rough) at 98:17-105:24.)

3          Specifically, Dr. Stevenson pointed to several of Defendants' technical

4  specifications and circuit diagrams that showed that (i) the electrodes in the accused

5  implants are either shorted together at the interphase gap, or only separated from one

6  another by resistors or both, meaning that they are not electrically isolated and (ii)

7  the only capacitors are on the extracochlear electrodes which are not cochlear

8  stimulating electrodes as required by the claims.  (*Id.*; Exhibit 72 at p. 12 & Fig. 5;

9  Exhibit 1273; Exhibit 73 at pp. 8, 29; Exhibit 1283.)

10    **6.    Dr. Stevenson proved that the accused sound processors do not**

11          **include a "means . . . responsive to at least a portion of the status**

12          **indicating signals for controlling the power level of the**

13          **transmissions to the ICS"**

14          As Dr. Stevenson explained during his trial testimony, the accused

15  products cannot infringe claim 7 of the '691 patent for all of the reasons stated

16  above for claim 6 due to its dependency—i.e., claim 7 incorporates all of the

17  elements of claim 6 and then adds additional elements.  (Jan. 21, 2014 A.M. Tr.

18  (Rough) at 106:10-16.)

19          Claim 7 of the '691 patent also adds another element that the accused

20  products do not include.  Claim 7 further recites: "means in the WP responsive to at

21  least a portion of the status indicating signals for controlling the power level of the

22  transmissions to the ICS."  The construed function of this limitation is "controlling

23  the power level of transmission to the ICS" and its corresponding structure is "a

24  switching regulator of a gate array."  And as Dr. Stevenson testified, the clear

25  language of this element of claim 7 requires that the control of the power level of

26  transmissions the wearable processor sends to the ICS must be responsive to at least

27  a portion of the status indicating signals.  (Jan. 21, 2014 A.M. Tr. (Rough)

28  at 107:12-20.)

1    Dr. Stevenson explained that the accused products do not perform the

2 recited function and they do not have the required corresponding structure for

3 performing the claimed function. (*Id.* 107:21-111:15.)  Specifically, Dr. Stevenson

4 testified that he analyzed the source code of the SP5 speech processor and the source

5 code proved that the speech processor does not automatically change the power of

6 the transmissions to the implant based on back telemetered information.  The power

7 level is set manually by a physician or audiologist during implantation or yearly

8 checkups and thereafter does not change. (*Id.* 108:2-109:14; 144:23-145:11.)

9    Dr. Stevenson also addressed Exhibit 1289, as did numerous other

10 Cochlear employees, and explained that Exhibit 1289 shows what the structure is

11 capable of doing but it is the software that determines what the hardware actually

12 does. (*Id.* 142:3-145:11; Exhibit 1289.)

13    For the reasons stated above, Dr. Stevenson provided more than

14 adequate evidence to support a finding of noninfringement and, thus, Plaintiffs'

15 motion for judgment as a matter of law regarding direct infringement should be

16 denied.

17    **V.**

18    **PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF**

19    **INDIRECT INFRINGEMENT SHOULD BE DENIED**

20    It is well settled that "that there can be no indirect infringement without

21 direct infringement." *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526,

22 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); *Aro Mfg. Co. v. Convertible Top*

23 *Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); *Henry v.*

24 *AB. Dick Co.*, 224 U.S. 1, 12, 32 S.Ct. 364, 56 L.Ed. 645 (1912).  "The reason for

25 that rule is simple: There is no such thing as attempted patent infringement, so if

26 there is no infringement, there can be no indirect liability for infringement." *Akamai*

27 *Tech., Inc., v. Limelight Networks*, 692 F.3d 1301, 1308  (Fed. Cir. Aug. 2012).

28

1      Here, for the reasons stated above in Section IV, Dr. Stevenson's

2    testimony and supporting evidence establishes that the accused products do not

3    directly infringe any of the asserted claims.  Therefore, there can be no indirect

4    infringement.

5      Tony Nygard testified that Defendants believed that they were merely

6    practicing the prior art and, therefore, Defendants had a good faith belief that they

7    were not infringing any patent.  (Jan. 17, 2014 P.M. Tr. at 70:14-20; Exhibit 1071;

8    Exhibit 1072; Exhibit 634; Stipulated Fact No. 164.)  Defendants also had a good

9    faith belief that the asserted claims are all invalid as anticipated, obvious, or

10   indefinite for failure to include the required algorithm for the computer-

11   implemented means clauses in claim 1 of the '616 patent and claims 6 and 7 of the

12   '691 patent.  *See Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1368-69

13   (Fed. Cir. 2013) (reversing district court that excluded evidence of defendant's good

14   faith belief in the patent-in-suit's invalidity because "a good-faith belief of invalidity

15   is evidence that may negate the specific intent to encourage another's infringement,

16   which is required for induced infringement"); *Kinetic Concepts, Inc. v. Blue Sky*

17   *Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009) (stating that a defendant's

18   "belief that it can freely practice inventions found in the public domain" supports "a

19   jury's finding that the intent required for induced infringement was lacking" and

20   affirming jury verdict where defendant testified it believed it was "practicing the

21   prior art"); *Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2068 (2011);

22   *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (affirming district

23   court's denial of motion for judgment as a matter of law because defendant

24   presented evidence that it reasonably believed the patent-in-suit did not cover the

25   alleged infringing activity and, therefore, was not liable for inducing infringement).

26      For the reasons stated above, Plaintiffs' motion for judgment as a

27   matter of law regarding indirect infringement should be denied.

28

SMRH:416230743.2

-15-

# VI.

## <u>PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INEQUITABLE CONDUCT SHOULD BE DENIED</u>

A party alleging inequitable conduct must prove by clear and convincing evidence that the patent applicant (1) made a misrepresentation to the PTO, (2) such a misrepresentation was material, and (3) did so with specific intent to mislead or deceive the United States Patent and Trademark Office ("PTO"). *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc).

During the prosecution of the '616 and/or the '691 patents, the named inventors and/or their attorneys of record did not submit the McDermott '89 Article to the PTO.  (Stipulated Fact No. 153.)  The McDermott '89 Article was known to Mr. Bryant R. Gold when he submitted it to the PTO during the prosecution of Ser. No. 08/322,066.  (Stipulated Fact No. 154.)  Defendants have shown that Mr. Bryant Gold intentionally withheld the McDermott '89 Article from the PTO, Mr. Gold's act of withholding the document was material, and Mr. Gold withheld the McDermott '89 Article with specific intent to mislead or deceive the PTO.  These facts were established through the testimony of Laurence Pretty, the deposition testimony of Bryant Gold, and the testimony of Dr. Joseph Schulman as well as numerous documents.  (Jan. 17, 2014 P.M. Tr. at 19:12-32:21; Jan. 17, 2014 A.M. Tr. at 122:5-24; Exhibits 1039, 1064, 1147, 1149, 1150, 1301, 1303, 1358, 1360.)

Moreover, the Court has ruled that inequitable conduct is a legal issue to be tried to the bench today, January 22, 2014.  Because neither party "has been fully heard on [this] issue," Plaintiffs' argument that the Court should grant judgment as a matter of law of no inequitable conduct is procedurally defective and should be rejected.  Fed. R. Civ. P. 50(a).

For the reasons stated above, Plaintiffs' motion for judgment as a matter of law of no inequitable conduct should be denied.

# VII.

## PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OF WILLFUL INFRINGEMENT SHOULD BE DENIED

Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc). Actual notice of another's patent rights triggers an affirmative duty of due care. *See Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986). Constructive notice, as by marking a product with a patent number, is insufficient to trigger this duty. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). The Federal Circuit has identified several criteria for assessing damages, including, inter alia, whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and the duration of defendant's misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-28 (Fed. Cir. 1992).

Tony Nygard testified that Defendants believed that they were merely practicing the prior art and, therefore, Defendants had a good faith belief that they were not infringing any patent. (Jan. 17, 2014 P.M. Tr. at 70:14-20; Exhibit 1071; Exhibit 1072; Exhibit 634; Stipulated Fact No. 164.) Also, Defendants infringement defenses are reasonable which means Defendants' cannot have been objectively reckless. *Bard Peripheral Vascular, Inv. V. W.L. Gore & Assoc., Inc.*, 682 F.3d 1221, 1226 (Fed. Cir. 2012) (the threshold inquiry into objective recklessness involves an objective assessment of the defenses); *Spine Solutions, Inc. v, Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010)(when the defenses are reasonable there cannot be objective recklessness); *Powell v. Home Depot U.S.A, Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011)(the objective test is a question of law, and if the defenses are reasonable the question of willfulness cannot be sent to

1  the jury); *DePuy Spine v. Medtronic*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009).

2  Namely, Defendants have reasonable defenses based on invalidity due to the prior

3  art, invalidity due to indefiniteness, etc.

4          For the reasons stated above, Plaintiffs' motion for judgment as a

5  matter of law of willful infringement should be denied.

## VIII.

## THE DAMAGES AWARD SHOULD BE LIMITED BY THE MARKING STATUTE

9          Section 287(a) provides that if the patentee fails to mark the article as

10 patented, the patentee may recover damages only for infringement committed after

11 the infringer was notified of the infringement. 35 U.S.C. § 287(a).

12         The Motion begins by alleging that Defendants have offered no

13 evidence at trial suggesting that the Advanced Bionics products meet the limitations

14 of either patent in suit.  (Motion at 17.)  That is not necessary because Plaintiffs

15 provide the evidence.

16         Dr. Cate Elsten, Plaintiffs' damages expert, testified that Advanced

17 Bionics paid AMF running royalties for the patents-in suit.  (Jan. 16, 2014 P.M. Tr.

18 at 28:10-29:6.)  Also, Alfred Mann wrote a memorandum to Mr. Jeff Greiner on

19 February 19, 1999, stating that "You made a point at that time that if we paid such

20 consideration, AEMF would continue to support ABC (Advanced Bionics Corp.)

21 without further royalties on any of those programs. . . . The fact is that AEMF owns

22 eight patents that we (ABC) are using . . ."  (Exhibit 1085.)  Obviously, Advanced

23 Bionics is not paying royalties to be generous to AMF—Advanced Bionics is paying

24 royalties on the patents-in-suit because Advanced Bionics' products practice those

25 patents-in-suit.

26         However, Plaintiffs have failed to provide any evidence that any

27 Advanced Bionics products or product packaging were marked with the numbers of

28 either patent-in-suit despite the fact that the products are described as having back

1    telemetry and an external display of voltage.  Defendants believe it is telling that

2    Plaintiffs failed to cite any witness testimony or clear evidence in this section of the

3    Motion to establish Plaintiffs' compliance with the marking requirements in order to

4    avoid the limiting of Plaintiffs' damages.  (Motion at 17:19-20:13.)

5              For the reasons stated above, Plaintiffs' motion for judgment as a

6    matter of law regarding marking should be denied.

7                                          **IX.**

8                                 **CONCLUSION**

9              For the foregoing reasons, Defendants respectfully requests that the

10   Court deny Plaintiffs' Motion.

11

12   DATED:  January 22, 2014            SHEPPARD MULLIN RICHTER & HAMPTON LLP

13

14                                        By:   */s/ Bruce C. Chapman*
                                               Bruce C. Chapman
15                                             Attorneys for Defendant/
                                               Counterclaimants COCHLEAR
16                                             LTD. and COCHLEAR
                                               AMERICAS
17

18

19

20

21

22

23

24

25

26

27

28